IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 1:22-cv-00339 ) ) |
| v. | ) Judge Susan P. Baxter ) |
| LEIGH M. CHAPMAN, *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF INDIVIDUAL VOTERS'
AND REPUBLICAN COMMITTEES' MOTION TO INTERVENE**

David Ball, James D. Bee, Debra Biro, Jesse D. Daniel, Gwendolyn Mae DeLuca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Sicilano-Biancaniello, and S. Michael Streib (together, "Individual Voters") and the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania (together, "Republican Committees"), support and seek to uphold free and fair elections on behalf of all Pennsylvanians. The Individual Voters and the Republican Committees therefore respectfully move to intervene as defendants to defend the General Assembly's duly enacted laws governing the elections in which the Individual Voters, and the Republican Committees, their candidates, their voters, and their supporters, exercise their right to vote and their constitutional rights to participate in elections.

Just last week the Republican Committees prevailed in the Pennsylvania Supreme Court on the very issue presented in Plaintiffs' Complaint in this Court. In particular, ruling on the petition filed by the Republican Committees, the Pennsylvania Supreme Court held that the General Assembly's date requirement for absentee and mail-in ballots is mandatory and lawful and, thus, that election officials may not count any absentee or mail-in ballot that fails to comply

1

with it. *See* Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 1, 2022) (per curiam) ("*Ball Order*"). Moreover, in addressing a request for a stay following Pennsylvania's 2022 primary election, three Justices of the U.S. Supreme Court concluded that the notion that the date requirement violates the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B), is "very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). No other Justices addressed the merits of the issue in that stay posture.

Plaintiffs now ask the Court to create a split of authority with the Pennsylvania Supreme Court and to depart from the opinion of three Justices by holding that the date requirement violates the federal materiality provision. *See* Compl. ¶¶ 57-63 (Dkt. No. 1). The Individual Voters and the Republican Committees maintain that the General Assembly's commonsense and constitutional date requirement, together with other provisions of the Pennsylvania Election Code, advances the right to vote, accommodates voters, protects the integrity of and public confidence in Pennsylvania's elections, and reduces the likelihood of fraud. The Individual Voters and the Republican Committees therefore seek to intervene to protect the decision upholding the date requirement that the Republican Committees obtained from the Pennsylvania Supreme Court.

More generally, courts across the country routinely grant intervention to political party committees in similar cases, recognizing that the political parties have an interest in defending requests for judicial changes to election laws.[1] Here as well, the Republican Committees have a

---

[1] *See La Union Del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) (granting intervention of right to county party committees, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee); *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, and Georgia Republican Party); *Concerned Black Clergy of Metro. Atlanta, Inc. v. Raffensperger*, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021) (granting intervention to the RNC, NRSC, NRCC, and Georgia Republican Party); *Coalition for Good Governance v. Raffensperger*,

substantial and particularized interest in defending this action to preserve the electoral environment and to ensure that Pennsylvania carries out free and fair elections.

For their part, the Individual Voters have an interest in protecting their right to vote that could be impaired by disposition of this action. In particular, the Individual Voters have an interest in protecting the weight of their votes from the dilution that would result if election officials are permitted to count invalid ballots in contravention of the date requirement. The Individual Voters

---

No. 1:21-cv-02070 (N.D. Ga. June 21, 2021) (same); *New Georgia Project v. Raffensperger*, No. 1:21-cv-1229, 2021 WL 2450647 (N.D. Ga. June 4, 2021) (same); *Ga. State Conf. of the NAACP v. Raffensperger*, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021) (same); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021) (same); *Asian Ams. Advancing Justice-Atlanta v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021) (same); *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021) (same); *Wood v. Raffensperger*, No. 1:20-cv-5155 (N.D. Ga. Dec. 22, 2020) (granting intervention to the DSCC and Democratic Party of Georgia); *Alliance for Retired American's v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to the RNC, NRSC, and Republican Party of Maine); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. June 26, 2020) (granting intervention to the RNC and NRSC); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-1143-DLR (D. Ariz. June 26, 2020) (granting intervention to the RNC and Arizona Republican Party); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459-wmc (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 20-cv-340-wmc (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 ECT/TNL (D. Minn. June 23, 2020) (granting intervention to the RNC and Republican Party of Minnesota); *Issa v. Newsom*, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (granting intervention to the DCCC and Democratic Party of California); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236-RH (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and Republican Party of Florida); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and Republican Party of Michigan); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Paher v. Cegavske*, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention to four Democratic Party entities); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same); *see also Democratic Exec. Cmte. of Fla. v. Detzner*, No. 4:18-cv-520-MW-MJF (N.D. Fla. Nov. 9, 2018) (granting intervention to the NRSC).

also have an interest in maintaining clarity and certainty regarding their rights and obligations if they choose to exercise their statutory right to vote by absentee or mail-in ballot. *See* 25 P.S. §§ 3146.1, 3150.11.

Accordingly, as explained more fully below, the Court should grant the Individual Voters and the Republican Committees intervention under Rule 24. The Individual Voters and the Republican Committees have a right to intervene under Rule 24(a) because this motion is timely and they have a substantial interest in the validity of Pennsylvania's election framework—an interest they can protect only by participating in these cases. In the alternative, and at a minimum, the Court should grant the Individual Voters and the Republican Committees permissive intervention under Rule 24(b) because their defenses share common questions of law and fact with the existing parties, and intervention will not result in any delay or prejudice. As required by Rule 24(c), the Individual Voters and the Republican Committees have attached a proposed Motion to Dismiss Plaintiffs' Complaint and, alternatively, a proposed Answer to Plaintiffs' Complaint.

## BACKGROUND

*Individual Voters.* David Ball resides in Washington County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

James D. Bee resides in Cambria County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Jesse D. Daniel resides in Indiana County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Gwendolyn Mae Deluca resides in Beaver County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Ross M. Farber resides in Westmoreland County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

4

Lynn Marie Kalcevic resides in Beaver County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Vallerie Siciliano-Biancaniello resides in Delaware County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

S. Michael Streib resides in Butler County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Each of the Individual Voters regularly votes in both primary and general elections and intends to vote for candidates in all races on their respective ballots in the 2022 general election, including but not limited to the races for U.S. Senate, U.S. House of Representatives, Pennsylvania Senate, and Pennsylvania House of Representatives. Individual Voters, each of whom has the right to vote via mail-in ballot, have a particularized interest in knowing the exact requirements for such mail-in ballots to be counted.

Moreover, the counting of undated or incorrectly dated ballots by some or all county boards of elections in violation of the Election Code has interfered, and threatens to interfere, with the Individual Voters' right to free and equal elections. In particular, the votes validly cast by the Individual Voters have been and will be canceled out and diluted by the counting of undated or incorrectly dated ballots.

*The Republican Committees*. The Republican National Committee ("RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14). The RNC manages the Republican Party's business at the national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Pennsylvania; and assists state parties throughout the country, including the Republican Party of Pennsylvania, to

educate, mobilize, assist, and turn out voters. The RNC has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to continue doing so in 2022 and beyond. The RNC has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

The National Republican Congressional Committee (the "NRCC") is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14). The NRCC's mission is to elect Republican candidates to the U.S. House of Representatives from across the United States, including from Pennsylvania's eighteen congressional districts. The NRCC works to accomplish its mission in Pennsylvania by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and Party organizations; engaging in voter registration, voter education and voter turnout programs; and other Republican party-building activities.

The Republican Party of Pennsylvania (the "RPP") is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15). The RPP on behalf of itself and its members nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

The RNC, NRCC, and RPP (the "Republican Committees") each have made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in past election cycles and are doing so again in

2022. These efforts include devoting substantial time and resources towards monitoring of the voting and vote counting process in Pennsylvania and to ensure it is conducted lawfully. The Republican Committees make expenditures to ensure they and their voters understand the rules governing the elections process, including applicable dates, deadlines, and requirements for voting by mail or absentee. These efforts require a uniform application of the law and a clear and transparent understanding of mail voting requirements, including any allowances for notice and opportunity to cure procedures. The Republican Committees have a substantial and particularized interest in ensuring that Pennsylvania administers free and fair elections.

*Procedural History*. As Plaintiffs acknowledge, this suit is merely the latest in a long line of attempts to persuade the courts to undo the General Assembly's date requirement for absentee and mail-in ballots. *See* Compl. ¶¶ 36–56. After seven cases in five different courts over two years, the current state of the law is that the General Assembly's date requirement is mandatory and that any noncompliant absentee or mail-in ballot may not be counted in the 2022 general election and beyond. *See id.*; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (federal courts may not order changes to state election laws on the eve of an election). On November 1, the Pennsylvania Supreme Court ruled in a case brought by the Republican Committees that the date requirement is lawful and mandatory under state law. *See Ball* Order. The Pennsylvania Supreme Court's order noted that "[t]he Court is evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. § 10101(a)(2)(B)." *Id.* at 1. It therefore ordered county boards of elections "to refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes." *Id.*

The Pennsylvania Supreme Court's order comported with the view of three Justices of the U.S. Supreme Court. In addressing an application for a stay following Pennsylvania's 2022

7

primary election, three Justices concluded that the notion that the date requirement violates the federal materiality provision is "very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). No other Justices addressed the merits in the stay posture of that litigation. h

Nonetheless, Plaintiffs now ask the Court to create a split of authority with the Pennsylvania Supreme Court and to depart from the opinion of three Justices by holding that the date requirement violates the federal materiality provision. *See* Compl. ¶¶ 57-63. In particular, Plaintiffs Pennsylvania State Conference of the NAACP and other organizations filed this suit against the Acting Secretary of the Commonwealth and the County Boards of Elections on November 4 purporting to plead a single count challenging the date requirement as a violation of federal law. Compl. ¶¶ 57–64. As of the time of this filing, Plaintiffs have filed no returns of service on the docket.

## ARGUMENT

The Court should grant the Individual Voters and the Republican Committees intervention of right because they satisfy all four requirements of Rule 24(a). In the alternative, and at a minimum, the Court should grant permissive intervention under Rule 24(b).

## I. THE COURT SHOULD GRANT THE INDIVIDUAL VOTERS AND THE REPUBLICAN COMMITTEES INTERVENTION OF RIGHT

Intervention of right is appropriate when, upon a timely motion, a party:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To satisfy Rule 24(a)(2), a movant must establish: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the

interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d. Cir. 1987). The Individual Voters and the Republican Committees readily meet each of these four requirements, entitling them to intervention of right.

### A. This Motion Is Timely

It cannot be disputed that this Motion is timely. The timeliness of a motion to intervene is "determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). The Third Circuit has outlined three factors to be considered when assessing the timeliness of a motion to intervene: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d at 500). Concerning the assessment of the stage of the proceeding, the critical inquiry is the degree to which any proceedings of substance on the merits have occurred. *Mt. Top*, 72 F.3d. at 369. The prejudice inquiry is related, as the later in the proceedings the motion to intervene is filed, the greater the likelihood of prejudice to the opposing parties. *See In re Fine Paper Antitrust Litig.*, 695 F.2d at 500.

These factors support the Individual Voters' and the Republican Committees' intervention for a simple reason: this litigation has only just begun. The Complaint was filed just one business day ago, and the named Defendants have not yet filed a responsive pleading. Accordingly, no prejudice to Plaintiffs or the currently named Defendants would result by allowing the Individual Voters and the Republican Committees to intervene. To the contrary, permitting the Individual Voters and the Republican Committees to intervene at this point will allow them to assert their defenses without any delay or disruption to the litigation. The Motion is timely.

### B. The Individual Voters and the Republican Committees Have a Significant Interest In the Litigation

The Individual Voters and the Republican Committees satisfy the second prong of Rule 24(a) because they have "an interest relating to the property or transaction that is the subject of the action": the date requirement. Fed. R. Civ. P. 24(a)(2). As noted, courts across the country, *see supra* n.1, and even in Pennsylvania have recognized that political party committees have an interest in intervening in cases implicating election laws and procedures.[2] As one court has explained, committees of the Republican Party have "an interest in the subject matter of [a] case," when "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the . . . Republican Party." *See Ohio Democratic Party v. Blackwell*, No. 04-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

The Republican Committees have an especially significant interest in this case because the Pennsylvania Supreme Court has already granted judgment in the Republican Committees' favor on the very issue presented in this litigation: whether the General Assembly's date requirement is

---

[2] *See, e.g.*, *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 355 (Pa. 2020); *Trinsey v. Pa.*, 941 F.2d 224, 226 (3d Cir. 1991) (noting the district court granted the Republican State Committee of Pennsylvania leave to intervene in suit challenging state law governing the special election procedure for filling a senatorial vacancy); *Libertarian Party of Pa. v. Wolf*, No. 20-2299, 2020 U.S. Dist. LEXIS 124200, *9 (E.D. Pa. July 14, 2020) (noting Pennsylvania Democratic Party's intervention in suit seeking invalidation of in-person signature and witnessing requirements for minor political party candidates seeking to qualify for the November ballot); *Stein v. Cortes*, 223 F. Supp. 3d 423, 429 (E.D. Pa. 2016) (addressing recount demand for 2016 general election ballots and noting the intervention of the Pennsylvania Republican Party); *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 688 (W.D. Pa. 2003) (addressing Republican challenge to third-party delivery of absentee ballots and noting the intervention of the Pennsylvania Democratic Party); *Orloski v. Davis*, 564 F. Supp. 526, 529 (M.D. Pa. 1983) (noting Pennsylvania Democratic State Committee's intervention in suit challenging Pennsylvania statute governing election of Commonwealth Court judges); *Gilhool v. Chairman & Comm'rs, Phila. Cnty. Bd. of Elections*, 306 F. Supp. 1202, 1205 (E.D. Pa. 1969) (allowing Philadelphia County Democratic Executive Committee and Republican City Committee to intervene in suit to enjoin the City of Philadelphia from using voting machines allegedly favoring major party candidates).

lawful and mandatory for the 2022 general election and beyond. *See Ball* Order. That order addressed the argument that mandatory application of the date requirement violates the federal materiality provision. *See id.* at 1. Plaintiffs contend that the Pennsylvania Supreme Court "deadlocked" on that question, Compl. ¶ 51, but the effect of its order was to leave the date requirement in place notwithstanding the challenge that the date requirement violates federal law, *see Ball* Order at 1. The Republican Committees have an indisputably significant interest in preserving their litigation victory and opposing Plaintiffs' request that the Court create a split of authority with the Pennsylvania Supreme Court and depart from the opinion of three Justices by invalidating the date requirement. *See* Compl. ¶¶ 57–63.

That makes the case for the Republican Committees' right to intervention especially straightforward. But given political parties' unique interest in elections, usually "[n]o one disputes" that they "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Colo. Sept. 15, 2014). It is easy to see why. The Republican Committees have a clear and obvious interest—on behalf of themselves as well as their voters, candidates, and volunteers—in the rules under which the Committees and those individuals exercise their constitutional rights to vote and to participate in elections in Pennsylvania. *See, e.g.*, *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222–23 (1989) (recognizing that the First Amendment protects campaigning and certain activities by political parties and their adherents); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979))). That interest includes expenditure of "substantial resources toward educating, mobilizing, assisting, and turning out voters in

Pennsylvania" and supporting "Republican candidates up and down the ballot." *See supra* pp. 3-4.

The Republican Committees also have an obvious interest in advancing the overall electoral prospects of Republican candidates in Pennsylvania, and in winning elections in the Commonwealth. That interest entails an interest in maintaining the "competitive environment" surrounding elections in Pennsylvania. *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005). Indeed, because their supported candidates seek election or reelection "in contests governed by the challenged rule[]," the Republican Committees have an interest in "demand[ing] adherence" to those requirements and preventing changes to the "competitive environment" those rules foster. *Id.* at 85, 88. This is no mere hypothetical interest. The Third Circuit's failure to enforce the date requirement in *Migliori v. Cohen* actually *did* change the outcome of an election in which a Republican candidate had prevailed. *See* Cert. Pet. at 7-12, *Ritter v. Migliori*, No. 22-30 (U.S. July 7, 2022), https://www.supremecourt.gov/DocketPDF/22/22-30/229591/20220707140738344_Ritter%20Petition.pdf ("*Migliori* Cert. Pet.").

The Individual Voters also possess significant interests in the subject matter of this litigation. The weight of the Individual Voters' votes can be "debase[d] or dilut[ed]" by the counting of invalid ballots in contravention of the date requirement. *Reynolds v. Sims*, 377 U.S. 553, 555 (1964); *Bush v. Gore*, 531 U.S. 98, 105 (2000). The Individual Voters also have a significant interest in maintaining certainty regarding their rights and obligations if they choose to exercise their statutory right to vote by absentee or mail-in ballot. *See* 25 P.S. §§ 3146.1, 3150.11.

The Individual Voters and the Republican Committees satisfy Rule 24(a)'s interest requirement.

12

### C. The Individual Voters' and the Republican Committees' Ability To Protect Their Interests May Be Affected Or Impaired By Disposition of This Action

Rule 24(a)'s impairment inquiry is "practical" and minimal: it asks only whether disposition of the action may impair the movant's ability to protect its interests. Fed. R. Civ. P. 24(a)(2); *see also Harris*, 820 F.2d at 596. In evaluating this factor, courts "may consider any significant legal effect on the applicant's interest, including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *Pa. v. President of the United States*, 888 F.3d 52, 59 (3d Cir. 2018) (internal quotation marks omitted). The Third Circuit also adheres to a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id*.

An injunction against the date requirement, such as Plaintiffs seek in this case, would undermine the Individual Voters' and the Republican Committees' interest in those rules and could imperil those interests in the 2022 general election and beyond. For one thing, such an injunction could impair the Individual Voters' and the Republican Committees' participation in elections on behalf of themselves, their voters, their supporters, and their candidates, and could require the Republican Committees to change their voter-education and mobilization programs and to reallocate, and even increase, their expenditure of resources on those programs. *See, e.g.*, *Paher*, 2020 WL 2042365, at *2 (holding that an injunction invalidating a state election rule could disrupt a political party's efforts to educate and turn out voters and to facilitate "the election of . . . candidates" it supports); *see also Issa*, 2020 WL 3074351, at *3. For another, an injunction may also affect the Individual Voters' and the Republican Committees' ability to protect their interest in maintaining the competitive environment in which their supported candidates seek election in Pennsylvania—and could even go so far as to "fundamentally alter th[at] environment." *Shays*, 414 F.3d at 86.

Indeed, an injunction against date requirement could subject the Republican Committees to a "broader range of competitive tactics" from their opponents than Pennsylvania law otherwise "would allow." *Id.* Thus, an injunction could threaten prospective interference with Republican electoral opportunities or even "chang[e] the results" of some future election in Pennsylvania to the detriment of the Republican Committees, their voters, and their supported candidates. *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 764 (E.D. Mich. 2020); *see also Republican Party of Pa.*, No. 20A84 (Order of Alito, J.). In fact, just such a change in an election result occurred when the Third Circuit (incorrectly) declined to uphold the date requirement in *Migliori v. Cohen*. *See Migliori* Cert. Pet. at 7–12.

An injunction invalidating the date requirement is especially problematic if—as Plaintiffs request, *see* Compl. Prayer for Relief ¶ 2—it issues on the eve of or after the 2022 general election and upends rules that have been in place in Pennsylvania for decades. Such eleventh-hour or post-election changes to election rules threaten to confuse voters and undermine confidence in the electoral process. *See Purcell*, 549 U.S. at 4–5. This resulting confusion or loss of confidence may make it less likely that the Republican Committees' voters will vote, that those voters will successfully vote in compliance with whatever judicially imposed rules are then in place, and ultimately that the Republican Committees' candidates will win. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

Without intervention, the Individual Voters and the Republican Committees will have no ability to protect their interests in upholding the date requirement against the injunctions Plaintiffs seek and any judgment against Defendants. The Court should grant intervention.

### D. The Individual Voters' And The Republican Committees' Interests Are Not Adequately Represented By The Existing Defendants

The final requirement for intervention of right does not demand a showing that the representation of the movant's interest is for certain inadequate, only that it "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). This burden too is "minimal." *President of the United States*, 888 F.3d at 60.

And the Individual Voters and the Republican Committees once again easily carry it. No party to this litigation shares—much less represents—the Individual Voters' personalized interest in protecting the weight of their votes against "dilution," *Reynolds*, 377 U.S. at 555, or the Republican Committees' unique interests in supporting Republican voters and candidates in participating in elections, in advancing Republican candidates' electoral prospects, or in Republican candidates winning elections. Thus, the plain text of Rule 24(a) is satisfied: *no* "existing part[y] . . . represent[s]"—"adequately" or otherwise—any of the Individual Voters' or the Republican Committees' unique "interest[s] relating to" the date requirement. Fed. R. Civ. P. 24(a)(2); *see also La Union Del Pueblo Entero*, 29 F.4th at 307–09.

While the Third Circuit has recognized "a rebuttable presumption of adequacy . . . if one party is a government entity charged by law with representing the interests of the applicant for intervention[,] that presumption is easily rebutted here." *President of the United States*, 888 F.3d at 60. Indeed, "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of overcoming that presumption] is comparatively light." *Id*. at 60-61 (internal quotation marks omitted); *see also, e.g.*, *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as

adequate advocates for private parties." (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003))).

As the Fifth Circuit recently concluded, the "private interests" of committees of the Republican Party in upholding challenged election laws "are different in kind from the public interests of the State or its officials," including state and county election administrators. *La Union Del Pueblo Entero*, 29 F.4th at 309. Here, all of the named Defendants are statutorily required to remain impartial in elections, *see e.g.*, 25 Pa. C.S. §§ 102, 201, 301, so they cannot "in good faith" represent the Individual Voters' interest in protecting the weight of their votes or the Republican Committees' interests in supporting Republican voters, candidates, or electoral prospects, *see La Union Del Pueblo Entero*, 29 F.4th at 309.

Moreover, Defendants "have many interests that the Committees" and the Individual Voters do not, such as maintaining their relationship "with the courts" that routinely hear challenges to the Commonwealth's election laws. *Id.* Indeed, Defendants must consider a "broad spectrum of views, many of which may conflict" with the Individual Voters' personal interest and the Republican Committees' specific interests in advancing electoral participation by Republicans, maintaining the competitive electoral environment, and winning elections. *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001). These may include the "expense of defending" the current laws, *Clark v. Putnam County*, 168 F.3d 458, 461–62 (11th Cir. 1999); the "social and political divisiveness of the election issue," *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) (per curiam); and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991). And for their part, the County Board of

Elections represent interests only in their respective counties, not the statewide interests the Republican Committees represent. *See, e.g.*, *La Union Del Pueblo Entero*, 29 F.4th at 308.

This potential divergence of interests between the Individual Voters and the Republican Committees, on the one hand, and the Acting Secretary and county boards of elections, on the other, alone is sufficient to satisfy Rule 24(a)'s inadequacy-of-representation requirement. *See, e.g.*, *La Union Del Pueblo Entero*, 29 F.4th at 307–09; *President of the United States*, 888 F.3d at 60–61. Yet if more were somehow needed, regrettably the legal position of the named Defendant Acting Secretary Chapman demonstrably diverges from that of the Individual Voters and the Republican Committees. In the *Ball* case resolved by the Pennsylvania Supreme Court on November 1, the Acting Secretary advocated the same position as the Plaintiffs in this case and sought invalidation of the General Assembly's duly enacted date requirement under the federal materiality provision. *See* Acting Sec'y Ans. at 35–40, *Bell v. Chapman*, No. 102 MM 2022 (Pa. Oct. 19, 2022) (Ex. A). And that was after the Acting Secretary asked the Pennsylvania Commonwealth Court to overturn the date requirement following the 2022 primary election (in another case in which the Republican Committees were granted leave to intervene). *See McCormick for U.S. Senate v. Chapman*, 286 MD 2022, 2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022). That the Acting Secretary may once again seek to set aside the General Assembly's date requirement only underscores that she does not adequately represent the Individual Voters' and the Republican Committees' interest in upholding the requirement. *See, e.g.*, *Trbovich*, 404 U.S. at 538 n.10. The Court should grant the Individual Voters and the Republican Committees intervention of right.

## III. ALTERNATIVELY, THE COURT SHOULD GRANT THE INDIVIDUAL VOTERS AND THE REPUBLICAN COMMITTEES PERMISSIVE INTERVENTION

The Individual Voters' and the Republican Committees' right to intervene in this case is clear, but even if it were not, the Court should still grant them permissive intervention. Rule 24(b) provides for permissive intervention where a party timely files a motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Intervention under Rule 24(b) is a "highly discretionary decision" left to the judgment of the district court. *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *accord Harris*, 820 F.2d at 597. In exercising its broad discretion under this Rule, the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

The Individual Voters and the Republican Committees check each box for permissive intervention. *First*, their motion is timely for all the reasons explained above. *See supra* Part I.A.

*Second*, the Individual Voters and the Republican Committees will raise defenses that share many "common" questions with the parties' claims and defenses. Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs contend that the Date Requirement is unlawful under the federal materiality provision. The Individual Voters and the Republican Committees disagree and seek to vigorously defend that duly enacted state law.

*Finally*, the Individual Voters' and the Republican Committees' intervention will not delay this case or prejudice the parties. As explained above, this case has only just begun, so intervention will impose no additional delay. *See supra* Part I.A. The Individual Voters and the Republican Committees will follow any schedule the Court sets, and allowing intervention would prevent any piecemeal litigation or the need for collateral challenges to a settlement or appeals from an order that may prejudice the Individual Voters or the Republican Committees.

# CONCLUSION

The Court should grant the Individual Voters and the Republican Committees intervention of right or, in the alternative, permissive intervention.

Dated: November 7, 2022

Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore *
E. Stewart Crosland
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
 COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Petitioners*

* *Pro hac vice application forthcoming*