IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth, *et al.*,<br><br>*Defendants*. | Case No. 1:22-cv-00339-SPB |

**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

Movants are individual voters and partisan political entities (the "Individual Voters" and the "Republican Committees," respectively) who seek to intervene in this matter so that they may oppose counting the votes of qualified Pennsylvania voters on the basis of an immaterial paperwork error.[1]

Plaintiffs take no position on intervention by the Republican Committees. Plaintiffs note, however, that the partisan valence of the unopened mail ballots at issue is unknown, and that the Republican Committees' interest in *preventing* ballots from being counted at this stage is especially unclear. *See, e.g.*, @TheRecount, Twitter (Nov. 9, 2022, at 12:00 a.m.), https://bit.ly/3G5Or63 (Republican gubernatorial nominee Doug Mastriano telling supporters to "have faith and have patience," because "we're going to wait until every vote counts").

---

[1] The Individual Voters are Ball, Bee, Biro, Daniel, DeLuca, Farber, Kalcevic, Sicilano-Biancaniello, and Streib, and the Republican Committees are the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania.

As to the Individual Voters, intervention should be denied. Their votes have already been counted, and they suffer no cognizable injury from also counting the timely-received mail ballots of *other* qualified and registered Pennsylvania voters. The Individual Voters' generalized interest in Pennsylvania elections is indistinguishable from that of any other voter in the Commonwealth, and is insufficient to support intervention.

## ARGUMENT

Intervention as of right is proper if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). The Individual Voters cannot satisfy the latter three elements of that standard.

To demonstrate an interest in the action sufficient to intervene, the Individual Voters must establish a "significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Such an interest must be "specific to" the intervenors and "directly affected in a substantially concrete fashion by the relief sought." *Kleissler v. U.S. Forest Serv.,* 157 F.3d 964, 972 (3d Cir. 1998). By contrast, "interests of a general and indefinite character" do not suffice, *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); *see also id.* ("The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene.").

Neither of the Individual Voters' proffered interests is sufficient, nor have the Individual Voters identified harm to any valid interests they might possess.

*First*, the Individual Voters' claimed interest in "protecting the weight of their votes from the dilution that would result if election officials are permitted to count invalid ballots in contravention of the date requirement" is insufficient. ECF 30, at 3; *see also id.* at 5, 12 (citing *Reynolds v. Sims*, 377 U.S. 553, 555 (1964)). The interest in protecting against *actual* vote dilution in foundational one-person, one-vote cases like *Reynolds* "is concerned with votes being weighed differently." *Bognet v. Sec'y of Pa.*, 980 F.3d 336, 355 (3d Cir. 2020), *vacated sub nom. as moot*, *Bognet v. Degraffenreid*, 141 S. Ct. 2508 (Mem.) (2021).[2] In contrast, the supposed "dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots," is not a cognizable harm. *Id.*

Here, the Individual Voters fail to establish how counting every qualified voter's ballot works any particular harm on them. This case does not involve under- or over-populated districts, or any alleged scheme that underweights the votes of certain discernable groups of voters, such as racial minorities. Nor does it involve different counties or jurisdictions applying different voting rules in the same election, as in *Bush v. Gore*, the other inapposite case they cite. ECF 30, at 12; *see* 531 U.S. 98, 106, 109 (2000). The Individual Voters have not argued that they were denied an

---

[2] Courts can and do consider decisions that have been vacated as moot to be "persuasive authority." *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993). *See also, e.g.*, *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021); *Hayes v. Osage Mins. Council*, 699 F. App'x 799, 804 (10th Cir. 2017); *Brown v. Kelly*, 609 F.3d 467, 476–77 (2d Cir. 2010).

opportunity to vote, or that their ballots were not counted or were weighted differently than other voters' ballots. Instead, they simply assert, without explanation, that some form of "dilution … would result if election officials are permitted to count invalid ballots." ECF 30, at 3. Such complaints about "state actors counting ballots in violation of state election law" are "not a concrete harm." *Bognet*, 980 F.3d at 354. Instead, they are just generalized grievances, quickly repackaged as "vote dilution" claims, which Courts have repeatedly rejected. *See Bognet*, 980 F.3d at 356–57; *see also Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020); *King v. Whitmer*, 505 F.Supp.3d 720, 737–39 & n.11 (E.D. Mich. 2020); *Bowyer v. Ducey,* 506 F.Supp.3d 699, 711–12 (D. Ariz. 2020); *Paher v. Cegavske*, No. 320-cv-00243-MMD-WGC, 2020 WL 2748301, at *4 (D. Nev. May 27, 2020); *see also Am. C.R. Union v. Martinez-Rivera,* 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015).

The bottom line is that the Individual Voters do not and cannot point to any individualized interest they might have in ensuring that other people's ballots are invalidated because of a trivial mistake in handwriting an inconsequential date on the mail ballot envelope. Even indulging the premise that "improperly" cast votes might somehow cancel out "properly" cast votes, the individual voters still would not suffer any specific harm that is different from every other voter. *Wood*, 981 F.3d at 1314 ("'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.'" (quoting *Bognet*, 980 F.3d at 356)); *see also Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018) (no standing where plaintiffs did not point

4

to "facts showing disadvantage to themselves as individuals" as distinct from any other voter).

*Second*, the Individual Voters' reliance on a purportedly "particularized interest" in "knowing the exact requirements for such mail-in ballots to be counted," ECF 30, at 5, and in "defend[ing] the General Assembly's duly enacted laws," ECF 30, at 1, fails. Those interests are not "specific to them." *Kleissler,* 157 F.3d at 972. Rather, a proposed private intervenor's interest in "vindicat[ing] the … validity of a generally applicable [state] law" is a classic example of a "generalized grievance." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *see also United States v. Fla.*, No. 4:12-cv-285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (interest of organizations and their members in ensuring confidence in the election process through accurate voting rolls are generalized interests that are "the same for the proposed intervenors … as for every other registered voter in the state" and thus "plainly do not afford a voter … a *right* to intervene under Rule 24(a)"); *Wisc. Right to Life Political Action Comm. v. Brennan*, No. 09-cv-764-VIS, 2010 WL 933809, at *3 (W.D. Wis. Mar. 11, 2010) ("generalized, public policy interests are insufficient to create [the] direct, substantial interest required").

Nothing more is asserted here. Without any showing that they have been or will be deprived of the right to vote, the Individual Voters' generalized interest in "maintaining clarity and certainty" about the requirements to "exercise their statutory right to vote" (ECF 30, at 4) is the same as the interest shared by all Pennsylvania voters and the public at large. Granting intervention on such a basis

5

would allow "anyone with an interest—however broad or universal—to intervene in any lawsuit in which the government is a party" and the case touches upon voting. *E.g.*, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000).

In sum, the Individual Voters do not point to any significantly protectable interest in this matter, let alone one that might be impaired by the relief requested here. Because the interests they point to are either not cognizable at all, or else indistinguishable from the general interests of the public, the Individual Voters also fail to demonstrate why their own local county boards of elections, who are named defendants here, cannot adequately represent any valid interest they might have. Nor in any case do the Individual Voters explain why any of their supposed interests would not be adequately represented by the Republican Committees (and their shared counsel), who avowedly seek the same goal as the Individual Voters—namely preventing timely-received mail ballots, cast by qualified, registered voters from across the Commonwealth, from being counted due to a meaningless paperwork error.

This Court should deny the Individual Voters' request for permissive intervention as well. Such intervention is proper when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The decision to grant or deny permissive intervention is highly discretionary, and includes consideration of "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Here, the inclusion *as parties* of numerous individuals with no concrete stake in the litigation would "consume additional resources of the court and the parties"

while offering zero "corresponding benefit to existing litigants, the courts, or the process." *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). The Individual Voters should seek leave to file an amicus brief at an appropriate moment if they wish to "present their views" to this Court. *Id.*

## CONCLUSION

This Court should deny the Individual Voters' motion to intervene.

Dated: November 10, 2022

Witold J. Walczak (PA 62976)
Richard T. Ting (PA 200438)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org
rting@aclupa.org

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org

Respectfully submitted,

/s/ Megan C. Keenan
Megan C. Keenan
Ari J. Savitzky
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
mkeenan@aclu.org
asavitzky@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

*Counsel for the Pennsylvania State Conference of the NAACP, League of Women Voters of Pennsylvania, Philadelphians Organized to Witness, Empower and Rebuild, Common Cause Pennsylvania, Black Political Empowerment Project, and Make the Road Pennsylvania*