IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 1:22-cv-00339 ) ) |
| v. | ) Judge Susan P. Baxter ) |
| LEIGH M. CHAPMAN, *et al.*, | ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF INDIVIDUAL VOTERS' AND REPUBLICAN COMMITTEES' MOTION TO INTERVENE**

No party opposes intervention by the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania (collectively, the "Republican Committees"), *see* ECF No. 93 at 1; ECF No. 89 at 1 n.1; ECF No. 88 at 1, so the Court should grant the Republican Committees' intervention for the reasons they have explained, *see* ECF No. 30.

Plaintiffs, Acting Secretary Chapman, and six County Boards of Election ("the Six Boards") oppose the intervention of David Ball, James D. Bee, Debra Biro, Jesse D. Daniel, Gwendolyn Mae Deluca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Siciliano-Biancaniello, and S. Michael Streib (the "Individual Voters") on three bases. None is persuasive.

*First*, Plaintiffs, the Acting Secretary, and the Six Boards argue that the Individual Voters did not demonstrate a "sufficient interest in the litigation" that "may be affected or impaired as a practical matter by the disposition of the action." ECF No. 93 at 3; *see also* ECF No. 89 at 2–4; ECF No. 88 at 2–6. But as the Individual Voters already have explained, they have interests in ensuring that their votes are not "debase[d] or "dilut[ed]" by the counting of invalid ballots and in maintaining certainty around the rules for casting absentee and mail-in ballot should they choose

1

to do so. *See* ECF No. 30 at 12. Plaintiffs, the Acting Secretary, and the Six Boards principally contend that the Individual Voters' interest in protecting the weight of their votes is not cognizable or merely a "generalized grievance." ECF No. 88 at 4; ECF No. 89 at 4; ECF No. 93 at 3. But the cases on which they principally rely—including the Pennsylvania Supreme Court's decision in *Ball*, for which no opinions have issued—involve standing under state law or Article III, not intervention under Federal Rule 24.[1] Moreover, the Supreme Court's vacatur of the Third Circuit's decision in *Bognet* (cited at ECF No. 88 at 3-4; ECF No. 89 at 3-4; ECF No. 93 at 3) "deprives . . . that court's opinion of precedential effect." *County of Los Angeles v. Davis*, 440 U.S. 625. 634 n.6 (1979). These cases therefore do not rebut the Individual Voters' showing that they have an interest in this action sufficient to warrant intervention under Rule 24. *See* ECF No. 30 at 12.

The Six Boards' alternative argument that the Individual Voters "no longer have an interest in maintaining certainty in the law" because "the Election already occurred," ECF No. 93 at 4, is simply remarkable. Changing the rules "after election day" does not eliminate the Individual Voters' grievances—it exacerbates them. *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 734–35 (2021) (Thomas, J., dissenting from the denial of certiorari). Post-election day

---

[1] *See Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 356 (3d Cir. 2020) ("Voter Plaintiffs' 'dilution' claim is a paradigmatic generalized grievance that cannot support *standing*." (internal quotation marks omitted) (emphasis added)), *cert. granted and judgment vacated*, 141 S. Ct. 2508 (2021)); *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020) ("Vote dilution . . . is a paradigmatic generalized grievance that cannot support standing." (internal quotation marks omitted)); *Toth v. Chapman*, 2022 WL 821175, at *9 (M.D. Pa. March 16, 2022) ("Plaintiffs . . . lack Article III standing."); *King v. Whitmer*, 505 F. Supp. 3d 720, 735–36 (E.D. Mich. 2020) ("Plaintiffs fail to establish . . . standing."); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020) ("Plaintiffs have not alleged a concrete harm that would allow the Court to find Article III Standing for their vote dilution claim."); *Martel v. Condos*, 487 F. Supp. 3d 247, 251 (D. Vt. 2020) ("Plaintiffs' case begins and ends with the issue of standing."); *Paher v. Cegavske*, 2020 WL 2748301, at *5 (D. Nev. May 27, 2020) ("Plaintiffs . . . lack standing."); *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787–89 (W.D. Tex. 2015) (discussing "[c]onstitutional standing").

changes risk "severely damage[ing] the electoral system on which our self[-]governance so heavily depends," *id.* at 734–35, by engendering "the chaos and suspicions of impropriety" that follow when invalid ballots are counted "after election day and potentially flip the results of an election," *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 33 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay).  The Individual Voters clearly have a clear interest in avoiding that result.  *See* ECF No. 30 at 12.

*Second*, Plaintiffs assert that the Individual Voters' interests are already adequately represented by the existing parties—that is, the Acting Secretary and the counties.  *See* ECF No. 89 at 4.  Plaintiffs, however, make no attempt to square this contention with the fact that the Acting Secretary and several of the Defendants took the opposing position on the date requirement's validity just last month in *Ball*, which alone makes the "minimal" required showing that the Defendants' representation "may be" inadequate.  *See* ECF No. 30 at 15-17; *see also Pennsylvania v. President United States*, 888 F.3d 52, 60 (3d Cir. 2018).  In fact, the Individual Voters have identified several divergences of interest between them and the Defendants sufficient to support intervention.  ECF No. 30 at 15–17 (listing divergences of interest).

*Third*, Plaintiffs and the Six Boards argue that the Court should deny the Individual Voters permissive intervention on the view that the Individual Voters "would consume additional resources of the court and the parties."  ECF No. 88 at 6; *see also* ECF No. 93 at 6 ("further complicate litigation").  But, of course, Plaintiffs and the Six Boards will decide whether they choose to expend "additional resources" on discovery against the Individual Voters.  ECF No. 88 at 6.  Moreover, Rule 24(b) asks about "*undu[e]* delay or prejudice."  "'Undue' means not normal or appropriate."  *Appleton v. Comm'r of Internal Revenue,* 430 F. App'x 135, 138 (3d Cir. 2011).  Though "any introduction of an intervener in a case will necessitate its being permitted to actively

participate, which will inevitably cause some 'delay,'" that kind of delay is irrelevant under Rule 24(b). *Id.* The entire point of intervention, after all, is to add parties to a case. Regardless, the Individual Voters' intervention will not cause any delay or prejudice, undue or otherwise. This case is still in its infancy, and the Individual Voters will "comply with the schedule that would be followed in their absence." *Nielsen v. DeSantis*, No. 20-cv-236, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020).

## CONCLUSION

The Court should grant the Individual Voters' and Republican Committees' motion to intervene.

Dated: November 11, 2022

Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*Pro hac vice*)
E. Stewart Crosland
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
 COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Proposed Intervenor-Defendants*

5