**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, PHILADELPHIANS ORGANIZED TO WITNESS, EMPOWER AND REBUILD, COMMON CAUSE PENNSYLVANIA, BLACK POLITICAL EMPOWERMENT PROJECT, MAKE THE ROAD PENNSYLVANIA, JEAN TERRIZZI, BARRY M. SEASTEAD, MARJORIE BOYLE, MARLENE G. GUTIERREZ, DEBORAH DIEHL, AYNNE MARGARET PLEBAN POLINSKI, JOEL BENCAN, and LAURENCE M. SMITH,<br><br>*Plaintiffs*,<br><br>v.<br><br>LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth, ADAMS COUNTY BOARD OF ELECTIONS, ALLEGHENY COUNTY BOARD OF ELECTIONS, ARMSTRONG COUNTY BOARD OF ELECTIONS, BEAVER COUNTY BOARD OF ELECTIONS, BEDFORD COUNTY BOARD OF ELECTIONS, BERKS COUNTY BOARD OF ELECTIONS, BLAIR COUNTY BOARD OF ELECTIONS, BRADFORD COUNTY BOARD OF ELECTIONS, BUCKS COUNTY BOARD OF ELECTIONS, BUTLER COUNTY BOARD OF ELECTIONS, CAMBRIA COUNTY BOARD OF ELECTIONS, CAMERON COUNTY BOARD OF ELECTIONS, CARBON COUNTY BOARD OF ELECTIONS, CENTRE COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, CLARION COUNTY BOARD OF ELECTIONS, CLEARFIELD COUNTY BOARD OF ELECTIONS, CLINTON COUNTY BOARD OF ELECTIONS, COLUMBIA COUNTY BOARD OF ELECTIONS, CRAWFORD COUNTY BOARD OF ELECTIONS, CUMBERLAND COUNTY BOARD OF ELECTIONS, DAUPHIN COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY BOARD OF ELECTIONS, ELK COUNTY BOARD OF ELECTIONS, ERIE | Civ. No. 22-339 |

COUNTY BOARD OF ELECTIONS,
FAYETTE COUNTY BOARD OF ELECTIONS,
FOREST COUNTY BOARD OF ELECTIONS,
FRANKLIN COUNTY BOARD OF ELECTIONS,
FULTON COUNTY BOARD OF ELECTIONS,
GREENE COUNTY BOARD OF ELECTIONS,
HUNTINGDON COUNTY BOARD OF ELECTIONS,
INDIANA COUNTY BOARD OF ELECTIONS,
JEFFERSON COUNTY BOARD OF ELECTIONS,
JUNIATA COUNTY BOARD OF ELECTIONS,
LACKAWANNA COUNTY BOARD OF ELECTIONS,
LANCASTER COUNTY BOARD OF ELECTIONS,
LAWRENCE COUNTY BOARD OF ELECTIONS,
LEBANON COUNTY BOARD OF ELECTIONS,
LEHIGH COUNTY BOARD OF ELECTIONS,
LUZERNE COUNTY BOARD OF ELECTIONS,
LYCOMING COUNTY BOARD OF ELECTIONS,
MCKEAN COUNTY BOARD OF ELECTIONS,
MERCER COUNTY BOARD OF ELECTIONS,
MIFFLIN COUNTY BOARD OF ELECTIONS,
MONROE COUNTY BOARD OF ELECTIONS,
MONTGOMERY COUNTY BOARD OF ELECTIONS,
MONTOUR COUNTY BOARD OF ELECTIONS,
NORTHAMPTON COUNTY BOARD OF
ELECTIONS, NORTHUMBERLAND COUNTY
BOARD OF ELECTIONS, PERRY COUNTY BOARD
OF ELECTIONS, PHILADELPHIA COUNTY BOARD
OF ELECTIONS, PIKE COUNTY BOARD OF
ELECTIONS, POTTER COUNTY BOARD OF
ELECTIONS, SCHUYLKILL COUNTY BOARD OF
ELECTIONS, SNYDER COUNTY BOARD OF
ELECTIONS, SOMERSET COUNTY BOARD OF
ELECTIONS, SULLIVAN COUNTY BOARD OF
ELECTIONS, SUSQUEHANNA COUNTY BOARD
OF ELECTIONS, TIOGA COUNTY BOARD OF
ELECTIONS, UNION COUNTY BOARD OF
ELECTIONS, VENANGO COUNTY BOARD OF
ELECTIONS, WARREN COUNTY BOARD OF
ELECTIONS, WASHINGTON COUNTY BOARD OF
ELECTIONS, WAYNE COUNTY BOARD OF
ELECTIONS, WESTMORELAND COUNTY BOARD
OF ELECTIONS, WYOMING COUNTY BOARD OF

ELECTIONS, and YORK COUNTY BOARD OF
ELECTIONS,

> *Defendants.*

## AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Plaintiffs—nonpartisan organizations dedicated to promoting American democracy and the participation of Pennsylvania voters in our shared civic enterprise, and a bipartisan group of Pennsylvania voters, ages 64 through 95, all of whom cast mail ballots in the 2022 election—bring this Complaint for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 52 U.S.C. § 10101 to ensure that qualified Pennsylvania voters are not disenfranchised based on an immaterial paperwork error.

2.      Defendants, Pennsylvania's Acting Secretary of the Commonwealth and the 67 Pennsylvania county boards of elections, will not count thousands of timely-received mail ballots submitted for the November 2022 election and future elections by otherwise qualified voters based on a meaningless technicality—that the ballots are missing a handwritten date next to their signature on the return envelope, or because the handwritten date is somehow "wrong." This refusal to count timely mail ballots submitted by otherwise eligible voters because of a trivial paperwork error violates the Materiality Provision of the Civil Rights Act, which makes it unlawful to deny the right to vote based on an "error or omission" on a voting-related "record or paper" that is "not material in determining whether [a voter] is qualified under State

law to vote in [the] election." 52 U.S.C. § 10101(a)(2)(B). Because mail ballots in Pennsylvania may, under state law, be completed at "any time," and because their timeliness is determined by when a local county board of elections receives and date-stamps the ballot, the presence or absence of a handwritten date on the envelope is utterly immaterial to determining whether the ballot was timely received, much less to assessing a voter's qualifications. *See Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir.), *vacated as moot*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022).

3.      In addition to the Materiality Provision, Defendants' refusal to count timely-received mail ballots based on an immaterial paperwork error also violates the Equal Protection Clause of the Fourteenth Amendment because it imposes arbitrary distinctions between different mail ballot voters that are unsupported by any legitimate government interest (let alone a compelling one).

4.      The Plaintiff organizations represent the interests of their combined thousands of members. Many of the Plaintiff organizations' members are qualified and registered Pennsylvania voters who timely voted by mail-in ballot, some of whom were or will be directly affected by Defendants' enforcement of the immaterial envelope-date rule in 2022 as well as future elections. The Plaintiff organizations' expansive get-out-the-vote and voter education efforts are also burdened, even undermined, by hyper-technical rules that disenfranchise thousands of Pennsylvania voters based on an inconsequential paperwork error.

5.      As for the individual voter Plaintiffs, they seek to vindicate their fundamental right to vote, which includes having their votes for federal, state, and

local offices counted. The individual Plaintiffs, all of whom were disenfranchised by Defendants' actions, care deeply about their right to vote for numerous reasons, including ensuring representation for themselves and their families, and making themselves heard on the issues that matter to them.

6.    Absent declaratory and injunctive relief from this court, the individual voter plaintiffs and the organizational plaintiffs and their members will suffer irreparable harm.

## JURISDICTION AND VENUE

7.    Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 to enforce the rights guaranteed by 52 U.S.C. § 10101 and the Fourteenth Amendment. Alternatively, Plaintiffs bring suit directly under Section 10101 via the implied right of action contained within 52 U.S.C. § 10101.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights cases).

9.    Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

10.    Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and several Defendants conduct business in this district. And venue in the Erie Division is appropriate because the Defendants include the boards of elections in Crawford, Elk, Erie, Forest, McKean, Venango, and Warren Counties, and the Plaintiffs include

organizations with members in those counties as well as individual voters who vote in Crawford and Warren counties. *See* W.D. Pa. LCvR 3.

## PARTIES

11.    The Pennsylvania State Conference of the NAACP ("the State Conference") is a non-profit, non-partisan organization that works to improve the political, educational, social, and economic status of African-Americans and other racial and ethnic minorities, to eliminate racial prejudice, and to take lawful action to secure the elimination of racial discrimination, among other objectives. The State Conference has thousands of members who live and/or work in Pennsylvania, many of whom are registered to vote in Pennsylvania and are at risk of disenfranchisement if Defendants fail to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope.

12.    The State Conference advocates for civil rights, including voting rights, for Black Americans, both nationally and in Pennsylvania. Every election cycle, the State Conference engages in efforts to get out the vote, including by educating Black voters in Pennsylvania on different methods of voting, providing educational guides on local candidates to increase voter engagement, and focusing on strategies to eliminate Black voter suppression both nationally and in Pennsylvania.

13.    Defendants' failure to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope will disenfranchise potentially thousands of voters, directly affecting the State Conference's members and interfering with its ability to carry out its mission of increasing voter turnout and

participation. Defendants' failure to count such ballots also has caused and will cause the State Conference to divert resources in this and future elections from its existing voter education and mobilization efforts towards investigating and educating voters about any available cure processes or to advocate that new processes be developed to ensure that voters who are eligible and registered and who submitted their ballots on time are not disenfranchised by a trivial paperwork mistake.

14.     The League of Women Voters of Pennsylvania ("the League") is a nonpartisan statewide non-profit formed in 1920. The League and its members are dedicated to helping the people of Pennsylvania exercise their right to vote, as protected by the law. The League has 2,500 members across Pennsylvania, including in Crawford, Elk, Erie, Forest, McKean, Venango, and Warren Counties. Members of the League are registered voters in Pennsylvania who regularly vote in state and federal elections, including by mail or absentee ballot. The League's members are at risk of disenfranchisement if Defendants fail to count ballots based solely on a missing or incorrect handwritten date on the return envelope.

15.     The League's mission includes voter registration, education, and get-out-the-vote drives. The League conducts voter-registration drives, staffs nonpartisan voter-registration tables, educates incarcerated and formerly incarcerated individuals about their voting rights, and works with local high schools to register new 18-year-old voters. It also maintains an online database called VOTE411, a nonpartisan and free digital voter resource with information available in both

English and Spanish, including voter guides, candidate information, polling rules and locations, and more.

16.     Defendants' failure to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope will disenfranchise potentially thousands of voters, thus directly affecting the League's members and interfering with the League's ability to carry out its mission of increasing voter turnout and participation. And both now and especially in future elections, the Defendants' enforcement of the immaterial envelope-date rule has caused and will cause the League to divert resources from its existing voter-mobilization and education efforts towards identifying voters who neglected to write the date on the return envelope, educating voters about any available cure processes, and advocating for new cure processes to be developed in real time at the county level. For future elections, the League will be forced to dedicate resources to educating voters about strict compliance with hyper-technical rules of Pennsylvania election law so that voters are not disenfranchised over trivial and immaterial paperwork errors.

17.     Philadelphians Organized to Witness, Empower and Rebuild ("POWER") is a Pennsylvania nonprofit founded in 2011 to advance concrete policy changes to transform and strengthen communities. POWER is an organization of more than 100 congregations of various faith traditions, cultures and neighborhoods committed to racial and economic justice on a livable planet. One of its five priority areas is civic engagement and organizing communities so that the voices of all faiths, races and income levels are counted and have a say in government.

18.     POWER engages directly with people who live in the communities that its member congregations serve. Its civic engagement efforts include voter education programs, voter registration drives, information about applying for mail ballots, completing them properly and returning them on time, and "Souls to the Polls" efforts to encourage congregants to vote. In the 2020 election cycle, POWER contacted more than 700,000 voters and plans to reach a similar number in 2022.

19.     In the three weeks leading up to this November's election, POWER launched a three-week bus tour to promote a vision for building a community in Pennsylvania rooted in inclusivity, diversity and justice. The bus tour scheduled numerous events, including voter registration canvasses and voter education programs that provide information on mail voting.

20.     Because of Defendants' failure to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope, POWER must divert its limited resources to re-contacting voters to make sure they dated their ballots. Refusing to count votes based on immaterial paperwork errors has a suppressive effect on the communities POWER serves by erecting yet another roadblock preventing them from voting and having their votes counted. In this, as well as future elections, the Defendants' enforcement of the immaterial envelope-date rule has caused and will cause POWER to divert resources from its existing voter-mobilization and education efforts towards counteracting the disenfranchising effects of the strict enforcement of the envelope-date requirement.

21.     Common Cause Pennsylvania ("Common Cause") is a non-profit political advocacy organization and a chapter of the national Common Cause organization. Common Cause has approximately 36,000 members and supporters in Pennsylvania. These members live in all 67 counties of Pennsylvania, and many members are registered voters in Pennsylvania who are at risk of disenfranchisement if Defendants fail to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope.

22.     Common Cause seeks to increase the level of voter registration and voter participation in Pennsylvania elections, especially in communities that are historically underserved and whose populations have a low propensity for voting. Many of these communities are communities of color.

23.     In preparation for the statewide election, Common Cause mobilizes hundreds of volunteers to help fellow Pennsylvanians navigate the voting process and cast their votes without obstruction, confusion, or intimidation. Common Cause leads the nonpartisan Election Protection volunteer program, which aims to ensure voters have access to the ballot box, provide voters with necessary voting information and answer their questions, quickly identify and correct any problems at polling places, and gather information to identify potential barriers to voting. Because of Defendants' refusal to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope, in this and future elections Common Cause was required and will be required to divert resources from its existing efforts towards educating voters about the drastic consequences of failing to comply with a

trivial paperwork requirement that was previously understood (including by a panel of federal judges) to be superfluous, and about any available cure processes to prevent the disenfranchisement of its members and other Pennsylvania voters.

24.    Black Political Empowerment Project ("B-PEP") is a non-profit, non-partisan organization that has worked since 1986 to ensure that the Pittsburgh African-American community votes in every election. B-PEP has numerous supporters, of various ages and races, throughout the Pittsburgh Region, working with numerous community organizations to empower Black and brown communities.

25.    During every election cycle, B-PEP's work includes voter registration drives, get-out-the-vote activities, education and outreach about the voting process, and election-protection work. B-PEP focuses these activities in predominantly Black neighborhoods in Allegheny County, with some efforts in Westmoreland and Washington Counties. In preparation for the November 8, 2022, election, B-PEP's work has included educating its members and voters in predominantly Black communities about the importance of voting, and about how to vote, either in person or by mail. B-PEP's members include many older voters, who are at particularly high risk of having their ballots disqualified for minor errors, such as omitting the date on the mail-in-ballot-return envelope. B-PEP has an interest in preventing the disenfranchisement of eligible voters who seek to have their votes counted.

26.    Make the Road Pennsylvania ("Make the Road PA") is a not-for-profit, member-led organization formed in 2014 that builds the power of the working-class in Latino and other communities to achieve dignity and justice through organizing,

11

policy innovation, and education services. Make the Road PA's more than 10,000 members are primarily working-class residents of Pennsylvania, many in underserved communities. Many members of Make the Road PA are registered voters in Pennsylvania and are at risk of disenfranchisement if Defendants fail to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope.

27.    Make the Road PA's work includes voter protection, voter advocacy and voter education on, for example, how to register to vote, how to apply for mail-in/absentee ballots, how to return mail-in/absentee ballots, and where to vote. Make the Road PA has run active programs to register voters in historically underserved communities of color, especially in Berks, Bucks, Lehigh, Northampton and Philadelphia Counties.

28.    Defendants' failure to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope will disenfranchise potentially thousands of voters, thus directly affecting Make the Road PA's members and interfering with Make the Road's ability to carry out its mission of increasing voter turnout and participation. Indeed, because Make the Road PA's efforts are focused on communities where some voters are not native English speakers, the risk that some voters may make a minor paperwork mistake in filling out various forms related to mail or absentee ballot voting is heightened. For example, if a voter followed the date sequencing convention used by many other countries, they may have transposed the day before the month in dating their outer return envelope—

and, on information and belief, that would constitute an "incorrect" date under Defendants' standards. Defendants' failure to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope in this and future elections also has caused and will cause Make the Road PA to divert resources from its existing efforts towards focusing voters on trivial, technical mail ballot rules and towards investigating and educating voters about any available cure processes that might be available for the thousands who will invariably be disenfranchised by a trivial paperwork mistake under Defendants' current policy.

29.    Jean Terrizzi is a Philadelphia voter facing disenfranchisement by Defendants solely because her timely-received mail ballot purportedly lacks a date next to the signature on the outer return envelope. Jean Terrizzi is 95 years old and has lived on the same block in Philadelphia for her entire life. She is qualified to vote in Pennsylvania, has been voting regularly in Philadelphia for decades, and has been voting by mail for the past few years. For the November 8, 2022 election, Terrizzi properly requested a mail-in ballot, marked her ballot, and inserted it into the secrecy envelope and then into an outer envelope on which she signed the declaration. Terrizzi believed she had followed all of the instructions and returned her mail ballot weeks before Election Day. She does not have an email address and did not receive any notification from Defendants that there was any problem with her ballot. She learned on the Sunday before Election Day, after being contacted by a reporter, that her ballot would not be counted. She is physically immobile and was not able to attempt to cure by voting provisionally in person. Voting is important to Terrizzi

because she wants to elect leaders who will support her children, grandchildren, and great-grandchildren living in the Philadelphia area, and she wants her vote for federal and state offices to count in this election. A true and correct copy of Terrizzi's declaration is attached as Ex. A.

30.    Barry M. Seastead is a Warren County voter facing disenfranchisement by Defendants solely because his timely-received mail ballot has a purportedly-incorrect date next to the signature on the outer return envelope. Seastead is a 68-year-old retired welder. He has been a registered voter in Warren County for decades, ever since he was legally eligible to vote. He votes regularly, and has been voting by mail for the past few years. For the November 8, 2022 election, Seastead properly requested a mail-in ballot, marked his ballot, and inserted it into the secrecy envelope and then into an outer envelope on which he signed the declaration. Seastead also believes he wrote the date on which he filled out the ballot, and he is unaware of why the Warren County Board of Elections rejected the date he wrote as "incorrect." Because Warren County did not provide him with any notice of its determination that the date he wrote was incorrect, he had no opportunity to cure any defect regarding the date on his outer return envelope prior to Election Day and only learned after Election Day that his vote was not counted. Voting is important to Seastead because he is the grandson of an immigrant and believes that voting is the foundation of this country, and he wants his vote for federal and state offices to count in this election. A true and correct copy of Seastead's declaration is attached as Ex. B.

14

31.     Marjorie Boyle is a Crawford County voter facing disenfranchisement by Defendants solely because her timely-received mail ballot has a missing or purportedly-incorrect date next to the signature on the outer return envelope. Boyle is 76 years old. Before her retirement, she performed clerical work assisting with subsidized housing applications. Boyle is a qualified voter who has been registered to vote in Crawford County since moving there in 2006. For the November 8, 2022 election, Boyle properly requested a mail-in ballot, marked her ballot, and inserted it into the secrecy envelope and then into an outer envelope on which she signed the declaration. She read all the instructions and recalls writing a date while completing her ballot, and she believed she had completed all of the requisite steps. Because Crawford County did not provide her with any notice of the missing date, she had no opportunity to cure any defect regarding the date on her outer return envelope prior to Election Day and only learned after Election Day that her vote was not counted. Voting is important to Boyle because she believes voting allows her to stand up for her rights and issues that are important to her, and she wants her vote for federal and state offices to count in this election. A true and correct copy of Boyle's declaration is attached as Ex. C.

32.     Marlene G. Gutierrez is a York County voter facing disenfranchisement by Defendants solely because her timely-received mail ballot lacks a date next to the signature on the outer return envelope. Gutierrez is 64 years old. She works as a corporate travel agent. She first registered to vote in York County when she was 18 years old, and after residing elsewhere for several years, she most recently registered

to vote in York County when she moved back in September 2020. She has been regularly voting by mail for at least twenty years. For the November 8, 2022 election, Gutierrez properly requested a mail-in ballot, marked her ballot, and inserted it into the secrecy envelope and then into an outer envelope on which she signed the declaration. Gutierrez believed she had followed all of the instructions but learned on Election Day that her ballot would not be counted, and she did not have time to cure her ballot. Voting is important to Gutierrez because she wants her preferred political party to represent her, and she wants her vote for federal and state offices to count in this election. A true and correct copy of Gutierrez's declaration is attached as Ex. D.

33.     Deborah Diehl is a York County voter facing disenfranchisement by Defendants solely because her timely-received mail ballot has a missing or purportedly-incorrect date next to the signature on the outer return envelope. Diehl is 67 years old. She is a retired nurse. Diehl is a qualified voter who participates regularly in elections: she has been registered to vote in York County for 23 years, and has been a registered Pennsylvania voter since she was 18 years old. She has been voting by mail since 2018 because of a disability. For the November 8, 2022 election, Diehl properly requested a mail-in ballot, marked her ballot, and inserted it into the secrecy envelope and then into an outer envelope on which she signed the declaration. Because York County did not provide her with any notice of the missing date, she had no opportunity to cure any defect regarding the date on her outer return envelope prior to Election Day and only learned after Election Day that her vote was

not counted. Voting is important to Diehl because she strongly believes in exercising her constitutional right to vote and she wants her vote for federal and state offices to count in this election. A true and correct copy of Diehl's declaration is attached as Ex. E.

34.     Aynne Margaret Pleban Polinski is a York County voter who is facing disenfranchisement by Defendants solely because her timely-received mail ballot lacks a date next to the signature on the outer return envelope. Polinski is 71 years old. She is a retired art educator, art therapist, and professional artist. Polinski is a qualified voter who participates regularly in elections: she has been a registered voter in York County since 2016 and a registered voter in the Commonwealth of Pennsylvania since she was 18 years old. Polinski has been voting by mail since the June 2020 presidential primary because of the COVID-19 pandemic. For the November 8, 2022 election, Polinski properly requested a mail-in ballot, marked her ballot, and inserted it into the secrecy envelope and then into an outer envelope on which she signed the declaration. Because York County did not provide her with any notice of the missing date, she had no opportunity to cure any defect regarding the date on her outer return envelope prior to Election Day and only learned after Election Day that her vote was not counted. Voting is important to Polinski because she believes everyone has a right to support their preferred candidate and policies, and she wants her vote for federal and state offices to count in this election. A true and correct copy of Polinski's declaration is attached as Ex. F.

35.     Joel Bencan is a Montgomery County voter facing disenfranchisement by Defendants solely because his timely-received mail ballot has a purportedly-incorrect date next to the signature on the outer return envelope. Bencan is 71 years old. He is a retired pharmacist. He has been a registered voter for decades and has participated regularly in elections since the Nixon Administration. Bencan began voting by mail in 2020 because of the COVID-19 pandemic and has continued since then to vote by mail. For the November 8, 2022 election, Bencan properly requested a mail-in ballot, marked his ballot, and inserted it into the secrecy envelope and then into an outer envelope on which he signed the declaration. Bencan also recalls writing the date on which he filled out the ballot, and he is unaware of why the Montgomery County Board of Elections rejected the date he wrote as "incorrect." Because Montgomery County did not provide him with any notice of its determination that the date he wrote was incorrect, he had no opportunity to cure any defect regarding the date on his outer return envelope prior to Election Day. Voting is important to Bencan because he believes each individual vote can make a difference, and he wants his vote for federal and state offices to count in this election. A true and correct copy of Bencan's declaration is attached as Ex. G.

36.     Laurence M. Smith is a Montgomery County voter who is facing disenfranchisement by Defendants solely because his timely-received mail ballot has a missing or purportedly-incorrect date next to the signature on the outer return envelope. Smith is 78 years old. Before his retirement, he worked as an entrepreneur in the medical services industry. He has been a registered voter for decades, and he

has been voting regularly in Montgomery County since moving there in 1991, including voting by mail since 2020. For the November 8, 2022 election, Smith properly requested a mail-in ballot, marked his ballot, and inserted it into the secrecy envelope and then into an outer envelope on which he signed the declaration. Smith believed he had followed all of the necessary steps to complete the declaration, and he is unaware of what the Montgomery County Board of Elections concluded was wrong with the date form. Because Montgomery County did not provide him with any notice of its determination about the date form on his outer return envelope, he had no opportunity to cure any defect prior to Election Day. Voting is important to Smith because Smith is concerned with the increasing polarization across the country, and he wants his vote for federal and state offices to count in this election. A true and correct copy of Smith's declaration is attached as Ex. H.

37.     Defendant Acting Secretary Leigh Chapman has the duty "[t]o receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast for candidates and upon [ballot] questions as required by the provisions of this act; to proclaim the results of such primaries and elections, and to issue certificates of election to the successful candidates at such elections." 25 Pa. Stat. § 2621(f). Defendant Acting Secretary Chapman has issued guidance to county boards of elections that timely-submitted mail-in ballots that are determined to have a missing or incorrect date on the return envelope must be segregated and excluded from tabulation for the 2022 election.

38.     Defendant County Boards of Elections are county-level executive agencies established under the Pennsylvania Election Code with jurisdiction over the conduct of primaries and elections in each of their respective counties. *See* 25 Pa. Stat. Ann. § 2641. Each elections board Defendant manages all aspects of elections in its respective county. *Id.* Their authority includes canvassing and computing the votes cast in each county's election districts and then certifying the results of each race to Pennsylvania's Secretary of the Commonwealth. *See* 25 Pa. Stat. Ann. § 2642.

## FACTS

### A.     Pennsylvania's Mail Ballot Rules

39.     Pennsylvania has long provided absentee-ballot options for voters who cannot attend a polling place on election day. *See* 25 P.S. § 3146.1–3146.9. In 2019, Pennsylvania enacted new mail-in voting provisions, which allow all registered, eligible voters to vote by mail. Act of Oct. 31, 2019, P.L. 552, No. 77, § 8.

40.     A voter seeking to vote by mail must complete an application and have their identity and qualifications verified. The voter must provide their name, address, and proof of identification to their county board of elections. 25 P.S. §§ 3146.2, 3150.12. Such proof of identification may include, among other things, a Pennsylvania driver's license number or the last four digits of the voter's social security number. 25 P.S. § 2602(z.5)(3). As part of the application process, voters provide all the information necessary for county boards of elections to verify that they are qualified to vote in Pennsylvania—namely, that they are at least 18 years old, have been a U.S. citizen for at least one month, have resided in the election district

for at least 30 days, and are not incarcerated on a felony conviction. 25 Pa. C.S. § 1301.

41.     After the application is submitted, the county board of elections confirms applicants' qualifications by verifying their proof of identification and comparing the information on the application with information contained in a voter's record. 25 P.S. §§ 3146.2b, 3150.12b; *see also id.* § 3146.8(g)(4).[1] The county board's determinations on that score are conclusive as to voter eligibility unless challenged prior to Election Day. *Id.* Once the county board verifies the voter's identity and eligibility, it sends a mail-ballot package that contains a ballot, a "secrecy envelope" marked with the words "Official Election Ballot," and the pre-addressed outer return envelope, on which a voter declaration form is printed (the "Return Envelope"). *Id.* §§ 3146.6(a), 3150.16(a). Poll books kept by the county show which voters have requested mail ballots and which have returned them. *Id.* §§ 3146.6(b)(3), 3150.16(b)(3).

42.     At "any time" after receiving their mail-ballot package, the voter marks their ballot, puts it inside the secrecy envelope, and places the secrecy envelope in the Return Envelope. 25 P.S. §§ 3146.6(a), 3150.16(a). The voter delivers the ballot, in the requisite envelopes, by mail or in person to their county board of elections. To be considered timely, a county board of elections must receive a ballot by 8 p.m. on Election Day. *Id.* §§ 3146.6(c), 3150.16(c). Upon receipt of a mail ballot, county boards

---

[1] *See also* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* at 2 (Sept. 11, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf.

of elections stamp the Return Envelope with the date of receipt to confirm its timeliness and log it in the Statewide Uniform Registry of Electors ("SURE") system, the voter registration system used to generate poll books.[2]

43.     Timely absentee and mail-in ballots that county boards of elections have verified consistent with the procedures set forth in § 3146.8(g)(3), that have not been challenged, and for which there is no proof that the voter died prior to Election Day are counted and included with the election results. *Id*. § 3146.8(d), (g)(4).

44.     Pennsylvania's adoption of mail voting has been a boon for voter participation in the Commonwealth. For example, in 2020, 2.7 million Pennsylvanians voted by absentee or mail ballot.[3]

45.     In Pennsylvania's 2022 general election, approximately 1.4 million mail ballots were requested.

## B.     Litigation Over the Envelope-Date Requirement

46.     This case involves the instructions regarding the Return Envelope in which a voter places their mail ballot, in particular the direction that a voter "shall . . . fill out, date and sign the declaration printed on such envelope." *See* 25 P.S. §§ 3146.6(a), 3150.16(a). The issue is whether a qualified, registered voter who (1) applies for and obtains a mail ballot, (2) fills it out, places it in the secrecy envelope

---

[2] *See, e.g.,* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* at 2–3 (Sept. 11, 2020).

[3] Pa. Dep't of State, *Report on the 2020 General Election* at 9 (May 14, 2021), https://www.dos.pa.gov/VotingElections/Documents/2020-General-Election-Report.pdf. For ease of reference, the term "mail ballots" is used herein to encompass both absentee and mail ballots. The relevant rules governing the treatment of absentee and mail ballots are identical.

and the Return Envelope, and signs the declaration on the Return Envelope, and then (3) timely returns the envelope to their local board of elections by 8 p.m. on Election Day as confirmed by an official date stamp, may nevertheless have their vote invalidated because they did not add a superfluous handwritten date next to their signature on the Return Envelope, or because the date they wrote was deemed "incorrect" by a county board of elections.

47.     The envelope-dating provision has been the subject of repeated litigation and guidance from the Department of State, including a unanimous Third Circuit panel decision (which was later vacated as moot) that refusing to count ballots on that basis violates federal law.

     **i.**   *In re Canvass*

48.     In 2020, the Supreme Court of Pennsylvania, in the context of a fast-moving post-election lawsuit, concluded 3-1-3 that otherwise valid mail ballots contained in signed but undated Return Envelopes would be counted in that election. *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1062 (Pa. 2020).

49.     The decision from the Supreme Court of Pennsylvania primarily concerned the construction of state law and did not produce a single majority opinion. But a majority of the Court suggested (albeit without deciding) that invalidating votes for failure to comply with the envelope-dating provision "could lead to a violation of federal law by asking the state to deny the right to vote for immaterial reasons," contrary to the Materiality Provision. *In re Canvass*, 241 A.3d 1058 at 1074

n.5 (opinion announcing the judgment for three Justices); *id.* at 1089 n.54 (Wecht, J.,

concurring and dissenting) (expressing similar concern). Indeed, Justice Wecht was

so concerned that he urged the Pennsylvania General Assembly to review the Election

Code with "[the Materiality Provision] in mind." *Id.*

### ii. *Migliori*

50.     Earlier this year, a unanimous panel of the Third Circuit concluded that

disenfranchising voters based on the envelope-dating provision would violate the

Materiality Provision. *Migliori*, 36 F.4th at 162–64; *id.* at 164–66 (Matey, J.,

concurring).[4]

51.     In the 2021 Lehigh County elections, 257 timely-received mail ballots

(1% of all mail ballots) were initially excluded based on mail-ballot voters' inadvertent

failure to handwrite a date on the Return Envelope. Three-quarters of the affected

voters were over 65 years old, and fifteen of them were older than 90.[5]

52.     Consistent with the then-current guidance from the Secretary of the

Commonwealth, the Lehigh County Board of Elections counted ballots where the

Return Envelopes had "wrong" dates on them, *e.g.*, a voter wrote their own birthdate

instead of the date they signed the envelope. As the county clerk explained, he did so

because state law "doesn't say what date."

---

[4] The undersigned counsel represented the plaintiff voters at all stages of the
*Migliori* litigation.

[5] These and other facts from the *Migliori* record are drawn from Joint App'x,
*Migliori v. Cohen,* No. 22-1499 (3d Cir.), Dkt.33-2.

53.     The Lehigh County Board of Elections ultimately voted to count the 257 mail ballots without a date on the outer envelope, explaining, among other reasons, that the voters had made a "technical error," that there was no question that the ballots were "received on time," that "the signatures [on the Return Envelopes] match the poll book," and that the directive on the Return Envelope to include a date was in small print and could have been made "much more visible to the voters."

54.     However, a candidate for County Court of Common Pleas, who was then leading the vote count by less than 257 votes, challenged the county board's decision in state court. A divided panel of the Commonwealth Court eventually ruled in his favor in an unpublished decision that briefly mentioned, but did not resolve, the Materiality Provision issue. *See Ritter v. Lehigh Cnty. Bd. of Elections*, No. 1322 C.D. 2021, 272 A.3d 989 (Tbl.), 2022 WL 16577 (Pa. Commw. Ct. Jan. 3, 2022), *appeal denied*, 271 A.3d 1285 (Pa. 2022).

55.     A bipartisan group of voters then sued in federal court. After a district judge dismissed their case on procedural grounds, a unanimous three-judge panel of the U.S. Court of Appeals for the Third Circuit reversed, upholding plaintiffs' right to have their votes counted under federal law. *See Migliori*, 36 F.4th at 162–64; *see also id.* 164–66 (Matey, J., concurring). The court concluded that because omitting the handwritten date on the Return Envelope was not "material in determining whether [a voter] is qualified to vote under Pennsylvania law," disenfranchising voters based on that omission violated federal law, namely, the Materiality Provision. *Id.* at 162–63. Judge Matey concurred that the defendants had offered "no evidence,

and little argument, that the date requirement for voter declarations under the Pennsylvania Election Code ... is material as defined in § 10101(a)(2)(B)." *Migliori*, 36 F.4th at 165 (Matey, J., concurring). The court ordered Lehigh County to count the 257 mail ballots in undated envelopes.

56.    The Court of Common Pleas candidate pressing the appeal, David Ritter, then sought a stay from the U.S. Supreme Court.

57.    The Supreme Court denied the stay, with three justices dissenting, thus allowing (indeed, requiring) Lehigh County to count the 257 mail ballots. *See Ritter v. Migliori*, 142 S. Ct. 1824 (2022) (mem.). The 2021 election was then certified with all the ballots counted, which the parties agreed mooted the controversy. The Supreme Court later granted Ritter's request to vacate the Third Circuit's decision as moot, pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), which the Court did in a short-form order that did not question the correctness of the Third Circuit's decision, *see Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022). Vacatur for mootness is not a merits determination and decisions that have been vacated as moot are still "persuasive" authority. *See Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993).

### iii.    *McCormick and Berks County*

58.    After the Third Circuit's *Migliori* decision, the Commonwealth Court of Pennsylvania twice held that such mail ballots must be counted as a matter of both state and federal law in suits arising out of the 2022 primary. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998, at *12–*29 (Pa. Commw.

26

Ct. Aug. 19, 2022); *McCormick for U.S. Senate v. Chapman*, No. 286 M.D. 2022, 2022 WL 2900112, at \*9–\*15 (Pa. Commw. Ct. June 2, 2022). These decisions agreed with the *Migliori* panel that the federal Materiality Provision required that result. *See, e.g.*, *Berks Cnty.*, 2022 WL 4100998, at \*12–\*29 (concluding that "the failure of an elector to handwrite a date on the declaration on the return envelope does not relate to the timeliness of the ballot or the qualification of the elector").

59.    Consistent with those decisions, the Secretary of the Commonwealth advised counties in the months leading up to the 2022 election to count otherwise valid and timely-received mail ballots even where voters omitted a handwritten date, or wrote a plainly wrong date like a birthdate, on the Return Envelope.[6] The Secretary reaffirmed that guidance after the U.S. Supreme Court vacated on mootness grounds the Third Circuit's *Migliori* decision.[7]

### iv.    *Ball v. Chapman*

60.    On October 16, 2022, less than a week after the vacatur of the *Migliori* decision, and with voting in the 2022 election already underway, a group of partisan petitioners brought a King's Bench petition in the Supreme Court of Pennsylvania

---

[6] *See* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* (Sept. 26, 2022), https://www.dos.pa.gov/ VotingElections/OtherServicesEvents/Documents/2022-09-26-Examination-Absentee-Mail-In-Ballot-Return-Envelopes-3.0.pdf (advising county boards of elections to "include[] in the canvass and pre-canvass ... [a]ny ballot-return envelope that is undated or dated with an incorrect date but has been timely received").

[7] *See* Pennsylvania Pressroom, *Acting Secretary of State Issues Statement on SCOTUS Order on Undated Mail Ballots* (Oct. 11, 2022), https://www.media.pa.gov/ Pages/State-details.aspx?newsid=536.

seeking to invalidate mail ballots with no handwritten date on the Return Envelope
or with an "incorrect" handwritten date on the Return Envelope.

61.     On November 1, 2022, the Supreme Court of Pennsylvania issued an
order directing that the mail ballots at issue should be segregated and not counted,
but indicating that the Court, which currently has only six justices, was deadlocked
on whether the federal Materiality Provision prohibited disenfranchising voters on
that basis.

62.     Following that decision, on November 1, 2022, the Department of State's
Deputy Secretary for Elections and Commissions, Jonathan Marks, sent an email to
counties advising elections officials of the Supreme Court of Pennsylvania's order to
"refrain from counting any absentee and mail-in ballots received for the November 8,
2022 general election that are contained in undated or incorrectly dated outer
envelopes," and to "**segregate** and **preserve** any ballots contained in undated or
incorrectly dated outer envelopes." Deputy Secretary Marks instructed that the
elections officials "**must remember to do two things** as [they] pre-canvass and
canvass absentee and mail-in ballots: <u>Segregate</u> AND <u>preserve</u> these undated and
incorrectly dated ballots; and <u>Do not count</u> the votes cast on ballots with undated or
incorrectly dated ballots." A true and correct copy of the email is attached as Ex. I (all
emphasis in original email).

63.     On November 3, Acting Secretary Chapman issued new guidance,
instructing counties that "ballots which are administratively determined to be
undated or incorrectly dated" should be coded as "CANC – NO SIGNATURE within

28

the SURE system" (*i.e.*, should be cancelled and not accepted) and "segregated from other ballots." A true and correct copy of the guidance is attached as Ex. J.

64.     On November 5, 2022, the Supreme Court of Pennsylvania issued a supplemental order stating that "incorrectly dated outer envelopes" include "(1) mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022 through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022 through November 8, 2022." A true and correct copy of that supplemental order is attached as Ex. K.

### C.     Pennsylvania's 2022 Election

65.     On information and belief, as of November 15, 2022, the Defendant county boards of elections had recorded their receipt of 1,244,072 mail ballots in the Statewide Uniform Registry of Electors.

66.     In the 2022 midterm election, which involved elections for the U.S. Senate, U.S. House of Representatives, and Pennsylvania House and Senate offices, the Defendant county boards of elections segregated thousands of mail-in ballots based on missing or incorrect dates on their outer return envelopes. For example, on information and belief:

   a. As of November 16, 2022, Philadelphia had segregated 2,143 ballots with no dates on their return envelopes and 460 ballots that listed purportedly-incorrect dates on their return envelopes.

   b. As of November 7, 2022, Allegheny County had segregated 369 ballots with no dates on their return envelopes and 551 ballots that listed purportedly-incorrect dates on their return envelopes.

   c. As of November 18, 2022, Lehigh County had segregated a total of 223 ballots because there were no dates or purportedly-incorrect dates on their return envelopes.

d. As of November 5, 2022, Lackawanna County reported that it had segregated 186 ballots with no dates on their return envelopes.

e. As of November 22, 2022, Erie County had segregated 122 ballots with no dates on their return envelopes and 49 ballots that listed purportedly-incorrect dates on their return envelopes.

f. As of November 7, 2022, Beaver County had segregated 159 ballots with missing or purportedly-incorrect dates on their return envelopes.

g. As of November 7, 2022, Butler County had segregated 64 ballots with no dates on their return envelopes.

h. As of November 21, 2022, Blair County had segregated 26 ballots with no dates on their return envelopes and 28 ballots that listed purportedly-incorrect dates on their return envelopes.

i. As of November 18, 2022, Crawford County had segregated a total of 51 ballots because there were no dates or purportedly-incorrect dates on their return envelopes.

j. As of November 7, 2022, Forest County had segregated 39 ballots with missing or incorrect dates on their return envelopes.

k. As of November 7, 2022, Perry County had segregated 25 ballots with no dates on their return envelopes and 4 ballots that listed purportedly-incorrect dates on their return envelopes.

l. As of November 10, 2022, Bucks County had segregated 19 ballots with no dates on their return envelopes and 7 ballots that listed purportedly-incorrect dates on their return envelopes.

m. As of November 14, 2022, Warren County had segregated 10 ballots with no dates on their return envelopes and 8 ballots that listed purportedly-incorrect dates on their return envelopes.

n. As of November 7, 2022, Mifflin County had segregated 7 ballots with no dates on their return envelopes.

o. As of November 7, 2022, Cameron County had segregated 5 ballots with no dates on their return envelopes.

p. As of November 5, 2022, Union County had segregated 5 ballots with no dates on their return envelopes.

67.     The above represents only a fraction of the total number of voters affected by this issue, as Plaintiffs have not yet been able to gather data for many of the counties not listed above. In Erie County, for instance, 26,170 voters submitted mail or absentee ballots, meaning the 171 segregated ballots represent approximately .7% of all such ballots cast in that county. And in Forest County, the 39 segregated ballots represent more than 9% of the 412 total mail ballots submitted in that county. Well over a million people voted by mail ballot in 2022. Across the Commonwealth, .7% of all mail ballot voters would represent more than 8,129 votes, and 9% of mail ballot voters would represent more than 117,764 votes.

68.     On information and belief, at least 20 counties provided no advance notice to voters that their ballots would not be counted due to the envelope-date rule and/or forbade voters who had their ballot set aside due to the immaterial envelope-date rule from voting provisionally to cure the problem. Many voters, including Plaintiffs Seastead, Boyle, Diehl, Polinski, Bencan, and Smith, accordingly had no opportunity to cure any purported defect involving their date because their county boards of elections failed to provide them with any such notice before Election Day.

69.     Moreover, some voters who did receive notice, including Plaintiffs Terrizzi and Gutierrez, were often unable to vote in person on Election Day given their health circumstances and/or because they were not afforded sufficient time to cure their mistake.

70.     Voters—including individual Plaintiffs and organizational Plaintiffs' members—will be disenfranchised if Defendants refuse to count their ballots based on missing or purportedly-incorrect dates on the outer return envelopes.

71.     Litigation over the past year has demonstrated that it is Pennsylvania voters who will lose unless this Court enjoins Defendants from disqualifying timely submitted ballots from eligible voters simply because they omitted a meaningless date, or wrote the wrong date, on the Return Envelope. For example, the plaintiffs in *Migliori* were senior citizens who had voted in Lehigh County for decades. They were Republicans and Democrats alike. Like the individual voter Plaintiffs here, and like thousands of the organizational Plaintiffs' members, they were regular people—a foundry blaster, a teacher, a business owner—who vote in almost every election. They filled out their mail ballots, sent them in on time, and signed the declaration on the Return Envelope, but made a mistake on the Return Envelope by omitting a handwritten date.

72.     Moreover, here as in *Migliori*, the affected voters are significantly older than both other Pennsylvanians who voted by mail and all registered Pennsylvania voters. Philadelphia provides a compelling example: There, on information and belief, almost 50% of the affected voters are 65 or older, while only 36% of other Philadelphians who voted by mail are 65 or older and only 20% of all registered Philadelphia voters are 65 or older. And around 23% of the affected voters are 75 or older, while only 15% of other Philadelphians who voted by mail are 75 or older and only 8% of all registered Philadelphia voters are 75 or older.

73. The challenged envelope-date rule disenfranchises even voters who reasonably believed they were complying with all of the proper requirements to cast their ballot. For example, on information and belief, if a voter who was raised in or spent time living overseas followed the date sequencing convention used by many other countries (*i.e.*, day, then month, then year) in dating their outer return envelope, those voters could have their ballots invalidated based on an "incorrect" date.

74. The Materiality Provision of the Civil Rights Act and the Fourteenth Amendment of the United States Constitution requires that the ballots at issue here be counted. The disenfranchisement of the affected voters in 2022 and future elections constitutes irreparable harm for which there is no adequate remedy at law and for which this Court's intervention is required.

## CLAIM FOR RELIEF

### Count I: Rejection of Ballots for Immaterial Paperwork Errors or Omissions in Violation of the Materiality Provision of the Civil Rights Act (52 U.S.C. § 10101(a)(2)(B), 42 U.S.C. § 1983)

75. Plaintiffs rely upon all the paragraphs of this Complaint, which are incorporated into this Count I as if fully restated here.

76. The Materiality Provision of the Civil Rights Act prohibits disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (formerly codified at 42 U.S.C. § 1971).

77.     The Civil Rights Act directs that "vote" in this context means "all action necessary to make a vote effective including**,** but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." *Id*. § 10101(a)(3)(A), (e).

78.     The challenged conduct here tracks exactly what the statute forbids: denying voters the right to have their ballot "counted and included in the appropriate totals of votes cast" based on an immaterial paperwork error on a form made requisite to voting. Specifically, Defendants are poised to invalidate voters' mail ballots:

(1) based on an "omission" (namely, leaving off the handwritten date) or an "error" (namely, writing a purportedly incorrect date);

(2) on a "record or paper" that is "made requisite to voting" (namely, the form declaration printed on the outer Return Envelope);

(3) that is immaterial to whether the voter "is qualified under State law to vote in [the] election," or for that matter on whether the mail ballot was timely received (namely, because the handwritten date on the envelope has no bearing on whether a voter meets the age, residency, or citizenship and felony status requirements of state law, or whether the county received the ballot on time.

52 U.S.C. § 10101(a)(2)(B), (e).

79.     In Pennsylvania, state law establishes the only "qualifications" needed to "be entitled to vote at all elections." *See* Pa. Const. art. VII, § 1. In particular, a voter must be at least 18 years old, have been a U.S. citizen for at least one month, have resided in the election district for at least 30 days, and is not presently incarcerated on a felony conviction. 25 Pa. C.S. § 1301.

80.     A voter's failure to handwrite the date next to their signature on the ballot return envelope is not material to determining their qualification to vote. Indeed, as set forth *supra*, Pennsylvania law requires each mail-in voter to demonstrate eligibility and qualification to vote before the voter is even issued a mail-in ballot in the first place. *See* 25 P.S. §§ 3146.2, 3150.12.

81.     The date on which a voter signed their return envelope is also immaterial to determining the timeliness of the voter's ballot. Because a ballot's timeliness under Pennsylvania law is determined by when it was received and stamped by the county board of elections, 25 P.S. §§ 3146.6(c), 3150.16(c), the date and time at which mail ballots are returned is objectively verifiable—regardless of what, if any, date the voter wrote on the return envelope. *Accord Migliori*, 36 F.4th at 164 ("Upon receipt, the [Board] timestamped the ballots, rendering whatever date was written on the ballot superfluous and meaningless.").

82.     The rejection of otherwise-valid ballots for immaterial errors or omissions on voting-related paperwork is contrary to the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and will result in the disenfranchisement

of Pennsylvania voters who submitted timely mail-in ballots in the 2022 election and all future elections, unless and until enjoined by this Court.

**Count II: Rejection of Certain Ballots for Immaterial Paperwork Errors or Omissions in Violation of the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983)**

83.    Plaintiffs rely upon all the paragraphs of this Complaint, which are incorporated into this Count II as if fully restated here.

84.    The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

85.    "[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966). And when an equal protection claim involves differential treatment of the right to vote, the Supreme Court has required the application of strict scrutiny because of "the significance of the franchise as the guardian of all other rights." *Plyler v. Doe*, 457 U.S. 202, 217 n.15 (1982) (collecting cases).

86.    Defendants' interpretation of Pennsylvania law creates differential treatment of the right to vote. Under their interpretation, the Pennsylvania Election Code requires invalidating the ballots of voters who write no date or a purportedly-incorrect date on the outer return envelope in which they submit their mail ballot to the board of elections. 25 P.S. §§ 3146.6(a), 3150.16(a). Yet state law applies a different rule to military and overseas voters who vote by mail, stating that a "voter's

mistake or omission in the completion of a document" shall *not* invalidate their ballot "as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote." 25 Pa. C.S. § 3515(a).

87.     Defendants have no legitimate interest, let alone a compelling one, to invalidate the mail ballots of otherwise-qualified domestic voters based on trivial paperwork errors while counting the mail ballots of military and overseas voters who make the same immaterial mistake. Nor could the chosen means of advancing such an interest—disenfranchising qualified, registered domestic voters—be narrowly tailored to achieving any interest the Commonwealth might proffer.

88.     Disqualifying some, but not all, voters based on a missing or incorrect date on the return envelope of a mail ballot is especially pernicious because that date has "no relation to voting qualifications." *Harper*, 383 U.S. at 670. "[T]he right to vote is too precious, too fundamental to be so burdened or conditioned" on such basis. *Id.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and provide the following relief:

1.     A declaration that rejecting timely submitted mail-in ballots based solely on a missing or incorrect date next to the voter's signature on the return envelope violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and the Fourteenth Amendment of the United States Constitution;

2.     Injunctive relief preliminarily and permanently enjoining Defendants and all persons acting on their behalf from:

a. Rejecting and/or not counting otherwise-valid mail-in ballots timely submitted by 8:00 p.m. on Election Day, in 2022 and future elections, based solely on a missing or incorrect date on the outer return envelope;

b. Certifying any future election in the Commonwealth of Pennsylvania or any Pennsylvania county or locality without counting such mail-in ballots; and

c. Refusing to include these ballots when reporting the 2022 election totals on Commonwealth and County websites, voter files, record books, and any other public tallies or recordings;

3. Nominal damages to Plaintiffs Terrizzi, Seastead, Boyle, Gutierrez, Diehl, Polinski, Bencan, and Smith for the completed violation of their legal right to vote under both the Materiality Provision and the Fourteenth Amendment;

4. An award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Any such other relief as this Court deems just and appropriate.

Dated: November 30, 2022

Ari J. Savitzky
Megan C. Keenan
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

David Newmann (PA 82401)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com

Respectfully submitted,

/s/ Witold J. Walczak
Witold J. Walczak (PA 62976)
Richard T. Ting (PA 200438)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org
rting@aclupa.org

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org

*Counsel for the Pennsylvania State
Conference of the NAACP, League of
Women Voters of Pennsylvania,
Philadelphians Organized to Witness,
Empower and Rebuild, Common Cause
Pennsylvania, Black Political
Empowerment Project, Make the Road
Pennsylvania, Jean Terrizzi, Barry M.
Seastead, Marjorie Boyle, Marlene G.
Gutierrez, Deborah Diehl, Aynne
Margaret Pleban Polinski, Joel Bencan,
and Laurence M. Smith*