IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNYSLVANIA STATE CONFERENCE OF THE NAACP, et al, <br>     Plaintiffs, <br><br> v. <br><br> LEIGH CHAPMAN, <br> Acting Secretary of the Commonwealth, et al, <br>     Defendants. | Civil Action No. 1:22-CV-339 <br><br> Re: Motion to Intervene <br> ECF No. 27 |

## MEMORANDUM ORDER

Presently before this Court is a motion to intervene. ECF No. 27.

**Relevant Procedural History**

In 2019, the Commonwealth of Pennsylvania expanded mail-in voting. The new provisions have increased voter participation, but have been the subject of intense and repeated litigation in state and federal courts.

This action was originally brought by six organizations: The Pennsylvania State Conference of the NAACP ("State Conference")[1]; The League of Women Voters of Pennsylvania (the "League")[2]; Philadelphians Organized to Witness, Empower and Rebuild

---

[1] The State Conference has thousands of members who live and/or work in the Commonwealth, many of whom are registered to vote in Pennsylvania. ECF No. 1, ¶ 9. As part of its work promoting civil rights, the State Conference advocates for voting rights of Black Americans. The State Conference engages in efforts to get out the vote and focuses on strategies to eliminate voter suppression. *Id.* at ¶ 10.

[2] The League and its members are dedicated to helping the people of Pennsylvania exercise their right to vote. *Id.* at ¶ 12. The mission of the League includes voter registration, education, and

1

("POWER")[3]; Common Cause Pennsylvania ("Common Cause")[4]; Black Political Empowerment Project ("B-PEP")[5]; and Make the Road Pennsylvania ("Make the Road PA")[6]. All six organizations challenge the disqualification of undated and incorrectly dated mail-in ballots and allege that their members are at risk of disenfranchisement. The named Defendants are Leigh Chapman, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania, as well as each of the sixty-seven county Boards of Elections of the Commonwealth. As relief, Plaintiffs seek the following:

---

get-out-the-vote drives. The League conducts voter registration drives and maintains an online database with resource information including voter guides, candidate information, polling rules and locations and more. *Id.* at ¶ 13.

[3] POWER is an organization of over 100 faith congregations committed to racial and economic justice. One of its five priority areas is civic engagement and organizing communities so that the voices of all faiths, races and income levels have a say in government. *Id.* at ¶ 15. POWER's civil engagement efforts include voter education programs, voter registration drives, information about applying for and correctly completing mail in ballots.

[4] Common Cause is a political advocacy organization with members living in all sixty-seven counties of Pennsylvania and many members are registered voters. The organization seeks to increase voter registration and participation especially in communities that are historically underserved and whose populations have a low propensity for voting. *Id.* at ¶¶ 19-20. Organization mobilizes hundreds of volunteers to help Pennsylvanians to navigate the voting process and cast their votes without obstruction, confusion, or intimidation. It leads the Election Protection program which aims to ensure voters have access to the ballot box, provide voters with necessary voting information and answer their questions, quickly identify, and correct any problems at polling places, and gather information to identify potential barriers to voting. *Id.* at ¶ 21.

[5] B-PEP is a group working to ensure that Pittsburgh African American community members vote in every election. *Id.* at ¶ 22. B-PEP's work includes voter registration drives, get-out-the-vote activities, education and outreach about the voting process, and election-protection work. B-PEP's members include many older voters, who are at particularly high risk of having their ballots disqualified for minor errors, such as omitting the date on the mail-in ballot return envelope. *Id.* at ¶ 23.

[6] Make the Road's work includes voter protection, voter advocacy and voter education on, for example, how to register to vote, how to apply for mail-in/absentee ballots, how to return such ballots, and where to vote. It has active programs to registers voters in historically underserved communities of color. *Id.* at ¶ 25.

2

A declaration that rejecting timely submitted mail-in ballots based solely on a missing or incorrect date next to the voter's signature on the Return Envelope violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 1001(a)(2)(B).

Injunctive relief preliminarily and permanently enjoining Defendants and all persons acting on their behalf from:

    a. Rejecting and/or not counting otherwise-valid mail-in ballots timely submitted by 8:00 p.m. on Election Day, in 2022, and future elections, based solely on a missing or incorrect date on the outer return envelope; and

    b. Certifying any further election in the Commonwealth of Pennsylvania or any Pennsylvania county or locality without counting such mail-in ballots.

ECF No. 1.

On November 30, 2022, an Amended Complaint was filed adding several individual Plaintiffs: Jean Terrizzi of Philadelphia County; Barry Seastead of Warren County; Marjorie Boyle of Crawford County; Marlene Gutierrez, Deborah Diehl, and Aynne Margaret Pleban Polinski of York County; and Joel Bencan and Laurence Smith of Montgomery County.[7] ECF No. 121. Besides adding Plaintiffs, the Amended Complaint raises a Fourteenth Amendment claim and seeks additional relief of: a declaration that Pennsylvania's envelope dating requirement violates the Fourteenth Amendment; injunctive relief enjoining Defendants from refusing to include these ballots when reporting the 2022 election totals on Commonwealth and County websites, voter files, record books, and any other public tallies or recordings; and nominal damages to the eight individually named Plaintiffs for the violation of their legal right to vote under both the Materiality Provision and the Fourteenth Amendment.

---

[7] Each of these named individuals were allegedly disenfranchised by Defendants' actions in the November 2022 midterm election. ECF No. 121, ¶ 5.

Before the filing of the First Amended Complaint, certain Republican Committees[8] and several individual voters[9] sought leave to intervene in this matter. ECF No. 27.[10]

The Republican Committees include the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania. Together, the Committees seek intervention claiming that they have a substantial and particularized interest in ensuring that the Commonwealth of Pennsylvania administers free and fair elections. ECF No. 30, page 7. The proposed individual intervenors are "registered electors" who "consistently vote in each election." They claim that they have a particularized interest in knowing the exact requirements for mail-in ballots to be counted. Moreover, they claim that the counting of undated and incorrectly dated ballots in violation of Commonwealth Election Code threatens to interfere with their right to free and equal elections. They argue that their validly cast votes "will be

---

[8] The Republican National Committee is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14); the National Republican Congressional Committee is the national congressional committee of the Republican Party; and the Republican Party of Pennsylvania is a major political party and is federal registered as a state committee under federal law.

[9] The individual voters are David Ball of Washington County; James Bee of Cambria County; Jesse Daniel of Indiana County; Gwendolyn Mae DeLuca and Lynn Marie Kalcevic of Beaver County; Ross Farber of Westmoreland County; Vallerie Sicilano-Biancaniello of Delaware County; and S. Michael Streib of Butler County. Although named in the caption of the motion to intervene and the proposed order granting intervention, there are no factual details regarding Debra Biro. There is no information explaining who she is, where she resides, or her interest in this case. The other proposed intervenors are described as being registered voters who consistently vote in each election.

[10] In accordance with Federal Rule of Civil Procedure 24(c) which requires that an application for intervention "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought," the intervenors have attached a proposed motion to dismiss and answer to their filing. ECF No. 27-1; 27-2. Following the filing of the Amended Complaint, the proposed intervenors filed a proposed motion to dismiss. ECF No. 40; 41.

4

canceled out and diluted by the counting of undated or incorrectly dated ballots." ECF No. 30, page 5.

Plaintiffs, the Acting Secretary, and six county Boards of Elections[11] filing jointly ("Six Boards") have filed opposition briefs. ECF No. 88; ECF No. 89; and ECF No. 93, respectfully. The proposed intervenors have filed a Reply brief. ECF No. 94.

**The Allegations of the Amended Complaint**

The Commonwealth's newly enacted mail-in voting provisions allow all eligible voters to vote by mail. ECF No. 121, ¶ 39. The mail-in Ballot Package, which is mailed to voters, contains a Ballot, a Secrecy Envelope marked with the words "Official Election Ballot," and the pre-addressed outer Return Envelope on which a voter declaration form is printed. *Id*. at ¶ 41. State law provides that at "any time" after receiving the mail-in Ballot Package, the voter marks their Ballot, puts it inside the Secrecy Envelope, and places the Secrecy Envelope into the Return Envelope. *Id*. at ¶ 42. The voter is instructed to " … fill out, date and sign the declaration printed" on the Return Envelope. *Id*. at ¶ 46, *citing* 25 P.S. § § 3146.6(a), 3150.16(a). This

---

[11] The Six Boards jointly opposing the intervention of the individuals are some of the most populous in the Commonwealth and include Philadelphia, Allegheny, Bucks, Chester, Montgomery, and Delaware counties.

5

envelope dating requirement is the subject of this litigation[12], as well as much prior litigation. *Id.*[13]

The most recent litigation in state court commenced shortly before the November election. On October 16, 2022, with the 2022 election for mail-in ballots already underway, a group brought a King's Bench petition in the Supreme Court of Pennsylvania seeking to invalidate mail ballots with no handwritten date on the Return Envelope or with an "incorrect" handwritten date[14] on the Return Envelope. *Id.* at ¶ 60. On November 1, 2022, the Supreme Court of Pennsylvania issued an order directing that the mail-in ballots at issue should be

---

[12] According to Plaintiffs, the issue here is whether a qualified, registered voter who (1) applies for and obtains a mail ballot, (2) fills it out, places it in the Secrecy Envelope and the Return Envelope, and signs the Return Envelope, and then (3) timely returns the envelope to their local board of elections by 8 p.m. on Election Day as confirmed by an official date stamp, may nevertheless have their vote invalidated because they did not add a superfluous handwritten date next to their signature on the Return Envelope, or because the date they wrote was deemed "incorrect" by a county board of elections. *Id.* at ¶ 46.

[13] *See In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Elec.*, 241 A.3d 1058, 1074 (Nov. 30, 2020) (majority suggested without deciding that invalidating votes for failure to comply with the envelope-dating provision "could lead to a violation of federal law by asking the state to deny the right to vote for immaterial reasons" contrary to the federal Materiality Provision); *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. May 27, 2022) (holding that Materiality Provision of the civil rights statute governing voter qualifications and eligibility conferred federal right enforceable by private citizens through § 1983 and, in dicta, opining that "[i]gnoring ballots because the outer envelope was undated, even though the Ballot was indisputably received before the deadline for voting serves no purpose other than disenfranchising otherwise qualified voters."); *Chapman v. Berks Cty. Bd. of Elections*, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022) ("[T]he lack of a handwritten date on the declaration on the return envelope of a timely received absentee or mail-in ballot does not support excluding those ballots from the Boards' certified results under both Pennsylvania law and Section 10101(a)(2)(B) of the Civil Rights Act.").

[14] In that litigation, the "incorrectly dated outer envelopes" were defined by the Pennsylvania Supreme Court as follows: "(1) mail-in ballots outer envelopes with dates that fall outside the date range of September 19, 2022 through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022 through November 8, 2022." *See* ECF No. 121-11.

6

segregated and not counted. The Court explained that it was deadlocked[15] as to whether "failing to count such ballots violated 52 U.S.C. § 10101(a)(2)(B)" (the federal Materiality Provision). *Id.* at ¶ 61; 121-9.

Midterm elections were held on November 8, 2022. In Pennsylvania, contests for United States Senate and House of Representatives, as well as Pennsylvania House and Senate, were on the ballot. *Id.* at ¶ 66. Several counties segregated and did not count mail-in ballots without dates or with incorrect dates. *Id.*

**Legal Standard for Intervention**

Federal Rule of Civil Procedure 24 governs intervention by nonparties. The Rule provides for both intervention as of right and intervention by permission of court. A nonparty may intervene as of right if it "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." F.R.Civ.P. 24(a). Alternatively, permissive intervention may be allowed by the court if it "(1) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." F.R.Civ.P. 24(b).

The proposed intervenors seek intervention as of right, and alternatively, by permission of the court. Plaintiffs take no position on the intervention of the Republican Committees, but do

---

[15] At the time of its decision, the Pennsylvania Supreme Court had only six justices due to the recent death of Chief Justice Max Baer around October 1, 2022. *See* www.pacourts.us/news-and-statistics/news/news-detail/1115/pennsylvania-supreme-court-announces-passing-of-chief-justice-max-baer.

7

oppose intervention by the individuals. ECF No. 88. Additionally, Defendant Secretary Chapman opposes the intervention of the individuals [ECF No. 89], as do Defendants Boards of Elections of Allegheny, Bucks, Chester, Delaware, Montgomery, and Philadelphia Counties ("Six Boards") [ECF No. 93]. The proposed Intervenors have filed a Reply brief. ECF No. 94.

**Intervention as of Right**

Four elements must be satisfied for intervention as of right to be proper: "(1) timely application; (2) sufficient interest in the litigation; (3) threat that the interest will be impaired or affected by the disposition of the case; and (4) inadequate representation of the prospective intervenor's interest by existing parties." *Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 (3d Cir. 2018). It is the burden of the party seeking intervention to satisfy all four requirements. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).

*Timeliness*

The inquiry as to the timeliness of an application to intervene is based on "the totality of the circumstances arising from three factors: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016). As this case is in its infancy, having been filed only a few days before the motion to intervene, the motion is timely and there has been no delay.

*Sufficient Interest and Disposition's Effect on Interest*

Although Rule 24 does not detail what constitutes a sufficient interest, the Supreme Court has indicated that "what is obviously meant … is a significantly protectable interest."

*Donaldson v. United States*, 400 U.S. 517, 531 (1971). A sufficient interest in the litigation is one "that is specific to [the intervenor], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Transource Pennsylvania, LLC v. Dutrieuille*, 2022 WL 2235466, at *2 (3d Cir. Jun. 22, 2022) *quoting Kleissleer v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Id.*

To date, no party has objected to the Republican Committees' claim that they have a substantial and particularized interest in ensuring that Pennsylvania administers free and fair elections. ECF No. 30, page 7. This Court agrees. The claims brought by Plaintiffs could affect the Committees' ability to participate in the election process within the state.

The individual intervenors claim that they have a particularized interest in knowing the exact requirements for mail-in ballots to be counted and they claim that "the counting of undated or incorrectly dated ballots by some or all county boards of elections in violation of Commonwealth Election Code threatens to interfere with the Individual Voters right to free and equal elections." They expand by arguing that their validly cast vote "will be canceled out and diluted by the counting of undated or incorrectly dated ballots." *Id.* Plaintiffs, the Acting Secretary, and the Six Boards argue that the individual intervenors' interest in protecting the weight of their votes is not cognizable and is merely a "generalized grievance." This Court agrees.

Rather than merely showing some impact, a prospective intervenor "must demonstrate that there is a tangible threat to a legally cognizable interest…" *Benjamin v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 951 (3d Cir. 2012). The individual intervenors have failed to establish that they have an interest in the state not counting the ballots of others. While

9

the individual intervenors certainly have a legal interest in having their own ballots counted, they do not have an interest in prohibiting the state from counting other ballots. *See Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. Oct. 5, 2012) ("The right to vote is a precious and fundamental right. … A citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). Because the individual intervenors have not met their burden to show that they have a sufficient direct interest in this litigation, they may not intervene in this matter as of right.

*Inadequate representation of the intervenor's interest by the existing parties*

Finally, the moving intervenor's interest "must be inadequately represented by the existing parties to the suit." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). This requirement is clearly satisfied here, as to the Republican Committees, as several Defendants have explicitly expressed an interest in not participating in the defense of this case. *See* ECF No. 156 Stipulation between Plaintiffs and 33 County Boards of Elections.

Intervention as of right is appropriate for the Republican Committees and the motion to intervene will be granted in this regard.

**Permissive Intervention**

Rule 24(b) provides for permissive intervention if the proposed intervenor "(1) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." F.R.Civ.P. 24(b). The Rule permits a party to intervene by demonstrating: (1) a timely application for intervention; and (2) that the party's

10

claim or defense shares a common question of law or fact with the under lying action. F.R.Civ. P. 24(b)(1)(B). When reviewing a request for permissive intervention, the court must also consider whether permissive intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." *Panzy v. Borough of Stroudsburg*, 23 F.3d 772, 779 n.6 (3d Cir. 1994).

"Whether to allow a party to permissively intervene is left to the sound discretion of the Court." *Worthington v. Bayer Healthcare, LLC,* 2011 WL 630399, at *8 (D.N.J. Dec. 15, 2011); *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992) ("[A]s the doctrine's name suggests, [it] is within the discretion of the district court" whether to grant permissive intervention.").

Because, as explained above, the prospective individual intervenors do not have a sufficient interest in this case, they will not be permitted to intervene. Furthermore, the individuals do not have a distinct claim or defense distinguishable from their co-Intervenors that warrants their intervention. The defense of the Republican Committees is no different than any defense of these individual voters. *See, for example,* ECF No. 27-1 (proposed motion to dismiss the original complaint); ECF No. 27-2 (proposed answer to original complaint); ECF No. 131-2 (proposed motion to dismiss the amended complaint); and ECF No. 131-3 (proposed answer to amended complaint).

**Conclusion**

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal citation omitted). Here, that "greater justice" means that the Republican Committees may

intervene as of right, but the proposed individual intervenors may not intervene as of right or by permission of this Court.

AND NOW, this 6th day of January 2023,

IT IS HEREBY ORDERED that the motion to intervene [ECF No. 27] is granted in part insofar as the Republican Committees may intervene in this matter as of right. The motion is denied in all other respects.

IT IS FURTHER ORDERED that the Republican Committees file a responsive pleading addressing the claims of the Amended Complaint by January 17, 2023. In the event the Republican Committees file a dispositive motion, oppositions thereto shall be filed by January 31, 2023.

The parties are on notice that the filing of any dispositive motion does **not** stay discovery.

SUSAN PARADISE BAXTER
United States District Judge