IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AL SCHMIDT, *et al.*, <br><br> Defendants. | Civil Action No. 1:22-cv-339 (SPB) |

**STATEMENT OF INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding enforcement of Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101 ("Section 101"). Congress has vested the Attorney General with authority to enforce this provision on behalf of the United States. *See* 52 U.S.C. § 10101(c). Accordingly, the United States has a substantial interest in ensuring proper interpretation of Section 101.

Straightforward in its command and targeted in its scope, Section 101 prohibits state officials from denying any individual the right to vote based on an "error or omission" on a "record or paper" that relates to any "act requisite to voting," where that error or omission is not material to determining "whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). The word "vote" covers "all action necessary to make a vote effective," including any "action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." *Id.* at § 10101(a)(3)(A), (e). Thus, Section 101 encompasses mail voting. *See id.* § 10101(a)(2)(B); *see also, e.g.*, *La Unión del Pueblo Entero v. Abbott*, No. 21-cv-844, 2022 WL 1651215, at *20-21 (W.D. Tex. May 24, 2022) (applying Section 101 to mail voting materials).

Under Pennsylvania law, casting a mail ballot that will be counted requires the voter to date a voter declaration. See 25 P.S. § 3146.6(a). Section 101 applies to this declaration and bars election officials from rejecting ballots based on errors or omissions in completing the declaration that are not material to determining the declarant's qualifications to vote. Errors or omissions regarding a date do not pertain to a voter's qualifications. *See* 25 P.S. §§ 2811, 1301.

1

Defendant-Intervenors nonetheless urge this Court to ignore the statute's broad definition of "vote" and exclude paperwork not material to qualifications from Section 101's reach. But this Court should apply the statute's plain language and reject Defendant-Intervenors' counter-textual interpretation. The Court should also reject Defendant-Intervenors' view that private litigants cannot enforce Section 101.

## FACTUAL AND PROCEDURAL BACKGROUND

Pennsylvania permits "all qualified voters to cast their vote by mail." *McLinko v. Dep't of State*, 279 A.3d 539, 544 (Pa. 2022), *cert. denied*, No. 22-414, 2023 WL 124069 (U.S. Jan. 9, 2023); *see also* 25 P.S. § 3150.11. By statute, voters returning mail ballots must "fill out, date and sign" a declaration printed on the mailing envelope, and completed ballots must be received by 8:00 pm on Election Day. 25 P.S. §§ 3146.6(a), 3150.16(a), (c). State courts did not require rejection of timely yet undated ballots in 2020, *see In re Canvass of Absentee and Mail-In Ballots*, 241 A.3d 1058, 1062 (Pa. 2020), but have since required rejection of timely ballots based on a failure to date the ballot envelope between the day when ballots are released and Election Day, *see* Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 5, 2022); *Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022); *In re Canvass*, 241 A.3d at 1079 (Wecht, J., concurring and dissenting); *id.* at 1090-91 (Dougherty, J., concurring and dissenting); *Ritter v. Lehigh Cnty. Bd. of Elections*, 272 A.3d 989, 2022 WL 16577 (Pa. Commw. Ct. 2022).

Following the November 2021 election, registered voters who had mailed undated ballot envelopes filed suit in federal court, alleging that failure to count their ballots violated Section 101. Ultimately, the Third Circuit unanimously ruled in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), that the date requirement violates Section 101. The Supreme Court declined to stay the ruling, which allowed the ballots to be counted and the election to be certified. *See Ritter v. Migliori*, 142 S. Ct. 1824 (2022). However, because certification rendered the litigation moot,

the Supreme Court vacated the decision of the Court of Appeals. *See Ritter v. Migliori*, 143 S. Ct. 297 (U.S. Oct. 11, 2022) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)). Soon thereafter, Plaintiffs filed the instant litigation. Defendant-Intervenors, a group of party committees, now move to dismiss Plaintiffs' Amended Complaint. Mot. to Dismiss, ECF No. 193; D.I. Mem., ECF No. 194.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (construing the complaint "in the light most favorable to the plaintiff" in determining whether "any reasonable reading of the complaint" would allow relief). Consideration of information outside the face of the complaint is limited to "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). So long as these materials allow a court to "draw the reasonable inference that the defendant is liable," the motion must be denied. *Iqbal*, 556 U.S. at 678.

## STATUTORY BACKGROUND

Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101, also known as the Materiality Provision, prohibits persons acting under color of law from denying "the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B); *see also, e.g.*, *Migliori*, 36 F.4th at 162-63 (holding that a "requirement is material if it goes to determining" whether a voter meets a particular state-law

3

qualification). For purposes of Section 101, "the word 'vote' includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(a)(3)(A), (e).

Under Pennsylvania law, individuals are qualified to vote if, on the date of the election, they (1) are at least 18 years of age, (2) have been United States citizens for at least one month, (3) have resided in the Commonwealth for at least 90 days, (4) have resided in their intended voting district for at least 30 days, and (5) have not been confined for a felony within the last five years. *See* 25 P.S. §§ 2811, 1301.

## ARGUMENT

Section 101 is privately enforceable. And its plain text bars the Defendant-Intervenors' attempt to excise Pennsylvania's mail in-voting envelope from the statute's reach. That is because Section 101 applies to errors or omissions in *any* "act requisite to voting." The Statute's broad definition of "vote" ensures that its protections extend throughout the voting process, including to the completion of a mail ballot envelope. And while Section 101 prohibits disenfranchisement based on paperwork errors not material to qualifications, it does not require states to abandon essential election administration procedures. Finally, to the extent Pennsylvania law conflicts with federal law, state law is preempted and must yield.

### I.     Private Plaintiffs May Enforce Section 101.

Plaintiffs bring their Section 101 claim pursuant to both 42 U.S.C. § 1983 and an implied cause of action. Am. Compl. ¶ 7, ECF No. 121. When assessing whether private plaintiffs may enforce a statute without an express cause of action, courts "must first determine whether Congress *intended to create a federal right*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

Once a right is established, "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Id.* at 284. By contrast, "a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Individual voters may enforce Section 101 under both theories.

As the Third Circuit has already held, Section 101 confers a personal right enforceable under § 1983. *Migliori*, 36 F.4th at 159-62; *see also Schwier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003).[1] To determine whether statutory text contains rights-creating language, courts rely on three factors: "(1) the statutory provision must benefit the plaintiffs with a right unambiguously conferred by Congress; (2) the right cannot be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the States." *Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) (citing *Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997)). Section 101 prohibits state actors from denying "the right of any individual to vote" on specified grounds. 52 U.S.C. § 10101(a)(2)(B). Thus, the provision is "phrased in terms of the persons benefitted, not in terms of a general 'policy or practice.'" *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 528 (3d Cir.

---

[1] Defendant-Intervenors urge this Court to ignore *Migliori*, D.I. Mem. 14-15, but its "prior analysis continues to resonate." *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 427 (3d Cir. 2020) (relying on vacated opinion); *see also Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 356 n.18 (3d Cir. 2017) (noting that vacatur does not perforce establish that "reasoning in that opinion was incorrect"); *McKinney v. Phila. Hous. Auth.*, No. 07-cv-4432, 2010 WL 2510382, at *3 (E.D. Pa. June 16, 2010) (observing that analysis may "remain as persuasive . . . if the opinion itself is vacated as if it were not"). By contrast, Defendant-Intervenor's motion relies heavily on the dissent from the Supreme Court's subsequent denial of a stay, which garnered the support of only three Justices. *See* D.I. Mem. 2-4, 7-12 (citing *Ritter*, 142 S. Ct. at 1824-26 (Alito, J., dissenting)).

5

2009) (quoting *Gonzaga*, 536 U.S. at 287). "[T]he statute clearly provides rights which are specific and not amorphous." *Schwier*, 340 F.3d at 1296. And Section 101 creates a prohibition: "No person acting under color of law" can "deny the right of any individual to vote" on the specified grounds. 52 U.S.C. § 10101(a)(2)(B). The statute is thus "couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 341; *see also Schwier*, 340 F.3d at 1297.[2] Therefore, Section 101 confers an individual right, of the kind "presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284.[3]

Although this Court need not consider whether Section 101 also incorporates an implied cause of action, Plaintiffs may enforce Section 101 under that theory as well. The statutory context "manifest[s] an intent to create a private remedy," *Sandoval*, 532 U.S. at 289, to vindicate the individual right just described. Most prominently, 52 U.S.C. § 10101(d) provides district courts with "jurisdiction of proceedings instituted pursuant to this section" and states that

---

[2] Statutory structure and legislative history confirm Congress's intent to create a personal right. Section 101 contains no "countervailing structural elements" to suggest a programmatic rather than an individual focus. *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 192 (3d Cir. 2004). To the contrary, other substantive provisions of 52 U.S.C. § 10101 are likewise focused on individual voters' right to vote free of irrational barriers, discrimination, or intimidation. *See* 52 U.S.C. § 10101(a)(1), (a)(2)(A), (a)(2)(C), and (b). Moreover, Congress added Section 101 to enhance the "guarantee to all citizens [of] the right to vote without discrimination." H.R. Rep. No. 88-914, at 19 (1963). The new provision was designed to "reduce discriminatory obstacles to the exercise of the right to vote and provide means of expediting the vindication of that right." *Id.* at 18. Like the statutory text, this legislative history indicates Congress's focus on ensuring that individuals are "accorded the rights, privileges, and opportunities which are considered to be, and must be, the birthright of all citizens." *Id.*

[3] Defendant-Intervenors do not even attempt to rebut that presumption of enforceability. Nor could they. "[T]he existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005). Because Section 101 "contains no express private remedy, much less a more restrictive one," the Section 1983 remedy remains avaialble. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009).

6

they "shall exercise the same without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10101(d).  The reference to "the party aggrieved"—the individual who has been denied the right to vote—rather than only to "the United States" contemplates private enforcement.  *See*, *e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 (2002); *Morse v. Republican Pty.*, 517 U.S. 186, 233 (1996) (opinion of Stevens, J.).  Language releasing plaintiffs from exhaustion requirements likewise demonstrates Congress's intent to authorize private enforcement, as the Attorney General is not subject to such requirements.  *See Schwier*, 340 F.3d at 1296; *see also* 52 U.S.C. § 10101(c) (authorizing suits by the Attorney General without exhaustion requirements); *cf. Morse*, 517 U.S. at 234 (opinion of Stevens, J.) (relying on fees provision to imply cause of action since "the Attorney General does not collect attorney's fees").[4]

Defendant-Intervenors posit in a footnote that neither § 1983 nor Section 101 grants Plaintiffs a right to sue, D.I. Mem. 7 n.2, but the decisions they cite are inapt.  The Sixth Circuit addressed the issue without discussing § 1983 or providing any reasoning for its implied-right-of-action holding, merely stating that Section 101 "is enforceable by the Attorney General, not by private citizens."  *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000); *see also Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (acknowledging arguments

---

[4] Legislative history confirms Congress's intent to create a private cause of action.  The original substantive provision of 52 U.S.C. § 10101, Section 10101(a)(1), contained no express enforcement provision.  *See* Act of May 31, 1870, ch. 114, § 1, 16 Stat. 140.  And yet until Congress added enforcement authority for the United States in 1957, private parties were the only plaintiffs who could enforce Section 10101.  *Schwier*, 340 F.3d at 1295; *see also*, *e.g.*, *Smith v. Allwright*, 321 U.S. 649, 651-52 & n.1 (1944).  Congress cited this history of private enforcement approvingly when it added the Attorney General suit provision, Section 10101(c).  H.R. Rep. No. 88-914, at 12.  Given Congress's awareness of the history of private enforcement, the current version of the statute "cannot be read except as a validation of" private enforcement of substantive provisions of 52 U.S.C. § 10101.  *Sandoval*, 532 U.S. at 280 (citation omitted) (discussing Title VI); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009).

7

for finding cause of action but holding that *McKay* "binds this panel").  Moreover, the mere fact that a Fifth Circuit motions panel declined to opine on the issue, *see Vote.org v. Callanen*, 39 F.4th 297, 305 n.5 (5th Cir. 2022), fails to undercut the well-reasoned authority establishing that private plaintiffs may enforce Section 101.  *See also, e.g.*, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020) (acknowledging motion panels do not bind merits panels).

**II.       Section 101 Applies to Mail Voting Materials.**

Section 101 prohibits persons acting under color of law from denying "the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. § 10101(a)(2)(B).  Critically, Congress directed that the term "vote" be construed broadly to include "all action necessary to make a vote effective, including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast."  *Id.* § 10101(e); *see also id.* § 10101(a)(3)(A) (applying subsection (e)'s definition to subsection (a)).  Thus, in full, Section 101 prohibits persons acting under color of law from

> deny[ing] the right to of any individual to [register, take other actions required by State law prerequisite to voting, cast a ballot, and have such ballot counted in any election] because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting[, including casting a ballot and having such ballot counted,] if such error or omission is not material in determining whether such individual is qualified under State law to [register, take other actions required by State law prerequisite to voting, cast a ballot, and have such ballot counted in such election].

*Id.* § 10101(a)(2)(B).  If an "individual's vote is not counted because he or she did not follow the rules for casting a ballot," D.I. Mem. 8 (quoting *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting)),

and the rules at issue require information on a record or paper that is *not material* to qualifications, the counting official has violated Section 101.

Courts regularly apply Section 101 to paperwork requirements on mail ballot applications and envelopes. *See, e.g.*, *La Unión del Pueblo Entero*, 2022 WL 1651215, at *20-21; *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-5174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021); *Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-1309 (N.D. Ga. 2018). Relevant here, courts that have engaged in substantive analysis have uniformly found that Section 101 applies to the voter declaration on a Pennsylvania ballot return envelope. *See Migliori*, 36 F.4th at 156-57; *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998, at *27-30 (Pa. Commw. Ct. Aug. 19, 2022); *McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112, at *10-11 (Pa. Commw. Ct. June 2, 2022).[5] Contrary to Defendant-Intervenors' suggestion, D.I. Mem. 2, 11, the Pennsylvania Supreme Court has not ruled for or against the application of Section 101 to this state law requirement. *See Ball*, 284 A.3d at 192 (explaining only that "the Court is evenly divided" as to whether failing to count ballots in undated envelopes violates Section 101).

To exclude mail voting materials from Section 101 would flout the statute's plain text. Congress repeatedly used the word "any" to describe the statute's inclusive coverage: Section 101 applies to "*any* individual" participating in "*any* election" and to "*any* record or paper" relating to "*any* application, registration, or act requisite to voting." 52 U.S.C. § 10101(a)(2)(B)

---

[5] *See also In re Canvass*, 241 A.3d at 1074 n.5 (noting potential application); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting) (declining to reach question). Although a divided panel of the Commonwealth Court suggested in dicta that Section 101 does not apply to the voter declaration on a ballot return envelope, the majority did not address the statutory text and thus erroneously concluded that Section 101 reaches only requirements to establish "qualifications necessary to vote in the first place." *Lehigh Cnty. Bd. of Elections*, 2022 WL 16577, at *9.

9

(emphases added). In each application—the individuals protected, the elections administered, the records and papers governed, and the application, registration, or other acts requisite to voting at issue—Congress deployed the words "all" and "any" to give the statute "an expansive meaning" that encompasses "one or some indiscriminately of whatever kind." *United States v. Gonzales*, 520 U.S. 1, 5 (1997); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008); *United States v. Serafini*, 826 F.3d 146, 150 (4th Cir. 2016) (Congress's "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth.").[6] This comprehensive coverage captures Pennsylvania's mail ballot envelope declaration, which is one such "paper" relating to an "act requisite to voting." Excluding paperwork concerning "mandatory rules on the act of completing and casting a ballot," D.I. Mem. 7, from the "other act[s]" and "paper[s]" covered by Section 101 would ignore the statute's plain text.[7] This Court should reject the Defendant-Intervenor's plea to do so.

Defendant-Intervenors suggest that Section 101 regulates only "requirements and practices related to qualifications and registration to vote, not rules . . . 'that must be met in order

---

[6] In *Ali*, the Supreme Court rejected the argument that including the specific examples "officer of customs or excise" before the general phrase "or any other law enforcement officer" limited that general phrase to "officers acting in a customs or excise capacity." 552 U.S. at 218 (citation omitted). The Court determined that "Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind." *Id.* at 220. Likewise, Congress's use of "any" in Section 101 to modify "other act requisite to voting" is most naturally read to mean acts of *whatever* kind that are necessary to cast a ballot and have it counted. 52 U.S.C. § 10101(a)(2)(B).

[7] Defendant-Intervenors repeatedly cite the *Vote.org* stay panel's erroneous suggestion that a "plausible argument can be made that [Section 101] is tied to only voter registration specifically and not to all acts that constitute casting a ballot." 39 F.4th at 305 n.6; *see also* D.I. Mem. 8-11. This cannot be squared with the statute's text. *See* 52 U.S.C. § 10101(a)(2)(B) (addressing "any application, registration, or other act requisite to voting"); *Migliori*, 36 F.4th at 162 n.56. Again, the stay panel opinion in *Vote.org* does not bind the merits panel in the pending appeal in that case, much less bind this Court.

to cast a ballot that will be counted.'" D.I. Mem. 9 (citing *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting)). But that argument collides with the statute's text, which explicitly prohibits denial of the right to vote based on paperwork requirements not material to determining a voter's qualifications. *See* 52 U.S.C. § 10101(a)(2)(B).[8] Requirements "related to qualifications" do not, by definition, violate Section 101, and so Defendant-Intervenors would render Section 101 a nullity. *See Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939-40 (2022) (rejecting statutory interpretation that would leave "whole provisions without work to perform"). Rather, rules that govern whether a voter has "cast a ballot that will be counted" or "the validity of a ballot," D.I. Mem. 9-10 (quoting *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting)), fall squarely within "acts requisite to voting" when voting is defined as "casting a ballot[] and having such ballot counted." 52 U.S.C. § 10101(a)(2)(B), (e).[9]

And Section 101's all-encompassing language stretches beyond the mere ability to register. Indeed, Congress specified that Section 101 is "not limited" to "registration" and that it extends to all "other action required by State law prerequisite to voting, casting a ballot, and

---

[8] Section 101 extends beyond instances of intentional disenfranchisement or disparate treatment of minority voters. *See* D.I. Mem. 9-10. The statutory text turns on the substance of the voter's error or omission, not the state of mind of a public official. *See* 52 U.S.C. § 10101(a)(2)(B); *see also Migliori*, 36 F.4th at 162 n.56 (holding Section 101 reaches beyond racial discrimination).

[9] Although Defendant-Intervenors concede that "compliance with the date requirement is not material to any individual's qualifications to vote," D.I. Mem. 12, this concession appears grounded on their failure to apply the statutory definition of "vote." The appropriate analysis rests on whether particular mail ballot requirements are material to a voter's qualification to cast a mail ballot and have it counted. *See, e.g.*, *Migliori*, 36 F.4th at 156 (including "the timeliness of the ballot" in qualifications); *La Unión del Pueblo Entero*, 2022 WL 1651215, at *21 (concluding that "the initial rejection of a vote-by-mail application or mail ballot carrier envelope based on errors or omissions that are not material to determining whether an individual is qualified to vote under state law may constitute a violation of § 101"). When engaging in this analysis, however, this Court should not rely on Defendant-Intervenors' description of the alleged purposes served by the date requirement, which they base on a dissenting opinion of the Pennsylvania Supreme Court. D.I. Mem. 5-6 (quoting *In re Canvass*, 241 A.3d at 1090 (Dougherty, J., dissenting in relevant part)).

11

having such ballot counted and included in the appropriate totals of votes cast." *Id.* § 10101(e). Congress could hardly have chosen language more expansive or more clearly crafted to ensure that Section 101's protections apply beyond registration to reach all acts necessary at any stage of the voting process to cast a vote that will be counted. Those acts include filling out information on a ballot envelope.

Finally, Section 101 does not distinguish between "act[s] requisite to voting," *id.* § 10101(a)(2)(B), and "the act of voting." *Cf.* D.I. Mem. 11 (citing *Ritter*, 142 S. Ct. at 1826 n.2 (Alito, J., dissenting)). Rather, Section 101 incorporates all steps of the voting process. *See* 52 U.S.C. § 10101(e). Defendant-Intervenors' bid to limit Section 101's scope to registration procedures reads the phrase "any other act requisite to voting" out of the statute. Thus, this argument "runs afoul of the 'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted). Mail ballot envelope requirements fit neatly within the statute's plain text. *See Migliori*, 36 F.4th at 162 n.56 (rejecting argument to limit Section 101 to registration procedures); *see also*, *e.g.*, *Martin*, 347 F. Supp. 3d at 1308-1309. Defendant-Intervenors' suggestion that dating a mail ballot envelope falls under a distinct commonsense definition of "the act of voting"—that "[v]oting is voting," D.I. Mem. 11—is mere rhetoric that cannot evade Section 101's clear commands. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (citation and quotation marks omitted)); *see also Exec. Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1468 (Fed. Cir. 1997) ("[T]he plain, obvious and rational

meaning of a statute is always to be preferred to any curious, narrow, hidden sense.") (quoting *Lynch v. Alworth–Stephens Co.*, 267 U.S. 364, 370 (1925)).[10]

### III. Section 101 Does Not Prohibit Common Election Administration Requirements.

Defendant-Intervenors argue that applying the statutory text of Section 101 would "subject virtually every electoral regulation" to materiality restrictions and "hamper the ability of States to run efficient and equitable elections." D.I. Mem. 14 (quoting *Clingman v. Beaver*, 544 U.S. 581, 593 (2005)). Not so. This Court can apply Section 101's plain text *without* concluding that "any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote" under Section 101. D.I. Mem. 8-9 (quoting *Vote.org*, 39 F.4th at 305 n.6). Section 101 applies only to paperwork errors or omissions. Failure to vote at the appropriate time or location is not "an error or omission on any record or paper." 52 U.S.C. § 10101(a)(2)(B); *cf.* D.I. Mem. 8. Although Defendant-Intervenors describe the failure to use an absentee ballot secrecy envelope as "an omission or an error *involving* any record or paper," D.I. Mem. 13 (internal quotation marks omitted), this too is not "an error or omission *on* any record or paper," 52 U.S.C. § 10101(a)(2)(B) (emphasis added). But failure to date the declaration on an absentee ballot envelope is such an error, as Defendant-Intervenors concede. D.I. Mem. 12. Rejecting an absentee ballot based on that error violates Section 101.

Defendant-Intervenors also suggest that Section 101 cannot apply throughout the voting process because election administrators would be forced to abandon common paperwork requirements. But the sole example they present—a signature on a mail ballot envelope—is

---

[10] In any event, filling out a mail ballot certification is not "the act of voting" in a practical sense. Voters do not indicate their preferred candidates on the certification envelope, and a completed envelope is not in any sense a "vote." It is, however, an act "requisite to voting." 52 U.S.C. § 10101(a)(2)(B).

13

material to qualifications to "vote," as defined by statute, and thus does not implicate Section 101. Under Pennsylvania law, a signature on an absentee ballot envelope establishes that the voter "is qualified to vote in the election" and is "qualified to vote the enclosed ballot." *In re Canvass*, 241 A.3d at 1065; *cf.* D.I. Mem. 12-13 (suggesting that the signature is not material to qualifications). Defendant-Intervenors' argument fails.

Finally, Defendant-Intervenors erroneously claim that Section 101 cannot apply across the voting process because that would nullify prohibitions on counting overvotes, *i.e.*, the rule that a ballot marked for two candidates for a single legislative seat will not be counted for that contest at all. D.I. Mem. 13 (citing 25 P.S. § 3063(a)). But affording each voter only the allotted number of votes per contest does not deny the right to vote. Although Section 101 protects each elector's right to have their "ballot" counted, that right denotes inclusion "in the appropriate totals of votes cast with respect to candidates for public office and propositions." 52 U.S.C. § 10101(e). Faced with a completed and cast anonymous ballot marked for too many candidates, nothing in Section 101 prevents an election official who cannot determine the voter's preference from treating the ballot as unmarked in that particular contest. To do otherwise would grant the voter additional votes.[11] Thus, a complete "ballot" that contains overvotes is still "cast and counted," *id.* § 21081(a)(1)(A)(iii)(III), even if the ballot effectively assigns no votes for an overvoted office. *See id.* § 21081(a)(1)(A)(iii)(II)-(III) (distinguishing "the effect of casting multiple votes for" an office from casting and counting a "ballot").

---

[11] In other words, in an overvote situation, officials cannot "include[]" the sole vote to which the voter is entitled "in the appropriate total[]" for one candidate because there is no way of knowing for which candidate the voter actually cast their vote. *Id.* Thus, there is no way to "make [that] vote effective." *Id.*

## IV. Pennsylvania's Mail Balloting Procedures Must Comply with Federal Law.

Having created mail balloting procedures, Pennsylvania must apply them in line with federal law and may not disenfranchise voters who rely on them. *Cf. Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, . . . the right of suffrage 'is subject to the imposition of state standards which are not discriminatory and which do not contravene any restriction that Congress, acting pursuant to its constitutional powers, has imposed.'" (quoting *Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 51 (1959))); *Self Advoc. Sols. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1052 (D.N.D. 2020) ("[A] state that creates a system for absentee voting must administer it in accordance with the Constitution." (internal quotation marks omitted)). Section 101 applies to state paperwork requirements, including those pertaining to absentee ballot envelopes. Where "compliance with both state and federal law is impossible," federal law "must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute.").[12] Accordingly, if Section 101 precludes rejecting an otherwise

---

[12] Preemption under Section 101 does not require an "unmistakably clear" statement of intent. D.I. Mem. 14 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). Congress initially enacted Section 101 pursuant to its authority under the Elections Clause, U.S. Const. Art. I, § 4, cl. 1, to make or alter regulations governing the "Times, Places and Manner of holding Elections for Senators and Representatives." *See* Civil Rights Act of 1964, Pub. L. No. 88-352, § 101, 78 Stat. 241, 241 (applying only to federal elections); *see also* Voting Rights Act of 1965, Pub. L. No. 89-110, § 15, 79 Stat. 437, 445 (eliminating limitation). In light of this express authority to "alter" state election law governing federal elections, there is no presumption against preemption for legislation enacted pursuant to the Elections Clause and no accompanying plain statement rule. *Arizona v. Inter Tribal Council of Arizona, Inc.* (*ITCA*), 570 U.S. 1, 13-14 (2013); *see also, e.g.*, *Fish v. Kobach*, 840 F.3d 710, 729-32 (10th Cir. 2016); *Harkless v. Brunner*, 545 F.3d 445, 454 (6th Cir. 2008). And, in any case, Section 101 applies to "any record or paper relating to any application, registration, or other act requisite to voting" without exception and applies a statutory definition of "vote," 52 U.S.C. § 10101(a)(2)(B), (e), meeting any plain statement

15

properly cast and timely-received mail ballot merely because a voter erred by omitting a date on the absentee ballot envelope or writing the wrong date (such as a date of birth), as that error is not material to determining the voter's qualifications under state law to cast a ballot, then Pennsylvania may no longer reject mail ballots on that basis.

## CONCLUSION

For the reasons set forth above, this Court should apply Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), to Pennsylvania's mail ballot envelope date requirement and should deny Defendant-Intervenors' motion to dismiss.

Date:  February 3, 2023

>Respectfully submitted,
>
>KRISTEN CLARKE
>Assistant Attorney General
>Civil Rights Division
>
>ELISE BODDIE
>Principal Deputy Assistant Attorney General
>Civil Rights Division
>
>*/s/ Daniel J. Freeman*                        .
>T. CHRISTIAN HERREN, JR.
>RICHARD A. DELLHEIM
>DANIEL J. FREEMAN
>MICHELLE RUPP
>Attorneys, Voting Section
>Civil Rights Division
>U.S. Department of Justice
>950 Pennsylvania Avenue NW
>Washington, DC 20530
>daniel.freeman@usdoj.gov

---

requirement.  *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-10 (1998) (distinguishing a statute without exceptions from the ambiguity in *Gregory*); *see also id.* at 212 ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity.  It demonstrates breadth." (internal citation and quotation marks omitted)).

## CERTIFICATE OF SERVICE

      I hereby certify that on February 3, 2023, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                            */s/ Daniel J. Freeman*
                                            Daniel J. Freeman
                                            Civil Rights Division
                                            U.S. Department of Justice
                                            950 Pennsylvania Ave, NW
                                            Washington, DC 20530
                                            (202) 305-4355
                                            daniel.freeman@usdoj.gov