IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

PENNSYLVANIA STATE   :
CONFERENCE OF THE NAACP,   :
ET. AL.   :    Case No. 1:22-CV-339-SPB
           :
    Plaintiffs,   :
           :
    v.   :
AL SCHMIDT, ET. AL.   :
           :
    Defendants.   :

---

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, LANCASTER COUNTY BOARD OF ELECTIONS

Under Fed. R. Civ. P. 56, defendant, Lancaster County Board of Elections ("LCBOE") moves for summary judgment and requests that the Court dismiss all claims against it with prejudice. No plaintiff has Article III standing to maintain any of their claims against LCBOE. Moreover, Count I and Count II should be dismissed as a matter of law. LCBOE includes a memorandum of law, concise statement of undisputed material facts, and appendix with this motion.

Respectfully submitted,

Date: April 21, 2023

*/s/ Walter S. Zimolong*
WALTER S. ZIMOLONG III, ESQ.
wally@zimolonglaw.com
JAMES J. FITZPATRICK III, ESQ.
james@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
*Attorneys for Defendant*
*Lancaster County Board of*
*Elections*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

PENNSYLVANIA STATE                  :
CONFERENCE OF THE NAACP,            :
ET. AL.                             :          Case No. 1:22-CV-339-SPB
                                    :
            Plaintiffs,             :
                                    :
      v.                            :
AL SCHMIDT, ET. AL.                 :
                                    :
            Defendants.             :
                                    :

**MEMORANDUM OF LAW IN SUPPORT MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT LANCASTER COUNTY BOARD OF ELECTIONS**

The court should grant summary judgment to defendant, Lancaster County Board of Elections ("LCBOE"), dismissing all claims against it with prejudice. Each plaintiff lacks Article III standing to maintain any of their claims against LCBOE because no plaintiff has been injured by *the conduct of LCBOE*. Even if plaintiffs did have Article III standing, they cannot maintain a private cause of action to enforce the materiality provision of the Civil Rights Act as the Attorney General of the United States retains exclusive power to enforce it. Finally, plaintiffs cannot maintain a claim under the Fourteenth Amendment because they have not presented any evidence that LCBOE treats mailed military and overseas ballots differently from domestic mailed and absentee ballots.

## I.   PLAINTIFFS LACK STANDING.

Each plaintiff lacks standing to maintain claims against LCBOE. As the Court is aware, "Article III standing is essential to federal subject matter jurisdiction," *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016), and is "a threshold issue." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000). It is well settled that "to meet the irreducible constitutional minimum of Article III standing, a plaintiff invoking federal jurisdiction bears the burden of establishing three elements. *Hartig.*, 836 F.3d at 269. They are a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), as revised (May 24, 2016). Unlike at the pleading stage, at this stage of the proceedings, plaintiffs must produce *evidence* that they have standing to pursue their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992) (To survive a motion for summary judgment for lack of standing, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts.")

The individual plaintiffs lack standing because none of their injuries were caused by or related to the conduct of the LCBOE. Indeed, no individual plaintiff even lives in Lancaster County and no individual plaintiff ever had a ballot rejected by LCBOE. The associational plaintiffs equally lack standing to maintain claims against LCBOE. The associational plaintiffs lack organizational or associational standing to assert claims on behalf of their individual members because they have not identified

any member that would suffer harm because of the actions of LCBOE. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (To maintain associational standing, "the plaintiff organization must make specific allegations establishing that at least one identified member had suffered or would suffer harm.") The associational plaintiffs likewise lack standing to assert claims for their own harm because they too have not been injured by the conduct of the LCBOE. Rather, the associational plaintiffs admit they diverted resources because of a Pennsylvania Supreme Court decision, not the actions of LCBOE. Even if they did not make that admission, the associational plaintiffs have not produced any evidence that they ever devoted any resources directed to voters in Lancaster County to begin with. Moreover, regarding the diversion of resources for *future* elections "spending money in response to that speculative harm cannot establish a concrete injury." *Donald J. Trump for President, Inc. v. Way*, 2020 WL 6204477, at *8 (D.N.J. Oct. 22, 2020).

### A. THE REMAINING INDIVIDUAL PLAINTIFFS ALLEGED HARM IS NOT FAIRLY TRACEABLE TO THE ACTIONS OF LCBOE.

Each of the remaining individual plaintiffs[1], Barry M. Seastead ("Seastead"), Marlene G. Gutierrez ("Gutierrez"), Aynne Margaret Pleban Polinski ("Polinski"), Joel Bencan ("Bencan"), and Laurence M. Smith ("Smith") lack standing to maintain their claims against LCBOE because, in all events, none of their purported injuries were caused by the conduct of LCBOE. Therefore, the remaining individual plaintiffs cannot satisfy the second element required to maintain standing, which requires that

---

[1] The Court dismissed plaintiffs Terrizi, Diehl, and Boyle from this case on April 11, 2023 and they are no longer parties to this action. ECF No. 263.

their injuries are caused by "or causally connected and traceable to an action of the defendants." *The Pitt News*, 215 F.3d at 360. The remaining individual plaintiffs might have injuries caused by or connected to the action of *other defendants*, but not the actions of LCBOE.

Seastead is a Warren County voter and has been a registered voter in Warren County for decades. Am. Compl., ECF No. 121, ¶ 30. The Warren County Board of Election, not the LCBOE, rejected Seastead's mailed ballot in the November 2022 election. *Id*. Gutierrez is a York County voter and has been a registered voter in York County for over 45 years. *Id.*, ¶ 32. The York County Board of Elections, not the LCBOE, did not count Gutierrez's mailed ballot in the November 2022 general election. *Id*. Polinski is also a York County voter and has been registered to vote in York County for over 7 years. *Id.*, ¶ 34. York County Board of Election, not LCBOE, did not count Polinski's ballot in the November 2022 general election. *Id*.  Bencan is a Montgomery County voter and has been registered to vote in Montgomery County for many years. *Id.*, ¶ 34. Montgomery County Board of Elections, not LCBOE, did not count Bencan's ballot in the November 2022 general election. *Id*  Smith too is a Montgomery County voter and has been registered to vote in Montgomery County since 1991. *Id.*, ¶ 34. Montgomery County Board of Election also did not count Smith's ballot in the November 2022 general election. In sum, the remaining individual plaintiffs do not live in Lancaster County, are not registered to vote in Lancaster County, have not voted in Lancaster County, do not intend to vote in Lancaster

County, and LCBOE has never rejected any ballots the individual plaintiffs might have cast.

The remaining individual plaintiffs are in the identical position as the plaintiffs in *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899 (M.D. Pa.), aff'd sub nom. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020). In that case, the district court for the Middle District of Pennsylvania dismissed for lack of standing claims brought by individual voters, whose mailed ballots were not counted in the 2020 presidential election, against various county boards of elections. *Id.* at 912. The district court dismissed their claims because, like the LCBOE here, "[n]one of Defendant Counties received, reviewed, or discarded Individual Plaintiffs' ballots." *Id.* Here, the Court should reach the same conclusion.

The remaining individual plaintiffs lack standing as to LCBOE and the Court should dismiss with prejudice all claims brought by the individual plaintiffs against LCBOE.

## B. THE ASSOCIATIONAL PLAINTIFFS HAVE NOT IDENTIFIED A SPECIFIC MEMBER THAT HAS SUFFERED A CONCRETE HARM CAUSED BY LCBOE OR WHO FACES AN IMPENDING HARM CAUSED BY THE LCBOE.

Certain associational plaintiffs appear to bring claims on behalf of their members. PA NAACP claims "thousands of members . . . are at risk of are at risk of disenfranchisement if Defendants fail to count timely-submitted mail-in ballots based solely on a missing or incorrect date on the return envelope." Am. Compl., ECF No. 121, ¶ 11, 13. LWV claims its members are "at risk of disenfranchisement if

Defendants fail to count ballots based solely on a missing or incorrect handwritten date on the return envelope." *Id.*, ¶ 14. Common Cause and Make the Road press similar claims that their members risk disenfranchisement if ballots with missing or incorrect dates are not counted. *Id.*, ¶¶ 21, 26.  The associational plaintiffs do have the right to bring claims on behalf of their members. *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 291 (3d Cir. 2002). But the members themselves must have Article III standing and the associational plaintiffs must do more than merely *allege* that their members may be harmed to establish standing. Rather, they must present evidence "establishing that at least one *identified* member ha[s] suffered or would suffer harm." *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 129 S.Ct. 1142 (2009) (emphasis added). The associational plaintiffs have never identified a specific member whose mailed ballot was not counted LCBOE in the November 2022 general election or whose mailed ballot is at risk of not to be counted by LCBOE in the future. Indeed, the associational plaintiffs have not so much as identified a single member who simply intends to vote in a future election in Lancaster County.

Claims of future harm are also not sufficient to confer standing because when that harm is entirely speculative. *Free Speech Coal., Inc. v. Att'y Gen. United States,* 825 F.3d 149, 165 (3d Cir. 2016) (Standing to seek injunctive relief requires a that the threat "must be actual and imminent, not conjectural or hypothetical.") Here, the associational plaintiffs' claims of future harm are speculative because the claims

assume (a) that the associational members will vote in Lancaster County, (b) they will vote using absentee or mailed ballots and (c) they are likely to submit the ballot with a missing or incorrect date. Each one of these events must be "certainly impending" for the associational plaintiffs to maintain standing. Standing based this type of "theoretical chain of events" is precisely what this Court rejected in *Boockvar v. Trump*, 493 F.Supp.3d 331 (W.D.Pa. 2020). There, this Court dismissed claims that the use of unmanned drop boxes for the receipt of mailed ballots would lead to an increased risk of fraud or vote dilution as "too speculative to be concrete." *Id*. at 377. This Court should again reject claims resting on the "possibility of future injury based on a series of speculative events—which falls short of the requirement to establish a concrete injury." *Id*. at 377.

Accordingly, the Court should dismiss all claims that the associational plaintiffs proport to maintain on behalf of their individual members.

## C. THE ASSOCIATIONAL PLAINTIFFS CANNOT MAINTAIN STANDING BASED ON ALLEGED DIRECT HARMS.

It is true that the associational plaintiffs can maintain standing based on their own injuries. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Here, the associational plaintiffs appear to press claims based on their own injuries. Each associational plaintiff claims that if LCBOE does not count mailed ballots with missing or incorrect dates in the future, they will be required to divert resources within their respective organizations. Am. Compl., ECF No. 121, ¶¶ 12, 16, 20, 23, and 28. But, at summary judgment, bare allegations of diversion of resources is not sufficient to confer standing on an organization. *Fair Housing Council of Suburban Philadelphia v. Montgomery*

*Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998). Plaintiffs must present evidence that resources have been diverted and certainly will be diverted in the future because of the conduct of LCBOE. Plaintiffs have not done that.

Like the individual plaintiffs, the associational plaintiffs fail to satisfy the crucial second element of standing requiring causation. The associational plaintiffs have not presented any evidence that they diverted resources fairly traceable *to the actions of LCBOE.* Rather, they admit they diverted resources because of the Pennsylvania Supreme Court's decision in *Ball, et. al. v. Chapman, et. al.,* 102 MM 2022. *See* Ans. to Int. 11, at Appx. Ex. 3-8. The associational plaintiffs have also not presented any evidence that they diverted resources targeted to voters in Lancaster County or have shifted resources towards Lancaster County voters, much less that they shifted resources *because of the conduct of* LCBOE. At least two associational plaintiffs admittedly have no nexus to Lancaster County. Associational plaintiff, BPEP, operates only in "the Pittsburgh Region" and in "predominately Black (sic) neighborhoods in Allegheny County, with some efforts in Westmoreland and Washington Counties." Am. Compl. ECF No. 121, ¶¶ 24-25. Likewise, plaintiff Make the Road, operates and serves voters in Berks, Bucks, Lehigh, Northampton, and Philadelphia Counties. Am. Compl., ECF No. 121, ¶ 27.

Moreover, "[s]pending money in response to [a] speculative harm cannot establish a concrete injury." *Donald J. Trump for President, Inc.*, 2020 WL 6204477 at *8. The associational plaintiffs are merely guessing that they will need to spend money because of some future hypothetical event.

Then there is the issue of what resources the associational plaintiffs are diverting in response to future harm. The rules concerning not counting ballots with missing or omitted dates have already been used in one election – the November 2022 general election. Assuming the rules remain in future elections, the associational plaintiffs can hardly be said to be diverting resources to educate voters because of existing procedures. The associational plaintiffs are simply educating their voters on the current procedures, not a sudden change in them.

In sum, the associational plaintiffs have not presented evidence of particularized and concrete harms to their respective organizations caused by the LCBOE. Accordingly, the Court should dismiss with prejudice all claims against the LCBOE.

## II.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF REGARDING THE 2022 ELECTION ARE MOOT.

Apart from a standing issue, plaintiffs' claims are partially moot. Plaintiffs seek injunctive relief regarding the November 2022 election. Plaintiffs ask this Court to enter an injunction against LCBOE prohibiting it from:

- rejecting or otherwise not counting based solely on a missing or incorrect date on Election Day *in 2022*, Am. Compl., ECF No. 121, prayer for relief, ¶ 2(a),

- certifying the results of the *2022 election* unless undated and incorrectly dated ballots are counted, *Id.*, ¶ 2(b), and

- refusing to count ballots cast in the *2022 election* that lacked a date or included a incorrect date, *Id.*, 2(c).

Those claims are moot because the results of that November 2022 election were long ago certified. *Mirarchi v. Boockvar*, 2021 WL 6197370, at *3 (E.D. Pa. 2021) ("[Voter's] claims for injunctive relief must also be dismissed as moot because they concern past events in connection with the 2020 general election.") In fact, they had been certified before plaintiffs filed their amended complaint. Accordingly, the Court should dismiss as moot all claims for injunctive relief against LCBOE related to the November 2022 election.

### III.   THERE IS NO EVIDENCE THAT LCBOE TREATS MILITARY AND OVERSEAS BALLOTS DIFFERENTLY THAN DOMESTIC MAILED AND ABSENTEE BALLOTS.

In Count II of the Amended Complaint, plaintiffs claim the LCBOE violated the Fourteenth Amendment because it "invalidates the mail ballots of otherwise-qualified domestic voters based on trivial paperwork errors while counting the mail ballots of military and overseas voters who make the same immaterial mistake." Am. Compl., ECF No. 121, ¶ 87. But plaintiffs have no evidence to support this allegation. To the contrary, LCBOE *did not count* any timely received military and overseas ballots in 2022 that contained a missing or incorrect date. *See* LCBOE Ans. to Int., 15 at Appx. Ex. 12. Furthermore, Crista Miller, LCBOE director of elections, testified that military and overseas ballots with missing or incorrect dates were treated the same as "domestic" mailed and absentee ballots. Deposition of Crista Miller, 64:15-21 at Appx. Ex. 11 ("Q. So if you received a military absentee ballot on November

14th, that met the submission deadline; but if the date the voter wrote on that envelope was November 9th, you would have set it aside pursuant to the court order? A. Correct.") Miller's testimony is uncontroverted, and plaintiffs have not presented any evidence that LCBOE treated military and overseas ballots differently from so-called domestic mailed ballots in November 2022 and no evidence that they will treat them differently in future elections. Accordingly, the Court should dismiss plaintiffs' equal protection claims against LCBOE.

## IV.   THERE IS NO PRIVATE RIGHT OF ACTION TO ENFORCE THE MATERIALITY PROVISIONS OF THE CIVIL RIGHTS ACT.

In Count III plaintiffs bring a claim to enforce 52 U.S.C. § 10101(a)(2)(B) which is also known as materiality provision of the Civil Rights Act (the "Materiality Provision"). Even if plaintiffs had Article III standing as to LCBOE, they cannot maintain a claim to enforce the Materiality Provision because Congress has not authorized a private right of action to enforce it. *Migliori v. Lehigh Cnty. Bd. of Elections*, 2022 WL 802159, at *11 (E.D. Pa. 2022) ("the text and structure of § 10101 create a strong presumption that Congress did not intend to create a private remedy for vindication of the personal right.")

In *Migliori*, the district court for the Eastern District of Pennsylvania held that plaintiffs could not maintain a claim under the Materiality Provision to compel a county board of elections to count undated and incorrectly dated mailed ballots because Congress had not authorized a private right of action to enforce it. *Id*. at * 11. *Migliori* is identical to this case. Indeed, plaintiffs in *Migliori* were represented by the same counsel, Attorney Loney, that represents plaintiffs in this case. In finding

that the Materiality Provision could not be enforced through a private right of action, the district court found that under prevailing Supreme Court precedent "private rights of action to enforce federal law must be created by Congress," which is determined by Congressional intent to "create not just a private right of action but also a remedy." *Id.*, at *5 (quoting *Wisniewski v. Rodale, Inc.* 510 F.3d 294, 296 (3d Cir. 2007*). Congressional intent is determined by the text and structure of the statute. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001*). Without Congressional intent to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

In *Sandoval*, the Supreme Court held that there was no private right of action to enforce certain regulations promulgated under Title VI of the Civil Rights Act. There the Court held "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290. The Materiality Provision does express one method of enforcement and that is by the Attorney General of the United States, not a private citizen. 52 U.S.C. § Section 10101(c) states

> "[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), ***the Attorney General may institute for the United States, or in the name of the United States***, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order...."

52 U.S.C. § 10101(c) (emphasis added).

The district court in *Migliori* found that § 10101(c) expressly provides for enforcement by the Attorney General "creates a strong presumption against [an] implied private right[ ] of action that must be overcome." *Migliori*, 2022 WL 80159 at *10. (citing *Wisniewski*, 510 F.3d at 205, n. 1) The district court's holding in *Migliori* is consistent with the holding of the Sixth Circuit of Appeals in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016).[2]  In that case, the Sixth Circuit likewise found that the statutes enforcement remedy by the Attorney General was exclusive. *Id.* at 630.

Accordingly, even if plaintiffs had sustained an injury-in-fact caused by LCBOE (they have not), the Court should still dismiss Count II of their Amendment Complaint because plaintiffs have no private right of action to enforce 52 U.S.C. § 10101(a)(2)(B).

## CONCLUSION

While plaintiffs might have suffered harm because of the conduct of certain other defendants, they have not suffered any harm causally related to any conduct by the LCBOE. Therefore, each plaintiff lacks Article III standing as to LCBOE. Moreover, even if they did have Article III standing, their claims under the Fourteenth Amendment lack any evidentiary support and their claims to enforce the Materiality Provision fail as a matter of law. Accordingly, this Court should grant summary judgment to LCBOE and dismiss all claims against it with prejudice.

---

[2] It is true that the Third Circuit found disagreement with the district court's holding in Migliori. *Migliori v. Cohen*, 36 F.4th 153 (3d. Cir. 2022). But the Supreme Court subsequently vacated the judgment and mandate of the Third Circuit. *See Ritter v. Migliori*, 143 S. Ct. 297 (2022)

Respectfully submitted,

Date: April 21, 2023

/s/ Walter S. Zimolong
WALTER S. ZIMOLONG III, ESQ.
wally@zimolonglaw.com
JAMES J. FITZPATRICK III, ESQ.
james@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
Attorneys for Defendant
Lancaster County Board of
Elections

## CERTIFICATE OF SERVICE

I hereby certify the foregoing has been filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Western District of Pennsylvania.  I further hereby certify that, in accordance with Fed. R. Civ. P. 5, service has been made upon counsel of record via ECF.

<div style="margin-left:50%;">

Respectfully submitted,

Date: April 21, 2023

/s/ Walter S. Zimolong III
Walter S. Zimolong III, Esq.
wally@zimolonglaw.com
James J. Fitzpatrick III, Esq.
james@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
*Attorneys for Defendant*
*Lancaster County Board of*
*Elections*

</div>