**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | Civil Action No.: 1:22-cv-00339 |
| Plaintiffs, | |
| v. | |
| AL SCHMIDT, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................1

LEGAL STANDARD.........................................................................................2

ARGUMENT ....................................................................................................2

     I.       MANDATORY APPLICATION OF THE DATE REQUIREMENT
             DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION ............4

             A.     Plaintiffs Lack A Private Right To Enforce the Materiality
                   Provision .........................................................................................4

             B.     Application Of The Date Requirement Does Not Violate
                   Federal Law .....................................................................................5

             C.     There Is No Tenable Basis To Conclude That Mandatory
                   Application Of The Date Requirement Violates The Federal
                   Materiality Provision ......................................................................12

     II.     MANDATORY APPLICATION OF THE DATE REQUIREMENT
             DOES NOT VIOLATE EQUAL PROTECTION ...................................17

             A.     Pennsylvania Law Does Not Exempt Military And Overseas
                   Voters From The Date Requirement.........................................17

              B.     Exempting Military And Overseas Voters From The Date
                   Requirement Would Not Violate The Equal Protection Clause ...............21

CONCLUSION...................................................................................................25

# **TABLE OF AUTHORITIES**

**Page**

*Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021) ....................................................15

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..................................................................5

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...............................................................2

*Anderson v. Liberty Lobby, Inc.*, 477 J.S. 24 (1986) ......................................................2

*Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022) .............................................1, 3, 7

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) .......................................................... passim

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ...............................................................22

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..................................................................11

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021).................................2, 7, 8

*Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009)..........................................10, 11

*Castro v. DHS*, 835 F.3d 422 (3d Cir. 2016) ..................................................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................2

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ..............................................................11

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)........................................17

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) .......................................5

*Clingman v. Beaver*, 544 U.S. 581 (2005).....................................................................15

*Commonwealth v. Herman*, 161 A.3d 194 (Pa. 2017)....................................................18

*Commonwealth v. Howard*, 257 A.3d 1217 (Pa. 2021) ..................................................19

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979).....................................................16

*Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28 (2020) ......................7, 8

*Discovery Charter Sch. v. Sch. Dist. of Phila.*, 166 A.3d 304 (Pa. 2017) ........................20

*Doe v. Walker*, 746 F. Supp. 2d 667 (D. Md. 2010) ......................................................22

*Fisher v. Commonwealth*, 501 A.2d 617 (Pa. 1985) ......................................................19

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ...............9, 11

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ..........................................7

*FTC v. Bunte Bros., Inc.*, 312 U.S. 349 (1941) .............................................................16

*Gonzaga Univ. v. Doe*, 536 U.S. 373 (2002) ...................................................................5

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ...............................................................10, 15

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004) ........................................................23

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-806 (U.S. argued Nov. 8, 2022) ........5

*Heckler v. Mathews*, 465 U.S. 728 (1984) .....................................................................24

*In re Appointment of Rodriguez*, 900 A.2d 341 (Pa. 2003) ...........................................20

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*,
    241 A.3d 1058 (2020) ................................................................................................3

*In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020) ..........................................3

*Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775 (S.D. Ind. 2006) ...............10, 11

*Jarecki v. G.D. Searle & Co.*, 367 U.S. 303 (1961) .......................................................9

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020) ............................................................22

*McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969) .......................................22

*Milliken v. Bradley*, 433 U.S. 267 (1977) ...............................................................24, 25

*N. Sound Cap, LLC v. Merck & Co.*, 938 F.3d 482 (3d Cir. 2019) ...............................12

*Ne. Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ...................5

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ........................................................................21

*Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009) ..........................11

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) .........................................22, 23

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020)......................................14

*Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522 (3d Cir. 1993)..................................16

*Rappa v. New Castle County*, 18 F.3d 1043 (3d Cir. 1994) ........................................25

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022)............................................................ passim

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ......................................................7, 8

*Schwier v. Cox*, 340 F3d 1284 (11th Cir. 2003) .............................................5, 9, 10, 11

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017)................................................24, 25

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005) ........................21

*Storer v. Brown*, 415 U.S. 724 (1974) ...................................................................2

*Thompson v. Thompson*, 223 A.3d 1272 (Pa. 2020).................................................20

*Timmons v. Twin Cty. Area New Party*, 520 U.S. 351 (1997)................................2, 7, 8

*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015)......................................22, 23

*United States v. Am. Union Transp., Inc.*, 327 U.S. 437 (1946)................................16

*United States v. Mississippi*, 380 U.S. 128 (1965)..............................................10, 11

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ...........................................16

*United States v. Tupone*, 442 F.3d 145 (3d Cir. 2006) .................................................9

*Vote.Org v. Callahen*, 39 F.4th 297 (5th Cir. 2022) ...........................................5, 8, 9

## Statutes and Rules

10 Ill. Comp. Stat. Ann. 5/17-16.............................................................................15

15 Del. C. § 4972(b)(6)..........................................................................................15

15 Del. C. § 5514(a)(1)...........................................................................................15

25 Pa. C.S. § 1328..................................................................................................6

25 Pa. C.S. §§ 3501-3519 ................................................................... passim

25 Pa. C.S. § 3515 ....................................................................17, 18, 19

25 P.S. § 1301 .........................................................................................6

25 P.S. § 3050 .......................................................................................15

25 P.S. § 3058 .......................................................................................15

25 P.S. § 3063 .......................................................................................14

25 P.S. § 3146 ............................................................................... passim

25 P.S. § 3150 ............................................................................... passim

52 U.S.C. § 10101 ......................................................................... passim

A.R.S. § 16-611 ....................................................................................15

Fed. R. Civ. P. 56(a) ......................................................................1, 2, 8

Fla. Stat. § 101.5614(5) .......................................................................15

N.C. Gen. Stat. § 163-182.1(a)(4) .......................................................15

N.J. Stat. § 19:62-11 .............................................................................15

Ohio Rev. Code § 3505.28 ...................................................................15

## **Other Authorities**

2012 Pa. Laws 189 ................................................................................23

Act 77, P.L. 552, sec. 11 (October 31, 2019) .....................................25

H. Rep. No. 88-914, pt. 1 (1963) ...........................................................6

Pa. Dep't of State, *Overview of the Uniform Military and Overseas Voters Act (UMOVA)* (Sept. 26, 2022), available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/2022-09-26-UMOVA-Overview.pdf ................................................................................23

## **Constitutional Provisions**

U.S. Const. amend. XV, § 1 ..................................................................10

# INTRODUCTION

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Intervenor-Defendants therefore respectfully move the Court to grant summary judgment against Plaintiffs and to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections.

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall … fill out, date and sign the declaration" printed on the outer envelope of the ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). Less than six months ago, the Pennsylvania Supreme Court held that the General Assembly's date requirement is mandatory and, thus, that election officials may not count any absentee or mail-in ballot that fails to comply with it. *See Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022) (unpublished).

Plaintiffs' suit is merely the latest effort to erode the General Assembly's date requirement. But Plaintiffs' two counts wholly fail "as a matter of law," Fed. R. Civ. P. 56(a), because the date requirement does not violate the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B), or the U.S. Constitution. Indeed, the Pennsylvania Supreme Court declined to invalidate the date requirement under the federal materiality provision, *see Ball*, 284 A.3d at 1192, and three Justices of the U.S. Supreme Court have already concluded that the notion that the date requirement violates the federal materiality provision is "very likely wrong," *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). No other U.S. Supreme Court Justices addressed the merits in the stay posture of that case.

These decisions are correct: the plain statutory text and governing case law confirm that the date requirement does not even *implicate* the federal materiality provision, let alone violate it. The federal materiality provision prohibits "deny[ing] the right of an[] individual to vote" as part

of an election official's determination whether that "individual is qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B)—but application of the date requirement does not deny anyone the right to vote or determine anyone's qualifications to vote.  Neither can the Plaintiffs prevail on their novel and incorrect Equal Protection challenge.  The Court should grant summary judgment and uphold the General Assembly's lawful and constitutional date requirement.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A plaintiff opposing summary judgment "may not rest upon mere allegation or denials of his pleading" or a "scintilla of evidence" in support of an essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).  Rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.*  Indeed, Rule 56 "mandates" entry of summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Accordingly, summary judgment is warranted against any plaintiff who pursues a legally deficient theory of liability.  *See, e.g.*, *id.*; Fed. R. Civ. P. 56(a).

## ARGUMENT

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358 (1997).  "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *see also Brnovich v. Democratic Nat'l Comm.*, 141

S. Ct. 2321, 2347-48 (2021) (because voter "[f]raud is a real risk," a state may act prophylactically to prevent fraud "without waiting for it to occur and be detected within its own borders").

The General Assembly has prescribed such a regulation through its mandatory date requirement for absentee and mail-in ballots. *See* 25 P.S. §§ 3146.6(a), 3150.16(a); *Ball*, 284 A.3d at 1192. As three Justices of the Pennsylvania Supreme Court have observed, "[t]he date requirement … carrie[s] an unquestionable purpose." *Ball v. Chapman*, 289 A.3d 1, 10 (Pa. 2023) (internal quotation marks omitted). The date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place." *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (2020) (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy) (citing then-Judge Brobson's "observ[ations] below"). It "establishes a point in time against which to measure the elector's eligibility to cast the ballot." *Id.* And it "ensures the elector completed the ballot within the proper time frame and prevents tabulation of potentially fraudulent back-dated votes." *Id.* at 1091; *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments also suggest [the] importance" of the date requirement).

These are no mere theoretical interests. Last year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name. *See* SOF ¶¶ 46-53. The investigation was predicated upon the fraudster's completion of the date field on the ballot declaration. *See* SOF ¶ 51. Indeed, the declaration contained only two pieces of information to be supplied by the voter: a signature and the date. *See* SOF ¶¶ 48-50. But under the Pennsylvania Supreme Court's current precedent, the Lancaster County Board of Elections lacks authority to conduct signature comparisons, so it could not even check for a non-matching signature, much less use any non-matching signature to detect fraud by a third party. *See In re Nov. 3, 2020 Gen.*

3

*Election*, 240 A.3d 591 (Pa. 2020).  Thus, the *only* evidence on the face of the ballot declaration indicating that someone other than the decedent had completed the ballot was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away.  *See* SOF ¶¶ 50. Even Plaintiffs' putative expert agreed that the date supplied by the *Mihaliak* fraudster was the only evidence of fraud on the face of the ballot and, thus, that the date requirement helped to detect fraud in that case.  *See* SOF ¶¶ 52-53.

Plaintiffs' two counts fail "as a matter of law."  Fed. R. Civ. P. 56(a).  *First*, Plaintiffs' contention that the date requirement violates the federal materiality provision contravenes the provision's plain statutory text and governing law, resting instead on a misreading of federal law that would invalidate a broad swath of duly enacted state election rules.  *Second*, Plaintiffs' argument that the date requirement violates the Fourteenth Amendment of the U.S. Constitution misapplies hornbook Equal Protection principles to an alleged statutory exception that does not even exist.  The Court should grant summary judgment and uphold the General Assembly's date requirement and its authority to enact commonsense laws governing Pennsylvania's elections.

## I.     MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION

Three Supreme Court Justices already have concluded that the Third Circuit panel's now-vacated view that mandatory application of the date requirement violates the federal materiality provision is "very likely wrong."  *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  The plain statutory text and governing law confirm that the General Assembly's date requirement does not even implicate, let alone violate, 52 U.S.C. § 10101(a)(2)(B).  The Court should enter summary judgment against Plaintiffs on Count I.

### A.     Plaintiffs Lack A Private Right To Enforce The Materiality Provision

As an initial matter, the Court should dismiss Count I because neither 52 U.S.C.

§ 10101(a)(2)(B) nor 42 U.S.C. § 1983 grants Plaintiffs a right to sue.  Section 10101 provides

that only "the Attorney General may institute … a civil action" under that statute.  52 U.S.C.

§ 10101(c).  "[T]he negative implication of Congress's provision for enforcement by the Attorney

General is that the statute does not permit private rights of action."  *Ne. Ohio Coal. for the*

*Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (reiterating holding that there is no private

right to sue and recognizing circuit split); *see also Vote.Org v. Callanen*, 39 F.4th 297, 305 n.5

(5th Cir. 2022) (reserving question); *but see Schwier v. Cox*, 340 F.3d 1284, 1294-96 (11th Cir.

2003).  Neither should the Court let Plaintiffs evade that limit through § 1983, which provides a

private right of action to enforce only "unambiguously conferred right[s]."  *Gonzaga Univ. v. Doe*,

536 U.S. 273, 282 (2002).  And again, the fact that the materiality provision authorizes suits only

by the Attorney General suggests Congress did not intend to permit private suits under § 1983.

*See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (noting that "the express

provision of one method of enforcing a substantive rule suggests that Congress intended to

preclude others" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)) (alteration omitted)).[1]

### B.    Application Of The Date Requirement Does Not Violate Federal Law

If the Court reaches the merits, it should also grant summary judgment against Plaintiffs

on Count I because the General Assembly's date requirement does not even implicate, let alone

violate, the materiality provision.  The materiality provision states:

> No person acting under color of law shall … deny the right of any individual to
> vote in any election because of an error or omission on any record or paper relating
> to any application, registration, or other act requisite to voting, if such error or
> omission is not material in determining whether such individual is qualified under
> State law to vote in such election.

---

[1] The U.S. Supreme Court is currently considering a case in which the existence of a cause of action to enforce a federal statute under § 1983 is at issue.  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-806 (U.S. argued Nov. 8, 2022).

52 U.S.C. § 10101(a)(2)(B).

For at least three reasons, the "plain and unambiguous" text demonstrates that application of the General Assembly's date requirement to preclude counting of undated or incorrectly dated absentee or mail-in ballots does not violate the materiality provision. *Castro v. DHS*, 835 F.3d 422, 429 (3d Cir. 2016) ("The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). *First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory rules on the act of completing and casting a ballot. 52 U.S.C. § 10101(a)(2)(B). The materiality provision therefore has no application to the date requirement because "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)). Rather, "that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Id.*; *see also* H. Rep. No. 88-914, pt. 1, at 19 (recognizing that Title I of the Civil Rights Act, now codified in § 10101, was part of an effort "by which the Congress took steps to guarantee to all citizens *the right to vote* without discrimination as to race or color" (emphasis added)).

Indeed, the "*right* to vote" protected by the materiality provision, 52 U.S.C. § 10101(a)(2)(B) (emphasis added), is obviously different from the *act* of voting. An individual possesses the "right to vote" when she satisfies the state-law qualifications; states, including Pennsylvania, use registration to confirm those qualifications. *See* 25 P.S. § 1301; 25 Pa. C.S. § 1328(a)(1)(ii), (b)(2)(ii); SOF ¶¶ 145-46. But even after qualifying and registering, a voter "may be unable to cast a vote for any number of reasons," such as showing up to the polls after Election Day, failing to sign or to use a secrecy envelope for an absentee or mail-in ballot, attempting to

vote for too many candidates for a single office, returning the ballot to the wrong location, or arriving at the wrong polling place. *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay). Such a voter has not been denied the *right* to vote, but instead has failed to complete the *act* of voting in compliance with state law. *See id.*; *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004) (the materiality provision is not "intended to apply to the counting of ballots by individuals already deemed qualified to vote").

The consequence of such noncompliance is not disqualifying the voter, stripping the voter's eligibility to vote, or removing the voter from the list of registered voters, but rather declining to count the voter's (invalid) ballot. *See Ball*, 284 A.3d 1189. Indeed, any eligible, registered voter who fails to comply with such rules *retains* the right to vote in any election in compliance with the state-law rules for voting. Accordingly, application of rules such as those requiring voting by Election Day, signing absentee or mail-in ballots, using secrecy envelopes, and voting at a specific location do not deny anyone the right to vote. Nor does application of the date requirement. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); *id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility."); *see also Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973) (application of neutral state-law voting requirement does not "disenfranchise" voters); *Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations" for effectuating votes); *Brnovich*, 141 S. Ct. at 2338 ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules."); *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Mem.) (Kavanaugh, J., concurring)

("[R]easonable election deadlines do not 'disenfranchise' anyone under any legitimate understanding of that term.").

As the Fifth Circuit has reasoned, "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision. *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022). Yet that is precisely what Plaintiffs ask the Court to hold: according to Plaintiffs' own putative expert, "disenfranchise[ment]" and denial of the right to vote occur whenever "an eligible voter['s] … ballot [is] not counted." SOF ¶ 148; *see also id.* at ¶¶ 148-49 ("If a legally eligible voter's ballot is not counted, it's disenfranchisement" even where state law requires the ballot not to be counted). This faulty premise, irreconcilable with the Supreme Court's jurisprudence, alone dooms Plaintiffs' materiality challenge to the date requirement as "a matter of law." Fed. R. Civ. P. 56(a); *see also Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *Rosario*, 410 U.S. at 757; *Timmons*, 520 U.S. at 358; *Brnovich*, 141 S. Ct. at 2338; *Democratic Nat'l Comm.*, 141 S. Ct. at 35 (Kavanaugh, J., concurring).

*Second*, the materiality provision requires that the error or omission affect a "determin[ation] whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). It therefore regulates requirements and practices related to qualifications and registration to vote, not rules "that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6. To fall within the scope of the materiality provision, "it is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications." *Ball*, 289 A.3d at 38 (Opinion of Justice Brobson) (emphasis original).

Here, the date on the absentee or mail-in ballot declaration is not used to determine an individual's *qualifications* to vote, but rather the *validity* of a ballot. *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay) ("There is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to case a ballot that will be counted."); *see also Vote.Org*, 39 F.4th at 305 n.6. Indeed, application of the date requirement results in invalidation of a noncompliant ballot, not a "determin[ation]" that the individual is or is not "qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). In other words, mandatory application of the date requirement results in a ballot not being counted, not in an individual being stripped of the right to vote or removed from, or prevented from joining, the list of registered voters. *Compare, e.g.*, *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; H. Rep. No. 88-914, pt. 2, at 5; *see also Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *Vote.Org*, 39 F.4th at 305 n.6. Because mandatory application of the date requirement does not result in a qualification determination, it is outside the plain terms and narrow scope of, and does not violate, the federal materiality provision. *See Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *Ball*, 289 A.3d at 37-40 (Opinion of Justice Brobson).

The two other subsections of § 10101(a)(2) further underscore this point. Just as "a word is known by the company it keeps," *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961), so too is a statutory provision, *see United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) ("[T]he text of a statute must be considered in the larger context or structure of the statute in which it is found."). Those subsections require election officials to apply uniform "standard[s], practice[s], [and] procedure[s] … in determining whether any individual is qualified to vote under state law,"

52 U.S.C. § 10101(a)(2)(A), and restrict the use of literacy tests "as a qualification for voting in any election," *id.* § 10101(a)(2)(C). Thus, "like the other two [subsections]," the materiality provision "relates to determinations of *who* may vote—*i.e.*, voter qualifications," not what voters must *do* to cast a valid ballot, *Ball*, 289 A.3d at 37 (Opinion of Justice Brobson) (emphasis original). Indeed, it would be unusual, to say the least, to sandwich a provision governing *all* paper-based election regulations between two voter-qualification provisions. "Congress should make its intention clear and manifest if it intends to pre-empt the historic powers of the State." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). There is no such clear intention here, and the Court should not find Plaintiffs' purported federal authority over state elections without it.

This textual and commonsense construction comports with Congress's purpose in enacting the materiality provision. Congress enacted the provision and the broader § 10101 of which it is part "to enforce th[e] [Fifteenth] Amendment[,]" *United States v. Mississippi*, 380 U.S. 128, 138 (1965), which guarantees that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude," U.S. Const. amend. XV, § 1; *see also Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006) ("[W]ell-settled law establishes that § 1971 was enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements."); *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) (same).

Congress's purpose was to "forbid[] the practice of *disqualifying voters* for their failure to provide information irrelevant to their eligibility to vote." *Schwier*, 340 F.3d at 1294 (emphasis added). In particular, Congress addressed "the practice of requiring unnecessary information for voter registration"—such as listing the registrant's "exact number of months and days in his age"—"with the intent that such requirements would increase the number of errors or omissions

on the application forms, thus providing an excuse to disqualify potential voters." *Id.*  In other words, "[s]uch trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting *applicants*." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (emphasis added); *see also* H. Rep. No. 88-914, pt. 2, at 5 (1963) ("[R]egistrars [would] overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" an application from an African-American applicant "for the same or more trivial reasons.").  The federal materiality statute thus functions as a safeguard against discriminatory application of state voter qualification and registration rules, not a limitation on rules that must be met for a ballot to be counted.  *See Mississippi*, 380 U.S. at 138; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173.

Indeed, some courts have declined even to *consider* claims brought under the materiality provision when, as now, the plaintiff has failed to allege racial discrimination in application of the challenged state law.  *See, e.g.*, *Rokita*, 458 F. Supp. 2d at 839; *Broyles*, 618 F. Supp. 2d at 697.  At minimum, that Congress adopted the materiality provision under the Fifteenth Amendment requires that it be strictly construed—and, thus, limited to state laws used to "determin[e]" whether an individual is or is not "qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B); *see Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009); *City of Boerne v. Flores*, 521 U.S. 507, 525-26 (1997); *see also Boumediene v. Bush*, 553 U.S. 723, 787 (2008) ("We are obligated to construe the statute to avoid constitutional problems if it is fairly possible to do so.").

*Third*, the materiality provision demands that the "record or paper" be related to an "application, registration, or other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  True, an absentee or mail-in ballot and accompanying declaration is a "record or paper."  *Id.*  But casting a ballot—which requires completing the declaration, *Ball*, 289 A.3d at 22-23—constitutes the *act* of

voting, not an application, registration, or other act *requisite* to voting. *Ritter*, 142 S. Ct. at 1826 n.2 (Alito, J., dissenting from the denial of the application for stay). It would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement. *Id.*; *see also Ball*, 289 A.3d at 26 (Opinion of Justice Wecht) ("Logic and ordinary rules of statutory construction … dictate that an 'act requisite to voting' must be different from voting itself."). Voting is voting; it is not an act requisite to voting.

Indeed, the "time-honored canon *ejusdem generis*[] … teaches that where general words follow an enumeration of two or more things, those successive words refer only to … things of the same general kind or class specifically mentioned." *N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 490 (3d Cir. 2019). Here, the two preceding items in § 10101(a)(2)(B)—"application" and "registration"—are acts "requisite to voting" and, in particular, acts to confirm a voter's qualifications. Thus, "other act requisite to voting" must similarly refer to acts relating to voter qualification. *See Ball*, 289 A.3d at 38 n.11 (Opinion of Justice Brobson) (the "understanding that the scope of the [materiality provision] is limited to records or papers used in determining a voter's qualifications is supported by the *ejusdem generis* canon of statutory construction").

## C. There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Federal Materiality Provision

In their Amended Complaint, Plaintiffs offer two main arguments in support of their claim that the date requirement violates the federal materiality provision. Both are unpersuasive.

*First*, the entire thrust of Plaintiffs' Amended Complaint is that "[a] voter's failure to handwrite the date next to their signature on the ballot return envelope is not material to determining their qualification to vote," Am. Compl., **Ex. 1**, ¶ 80, which in Pennsylvania requires being at least 18 years of age on the date of the election; having been a citizen of Pennsylvania for at least one month; having lived in the relevant election district for at least 30 days; and not being

imprisoned for a felony, *see* 25 P.S. § 1301; *see also* Am. Compl., **Ex. 1**, ¶ 79. Plaintiffs are entirely correct that compliance with the date requirement is not a qualification to vote. But that point *disproves* Plaintiffs' case. As explained above, the date requirement is not used to determine whether an individual is "qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B), so it does not implicate, let alone violate, the federal materiality provision, *see supra* Part I.B.

In fact, Plaintiffs' proposed reading of the federal materiality provision is breathtakingly broad—and, unsurprisingly, incorrect. Under Plaintiffs' reading, states could enact no mandatory rules against "errors or omissions" on any voting "record[s] or paper[s]" except those that merely implement the requirements for "determining whether [an] individual is qualified under State law to vote in [the] election." Am. Compl**., Ex. 1**, ¶¶ 76, 78, 82. In other words, under Plaintiffs' construction of the federal materiality provision, states could not adopt *any* requirements for completing ballots or ballot-return envelopes that do not confirm the individual's qualifications to vote.

Take, for example, the General Assembly's requirement that a voter sign an absentee or mail-in ballot return envelope, which appears in the very same statutory sentence as—and is part and parcel with—the date requirement. *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall … fill out, date and sign the declaration" printed on the outer envelope of the ballot); *see also Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (discussing signature requirement). Before the Pennsylvania Supreme Court in *Ball*, Acting Secretary Chapman agreed that the signature requirement is valid and mandatory and does not violate the federal materiality provision. SOF ¶ 43. Moreover, Plaintiffs' own putative expert agreed that providing a signature is not a qualification to vote. SOF ¶ 147. But under Plaintiffs' proposed reading, the signature requirement would violate the federal materiality provision: a

failure to provide a signature is an "omission" or "an error" involving a "record or paper," and the signature requirement is "immaterial to whether the voter is qualified under State law to vote in [the] election."  Am. Compl., **Ex. 1**, ¶ 78 (internal quotation marks omitted).

Take, as another example, the secrecy-envelope requirement contained in the same statutory section as the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall … enclose and securely seal" the ballot in a secrecy envelope).  The Pennsylvania Supreme Court has upheld that requirement as mandatory, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 379-80 (Pa. 2020), and the Acting Secretary conceded in *Ball* that it does not violate the federal materiality provision, *see* SOF ¶ 44.  But it would on Plaintiffs' proposed reading: a failure to use a secrecy envelope is an "omission" or "an error" involving a "record or paper," and the secrecy envelope requirement is "immaterial to whether the voter is qualified under State law to vote in [the] election."  Am. Compl., **Ex. 1**, ¶ 78 (internal quotation marks omitted); *Ball*, 289 A.3d at 38-39 (Opinion of Justice Brobson) ("it would not surprise me at all to see, in future litigation, an argument that" requiring secrecy envelopes violates the materiality provision).

If another example were somehow needed, consider also the General Assembly's commonplace prohibition on "mark[ing] [a] ballot for more persons for any office than there are candidates to be voted for such office."  25 P.S. § 3063(a).  Under the Election Code, any such overvotes are invalid, and the ballot "shall not be counted for such office."  *Id.*  Under Plaintiffs' proposed construction of federal law, the overvote prohibition would violate the materiality provision: mismarking a ballot is an "omission" or "an error" on a "record or paper," and the overvote prohibition is "immaterial to whether the voter is qualified under State law to vote in [the] election."  Am. Compl., **Ex. 1**, ¶ 78 (internal quotation marks omitted).

These examples are illustrative of the disruption Plaintiffs' (wrong) interpretation of the materiality provision would cause.  There are surely many more.  To name just a few, Plaintiffs would also cast in doubt the validity of commonplace voter assistance declarations, and requirements that in-person voters sign pollbooks.  *See* 25 P.S. §§ 3050, 3058.  In fact, under Plaintiffs' reading "no election law that imposes informational requirements on a record or paper unrelated to determining voter qualification can survive a [§ 10101(a)(2)(B)] challenge."  *Ball*, 289 A.3d at 39 (Opinion of Justice Brobson).

The mischief effected by Plaintiffs' proposed reading of the federal materiality provision would not be confined to Pennsylvania.  Plaintiffs' misconstruction imperils scores of state laws nationwide, including signature requirements, *see, e.g.*, N.J. Stat. § 19:62-11; 15 Del. C. § 5514(a)(1), and overvote prohibitions, *see, e.g.*, 15 Del. C. § 4972(b)(6); A.R.S. § 16-611; Fla. Stat. § 101.5614(5); 10 Ill. Comp. Stat. Ann. 5/17-16; Ohio Rev. Code § 3505.28; N.C. Gen. Stat. § 163-182.1(a)(4).

In short, Plaintiffs' reading "would subject virtually every electoral regulation" related to voting records and papers to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes."  *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  Indeed, if Plaintiffs are correct, numerous state election rules—such as the General Assembly's signature and secrecy-envelope requirements and overvote prohibition—have been invalid since Congress enacted the federal materiality provision nearly six decades ago.  That not only defies the statute's plain text, but also the rule that "if Congress intends to alter the usual constitutional balance between the States and Federal Government, it must make its intention to do so unmistakably clear in the language of the statute."  *Gregory*, 501 U.S. at 460; *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489

(2021) (applying federalism canon).  The absurdity of discovering, sixty years after the fact, that the materiality provision declares *all* these commonplace rules invalid confirms the folly of Plaintiffs' interpretation.  *See FTC v. Bunte Bros., Inc.*, 312 U.S. 349, 352 (1941) ("[J]ust as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."); *United States v. Am. Union Transp., Inc.*, 327 U.S. 437, 459 (1946) (Frankfurter, J., dissenting) ("[A] consistent and unexplained failure to exercise power not obviously conferred by legislation may be … persuasive that the power claimed was never conferred.").

*Second*, Plaintiffs cite to the Third Circuit's vacated opinion in *Migliori* as "persuasive" authority.  Am. Compl., **Ex. 1**, ¶¶ 57, 81.  But "of necessity [the Supreme Court's] decision vacating the judgment of the [Third Circuit] deprives that court's opinion of precedential effect." *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (addressing consequences of *Munsingwear* vacatur); *see also Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 n.30 (3d Cir. 1993) (court is not "bound" by holding in a vacated opinion) (cited in Am. Compl., **Ex. 1**, ¶ 57).  *Munsingwear* vacatur "is commonly utilized … to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences."  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).  The Third Circuit's decision becoming moot prevented review by the Supreme Court, and the subsequent vacatur "eliminate[d] [the] judgment, review of which was prevented through happenstance."  *Id.* at 40.  The Court should not rely on that untested—and accordingly erased—analysis.  In all events, the Third Circuit's opinion was wrongly decided.  *See supra* Part I.B.

Nor should the Court follow the two Commonwealth Court decisions from last year.  *See* Am. Compl., **Ex. 1**, ¶ 58.  Those decisions relied upon the now-vacated *Migliori* decision, have been superseded by the Pennsylvania Supreme Court's holding in *Ball*, and were incorrect.  *See* SOF ¶ 41; *supra* Part I.B.  The Court should grant summary judgment against Plaintiffs on Count I.

## II.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE EQUAL PROTECTION

The Court should also grant summary judgment against Plaintiffs on Count II because mandatory application of the date requirement does not violate Equal Protection.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiffs' equal protection theory rests on three premises: (i) that Pennsylvania law exempts "military and overseas voters who vote by mail" from the date requirement; (ii) that this alleged exemption "creates differential treatment of the right to vote," and (iii) that this classification of voters is therefore subject to and fails strict scrutiny.  Am. Compl., **Ex. 1**, ¶¶ 83-88 (citing 25 Pa. C.S. § 3515(a)). Each premise fails.

### A.   Pennsylvania Law Does Not Exempt Military And Overseas Voters From The Date Requirement

Plaintiffs' first premise—that Pennsylvania law applies the date requirement to domestic voters but not to military and overseas voters, *see* Am. Compl., **Ex. 1**, ¶ 86—is false.  Plaintiffs' lone contention is that Pennsylvania's version of the Uniform Military and Overseas Voting Act (UMOVA) exempts military and overseas voters from the date requirement. *See id.*  But UMOVA creates no express exemption from the date requirement.  *See* 25 Pa. C.S. §§ 3501-3519. Moreover, the UMOVA mistake provision Plaintiffs invoke, 25 Pa. C.S. § 3515(a)(1), *see* Am. Compl., **Ex. 1**, ¶ 86—which has never been cited in any court decision—does not create such an

exemption *sub silentio*.  Even Plaintiffs' own putative expert agreed that the date requirement applies to overseas voters.  *See* SOF ¶ 153.

The Court should decline at the threshold to adopt Plaintiffs' novel and countertextual reading of UMOVA.  "Under the canon of constitutional avoidance, if a statute is susceptible of two reasonable constructions, one of which would raise constitutional difficulties and the other of which would not," this Court must "adopt the latter construction."  *Commonwealth v. Herman*, 161 A.3d 194, 212 (Pa. 2017).  Plaintiffs' unproven (and erroneous) construction of § 3515(a)(1) is an essential *premise* of their allegation of a constitutional violation, *see* Am. Compl., **Ex. 1**, ¶¶ 83-88, and, thus, flies in the face of this canon.  It should be rejected for that reason alone.

Moreover, even a cursory textual review proves that reading § 3515(a)(1) not to create a *sub silentio* exemption from the date requirement not only is "reasonable" but, in fact, correct.  *Herman*, 161 A.3d at 212.  In particular, § 3515(a)(1) states in its entirety:

> (a) Mistake, omission or failure to satisfy. – None of the following shall invalidate a document submitted under this chapter:
>
> (1) A voter's mistake or omission in the completion of a document *under this chapter* as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote.

25 Pa. C.S. § 3515(a)(1) (emphasis added).  For at least three reasons, this "mistake provision" does not exempt military and overseas voters from the date requirement by its plain terms.

*First*, Plaintiffs omit the mistake provision's "under this chapter" limitation from their selective quotation, Am. Compl., **Ex. 1**, ¶ 86, but that limitation is dispositive here.  The mistake provision applies only to "completion of a document under this chapter"—i.e., under UMOVA itself.  25 Pa. C.S. § 3515(a)(1).  But *none* of the "document[s]" completed under the UMOVA "chapter" (chapter 35) are Pennsylvania absentee or mail-in ballots.  *See id.* §§ 3501-3519; *compare also id.* §§ 3146.6(a), 3150.6(a).  Instead, the "documents" completed under UMOVA

18

are special registration and application documents that facilitate military and overseas voters registering to vote and requesting ballots.  *See id.* §§ 3505-3509.  Thus, because UMOVA "is intended to be read in concert with the Election Code," *id.* § 3519, UMOVA's mistake provision does not even apply to, let alone excuse, military and overseas voters' "mistakes or omissions in the completion of" absentee or mail-in ballots, including failure to comply with the date requirement, *id.* § 3515(a)(1).

*Second*, the mistake provision applies only to documents used to "determin[e] whether" a voter "covered" by UMOVA is "eligible to vote." *Id.*  It therefore has no application to documents, such as absentee and mail-in ballots and ballot declarations, that constitute the *act* of voting and have no bearing on determining whether a voter is "*eligible* to vote." *Id.* (emphasis added); *see also Commonwealth v. Howard*, 257 A.3d 1217, 1222 (Pa. 2021) ("The best expression of [the General Assembly's] intent is found in the statute's plain language."); *Fisher v. Commonwealth*, 501 A.2d 617, 619 (Pa. 1985) ("The supreme principle of statutory interpretation must be that each word used by the Legislature has meaning and was used for a reason, not as mere surplusage.").

*Third*, consistent with the General Assembly's direction that UMOVA "be read in concert with the Election Code," 25 Pa. C.S. § 3519, the plain text confirms that when the General Assembly intended to exempt military and overseas voters from the Election Code's global requirements, it did so expressly in UMOVA.  Thus, UMOVA crafts special rules for military and overseas voters regarding a variety of voting-related practices, including voter registration, ballot applications, the deadline for returning ballots to election officials, and misspellings on write-in votes. *See, e.g.*, *id.* §§ 3505-3515.  But UMOVA is completely silent regarding—and creates no express exemption from—the date requirement.  That the General Assembly adopted certain express exemptions from the Election Code in UMOVA but never even mentioned the date

requirement only further underscores it did not create an exemption from the date requirement. *Discovery Charter Sch. v. Sch. Dist. of Phila.*, 166 A.3d 304, 321 (Pa. 2017) ("[W]hen interpreting a statute, we must listen attentively to what the statute says, but also to what it does not say." (internal quotation marks omitted)).  The General Assembly does not create statutory exemptions *sub silentio*, *see In re Appointment of Rodriguez*, 900 A.2d 341, 344 (Pa. 2003), and did not create a *sub silentio* exemption from the date requirement amongst the numerous express exemptions in UMOVA, *compare Thompson v. Thompson*, 223 A.3d 1272, 1278 (Pa. 2020) ("[I]f the General Assembly intended to permit trial courts to impose suspended sentences for civil contempt of a child support order, it would have expressly provided for this alternative.  It did not.").

Given UMOVA's plain statutory text, it is unsurprising that the absentee and mail-in ballots that county election officials provided to military and overseas voters in 2022 included instructions to date the envelope and contained signature and date fields for the voter to complete. *See* SOF ¶¶ 119-20.  There would have been no *reason* to include those instructions and fields if, as Plaintiffs contend, UMOVA exempts military and overseas voters from the date requirement. Even the Federal Write-in Absentee Ballot referenced in UMOVA, *see* 25 Pa. C.S. § 3510, contains a date field, *see* SOF ¶ 121, and voters who use that ballot must comply with the date requirement, *see* SOF ¶¶ 122-23.

Plaintiffs' proposed contrary construction of UMOVA is countertextual and nonsensical. Plaintiffs focus on the mistake provision's use of the word "document"—but they omit the dispositive "under this chapter" limitation from their selective quotation. Am. Compl., **Ex. 1**, ¶ 86. And Plaintiffs' proposed reading makes no sense: if UMOVA exempted military and overseas voters from the date requirement *sub silentio*, it would also exempt them from the host of *other* requirements for completing an absentee or mail-in ballot that UMOVA does not even mention,

including the signature requirement and the overvote prohibition. *See*, *e.g.*, 25 P.S. §§ 3146.6(a), 3150.6(a). Such a construction would be *inconsistent*, rather than "*in concert*," with the Election Code. 25 Pa. C.S. § 3519 (emphasis added).

The fact that 3 county boards of elections declined to set aside military ballots that failed to comply with the date requirement in the 2022 general election, *see* SOF ¶¶ 62, 103, 110, does not affect, much less bolster, Plaintiffs' reading of UMOVA's mistake provision. After all, the actions of county boards of elections do not change their obligations under state law—and those boards that counted noncompliant ballots did so in violation of state law. By contrast, the county boards of elections that declined to count military and overseas ballots that failed to comply with the date requirement, *see* SOF ¶¶ 68, 94, complied with state law. Any difference in approach across counties is remedied by the *noncompliant* boards coming into *compliance* with state law, not by ordering the *compliant* boards into *noncompliance* with state law as Plaintiffs ask this Court to do. *See* Am. Compl., **Ex. 1**, ¶¶ 83-88. The Court should grant summary judgment on Count II.

### B. Exempting Military And Overseas Voters From The Date Requirement Would Not Violate The Equal Protection Clause

Even if UMOVA's mistake provision created a *sub silentio* exemption from the date requirement, Count II still would fail because Plaintiffs cannot "demonstrate that [any voter] received different treatment from that received by other individuals *similarly situated*." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).

"The Equal Protection Clause does not forbid classifications," but rather "keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). And, "[i]n many respects, absent military and overseas voters are not similarly situated to [domestic] voters," especially with regard to their "absence from the country." *Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012).

21

"[U]nlike domestic absentee voters who may request an absentee ballot because it is inconvenient or difficult for them to vote at a polling station, military personnel deployed overseas lack the ability to vote in person.  Voting by absentee ballot provides these men and women with their only meaningful opportunity to vote in state and federal elections while they are deployed abroad." *Doe v. Walker*, 746 F. Supp. 2d 667, 679-80 (D. Md. 2010).

Plaintiffs' request for application for strict scrutiny, *see* Am. Compl., **Ex. 1**, ¶ 85, is misplaced.  Neither non-military nor non-overseas voters are "suspect classes" entitled to heightened constitutional protection, *Biener v. Calio*, 361 F.3d 206, 214-15 (3d Cir. 2004), and regulations on absentee and mail-in voting do not implicate "fundamental rights," *id.*; *see also Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020) ("[T]here is no constitutional right to an absentee ballot."); *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969) ("[A]bsentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny … the exercise of the franchise.").  Thus, rational-basis scrutiny applies, *see Biener*, 361 F.3d at 214-15, and a rational basis clearly exists for excusing military and overseas voters from some requirements for absentee and mail-in voting, including the date requirement.

Indeed, "[f]ederal and state law makes numerous exceptions and special accommodations for members of the military, within the voting context and without, and no one argues that these exceptions are somehow constitutionally suspect."  *Obama for Am.*, 697 F.3d at 434.  As an example, Congress passed the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to "end[] the widespread disenfranchisement of military voters stationed overseas." *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015).  UOCAVA "requires that states extend additional protections to the UOCAVA absentee voting process that they might not extend to other absentee

22

voters as a matter of state law"—for instance, a requirement that a state transmit an absentee ballot to such a voter forty-five days before an election if the UOCAVA voter requests it.  *Id.* at 929-30.

UMOVA, of which § 3515(a)(1) is part, "extends to state and local elections the accommodations and protections for military and overseas voters found in federal law."  Pa. Dep't of State, *Overview of the Uniform Military and Overseas Voters Act (UMOVA)* (Sept. 26, 2022), available at  https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/2022-09-26-UMOVA-Overview.pdf; *see also* 2012 Pa. Laws 189.  It therefore fits within this tradition of accommodating military and overseas voters' unique circumstances.  Section 3515(a)(1), like UOCAVA, is "based on highly relevant distinctions between service members and the civilian population," and "confer[s] benefits accordingly."  *Obama for Am.*, 697 F.3d at 434.

Indeed, any exemption of military and overseas voters from the date requirement confers no unwarranted advantages as to in-person voting, *see id.* at 435, and relates directly to their "absen[ce] from their voting jurisdictions," *id.*   "[T]he striking of the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment with which … judges should not interfere unless strongly convinced that the legislative judgment is grossly awry."  *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004).  "In our nation's recent history, active military personnel and their families have faced severe difficulties exercising their fundamental right to vote.  For affected service members, the decision to serve their country was the very act that frequently deprived them of a voice in selecting its government."  *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015).  There is nothing "grossly awry" about easing the requirements to have one's ballot counted for overseas military personnel, given the attendant difficulties.  Thus, even if § 3501(a)(1) exempted military and overseas voters from the date requirement, *but see supra* II.A, it would not treat similarly situated persons differently,

and would survive rational-basis scrutiny.  Plaintiffs' Equal Protection claim accordingly fails.

Finally, in all events, even if Plaintiffs' erroneous view of § 3515(a)(1) and the Constitution were correct, only a handful of county boards of elections violated the Equal Protection Clause on Plaintiffs' theory.  After all, the only arguable "differential treatment," Am. Compl., **Ex. 1**, ¶ 86, was committed by boards that treated military and overseas ballots *differently* from domestic ballots.  On Plaintiffs' own record, the only boards that engaged in such differential treatment are the 3 boards that (properly) declined to count domestic ballots that failed to comply with the date requirement but (improperly) counted such ballots from military and overseas voters.  *See* SOF ¶¶ 62, 103, 110.  Because "the nature and scope of the remedy are to be determined by the violation" and "federal-court decrees must directly address and relate to the constitutional violation itself," the Court may issue any injunction only against those 3 boards.  *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).  The Court cannot issue an injunction against those boards which engaged in no "differential treatment" even on Plaintiffs' theory, Am. Compl., **Ex. 1**, ¶ 86, because they either received no noncompliant ballots from military or overseas voters, *see* SOF ¶¶ 56, 57, 61, 63-65, 70, 71, 73, 74, 76-78, 80, 82, 86, 88, 92, 93, 95, 96, 105, 107, 108, 113, 115, or treated such voters *identically* to domestic voters by rejecting *all* noncompliant ballots, *see* SOF ¶¶ 68, 94.

Moreover, "when the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."  *Heckler v. Mathews*, 465 U.S. 728, 740 (1984).  "The choice between these two outcomes is governed by the legislature's intent, as revealed by the statute at hand."  *Sessions v. Morales-Santana*, 582 U.S. 47, 73 (2017). In assessing which remedy to adopt, "a court should measure the intensity of commitment to the residual policy—the main rule, not the exception—and consider the degree of potential disruption

of the statutory scheme that would occur by extension as opposed to abrogation." *Id.* at 75 (internal quotation marks omitted).

There is no basis for questioning the Pennsylvania General Assembly's commitment to the date requirement.   In fact, the General Assembly declared the section containing the date requirement "nonseverable" from the remainder of Act 77 and provided that "[i]f any provision of [that] act or its application to any person or circumstance is held invalid, the remaining provisions or applications of this act are void."  Act 77, P.L. 552, sec. 11 (Oct. 31, 2019); *see Rappa v. New Castle County*, 18 F.3d 1043, 1072 (3d Cir. 1994) ("When a federal court is called upon to invalidate a state statute, the severability of the constitutional portions of the statute are governed by state law.").  And invalidating undated or misdated UMOVA ballots would be significantly less disruptive than invalidating the date requirement given that there are far more domestic ballots than military and overseas ballots in Pennsylvania.  *See* SOF ¶¶ 56-118.

"Put to the choice," it is implausible that the General Assembly would have abrogated its date requirement wholesale so that a handful of undated and misdated UMOVA ballots could be counted.   *Morales-Santana*, 582 U.S. at 76.   Because the General Assembly would have "prefer[red] preservation of the general rule," *id.*, the proper remedy from the Court would be to *enforce* the date requirement across the board, not invalidate it, *see also supra* Part I.B.

For these reasons, the Court may not issue the overly broad statewide injunction Plaintiffs seek.  *See* Am. Compl., Prayer for Relief ¶ 1; *see also Milliken*, 433 U.S. at 282; *Morales-Santana*, 582 U.S. at 73; *supra* Part II.A.

## CONCLUSION

The Court should grant summary judgment against Plaintiffs on both counts.

Dated:  April 21, 2023

Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
Joshua S. Ha
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
  COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*

26