**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA STATE CONFERENCE
OF THE NAACP, *et al.*,

        Plaintiffs,

    v.

AL SCHMIDT, *et al.*,

        Defendants.

Civil Action No.: 1:22-cv-00339

---

<u>**INTERVENOR-DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS**</u>

In support of their Motion for Summary Judgment, the Intervenor-Defendants the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania submit the following concise statement of material facts.

## I.  THE PARTIES

### A.  Plaintiffs

1.  Plaintiff The Pennsylvania State Conference of the NAACP is a "non-profit, non-partisan organization" which "engages in efforts to get out the vote." **Ex. 1**, Am. Compl. ¶¶ 11-12 (Dkt. No. 121).

2.  Plaintiff The League of Women Voters of Pennsylvania is a "nonpartisan statewide non-profit" whose "mission includes voter registration, education, and get-out-the-vote drives." *Id.* ¶¶ 14-15.

3.  Plaintiff Philadelphians Organized to Witness, Empower and Rebuild is "a Pennsylvania nonprofit" whose "civic engagement efforts include voter education programs, voter registration drives, information about applying for mail ballots, completing them properly

and returning them on time, and 'Souls to the Polls' efforts to encourage congregants to vote." *Id.* ¶¶ 17-18.

4.      Plaintiff Common Cause Pennsylvania is "a non-profit political advocacy organization and a chapter of the national Common Cause organization," and "seeks to increase the level of voter registration and voter participation in Pennsylvania elections." *Id.* ¶¶ 21-22.

5.      Plaintiff Black Political Empowerment Project is "a non-profit, non-partisan organization" whose "work includes voter registration drives, get-out-the-vote activities, education and outreach about the voting process, and election-protection work." *Id.* ¶¶ 24-25.

6.      Plaintiff Make the Road Pennsylvania is "a not-for-profit, member-led organization" whose "work includes voter protection voter advocacy and voter education." *Id.* ¶¶ 26-27.

7.      Plaintiffs Barry M. Seastead, Marlene G. Gutierrez, Aynne Margaret Pleban Polinski, Joel Bencan, and Laurence M. Smith plead that they are registered voters in Pennsylvania. *Id.* ¶¶ 30, 32, 34, 35, 36.

**B.      Named Defendants**

8.      Defendant Al Schmidt is Acting Secretary of the Commonwealth. https://www.dos.pa.gov/about-us/Pages/Secretary-of-the-Commonwealth.aspx.

9.      The Secretary of the Commonwealth has the duty "[t]o receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast for candidates and upon questions as required by the provisions of this act." 25 P.S. § 2621(f).

10.      Defendant County Boards of Elections have "jurisdiction over the conduct of primaries and elections in [their respective] count[ies], in accordance with the provisions of this act." 25 P.S. § 2641(a).

### C.      Intervenor-Defendants

11.      The Republican National Committee is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14).

12.      The National Republican Congressional Committee is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14).

13.      The Republican Party of Pennsylvania is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).

14.      Any court order purporting to change the law and direct counting of undated or incorrectly dated mail-in or absentee ballots would inflict significant harm on Intervenor-Defendants.  *See* **Ex. 2**, Intervenor-Defendants' Resps. & Objs. To Plaintiffs' First Set of Interrogs. #1.

15.      Unlawful counting of ballots undermines the integrity of elections, generates voter confusion, and erodes public confidence in elections.  Therefore, unlawful counting of ballots can discourage voters, including Republican voters, from voting or otherwise participating in elections and, thus, change the outcome of election contests in Pennsylvania. *See id.* at 7-8; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

16.      Intervenor-Defendants were the prevailing parties in the *Ball* litigation upholding the date requirement, so any court order invalidating the date requirement harms Intervenor-Defendants' rights secured in that litigation. *See* **Ex. 2** at Interrog. #1.

17.      As political parties, Intervenor-Defendants expend substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania and supporting Republican candidates up and down the ballot. *Id.*

18.     These efforts include devoting time and resources toward training and education programs that ensure that Intervenor-Defendants and their voters understand the rules governing the election process, including applicable dates, deadlines, and requirements for voting by mail or absentee. *Id.*

19.     The efforts also encompass training, education, and monitoring of the voting and vote counting process in Pennsylvania to ensure it is conducted lawfully. *Id.*

20.     Any change in the laws governing Pennsylvania elections harms Intervenor-Defendants by rendering their training, voter education, and monitoring programs less effective, wasting the resources they have devoted to such programs, and requiring them to expend new resources to update those programs. *Id.*

21.     For instance, the Republican Party of Pennsylvania has statutory rights to appoint poll watchers to observe casting, counting, and canvassing of ballots at the polling place, 25 P.S. § 2687(a), and an "authorized representative" to "remain in the room" at the county board of elections and observe the pre-canvass and canvass of "absentee ballots and mail-in ballots," *id.* §§ 3146.8(g)(1.1)-(2). *See* **Ex. 2** at Interrog. #1.

22.     The Republican Party of Pennsylvania has exercised these statutory rights in the past several election cycles and will do so again in future election cycles. *See Id*.

23.     In conjunction with its Election Integrity Operations, the Republican Party of Pennsylvania devotes substantial time and resources toward the recruitment and training of poll workers, poll watchers, and volunteers throughout the 67 counties of the Commonwealth to assist voters on election day, to observe the casting and counting of ballots at the polling place, and to observe the pre-canvass and canvass of absentee and mail-in ballots at the county board of elections. *Id.*

24.     As part of its Election Integrity Operations, the Republican Party of Pennsylvania also devotes substantial time and resources toward the recruitment and training of a "ground team" of lawyers throughout the Commonwealth who stand ready on Election Day to assist poll workers, poll watchers, and volunteers should questions arise as to elections laws or the voting process within the Commonwealth. *Id.*

25.     The Republican Party of Pennsylvania's Election Integrity Operations, training programs, and voter education programs include training and information regarding the requirements for voters to cast lawful and valid ballots, and the governing rules delineating unlawful and invalid ballots and preventing election officials from pre-canvassing, canvassing, or counting such ballots. *Id.*

26.     Any change in the laws governing Pennsylvania elections harms the Republican Party of Pennsylvania by rendering its Election Day Operations, training programs, and voter education programs less effective, wasting the resources they have devoted to such programs, and requiring them to expend new resources to update those programs. *Id.*

27.     Any change in the laws governing Pennsylvania elections could affect the outcome of an election in which Intervenor-Defendants, their voters, and their supported candidates exercise their constitutional rights to vote and to participate. *Id.*

28.     The Third Circuit's failure to enforce the date requirement in *Migliori v. Cohen* actually did change the outcome of an election in which a Republican candidate had prevailed. *See* **Ex. 3**, Cert. Pet. at 7-12, *Ritter v. Migliori*, No. 22-30 (U.S. July 7, 2022), https://www.supremecourt.gov/DocketPDF/22/2230/229591/20220707140738344_Ritter%20Petition.pdf.

II.     **THE DATE REQUIREMENT**

29.     Pennsylvania's election laws provide a date requirement for absentee and mail-in voting.  25 P.S. § 3146.6(a); § 3150.16(a).

30.     In both provisions, the wording of the date requirement is the same: "The elector shall then fill out, date and sign the declaration printed on such envelope."  25 P.S. § 3146.6(a); § 3150.16(a).

A.     **The Date Requirement Has Been A Part Of Pennsylvania's Election Code Since 1945.**

31.     The first version of the Election Code permitted some active military members to vote by mail.  **Ex. 4**, Act of June 3, 1937, P.L. 1333, No. 320, §§ 1327-1330, 1937 Pa. Laws 1333, 1442-44.

32.     In 1945, the mail ballot provision was amended to require that the jurat on the ballot-return envelope be dated.  **Ex. 5**, Act of Mar. 9, 1945, P.L. 29, No. 17, sec. 10, § 1306, 1945 Pa. Laws 29, 37.

33.     Eighteen years later, the General Assembly enacted the date requirement in its current form, providing that "[t]he elector shall then fill out, date and sign the declaration printed on such envelope."  **Ex. 6**, Act of Aug. 13, 1963, P.L. 707, No. 379, sec. 22, § 1304, 1963 Pa. Laws. 707, 736.

34.     In 2019, the General Assembly passed Act 77, extending the option to vote by mail to all qualified voters, and adopting the date requirement for such ballots.  **Ex. 7**, Act 77, P.L. 552, sec. 8 (Oct. 31, 2019).

35.     Act 77 also provides that section 8—containing the date requirement—is "nonseverable," and that "[i]f any provision of this act or its application to any person or

circumstance is held invalid, the remaining provisions or applications of this act are void." **Ex. 8**, Act 77, P.L. 552, sec. 11 (Oct. 31, 2019).

      **B.**      **The Date Requirement Has Been A Subject Of Multiple Recent Lawsuits.**

     36.     After seven cases in five courts over two years, the current state of the law is that the General Assembly's date requirement is mandatory and that any noncompliant absentee or mail-in ballot may not be counted.

     37.     In 2020, a majority of the Pennsylvania Supreme Court held that the date requirement is mandatory and that election officials may not count any noncompliant ballot in any election after the 2020 general election. *See In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1079–80 (2020) (Opinion of Justice Wecht); *id.* at 1090–91 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy).

     38.     In the first two cases following that ruling, the Pennsylvania Commonwealth Court upheld mandatory application of the date requirement. *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022) (unpublished), appeal denied, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elections*, 272 A.3d 989 (Pa. Commw. 2022) (unpublished), appeal denied, 271 A.3d 1285 (Pa. 2022).

     39.     Four days after the Pennsylvania Supreme Court resolved *Ritter*, individual voters filed a new lawsuit in federal court claiming that the date requirement violates the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B). *See* **Ex. 9**, Compl., *Migliori v. Lehigh County Bd. of Elections*, No. 5:22-cv-397 (E.D. Pa. Jan. 31, 2022), ECF No. 1.

     40.     The Third Circuit agreed with the plaintiffs, but the U.S. Supreme Court vacated that decision. *See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.).

41.     When addressing a request for a stay at an earlier stage in that case, three Justices opined that the Third Circuit's now-vacated holding was "very likely wrong" on the merits because it rested upon a misconstruction of the materiality provision. *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).

42.     The Commonwealth Court twice invoked the Third Circuit decision to depart from the General Assembly's date requirement in unpublished, non-precedential cases arising out of the 2022 primary election.  *See McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. June 2, 2022) (unpublished); *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998 (Pa. Commw. Aug. 19, 2022) (unpublished).

43.     Finally, in November 2022, the Pennsylvania Supreme Court exercised its original jurisdiction to reaffirm that the General Assembly's date requirement is mandatory. *Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022).

44.     In that litigation, Acting Secretary Leigh M. Chapman agreed that the signature requirement is valid and mandatory and does not violate the federal materiality provision. **Ex. 10**, Acting Sec'y Ans. 15–23, *Ball v. Chapman*, No. 102 MM 2022 (Oct. 19, 2022).

45.     The Acting Secretary also conceded in that litigation that the secrecy envelope does not violate the federal materiality provision. *Id.* at 39 n.15.

46.     In an opinion that followed, the Pennsylvania Supreme Court held that the date requirement refers to the "day upon which an elector signs the declaration," and noted that "[t]o hold otherwise would be to require unnecessarily specific drafting on the part of the General Assembly." *Ball v. Chapman*, 289 A.3d 1, 23 (Pa. 2023).

47.     The Pennsylvania Supreme Court was evenly divided on whether the federal materiality provision invalidates the date requirement.  *Id.* at 9.

C. *Commonwealth v. Mihaliak*

48.     The date requirement has already been used to detect election fraud.  *See* **Ex. 11**, Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022), at 100-116, 141-153.

49.     Last year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022); *see* **Ex. 12**, Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022) ("*Mihaliak* Compl.").

50.     In Lancaster County, the only information a voter is required to supply on a ballot declaration is the date and a signature.  *See* **Ex. 13**, Exemplar Ballot Declaration from Lancaster County Board; *see also* **Ex. 77**, Greenburg Dep. at 114:23-115:7.

51.     Under the Pennsylvania Supreme Court's current precedent, county boards of elections lack authority to conduct signature comparisons, so they may not check ballots for a non-matching signature, much less use any non-matching signature to detect fraud by a third party.  *See In re November 3, 2020 General Election*, 240 A.3d 591 (Pa. 2020).

52.     In *Mihaliak*, the only evidence on the face of the ballot declaration indicating that someone other than the decedent had completed the ballot was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away.  *See* **Ex. 12** ¶ 2.

53.     The investigation into the election fraud committed in *Mihaliak* was predicated upon the date supplied on the ballot declaration.  *See id.* ¶ 2.

54.     Plaintiffs' putative expert agreed that the date supplied on the *Mihaliak* ballot declaration was the only piece of evidence of fraud on the face of the ballot.  **Ex. 77** at 114:15-118:2.

55.     Plaintiffs' putative expert agreed that the date on the ballot declaration helped to detect fraud in *Mihaliak*.  *Id.* at 116:19-117:2.

## III.     THIS LITIGATION

56.     Plaintiffs in this case filed suit on November 4, 2022, seeking to invalidate the General Assembly's date requirement.  ECF No. 1.

57.     Plaintiffs claim that the date requirement—which has been on the books in some form since 1945—violates a provision of the 1964 Civil Rights Act and the Equal Protection Clause of the U.S. Constitution.  *Id.*

### A.     County Boards Of Elections' Responses To Discovery Requests Regarding The 2022 General Election.

58.     Allegheny County Board of Elections responded as follows.

    a.     It received 161,575 mail ballots, of which 151 were military ballots. **Ex. 14**, Allegheny Cnty. Bd.'s Am. Ans. to Interrog. #1.

    b.     It set aside 1,009 mail ballots with undated or misdated ballot declarations. **Ex. 15**, Allegheny Cnty. Bd.'s Ans. to Interrog. #2.

    c.     It did not receive any undated or misdated military ballots.  *Id.* at Interrog. #15.

59.     Beaver County Board of Elections responded as follows.

    a.     It received 15,172 mail ballots, of which 48 were military-overseas ballots. **Ex. 16**, Beaver Cnty. Bd.'s Ans. to Interrog. #1.

    b.     It received 182 mail ballots with undated or misdated ballot declarations, of which 41 were corrected or cured.  *Id.*  Of the non-cured mail ballots, 9 were also missing their inner/secrecy envelopes.  *Id.*  "One voter who had an error on their ballot also had a naked ballot," and though that voter

"corrected the ballot envelope prior to [the board's] notice being published," "the ballot was not counted as the error on the ballot was not determined until the pre-canvassing began." *Id.*

c.   "No timely-received military-overseas ballots were missing a date or signature or were dated incorrectly." *Id.* at Interrog. #15.

60.   Bedford County Board of Elections responded as follows.

a.   It received 2,868 mail ballots and 6 military-overseas ballots. **Ex. 17**, Bedford Cnty. Bd., et al. ("BCCZ") Ans. to Interrog. #1.

b.   It did not set aside any mail ballots for a date issue. *Id.* at Interrog. #2.

61.   Berks County Board of Elections responded as follows.

a.   It received 28,829 mail ballots, including 146 military-overseas ballots. **Ex. 18**, Berks Cnty. Bd.'s Ans. to Interrog. #1.

b.   It set aside 782 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

62.   Blair County Board of Elections responded as follows.

a.   It received 9,022 mail ballots, and 27 military-overseas ballots. **Ex. 19**, Blair Cnty. Bd.'s Ans. Interrogs. #1.

b.   It set aside 55 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

c.   It did not receive any undated or misdated military ballots for which the declaration was on the outside of the return envelope. *Id.* at Interrog. #15.

63.   Bradford County Board of Elections responded as follows.

    a.   It received 2,787 mail ballots, and 16 military-overseas ballots. **Ex. 20**, Bradford Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 20 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.   An additional 3 undated/misdated ballots lacked a secrecy envelope. *Id.*

    c.   It did not receive any undated or misdated military-overseas ballots. *Id.* at Interrog. #15.

64.   Bucks County Board of Elections responded as follows.

    a.   It received 87,321 mail ballots and 466 military-overseas ballots. **Ex. 21**, Bucks Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 357 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.   It received 11 military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

    d.   It counted military-overseas ballots with undated or misdated ballot declarations. *Id.*

65.   Butler County Board of Elections responded as follows.

    a.   It received 18,212 mail ballots. **Ex. 22**, Butler Cnty. Bd.'s Ans. Interrogs. #1.

    b.   It set aside 66 mail ballots with undated or misdated ballot declarations. *Id.*

      c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

66.    Cambria County Board of Elections responded as follows.

      a.     It received 9,848 mail and military-overseas ballots. **Ex. 23**, Cambria Cnty. Bd.'s Ans. to Interrogs. #1.

      b.     It set aside 38 mail-in/absentee ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

      c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

67.    Cameron County Board of Elections responded as follows.

      a.     It received 410 mail ballots and 2 military-overseas ballots. **Ex. 24**, Cameron Cnty. Bd.'s Ans. to Interrogs. #1.

      b.     It set aside 5 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

      c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

68.    Carbon County Board of Elections responded as follows.

      a.     It received 4,823 mail ballots and 14 military-overseas ballots. **Ex. 17** at Interrog. #1.

      b.     It set aside 27 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

69.   Centre County Board of Elections responded as follows.

    a.   It received 15,654 mail ballots and 126 military-overseas ballots.  *Id.* at Interrog. #1.

    b.   It set aside 116 mail ballots with undated or misdated ballot declarations. **Ex. 25**, Centre County, Montour County and York County Bds.' Supp. Ans. to Interrogs. #2.

70.   Chester County Board of Elections responded as follows.

    a.   It received 70,023 mail ballots and 638 military/overseas/federal absentee ballots.  **Ex. 26**, Chester Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 116 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.   An additional 19 mail ballots had no date and no signature. *Id.*

    c.   It set aside 12 military/overseas/federal absentee ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

71.   Clarion County Board of Elections responded as follows.

    a.   It received 12 mail ballots.  **Ex. 27**, Clarion Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 12 mail ballots with undated or misdated ballot declarations. *Id.*

72.   Clearfield County Board of Elections responded as follows.

    a.   It received 4,564 mail ballots, including 8 military and civilian overseas ballots.  **Ex. 28**, Clearfield Cnty. Bd.'s Ans. to Interrogs. #1 & Ex. "Clfd. 1."

14

b.     It set aside 12 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

73.    Clinton County Board of Elections responded as follows.

a.     It received 2,248 mail ballots and 14 military-overseas ballots. **Ex. 29**, Clinton Cnty. Bd.'s Ans. to Interrogs. #1.

b.     It set aside 20 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

74.    Columbia County Board of Elections responded as follows.

a.     It received 4,168 mail ballots and 11 military-overseas ballots. **Ex. 17** at Interrog. #7.

b.     It set aside 29 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

75.    Crawford County Board of Elections responded as follows.

a.     It received 5,917 mail ballots and 22 military-overseas ballots. **Ex. 30**, Crawford Cnty. Bd.'s Ans. to Interrogs. #1.

b.     It set aside 49 mail ballots with undated or misdated ballot declarations. *Id.* at Interrogs. #2, 8. It set aside an additional 2 mail ballots with undated or misdated ballot declarations that also lacked a signature. *Id.* at Interrog. #8.

      c.      It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

76.     Cumberland County Board of Elections responded as follows.

      a.      It received 26,298 mail ballots and 113 military-overseas ballots. **Ex. 31**, Cumberland Cnty. Bd.'s Ans. to Interrogs. #1.

      b.      It set aside 100 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

      c.      It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

77.     Dauphin County Board of Elections responded as follows.

      a.      It received 25,839 mail ballots and 154 military-overseas ballots. **Ex. 17** at Interrog. #1.

      b.      It set aside 95 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

78.     Delaware County Board of Elections responded as follows.

      a.      It received 60,154 mail ballots. **Ex. 32**, Delaware Cnty. Bd.'s Ans. to Interrogs. #1.

      b.      It set aside 114 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

      c.      It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

79.   Elk County Board of Elections responded as follows.

    a.   It received 2,012 absentee/mail-in ballots and 19 military-overseas ballots. **Ex. 33**, Elk Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It received 10 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2. Of those, 7 voters either corrected the error or filed a provisional ballot. *Id.* at Interrog. #13.

    c.   It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

80.   Erie County Board of Elections responded as follows.

    a.   It received 26,766 mail-in ballots and 41 military-overseas ballots. **Ex. 34**, Erie Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 211 mail ballots with undated or misdated ballot declarations, including cured ballots. *Id.* at Interrog. #2.  An additional 8 mail ballots with undated ballot declarations were also missing a signature. *Id.* at Interrog. #8.  113 of these ballots were cured. *Id.* at Interrog. #13.

    c.   It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

81.   Fayette County Board of Elections responded as follows.

    a.   It received 9,036 mail ballots and 33 military-overseas ballots. **Ex. 35**, Fayette Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 137 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.  Eleven of these "signed another voter's ballot return envelope. *Id.* at Interrog. #8.  93 "[v]oters whose timely received mail

ballots were set aside and/or segregated by Fayette County because the

signed outer return envelope was missing a date or showed a date the

county determined to be incorrect" "came to the Fayette County Election

Bureau and cured their mail ballots." *Id.* at Interrog. #13.

c.  It stated that it "did not timely receive any military-overseas ballots in the

2022 General Election on which the voter failed to date their voter

declaration or included a date that the county deemed to be incorrect." *Id.*

at Interrog. #15.

d.  "Dates were not reviewed for military/overseas ballots that were timely

received." **Ex. 36**, Fayette Cnty. Bd.'s Resps. to Requests for Prod. of

Docs. #3.

82.  Forest County Board of Elections responded as follows.

a.  It received 447 mail ballots and 0 military-overseas ballots. **Ex. 37**, Forest

Cnty. Bd.'s Ans. to Interrogs. #1.

b.  It set aside 38 mail ballots with undated or misdated ballot declarations.

*Id.* at Interrog. #2.  Of these, two mail ballots were signed by the incorrect

person. *Id.* at Interrog. #8.  Two ballots were cured. *Id.* at Interrog. #13.

83.  Franklin County Board of Elections responded as follows.

a.  It received 10,496 mail ballots and 68 military-overseas ballots. **Ex. 38**,

Franklin Cnty. Bd.'s Ans. to Interrogs. #1.

b.  It set aside 114 mail ballots with undated or misdated ballot declarations.

*Id.* at Interrog. #2.  Seven of those were also missing a signature. *Id.* at

Interrog. #8.

84.    Greene County Board of Elections responded as follows.

    a.    It received 2,384 mail ballots and 7 military-overseas ballots.   **Ex. 39**, Greene Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 11 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.    It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

85.    Huntingdon County Board of Elections responded as follows.

    a.    It received 2,452 mail ballots and 8 military-overseas ballots.  **Ex. 17** at Interrog. #1.

    b.    It set aside 34 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

86.    Indiana County Board of Elections responded as follows.

    a.    It received 2,452 mail ballots and 8 military-overseas ballots.  *Id*. at Interrog. #1.

    b.    It set aside 107 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

87.    Jefferson County Board of Elections responded as follows.

    a.    It received 2,278 mail ballots and 12 military-overseas ballots.  *Id.* at Interrog. #1.

    b.    It set aside 23 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

88.   Juniata County Board of Elections responded as follows.

   a.   It received 1,244 mail-in ballots and 7 military-overseas ballots.   **Ex. 40**, Juniata Cnty. Bd.'s Ans. to Interrogs. #1.

   b.   It set aside five mail ballots with undated or misdated ballot declarations. *Id*. at Interrog. #2.   Of those, two were also missing signatures.   *Id*. at Interrog. #8. Two ballots were cured.   *Id*.

   c.   In response to whether it counted "timely-received military-overseas ballots in the 2022 General Election if the voter failed to date their voter declaration or included a date that [it] deemed to be incorrect," it responded: "No." *Id.* at Interrog. #15.   It set aside one military-overseas ballot with an undated ballot declaration. *Id*. at Interrog. #16.   It was also missing a signature. *Id*.

89.   Lackawanna County Board of Elections responded as follows.

   a.   It received 20,759 mail ballots, including 29 military ballots and 26 civilian overseas ballots.   **Ex. 41**, Lackawanna Cnty. Bd.'s Ans. to Interrogs. #1.

   b.   It set aside 160 mail ballots with undated ballot declarations. *Id.* at Interrog. #2.

   c.   It did not deem any military-overseas ballots as incorrect. *Id.* at Interrog. #15.

90.   Lancaster County Board of Elections responded as follows.

   a.   It received 34,202 mail ballots and 188 military-overseas ballots.   **Ex. 42**, Lancaster Cnty. Bd.'s Ans. to Interrogs. #1.

b.    It set aside 232 mail ballots which had undated or misdated ballot declarations. *Id*. at Interrog. #2. Of those, 51 had additional defects. *Id*. at Interrog. #8.

c.    It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15; **Ex. 43**, Miller Dep. 96:15-98:4.

91.   Lawrence County Board of Elections responded as follows.

a.    It received 6,888 mail ballots and 33 military-overseas ballots. **Ex. 17** at Interrog. #1.

b.    It set aside 107 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

92.   Lebanon County Board of Elections responded as follows.

a.    It received 10,771 mail ballots and 64 military-overseas ballots. **Ex. 17** at Interrog. #1.

b.    It set aside 24 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

93.   Lehigh County Board of Elections responded as follows.

a.    It received 35,425 mail-in/absentee ballots and 101 military/overseas/civilian ballots. **Ex. 44**, Lehigh Cnty. Bd.'s Ans. to Interrogs. #1.

b.    It set aside 390 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.  An additional 23 mail ballots had no date and no signature on their ballot declarations. *Id.*

c.    It did not review military-overseas ballots for dates. *Id.* at Interrog. #15.

94.    Luzerne County Board of Elections responded as follows.

    a.    It received 29,002 mail ballots.   **Ex. 45**, Luzerne Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 166 mail ballots with undated or misdated ballot declarations. **Ex. 46**, Luzerne Cnty. Bd.'s Am. Ans. to Interrogs. 16 of these voters voted provisionally.   **Ex. 45** at Interrog. #7.

    c.    It "[d]o[es] not recall any" military-ballots with undated or misdated ballot declarations.  *Id.* at Interrog. #15.

95.    Lycoming County Board of Elections responded as follows.

    a.    It received 6,474 mail ballots.   **Ex. 47**, Lycoming Cnty. Bd.'s Ans. to Interrogs.  #1.

    b.    It set aside 36 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2. Six of these voters cast provisional ballots.  *Id.* at Interrog. #12.

    c.    It did not receive any military-overseas ballots with undated or misdated ballot declarations.  *Id.* at Interrog. #15.

96.    McKean County Board of Elections responded as follows.

    a.    It received 1,957 mail in ballots and 5 military-overseas ballots.  **Ex. 48**, McKean Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 35 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.    It set aside 5 military-overseas ballots with undated or misdated ballot declarations.  *Id.* at Interrog. #15.

97.     Mercer County Board of Elections responded as follows.

    a.       It received 8,220 mail ballots.  **Ex. 49**, Mercer Cnty. Bd.'s Ans. to Interrogs. #1.

    b.       It set aside 63 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.       Though it received "12 mail ballots where the Declaration was unsigned," "[a]ny ballot that was both unsigned and missing a date were categorized as 'Unsigned' since this is a fatal defect outside the scope of current litigation."  *Id.* at Interrog. #8.

    d.       In response to whether it counted "timely-received military-overseas ballots in the 2022 General Election if the voter failed to date their voter declaration or included a date that [it] deemed to be incorrect," it responded: "This issue did not arise in 2022."  *Id.* at Interrog. #15.

98.     Mifflin County Board of Elections responded as follows.

    a.       It received 2,680 mail-in ballots and 8 military-overseas ballots.  **Ex. 50**, Mifflin Cnty. Bd.'s Ans. to Interrogs. #1.

    b.       It set aside 13 mail-in/absentee ballots with undated ballot declarations, exclusive of ballots with other defects.  **Ex. 51**, Mifflin Cnty. Bd.'s Resps. to Requests for Prod. of Docs. #2 & Ex. 1.

    c.       It did not receive any military-overseas ballots with undated or misdated ballot declarations.  **Ex. 50** at Interrog. #15.

99.     Monroe County Board of Elections responded as follows.

    a.     It received 15,651 mail ballots and 56 military-overseas ballots.  **Ex. 17** at Interrog. #1.

    b.     It set aside 462 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.  Of these, 191 were cured.  *Id.* at Interrog. #13.

100.    Montgomery County Board of Elections responded as follows.

    a.     It received 118,224 mail-in/absentee ballots and 914 military-overseas ballots.  **Ex. 52**, Montgomery Cnty. Bd.'s Ans. to Interrogs. #1.

    b.     It set aside 460 mail ballots with undated or misdated ballot declarations. *Id.*  44 of those ballots had other defects.  *Id.* at Interrog. #2.

    c.     In Montgomery County, "[m]ilitary-overseas ballots were checked to make sure the declarations were complete.  If the declarations were complete, the ballot was counted.  No military-overseas ballots were set aside for having a missing or incorrect date." *Id.* at Interrog. #15.

101.    Montour County Board of Elections responded as follows.

    a.     It received 1,718 mail ballots and 3 military-overseas ballots.  **Ex. 25** at Interrog. #1.

    b.     It set aside 8 mail ballots with undated or misdated ballot declarations. **Ex. 17** at Interrog. #2.

102.    Northampton County Board of Elections responded as follows.

    a.     It received 36,401 mail/absentee ballots, including 91 UMOVA ballots. **Ex. 53**, Northampton Cnty. Bd.'s Ans. to Interrogs. #1.

b.      It set aside 280 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

103.    Northumberland County Board of Elections responded as follows.

a.      It received 4,835 mail ballots and 30 military-overseas ballots.  **Ex. 17** at Interrog. #1.

b.      It set aside 14 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

104.    Perry County Board of Elections responded as follows.

a.      It received 2,340 mail ballots and 4 military ballots.  **Ex. 54**, Perry Cnty. Bd.'s Ans. to Interrogs. #1.

b.      It set aside 35 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

105.    Philadelphia County Board of Elections responded as follows.

a.      It received 133,968 absentee and mail-in ballots, including military-overseas ballots.  **Ex. 55**, Philadelphia Cnty. Bd.'s Ans. to Interrogs. #1.  It counted 127,934 absentee and mail-in ballots and 1,014 military-overseas ballots.  *Id.*

b.      It set aside 2,617 mail-in and absentee ballots.  *Id.* at Interrog. #2. 580 of these voters submitted provisional ballots.  *Id.*

c.      It counted 13 military-overseas ballots with undated ballot declarations. *Id.* at Interrog. #15.

106.    Potter County Board of Elections responded as follows.

    a.    It received 888 mail-in ballots, including 2 military-overseas ballots. **Ex. 56**, Potter Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 11 mail ballots with undated or misdated ballot declarations, not including voters who submitted provisional ballots or ballots with other defects. *Id.* at Interrog. #2.

107.    Schuylkill County Board of Elections responded as follows.

    a.    It received 8,657 mail ballots and 25 military-overseas ballots. **Ex. 57**, Schuylkill Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 59 mail ballots with undated or misdated ballot declarations, including one ballot which also was missing a signature and another where the date was missing from the voter assistance declaration. **Ex. 58**, Ex. 2 to Schuylkill Resp. to Requests for Prod. of Docs.

    c.    It did not receive any military-overseas ballots with undated or misdated ballot declarations. **Ex. 57** at Interrog. #1.

108.    Snyder County Board of Elections responded as follows.

    a.    It received 2,286 mail ballots and 5 military-overseas ballots. **Ex. 17** at Interrog. #1.

    b.    It set aside 9 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

109.    Somerset County Board of Elections responded as follows.

    a.    It received 4,211 mail ballots, including 47 military-overseas ballots. **Ex. 59**, Somerset Cnty. Bd.'s Ans. to Interrogs. #1.

     b.     It set aside 63 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.  Two also did not contain signatures.  *Id.*

     c.     It did not receive any military-overseas ballots with an undated or misdated outer return envelope.  *Id.* at Interrog. #15.

110.    Sullivan County Board of Elections responded as follows.

     a.     It received 505 mail ballots and 4 military-overseas ballots.  **Ex. 60**, Sullivan Cnty. Bd.'s Ans. to Interrogs. #1.

     b.     It set aside 4 mail ballots with undated or misdated ballot declarations.  *Id.* at Interrog. #2.

     c.     It did not receive any military-overseas ballots with undated or misdated ballot declarations.  *Id.* at Interrog. #15.

111.    Susquehanna County Board of Elections responded as follows.

     a.     It received 3,247 mail-in ballots and 16 military-overseas ballots.  **Ex. 61**, Susquehanna Cnty. Bd.'s Ans. to Interrogs. #1.

     b.     It did not set aside any mail ballots for undated or misdated ballot declarations.  *Id.* at Interrog. #2.

112.    Tioga County Board of Elections responded as follows.

     a.     It reported that "[o]ut of 2,363 total ballots, 10 were returned."  **Ex. 62**, Tioga Cnty. Bd.'s Ans. to Interrogs. #1.

     b.     It set aside four mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

     c.     When asked if it "count[ed] timely-received military-overseas ballots in the 2022 General Election if the voter failed to date their voter declaration

or included a date that [it] deemed to be incorrect," it responded: "Ten such ballots were counted." *Id.* at Interrog. #15.

113.   Union County Board of Elections responded as follows.

    a.   It received 2,997 mail ballots, including 41 military-overseas ballots. **Ex. 63**, Union Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 23 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2*.*

    c.   It "believes it did not receive any military-overseas ballots that were not counted based on a missing and/or incorrect date on the elector's declaration on the return envelope." *Id.* at Interrog. #16.

114.   Venango County Board of Elections responded as follows.

    a.   It received 3,027 mail ballots and 35 military-overseas ballots. **Ex. 17** at Interrog. #1.

    b.   It set aside 42 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

115.   Warren County Board of Elections responded as follows.

    a.   It received 2,266 mail ballots and 8 military ballots. **Ex. 64**, Warren Cnty. Bd.'s Ans. to Interrogs. #1.

    b.   It set aside 18 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.  One of these ballots also did not have a signature. *Id.* at Interrog. #8.

    c.   It did not receive any military-overseas ballots that were undated or misdated. *Id.* at Interrog. #15.

116.    Washington County Board of Elections responded as follows.

    a.    It received 19,569 mail ballots, including 51 military-overseas ballots. **Ex. 65**, Washington Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 66 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.    It reported that "none of the military-overseas ballots it received in the 2022 General Election were required to be set aside." *Id.* at Interrog. #155.

117.    Wayne County Board of Elections responded as follows.

    a.    It received 4,692 mail ballots. **Ex. 66**, Wayne Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 55 mail ballots with undated or misdated ballot declarations. *Id.* at 8. Fewer than 10 of these were cured. *Id.* at Interrog. #2.

    c.    It did not receive any military-overseas ballots with undated or misdated ballot declarations. *Id.* at Interrog. #15.

118.    Westmoreland County Board of Elections responded as follows.

    a.    It received 34,599 mail ballots and 109 military-overseas ballots. **Ex. 67**, Westmoreland Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 95 mail ballots with undated or misdated ballot declarations. *Id.* at Interrog. #2.

    c.    It "did not receive any military-overseas ballots that were not counted based on a missing and/or incorrect date on the elector's declaration on the return envelope." *Id.* at Interrog. #15.

119.    Wyoming County Board of Elections responded as follows.

    a.    It received 2,029 mail ballots and 7 military-overseas ballots.  **Ex. 68**, Wyoming Cnty. Bd.'s Ans. to Interrogs. #1.

    b.    It set aside 17 mail ballots with undated ballot declarations.  *Id.*  One ballot also was missing a signature on the declaration.  *Id.* at Interrog. #2.

    c.    It reported that "[n]o military-overseas ballot was set aside for incorrect or missing date."  *Id.* at Interrog. #15.

120.    York County Board of Elections responded as follows.

    a.    It received 37,296 mail ballots and 185 military-overseas ballots.  **Ex. 25** at Interrog. #1.

    b.    It set aside 1,354 mail ballots with an undated or misdated ballot declaration.  *Id.* at Interrog. #2.

**B.    Ballot Envelopes**

121.    Military/overseas voters were provided with ballot declarations to fill out.  *See* **Ex. 69**, Montgomery County Declaration for Military-Overseas Ballot at 3; **Ex. 70**, Fayette County Declaration for Military-Overseas Ballot.

122.    Those ballot declarations had date fields, and instructed voters to "SIGN AND DATE HERE." *Id.*

123.    The Federal Write-In Absentee Ballot (FWAB) also contains a date field. https://www.fvap.gov/uploads/FVAP/Forms/fwab.pdf (specifying "Today's date"). *See* **Ex. 72**, Federal Write-In Absentee Ballot.

124.    The fvap.gov website instructs voters to "[m]ake sure to follow your state instructions when filling out your FWAB." https://www.fvap.gov/eo/overview/materials/forms. *See* **Ex. 73**, Federal Voting Assistance Program Guide.

125.     The fvap.gov website's Pennsylvania guide in its "Hardcopy Instructions" directs voters to "sign and date the 'Voter Information' page" "[o]nce your FWAB is complete." https://www.fvap.gov/guide/chapter2/pennsylvania. *See* **Ex. 74**, Federal Voting Assistance Guide Regarding Pennsylvania Elections.

### C.     Mr. Jeffrey Greenburg's Putative Expert Testimony

126.     Plaintiffs designated Mr. Jeffrey Greenburg to be an expert witness.  *See* **Ex. 75**, Plaintiffs' Designation of Expert Witness.

127.      Mr. Greenburg served as the director of elections for the Mercer County Bureau of Voter Registration and Elections from 2007 until July 2020.  *See* **Ex. 76**, Greenburg Decl. ¶ 3.

128.     Mr. Greenburg graduated from John Carroll University in 1982 with a bachelor of arts in History.  **Ex. 76** Ex. 1.

129.     Mr. Greenburg never took any courses in elections or election administration.  **Ex. 77**, Greenburg Dep. at 18:10-13.

130.     Mr. Greenburg has never published any articles in a peer-reviewed journal or publication, and has never submitted any written works for peer review that were not published. *Id.* at 22:18-25.

131.     Mr. Greenburg has never authored any studies about election administration.  *Id.* at 23:2-4.

132.     Mr. Greenburg's sole experience with statistical analysis of elections was to analyze the age of poll workers and to calculate the number of average voters registered in every county.  *Id*. 23:8-24:4.

133.     Mr. Greenburg's statistical analyses were never published anywhere.  *Id.* at 24:5-7.

134.    Mr. Greenburg has only ever administered elections in Mercer County, and has never administered a statewide election in Pennsylvania.  *Id.* at 26:2-12.

135.    Mr. Greenburg purports to offer the opinion that "older voters" (over age 65) "were disproportionately affected by the date requirement" in the November 2022 general election compared to voters under the age of 65.  **Ex. 76** ¶ 32.

136.    This opinion is multiply flawed.  *See* **Ex. 77** at 98:8-107:7.

137.    In the first place, Mr. Greenburg's opinion is limited to the discovery responses from 13 Pennsylvania counties and does not address any of the 54 other counties in Pennsylvania.  *See* **Ex. 76** ¶ 32; **Ex. 77** at 105:25-107:7.

138.    Moreover, in the 13 counties Mr. Greenburg examined, he found a disproportionate effect by looking only at voters whose absentee or mail-in ballots were not counted due to the date requirement.  *See* **Ex. 76** ¶ 32; **Ex. 77** at 98:15-99:11.

139.    Mr. Greenburg calculated the "percentage of voters" from that pool who were over the age of 65 and who were under the age of 65.  **Ex. 77** at 98:18; *see also* **Ex. 76** ¶ 32.

140.    Mr. Greenburg, however, did not know the total number of voters in each age category who submitted absentee or mail-in ballots.  *See* **Ex. 77** at 99:12-101:9.

141.    Mr. Greenburg did not calculate the rate at which voters over 65 or voters under 65 use absentee or mail-in voting.  *See* Ex. 76 ¶ 32; **Ex. 77** at 99:12-101:21.

142.    Mr. Greenburg also did not calculate the rate at which voters in either category fail to comply with the date requirement.  *See* **Ex. 77** at 103:9-105:19.

143.    Mr. Greenburg conceded that voters over age 65 may be less affected by the date requirement if they use absentee and mail-in voting at a higher rate—or make mistakes in

completing the date field at a lower rate—than voters under age 65.  *See* **Ex. 77** at 101:18-105:19.

144.    Mr. Greenburg's "disproportionately affected" opinion relied on data provided by Plaintiffs.  **Ex. 76** at ¶ 28 n.4; ¶ 32 n.6.

145.    The data provided by Plaintiffs was incomplete; they provided age data for voters in only 13 counties.  **Ex. 76** at ¶ 32 n.6.

146.    The data provided by Plaintiffs was internally inconsistent.

  a.    Plaintiffs purported to exclude from their count ballots that failed some other requirement than the date requirement.  **Ex. 76** Ex. 2.  But in Somerset, Franklin, Lancaster, Montgomery, Warren, Wyoming, and Crawford counties, Plaintiffs' table failed to exclude such ballots.  *Id.*

  b.    Plaintiffs sometimes purported to exclude cured ballots from its count, but their table admits that those numbers are not consistently tracked.  *Id.*  Similarly, it does not take into account the list of ballots provided by Fayette County that specifies which ballots were cured.  *See* **Ex. 71**, Fayette Cnty. Bd.'s List of Undated Ballots.

147.    Mr. Greenburg testified that voters "are required to affirm that they meet the qualifications" to vote "on the voter registration application."  **Ex. 77** at 69:13-25.

148.    Mr. Greenburg testified that voters "provide the information necessary for the boards to verify they are qualified" on "their voter registrations."  **Ex. 77** at 69:13-17.

149.    Mr. Greenburg agreed that providing a signature is not a qualification to vote. **Ex. 77**, at 76:3-5.

150.     Mr. Greenburg's "definition of 'disenfranchised'" was, "in [his] opinion," "an eligible voter who, for one reason or another, their ballot was not counted." **Ex. 76** at 90:8-14. He stated in his deposition:

> If a legally eligible voter's ballot is not counted, it's disenfranchisement.  When you're interpreting the law correctly or not, the ability for them to cast that ballot is not happening because of something that either they did or they omitted.

**Ex. 77** at 93:3-15.

151.     For purposes of his report, Mr. Greenburg classified such voters as "disenfranchise[d]" even if the "election official" "follow[ed] the law" in setting aside the voter's ballot.  *Id.* at 93:9-19.

152.     Mr. Greenburg admitted that, in the *Mihaliak* case, the only piece of information on the face of the ballot indicating that a third party had attempted to vote someone else's ballot was the handwritten date.  *Id.* at 115:8-20.

153.     Mr. Greenburg admitted that, in the *Mihaliak* case, the date requirement helped to identify fraud.  *Id.* at 116:19-117:2.

154.     Mr. Greenburg agreed that fraud involving mail ballots is possible now and in the future in Pennsylvania.  *Id.* at 61:3-9.

155.     Mr. Greenburg agreed that the date requirement applies to overseas voters. *Id.* at 84:2-4.

Dated:  April 21, 2023

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
Joshua S. Ha
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
  COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*