# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,** | |
| *Plaintiffs,* | |
| v. | **Case No. 1:22-cv-00339-SPB** |
| **AL SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth, *et al.*,** | |
| *Defendants.* | |

## PLAINTIFFS' APPENDIX VOLUME V
### [APP_01135 – APP_01289]

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
Kate I. Steiker-Ginzberg* (PA 332236)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

Ari J. Savitzky
Megan C. Keenan
Luis Manuel Rico Román
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
lroman@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

Elizabeth Femia
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3813
lisa.femia@hoganlovells.com

*Counsel for Plaintiffs*

* *Appearance forthcoming*

# <u>TABLE OF CONTENTS</u>

## Volume I

1/25/2023, Defendant Adams County Board of Elections Responses to Plaintiffs' First Set of Requests for Admission, Written Interrogatories, and Requests for Production of Documents ....................................[APP_00001]

1/25/2023, Responses of Defendant Allegheny County Board of Elections to Plaintiffs' First Set of Requests for Admissions ...........................[APP_00018]

1/25/2023, Responses of Defendant Allegheny County Board of Elections to Plaintiffs' First Set of Requests for Interrogatories ......................[APP_00025]

3/6/2023, Amended Responses of Defendant Allegheny County Board of Elections to Plaintiffs' First Set of Interrogatories ........................[APP_00035]

1/24/2023, Answer to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants (Armstrong County Board of Elections) ..........................................................................[APP_00037]

1/24/2023, Answer to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants (Armstrong County Board of Elections) .......[APP_00040]

1/18/2023, Responses of Beaver County Board of Elections to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants ......................................................................[APP_00046]

1/18/2023, Responses of Beaver County Board of Elections to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ....[APP_00054]

1/13/2023, Response of Defendant Berks County Board of Elections to Plaintiffs' First Set of Requests for Admission ..............................[APP_00071]

1/20/2023, Response of Defendant Berks County Board of Elections to Plaintiffs' First Set of Interrogatories ............................................[APP_00077]

1/25/2023, Defendant Blair County Board of Elections Answers to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants ......................................................................[APP_00087]

1/25/2023, Defendant Blair County Board of Elections Answers to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ......................................................................[APP_00095]

1/25/2023, Defendant's Answer to First Set of Requests for Admissions (Bradford County Board of Elections)............................................[APP_00105]

1/25/2023, Defendant's Answer to First Set of Requests for Interrogatories (Bradford County Board of Elections)............................................[APP_00107]

1/25/2023, Bucks County Board of Elections' Responses to Plaintiffs' First Set of Requests for Admissions..............................................[APP_00113]

1/25/2023, Bucks County Board of Elections' Responses to Plaintiffs' First Set of Interrogatories ..............................................................[APP_00116]

1/20/2023, Responses of Defendant Butler County Board of Elections to Plaintiffs' First Set of Requests for Admission ..............................[APP_00122]

1/20/2023, Responses of Defendant Butler County Board of Elections to Plaintiffs' First Set of Interrogatories............................................[APP_00129]

1/12/2023, Response to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants (Cambria Board of Elections) .........[APP_00136]

1/12/2023, Response to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants (Cambria Board of Elections)....................[APP_00140]

1/24/2023, Defendant Cameron County Board of Elections Response to Plaintiffs' First Set of Requests for Admission ..............................[APP_00145]

1/24/2023, Defendant Cameron County Board of Elections Response to Plaintiffs' First Set of Interrogatories............................................[APP_00149]

1/25/2023, Chester County Board of Elections Response to Plaintiffs' First Set of Requests for Admission................................................[APP_00157]

1/25/2023, Chester County Board of Elections Response to Plaintiffs' First Set of Interrogatories ..............................................................[APP_00165]

1/25/2023, Defendant, Clarion County's Answers and Objections to Plaintiffs' Request for Admissions ..................................................[APP_00180]

1/25/2023, Defendant, Clarion County's Answers and Objections to Plaintiffs' Interrogatories ..........................................................[APP_00184]

1/25/2023, Defendant, Clearfield County Board of Elections, Response to Plaintiffs' First Request for Admissions .......................................[APP_00190]

1/25/2023, Defendant, Clearfield County Board of Elections, Response to Plaintiffs' First Set of Interrogatories............................................[APP_00197]

1/19/2023, Response of Clinton County Board of Elections to Plaintiffs' First Set of Requests for Admission ........................................................ [APP_00211]

1/19/2023, Response of Clinton County Board of Elections to Plaintiffs' Interrogatories ............................................................................... [APP_00215]

1/24/2023, Defendant Crawford County Board of Elections Responses to Plaintiffs' First Set of Requests for Admissions ........................... [APP_00225]

1/24/2023, Defendant Crawford County Board of Elections Responses to Plaintiffs' First Set of Written Interrogatories .............................. [APP_00231]

1/25/2023, Responses of Cumberland County Board of Elections to Plaintiffs' First Set of Requests for Admission ................................................ [APP_00245]

1/25/2023, Responses of Cumberland County Board of Elections to Plaintiffs' Interrogatories ............................................................................... [APP_00251]

1/25/2023, Answer of Delaware County Board of Elections to Plaintiffs' First Request for Admission ..................................................................... [APP_00259]

1/25/2023, Answer of Delaware County Board of Elections to Plaintiffs' First Set of Interrogatories ...................................................................... [APP_00265]

1/25/2023, Answers to Plaintiffs' First Set of Requests for Admissions to County Board of Election Defendants Filed on behalf of Elk County Board of Elections ............................................................................ [APP_00276]

1/25/2023, Answers to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants Filed on behalf of Elk County Board of Elections ............................................................................................... [APP_00278]

2/27/2023, Defendant, Erie County Board of Elections, Responses to Plaintiffs' First Set of Requests for Admission ................................................ [APP_00281]

2/27/2023, Defendant, Erie County Board of Election's Answers to Plaintiffs' First Set of Interrogatories ............................................................... [APP_00285]

1/20/2023, Response of Defendant Fayette County Board of Elections to Plaintiffs' First Set of Requests for Admission .............................. [APP_00300]

1/20/2023, Response of Defendant Fayette County Board of Elections to Plaintiffs' First Set of Interrogatories to County Board of Elections Defendants ...................................................................................... [APP_00308]

2/24/2023, Defendant, Forest County's Response to Plaintiffs Requests for Admissions ................................................................................. [APP_00317]

2/24/2023, Defendant, Forest County's Response to Plaintiff's Interrogatories .................................................................[APP_00320]

1/20/2023, Defendant, Franklin County Board of Elections' Answers to Plaintiffs' First Set of Requests for Admissions ...........................[APP_00328]

1/20/2023, Defendant, Franklin County Board of Elections' Answers to Plaintiffs' First Set of Interrogatories.............................................[APP_00335]

2/22/2023, Discovery Responses of Defendant Fulton County Board of Elections .............................................................................................[APP_00347]

1/12/2023, Answer to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants (Greene County Board of Elections) ........................................................................................[APP_00351]

1/17/2023, Answer to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants (Greene County Board of Elections) .............[APP_00354]

## TABLE OF CONTENTS

### Volume II

1/20/2023, Juniata County Board of Elections Response to Plaintiffs' First Set of Requests for Admissions ..............................................................[APP_00360]

1/20/2023, Juniata County Board of Elections Response to Plaintiffs' First Set of Interrogatories .............................................................................[APP_00363]

1/25/2023, Defendant Lackawanna County Board of Elections' Response to Plaintiffs' First Set of Requests for Admission ...............................[APP_00367]

1/25/2023, Defendant Lackawanna County Board of Elections' Response to Plaintiffs' First Set of Requests for Admission (Interrogatories)...[APP_00371]

1/20/2023, Answers of Defendant Lancaster County Board of Elections to Plaintiffs' First Set of Requests for Admission ...............................[APP_00382]

1/20/2023, Answers and Objections of Defendant Lancaster County Board of Elections to Plaintiffs' First Set of Interrogatories ........................[APP_00386]

1/18/2023, Response of Defendant Lehigh County Board of Elections to Plaintiffs' First Set of Requests for Admission ...............................[APP_00396]

1/25/2023, Responses of Defendant Lehigh County Board of Elections to Plaintiffs' First Set of Interrogatories.............................................[APP_00400]

1/25/2023, Response of Defendant Luzerne County Board of Elections to Plaintiffs' First Set of Requests for Admissions .............................[APP_00410]

1/25/2023, Response of Defendant Luzerne County Board of Elections to Plaintiffs' First Set of Interrogatories.............................................[APP_00416]

2/16/2023, Amendment to Response of Defendant Luzerne County Board of Elections to Plaintiffs' First Set of Interrogatories ........................[APP_00426]

1/12/2023, Defendant Lycoming County Board of Elections' Answers to Plaintiffs' First Set of Requests for Admissions Directed to Defendants .................................................................................[APP_00427]

1/26/2023, Defendant Lycoming County Board of Elections' Objections and Answers to Plaintiffs' First Set of Interrogatories Directed to Defendants ...............................................................................[APP_00436]

2/1/2023, Defendant's, McKean County Board of Elections, Answers to Plaintiff's First Set of Request for Admissions Directed to Defendants ......................................................................[APP_00448]

2/1/2023, Defendant's, McKean County Board of Elections, Answers to Plaintiff's First Set of Interrogatories Directed to Defendants......[APP_00452]

2/15/2023, Defendant Mercer County, Pennsylvania's Answers to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ..........................................................................[APP_00460]

1/26/2023, Requests for Admission (Mifflin County Board of Elections) ....................................................................................[APP_00465]

1/26/2023, Interrogatories (Mifflin County Board of Elections) ..............[APP_00468]

1/25/2023, Objections and Answers of Defendant Montgomery County Board of Elections to Plaintiffs' Requests for Admissions ..........................[APP_00475]

4/4/2023, Answers of Defendant Montgomery County Board of Elections to Plaintiffs' First Set of Interrogatories.............................................[APP_00479]

1/25/2023, Defendant Northampton County Board of Elections Answers to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants...........................................................[APP_00488]

1/25/2023, Defendant Northampton County Board of Elections Answers to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ..........................................................................[APP_00494]

1/20/2023, Defendant, Perry County Board of Elections' Answers to Plaintiffs' First Set of Requests for Admission .................................[APP_00503]

1/20/2023, Defendant, Perry County Board of Elections' Answers to Plaintiffs' First Set of Interrogatories ............................................[APP_00510]

1/25/2023, Defendant Philadelphia County Board of Elections' Responses and Objections to Plaintiffs' First Set of Requests for Admission to Philadelphia County (NOS. 1-8).......................................[APP_00521]

1/25/2023, Defendant Philadelphia County Board of Elections' Responses and Objections to Plaintiffs' First Set of Interrogatories to Philadelphia County (NOS. 1-22).......................................................[APP_00527]

2/13/2023, Pike County, PA Response to Interrogatories and Request for Admission ..........................................................................[APP_00541]

1/4/2023, Potter County Board of Elections Answers to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants.[APP_00545]

1/17/2023, Potter County Board of Elections Supplemental Answers to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants ........................................................................[APP_00555]

1/4/2023, Potter County Board of Elections Responses to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants...............[APP_00567]

2/16/2023, Schuylkill County Board of Elections Response to Plaintiffs' First Requests for Admissions....................................................[APP_00584]

2/17/2023, Schuylkill County Board of Elections Response to Plaintiffs' First Set of Interrogatories ........................................................[APP_00587]

1/25/2023, Defendant Somerset County Board of Elections' Answers to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants ........................................................................[APP_00591]

1/25/2023, Defendant Somerset County Board of Elections' Answers to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ...........................................................................[APP_00597]

1/18/2023, Request for Admission (Sullivan County Board of Elections).[APP_00607]

1/18/2023, Interrogatories (Sullivan County Board of Elections).............[APP_00609]

1/25/2023, Defendant, Susquehanna County's Answers and Objections to Plaintiffs' Requests for Admission .................................................[APP_00614]

1/25/2023, Defendant, Susquehanna County's Answers and Objections to Plaintiffs' Interrogatories ...............................................................[APP_00618]

1/25/2023, Defendant, Tioga County's Answers and Objections to Plaintiffs' Requests for Admissions.................................................[APP_00624]

1/25/2023, Defendant, Tioga County's Answers and Objections to Plaintiffs' Interrogatories ........................................................................[APP_00628]

1/25/2023, Responses of Defendant Union County Board of Elections to Plaintiffs' First Set of Interrogatories............................................[APP_00634]

1/25/2023, Answers from Warren County Board of Elections to Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants ........................................................................[APP_00641]

1/25/2023, Answers from Warren County Board of Elections to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ....[APP_00645]

1/25/2023, Defendant Washington County Board of Elections' Responses to Plaintiffs' First Set of Requests for Admission ..............................[APP_00652]

1/25/2023, Defendant Washington County Board of Elections' Responses to Plaintiffs' First Set of Interrogatories ..............................................[APP_00659]

1/25/2023, Plaintiffs' First Set of Requests for Admission to County Board of Election Defendants (Wayne County Board of Elections) ..............[APP_00677]

1/25/2023, Plaintiffs' First Set of Interrogatories to County Board of Election Defendants (Wayne County Board of Elections) ...........................[APP_00684]

1/25/2023, Responses and Objections of Defendant Westmoreland County Board of Elections to Plaintiffs' First Set of Requests for Admission ........................................................................................[APP_00696]

1/25/2023, Defendant Westmoreland County Board of Elections' Answers and Objections to Plaintiffs' First Set of Interrogatories to County Board of Election Defendants ........................................................................[APP_00703]

2/13/2023, Interrogatories, Requests for Admission (Wyoming County Board of Elections) ........................................................................................[APP_00714]

1/25/2023, Defendants Bedford County, Carbon County. Centre County, Columbia County, Dauphin County, Jefferson County, Huntingdon County, Indiana County, Lawrence County, Lebanon County, Monroe County, Montour County, Northumberland County, Snyder County, Venango County, and York County Boards of Elections' Answers and Objections to Plaintiffs' First Set of Interrogatories, Requests for Admission, and Requests for Production Directed to All Defendant County Boards of Elections ...............................................[APP_00723]

2/17/2023, Defendants Centre County, Montour County and York County Boards of Elections' Supplemental Answers and Objections to Plaintiffs' First Set of Interrogatories Directed to All Defendant County Boards of Elections ........................................................................................[APP_00776]

2/17/2023, Defendant Al Schmidt's Combined Responses and Objections to Intervenor-Defendants' First Set of Interrogatories and Requests for Production of Documents...............................................................[APP_00792]

# <u>TABLE OF CONTENTS</u>

## Volume III

2/17/2023, Deposition of Cody Kauffman, Berks County Board of Elections 30(b)(6) Designee..............................................................................[APP_00800]

2/13/2023, Deposition of Crista Miller, Lancaster County Board of Elections 30(b)(6) Designee..............................................................................[APP_00850]

2/17/2023, Deposition of Greg McCloskey, Westmoreland County Board of Elections 30(b)(6) Designee ............................................................[APP_00898]

2/14/2023, Deposition of Jonathan M. Marks, Pennsylvania Deputy Secretary for Elections and Commissions ......................................................[APP_00942]

Exhibit 6 to Deposition of Jonathan M. Marks, Pennsylvania Deputy Secretary for Elections and Commissions ......................................................[APP_01006]

3/23/2023, Deposition of Jeffrey Greenburg, Plaintiffs' Expert ...............[APP_01008]

Exhibit 4 to Deposition of Jeffrey Greenburg, Plaintiffs' Expert .............[APP_01036]

Exhibit 4 to Deposition of Jeffrey Greenburg, Plaintiffs' Expert .............[APP_01039]

# TABLE OF CONTENTS

## Volume IV

11/16/2022, Declaration of Laurence Smith, Individual Voter Plaintiff .................................................................................[APP_01047]

11/16/2022, Declaration of Joel Bencan, Individual Voter Plaintiff .................................................................................[APP_01052]

11/14/2022, Declaration of Aynne Margaret Pleban Polinski, Individual Voter Plaintiff.................................................................[APP_01057]

11/17/2022, Declaration of Marlene G. Gutierrez, Individual Voter Plaintiff.................................................................[APP_01059]

11/23/2022, Declaration of Barry M. Seastead, Individual Voter Plaintiff.................................................................[APP_01062]

4/19/2023, Declaration of Sandra Thompson, President of Organizational Plaintiff Pennsylvania State Conference of the NAACP .................................................................................[APP_01065]

4/20/2023, Declaration of Meghan Pierce, Executive Director of Organizational Plaintiff League of Women Voters of Pennsylvania .................................................................................[APP_01082]

4/20/2023, Declaration of Bishop Dwayne Royster, President of Organizational Plaintiff Philadelphians Organized to Witness, Empower and Rebuild .................................................................................[APP_01107]

4/20/2023, Declaration of Khalif Ali, Executive Director of Organizational Plaintiff Common Cause Pennsylvania ..........................................[APP_01111]

4/18/2023, Declaration of Walt Hales, Coordinator for Outreach to Citizens and Religious Organizations for Organizational Plaintiff Black Political Empowerment Project....................................................[APP_01125]

4/21/2023, Declaration of Diana Robinson, Civic Engagement Director of Organizational Plaintiff Make the Road Pennsylvania .................[APP_01132]

x

# TABLE OF CONTENTS

## Volume V

9/26/2022, Pa. Dep't of State Guidance with Notice (AC_001592-95) ................................................................................................[APP_01135]

9/26/2022, Pa. Dep't of State Guidance (pre-notice) ...................................[APP_01139]

10/11/2022, Pa. Dep't of State Statement (Clarion #1) .............................[APP_01143]

10/20/2022, Berks Bd. Meeting (Berks 00017-19) .....................................[APP_01144]

11/1/2022, Supreme Court of Pennsylvania Order in *Ball v. Chapman* ................................................................................................[APP_01147]

11/1/2022, Email from Jonathan Marks (Lycoming 100) ..........................[APP_01149]

11/5/2022, Supreme Court of Pennsylvania Suppl. Order in *Ball v. Chapman* ................................................................................................[APP_01150]

11/9/2022, Luzerne Bd. Meeting ..............................................................[APP_01152]

11/15/2022, Bucks Bd. Meeting ...............................................................[APP_01154]

11/15/2022, Fayette Bd. Meeting .............................................................[APP_01158]

11/18/2022, Philadelphia Bd. Meeting .....................................................[APP_01162]

Berks Military-Overseas Ballot Instructions (Berks-00038) ....................[APP_01169]

Berks Mail Ballot Instructions (Berks-00043-45) ....................................[APP_01170]

Blair Bd. Canvassing Instructions............................................................[APP_01173]

Expert Report of Jeffrey Greenburg .........................................................[APP_01178]

Sample Ballot (MONTOUR000001-000008)............................................[APP_01193]

Westmoreland UOCAVA Envelope (W028) ..............................................[APP_01201]

10/16/2022, Petition for Supreme Court of Pennsylvania to Exercise King's Bench Jurisdiction (*Ball v. Chapman*)............................................[APP_01202]

10/24/22, Petitioners' Brief, Appeal Subject to the Supreme Court's King's Bench Authority (*Ball v. Chapman*) ...............................................[APP_01270]

11/7/2022, Montgomery Bd. Meeting .......................................................[APP_01286]

# TABLE OF CONTENTS

## Volume VI

Berks County mail ballot envelope (Berks-00084) ...................................[APP_01290]

Bucks County military-overseas ballot envelope ......................................[APP_01291]

Beaver County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01292]

Berks County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01297]

Blair County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01357]

Butler County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01359]

Centre County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01361]

Dauphin County list of voters whose ballots were segregated based on envelope-date requirement ...........................................................................[APP_01365]

Erie County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01367]

Franklin County list of voters whose ballots were segregated based on envelope-date requirement ...........................................................................[APP_01373]

Indiana County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01376]

Lancaster County list of voters whose ballots were segregated based on envelope-date requirement ...........................................................................[APP_01380]

Lawrence County list of voters whose ballots were segregated based on envelope-date requirement ...........................................................................[APP_01387]

Luzerne County list of voters whose ballots were segregated based on envelope-date requirement .............................................................................[APP_01388]

Montgomery County list of voters whose ballots were segregated based on envelope-date requirement ...........................................................................[APP_01392]

Venango County list of voters whose ballots were segregated based on envelope-date requirement ............................................................[APP_01393]

Warren County list of voters whose ballots were segregated based on envelope-date requirement ...............................................................[APP_01394]

Wayne County list of voters whose ballots were segregated based on envelope-date requirement................................................................[APP_01395]

Westmoreland County list of voters whose ballots were segregated based on envelope-date requirement ............................................................[APP_01397]

York County list of voters whose ballots were segregated based on envelope-date requirement...............................................................[APP_01399]

Westmoreland mail ballot envelope (W036) ...............................................[APP_01401]

Envelope examples: Date in range under American dating convention ................................................................................................[APP_01402]

Envelope examples: Voter used Election Day, rather than date of signature ...........................................................................[APP_01407]

Envelope examples: Date in range under European dating convention ................................................................................................[APP_01408]

Envelope examples: Month post-dates the permitted date range, but year and day are consistent with permitted range ........................................[APP_01414]

Envelope examples: Date contains a year later than 2022 ......................[APP_01423]

Envelope examples: Missing date ..............................................................[APP_01433]

Envelope examples: Day omitted, but month and year are consistent with the permitted date range ......................................................................[APP_01436]

Envelope examples: Month omitted, but day and year are consistent with the permitted date range ......................................................................[APP_01443]

Envelope examples: Year omitted, but month and day are consistent with the permitted date range ......................................................................[APP_01446]

Envelope examples: Month pre-dates the permitted date range, but year and day are consistent with permitted range ........................................[APP_01455]

Envelope examples: Date contains a year earlier than 2022, but month and date are consistent with the permitted date range ........................[APP_01466]

Envelope examples: Voter used birth date, rather than date of signature ..............................................................................[APP_01474]

Envelope example: Voter died, date "moot" ...............................................[APP_01485]

Envelope examples: Voter input day that does not exist (e.g., 9/31/22) ..............................................................................[APP_01486]

Envelope Examples: Date within permitted range appears somewhere other than the date line of the envelope ..................................................[APP_01489]

4/21/2023, Declaration of Kortney Tetro in Support of Plaintiffs' Motion for Summary Judgment .......................................................................[APP_01492]

TLP: WHITE



**NOTICE:**

**As of November 3, 2022, this document has been supplemented by the Department's Guidance on Undated and Incorrectly Dated Mail-in and Absentee Ballot Envelopes Based on the Pennsylvania Supreme Court's Order in *Ball v. Chapman*, issued November 1, 2022**

# GUIDANCE CONCERNING EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

**Updated: September 26, 2022**

**Version: 3.0**

AC_001592

EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

1   BACKGROUND:

The Pennsylvania Election Code describes processes that a qualified voter follows to apply for, receive, complete and timely return an absentee or mail-in ballot to their county board of election.  These processes include multiple secure methods used by the voter's  county board of election to verify that thequalified voter's absentee or mail-in application is complete and that the statutory requirements are satisfied.  These include voter identification verification confirmed by either a valid driver's  license number, the last four digits of the voter's  social security number or other valid photo identification, and unique information on the application including the voter's  residence and date of birth.  Before sending the ballot to the applicant, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record.  If the county is satisfied that the applicant is qualified, the application must be approved.  This approval shall be final and binding, except that challenges may be made only on the grounds that the applicant was not a qualified voter, and those challenges must be made to the county prior to five o'clock p.m. on the Friday prior to the election.

Once the qualified voter's  absentee or mail-in application is approved, the voter is mailed a ballot with instructions and two envelopes.  The outer envelope includes both a unique correspondence ID barcode that links the envelope to the qualified voter's application and a pre-printed Voter's Declaration that the voter must sign representing that the voter is qualified to vote the enclosed ballot and has not already voted.  This Guidance addresses the examination of the Voter's  Declaration on the ballot return envelope.  This Guidance assumes that the voter has satisfactorily completed the steps described above as to application for, receipt and return of an absentee or mail-in ballot.

2   RECORDING THE DATE, RETURN METHOD AND BALLOT STATUS FOR RETURNED BALLOTS:

County boards of elections should have processes in place to record the date, return method, and ballot status for all voted ballots received.  County boards of elections must store and maintain returned ballots in a secure location until the ballots are to be pre-canvassed or canvassed.

The county board of elections should stamp the date of receipt on the ballot-return. County boards of elections should record the receipt of absentee and mail ballots daily in the SURE system. To record a ballot as returned, the staff should scan the

correspondence ID barcode on the outside of the envelope. The correspondence ID on the envelope is unique to each absentee or mail-in voter and each issuance of a ballot to a voter. Once a correspondence ID has been recorded as returned in the SURE system, it cannot be recorded again. Further, if a ballot issuance record is cancelled by the county board of elections (e.g. voided to reissue a replacement ballot) in the SURE system, the correspondence ID on the cancelled ballot will become invalid. If the same barcode is subsequently scanned, the SURE system will not allow the returned ballot to be marked as being approved for counting.

The county boards of elections should record the date the ballot is received (not the date that the returned ballot is processed).  In the event a county board of elections is entering the ballot on a date other than the date the ballot was received, the county personnel should ensure that the SURE record reflects the date of receipt, rather than the date of entry, since by default, SURE will automatically populate both the 'Date Received'  and 'Vote  Recorded'  fields with the current date and time unless users manually correct the date to reflect the date received.

## 3    EXAMINATION OF DECLARATION ON BALLOT RETURN ENVELOPES:

The county board of elections is responsible for approving ballots to be counted during pre-canvassing and canvassing.

To promote consistency across the 67 counties, the county boards of elections should follow the following steps when processing returned absentee and mail-in ballots.

After setting aside ballots of electors who died prior to the opening of the polls, the county board of elections shall examine the Voter's  Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's  name and address, with the information contained on the list of absentee and mail-in voters.

If the Voter's Declaration on the return envelope is not signed, that ballot return envelope must be set aside and not counted.  If the board determines that a ballot should not be counted, the final ballot disposition should be noted in SURE. The ballot return status (Resp Type) should be noted using the appropriate drop-down selection.

If the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for the pre-canvass or canvass unless the application was challenged in accordance with the Pennsylvania Election Code.

~~Any ballot return envelope that is undated or dated with an incorrect date but that has been timely received by the county shall be included in the pre-canvass and canvass.~~

The Pennsylvania Election Code does not authorize the county board of elections to set

aside returned absentee or mail-in ballots based solely on signature analysis by the county board of elections.

| Version | Date | Description | Author |
|---|---|---|---|
| 1.0 | 9.11.2020 | Initial document release | Bureau of Elections |
| 2.0 | 5.24.2022 | Updates related to court decisions | Bureau of Elections |
| 3.0 | 9.26.2022 | Updates related to court decisions | Bureau of Elections |

APP_01138

AC_001595

TLP: WHITE



# GUIDANCE CONCERNING EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

## Updated: September 26, 2022

**Version: 3.0**

**APP_01139**

EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

## 1   BACKGROUND:

The Pennsylvania Election Code describes processes that a qualified voter follows to apply for, receive, complete and timely return an absentee or mail-in ballot to their county board of election.  These processes include multiple secure methods used by the voter's county board of election to verify that the qualified voter's absentee or mail-in application is complete and that the statutory requirements are satisfied.  These include voter identification verification confirmed by either a valid driver's license number, the last four digits of the voter's social security number or other valid photo identification, and unique information on the application including the voter's residence and date of birth.  Before sending the ballot to the applicant, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record.  If the county is satisfied that the applicant is qualified, the application must be approved.  This approval shall be final and binding, except that challenges may be made only on the grounds that the applicant was not a qualified voter, and those challenges must be made to the county prior to five o'clock p.m. on the Friday prior to the election.

Once the qualified voter's absentee or mail-in application is approved, the voter is mailed a ballot with instructions and two envelopes.  The outer envelope includes both a unique correspondence ID barcode that links the envelope to the qualified voter's application and a pre-printed Voter's Declaration that the voter must sign representing that the voter is qualified to vote the enclosed ballot and has not already voted.  This Guidance addresses the examination of the Voter's Declaration on the ballot return envelope.  This Guidance assumes that the voter has satisfactorily completed the steps described above as to application for, receipt and return of an absentee or mail-in ballot.

## 2   RECORDING THE DATE, RETURN METHOD AND BALLOT STATUS FOR RETURNED BALLOTS:

County boards of elections should have processes in place to record the date, return method, and ballot status for all voted ballots received.  County boards of elections must store and maintain returned ballots in a secure location until the ballots are to be pre-canvassed or canvassed.

The county board of elections should stamp the date of receipt on the ballot-return. County boards of elections should record the receipt of absentee and mail ballots daily in the SURE system. To record a ballot as returned, the staff should scan the



**APP_01140**

correspondence ID barcode on the outside of the envelope. The correspondence ID on the envelope is unique to each absentee or mail-in voter and each issuance of a ballot to a voter. Once a correspondence ID has been recorded as returned in the SURE system, it cannot be recorded again. Further, if a ballot issuance record is cancelled by the county board of elections (e.g. voided to reissue a replacement ballot) in the SURE system, the correspondence ID on the cancelled ballot will become invalid. If the same barcode is subsequently scanned, the SURE system will not allow the returned ballot to be marked as being approved for counting.

The county boards of elections should record the date the ballot is received (not the date that the returned ballot is processed). In the event a county board of elections is entering the ballot on a date other than the date the ballot was received, the county personnel should ensure that the SURE record reflects the date of receipt, rather than the date of entry, since by default, SURE will automatically populate both the 'Date Received' and 'Vote Recorded' fields with the current date and time unless users manually correct the date to reflect the date received.

## 3    EXAMINATION OF DECLARATION ON BALLOT RETURN ENVELOPES:

The county board of elections is responsible for approving ballots to be counted during pre-canvassing and canvassing.

To promote consistency across the 67 counties, the county boards of elections should follow the following steps when processing returned absentee and mail-in ballots.

After setting aside ballots of electors who died prior to the opening of the polls, the county board of elections shall examine the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's name and address, with the information contained on the list of absentee and mail-in voters.

If the Voter's Declaration on the return envelope is not signed, that ballot return envelope must be set aside and not counted. If the board determines that a ballot should not be counted, the final ballot disposition should be noted in SURE. The ballot return status (Resp Type) should be noted using the appropriate drop-down selection.

If the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for the pre-canvass or canvass unless the application was challenged in accordance with the Pennsylvania Election Code.

Any ballot-return envelope that is undated or dated with an incorrect date but that has been timely received by the county shall be included in the pre-canvass and canvass.

The Pennsylvania Election Code does not authorize the county board of elections to set

aside returned absentee or mail-in ballots based solely on signature analysis by the county board of elections.

| Version | Date | Description | Author |
|---------|------|-------------|--------|
| 1.0 | 9.11.2020 | Initial document release | Bureau of Elections |
| 2.0 | 5.24.2022 | Updates related to court decisions | Bureau of Elections |
| 3.0 | 9.26.2022 | Updates related to court decisions | Bureau of Elections |

Clarion County  #1

## Cindy Callihan

| | |
|---|---|
| **From:** | Marks, Jonathan <jmarks@pa.gov> |
| **Sent:** | Tuesday, October 11, 2022 4:49 PM |
| **To:** | Marks, Jonathan |
| **Subject:** | DOS Email: Guidance on Undated Ballots Unchanged |
| | |
| **Importance:** | High |

'**Warning: This email originated outside of Clarion County's Network.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is
safe.** *Clarion County IT Department*

Dear county election official,

As you may know, the U.S. Supreme Court issued an order this morning regarding the Third Circuit's decision in the *Migliori* case. Please be advised that the Court took this action because the election at issue in *Migliori* had concluded, and the case was thus moot. The Court did not rule on the merits of the issues, and did not change the status quo. The Pennsylvania Commonwealth Court's decision on this issue held that both Pennsylvania *and* federal law prohibit excluding legal votes because the voter omitted an irrelevant date on the ballot return envelope, and that decision remains good law.  Every county is expected to include undated ballots in their official returns for the Nov. 8 election, consistent with the Department of State's guidance.

Today's order vacating the Third Circuit's judgment on mootness grounds does not affect the prior decision of Commonwealth Court in any way. It provides no justification for counties to exclude ballots based on a minor omission, and we expect that counties will continue to comply with their obligation to count all legal votes.

Warmest regards,

**Jonathan Marks** | Deputy Secretary for Elections and Commissions *(he, him, his)*
Office of the Secretary
302 North Office Building, Harrisburg, PA 17120
Office: 717.787.6458  Direct: 717.783.2035
dos.pa.gov | vote.pa.gov | Facebook | Twitter

**BERKS COUNTY BOARD OF ELECTIONS**
**REGULAR MEETING MINUTES**
**October 20, 2022 – 11:00 A.M.**

**Kevin S. Barnhardt, Chair**
**Michael S. Rivera, Vice-Chair**
**Christian Y. Leinbach, Commissioner**
**Christine M. Sadler, County Solicitor**
**Cody L. Kauffman, First Assistant County Solicitor**

**CALL TO ORDER-** 11:00 A.M.

**APPROVAL OF MINUTES**

The Board approved the minutes for the October 20, 2022 Election Board meeting as presented.

**PUBLIC COMMENT ON AGENDA ITEMS**
Don Starke of Centre Township – Mr. Starke commented on the County drop boxes, stating they should be done away with and are not legally mandated.

Don Bogusky of Centre Township – Mr. Bogusky asked how party members can participate in the Risk-Limiting Audit.

Jeff Wolfe of Brecknock Township – Commented on items 1 and 3 of the current agenda.  Also questioned how authentication of signatures happens for absentee and mail-in ballots.

Tom Herman of Robeson Township – Urged the County to count undated ballots.

Zelda Yoder of Reading – Ms. Yoder voiced concerns on how much attention is placed on voter integrity compared to voter turnout and making the voting process simple and user-friendly.

Diana Robinson of Reading – Ms. Robinson urged the Board to make voting more accessible and count every vote.

**AGENDA ITEMS**

1. **Undated and Misdated Absentee/Mail-in ballots**
   First Assistant County Solicitor, Cody Kauffman, recommended the County segregate but count undated ballots, pending any changes in the law.  On the motion of Commissioner Leinbach, seconded by Commissioner Barnhardt, the Board agreed to follow Mr. Kauffman's recommendation of segregating but counting undated and misdated ballots.

1

2. **Risk-Limiting Audit (RLA) and 2% Audit**
   First Assistant County Solicitor, Cody Kauffman, explained the 2% Audit is statutorily required and the county will continue to comply. Further, the Risk-Limiting Audit (RLA) is required by the Stein settlement, and Mr. Kauffman recommends the County continue with both audits unless the election code's statutory provision for the 2% audit is repealed.  Observers are allowed at both the 2% and RLA, within the guidelines of election code.  Finally, the Board, in choosing auditing teams, should decide whether or not to include party members or members of the public.

   Commissioner Leinbach agreed that Observers are ok, and it is always better to err on the side of transparency.

   Commissioner Barnhardt also agreed and noted that both major political parties should participate in the audits.

3. **Absentee/Mail-in ballots received with taped outer envelopes**
   On the motion of Commissioner Leinbach, seconded by Commissioner Barnhardt, the Board approved counting ballots which have taped outer envelopes, given that there is no other sign of tampering with the secrecy envelope.

4. **Logic & Accuracy (L&A) Testing**
   Anne Norton, of the Election Services office, provided an update on the upcoming Logic & Accuracy (L&A) Testing of the Electronic poll books to be used for the 2022 General Election.  L&A Testing is scheduled to begin on Thursday, October 27, 2022 at 10:00 a.m. and continue until completed.  L&A Testing will occur at the County's South Campus located at 400 E. Wyomissing Avenue, Mohnton, PA 19540.

**GENERAL COMMENTS FROM THE BOARD OF ELECTIONS REGARDING CURRENT ELECTION-RELATED ISSUES**

Chief Information Officer, Justin Loose, gave an update on the drop box camera installation.  Mr. Loose confirmed the cameras should be operational by the time drop boxes open.  The final cost of this project is about $3,000.

Commissioner Barnhardt and Commissioner Leinbach thanked Justin and his team, as well as DES staff who secured the equipment.

Commissioner Barnhardt addressed a Reading Eagle letter to the editor, and clarified that sheriff's deputies will not be asking voter's names at the drop boxes.

Commissioner Barnhardt also announced there will be two available parking spots in from of the Services Center building for voters who are dropping off ballots. He also announced the location of ballot tabulation for the 2022 General Election.  Ballot tabulation will occur at the Sam Building, 19 N. 6th Street.  Observers are able to attend.

2

## CITIZEN COMMENT

Don Bogusky of Centre Township asked how many observers are allowed at the tabulation, COO Ron Seaman confirmed 3 observers per party are allowed at a time.

Debbie Noel of Robeson Township thanked the Board for the parking availability outside the Services Center.

Zelda Yoder of Reading asked whether the Election office is checking dates on ballots that may be flipped citing that some people's country of origin may write a date differently.

## ADJOURNMENT – 11:54 A.M.

3

**[J-85-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| DAVID BALL, JAMES D. BEE, JESSE D. DANIEL, GWENDOLYN MAE DELUCA, ROSS M. FARBER, LYNN MARIE KALCEVIC, VALLERIE SICILIANO-BIANCANIELLO, S. MICHAEL STREIB, REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, AND REPUBLICAN PARTY OF PENNSYLVANIA,<br><br>Petitioners<br><br>v.<br><br>LEIGH M. CHAPMAN, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF THE COMMONWEALTH, AND ALL 67 COUNTY BOARDS OF ELECTIONS,<br><br>Respondents | : No. 102 MM 2022<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PER CURIAM**                    **DECIDED:  November 1, 2022**

AND NOW, this 1st day of November, 2022, upon review of the briefs of the parties and *amici*, the Petitioners' request for injunctive and declaratory relief is granted in part and denied in part.  The Pennsylvania county boards of elections are hereby **ORDERED** to refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes.  *See* 25 P.S. §3146.6(a) and §3150.16(a).

The Court is evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. §10101(a)(2)(B).

We hereby **DIRECT** that the Pennsylvania county boards of elections segregate and preserve any ballots contained in undated or incorrectly dated outer envelopes.

The Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania have standing.  Petitioners David Ball, James D. Bee, Jesse D. Daniel, Gwendolyn Mae Deluca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Siciliano-Biancaniello, and S. Michael Streib are hereby **DISMISSED** from the case for lack of standing.

Opinions to follow.

Chief Justice Todd and Justices Donohue and Wecht would find a violation of federal law.

Justices Dougherty, Mundy and Brobson would find no violation of federal law.

**Forrest K. Lehman**

| | |
|---|---|
| **From:** | Marks, Jonathan <jmarks@pa.gov> |
| **Sent:** | Tuesday, November 1, 2022 6:50 PM |
| **To:** | Marks, Jonathan |
| **Subject:** | Important DOS Email re: Undated Ballots |
| **Attachments:** | J-85-2022pco - 105327594202667240.pdf |

| | |
|---|---|
| **Importance:** | High |

**Lycoming County Warning: This is an external email. Please exercise caution. Think Before You Click!**

Dear county election official,

Please be advised that the Supreme Court of Pennsylvania issued the attached order this afternoon directing county boards of elections to "refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes." The Court also directed that counties "**segregate** and **preserve** any ballots contained in undated or incorrectly dated outer envelopes."

This order means that you **must remember to do two things** as you pre-canvass and canvass absentee and mail-in ballots:

1. Segregate AND preserve these undated and incorrectly dated ballots; and
2. Do not count the votes cast on ballots with undated or incorrectly dated ballots

Warmest regards,

**Jonathan Marks** | Deputy Secretary for Elections and Commissions *(he, him, his)*
Office of the Secretary
302 North Office Building, Harrisburg, PA 17120
Office: 717.787.6458   Direct: 717.783.2035
dos.pa.gov | vote.pa.gov | Facebook | Twitter

[J-85-2022]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

DAVID BALL, JAMES D. BEE, JESSE D.    :   No. 102 MM 2022
DANIEL, GWENDOLYN MAE DELUCA,          :
ROSS M. FARBER, LYNN MARIE             :
KALCEVIC, VALLERIE SICILIANO-          :
BIANCANIELLO, S. MICHAEL STREIB,       :
REPUBLICAN NATIONAL COMMITTEE,         :
NATIONAL REPUBLICAN                     :
CONGRESSIONAL COMMITTEE, AND           :
REPUBLICAN PARTY OF PENNSYLVANIA,      :
                                        :
            Petitioners                 :
                                        :
                                        :
            v.                          :
                                        :
                                        :
LEIGH M. CHAPMAN, IN HER OFFICIAL      :
CAPACITY AS ACTING SECRETARY OF         :
THE COMMONWEALTH, AND ALL 67           :
COUNTY BOARDS OF ELECTIONS,            :
                                        :
            Respondents                 :

**<u>SUPPLEMENTAL ORDER</u>**

**PER CURIAM**

    **AND NOW**, this 5th day of November, 2022, the Court hereby supplements its per

curiam order dated November 1, 2022, wherein we directed, in part, that "[t]he

Pennsylvania county boards of elections are hereby ORDERED to refrain from counting

any absentee and mail-in ballots received for the November 8, 2022 general election that

are contained in undated *or incorrectly* dated outer envelopes."   (Emphasis added.)  For

purposes of the November 8, 2022 general election, "incorrectly dated outer envelopes"

are as follows:  (1) mail-in ballot outer envelopes with dates that fall outside the date range

of September 19, 2022, through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022. *See* 25 P.S. §§ 3150.12a, 3150.15, 3146.2a(a), 3146.5(a).

A True Copy Amy Dreibelbis, Esquire
As Of 11/05/2022

Attest: _Amy Dreibelbis_
Deputy Prothonotary
Supreme Court of Pennsylvania

# LUZERNE COUNTY BOARD OF ELECTIONS AND REGISTRATION

# SPECIAL MEETING FOR ADJUDICATION OF MAIL-IN BALLOTS WITH DEFICIENCIES &

## PROVISIONAL BALLOTS

### November 9, 2022 at 12:00 P.M.

### 3rd Floor, Courtroom A

### Penn Place Building

### 20 N. Pennsylvania Ave., Wilkes-Barre, PA 18701

### CALL TO ORDER

### PLEDGE OF ALLEGIANCE & MOMENT OF SILENCE

### ROLL CALL

### ADOPTION OF AGENDA

### PUBLIC COMMENT ON AGENDA ITEMS

This is an opportunity for members of the public to address the Board on matters listed on the agenda. (limited to 3 minutes & one comment time per person)

## AGENDA ITEMS - BOARD OF ELECTIONS & REGISTRATION

### 1. Adjudication

Process For each Category:

*Category/Number of Ballots in Category/ Election Code and Case

Law on Category/ Recommendation of Solicitor / Discussion by Board

Members/ Comments by Party Representatives / Vote by Board Members

### A. Mail-in Ballots Set Aside Due to Death of Voter Prior to Opening of Polls

### B. Outer Envelope

-No Outer Envelope

-No Signature

-Bad Affirmation (Wrong Name, No Witness for "X")

-No Date

-Wrong Date (Date Out of Range)

APP_01152

No Date-174

Solicitor-current court decision is to reject but segregate; parties agree

8 are found with date, 1 date out of range

Alyssa Fusaro moved to reject the 144 with no date 2nd Danny Schramm

Audrey Serniak yes, Alyssa Fusaro yes, Jim Mangan yes, Danny Schramm yes,

Denise Williams yes; motion passes

Ballots will be segregated

Denise Williams moved to accept 8 ballots with valid date 2nd Jim Mangan

Alyssa Fusaro yes, Jim Mangan yes, Danny Schramm yes, Audrey Serniak yes,

Denise Williams yes; motion passes

Wrong Dates-40

Solicitor-reject but segregate; date range is 9/19/22-11/8/22

PJ Pribula objected to Denise Williams's comments that she doesn't believe the dates to be material; comments are out of order

30 wrong dates, 5 good dates
Jim Mangan moved to accept the 5 with good dates 2nd Danny Schramm Jim Mangan yes, Danny Schramm yes, Audrey Serniak yes, Alyssa Fusaro yes, Denise Williams yes; motion passes
Denise Williams moved to reject the 30 with wrong date 2nd Jim Mangan Danny Schramm yes, Audrey Serniak yes, Alyssa Fusaro yes, Jim Mangan yes, Denise Williams yes; motion passes
Denise Williams moved to accept 10/22 as a date Audrey Serniak 2nd

Audrey Serniak no, Alyssa Fusaro no, Jim Mangan no, Danny Schramm no, Denise Williams yes; 1 yes 4 no, motions fails
Denise Williams moved that 10/12/22 appears in range 2nd Jim Mangan Alyssa Fusaro no, Jim Mangan yes, Danny Schramm no, Audrey Serniak yes, Denise Williams yes; 3 yes 2 no, motion passes

Denise Williams moved to accept 09/31/22 2nd Jim Mangan
Jim Mangan yes, Danny Schramm yes, Audrey Serniak yes, Alyssa Fusaro no, Denise Williams yes; 4 yes 1 no, motion passes
Denise Williams moved to accept 10/26 2nd Audrey Serniak\
Danny Schramm no, Audrey Serniak no, Alyssa Fusaro no, Jim Mangan no, Denise Williams yes; 1 yes 4 no, motions fails
Denise Williams moved to accept Oct 2nd Danny Schramm
Jim Mangan no, Danny Schramm no, Audrey Serniak no, Alyssa Fusaro no, Denise Williams yes; 1 yes 4 no, motions fails
Ballots rejected due to wrong dates to be segregated
Outer Envelopes with Seal Issues-3
Solicitor-review for tampering and if none accept
Jim Mangan moved to accept the 2 with seal on top 2nd Danny Schramm Alyssa Fusaro yes, Jim Mangan

**APP_01153**

# COUNTY OF BUCKS

**Board of Elections**
**Meeting Minutes**
**Tuesday, November 15, 2022, at 10:30 AM**

1. **Present:**
   Robert J. Harvie, Chairman/Board Member
   Diane Ellis-Marseglia, Board Member
   Gene DiGirolamo, Board Member
   Gail Humphrey, Chief Clerk
   Amy Fitzpatrick, First Assistant County Solicitor
   Daniel D. Grieser, Assistant County Solicitor
   Tom Freitag, Election Director
   Margaret A. McKevitt, COO
   Jennifer Miller, Supervisor, Voter Registration
   Kelly Gale, Deputy Director, Board of Elections

   Commissioner Harvie called the meeting to order at approximately 10:30 AM in the First
   Floor Commissioners' Meeting Room. The meeting was open to the public and streamed
   to Facebook live.

2. **Public Comment – Agenda Items**

   Scott Vogin - E-Poll Books worked great. He feels some things need to be changed during
   training. Mr. Vogin believes his calls to the county regarding registration issues decreased
   75 to 80%.

   Eric Bruno, Middletown - Mr. Bruno discussed the improvements of democracy over the
   last 250 years. He would like the ballots in question to be included as they represent valid
   people behind pieces of paper that deserve to have their voices heard.

   Joe Cullen, Bucks County Republican Committee - He extended his gratitude to the Board
   of Elections and the staff on this election cycle. He appreciates all of the work and
   transparency and thanked the staff.

   Shohin Vance on behalf of Joe Hogan, candidate for 142nd District in the PA General
   Assembly - Mr. Vance expressed his position regarding the segregated mail-in ballots. The
   ballots with declaration deficiencies need to be set aside as instructed by the State Supreme
   Court. He believes the same is true for naked ballots. According to statute, unsealed
   secrecy envelopes render ballots defective. Mr. Vance is requesting that this be kept in
   mind as this is not merely about technicalities or voter mistakes as the secrecy requirement
   was born out of the state constitutional guarantee of the right to secrecy in voting. In
   addition, the 21 ballots that were delivered by one single designated agent on behalf of 21
   voters in the 142nd District is a violation of the Election Code and Department of State
   guidance, and he requests those ballots be set aside.

<u>Matt Hoover, Bucks County Democratic Committee</u> – Mr. Hoover discussed the materiality provision as it relates to setting aside votes for technicality issues. When a vote is set aside for a technical issue, the question must be asked if it is being set aside for a material reason specific to the voter qualification. If the answer is "no" that would preempt state law and the PA Supreme Court decisions. Given the constraints in place by the PA Supreme Court, Mr. Hoover is requesting that the Board decide today and say, "but for this, we would count these votes" and that you believe these issues are not material specific to qualification and that you would have to count these votes looking at the Voting Rights Act. Mr. Hoover is requesting that the Board be consistent with previous decisions that were made regarding unsealed secrecy envelopes.

<u>Amy McGaren, Doylestown Township</u> - Ms. McGaren is here as a concerned citizen and a volunteer poll greeter for many years. She feels that every vote should be counted.

<u>Alex Fraoli</u> – Mr. Fraoli believes that everyone should be heard, and all provisional ballots counted.

<u>David Devoir, Middletown Township</u> – Mr. Devoir is a member of the Middletown Township Human Relations Commission. He is here to urge the Board to count every vote from every registered voter regardless of any minor technicality on a paper ballot. Over 20% of the residents in Bucks County are disabled. He believes that if you don't count their votes because of a minor technicality, you are disenfranchising those voters.

<u>Kevin Greenberg, on behalf of the PA Democratic Party and the Bucks County Democratic Committee</u> – Mr. Greenberg commended the Board and staff on a well-run process and for standing up for voter rights. He would like the Board to count these votes that are purely ministerially mistaken. He believes the materiality provision is clear. He stated there is no binding law from the PA Supreme Court with regard to counting these votes, but there is persuasive law from the Third Circuit and the materiality provision applies as it relates to dates. He is also urging that the 21 ballots from nursing home residents be counted.

<u>Martin Raffle, Middletown Township, 142nd Legislative District</u> – Mr. Raffle is here representing his veteran father. He believes our right to vote is probably our most precious freedom. Mr. Raffle is asking to protect our freedom to vote and make sure all legitimate votes are counted in this election.

<u>James Del Rio, Sr., Majority Inspector of Elections in Buckingham Upper 3 and a veteran</u>– He is asking for clarification on how candidates in Buckingham Upper 3 pulled over 100% of the vote according to the data he printed from the SURE System. The E Poll Books were efficient except when you could not find the voters in there. He said those missing names were in the blue book and that his red bag was missing from his cage. He said 9 out of 10 provisional ballots were first time voters and they had to vote provisionally. Judge of Elections from Doylestown 1 asked him to share that she had a similar experience.

<u>Magdalena Shar, Resident of Middletown Township, Langhorne</u>. Ms. Shar expressed that counting every vote and permitting every voice to be heard is the very core and foundation of our democracy. She believes we need to make it easier for people to vote and not more difficult.

<u>Adam Bonan, on behalf of candidate Mark Mafa</u> - Mr. Bonan praised the Board and staff on a well-run election.  As to the undated and incorrectly dated ballots, he believes there are two other areas of law that need to be taken into consideration, and to use as persuasive reasoning to count these ballots, the Americans with Disabilities Act and the State Constitution's Free and Equal Elections Clause.  As to the unsealed secrecy envelope issue, he feels we need to determine if the voter's private choices have not been maintained through the process.

<u>James Mead, Lower Makefield Township</u> – He thought the process was great.  He is requesting a proper definition of "out of range" date, and to eliminate dates as they have no value in the process in terms of validating a voter's right.  He believes the secrecy envelope should be sealed, but it is possible it was inadvertently opened and is asking that the Board look into that.  He believes the 21 ballots from the nursing home residents should be looked at in more simple terms.

First Assistant County Solicitor, Amy Fitzpatrick, explained that the out-of-range dates for mail-in ballots is defined as September 19, 2022 to November 8, 2022, and the absentee ballots are August 30, 2022, through November 8, 2022.

Commissioner Harvie offered the following comments in response to public comments: The Board of Elections can't speculate as to what was printed from the SURE System showing candidates receiving more than 100% of the vote.  The Board of Elections uploaded data provided by the Department of State to assemble the E Poll Books, but they did not receive the most up-to-date list of voters from the Department of State and as a result there were approximately 1,500 voters who had registered or made some type of change and should have been in the E-Poll Book but were not.  The Board of Elections' staff researched all of the provisional ballots.

Amy Fitzpatrick reported there was an Executive Session of the Board of Elections on November 14, 2022, to discuss pending litigation and to receive information from members of the Law Department.

**3.  <u>Approval of Meeting Minutes</u>**

Commissioner DiGirolamo made a motion to approve the September 26, 2022, Meeting Minutes, with second by Commissioner Marseglia.  The motion passed unanimously.

**4.  <u>Discussion of the Status of Ballots Segregated During the November 8, 2022, General Election</u>**
   **a.  <u>Declaration Deficiency</u>**

      **i.  <u>No Signature – envelopes that lacked a signature</u>**
         The Election Code and case law are clear that a signature is required.  The Board of Elections voted on May 25, 2021, to reject unsigned ballots going forward, but has continued to receive information about these ballots and to vote on them for voter education and election transparency purposes.  There was a total of 79 unsigned ballots in this election.  Seven of the ballots were

missing the signature, and 72 were missing the signature and the date. The recommendation is to reject these ballots. Commissioner DiGirolamo made a motion to reject the 79 ballots missing signatures, with second by Commissioner Marseglia. The motion passed unanimously.

### ii. Undated and Incorrectly Dated

There have been significant legal challenges related to dating ballots. The most recent state Supreme Court Order in the case, Ball v. Chapman, required that undated and incorrectly dated ballots be set aside and that Boards of Election refrain from counting these ballots. The Department of State issued guidance advising counties to set aside these ballots and not include them in their count. There is an open question as to whether rejecting these ballots for technicalities violates the materiality clause of the Voting Rights Act of 1964. The PA Supreme Court reached a split decision on this issue. The Third Circuit concluded this would violate the materiality clause. The Supreme Court vacated that decision in October. In May 2022, when the Board voted to count undated and incorrectly dated ballots its decision was supported by the Third Circuit decision. That decision has since been vacated.

There was one ballot received and set aside dated October 2022 with no day listed. The Board of Elections is able to ascertain what day the ballot was mailed and what day it was received. The entire month of October is included in the date range in the Court's Order. Commissioner Marseglia made a motion to count the one ballot dated October 2022, with second by Commissioner DiGirolamo. The motion passed unanimously.

There are 215 undated ballots, and the recommendation is to refrain from counting these undated ballots pursuant to the PA Supreme Court's Order. Commissioner Marseglia adopted the motion stated by Amy Fitzpatrick to set aside and refrain from counting the undated and incorrectly dated ballots pursuant to the State's Supreme Court Order. Absent that Order, the Board would direct the Board of Elections to count and process the undated and incorrectly dated ballots, with second by Commissioner Harvie. The motion was opposed by Commissioner DiGirolamo. The motion passed 2-1.

Commissioner DiGirolamo made a motion to reject the undated and incorrectly dated ballots. The motion was not seconded and failed.

There are 215 undated ballots and 154 incorrectly dated ballots minus the one ballot dated October 2022 which the Board voted to count.

### b. Secrecy Envelope Deficiency
#### i. No Secrecy Envelope
There are 492 ballots missing a secrecy envelope. The Election Code and case law are clear that ballots not enclosed in the secrecy envelope must be

**Fayette County Election Board Meeting**
Tuesday, November 15, 2022, at 1:00 pm
This meeting will be held in person and will slow be viewable on Zoom.
To join this meeting, go to http://us06web.zoom.us/j/8438388411

1. Silent Prayer

2. Pledge of Allegiance

3. Roll Call

4. Public Comment of Agenda Item

5. Consider authorizing an additional mileage payment, based on mileage from their polling place to the Election Bureau, to all Judges of Election who had to make two trips to pick up pollbooks prior to the November 8, 2022 General Election due to printing delay in the state SURE system.

6. Make determination as to which votes are to count for absentee/mail-in ballots submitted with errors on the Declaration Envelope for the November 8, 2022 General Election.

7. Make determination as to which votes are to count for the Provisional Ballots cast at the November 8, 2022 General Election.

8. Public Comment

9. Adjournment

A meeting of the Fayette County Election Board was held on November 15, 2022, at the Fayette County Election Bureau, 2 West Main Street, Suite 111, Uniontown, PA 15401, at 1:00 pm.

**Silent Prayer**

**Pledge of Allegiance**

**Roll Call**

**In attendance-**

Dave Lohr – arrived at 1:12 pm
Vincent Vicites
Scott Dunn
Sheryl Heid, Solicitor
Marybeth Kuznik, Director
Billie Jo Guthrie, Deputy Director
Janice Lake, Election Technology Manger

Meeting called to order by Vincent Vicites at 1:09 pm

**Public Comment of Agenda Item**
None

**Consider authorizing an additional mileage payment, based on mileage from their polling place to the Election Bureau, to all Judges of Election who had to make two trips to pick up pollbooks prior to the November 8, 2022, General Election due to printing delay in the state SURE system.**

A **motion** was made by Scot Dunn and seconded by Vincent Vicites to approve additional mileage pay.

| | |
|---|---|
| Dave Lohr | yes |
| Scott Dunn | yes |

**Motion passed**

**Make determination as to which votes are to count for absentee/mail-in ballots submitted with errors on the Declaration Envelope for the November 8, 2022, General Election.**

A **motion** was made by Scott Dunn and seconded by Vincent Vicites to count the 76 cured ballots and keep them segregated.

| | |
|---|---|
| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

A **motion** was made by Scott Dunn and seconded by Vincent Vicites to count all undated and incorrectly dated ballots with the date range of September 19, 2022, through November 8, 2022, for mail-in ballots and date range August 30, 2022, through November 8, 2022 for absentee ballots and keep them segregated.

1

| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

**A motion** was made by Scott Dunn and seconded by Vincent Vicites to not count ballots outside the date range listed in court order dated November 5th other than signature and keep them segregated.

| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

Marybeth said that two ballots were received at the election through the mail with tape on them, the election bureau was not able to get in contact with the voters to see if the tape was put on the envelope by the voter. Does the Election Board want the ballots to be counted?

**A motion** was made by Scott Dunn and seconded by Vincent Vicites to count the two ballots with tape on them.

| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

**Make determination as to which votes are to count for the Provisional Ballots cast at the November 8, 2022, General Election.**

### Full Count

#### *Issued Absentee/Mail-In Ballot not received by voter*

1. Anthony Michael Williams – Registered and voted Provisional Ballot in Belle Vernon Borough.

2. Thomas B. Broadwater - Registered and voted Provisional Ballot in South Union Township, District 2. Stated he didn't apply for a ballot and never received one; however, he is on the Permanent Status.

**A motion** was made by Scott Dunn and seconded by Vincent Vicites to accept the ballots.

| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

2

**APP_01160**

Marybeth said she has three ballots that could be in the date range, but part of the date is missing.

1. Signature with the date as 10-no day -2022.  Post marked October 31, 2022.
2. Friday November 4th no year. Post marked November 4, 2022
3. November 3rd no year. Post marked November 3, 2022

A motion was made by Scott Dunn and seconded by Vincent Vicites to accept the three ballots.

| | |
|---|---|
| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

Marybeth has list of all the cured and uncured ballots.

5 uncured wrong signatures
32 uncured no date
7 uncured wrong date on outside envelope
19 uncured in range
6 cured signed wrong envelopes
44 cured wrong date
20 cured undated

**Discussion**

Marybeth will work on ways to improve on getting poll workers trained.

**Adjournment**

A motion was made by Scott Dunn and seconded by Vincent Vicites to adjourn.

| | |
|---|---|
| Dave Lohr | yes |
| Vincent Vicites | yes |
| Scott Dunn | yes |

**Motion passed unanimously**

**Meeting adjourned at 1:29 pm**

22

1    CHAIRPERSON DEELEY:  Good

2  morning.  The Return Board for the 2022

3  General and Special Election has reconvened.

4         First, I will preserve the order

5  and decorum of these meetings.  Everyone in

6  attendance should be on notice that shouting

7  out or interrupting the proceedings will not

8  be tolerated.  Those who violate this will

9  be asked to leave.  The Sunshine Act permits

10  anyone attending a public meeting to object

11  to a perceived violation at any time during

12  the meeting.  If you choose to do so, please

13  succinctly state your objection.  Objecting

14  is not an opportunity for speechmaking.

15         We will now move to public comment.

16  Commenters shall state where they live or if

17  they are not a resident of Philadelphia that

18  they are a Philadelphia taxpayer, or since

19  this is the Return Board, which candidate

20  they represent.

21         Public comment is not an

22  opportunity for dialogue or Q&A.  It is

23  public comment, a chance for you to tell us

24  what you think.  Each speaker shall have two

EXECUTIVE SESSION AUDIO
11/18/2022

1          COMMISSIONER BLUESTEIN:

2    Second.

3          CHAIRPERSON DEELEY:

4    Commissioner Bluestein, please call the

5    roll.

6          COMMISSIONER BLUESTEIN:

7    Commissioner Deeley?

8          CHAIRPERSON DEELEY:  Aye.

9          COMMISSIONER BLUESTEIN:  I

10   vote aye.  Commissioner Sabir?

11         COMMISSIONER SABIR:  Aye.

12         CHAIRPERSON DEELEY:  The

13   motion to amend the agenda has passed

14   unanimously.

15         Before we move on to the mail

16   ballot sufficiency determinations, because

17   the subject of undated and incorrectly-dated

18   ballots are such a large problem there are

19   some facts that I would like to enter into

20   the record.

21         The Board received 2,143 undated

22   mail-in ballots and 460 mail-in ballots that

23   are incorrectly dated based on the Supreme

24   Court's November 5th order.  We have

APP_01162a

1   conducted an analysis of those ballots which

2   reflects the impact of the date requirement

3   on certain groups of voters.

4           First, as to age, the median age of

5   voters who submitted undated ballots is 64

6   years old and the median age of voters who

7   submitted misdated ballots is 66 years old.

8   By comparison, the median age of registered

9   voters in Philadelphia is 43.  Looked at

10  more closely, 74.5% of undated ballots were

11  submitted by voters age 50 or older and

12  77.2% of the misdated ballots were submitted

13  by voters age 50 or older.

14          At age 60 or older, those numbers

15  are 60.9% for undated ballots and 64.1% for

16  misdated ballots.  Over a third of the

17  undated and misdated ballots were submitted

18  by voters over 70 years of age, 37.5% for

19  the undated, and 40.9% for the misdated.

20  14.1% of the undated ballots were submitted

21  by voters 80 years or older and 13.9% of the

22  misdated ballots were submitted by voters in

23  this age group.

24          Voters age 90 or older submitted 57

1  undated ballots and 15 misdated ballots.

2  Importantly, these percentages all are

3  significantly higher than the percentage of

4  Philadelphia's registered voters that these

5  age groups represent.  For example, nearly

6  two-thirds of undated or misdated ballots

7  were submitted by people age 60 or older

8  even though people age 60 or older only

9  represent 22% of Philadelphia's population.

10          The Board has prepared this

11  information in a table providing greater

12  detail which I will now move into the

13  record.  In addition, the Board has reviewed

14  the distribution of these ballots across

15  Philadelphia and that analysis suggests that

16  this issue disproportionately impacts

17  certain Philadelphia communities.  These

18  include areas with higher poverty rates,

19  lower rates of educational attainment, and

20  minority communities.

21          The Board is preparing maps

22  reflecting this information which we will

23  post on the website.  Thank you.  I now call

24  on John Hansberry to present on the mail

1  members of this board join us in that

2  request.  Thank you.

3              CHAIRPERSON DEELEY:  Thank

4  you.  Is there anyone else here who would

5  like to offer comment on undated ballots or

6  anyone here representing candidates to offer

7  argument?

8              (No response).

9              CHAIRPERSON DEELEY:  John, is

10  there any reason to believe that anyone

11  other than the voters listed on the

12  declaration envelopes voted those ballots?

13              MR. HANSBERRY:  No, there's

14  not.

15              CHAIRPERSON DEELEY:  Has

16  there been any fraud or irregularity being

17  alleged?

18              MR. HANSBERRY:  No.

19              CHAIRPERSON DEELEY:  Are all

20  these voters registered and eligible to vote

21  as to any of these ballots?

22              MR. HANSBERRY:  Yes.

23              CHAIRPERSON DEELEY:  So the

24  voter only failed to add the date?

EXECUTIVE SESSION AUDIO
11/18/2022

```
 1                    MR. HANSBERRY:  That is
 2    correct.
 3                    CHAIRPERSON DEELEY:  Were all
 4    these ballots received by Election Day at
 5    8:00 p.m.?
 6                    MR. HANSBERRY:  Yes.
 7                    CHAIRPERSON DEELEY:  When
 8    were the ballots first made available?
 9                    MR. HANSBERRY:  October 10th.
10                    CHAIRPERSON DEELEY:  Are the
11    correspondence codes for all the ballots
12    from the general -- 2022 General Election?
13                    MR. HANSBERRY:  Yes.
14                    CHAIRPERSON DEELEY:  So there
15    is no question that the board knows that all
16    of these ballots were signed between when
17    they were sent by the board and 8:00 p.m. on
18    Election Day, correct?
19                    MR. HANSBERRY:  Yes.
20                    CHAIRPERSON DEELEY:  First, I
21    want to thank the Philadelphia voters who
22    have shared their efforts and experiences
23    with the mail-in voting process with us
24    today in person and by e-mail.  I have
```

1 always maintained that whether or not the

2 voter writes the date on the envelope is not

3 material in determining whether or not such

4 individual is qualified under state law to

5 vote in such election.

6          We know that these voters are

7 qualified electors.  We know when the

8 ballots were printed and mailed out.  We

9 know when we received the ballots back so we

10 know what possible dates these could've been

11 from.  Time machines do not exist.  Inside

12 those envelopes are ballots that contain the

13 voice of Philadelphia voters.  Those voices

14 should be heard.

15          I disagree with the Supreme Court

16 of Pennsylvania's orders of November 1, 2022

17 and November 5, 2022 but they have

18 preemptively ordered all Pennsylvania

19 counties to refrain from counting these

20 ballots which erodes the quasi judicial

21 powers that each county Board of Elections

22 has to weigh facts and make decisions.  But

23 it's also clear that the path to counting

24 these ballots is not through the state

federal law or otherwise that the Board of
Elections then count such ballots and
include them in the amended computation and
certification of returns.

COMMISSIONER BLUESTEIN:
Chairwoman, may I be recognized?

CHAIRPERSON DEELEY:  Yes.

COMMISSIONER BLUESTEIN:  As
I've said before, I want to make very clear
again a handwritten date on the declaration
envelope is absolutely immaterial to whether
or not that ballot should be counted.

And anybody who is happy about not
counting voters' votes that were
legitimately cast by eligible voters should
take a serious look in the mirror and think
about why they're in this to begin with.
And with that, I second the motion.

CHAIRPERSON DEELEY:
Commissioner Bluestein, please call the
roll.

COMMISSIONER BLUESTEIN:
Commissioner Deeley?

CHAIRPERSON DEELEY:  Aye.

## ABSENTEE BALLOT INSTRUCTIONS FOR MILITARY AND OVERSEAS VOTERS

The Berks County Board of Elections records indicate that you are either a Military or Overseas voter who has requested an absentee ballot for this election.  If this is not correct contact the Berks County Election Board at 610-478-6490.

1. Mark your ballot in SECRET (unless you are entitled to and are receiving assistance).
2. Use blue or black ink to vote the ballot.  Completely fill in the oval to the left of each candidate or selection you wish to vote. Do not make an X or ✓.
3. To vote for a person whose name is not on the ballot, completely fill in oval to the left of the word "Write-In" then write or paste his or her name in the blank space provided for that purpose.
4. Use the same pen for all markings you place on the ballot.
5. Fold the voted ballot and place it in the white envelope marked. "OFFICIAL ABSENTEE BALLOT" and seal.
6. Place this envelope in the larger second envelope addressed to your county elections office.
   a. Fill out the "ABSENTEE ELECTOR'S DECLARATION" on the back of this envelope with your name and address.
   b. **Be sure to sign where indicated.  Your ballot will not be counted without a signature.**
7. Seal and mail or return to the County Board of Elections.


**REMINDER:  A military or overseas voter's ballot must be mailed no later than 11:59 p m. on the day before the election and received in  the office by 5:00 p.m. on November 15, 2022.**

---

WARNING:    IF YOU ARE ABLE TO VOTE IN PERSON ON ELECTION DAY, YOU MUST GO TO YOUR POLLING PLACE, VOID YOUR ABSENTEE BALLOT AND VOTE THERE.

---

# Voting by mail is *easy* and *secure!*

Return your ballot as early as possible.  Your ballot must be received by your county board of elections by 8 p.m. on Election Day, November 8, 2022.

## Instructions to Voters

WARNING:  IF YOU DO NOT FOLLOW THESE INSTRUCTIONS, YOUR BALLOT MAY BE REJECTED.

1. <u>Mark your ballot</u> - Verify your selections carefully.

2. <u>Pack and seal it properly</u>
   - o  Place your marked ballot in the white secrecy envelope that says **"Official Election Ballot"** and seal it. Do not place any mark, text, or symbol on the secrecy envelope marked **"Official Election Ballot"**.
   - o  Place the **"Official Election Ballot"** secrecy envelope in the pre-addressed return envelope and seal it.

3. <u>Sign and date the pre-addressed return envelope</u>
   - o  **Sign** and write **today's date** in the Voter's Declaration section of the pre-addressed return envelope.  **YOUR BALLOT WILL NOT COUNT IF IT IS NOT SIGNED AND DATED. BE SURE TO SIGN ONLY <u>YOUR</u> BALLOT RETURN ENVELOPE!!!**

4. <u>Return your voted ballot</u>
   - o  By mail – Postage is pre-paid
   - o  In person—Drop your ballot off at your county board of elections, or another drop-off location designated by the board. Check the county website for times and locations.

### <u>ATTENTION:</u>

**If you plan to deliver your ballot in person**, you must deliver it yourself. If you have a disability that prevents you from delivering your own ballot, contact us immediately.

**If you lose your ballot or make a mistake**, contact us immediately.

**If you receive an absentee or mail-in ballot and return your voted ballot by the deadline**, you may not vote at your polling place on election day.

**If you are unable to return your voted absentee or mail-in ballot by the deadline**, you may only vote a provisional ballot at your polling place on election day, unless you surrender your absentee or mail-in ballot and the return envelope containing the Voter's Declaration to the judge of election to be voided and then vote by regular ballot.

---

**<u>Contact Information</u>**

**Berks County Election Services**

**633 Court Street, Services Center - 1st Floor**

**Reading, PA 19601**

**Phone: 610-478-6490**

**Hours: Monday to Friday, 8:00 a.m. to 5:00 p.m.**

---

**APP_01170**

# ¡Votar por correo es *fácil* y *seguro!*

Devuelva su papeleta lo antes posible.  Su papeleta debe ser recibida por la junta electoral de su condado antes de las 8 p.m. del día de las elecciones, 8 de noviembre de 2022.

## Instrucciones para los Votantes

ALERTA:  SI NO SIGUE ESTAS INSTRUCCIONES, SU PAPELETA PUEDE SER RECHAZADA.

1.  <u>Marque su papeleta</u> - Verifique sus selecciones cuidadosamente.
2.  <u>Empaque y selle su papeleta correctamente</u>
    - o  Coloque su papeleta en el sobre blanco de confidencialidad que dice **"Papeleta Electoral Oficial"** y séllelo.  No coloque ninguna marca, texto, o símbolo en el sobre de confidencialidad marcado **"Papeleta Electoral Oficial"**.
    - o  Coloque el  sobre de confidencialidad que dice **"Papeleta Electoral Oficial"** en el sobre de devolución pre-dirigido y séllelo.

3.  <u>Firme y feche el sobre de devolución</u>
    - o  **Firme** y escriba la **fecha de hoy** en la sección Declaración del Votante del sobre de devolución**.  SU PAPELETA NO CONTARÁ SI NO ESTÁ FIRMADA Y FECHADA.  ASEGÚRESE DE FIRMAR SOLAMENTE EL SOBRE DE DEVOLUCIÓN DE <u>SU</u> PAPELETA!!!**

4.  <u>Devuelva su papeleta votada</u>
    - o  Por correo – El franqueo es prepagado
    - o  En persona – Entregue su papeleta en la junta electoral de su condado u otro lugar de entrega designado por la junta. Consulte el sitio web del condado para conocer los horarios y ubicaciones.

### <u>ATENCIÓN</u>

**Si planea entregar su papeleta en persona**, debe entregarla usted mismo. Si tiene una discapacidad que le impide entregar su propia papeleta, contáctenos de inmediato.

**Si pierde su papeleta o comete un error**, contáctenos de inmediato.

**Si recibe una papeleta de voto en ausencia o por correo y devuelve su papeleta votada antes de la fecha límite**, no puede votar en su lugar de votación el día de las elecciones.

**Si no puede devolver su papeleta de voto en ausencia o por correo antes de la fecha límite**, solo puede votar una papeleta provisional en su lugar de votación el día de las elecciones, a menos que entregue su papeleta de voto por correo y el sobre de devolución que contiene la Declaración del Votante al juez de elecciones para ser anulado y asi votar por papeleta regular.

---

**<u>Información de contacto</u>**

**Servicios Electorales del Condado de Berks**

**633 Court Street, Centro de Servicios – Piso 1**

**Reading, PA 19601**

**Teléfono: 610-478-6490**

**Horario: lunes a viernes, 8:00 a.m. a 5:00 p.m.**

---

**Voter's declaration**

- I hereby declare that
  - I am qualified to vote in this election;
  - I have not already voted in this election;
  - I marked my ballot in secret.
  - I am qualified to vote the enclosed ballot.
- I understand I am no longer eligible to vote at my polling place after I return my voted ballot.
- However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the Judge of elections at my polling place.

**Declaración del votante**

- Por la presente afirmo que
  - reúno los requisitos para votar en estas elecciones;
  - no he votado aún en estas elecciones;
  - marqué mi papeleta de manera   secreta.
  - reúno los requisitos para votar con la papeleta adjunta.
- Comprendo que ya no seré elegible para votar en mi lugar de votación después de devolver mi papeleta con mi voto.
- Sin embargo, si el condado no recibe mi papeleta, comprendo que solo podré votar con una papeleta provisional en mi lugar de votación, a menos que le entregue mis materiales de votación al Juez de elecciones en mi lugar de votación para que los anule.

**Voter, sign or mark here (required) /
Votante, firme o marque aquí (obligatorio)**



**Today's date (required) / Fecha de hoy (obligatorio)**

For county election use only

Solo para uso del personal
electoral del condado

**To be completed by voter unable to sign their declaration because of illness or physical disability:**
I hereby declare that I am unable to sign my declaration for voting my ballot without assistance because I am unable to write by reason of my illness or physical disability. I have made or received assistance in making my mark in lieu of my signature.

**El votante que no pueda firmar su declaración debido a una enfermedad o discapacidad física debe completar lo siguiente:**
Por la presente declaro que no puedo firmar mi declaración para finalizar mi papeleta sin ayuda, ya que no puedo escribir debido a mi enfermedad o discapacidad física. He puesto mi marca o recibí ayuda para ponerla, en lugar de mi firma.

**Voter, mark here / Votante, marque aquí**



**Today's date (required) / Fecha de hoy (obligatorio)**

**Witness, address (street) / Testigo, dirección (calle)**

**Witness, address (city, zip code) / Testigo, dirección (ciudad, código postal)**

**Witness, sign here / Testigo, firme aquí**

---

BERKS COUNTY SERVICES
COUNTY BOARD OF ELECTIONS
633 COURT ST FL 1C
READING, PA 19601-9956
A.

Su papeleta electoral debe incluir todo lo siguiente para que se cuente:
☐ Usted firma y pone la fecha en la declaración del votante de su puño y letra
☐ Usted selle el sobre de confidencialidad (que dice "papeleta electoral oficial") con su papeleta adentro y lo coloca aquí

Your ballot must have the following to be counted:
☐ You sign and date the voter's declaration in your own handwriting
☐ You seal your ballot inside the secrecy envelope ("Official Election Ballot") and place it in here

**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL   PERMIT NO 2093   READING PA

POSTAGE WILL BE PAID BY ADDRESSEE

BERKS COUNTY SERVICES
COUNTY BOARD OF ELECTIONS
633 COURT ST FL 1C
READING, PA 19601-9956

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**APP_01172**

Berks - 00045

# CANVASSING BOARD INSTRUCTIONS

If any challenges made to applications for absentee or mail-in by 5 pm Friday, November 4, we need to pull these before canvassing starts on Election Day (and if the respective ballot come in on Election Day) and set them aside in a separate lockbox for a hearing TBD.  Such hearing will comply with 25 P.S. § 3146.8(g)(5).  Thereafter, any appeal and suspension of canvassing will comply with 25 P.S. § 3146.8(g)(6) and (7).

We need to make available to candidates (or their representative) or to party representatives a list of the names being canvassed each day.

We need to make sure any representative of any candidate (only one may be present at a time) or political party (only one may be present at a time) signs the confidentiality agreement during canvassing 7 am to 8 pm on Election Day.

***For Sarah and her staff

1.  BACKGROUND & TIMELINE
     A.     Objectives for processing of mail-in & absentee ballots are as follows:

          i.  Ensure only valid ballots that comply with the statute and/or case law decisions are counted

          ii.  Ensure only registered voters vote 1 time (either by mail/absentee or in person (normal ballot or provisional)

          iii.  Ensure damaged/unreadable (from scan perspective) ballots that would otherwise be valid are counted

     B.     Individual precincts will be canvassed in Canvassing Pods made up of:
          i.  Manager
          ii. List Person
          iii.  Verification Person (Phases 2 & 3)
          iv.  Processor(s)

     C.     Mail-in & Absentee ballots are processed in **3** distinct phases:

          i.  PHASE 1 – Election Day (Tuesday) 7 am to WHEN POLL BOOKS AND PROVISIONAL BALLOTS ARRIVE following the close of the polls at 8 pm ("Phase 1" will be Red bins) - **ONLY CANVASSING BALLOTS RETURNED PRIOR TO POLL BOOK PRINTING** *(this canvassing may extend further into Tuesday night/Wednesday morning depending on when this phase is completed)*
          DO NOT START PHASE 2 UNTIL PHASE 1 COMPLETE

ii.  PHASE 2 – Completion of Phase 1 – start canvassing ballots returned after poll book printing up to evening of Monday before Election ("Phase 2" will be Blue bins)

DO NOT START PHASE 3 UNTIL PHASE 2 COMPLETE

iii.  PHASE 3 – Completion of Phase 2 – start canvassing ballots returned on Election Day ("Phase 3" will be Green bins)

*THE PRIOR PHASE **MUST** BE COMPLETED BEFORE THE NEXT PHASE IS STARTED.*

2.  SUMMARY OF ROLES
    A.    Board of Election Member (BOEM)

        i.  Oversees and directs one or more Canvassing Pods

        ii. As a group, BOEM will make final decisions by majority vote on whether to count ballots that may appear not to comply with the law but also do not fit into standard reasons that cause ballots not to be counted

        iii.  If consultation is needed with Voter Registration or the Solicitor during the course of canvassing, the BOEM member should be the point of contact to seek assistance for the Canvassing Pod

    B.    Front End Deliverer

        i.  Prepares each precinct's Phase Color bin containing the following: Declaration Envelope (ballots), Transfer Sheet, List, Phase Color Folder, Yellow Folder, and manila envelope with precinct number for delivery of ballots to scanner (and poll book and provisional ballots, if any, in Phases 2 & 3) for pickup by the Canvassing Pods

        ii.  Counts the number of Declaration Envelope (ballots) in the Phase Color bins

        iii.  Completes on the Transfer Sheet the Precinct #, Line 1, and initials on the line (and when necessary, last name of BOEM)

C.   Manager

i.  Obtains Phase Color bin from central location, counts the number of Declaration Envelope (ballots) received and confirms it matches the number on the Transfer Sheet (Line 1); enter on Line 2 of the Transfer Sheet and initial where indicated
> IF NOT, RESOLVE THIS ISSUE WITH THE FRONT-END DELIVERER BEFORE PROCEEDING

ii.  Reviews Declaration Envelope for signature and date[1], checks for any other irregularities, and calls out name and date written on the Declaration Envelope by the voter next to their signature for the other members of the Canvassing Pod

iii.  Sets aside undated ballots or misdated ballots for separate processing

iv.  Completes Transfer Sheet

v.  Ensures that all tasks are completed for each Phase Color bin before passing the Phase Color bin to the Processor(s)

D.   List Person

i.  Verifies names are on the List when Manager calls out name and that the date called out is the same day or after the date the List shows that the ballot was mailed/provided to the voter

ii.  Alerts Manager to any names on the List that are not called and any names called out that are not on the List

iii.  Alerts Manager to any date not within the Phase Color's date range

iv.  Marks List according to instructions

E.   Verification Person

i.  Only works in Phases 2 & 3

ii.  Verifies that voter did not sign the poll book or vote a provisional ballot

iii.  Alerts Manager to any person who signed the poll book or voted a provisional ballot

---

[1] *The requirement to date and/or the issue of mis-dating ballots is currently under legal review by the courts.*

F.    Processor
    i.  Opens envelopes

    ii.  Inspects for secrecy envelopes and/or marks on secrecy envelops as to voter's identification, party identification or how they voted

    ii.  Flattens out valid ballots and inspects for any marks on ballots that identify the voter

    iii.  Counts ballots and completes Transfer Sheet according to instructions

    iv.  Delivers Phase Color bin to central location

G.    Back-End Receiver

    i.  Counts ballots and completes Transfer Sheet according to instructions

    ii.  Prepares the ballots, <mark>Yellow Folder</mark> and List for delivery to the scanner

    iii.  Prepares remainder of Phase Color bin for storage

H.    Solicitor

    i.  On Election Day, assists the Director of Elections, appears in court, if needed, and available to party representatives and watchers, as needed, to address questions

    ii.  Responds and answers any questions that BOEM may have while canvassing ballots


3.  CANVASSING INSTRUCTIONS
    A.    Universal to entire process

        i.  <u>DO NOT BE CREATIVE</u>.  There is no room for creativity or assuming or guessing when canvassing ballots
            This is a rigid process; the proper way to follow the process is outlined herein

        ii.  If you are unable to decide how to handle a ballot based upon these instructions (situation does not fit any scenario within these instructions):

            a.  If the BOEM is available, please start with BOEM, who can elevate to the Solicitor, if necessary; HOWEVER, if BOEM cannot resolve without assistance of the Solicitor, who is not available, and/or decision of other BOEM's, who are not available, then proceed as per b. below

<span style="color:red">b.  If BOEM and/or Solicitor, as applicable, is unavailable, mark Declaration Envelope with a <span style="background-color:yellow">**RED PEN**</span> indicating the reason you cannot process the ballot and place the ballot in the **black bin** with the sign reading "FURTHER PROCESSING NEEDED" (remember to include in count on Line 4 of the Transfer Sheet and initial where indicated)</span>

*Sarah Seymour, Director of Elections, will be managing Election Day/Provisional Ballots and other post-election matters; she is not available to address questions of this nature*

iii.  Please do not change roles to ones <u>you have not been trained on</u> (if you have been trained on multiple roles, remember to focus on that particular role's task when performing it)
> You may have some downtime; do not try to "help" others make it go faster if you have not been trained on that role

iv.  If more than 1 BOEM is present, they will work together to oversee the Canvassing Pods except when all three BOEMs are present and there are also 3 Canvassing Pods canvassing, in which case each BOEM will be in charge of a single Canvassing Pod only

v.  Each Canvassing Pod will process only 1 precinct at a time
> -Canvassing Pods must not ever intermix any materials and must maintain segregation of materials by precinct
> <u>*Do not move materials from first table to second table until the second table has been cleared*</u>

B.  <span style="color:red">Phase 1</span> – Summary of "Table 1" of the Canvassing Pod

i.  Front-End Deliverer prepares each precinct's Phase Color bin for pickup by the Canvassing Pods containing the following:  Declaration Envelopes (ballots), Transfer Sheet, List, Phase Color Folder, <span style="background-color:yellow">Yellow Folder</span>, and manila envelope with precinct number
> Any voters whose ID needed to be verified will be completed by Elections office staff before the bin is prepared

ii.  Canvassing Pod performs official check that the Declaration Envelopes (ballots) are on the List of those requesting ballots and official confirmation that "Declaration" is COMPLETED IN FULL <u>INCLUDING PROPER DATE</u>

<u>**VALID DATING FORMATS using November 4, 2022**</u>:

| | | | |
|---|---|---|---|
| 11/4/2022 | 11/4/22 | 11-4-2022 | 11-4-22 |
| 11/04/2022 | 11/04/22 | 11-04-2022 | 11-04-22 |
| 2022/11/04 | 2022-11-04 | 04.11.2022 | 4.11.2022 |
| 04.11.22 | 4.11.22 | 11/4 | 04-Nov-2022 |
| November 4, 2022 | November 4, 22 | Nov 4, 2022 | Nov 4, 22 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA STATE CONFERENCE OF
THE NAACP, *et al.*,

                *Plaintiffs,*

    v.

AL SCHMIDT, in his official capacity as Acting
Secretary of the Commonwealth, *et al.*,

                *Defendants.*

Case No. 1:22-cv-00339-SPB

## DECLARATION OF JEFFREY GREENBURG

Pursuant to 28 U.S.C. § 1746, I, Jeffrey Greenburg, hereby declare as follows:

1.    I have personal knowledge of the matters in this declaration and this is what I would testify to if called as a witness in Court.

2.    I am over eighteen years of age and am otherwise competent to testify.

3.    I have experience in elections administration and reform at the local, state, and federal level. For over 13 years, from 2007 until July 2020, I served as Director of Elections for the Mercer County Bureau of Voter Registration and Elections. As Mercer County Director of Elections, I was responsible for supervising all aspects of election administration in Mercer County, including compliance with the Pennsylvania Election Code relating to all aspects of voting and voter registration, including mail-in voting. In my role as Director of Elections, I oversaw

1

**APP_01178**

the first election in June 2020 after Pennsylvania adopted no-excuse mail-in voting in late 2019. Throughout my tenure, the Pennsylvania Election Code was my core resource, and I consulted it regularly during my time as an election official.

4.    In my experience, most election administrators have a shared set of professional values and sense of duty to make voting as safe and easy as possible. We want all eligible voters to vote and have their votes counted. It is why we do what we do.

5.    During my time as Mercer County Director of Elections, I also served as Pennsylvania's local representative on the U.S. Elections Assistance Commission Standards Board, as president and legislative chairman of the Western Pennsylvania Election Personnel Association, and as Mercer County's public information officer. I also served for six years as a member of the Election Reform Committee for the County Commissioners' Association of Pennsylvania, where I helped shape policy recommendations on behalf of counties for consideration by the Pennsylvania General Assembly. I also led the Commonwealth's first risk-limiting ballot audit pilot in 2019.

6.    I currently serve as the Senior Advisor on Election Administration at the Committee of Seventy, a non-partisan, non-profit organization that aims to improve the voting process and inform and engage citizens in Pennsylvania. My responsibilities include collaborating with the Pennsylvania Department of State, county election personnel, and national experts in the development of a training program and materials for county election personnel.

2

7.     Before accepting my position with the Committee of Seventy, I served as a Senior Advisor at The Voter Project, a non-partisan, non-profit organization dedicated to ensuring all Pennsylvania voters can cast a ballot in a safe, secure, and convenient way, including voting by mail. In that role, I provided election administration information to policy and government reform advocates, the media, and the public, and I also collaborated with a coalition of election stakeholders and participated in our Secure Election Task Force. And before advising at The Voter Project, I spent over a year working as the Regional Director for Election Support at The National Vote at Home Institute, a non-partisan, non-profit organization dedicated to ensuring the security of elections addressing the needs of voters, including and especially through voting by mail.

8.     A copy of my curriculum vitae is attached to this declaration as "Greenburg Exhibit 1." It is a true and accurate representation of my education and experience.

9.     I have never testified as an expert witness in any prior case.

10.     I am being compensated for my out-of-pocket expenses, plus a flat fee of $500 for my services in this case.

## Pennsylvania's Mail Ballot System

11.     In 2019, Pennsylvania adopted no-excuse mail-in voting, permitting all registered, eligible voters to vote by mail. This was a significant expansion for Pennsylvania voters because the absentee ballot system that existed before 2019, was open only to certain voters. In this declaration, I refer to mail and absentee ballots as

"mail ballots" for ease of reference, and because the relevant rules for voting and returning both kinds of ballots are largely the same. Where the rules are different, I refer to them separately. "No-excuse" mail-in voting simply means that any registered voter can vote by mail and a voter does not need to provide a reason for requesting a mail-in ballot; this is in contrast to absentee ballots, which are typically only available because a voter is unable to attend their polling place on Election Day for specific reasons, for example, work, military service or disability.

12.  Pennsylvania's adoption of no-excuse mail-in voting has improved voters' ability to participate in elections, allowing millions of voters to cast their ballots more easily and safely. Mail-in voting is convenient for individuals unable to vote in person due to illness, childcare, or work, as well as for individuals who simply don't want to vote in person. More than 2.6 million Pennsylvanians cast mail ballots in the 2020 general election, and more than 1.2 million mail ballots were cast in the 2022 midterm election. By comparison, only 260,000 voters cast absentee ballots in the 2016 general election, prior to the adoption of the no-excuse model.

13.  Mail-in voting is also secure and reliable. Based on my years of experience, my understanding is that any instances of fraud involving mail-in ballots are rare and isolated. While administering elections in Mercer County, I never observed any tampering or fraud involving mail ballots. Nor did I observe any tampering or fraud involving mail ballots in my role working on statewide election administration issues in Pennsylvania.

**APP_01181**

14.     There are safeguards in place to confirm voters' identities and help ensure voting by mail is secure in Pennsylvania. Pennsylvania voters must apply for a mail ballot. As part of the application, they must provide their name, address, and proof of identification to their county board of elections for verification. 25 P.S. §§ 3146.2, 3150.12. Voters also provide the information necessary for county election boards to verify that they are qualified to vote in Pennsylvania, meaning that they are at least 18 years old, have been a U.S. citizen for at least one month, have resided in the election district for at least 30 days, and are not incarcerated on a felony conviction. 25 Pa. C.S. § 1301.

15.     After a voter applies for a mail ballot, their county board of elections verifies their proof of identification, compares the information provided by the voter with information contained in a voter's record, and confirms that the voter is registered and qualified to vote. 25 P.S §§ 3146.2b, § 3146.8(g)(4), 3150.12b. The county's determination that a mail ballot applicant is qualified to vote is "final and binding" unless the voter's qualifications are subsequently and successfully challenged pursuant to specific provisions of Pennsylvania law. 25 P.S §§ 3146.2b, 3150.12b, 3146.8(g).

16.     Once the county board verifies the voter's identity and eligibility and accepts their application, it sends a mail-ballot package that contains a ballot, a secrecy envelope marked with the words "Official Election Ballot," and a pre-addressed outer return envelope. Voters also are legally able to conduct this process, described as in-person absentee voting, at the election office. 25 P.S §§ 3146.6(a),

3150.16(a). A declaration form is printed on the outer return envelope, with lines for a voter to sign and date.

17.     Voters do not have a particular time between when they get their ballot and Election Day that they must fill it out. Rather, a voter can mark their ballot, put it inside the secrecy envelope, and place the secrecy envelope in the return envelope at "any time" after receiving their mail-ballot package. 25 P.S. §§ 3146.6(a), 3150.16(a). The voter then delivers the ballot, in the requisite envelopes, by mail or in person to their county elections board.

18.     To be considered timely, a county board of elections must receive a mail ballot by 8 p.m. on Election Day. 25 P.S. §§ 3146.6(c), 3150.16(c).

19.     After receiving a mail ballot, county boards of elections date-stamp the envelope and log it in the Statewide Uniform Registry of Electors ("SURE") system, which is the computerized voter registration system that is used to generate poll books and track voting in Pennsylvania.

20.     County boards of elections are also responsible for creating and retaining official records of election results, including a copy of the returns that must be available for public inspection at the county election board's office. 25 P.S. § 3152. In my experience, it is common for county boards of elections to post election results on their county government's website, and county boards of elections also maintain hard copies of unofficial and official election results, for each precinct and county-wide results. If, at the conclusion of a post-election lawsuit, a court had ordered Mercer County to count ballots that had been set aside during canvassing while I was

the Director of Elections, I would have taken steps to update the vote totals in Mercer County's records of election results to reflect that ruling, including by preparing a supplemental report that reflected the final, updated vote totals for Mercer County's records. (For example, during my time as Mercer County's Director of Elections, I learned about an error in one race after the results had already been certified—in that instance, a printer error led us to omit write-in votes for a certain candidate—and I prepared a supplemental report to reflect the correct number of votes that the candidate received.)

## The Envelope Date Issue

21.    Since 2020, there has been controversy over mail ballots where voters forgot to write the date, or wrote the wrong date—like a birthdate—on the outer envelope's declaration form.

22.    The mail ballot statute states that a voter "shall … fill out, date and sign the declaration printed on" the envelope. 25 P.S. §§ 3146.6(a), 3150.16(a).

23.    In my experience as a county elections officer, not all ballot return envelopes look the same, with the organization of information and amount of wording on the envelope varying by county. Typically, however, the back of the outer return envelope recites the declaration and includes a line that says "date" or perhaps sometimes, "today's date." However, experience has shown that people regularly make paperwork mistakes, and that is something I have seen ring true in voting as well. Some voters sign the declaration form, but forget to hand write the date on the return envelope. And others may write an "incorrect" date, for example, a birthdate.

Or there may be some typo or inadvertent transposition in the date that the voter marked that renders the date "incorrect." Or a voter could also write the date using the international convention of putting the day before the month (i.e., 12/10/22 instead of 10/12/22) so that it appears "incorrect." Or a voter could leave out the year, or leave out the day. In my experience, entering a birthdate was the most common mistake we saw, and reversing the day and month in the date listed on the return envelope was not uncommon for overseas citizens.

24.     In my experience, counties would always count such "incorrect" dates as a matter of course, because the mistake was considered irrelevant. In my experience, county election administrators would typically reason that the statute only says "date" and therefore any date was sufficient, whether or not it was "correct." I am not aware of any county that took a different approach and refused to count a timely absentee or mail ballot on the basis of an "incorrect" date.

25.     My recollection of how county officials handled the return envelope dates is consistent with the position taken by the Pennsylvania Election Law Advisory Board,[1] which recently released a report that includes a recommendation about how the date requirement should be treated. That body, which is non-partisan and is composed of officials from across the political spectrum, recommended that "[f]ailure to sign the envelope['s date form]"—in other words, omitting the date—"or signing the envelope with a date that is not within the time period between the date the ballot

---

[1] I was previously nominated to serve on the Pennsylvania Election Law Advisory Board, although I ultimately was unable to do so because I left my role with Mercer County.

was received by the voter and when it was received by the county board of election shall not disqualify the ballot if the declaration is otherwise properly executed."[2]

26.   These types of errors or omissions around the handwritten date are common. I have seen the number 1% mentioned in news reports, and that appears roughly consistent with the raw numbers of affected ballots that I have seen reported in the 2022 elections, in the 2021 Lehigh County case where this issue was raised, and in 2020.

27.   Recent reporting indicated some of the reasons why voters made mistakes in writing the dates on their ballot return envelopes. For example, one article from the Pennsylvania Capital-Star explained that election observers have reported that voters seemed to be writing their birth dates, or using the wrong number for the month ("For example, if they signed the ballot on Oct. 10, they wrote 9/10 or 11/10, which put them out of the range of acceptance.").[3] These types of errors are consistent with the ones I have observed in my experience as an elections official.

28.   In the 2022 general election, thousands of mail ballots were affected by this issue. I understand that some, but not all, county boards of elections have submitted information about the affected ballots to Plaintiffs' counsel as of the date of my report. The responses that I have reviewed to date indicate that 9,926 voters

---

[2] http://jsg.legis.state.pa.us/resources/documents/ftp/publications/2023-01-11%20ELAB%20Mail-In%20Ballot%201.10.23.pdf

[3] https://www.penncapital-star.com/government-politics/technical-mistakes-secrecy-envelope-errors-led-to-lehigh-valley-mail-in-ballots-being-rejected/

across 65 counties were disenfranchised based on a missing or incorrect date on their mail-in ballot return envelope.[4]

29.     I am aware that some counties publicly released names of affected voters who omitted the envelope date or somehow misdated the envelope, including (but not limited to) Allegheny, Erie, and Philadelphia Counties.[5] Hopefully, some of these voters were able to cure their ballots or vote provisionally. But many voters are unable to cure ballots with a deficiency. This issue affects not only mail ballot voters but absentee voters who are unable to vote because of disabilities and medical issues or are simply out of town. These voters are especially unlikely to be able to cure at the last minute by rushing to the polls.

30.     Because votes were invalidated based on the technical shortcoming of not dating or misdating the return envelope, thousands of voters across virtually

---

[4] I have reviewed a summary table (attached as "Greenburg Exhibit 2") that Plaintiffs' counsel assembled to reflect the responses that county board of elections defendants have already submitted to Interrogatory Request Number 2, which stated: "State how many mail ballots You received in connection with the 2022 General Election that were signed and timely received but set aside and/or segregated because they lacked a handwritten date on the outer return envelope or showed a date on the outer return envelope that You deemed to be incorrect. If you allowed voters to correct or cure the envelope-date issue, specify whether your response includes ballots that were ultimately corrected or cured." The table includes data for the 65 counties that provided responses by February 23, 2023.

[5] At the time I finalized this report, those lists were still available at the following links: https://eriecountypa.gov/wp-content/uploads/2022/11/Undated-Ballots-PDF.pdf; https://eriecountypa.gov/wp-content/uploads/2022/11/Wrong-Date.pdf; https://vote.phila.gov/files/announcements/UndatedwithZip.pdf; https://vote.phila.gov/files/announcements/MisdatedwithZip.pdf; https://www.alleghenycounty.us/uploadedFiles/Allegheny_Home/Dept-Content/Elections/Docs/No%20Date.pdf; https://www.alleghenycounty.us/uploadedFiles/Allegheny_Home/Dept-Content/Elections/Docs/Incorrectly%20Dated.pdf.

every county in the Commonwealth were affected in the 2022 elections. If this practice continues, no doubt the same will be true in future elections as well.

31.     Based on my experience, I would expect senior citizens to be disproportionately affected by the date requirement. During my time as Mercer County Director of Elections, older voters (and voters with health issues) were among the most common demographics of people who voted by mail.

32.     The data provided by the county boards of elections in this lawsuit confirms that older voters were disproportionately affected by the date requirement in the 2022 general election.[6] This spreadsheet compiles the county board of elections defendants' responses and productions that contain the date/year of birth of the disenfranchised voters in each county. Of the 4,319 affected voters whose dates or years of birth were included in the data provided by the county boards of elections, more than half—somewhere between 52.7% and 54.9%—were age 65 or older. That is, we know at least 2,276 voters were age 65 or older, with an additional 94 voters born in the year 1957 but no month/day provided (so, likely age 65 by the November 7, 2022 election), and 1,949 voters were younger than age 65. In these 13 counties alone, 90 of the affected voters were born in the 1920s, and as many as nine affected voters may have been age 100 or older (born in 1922 or earlier).

---

[6] I have reviewed a summary table (attached as "Greenburg Exhibit 3") that Plaintiffs' counsel assembled to reflect the county board of elections defendants' responses and productions that contain the date or year of birth of voters whose ballots were not counted because of the date requirement in each county. The spreadsheet currently includes date or year of birth for 13 counties that provided the affected voters' date or year of birth by February 23, 2023: Allegheny, Blair, Bradford, Chester, Crawford, Franklin, Juniata, Lehigh, Montgomery, Philadelphia, Schuylkill, Sullivan, and Wyoming.

### The Relevance (or Lack Thereof) of the Envelope Date

33.     It would be very unfair to invalidate voters' votes because of an omitted or "incorrect" envelope date since the handwritten envelope date has absolutely no bearing on whether the ballot was timely or whether the voter is qualified.

34.     The handwritten date on the envelope is not used to determine whether a mail ballot was timely received by the county board of elections. The county boards of elections know when the ballot is received because they are the ones who receive it. Upon receipt, they date-stamp the return envelope and enter the information into the SURE system. As long as the ballot is received by 8 p.m. on Election Day, it is timely under the law. It would make little sense to use the handwritten date on the envelope to try to measure timeliness, because the handwritten date cannot be independently verified. The actual time of receipt, as shown by the date-stamp, can.

35.     Because the handwritten date is not used to determine if the ballot was received on time, the lack of a date, or an "incorrect" date, does not present any concerns about "backdating" envelopes or otherwise counting untimely ballots. It is literally impossible for the handwritten date to result in an untimely ballot being counted.

36.     The handwritten envelope date also doesn't determine whether you signed the envelope at the right time. The Election Code says that you can vote your ballot and return it at "any time" after receiving the ballot and prior to 8 p.m. on Election Day. Within that window, there is no "wrong" time to vote your ballot, assemble the envelopes, sign, or return it. Whatever date is or is not on the envelope,

if the ballot was received by 8 p.m. on Election Day then the envelope was *necessarily* signed at a proper time.

37.     Similarly, if a voter's ballot was timely received by 8 p.m. on Election Day, it is impossible that that the voter completed the ballot either before or after the date ranges provided by the Supreme Court of Pennsylvania. My understanding is that those date ranges attempt to capture the time period between when mail-in and absentee ballots become available to voters and the deadline by which they must submit their ballots. A voter cannot have received the mail-in ballot any earlier than their county made it available to them, and a voter whose ballot was timely received by 8 p.m. on Election Day cannot have completed their ballot after that deadline.

38.     That is why it also does not matter if a voter wrote an "incorrect" date, such as a birthdate, on the envelope. The voter *in fact* voted their ballot and signed the envelope at a proper time *no matter what date they write on the envelope.*

39.     The handwritten date on the envelope also is not used to determine whether a voter is qualified to vote. A voter's qualifications are determined by the county board of elections when the voter applies for a mail ballot. As I mentioned before (in paragraph 15), there is a specific process for challenging such determinations, and if there is no such challenge, the determination that the voter is qualified is final. At any rate, the handwritten date on the envelope has no bearing on whether a voter meets the age, citizenship, or residency requirements for voting, or whether the voter is currently incarcerated for a felony conviction. It does not

13

speak to any of the things that make you qualified to vote in Pennsylvania under state law.

40.     The handwritten date on the envelope also is not used to detect or prevent fraud. As already described, there is no wrong time to fill out and return a mail ballot before Election Day, and there is no way to "backdate" a mail ballot because the date-stamp from the board of elections conclusively shows it was timely received. The presence or absence of the date, or an incorrect date, reveals nothing about the voter's identity at all and so it cannot detect fraud. As noted earlier, election officials check the voter's qualifications at the time of application, including their proof of identification, none of which is determined by the handwritten date on the envelope. The date also has no effect on the counting of votes of persons who die, because votes cast by people who die before Election Day *already* do not count (which is why boards of elections check to see whether voters have died and remove those mail ballots without counting them). 25 P.S. § 3146.8(d).

41.     Disenfranchising voters because they handwrote an "incorrect" date on the return envelope, or because they left the date off, will mean that many indisputably qualified voters who voted by mail will have their votes invalidated based on a trivial and completely irrelevant paperwork mistake.

42.     When voters vote in person and make even much more significant mistakes on their paperwork, elections workers help them correct those errors rather than deny them their vote. For example, in my experience, if a voter signed on the wrong line in the poll book or committed some other paperwork error, we would help

them sign on the right line or otherwise take whatever corrective action necessary to get them a ballot. If a person had trouble with a ballot and made an error marking their ballot, we would give them a new one. And if a voter made an error on a provisional ballot or on the provisional ballot declaration envelope, we would let them correct it or give them a new one if necessary. The idea that, in the mail-in voting context, a person could be disenfranchised for a paperwork error like this, with no significance to anything about their qualification to vote, is inconsistent with the approach that applies to in-person voting, and inconsistent with the approach that election administrators are generally trained to take towards these issues, which is generally to help voters ensure that their ballots are counted.

    I declare under penalty of perjury that the foregoing is true and correct.


Executed this 23rd of February in West Middlesex, Pennsylvania.

Jeffrey Greenburg

## Official Notice of Election for Military and Overseas Voters

## County of Montour

### 2022 General Election (November 8, 2022)

This is an official notice of a General Election to be conducted on 11/8/2022 in Montour County. You may register to vote and request an official absentee ballot by using the Federal Postcard Application (FPCA), available at www.vote.pa.gov or www.fvap.gov. You may apply for an absentee ballot by submitting your FPCA by fax to (570) 271-3088, or by email to ddyer@montourco.org.

You may request an absentee ballot from this office at any time prior to a primary or election. However, if time does not permit you to receive and return an official absentee ballot, you are also entitled to vote using the Federal Write-in Absentee Ballot (FWAB). Military electors may also use the FWAB to register to vote and vote simultaneously.

You may use the FWAB to vote for **all** federal, state, and local offices, and ballot initiatives.

To vote, refer to the instructions and page 3 of the FWAB application.

To vote for offices or for ballot initiatives, write the names of candidates or ballot initiatives in the appropriate section of the FWAB. Under the **Federal Offices** heading, enter the name and political party of the federal candidate you choose. Under the **Other Offices** heading, enter the state or local office, name of candidate, and political party of the candidate you choose.

**NOTE:** The official list of candidates for nomination to public offices and election to party offices may be updated due to candidate withdrawals and litigation. This notice will be updated as the official list of candidates is being finalized.

**APP_01193**

MONTOUR000001

**GENERAL ELECTION BALLOT**

UNITED STATES SENATOR – Vote for One – All Precincts within Montour County

**JOHN FETTERMAN – DEMOCRATIC**

**MEHMET OZ – REPUBLICAN**

**ERIK GERHARDT – LIBERTARIAN**

**RICHARD L. WEISS – GREEN PARTY**

**DANIEL WASSMER - KEYSTONE**

GOVERNOR – Vote for the candidates of ONE party for Governor and Lieutenant Governor – All Precincts within Montour County

**JOSH SHAPIRO and AUSTIN DAVIS – DEMOCRATIC**

**DOUGLAS V. MASTRIANO and CARRIE LEWIS DELROSSO – REPUBLICAN**

**MATT HACKENBURG and TIM MCMASTER – LIBERTARIAN**

**CHRISTINA PK DIGIULIO and MICHAEL BADGES-CANNING – GREEN PARTY**

**JOE SOLOSKI and NICOLE SHULTZ - KEYSTONE**

REPRESENTATIVE IN CONGRESS –9th Congressional District – Vote for One – All Precincts within Montour County

**AMANDA R. WALDMAN – DEMOCRATIC**

**DAN MEUSER – REPUBLICAN**

REPRESENTATIVE IN THE GENERAL ASSEMBLY – 108th Legislative District – Vote for One – All Precincts within Montour County

**LYNDA J. SCHLEGEL CULVER - REPUBLICAN**

**APP_01194**

MONTOUR000002

# Federal Write-In Absentee Ballot

■ If you do not receive your absentee ballot in enough time to meet your state's deadlines, use this ballot as a backup. If you send in this ballot and receive your state's ballot later, you should fill out and return your state ballot as well, noting that you had previously sent in this ballot. Your election official will count only one ballot.

■ The following require you to register and request an absentee ballot before filling out this form: AL, AS, AR, CT, FL, GU, HI, ID, IL, IN, KS, LA, NH, NJ, NM, NY, PA, PR, RI, SD, TX, WI, WV, and WY. If your state or territory is listed, complete a Federal Post Card Application (FPCA) online at FVAP.gov

■ If you already registered and requested a ballot, send in the *Voter Information page* and the *Official Backup Ballot*.

■ Please be aware that some states will accept this form as registration and as an absentee ballot request for future elections.

## Use this form if you are:

- On active duty in the Uniformed Services or Merchant Marine
- An eligible spouse or dependent
- A U.S. citizen living outside the United States

# You can vote wherever you are. This is how.

1. Fill out your *Voter Information* page completely and accurately.

- Your U.S. voting residence address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your state of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address. DO NOT write a PO Box # in section 2.
- Most states allow you to provide a Driver's License number or the last 4 digits of your SSN. New Mexico, Tennessee, and Virginia require a full SSN.
- If you cannot receive mail at your current mailing address, please specify a mail forwarding address.
- Many states require you to specify a political party to vote in primary elections. This information may be used to register you with a party.
- **Section 6 Requirements:** Puerto Rico requires your mother's and father's first name. If registering in Vermont you must acknowledge the following by writing in section 6: "I swear or affirm that I have taken the Vermont Voter's Oath." Additional state guidelines can be found at FVAP.gov.
- Remember to sign the bottom of the *Voter Information* page!

2. Carefully fill out and seal your *Official Backup Ballot*.

- DO NOT sign your ballot or include any personal information. Keep your ballot anonymous.
- If using a self-sealing form, remove the adhesive liner, fold and seal tightly.
- If you printed out the form, fold the voted ballot and seal it in an envelope marked "ballot enclosed".

3. Assemble your documents for mailing.

- Put your Voter Information page and Official Backup Ballot into the mailing envelope.
- You can find the address for your election office at FVAP.gov.
- All states accept this form by mail and many states accept this form by email and fax. See your state's guidelines at FVAP.gov.

## Agency Disclosure Statement

The public reporting burden for this collection of information, OMB Control Number 0704-0502, is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or burden reduction suggestions to the Department of Defense, Washington Headquarters Services, at whs.mc-alex. esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
DO NOT SUBMIT YOUR FORM TO THE E-MAIL ADDRESS ABOVE.

## Privacy Advisory

When completed, this form contains personally identifiable information and is protected by the Privacy Act of 1974, as amended.

**Questions?**
**Email: vote@fvap.gov**

MONTOUR000003

# Voter Information
Federal Write-In Absentee Ballot (FWAB)

Print clearly in blue or black ink, please see back for instructions.

**Have you already registered and requested an absentee ballot?**
Some states allow you to use this form to register and request ballots for future elections. Visit FVAP.gov for more details.

## 1. Who are you? Pick one.

For absent Uniformed Service members, their families, and citizens residing outside the United States.

- ☐ I am on active duty in the Uniformed Services or Merchant Marine  **-OR-**  ☐ I am an eligible spouse or dependent.
- ☐ I am a U.S. citizen living outside the country, and I intend to return.
- ☐ I am a U.S. citizen living outside the country, and my intent to return is uncertain.
- ☐ I am a U.S. citizen living outside the country, I have never lived in the United States.

Last name

Suffix (Jr., II)

☐ Mr.  ☐ Miss
☐ Mrs.  ☐ Ms.

First name

Previous names (If applicable)

Middle name

Birth date (MM/DD/YYYY)

Social Security Number

Driver's license or State ID#

## 2. What is your U.S. voting residence address?

Your voting materials will not be sent to this address.  See instructions on the other side of form.

Street address

Apt #

City, town, village

State

County

ZIP

## 3. Where are you now?  You MUST give your CURRENT address to receive your voting materials.

Your mailing address. (Different from above)

Your mail forwarding address. (If different from mailing address)

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

Email:

Phone:

Alternate email:

Fax:

## 5. What are your preferences for future elections?

A. Do you want to register and request a ballot for all elections you are eligible to vote in?  ☐ Yes  ☐ No

B. How do you want to receive voting materials from your election office?
- ☐ Mail
- ☐ Email or online
- ☐ Fax

C. What is your political party for primary elections?

## 6. What additional information must you provide?

Alabama requires two witness signatures; Alaska, Virginia and Wisconsin, require one witness signature. Puerto Rico and Vermont need more information, see back for instructions. Additional state guidelines can be found at FVAP.gov.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**
- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.
- In voting, I have marked and sealed this ballot in private and have not allowed any person to observe the marking of this ballot, except those authorized to assist voters under State and Federal law.

**Sign here**  X

**Today's date**
(MM/DD/YYYY)

This information is for official use only. Any unauthorized release may be punishable by law. Previous editions are obsolete. Standard Form 186 (Rev.09-2021), OMB No. 0704-0502, NSN 7540-01-218-4384

MONTOUR000004

# Official Backup Ballot

Federal Write-In Absentee Ballot (FWAB)

Print clearly in blue or black ink.

**Vote by writing the NAME or PARTY of the candidates you choose. To find out about specific federal candidates and races go to FVAP.gov.**

## Instructions

- The FWAB is intended to serve as a backup ballot. It can be used to vote for federal offices. Refer to your state or local election official for any special ballot instructions (e.g., instant runoff voting or ranked choice voting).
- State laws vary on the use of the FWAB for state and local contests. Learn more online at FVAP.gov.
- DO NOT write your name or any identifying number (SSN, driver's license) on this ballot.
- If you are voting in American Samoa, Guam, Puerto Rico, or the U.S. Virgin Islands, you may vote for Delegate or Resident Commissioner, and in presidential primaries.
- Photocopy this page if you require additional room for candidates or ballot initiatives.

### Federal Offices

President and Vice President

U.S. Senator

U. S. Representative, Delegate, or Resident Commissioner to Congress

### Other offices

| Office | Candidate name | Political party |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### Ballot initiatives or other items

Standard Form 186 (Rev.09-2021), OMB No. 0704-0502

MONTOUR000005





Fold your ballot and keep it private. Put it in the envelope.

MONTOUR000006

# Before you seal this envelope:



1. **Sign and fold your *Voter Information* page.**
2. **Fold and seal your *Official Backup Ballot*.**
3. **Put both inside this envelope, and mail it to your election office. The address can be found at FVAP.gov.**

**For election officials:**

This is an official Federal Write-In Absentee Ballot authorized by 52 U.S.C. § 20301.

If you have questions about it, contact your State officials.

**APP_01199**

MONTOUR000007

U.S. Postage Paid
39 USC 3406

PAR AVION



OFFICIAL
ELECTION MAIL

From

(Your name and mailing address.)

International airmail postage is required if not mailed using the
U.S. Postal Service, APO/FPO/DPO system, or diplomatic pouch.

I have enclosed my ballot for the ___ / ___ election.
MM      YYYY

OFFICIAL ABSENTEE BALLOTING MATERIAL – FIRST CLASS MAIL

NO POSTAGE NECESSARY IN THE U.S. MAIL – DMM 703.8.0

To

(Fill in the address of your election office. The address can be found online at FVAP.gov.)

**APP_01200**

MONTOUR000008

DID YOU INSERT YOUR BALLOT IN SMALL ENVELOPE MARKED "Official Absentee Ballot" AND SEAL THE ENVELOPE?

MAKE SURE YOU ENCLOSE THE SEALED ENVELOPE IN THIS ENVELOPE

THEN

FILL OUT AND SIGN THE DECLARATION BELOW

ABSENTEE ELECTOR'S DECLARATION

I hereby declare that I am qualified to vote from the below stated address at this Primary or Election; that I have not already voted in this Primary or Election, that I expect to be unable to appear at my polling place on the day of this Primary or Election; and I further declare that I marked my Absentee ballot in secret

☞ SIGN AND DATE HERE ....................

.................................................  .................................................  .................................................
(Sign your name here)                            (Print your name here)                           (Date)

INSERT YOUR HOME ADDRESS HERE. ............

.................................................  .................................................  .................................................
                                                 (Street Address)                                 (Post Office/Zip)

City, Boro. or Twp. .......... Ward .......... District ..........

SUPPORTING DECLARATION TO BE COMPLETED IN CASE OF ELECTOR, SPOUSE OR DEPENDENT OF ELECTOR IN RELIGIOUS OR WELFARE ORGANIZATION ASSISTING SERVICEMEN, CIVILIAN EMPLOYED BY THE UNITED STATES GOVERNMENT OUTSIDE THE UNITED STATES (CONTINENTAL) OR MERCHANT MARINE OUTSIDE THE UNITED STATES INLAND WATERWAYS.

I declare the elector above to be employed in this department, division or bureau or to be the spouse or dependent of ...................................................................................

who is employed in this department, division or bureau.

.................................................
(Name of department, division of bureau

.................................................
(Signature of head of department or chief of division or bureau.)

**APP_01201**

Received 10/16/2022 10:53:53 PM Supreme Court Middle District

Filed 10/16/2022 10:53:00 PM Supreme Court Middle District
102 MM 2022

# IN THE SUPREME COURT OF PENNSYLVANIA

## No. _____ MM 2022

David Ball, James D. Bee, Jesse D. Daniel, Gwendolyn Mae DeLuca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Siciliano-Biancaniello, S. Michael Streib, Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania,

Petitioners,

v.

Leigh M. Chapman, in her official capacity as Acting Secretary of the Commonwealth, and All 67 County Boards of Elections
(See back of cover for list of County Respondents),

Respondents.

## PETITIONERS' APPLICATION FOR THE EXERCISE OF KING'S BENCH POWER OR EXTRAORDINARY JURISDICTION

Kathleen A. Gallagher
(PA #37950)
Russell D. Giancola
(PA #200058)
GALLAGHER GIANCOLA LLC
436 7th Avenue, 31st Fl.
Pittsburgh, PA 15219
412.717.1900 (Phone)

John M. Gore *
E. Stewart Crosland
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
202.879.3939 (Phone)

* Pro hac vice motion forthcoming

Thomas W. King, III *
(PA #21580)
Thomas E. Breth
(PA #66350)
DILLON, MCCANDLESS, KING, COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
724.283.2200 (Phone)

* General Counsel, Republican Party of Pennsylvania

*Counsel for Petitioners*

Adams County Board of Elections; Allegheny County Board of Elections;
Armstrong County Board of Elections; Beaver County Board of Elections;
Bedford County Board of Elections; Berks County Board of Elections;
Blair County Board of Elections; Bradford County Board of Elections;
Bucks County Board of Elections; Butler County Board of Elections;
Cambria County Board of Elections; Cameron County Board of Elections;
Carbon County Board of Elections; Centre County Board of Elections;
Chester County Board of Elections; Clarion County Board of Elections;
Clearfield County Board of Elections; Clinton County Board of Elections;
Columbia County Board of Elections; Crawford County Board of Elections;
Cumberland County Board of Elections; Dauphin County Board of Elections;
Delaware County Board of Elections; Elk County Board of Elections;
Erie County Board of Elections; Fayette County Board of Elections;
Forest County Board of Elections; Franklin County Board of Elections;
Fulton County Board of Elections; Greene County Board of Elections;
Huntingdon County Board of Elections; Indiana County Board of Elections;
Jefferson County Board of Elections; Juniata County Board of Elections;
Lackawanna County Board of Elections; Lancaster County Board of Elections;
Lawrence County Board of Elections; Lebanon County Board of Elections;
Lehigh County Board of Elections; Luzerne County Board of Elections;
Lycoming County Board of Elections; McKean County Board of Elections;
Mercer County Board of Elections; Mifflin County Board of Elections;
Monroe County Board of Elections; Montgomery County Board of Elections;
Montour County Board of Elections; Northampton County Board of Elections;
Northumberland County Board of Elections; Perry County Board of Elections;
Philadelphia County Board of Elections; Pike County Board of Elections;
Potter County Board of Elections; Schuylkill County Board of Elections;
Snyder County Board of Elections; Somerset County Board of Elections;
Sullivan County Board of Elections; Susquehanna County Board of Elections;
Tioga County Board of Elections; Union County Board of Elections;
Venango County Board of Elections; Warren County Board of Elections;
Washington County Board of Elections; Wayne County Board of Elections;
Westmoreland County Board of Elections; Wyoming County Board of Elections;
and York County Board of Elections,

     Respondents/Appellants.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................1

PARTIES..............................................................................5

    I.     Petitioners ...............................................................5

            A.     Voter Petitioners ......................................5

            B.     Republican Committees ...........................7

    II.    Respondents............................................................9

STATEMENT OF THE CASE................................................10

BASIS FOR EXERCISE OF KING'S BENCH POWER OR
EXTRAORDINARY JURISDICTION ...................................11

ARGUMENT ......................................................................13

    I.     A Majority Of This Court Has Already Upheld The
          Mandatory Date Requirement Under State Law ................13

    II.    Federal Law Does Not Preempt the Date Requirement ......19

    III.   The Acting Secretary's Guidance Directly Contradicts
          the General Assembly's Date Requirement ........................23

    IV.   The Court Should Immediately Order County Boards
          of Elections to Segregate Any Absentee or Mail-In
          Ballots That Do Not Comply With the Date Requirement ....24

RELIEF REQUESTED..........................................................26

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                           <u>**Page**</u>

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................................14

*Bd. of Revisions of Taxes, City of Philadelphia v. City of Philadelphia*,
    4 A.3d 610 (Pa. 2010) ..........................................................................................11

*Brnovich v. DNC*, 141 S. Ct. 2321 (2021) ............................................................21

*Chapman v. Berks County Bd. of Elecs.*,
    2022 WL 4100998, *13-*25 (Pa. Commw. Aug. 19, 2022) ................................4

*Commonwealth v. Williams*, 129 A.3d 1199 (Pa. 2015)..........................................12

*Cook v. Gralike*, 531 U.S. 510 (2010) ....................................................................18

*County of Fulton v. Sec.*, 276 A.3d 846 (Pa. Commw. 2022) ................................23

*DNC v. Wisconsin State Leg.*, 141 S. Ct. 28 (Mem.) (Oct. 26, 2020) ....................21

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020)...........................12, 13

*Hamilton v. Johnson*, 141 A. 846 (Pa. 1928)..........................................................23

*Hawke v. Smith*, 253 U.S. 221 (1920)....................................................................19

*In re Bruno*, 101 A.3d 635 (Pa. 2014) ...................................................................12

*In re Canvass of Absentee and Mail-In Ballots of November 3, 2020
General Election*, 241 A.3d 1058 (2020) ........................................................passim

*In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*,
    843 A.2d 1223 (Pa. 2004)...................................................................................14

*In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*,
    272 A.3d 993 (Pa. Commw. Ct. 2022) .........................................................10, 16

APP_01205

*League of Women Voters v. Commonwealth*, 178 A.2d 737 (Pa. 2018) ................12

*McCormick for U.S. Senate v. Chapman*,
  2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022) ..................................passim

*Migliori v. Cohen*, No. 22-1499 (3d Cir. May 27, 2022) .............................1, 10, 11

*Moore v. Harper*, 142 S. Ct. 1089 (2022)....................................................18, 19, 24

*Perzel v. Cortes*, 870 A.2d 759 (Pa. 2005) ...............................................................23

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ........................................................5, 13, 26

*Republican Party of Pa. v. Degraffenreid*,
  No. 20A84, Order (Nov. 6, 2020)........................................................................24

*Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732 (2021) .............18, 19, 24

*Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022) ..........10, 16

*Ritter v. Migliori*,
  No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) ......................................1, 10

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022)..........................................................passim

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ..........................................................20

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) .....................................................21

*Smiley v. Holm*, 285 U.S. 355 (Pa. 1932) ....................................................18, 19, 23

*Storer v. Brown*, 415 U.S. 724 (1974) .....................................................................14

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*,
  828 A.2d 995 (Pa. 2003)................................................................................24, 25

*Timmons v. Twin City Area New Party*, 520 U.S. 351 (1997)............................14, 21

*Vote.Org v. Callanen*, 39 F.4th 297 (5th Cir. 2022).................................................21

iii

## Statutes

42 Pa. C.S. § 502 ................................................................................. 11

25 P.S. § 1301 .................................................................................... 22

25 P.S. § 2621 ................................................................................ 9, 23

25 P.S. § 2641 ...................................................................................... 9

25 P.S. § 2642 ................................................................................ 9, 23

25 P.S. § 2831 ...................................................................................... 8

25 P.S. § 2834 ...................................................................................... 8

25 P.S. § 3146.6 ................................................................. 1, 13, 23, 26

25 P.S. § 3146.8 ................................................................................. 12

25 P.S. § 3150.16 ............................................................... 1, 13, 23, 26

25 P.S. § 3159 ...................................................................................... 9

52 U.S.C. § 10101 ......................................................... 1, 20, 21, 22

52 U.S.C. § 30101 ........................................................................... 7, 8

## Constitutional Provisions

PA. CONST. art. I, § 5 ........................................................................ 16

U.S. CONST. art. I, § 4, cl. 1 ..................................................... 18, 19, 23

**INTRODUCTION**

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot.  25 P.S. §§ 3146.6(a), 3150.16(a).  A majority of this Court has already held that any absentee or mail-in ballot that does not comply with the General Assembly's date requirement is invalid and cannot be counted in any election after the 2020 general election.  *See In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1079-80 (2020) (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy) ("*In re 2020 Canvass*").  Thereafter, a panel of the Third Circuit held that the federal materiality statute—which touches on election officials' determination of whether an "individual is qualified under State law to vote," 52 U.S.C. § 10101(2)(B)—somehow preempts the date requirement.  The U.S. Supreme Court vacated that holding last week.  *See Migliori v. Cohen*, No. 22-1499 (3d Cir. May 27, 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.).  And when addressing a request for a stay earlier in that case, three Justices even opined that the Third Circuit's holding is "very likely wrong" on the merits because it rests upon a misconstruction of federal law.  *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay).

APP_01208

Nonetheless, following the Supreme Court's vacatur order, the Acting Secretary of the Commonwealth has doubled down on guidance that purports to direct county boards of elections to "include[] in the canvass and pre-canvass . . . [a]ny ballot-return envelope that is undated or dated with an incorrect date but has been timely received." *See* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* (Sept. 26, 2022), a copy of which is attached as Ex. A.  The Acting Secretary premised that statement on an unpublished, non-precedential decision of the Commonwealth Court adopting the Third Circuit's now-vacated reasoning that the date requirement is invalid.  *See Acting Secretary of State Issues Statement on SCOTUS Order on Undated Mail Ballots* (Oct. 11, 2022), a copy of which is attached as Ex. B.

At the same time, the Acting Secretary's own website advises the public that "[i]f you do not complete the declaration on the return envelope" of an absentee or mail-in ballot, "your ballot will not be counted."  *See* Mail-In and Absentee Voting, https://www.vote.pa.gov/Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx. County boards of elections have likewise informed voters that their ballots "will not be counted" if they do not comply with the date requirement.  *See, e.g.*, Philadelphia County Voter Declaration ("YOUR BALLOT <u>WILL NOT</u> BE COUNTED UNLESS . . . [y]ou sign and date the voter's declaration in your own handwriting"), a copy of which is attached as Ex. C.

2

Petitioners are Pennsylvania voters and political party committees that support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Petitioners therefore ask the Court to exercise its King's Bench power or extraordinary jurisdiction to uphold the General Assembly's date requirement for the imminent 2022 general election and beyond. In particular, Petitioners ask the Court to issue a declaration that the date requirement is valid and mandatory, and that the Acting Secretary's contrary guidance is invalid. Moreover, to preserve the rights of all voters and candidates, the Court should immediately issue an order directing county boards of elections to segregate any undated or incorrectly dated ballots received for the 2022 general election, as the Speaker and Majority Leader of the House of Representatives have requested. *See* Letter from B. Cutler & K. Benninghoff to Leigh Chapman (Oct. 13, 2022), attached as Ex. D.

The time for the Court to act is now. The validity of undated absentee and mail-in ballots already led to one costly and unnecessary election challenge earlier this year. *See McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. June 2, 2022) (unpublished). Moreover, the issue "could well affect the outcome of the fall elections" in which Petitioners seek to exercise their constitutional rights to vote and to participate. *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissenting from the denial of the application for stay). And while a few counties have indicated that they intend to segregate any undated absentee or mail-in ballots

APP_01210

in the imminent general election, others have provided no such indication.  *See* "Pa. House GOP:  Segregate undated ballots," Pittsburgh Post-Gazette (Oct. 14, 2022), attached as Ex. E.

Thus, while the General Assembly has made the date requirement clear and explicit in the Election Code, the actions of other courts, the Acting Secretary, and some county boards of elections have generated a lack of clarity and transparency. Those actions may also result in unequal treatment of otherwise identical ballots based upon the county in which the voter resides.  In particular, some county boards of elections may follow the plain statutory text, the Acting Secretary's website, and their own instructions to voters and decline to count an undated or incorrectly dated absentee or mail-in ballot.  In fact, even though the Acting Secretary sued to force all county boards to count such ballots for the 2022 primary election, at least one county, Butler County, declined to do so.  *See Chapman v. Berks County Bd. of Elecs.*, 2022 WL 4100998, at *6 (Pa. Commw. Aug. 19, 2022) (unpublished).  On the other hand, other county boards may choose to follow the Acting Secretary's guidance and to count any undated or incorrectly dated ballot.  Any counting of ballots that the General Assembly has declared invalid—and the lack of statewide uniformity in the treatment of undated or incorrectly dated ballots—are eroding public trust and confidence in the integrity of Pennsylvania's elections at a vital moment in the Nation's and the Commonwealth's history.

The Court therefore should take immediate action to uphold the General Assembly's date requirement and to set aside the Secretary's invalid guidance. Such action will promote "[c]onfidence in the integrity of our electoral process," facilitate "the functioning of our participatory democracy," and eliminate the "consequent incentive to remain away from the polls" that the current state of affairs creates. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). The Court should grant the Application.

## PARTIES

### I.   Petitioners

#### A.   Voter Petitioners

Petitioner David Ball resides in Washington County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner James D. Bee resides in Cambria County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner Jesse D. Daniel resides in Indiana County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner Gwendolyn Mae Deluca resides in Beaver County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner Ross M. Farber resides in Westmoreland County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

5

Petitioner Lynn Marie Kalcevic resides in Beaver County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner Vallerie Siciliano-Biancaniello resides in Delaware County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Petitioner S. Michael Streib resides in Butler County, Pennsylvania and is a registered Pennsylvania elector who consistently votes in each election.

Each of the Voter Petitioners regularly votes in both primary and general elections and intends to vote for candidates in all races on their respective ballots in the 2022 general election, including but not limited to the races for United States Senate, United States House of Representatives, Pennsylvania Senate, and Pennsylvania House of Representatives.  Voter Petitioners, each of whom has the right to vote via mail-in ballot, have a particularized interest in knowing the exact requirements for such mail-in ballots to be counted.

Moreover, the counting of undated or incorrectly dated ballots by some or all county boards of elections in violation of the Election Code has interfered, and threatens to interfere, with Voter Petitioners' right to free and equal elections.  In particular, the votes validly cast by Voter Petitioners have been and will be canceled out and diluted by the counting of undated or incorrectly dated ballots.

**APP_01213**

This substantial harm is only exacerbated by the current lack of statewide uniformity among county boards of elections on whether to segregate any absentee or mail-in ballots that do not comply with the General Assembly's date requirement. Indeed, even if the Court reiterates that the date requirement is mandatory, it will not be able to grant effectual relief in any county where the board of elections has failed to segregate undated and incorrectly dated ballots and, thus, cannot exclude such invalid ballots from its final certified results.

### B.    Republican Committees

The Republican National Committee (the "RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14).  The RNC manages the Republican Party's business at the national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Pennsylvania; and assists state parties throughout the country, including the Republican Party of Pennsylvania, to educate, mobilize, assist, and turnout voters.

The National Republican Congressional Committee (the "NRCC") is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14).  The NRCC's mission is to elect Republican candidates to the U.S. House of Representatives from across the United States, including from

Pennsylvania's eighteen congressional districts.  The NRCC works to accomplish its mission in Pennsylvania by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and Party organizations; engaging in voter registration, voter education and voter turnout programs; and other Republican party-building activities.

Petitioner Republican Party of Pennsylvania ("RPP") is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).  RPP, on behalf of itself and its members nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

The RNC, NRCC, and RPP (collectively, "Committee Petitioners") each have made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in past election cycles and is doing so again in 2022.  These efforts include devoting substantial time and resources toward monitoring of the voting and vote counting process in Pennsylvania and to ensure it is conducted lawfully.  Committee Petitioners make expenditures to ensure they and their voters understand the rules governing the elections process, including applicable dates, deadlines, and

requirements for voting by mail or absentee.  These efforts require a uniform application of the law and a clear and transparent understanding of mail voting requirements, including any allowances for notice and opportunity to cure procedures.  Committee Petitioners have a substantial and particularized interest in ensuring that Pennsylvania administers free and fair elections.

## II.    Respondents

Respondent Leigh M. Chapman is the Acting Secretary of the Commonwealth and is sued in her official capacity only.  In that capacity, Acting Secretary Chapman must "receive from county boards of elections the returns of primaries and elections," "canvass and compute the votes cast for candidates," "proclaim the results of such primaries and elections," and "issue certificates of election to the successful candidates at such elections."  *See* 25 P.S. § 2621(f); *see also* 25 P.S. § 3159.

Each of the 67 County Boards of Elections in Pennsylvania are also named as Respondents.  Boards of Elections "have jurisdiction over the conduct of primaries and elections in such count[ies]."  *Id.* at § 2641(a).  The Boards of Elections' powers are set forth in the Election Code. *See* 25 P.S. § 2642.

APP_01216

## STATEMENT OF THE CASE

In the first two cases after *In re 2020 Canvass*, the Commonwealth Court adhered to the majority's construction of the date requirement and denied requests to count undated absentee or mail-in ballots.  On both occasions, this Court allowed the Commonwealth Court's decisions to stand.  *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022), *appeal denied*, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022), *appeal denied* 271 A.3d 1285 (Pa. 2022).

Four days after *Ritter* was resolved by this Court, individual voters filed a new lawsuit in federal court claiming that Pennsylvania's date requirement violated the federal materiality provision.  The district court granted summary judgment against the plaintiffs.  A panel of the Third Circuit reversed, holding that the federal materiality provision preempts the date requirement.  The U.S. Supreme Court granted certiorari and vacated that holding on October 11, 2022.  *See Migliori v. Cohen*, No. 22-1499 (3d Cir. May 27, 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.).

Meanwhile, the Commonwealth Court twice has departed from the General Assembly's date requirement and the majority's construction in unpublished, non-precedential cases arising out of the 2022 Republican primary election for U.S. Senate.  *See McCormick*, 2022 WL 2900112 at *13-14; *Chapman*, 2022 WL

10

4100998.  In those cases, the Commonwealth Court has held that treating the date requirement as mandatory violates state law and the federal materiality provision. The Commonwealth Court relied upon the Third Circuit's now-vacated *Migliori* decision in support of its federal holding in both cases.  *See McCormick*, 2022 WL 2900112 at *10-14; *Chapman*, 2022 WL 4100998 at *13-*25.

Following the U.S. Supreme Court's vacatur of *Migliori*, the Acting Secretary reiterated her view that "[e]very county is expected to include undated ballots in their official returns for the Nov. 8 election, consistent with" the Department of State's prior guidance.  *See* Ex. B.  The Secretary's statement explicitly invoked the Commonwealth Court's two unpublished, non-precedential decisions from earlier this year.  *See id.*  The Secretary's guidance purports to direct that "[a]ny ballot-return envelope that is undated or dated with an incorrect date but that has been timely received by the county shall be included in the canvass and pre-canvass."  Ex. A at 3.

### BASIS FOR EXERCISE OF KING'S BENCH POWER OR EXTRAORDINARY JURISDICTION

This Court possesses authority to "exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722." 42 Pa. C.S. § 502.  That authority includes the "power of general superintendency over inferior tribunals even when no matter is pending."  *Bd. of*

11

*Revisions of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 620 (Pa. 2010); *see also Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 884 (Pa. 2020); *Commonwealth v. Williams*, 129 A.3d 1199, 1206 (Pa. 2015).

"King's Bench authority is generally invoked to review an issue of public importance that requires timely intervention by the court of last resort to avoid the deleterious effects arising from delays incident to the ordinary process of law." *Friends of Danny DeVito*, 227 A.3d at 884 (quoting *Williams*, 129 A.3d at 1206); *In re Bruno*, 101 A.3d 635, 670 (Pa. 2014). "[T]he power of King's Bench allow[s] the Court to innovate a swift process and remedy appropriate to exigencies of the event." *In re Bruno*, 101 A.3d at 672.

The Court should grant the Application and exercise its King's Bench authority here. The 2022 general election day is rapidly approaching on November 8, 2022. The pre-canvass and canvass of absentee and mail-in ballots begin as early as that date. *See* 25 P.S. § 3146.8. There is not sufficient time for the "ordinary processes of law" to resolve the issues presented before the pre-canvass and canvass begin—and it may be impossible to grant effectual relief after that time, particularly if county boards of elections do not segregate undated or incorrectly dated absentee and mail-in ballots. *Friends of Danny DeVito*, 227 A.3d at 884. Those issues are of vital importance: voting is among "the most central of democratic rights," *League of Women Voters v. Commonwealth*, 178 A.3d 737, 741 (Pa. 2018),

12

and Voter Petitioners face the threat of an irreparable dilution of their votes if—as the Acting Secretary has purported to direct—county boards of elections include invalid undated or incorrectly dated absentee or mail-in ballots in their official vote totals. Indeed, the application of the General Assembly's date requirement is an "issue of public importance," *Friends of Danny DeVito*, 227 A.3d at 884, bearing on "the integrity of our electoral process" in Pennsylvania, *Purcell*, 549 U.S. at 5. The Court should grant the Application and resolve it now.

## ARGUMENT

The General Assembly's straightforward mandate that any voter who uses an absentee or mail-in ballot "shall . . . fill out, date and sign the declaration," 25 P.S. §§ 3146.6(a), 3150.16(a), is valid under state and federal law. The Court should grant the Application and enter an order (i) declaring that county boards of elections may not count any undated or incorrectly dated absentee or mail-in ballot; (ii) declaring that the Acting Secretary's contrary guidance is invalid; and (iii) directing county boards of elections to segregate any undated or incorrectly dated absentee or mail-in ballots received in connection with the 2022 general election.

## I. A Majority Of This Court Has Already Upheld The Mandatory Date Requirement Under State Law.

A majority of this Court has already held that the General Assembly said what it meant and meant what it said: the date requirement is mandatory, and any ballot

13

that does not comply with it may not be counted in any election after the 2020 general election. *See In re 2020 Canvass*, 241 A.3d at 1079-80 (Opinion of Justice Wecht); *see also id.* at 1082 ("A court's only 'goal' should be to remain faithful to the terms of the statute that the General Assembly enacted, employing only one juridical presumption when faced with unambiguous language: that the legislature *meant what it said*."); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy). This holding makes perfect sense: "[t]he word 'shall,'" particularly when used in the Election Code, "carries an imperative or mandatory meaning." *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d 1223, 1231 (Pa. 2004).

Moreover, "[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin City Area New Party*, 520 U.S. 351, 358 (1997). "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). In Pennsylvania, the decision whether to impose a date requirement for absentee and mail-in ballots is entrusted to the General Assembly—and it has clearly spoken. *See In re 2020 Canvass*, 241 A.3d at 1079-

14

80, 1082 (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy).

That alone is sufficient to mandate upholding the commonsense and evenhanded date requirement. But if more were somehow needed, Justices of this Court have recognized that the General Assembly's date requirement serves "an unquestionable purpose." *Id.* at 1090 (Opinion of Justices Dougherty, Saylor, and Mundy). In particular, the date on the ballot envelope "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place." *Id.* "The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot." *Id.* And the date "ensures the elector completed the ballot within the proper time frame and prevents tabulation of potentially fraudulent back-dated votes." *Id.* at 1091.

These are no mere theoretical interests. Earlier this year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name. The evidence? The date provided on the outer envelope was April 26, 2022, twelve days *after* the mother had passed away. *See* Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Com. v. Mihaliak*, No. CR-126-22 (June 3, 2002), a copy of which is attached as Ex. F.

This Court's declaration that the General Assembly's date requirement is mandatory should have been the end of the matter in Pennsylvania courts.  For a while, it was.  *See, e.g.*, *In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022), *appeal denied*, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022), *appeal denied* 271 A.3d 1285 (Pa. 2022).  But earlier this year, the Commonwealth Court issued two unpublished, non-precedential opinions that departed from the Election Code's plain text and the majority's reasoning.  The Commonwealth Court rested this departure on two strands of reasoning, neither of which is persuasive.

*First*, the Commonwealth Court pointed to the Free and Equal Elections Clause, PA. Const. art. I, § 5, for the proposition that "the Election Code should be liberally construed so as not to deprive electors of their right to elect the candidate of their choice."  *McCormick*, 2022 WL 2900112 at *13-14; *see also Chapman*, 2022 WL 4100998 at *13-25.  But, of course, the Free and Equal Elections Clause and any rules of construction it requires were before this Court in 2020, when the majority concluded that the date requirement is mandatory such that non-compliant ballots may not be counted.  *See In re 2020 Canvass*, 241 A.3d at 1079-80 (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy).  Moreover, as Justice Wecht reasoned, the Free and Equal Elections Clause does not support, much less require, liberal construction of the date requirement.  To

16

the contrary, "[a] court's only 'goal' should be to remain faithful to the terms of the statute that the General Assembly enacted, employing only one juridical presumption when faced with unambiguous language: that the legislature *meant what it said*." *Id.* at 1082 (Opinion of Justice Wecht) (emphasis original).

*Second*, the Commonwealth Court noted that the majority in *In re 2020 Canvass* did not expressly address a case where "ballots that had exterior envelopes with incorrect dates were counted and included in the election totals." *McCormick*, 2022 WL 2900112, at *14; *see also Chapman*, 2022 WL 4100998, *24. The Commonwealth Court, however, nowhere explains how the fact that a *different* category of incorrectly dated ballots was *not* raised somehow erodes the General Assembly's clear mandate and the majority's reading of the date requirement. *See McCormick*, 2022 WL 2900112, at *14; *see also Chapman*, 2022 WL 4100998, *24. Nor could it, since the majority's reading broadly supports the General Assembly's date requirement in *all* applications, not merely as applied to some scenarios. *See In re 2020 Canvass*, 241 A.3d at 1079-80 (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy). And, in all events, that putative distinction is irrelevant here, where Petitioners seek a declaration that any undated or incorrectly dated ballot is invalid and may not be counted.

Finally, any state judicial construction—such as the construction adopted by the Commonwealth Court this year—that fails to uphold the date requirement's plain

and mandatory meaning for federal elections violates the Elections Clause of the U.S. Constitution.  The Elections Clause directs: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."  U.S. CONST. art. I, § 4, cl. 1.  "It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections," including related to "counting of votes."  *Smiley v. Holm*, 285 U.S. 355, 366 (Pa. 1932).

Thus, the Clause "delegate[s] to" state *legislatures*—but not any other organ of state government—the "authority to regulate election to" federal offices created by the Constitution.  *Cook v. Gralike*, 531 U.S. 510, 522 (2010); *see also Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 733 (2021) (Thomas, J., dissenting from the denial of certiorari) ("the Federal Constitution, not state constitutions, gives state legislatures authority to regulate federal elections[.]") (emphasis added).  As Justice Alito observed, the "Clause could have said that these rules are to be prescribed 'by each State,' which would have left it up to each State to decide which branch, component, or officer of the state government should exercise that power, as States are generally free to allocate state power as they choose."  *Moore v. Harper*, 142 S. Ct. 1089, 1090 (2022) (Alito, J., dissenting from the denial of application for stay).  "But that is not what the Elections Clause says.  Its language specifies a

particular organ of a state government, and we must take that language seriously." *Id.*; *see also Hawke v. Smith*, 253 U.S. 221, 227 (1920) (affirming that "legislature" means the "representative body which made the laws of the people"); *Smiley*, 285 U.S. at 365 (same).

Accordingly, state courts wield no authority to regulate federal elections and may not deploy broad and amorphous state constitutional provisions to rewrite state laws governing those elections.  *See, e.g.*, U.S. CONST. art. I, § 4, cl. 1; *Smiley*, 285 U.S. at 366; *Republican Party of Pa.*, 141 S. Ct. at 733 (Thomas, J., dissenting from the denial of certiorari); *Moore*, 142 S. Ct. at 1090 (Alito, J., dissenting from the denial of application for stay).  Thus, neither the Commonwealth Court nor this Court may erode, much less set aside, the General Assembly's mandatory date requirement as applied to federal elections.  The Court should grant the Application and uphold the date requirement.

## II.     Federal Law Does Not Preempt The Date Requirement.

As three Justices of the U.S. Supreme Court already have concluded, the notion that the federal materiality provision preempts the General Assembly's date requirement is "very likely wrong."  *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  The materiality provision states:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on

19

> any record or paper relating to any application, registration, or other act
> requisite to voting, if such error or omission is not material in
> determining whether such individual is qualified under State law to vote
> in such election.

52 U.S.C. § 10101(a)(2)(B).

This provision does not preempt the General Assembly's express date requirement for at least three reasons. *First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory rules on the act of completing and casting a ballot. *Id.* The materiality provision therefore has no application to the date requirement because "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)). Rather, "that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Id.* An individual "may be unable to cast a vote for any number of reasons," such as showing up to the polls after Election Day, failing to use a secrecy envelope for an absentee or mail-in ballot, returning the ballot to the wrong location, or arriving at the wrong polling place. *Id.* Application of these rules does not deny the right to vote; nor does application of the date requirement. *See id.* at 1825 ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); *see also Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973) (application of

20

neutral state-law voting requirement does not "disenfranchise" voters); *Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations" for effectuating votes); *Brnovich v. Dem. Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021) ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules."); *DNC v. Wisconsin State Leg.*, 141 S. Ct. 28, 35 (Mem.) (Oct. 26, 2020) (Kavanaugh, J., concurring) ("In other words, reasonable election deadlines do not 'disenfranchise' anyone under any legitimate understanding of that term.").  As the Fifth Circuit has reasoned in a precedential, non-vacated decision, "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision.  *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).

*Second*, the materiality provision requires that the error or omission be "material in determining whether such individual is qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B).  It therefore regulates determinations of whether an individual is *qualified* to vote, not "requirements that must be met in order to cast a ballot that will be counted."  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) ("This provision was intended to address the practice of requiring unnecessary information *for voter registration*

with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify voters.") (emphasis added).   The date requirement has nothing to do with whether the individual satisfies the four qualifications to vote in Pennsylvania: being at least 18 years of age on the date of the election, having been a citizen of Pennsylvania for at least one month, having lived in the relevant election district for at least 30 days, and not being imprisoned for a felony.  *See* 25 P.S. § 1301.  It therefore falls outside the narrow sweep of the federal materiality provision for this reason as well.  *Ritter*, 142 S. Ct. at 1825-26 (Mem.) (Alito, J., dissenting from the denial of the application for stay).

*Third*, the materiality provision demands that the "record or paper" be related to an "application, registration, or other act requisite to voting."   52 U.S.C. § 10101(a)(2)(B).  To be sure, an absentee or mail-in ballot is a "record or paper." *Id.*  But casting a ballot constitutes the *act* of voting, not an application, registration, or other act *requisite* to voting.  *Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  It therefore would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement.  *Id.*  Voting is voting; it is not an act requisite to voting.  The Court should grant the Application and uphold the General Assembly's date requirement.

22

**III.    The Acting Secretary's Guidance Directly Contradicts The General Assembly's Date Requirement.**

The Acting Secretary's guidance documents are not binding on the county boards of elections. *See* 25 P.S. §§ 2621, 2642; *Perzel v. Cortes*, 870 A.2d 759, 764 (Pa. 2005); *Hamilton v. Johnson*, 141 A. 846, 847 (Pa. 1928).  Nor may the Acting Secretary act—or direct others to act—in contravention of law. *See also County of Fulton v. Sec.*, 276 A.3d 846 (Pa. Commw. 2022).  The Acting Secretary's guidance nonetheless purports to direct county boards of elections to "include[] in the canvass and pre-canvass . . . [a]ny ballot-return envelope that is undated or dated with an incorrect date but has been timely received," Ex. A, in direct contravention of the General Assembly's date requirement.   The conflict is obvious: the Acting Secretary's guidance instructs county boards of elections to count ballots that the General Assembly has mandated may not be counted.  The guidance is therefore unlawful for that reason alone. *See* 25 P.S. §§ 3146.6(a), 3150.16(a); *see In re 2020 Canvass*, 241 A.3d at 1079-80 (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy).

The Acting Secretary's guidance is unlawful for another reason as well.  To the extent the Secretary attempts to "regulate"—and vitiate the General Assembly's date requirement as applied to—federal elections, the guidance violates the Elections Clause of the U.S. Constitution. *See, e.g.*, U.S. CONST. art. I, § 4, cl. 1; *Smiley*, 285 U.S. at 366; *Republican Party of Pa.*, 141 S. Ct. at 733 (Thomas, J., dissenting from

23

the denial of certiorari); *Moore*, 142 S. Ct. at 1090 (Alito, J., dissenting from the denial of application for stay).  The Court should grant the Application and set aside the Acting Secretary's guidance.

## IV.   The Court Should Immediately Order County Boards Of Elections To Segregate Any Absentee Or Mail-In Ballots That Do Not Comply With The Date Requirement.

At a minimum, Petitioners have established a likelihood of success on the merits of their claim that the General Assembly's date requirement is mandatory and valid under state and federal law.  *See supra* Parts I-III; *Summit Towne Center, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003).  The Court therefore should immediately order all county boards of elections to segregate any absentee or mail-in ballots received for the 2022 general election that do not comply with the date requirement, including because they are undated or incorrectly dated. *See, e.g.*, *Republican Party of Pa. v. Degraffenreid*, No. 20A84, Order (Nov. 6, 2020) (Alito, J.) (ordering segregation of ballots pending result of dispute regarding Election Day received-by deadline); *McCormick*, 2022 WL 2900112, at \*16 (ordering county boards of elections "to segregate the ballots that lack a dated exterior envelope" pending resolution of validity of such ballots).

This commonsense relief will protect the interests of the parties and promote judicial economy.  The issue of whether the date requirement is mandatory "could well affect the outcome of the fall elections" in Pennsylvania.  *Ritter*, 142 S. Ct. at

24

1824 (Alito, J., dissenting from the denial of the application for stay).  Ordering county boards of elections to segregate ballots is therefore "necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages." *Summit Towne Center*, 828 A.2d at 1001.  Absent this relief, a county board of elections that counts undated or incorrectly dated ballots cannot remove non-compliant ballots from its certified election results if this Court upholds the General Assembly's date requirement.  The resulting dilution of Voter Petitioners' votes—and harm to the Republican Committees' voters and candidates—cannot be compensated through an award of damages.

Ordering segregation of non-compliant ballots thus will prevent the "greater injury" of vote dilution that "would result from refusing the injunction" and, by protecting all interested parties' rights pending any final resolution of the date requirement's validity, "will not substantially harm other interested parties." *Id.* Such an order will also "properly restore the parties to their status as it existed" under the plain statutory terms of the General Assembly's date requirement and the majority's reasoning in 2020. *Id.*

Moreover, an order requiring segregation of non-compliant ballots "is reasonably suited to abate the offending activity" of diluting Voter Petitioners' votes by counting invalid ballots. *Id.*  And the order will advance the "public interest." *Id.*  After all, such an order will promote "[c]onfidence in the integrity of our

electoral process," facilitate "the functioning of our participatory democracy," and eliminate the "consequent incentive to remain away from the polls" occasioned by the Commonwealth Court's and the Acting Secretary's refusal to adhere to the General Assembly's date requirement and the majority's reasoning. *Purcell*, 549 U.S. 1, 4–5 (2006).  The Court should grant the Application.

## RELIEF REQUESTED

Petitioners respectfully request that this Honorable Court:

a.   Grant this application for the Court to exercise its King's Bench power or extraordinary jurisdiction;

b.   Immediately order county boards of elections to segregate all absentee or mail-in ballots received for the 2022 general election that do not comply with the date requirement because they are undated or incorrectly dated;

c.   Set a schedule for the expeditious resolution of this matter in advance of the November 8, 2022 commencement of the pre-canvass and canvass;

d.   Declare that absentee and mail-in ballots that are undated or incorrectly dated cannot be included in the pre-canvass or canvass under the Election Code, 25 P.S. §§ 3146.6(a), 3150.16(a);

26

e.   Direct the Acting Secretary to withdraw any and all guidance that purports to direct, require, or encourage county boards of elections to include undated or incorrectly dated absentee or mail-in ballots in the pre-canvass or canvass; and

f.   Grant any other relief this Court deems necessary and appropriate.

Respectfully submitted,

Dated: October 16, 2022

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore *
E. Stewart Crosland
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
msowardsnewton@jonesday.com
scrosland@jonesday.com

*\* Pro hac vice application forthcoming*

27

Thomas W. King, III *
Thomas E. Breth
DILLON, McCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*General Counsel, Republican Party of Pennsylvania*

*Counsel for Petitioners*

Exhibit A

**TLP: WHITE**



# GUIDANCE CONCERNING EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

## Updated: September 26, 2022

**Version: 3.0**

EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES

## 1   BACKGROUND:

The Pennsylvania Election Code describes processes that a qualified voter follows to apply for, receive, complete and timely return an absentee or mail-in ballot to their county board of election.  These processes include multiple secure methods used by the voter's county board of election to verify that the qualified voter's absentee or mail-in application is complete and that the statutory requirements are satisfied.  These include voter identification verification confirmed by either a valid driver's license number, the last four digits of the voter's social security number or other valid photo identification, and unique information on the application including the voter's residence and date of birth.  Before sending the ballot to the applicant, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record.  If the county is satisfied that the applicant is qualified, the application must be approved.  This approval shall be final and binding, except that challenges may be made only on the grounds that the applicant was not a qualified voter, and those challenges must be made to the county prior to five o'clock p.m. on the Friday prior to the election.

Once the qualified voter's absentee or mail-in application is approved, the voter is mailed a ballot with instructions and two envelopes.  The outer envelope includes both a unique correspondence ID barcode that links the envelope to the qualified voter's application and a pre-printed Voter's Declaration that the voter must sign representing that the voter is qualified to vote the enclosed ballot and has not already voted.  This Guidance addresses the examination of the Voter's Declaration on the ballot return envelope.  This Guidance assumes that the voter has satisfactorily completed the steps described above as to application for, receipt and return of an absentee or mail-in ballot.

## 2   RECORDING THE DATE, RETURN METHOD AND BALLOT STATUS FOR RETURNED BALLOTS:

County boards of elections should have processes in place to record the date, return method, and ballot status for all voted ballots received.  County boards of elections must store and maintain returned ballots in a secure location until the ballots are to be pre-canvassed or canvassed.

The county board of elections should stamp the date of receipt on the ballot-return.  County boards of elections should record the receipt of absentee and mail ballots daily in the SURE system. To record a ballot as returned, the staff should scan the

correspondence ID barcode on the outside of the envelope. The correspondence ID on the envelope is unique to each absentee or mail-in voter and each issuance of a ballot to a voter. Once a correspondence ID has been recorded as returned in the SURE system, it cannot be recorded again. Further, if a ballot issuance record is cancelled by the county board of elections (e.g. voided to reissue a replacement ballot) in the SURE system, the correspondence ID on the cancelled ballot will become invalid. If the same barcode is subsequently scanned, the SURE system will not allow the returned ballot to be marked as being approved for counting.

The county boards of elections should record the date the ballot is received (not the date that the returned ballot is processed).  In the event a county board of elections is entering the ballot on a date other than the date the ballot was received, the county personnel should ensure that the SURE record reflects the date of receipt, rather than the date of entry, since by default, SURE will automatically populate both the 'Date Received' and 'Vote Recorded' fields with the current date and time unless users manually correct the date to reflect the date received.

## 3    EXAMINATION OF DECLARATION ON BALLOT RETURN ENVELOPES:

The county board of elections is responsible for approving ballots to be counted during pre-canvassing and canvassing.

To promote consistency across the 67 counties, the county boards of elections should follow the following steps when processing returned absentee and mail-in ballots.

After setting aside ballots of electors who died prior to the opening of the polls, the county board of elections shall examine the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's name and address, with the information contained on the list of absentee and mail-in voters.

If the Voter's Declaration on the return envelope is not signed, that ballot return envelope must be set aside and not counted.  If the board determines that a ballot should not be counted, the final ballot disposition should be noted in SURE. The ballot return status (Resp Type) should be noted using the appropriate drop-down selection.

If the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for the pre-canvass or canvass unless the application was challenged in accordance with the Pennsylvania Election Code.

Any ballot-return envelope that is undated or dated with an incorrect date but that has been timely received by the county shall be included in the pre-canvass and canvass.

The Pennsylvania Election Code does not authorize the county board of elections to set

aside returned absentee or mail-in ballots based solely on signature analysis by the county board of elections.

| Version | Date | Description | Author |
|---|---|---|---|
| 1.0 | 9.11.2020 | Initial document release | Bureau of Elections |
| 2.0 | 5.24.2022 | Updates related to court decisions | Bureau of Elections |
| 3.0 | 9.26.2022 | Updates related to court decisions | Bureau of Elections |

APP_01240

# EXHIBIT B

# Acting Secretary Of State Issues Statement On SCOTUS Order On Undated Mail Ballots

10/11/2022

**Harrisburg, PA –** Acting Secretary of State Leigh M. Chapman issued the following statement in response to today's U.S. Supreme Court order regarding undated mail ballots:

"Every county is expected to include undated ballots in their official returns for the Nov. 8 election, consistent with the

<u>Department of State's guidance</u> (https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/2022-09-26-Examination-Absentee-Mail-In-Ballot-Return-Envelopes-3.0.pdf)

. That guidance followed the most recent ruling of the Pennsylvania Commonwealth Court holding that both Pennsylvania *and* federal law prohibit excluding legal votes because the voter omitted an irrelevant date on the ballot return envelope.

"Today's order from the U.S. Supreme Court vacating the Third Circuit's decision on mootness grounds was not based on the merits of the issue and does not affect the prior decision of Commonwealth Court in any way. It provides no justification for counties to exclude ballots based on a minor omission, and we expect that counties will continue to comply with their obligation to count all legal votes."

<u>ra-st-press@pa.gov</u>

**MEDIA CONTACT:** Grace Griffaton,  (mailto:ra-st-press@pa.gov)

###

() () () () () ()

**APP_01242**

# EXHIBIT C

# Declaración del Votante

**To be completed by Voter Unable to Sign their Declaration Because of Illness or Physical Disability:** I hereby declare that I am unable to sign my declaration for voting my ballot without assistance because I am unable to write by reason of my illness or physical disability. I have made or received assistance in making my mark in lieu of my signature.

**El votante que no pueda firmar su declaración debido a una enfermedad o discapacidad física debe completar lo siguiente:** Por la presente declaro que no puedo firmar mi declaración para finalizar mi papeleta sin ayuda, ya que no puedo escribir debido a mi enfermedad o discapacidad física. He puesto mi marca o recibí ayuda para ponerla, en lugar de mi firma.

**Voter, mark here / Votante, marque aquí.**



✗

Today's Date / Fecha de Hoy

_____

Witness, address (street) / Testigo, dirección (calle)

_____

Witness, address (city, zip code) / Testigo, dirección (ciudad, código postal)

_____

Witness, sign here / Testigo, firme aquí




---

# Voter's Declaration

## YOUR BALLOT WILL NOT BE COUNTED UNLESS:

- You sign and date the voter's declaration in your own handwriting
- You seal your ballot inside the blue secrecy envelope ("Official Election Ballot") and place it in here

## SU BOLETA NO SERÁ CONTADA A MENOS QUE:

- Firme y feche la declaración del votante con su propia letra
- Selle su boleta dentro del sobre secreto azul ("Boleta oficial de elecciones") y colóquelo aquí

### Voter's declaration
• I hereby declare that
  ○ I am qualified to vote in this election;
  ○ that I have not already voted in this election;
  ○ and I further declare that I marked my ballot in secret.
  ○ I am qualified to vote the enclosed ballot.
• I understand I am no longer eligible to vote at my polling place after I return my voted ballot.
• However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the judge of elections at my polling place.

### Declaración del votante
• Por la presente afirmo que
  ○ reúno los requisitos para votar en estas elecciones;
  ○ que no he votado aún en estas elecciones;
  ○ y declaro además que marqué mi papeleta de manera secreta.
  ○ Reúno los requisitos para votar con la papeleta adjunta.
• Comprendo que ya no seré elegible para votar en mi lugar de votación después de devolver mi papeleta con mi voto.
• Sin embargo, si el condado no recibe mi papeleta, comprendo que solo podré votar con una papeleta provisional en mi lugar de votación, a menos que le entregue mis materiales de votación al juez de elecciones en mi lugar de votación para que los anule.

**Voter, sign or mark here (Required) / Votante, firme o marque aquí (se requiere)**



✗

Today's Date (Required) / Fecha de Hoy (se requiere)

# EXHIBIT D



**HOUSE OF REPRESENTATIVES**

COMMONWEALTH OF PENNSYLVANIA

HARRISBURG

October 13, 2022

Leigh Chapman
Acting Secretary
Pennsylvania Department of State
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Dear Acting Secretary Chapman:

We are writing to request the Department of State update its September 26, 2022, "Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes" to require undated ballots be segregated following canvassing.

Earlier this week, in *Ritter v. Migliori*, the Supreme Court of the United States vacated the decision by the Third Circuit Court of Appeals that required undated no-excuse absentee ballots be counted as valid ballots in Pennsylvania's elections.

While we continue to believe the plain language of §3150.16 of the Pennsylvania Election Code is clear that no-excuse absentee ballots must be dated to be valid, conflicting judicial interpretations, coupled with frequently revised guidance from your department, has created ambiguity over this provision.

As it relates to undated ballots, the current guidance makes no provision for ballot segregation post-canvass. Given the high likelihood of new litigation over this provision, segregating undated ballots is the only guarantee these ballots will be easily preserved.

As always, ensuring elections are properly conducted and current election law is followed remains a top concern for all Pennsylvanians. We hope you see the utility in requiring undated ballot segregation post-canvass in ensuring confidence in our elections.

Sincerely,

_____
Kerry A. Benninghoff, Majority Leader
171st District
Pennsylvania House of Representatives

_____
Bryan Cutler, Speaker of the House
100th District
Pennsylvania House of Representatives

# EXHIBIT E

# Pa. House GOP: Segregate undated ballots

pennlive.com



HARRISBURG — House Republican leaders are urging the state's top election official to direct the segregation of undated mail-in ballots after counting them so county officials can be prepared in the event those ballots become the focus of litigation.

In a letter sent Thursday to acting Secretary of State Leigh Chapman, the leaders wrote that conflicting state and federal court rulings along with guidance from the department has created ambiguity over this provision in the election law.

"Given the high likelihood of new litigation over this provision, segregating undated ballots is the only guarantee these ballots will be easily preserved," states the letter signed by House Speaker Bryan Cutler, R-Lancaster County, and House Majority Leader Kerry Benninghoff, R-Centre County.

A spokeswoman for the department said it is reviewing the lawmakers' letter.

On Tuesday, the U.S. Supreme Court invalidated a lower court ruling in a Lehigh County case that said undated no-excuse absentee ballots are valid ballots. The high court's decision made on procedural grounds failed to address the central issue of whether undated ballots are to be counted.

Further muddying the waters, a Commonwealth Court judge ruled in June in a separate ballot-counting case that undated ballots should be counted. But knowing of the case brewing in federal courts, she ordered those ballots be kept separate.

Following the Supreme Court ruling on Tuesday, Ms. Chapman issued a statement advising counties to count the undated ballots in their official count for the Nov. 8 election. She said the justices' decision "provides no justification for counties to exclude ballots based on a minor omission, and we expect that counties will continue to comply with their obligation to count all legal votes."

Officials from Cumberland, Dauphin, Lebanon and York counties said they plan to segregate the undated mail-in ballots even without guidance from the Department of State.

"It's easier to add them in than it is to pull them back out," said York County Chief Clerk Greg Monskie.

"No matter what direction we get, we will segregate those ballots," said Lebanon County elections director Sean Drasher. "That's just prudent."

House Republican spokesman Jason Gottesman said the GOP leaders, who maintain the election law clearly disallows the counting of undated ballots, felt the department should issue guidance to give election officials in all 67 counties the same instruction.

"But given the ambiguity here in this renewed opening for further interpretation by the courts certainly this is an issue that has been litigated before multiple times and now likely will be litigated again," he said. "It just makes sense that everybody prepares for that and does so in a way that these ballots aren't mingled and can be counted later or not counted."

Current guidance on the department's website doesn't address the issue of segregating undated mail-in ballots, only that those ballots should be counted.

**APP_01249**

# EXHIBIT F

# POLICE CRIMINAL COMPLAINT

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF:** Lancaster

**COMMONWEALTH OF PENNSYLVANIA**
**VS.**

Magisterial District Number: 02-2-02

MDJ: Hon.   BRUCE A. ROTH,  ESQ

Address:   150 NORTH QUEEN STREET
SUITE 120
LANCASTER, PA 17603

Telephone:  717-295-2000

**DEFENDANT:**   *(NAME and ADDRESS):*

| First Name | Middle Name | Last Name | Gen |
|---|---|---|---|
| CHERYL | | MIHALIAK | |

831   3RD ST
LANCASTER                          PA        17603

## NCIC Extradition Code Type

- ☐ 1-Felony Full
- ☐ 2-Felony Ltd.
- ☐ 3-Felony Surrounding States
- ☐ 4-Felony No Ext
- ☐ 5-Felony Pend.
- ☐ 6-Felony Pend. Extradition Determ.
- ☐ A-Misdemeanor Full
- ☒ B-Misdemeanor Limited
- ☐ C-Misdemeanor Surrounding States
- ☐ D-Misdemeanor No Extradition
- ☐ E-Misdemeanor Pending
- ☐ F-Misdemeanor Pending Extradition Determ.
- ☐ Distance:

## DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/Live Scan Number | Complaint | Incident Number | Request Lab Services? |
|---|---|---|---|---|---|
| CR-126-22 | 06/03/22 | R 300522-5 | 150 | DA-22-0138 | ☐ YES  ☒ NO |

| GENDER | DOB | POB | Add'l DOB | Co-Defendant(s) |
|---|---|---|---|---|
| ☐ Male  ☒ Female | 6/13/1961 | | | |

| AKA | First Name | Middle Name | Last Name | Gen. |
|---|---|---|---|---|

**RACE**  ☒ White   ☐ Asian   ☐ Black   ☐ Native American   ☐ Unknown

**ETHNICITY**  ☐ Hispanic   ☒ Non-Hispanic   ☐ Unknown

**HAIR COLOR**
- ☒ GRY (Gray)
- ☐ BLK (Black)
- ☐ BLN (Blonde /Strawberry)
- ☐ RED (Red/Aubn.)
- ☐ ONG (Orange)
- ☐ SDY (Sandy)
- ☐ WHI (White)
- ☐ BLU (Blue)
- ☐ XXX (Unk/Bald)
- ☐ PLE (Purple)
- ☐ GRN (Green)
- ☐ BRO (Brown)
- ☐ PNK (Pink)

**EYE COLOR**
- ☐ BLK (Black)
- ☐ HAZ (Hazel)
- ☒ BLU (Blue)
- ☐ MAR (Maroon)
- ☐ BRO (Brown)
- ☐ PNK (Pink)
- ☐ GRN (Green)
- ☐ MUL (Multicolored)
- ☐ GRY (Gray)
- ☐ XXX (Unknown)

| DNA | ☐ YES ☒ NO | DNA Location | WEIGHT (lbs.) |
|---|---|---|---|
| | | | 160 |

| FBI Number | 688907JA3 | MNU Number | Ft. HEIGHT In. |
|---|---|---|---|
| Defendant Fingerprinted? | ☐ YES ☐ NO | | 5   11 |
| Fingerprint Classification: | | | |

## DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY) | Comm'l Veh. Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code | Reg. same as Def. ☐ |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | | Model | Style | Color |

Office of the attorney for the Commonwealth   ☒ Approved   ☐ Disapproved Because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P.507.)

*Andrew J. Gonzalez*                                    5/3/22
(Name of the attorney for the Commonwealth)   (Signature of the attorney for the Commonwealth)   (Date)

I,  **MARTIN, LARRY**                                         10158
(Name of the Affiant)                                     PSP/MPOETC Assigned Affiant ID Number and Badge #

of  **LANCASTER CO DETECTIVES**                            PA036013A
(Identify Department or Agency Represented and Political Subdivision)   (Police Agency ORI Number)

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above
   ☐ I accuse the defendant whose name is unknown to me but who is described as _____
   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have therefore designated as John Doe or Jane Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at [  **301**  ]  **Lancaster City**
   (Subdivision Code)   (Place-Political Subdivision)

   **150 N QUEEN ST   LANCASTER, PA 17603**

   in  **Lancaster**  County [  **36**  ] on or about  **Between 04/26/2022 0001 and 04/26/2022 2359**
   (County Code)   (Offense Date)

AOPC 412A - Rev. 12/21                  **APP_01251**                  Page 1 of 4



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>06/03/2022 | OTN/LiveScan Number | | Complaint<br>150 | Incident Number<br>DA-22-0138 |
|---|---|---|---|---|---|
| Defendant Name | First:<br>CHERYL | Middle: | | Last:<br>MIHALIAK | |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s) numbered __1__ through __4__ .

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing of confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

__June 3__ , __2022__       _____
(Date)                          (Signature of Affiant)

AND NOW, on this date _____ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

02-2-02
_____        _____
(Magisterial District Court Number)           (Issuing Authority)

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 06/03/2022 | OTN/LiveScan Number | Complaint 150 | Incident Number DA-22-0138 |
|---|---|---|---|---|

| Defendant Name | First: CHERYL | Middle: | Last: MIHALIAK |
|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Over _____ |
|---|---|---|---|---|

| ☒ Lead? | 1 Offense # | 4101 Section | (a)(3) Subsection | of the | PA Crimes Code PA Statute (Title) | 1 Counts | M1 Grade | NCIC Offense Code | 250 UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|

| PennDOT Data (if Applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**FORGERY-UTTER FORGED WRIT**

Acts of the accused associated with this Offense:

**PACC 4101(a)3 Forgery**

 **IN THAT, on or about April 26, 2022, THE DEFENDANT did unlawfully utter a writing, namely, a commercial instrument or other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations, which said actor knew to be forged, with intent to defraud or injure TO WIT: Cheryl Mihaliak completed a mail in voter ballot for her deceased mother and signed her mother's name to the ballot. It was returned to the Lancaster County Board of Elections.**

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Over _____ |
|---|---|---|---|---|

| ☐ Lead? | 2 Offense # | 3517 Section | - Subsection | of the | 25 PA Statute (Title) | 1 Counts | M2 Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|

| PennDOT Data (if Applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):

Acts of the accused associated with this Offense:

**Any person who shall forge or falsely make the official endorsement on any ballot or wilfully destroy or deface any ballot or willfully delay the delivery of ant ballot. TO WIT: Cheryl Mihaliak completed a mail in voter ballot for her deceased mother and signed her mother's name to the ballot.**

 **Police Criminal Complaint**

| Docket Number: | Date Filed:<br>06/03/2022 | OTN/LiveScan Number | | Complaint<br>150 | Incident Number<br>DA-22-0138 |
|---|---|---|---|---|---|
| Defendant Name | First:<br>CHERYL | Middle: | | Last:<br>MIHALIAK | |

## AFFIDAVIT OF PROBABLE CAUSE

1) On April 28, 2022, I (Detective Larry R. Martin) was assigned to investigate an alleged voter fraud incident. I received information from Christa Miller Chief Clerk/ Chief Registrar of the Lancaster County Board of Elections and Registration Commission.

2) Christa Miller stated she received a mail in ballot from Teresa J. Mihaliak signed and dated April 26, 2022. The ballot for the democrat primary was received on April 28, 2022, by her office. However, Christa Miller reported that Teresa J. Mihaliak was deceased on April 14, 2022. Christa Miller said this was confirmed by an obituary and records from the Department of Health. She said Teresa J. Mihaliak was removed from the voter rolls on April 25, 2022.

3) Christa Miller stated that Teresa J. Mihaliak's ballot was requested by Cheryl Mihaliak on March 17, 2022, Cheryl Mihaliak requested her own ballot on March 17, 2022. Christa Miller reported both Teresa Mihaliak and Cheryl Mihaliak's ballots were returned on April 28, 2022.

4) On May 5, 2022, at 1641 hours I spoke with Cheryl Mihaliak. During that conversation Cheryl Mihaliak told me that she did vote for her mother and signed her ballot after her mother died. Cheryl Mihaliak said that she knew who her mother was going to vote for  and decided to vote for her after she died. Cheryl Mihaliak said she filled out her mother Teresa J. Mihaliak ballot and signed her ballot.

5) Due to the above information, I request that a summons be issued for defendant Cheryl Mihaliak.

I, <u>LARRY MARTIN</u>, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING OF CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NO-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of _____, _____.

_____ Date                                        , Magisterial District Judge

My commission expires first Monday of January,

| SEAL |
|---|

# Magisterial District Judge 02-2-02

## DOCKET TRANSCRIPT

Docket Number: MJ-02202-CR-0000126-2022

# Criminal Docket



Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 1 of 4

## CASE INFORMATION

| | | | |
|---|---|---|---|
| Judge Assigned: | Magisterial District Judge Bruce A. Roth | Issue Date: | 06/03/2022 |
| OTN: | R 300522-5 | File Date: | 06/03/2022 |
| Arresting Agency: | Lancaster County, District Attorney | Arrest Date: | |
| Complaint No.: | DA-22-0138 | Incident No.: | DA-22-0138 |
| Disposition: | Waived for Court | Disposition Date: | 07/25/2022 |
| County: | Lancaster | Township: | Lancaster City |
| Case Status: | Closed | | |

## STATUS INFORMATION

| Case Status | Status Date | Processing Status |
|---|---|---|
| Closed | 07/25/2022 | Completed |
| | 06/03/2022 | Awaiting Preliminary Hearing |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Preliminary Hearing | 06/29/2022 | 2:00 pm | | Magisterial District Judge Bruce A. Roth | Continued |

Continuance Reason: *Defendant Attorney Request*
Requested By: *Attorney Michael Todd Winters*

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Preliminary Hearing | 07/25/2022 | 2:00 pm | | Magisterial District Judge Bruce A. Roth | Scheduled |
| Formal Arraignment | 08/26/2022 | 9:00 am | Courtroom A | | Scheduled |

## DEFENDANT INFORMATION

| | | | |
|---|---|---|---|
| Name: | Mihaliak, Cheryl | Sex: | Female |
| Date of Birth: | 06/13/1961 | Race: | |
| Address(es): | | | |

**Other**
831 Third Street
Lancaster, PA 17603

| | |
|---|---|
| Advised of His Right to Apply for Assignment of Counsel? | Yes |
| Public Defender Requested by the Defendant? | No |
| Application Provided for Appointment of Public Defender? | No |
| Has the Defendant Been Fingerprinted? | No |

MDJS 1200

Printed: 07/25/2022   2:08 pm

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## APP_01255

# Magisterial District Judge 02-2-02

## DOCKET TRANSCRIPT



Docket Number: MJ-02202-CR-0000126-2022

# Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 2 of 4

## CASE PARTICIPANTS

| Participant Type | Participant Name | OTN/LOTN | Docket Number | Was Sworn In? | Has Testified? |
|---|---|---|---|---|---|
| Prosecution | Commonwealth of Pennsylvania | | | | |
| Arresting Officer | Martin, Larry R. | | | | |
| Defendant | Mihaliak, Cheryl | | | | |
| Witness for the Commonwealth | Miller, Christa | | | | |

## BAIL

Bail Set:                                                                    Nebbia Status: None

| Bail Action Type | Bail Action Date | Bail Type | Percentage | Amount |
|---|---|---|---|---|
| Set | 07/25/2022 | Unsecured | | $2,500.00 |

## CHARGES

| # Charge | Grade | Description | Offense Dt. | Disposition |
|---|---|---|---|---|
| 1  18 § 4101 §§ A3 | M1 | Forgery - Utters Forged Writing | 04/26/2022 | Withdrawn |
| 2  25 § 3517 | M2 | Forging And Destroying Ballots | 04/26/2022 | Waived for Court |

## DISPOSITION / SENTENCING DETAILS

| Case Disposition | Disposition Date | Was Defendant Present? |
|---|---|---|
| Waived for Court | 07/25/2022 | Yes |

| Offense Seq./Description | Offense Disposition |
|---|---|
| 1  Forgery - Utters Forged Writing | Withdrawn |
| 2  Forging And Destroying Ballots | Waived for Court |

## ATTORNEY INFORMATION

**Private**

Name: Michael Todd Winters, Esq.

Representing: Mihaliak, Cheryl

Counsel Status: Active

Supreme Court No.: 077976

Phone No.: 717-584-1895

Address:    53 N Duke St
            Ste 318
            Lancaster, PA  17602

**Assistant District Attorney**

Name: Jennifer Lauren Ponessa, Esq.

Representing: Commonwealth of Pennsylvania

Counsel Status: Active

Supreme Court No.: 319222

Phone No.: 717-299-8100

Address:    Lancaster County Da's Office
            50 N Duke St
            Lancaster, PA  17602-2805

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# APP_01256

# Magisterial District Judge 02-2-02

DOCKET TRANSCRIPT



Docket Number: MJ-02202-CR-0000126-2022

## Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 3 of 4

### DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 07/25/2022 | Bail Set | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Formal Arraignment Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Waiver of Preliminary Hearing | Cheryl Mihaliak | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Waived for Court | Magisterial District Judge Bruce A. Roth | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Docket Transcript Printed | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/22/2022 | Attorney Active | Jennifer Lauren Ponessa, Esq. | Commonwealth of Pennsylvania, Prosecution |
| 06/24/2022 | First Class Summons Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/13/2022 | Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |

Event:   Preliminary Hearing-07/25/2022 2:00PM- 2:05PM
Testify On Behalf Of:   Commonwealth of Pennsylvania

| | | | |
|---|---|---|---|
| 06/13/2022 | First Class Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |
| 06/13/2022 | Preliminary Hearing Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/13/2022 | Preliminary Hearing Continued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/09/2022 | Attorney Active | Michael Todd Winters, Esq. | Cheryl Mihaliak, Defendant |
| 06/06/2022 | Certified Summons Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/06/2022 | Certified Fingerprint Order Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |

Event:   Preliminary Hearing-06/29/2022 2:00PM- 2:15PM
Testify On Behalf Of:   Commonwealth of Pennsylvania

| | | | |
|---|---|---|---|
| 06/03/2022 | First Class Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |
| 06/03/2022 | Certified Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | First Class Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |

Report to Agency:   Lancaster Police Dept
Authority:   Roth, Bruce A.
Report From:   6/3/2022 12:00:00 AM
Report To:   6/29/2022 12:00:00 AM

| | | | |
|---|---|---|---|
| 06/03/2022 | Certified Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Preliminary Hearing Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Criminal Complaint Filed | Magisterial District Court 02-2-02 | |

MDJS 1200                               Page 3 of 4                               Printed: 07/25/2022   2:08 pm

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# Magisterial District Judge 02-2-02

DOCKET TRANSCRIPT

Docket Number: MJ-02202-CR-0000126-2022

## Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 4 of 4



### DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 06/03/2022 | First Class Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |

July 25, 2022
Date

Magisterial District Judge Bruce A. Roth

---

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets.  Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

**APP_01258**

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application**

**for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to

the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904

relating to unsworn falsification to authorities.


By: _David Ball_____
      David Ball

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

James D. Bee

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

Gwendolyn Mae Deluca

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

Ross M. Farber

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application**

**for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to

the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904

relating to unsworn falsification to authorities.

By: _____
Lynn Marie Kalcevic

## <u>VERIFICATION</u>

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

Vallerie Siciliano-Biancaniello

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

S. Michael Streib

## VERIFICATION

I hereby aver that the statements of fact contained in the attached **Petitioners' Application for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: _____

Angela Alleman, Executive Director
Republican Party of Pennsylvania

## <u>VERIFICATION</u>

I hereby aver that the statements of fact contained in the attached **Petitioners' Application**

**for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to

the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904

relating to unsworn falsification to authorities.


By: _____

Donald Rickard, Regional Political Director
National Republican Congressional Committee

## **VERIFICATION**

I hereby aver that the statements of fact contained in the attached **Petitioners' Application**

**for the Exercise of Extraordinary Jurisdiction or King's Bench Power** are true and correct to

the best of my knowledge and belief and are made subject to the penalties of 18 Pa. C.S. § 4904

relating to unsworn falsification to authorities.


By: _____

Philip Valenziano
RNC Regional Political Director

## CERTIFICATE OF COMPLIANCE
## WITH PUBLIC ACCESS POLICY

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.


GALLAGHER GIANCOLA LLC

Dated:  October 16, 2022          */s/ Kathleen A. Gallagher*
                                  Kathleen A. Gallagher
                                  Russell D. Giancola

                                  *Counsel for Petitioners*

Received 10/24/2022 11:32:29 AM Supreme Court Middle District

Filed 10/24/2022 11:32:00 AM Supreme Court Middle District
102 MM 2022

# IN THE SUPREME COURT OF PENNSYLVANIA

## No. 102 MM 2022

David Ball, James D. Bee, Jesse D. Daniel, Gwendolyn Mae DeLuca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Siciliano-Biancaniello, S. Michael Streib, Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania,

Petitioners,

v.

Leigh M. Chapman, in her official capacity as Acting Secretary of the Commonwealth, and All 67 County Boards of Elections
(See back of cover for list of County Respondents),

Respondents.

## PETITIONERS' BRIEF

Appeal Subject to the Supreme Court's King's Bench Authority
Pursuant to the Court's Order of October 21, 2022

| | | |
|---|---|---|
| Kathleen A. Gallagher (PA #37950) | John M. Gore* | Thomas W. King, III (PA #21580) |
| Russell D. Giancola (PA #200058) | E. Stewart Crosland | Thomas E. Breth (PA #66350) |
| GALLAGHER GIANCOLA LLC | JONES DAY | |
| 436 7th Avenue, 31st Fl. | 51 Louisiana Ave., N.W. | DILLON, MCCANDLESS, |
| Pittsburgh, PA 15219 | Washington, D.C. 20001 | KING, COULTER & |
| 412.717.1900 (Phone) | 202.879.3939 (Phone) | GRAHAM, LLP |
| | | 128 W. Cunningham St. |
| | *pro hac vice motion forthcoming* | Butler, PA 16001 |
| | | 724.283.2200 (Phone) |

*Counsel for Petitioners*

Adams County Board of Elections; Allegheny County Board of Elections;
Armstrong County Board of Elections; Beaver County Board of Elections;
Bedford County Board of Elections; Berks County Board of Elections;
Blair County Board of Elections; Bradford County Board of Elections;
Bucks County Board of Elections; Butler County Board of Elections;
Cambria County Board of Elections; Cameron County Board of Elections;
Carbon County Board of Elections; Centre County Board of Elections;
Chester County Board of Elections; Clarion County Board of Elections;
Clearfield County Board of Elections; Clinton County Board of Elections;
Columbia County Board of Elections; Crawford County Board of Elections;
Cumberland County Board of Elections; Dauphin County Board of Elections;
Delaware County Board of Elections; Elk County Board of Elections;
Erie County Board of Elections; Fayette County Board of Elections;
Forest County Board of Elections; Franklin County Board of Elections;
Fulton County Board of Elections; Greene County Board of Elections;
Huntingdon County Board of Elections; Indiana County Board of Elections;
Jefferson County Board of Elections; Juniata County Board of Elections;
Lackawanna County Board of Elections; Lancaster County Board of Elections;
Lawrence County Board of Elections; Lebanon County Board of Elections;
Lehigh County Board of Elections; Luzerne County Board of Elections;
Lycoming County Board of Elections; McKean County Board of Elections;
Mercer County Board of Elections; Mifflin County Board of Elections;
Monroe County Board of Elections; Montgomery County Board of Elections;
Montour County Board of Elections; Northampton County Board of Elections;
Northumberland County Board of Elections; Perry County Board of Elections;
Philadelphia County Board of Elections; Pike County Board of Elections;
Potter County Board of Elections; Schuylkill County Board of Elections;
Snyder County Board of Elections; Somerset County Board of Elections;
Sullivan County Board of Elections; Susquehanna County Board of Elections;
Tioga County Board of Elections; Union County Board of Elections;
Venango County Board of Elections; Warren County Board of Elections;
Washington County Board of Elections; Wayne County Board of Elections;
Westmoreland County Board of Elections; Wyoming County Board of Elections;
and York County Board of Elections,

       Respondents/Appellants.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION..............................................................1

ORDER OR OTHER DETERMINATION IN QUESTION....................................1

SCOPE OF REVIEW AND STANDARD OF REVIEW .........................................2

STATEMENT OF THE QUESTIONS INVOLVED ..................................................2

STATEMENT OF THE CASE.........................................................................2

SUMMARY OF THE ARGUMENT .......................................................................8

ARGUMENT .......................................................................................................10

    I.     PETITIONERS HAVE STANDING TO BRING THIS
          ACTION ........................................................................12

          A.     The Republican Committees Have Standing ............................13

          B.     The Voter Petitioners Have Standing .......................................17

    II.    THE GENERAL ASSEMBLY'S DATE REQUIREMENT
          IS MANDATORY AND CONSEQUENTIAL ..................................20

          A.     The Plain Meaning Of The General Assembly's Date
                Requirement Is Mandatory .......................................................21

          B.     There Is No Basis To Treat The Date Requirement As
                Directory And Inconsequential .................................................30

    III.   MANDATORY AND CONSEQUENTIAL APPLICATION
          OF THE DATE REQUIREMENT DOES NOT VIOLATE
          THE FEDERAL MATERIALITY PROVISION ...............................43

A.      Application Of The Date Requirement Does Not Deny Any Individual Of The Right To Vote Or Result In A Determination Regarding Whether An Individual Is Qualified To Vote .........43

B.      There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Federal Materiality Provision ................................................................48

CONCLUSION .......................................................................52

Declaration of Leslie A. Osche ......................................................... Ex. A

Declaration of Kimberly D. Geyer ....................................................Ex. B

Declaration of Angela Alleman ....................................................... Ex. C

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Albert v. 2001 Legislative Reapportionment Comm'n*, 790 A.2d 989
    (Pa. 2002) ......................................................................11, 12, 17, 18, 20

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .........................................................10

*Appeal of Weiskerger*, 290 A.2d 108 (Pa. 1972) .................................................31, 32

*Bayada Nurses, Inc. v. Dep't of Labor & Industry*, 8 A.3d 866 (Pa. 2010)............19

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) .................12, 15, 17

*Brnovich v. Dem. Nat'l Comm.*, 141 S. Ct. 2321 (2021) ............................10, 28, 44

*Bush v. Gore*, 531 U.S. 98 (2000).................................................................18, 19, 20

*Chapman v. Berks County Bd. of Elecs.*, 2022 WL 4100998,
    (Pa. Commw. Aug. 19, 2022) ........................................................................passim

*Clingman v. Beaver*, 544 U.S. 581 (2005)................................................................49

*Commonwealth v. Williams*, 129 A.3d 1199 (Pa. 2015)............................................1

*Cook v. Gralike*, 531 U.S. 510 (2010) ....................................................................29

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) ............................................48

*DNC v. Wisconsin State Leg.*, 141 S. Ct. 28 (Mem.) (October 26, 2020) ..............44

*Erfer v. Com.*, 794 A.2d 325 (Pa. 2002) ................................................................20

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ............46

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020)...............................1, 13

*Hannaberry HVAC v. Workers' Comp. App. Bd.*, 834 A.2d 524 (Pa. 2003) ..........21

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)...............................12, 15, 17

*Hawke v. Smith*, 253 U.S. 221 (1920).......................................................................29

*In re Bruno*, 101 A.3d 636 (Pa. 2014) ......................................................................1

*In re Canvass of Absentee and Mail-In Ballots of November 3, 2020*
   *General Elections*, 241 A.3d 1058 (2020)....................................................passim

*In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*,
   843 A.2d 1223 (Pa. 2004) (*"Appeal of Pierce"*).........................................passim

*In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*,
   272 A.3d 993 (Pa. Commw. 2022) ....................................................................3, 8

*In re T.J.*, 739 A.2d 478 (Pa. 1999) .................................................................passim

*In re Nomination Pet. of Gallagher*, 359 A.2d 791 (Pa. 1976) ...............................33

*In re Vencil*, 152 A.3d 235 (Pa. 2017) ......................................................................2

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) .....................15

*McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112
   (Pa. Commw. June 2, 2022)............................................................................passim

*Migliori v. Cohen*, No. 22-1499 (3d Cir. May 27, 2022) .........................................4

*Moore v. Harper*, 142 S. Ct. 1089 (2022).........................................................29, 30

*Pa. Dep't of Transp. v. Weaver*, 912 A.2d 259 (Pa. 2006).....................................21

*Pa. Dem. Party v. Boockvar*, 238 A.3d 345 (Pa. 2020)...................................passim

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ............................................................10, 42

*Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732 (2021) .........................29

*Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022) .................3

*Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) ................... 4

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022) .......................................................... passim

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ............................................................ 44

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ............................................... 45, 47

*Shays v. Fed. Elec. Comm'n*, 414 F.3d 76 (D.C. Cir. 2005) ................................... 16

*Smiley v. Holm*, 285 U.S. 355 (Pa. 1932) ......................................................... 28, 29

*Storer v. Brown*, 415 U.S. 724 (1974) .................................................................... 10

*Timmons v. Twin City Area New Party*, 520 U.S. 351 (1997) ........................... 10, 44

*Vote.Org v. Callanen*, 39 F.4th 297 (5th Cir. 2022) .......................................... 45, 47

## Statutes

1 Pa. C.S. § 1921 ................................................................. 20, 21, 31, 37

1 Pa. C.S. § 1933 ................................................................................ 39

25 P.S. § 1301 .................................................................................... 47

25 P.S. § 3055 .................................................................................... 37

25 P.S. § 3146.1 ................................................................................. 18

25. P.S. § 3146.5 .................................................................................. 8

25 P.S. § 3146.6 ........................................................................... passim

25 P.S. § 3146.8 ........................................................................... passim

25 P.S. § 3150.11 ............................................................................... 18

25 P.S. § 3150.15 ...................................................................................8

25 P.S. § 3150.16 ...........................................................................passim

42 P.S. § 7533 ..............................................................................11, 19

52 U.S.C. § 10101 .........................................................................passim

## Constitutional Provisions

PA. CONST. art. I, § 5 ...........................................................................33

U.S. CONST. art. I, § 4, cl. 1..............................................................28, 29

## STATEMENT OF JURISDICTION

The Court has exercised King's Bench authority over this matter.  *See* Order of October 21, 2022.  Accordingly, the Court has invoked "a swift process and remedy appropriate to the exigencies," *In re Bruno*, 101 A.3d 635, 670 (Pa. 2014), of reiterating that the General Assembly's date requirement for absentee and mail-in ballots is mandatory such that election officials may not pre-canvass, canvass, or count any noncompliant ballot in the 2022 general election and beyond, *see* 25 P.S. §§ 3146.6(a), 3150.16(a); *see also See In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1079–80 (2020) (Opinion of Justice Wecht); *id.* at 1090–91 (Opinion of Justices Dougherty, Saylor, and Mundy) (*In re 2020 Canvass*).

## ORDER OR OTHER DETERMINATION IN QUESTION

No dispute is pending in a lower court.  *See Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 884 (Pa. 2020); *Commonwealth v. Williams*, 129 A.3d 1199, 1206 (Pa. 2015).  Instead, this matter presents the question of the proper interpretation of 25 P.S. §§ 3146.6(a) and 3150.16(a), where the General Assembly has mandated that a voter who chooses to vote via absentee or mail-in ballot "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot.  25 P.S. §§ 3146.6(a), 3150.16(a).

## SCOPE OF REVIEW AND STANDARD OF REVIEW

Each of the issues to be addressed by the Court "presents a pure question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Pa. Dem. Party v. Boockvar*, 238 A.3d 345, 355 (Pa. 2020) (citing *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017)).

## STATEMENT OF THE QUESTIONS INVOLVED

a.     Do the Petitioners have standing to bring the instant appeal?

**SUGGESTED ANSWER:     Yes.**

b.     Does the Election Code's instruction that electors "shall . . . date" absentee and mail-in ballots, 25 P.S. §§ 3146.6(a); 3150.16(a), require that the votes of those electors who do not comply with that instruction are not counted?

**SUGGESTED ANSWER:     Yes.**

c.     Assuming, *arguendo*, that this Court answers the second issue in the affirmative, would such a result violate the materiality provision of the Civil Rights Act of 1964? *See* 52 U.S.C. § 10101(a)(2)(B).

**SUGGESTED  ANSWER:     No.**

## STATEMENT OF THE CASE

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall . . . fill out, date and sign the declaration" printed on the outer

envelope of the ballot.  25 P.S. §§ 3146.6(a), 3150.16(a).  A majority of this Court has already held that any absentee or mail-in ballot that does not comply with the General Assembly's date requirement is invalid and cannot be counted in any election after the 2020 general election.  *See In re 2020 Canvass*, 241 A.3d at 1079–80 (Opinion of Justice Wecht); *id.* at 1090-91 (Opinion of Justices Dougherty, Saylor, and Mundy).

In the first two cases after *In re 2020 Canvass*, the Commonwealth Court adhered to the majority's construction of the date requirement and denied requests to count undated absentee or mail-in ballots.  On both occasions, this Court allowed the Commonwealth Court's decisions to stand.  *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022) (unpublished), *appeal denied*, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022) (unpublished), *appeal denied* 271 A.3d 1285 (Pa. 2022).

Four days after this Court resolved *Ritter*, individual voters filed a new lawsuit in federal court claiming that Pennsylvania's date requirement violates federal law.  A panel of the Third Circuit held that application of the date requirement to preclude counting of undated ballots somehow violates the federal materiality statute, which regulates how election officials determine whether an "individual is qualified under State law to vote."  52 U.S.C. § 10101(2)(B).  The U.S. Supreme Court vacated that

holding earlier this month. *See Migliori v. Cohen*, No. 22-1499 (3d Cir. May 27, 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.). And when addressing a request for a stay at an earlier stage in that case, three Justices opined that the Third Circuit's now-vacated holding is "very likely wrong" on the merits because it rested upon a misconstruction of the materiality provision. *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay).

Meanwhile, the Commonwealth Court twice has invoked the now-vacated decision in *Migliori* to depart from the General Assembly's date requirement and the majority's construction in unpublished, non-precedential cases arising out of the 2022 primary election. *See McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. June 2, 2022) (unpublished); *Chapman v. Berks County Bd. of Elecs.*, 2022 WL 4100998, *6 (Pa. Commw. Aug. 19, 2022) (unpublished). In those cases, the Commonwealth Court held that treating the date requirement as mandatory violates state law and the federal materiality provision. *See McCormick*, 2022 WL 2900112 at *10-*14; *Chapman*, 2022 WL 4100998 at *13-*25.

Following the U.S. Supreme Court's vacatur of *Migliori*, the Acting Secretary of the Commonwealth doubled down on guidance that purports to direct county boards of elections to "include[] in the canvass and pre-canvass . . . [a]ny ballot-return envelope that is undated or dated with an incorrect date but has been timely

received." Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* (Sept. 26, 2022), available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/2022-09-26-Examination-Absentee-Mail-In-Ballot-Return-Envelopes-3.0.pdf. That guidance rests on the two non-precedential Commonwealth Court decisions issued earlier this year. *See Acting Secretary of State Issues Statement on SCOTUS Order on Undated Mail Ballots* (Oct. 11, 2022), available at https://www.media.pa.gov/pages/state-details.aspx?newsid=536. On the very day that the U.S. Supreme Court vacated *Migliori*, the Acting Secretary stated that "every county is expected to include undated ballots in their official returns for the Nov. 8 election, consistent with the Department of State's guidance." *Id.*

The Acting Secretary's guidance is particularly odd, however, given that her own website advises the public that "[i]f you do not complete the declaration on the return envelope" of an absentee or mail-in ballot, "your ballot will not be counted." *See* Mail-In and Absentee Voting, https://www.vote.pa.gov/Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx. County boards of elections have likewise informed voters that their ballots "will not be counted" if they do not comply with the date requirement. *See, e.g.*, Philadelphia County Voter Declaration ("YOUR BALLOT <u>WILL NOT</u> BE COUNTED UNLESS . . . [y]ou sign and date the voter's declaration in your own handwriting"), a copy of which is attached to the

Application as Ex. C.  And as two of its three commissioners have confirmed, the Butler County Board of Elections "will not include in the pre-canvass or canvass any ballot-return envelope that is undated or dated with an incorrect date absent an order of the Pennsylvania Supreme Court to the contrary."  Declaration of Leslie A. Osche ¶ 8, a copy of which is attached as Ex. A; Declaration of Kimberly D. Geyer ¶ 8, a copy of which is attached as Ex. B.

Thus, the Acting Secretary disagrees with the conclusion of the majority of this Court that the General Assembly's date requirement is mandatory and valid, as well as with the statement on her own website and the instructions of county boards of elections that a noncompliant ballot will not be counted.  But before this Court, the Acting Secretary reiterates her agreement that the General Assembly's signature requirement for absentee and mail-in ballots is mandatory under state law and valid under federal law.  *See* Acting Sec'y Ans. 15-23.  The date and signature requirements, of course, appear in the same sentence of §§ 3146.6(a) and 3150.16(a) and form part of the same declaration on an absentee or mail-in ballot.  *See also* 25 P.S. § 3146.6(a) (voter "shall . . . fill out, date and sign the declaration"); *id.* § 3150.16(a) (same).  The Acting Secretary makes no effort to reconcile her apparent position that the General Assembly's *single* use of the term "shall" in that sentence

6

conveys *two* different meanings: a mandatory and valid meaning for the signature requirement and a directory or invalid meaning for the date requirement.

Petitioners are Pennsylvania voters and political party committees that support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Petitioners therefore ask the Court to reiterate that the General Assembly's date requirement—like its signature requirement in the same statutory sentence and its secrecy-envelope and delivery requirements in the same statutory paragraphs, *see id.* §§ 3146.6(a), 3150.16(a)—is mandatory such that election officials may not pre-canvass, canvass, or count a noncompliant absentee or mail-in ballot. *See* Acting Sec'y Ans. 15-23 (conceding that signature requirement is mandatory and valid); *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1231-32 (Pa. 2004) ("*Appeal of Pierce*") (holding that delivery requirement in § 3146.6(a) is mandatory); *Pa. Dem. Party*, 238 A.3d at 379–80 (holding that secrecy-envelope requirement in § 3150.16(a) is mandatory).

In particular, Petitioners ask the Court to enter an order declaring that county boards of elections may not pre-canvass, canvass, or count any absentee or mail-in ballot that is undated or contains a facially incorrect date and that the Acting Secretary's contrary guidance is invalid. In the alternative, and at a minimum, Petitioners ask the Court to direct county boards of elections to segregate any undated or incorrectly dated absentee or mail-in ballots received in connection with

the 2022 general election.  A ballot has a "facially incorrect" date or is "incorrectly dated" under the order Petitioners seek when the date provided on the declaration falls outside the period between (i) the date on which election officials mailed the absentee or mail-in ballot to the individual and (ii) the date on which officials received the completed ballot from the individual.  *See* 25 P.S. §§ 3146.5, 3150.15.

## <u>SUMMARY OF THE ARGUMENT</u>

The Court should declare that the General Assembly's date requirement is mandatory and that the Acting Secretary's guidance is unlawful before the pre-canvass and canvass of absentee and mail-in ballots begins on Election Day, November 8, 2022.  *See* 25 P.S. § 3146.8.  The validity of undated absentee and mail-in ballots already led to costly and unnecessary post-election lawsuits after the 2021 election and again after the 2022 primary election.  *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993, *appeal denied*, 273 A.3d 508; *Ritter*, 272 A.3d 989, *appeal denied* 271 A.3d 1285 (Pa. 2022); *McCormick*, 2022 WL 2900112; *Chapman*, 2022 WL 4100998.  Moreover, the issue "could well affect the outcome of the fall elections" in which Petitioners seek to exercise their constitutional rights to vote and to participate.  *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissenting from the denial of the application for stay).  And the available information suggests that, absent an order from this Court, county boards of elections across the Commonwealth may take different approaches to whether,

**Montgomery County
Election Board Meeting Agenda
November 7, 2022 Continuation of the
Recessed November 4, 2022 Meeting**

## Call to Order
Calling the reconvened November 4th, 2022 meeting of the Montgomery County Election Board to Order.

## Amendment of Agenda – Josh Stein/John Marlatt
Chair Lawrence made a motion to allow amendments to the agenda.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

Chair Lawrence made a motion to add Approval of Minutes, Appointment of Temporary Poll Workers, Appointment of Canvass Board, Appointment of Election Tabulators, Authorization of Appointment of County Employees to the Canvass and Provisional Boards, Motion to Include Absentee and Mail-in Ballots with incomplete dates, and Motion to Include Absentee and Mail-in Ballots Where Voters Used Their Birthdates to the agenda.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

## Election Board Comments
There was no comment.

## Public Comment on Items Appearing on the Agenda
1. Giuseppe Craney-Monticelli commented on ballots being completed properly and receiving a more detailed agenda.
2. Pauline Braccio commented on becoming a tabulator.
3. David Morgan commented on election board processes.

4. Giuseppe Craney-Monticelli and Pauline Braccio made objections to allowing David Morgan to speak.
5. Adrian Seltzer commented on effectively completing ballots for validity and becoming a tabulator.
6. Jamie Mogul commented on counting and curing ballots, qualifying ballots, and would like to see the list of tabulators.
7. Suzanne Stepanek commented on including general public comment in this meeting.

## Approval of Minutes

Chair Lawrence made a motion to approve the October 20th, 2022 minutes of the Montgomery County Election Board.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote, and it was adopted.

## Appointment of Temporary Poll Workers – Dori Sawyer

Chair Lawrence made a motion that the people whose names are set forth on the attached document titled "Poll Worker Appointments for the 2022 General Election" as non-elected poll workers are designated to serve as members of the various local boards of elections throughout Montgomery County, for the date of the General Election, November 8th, 2022 only.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

## Appointment of Canvass Board – Dori Sawyer

Chair Lawrence made a motion to appoint the names set forth on the attached document titled "Canvass Board Appointments for the 2022 General Election" to work as members of the mail-in and absentee ballot Canvass Board to assist in the Computation of the General Election, held on November 8th, 2022.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

## Appointment of Election Tabulators – Dori Sawyer

Chair Lawrence made a motion to appoint the names set forth on the attached document titled "Election Tabulator Appointments for the 2022 General Election"

to work as members of the Election Tabulation Board to assist in the Computation of the General Election, held on November 8th, 2022.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

### Authorization of County Employees to be appointed to the Canvass and Provisional Boards – Dori Sawyer

Chair Lawrence made a motion to authorize employees on the attached list of individuals titled "County Employees for the 2022 General Election" to be appointed to work as members of the mail-in and absentee ballot Canvass Board, Provisional Board and Tabulation Board to assist in the Computation of the November 8th, 2022 General Election.

Vice Chair Arkoosh seconded the motion.

There was no Board comment. There was no public comment. Chair Lawrence brought the motion to a vote and it was adopted.

### Including Absentee & Mail-In Ballots with Partial Dates – John Marlatt

Chair Lawrence made a motion to authorize the Canvass Board to incorporate ballots where the information in the date line is sufficient to determine that the ballot was returned within the appropriate date range into the Computation of the November 8, 2022 General Election.

Vice Chair Arkoosh seconded the motion.

Chair Lawrence commented that the General Assembly should offer more clarity on qualifying ballots regarding technicality in dates and wants to franchise the voter.

Vice Chair Arkoosh commented that the canvass board will determine the attempted dating of ballots which are segregated from ballots with no date and will continue to support franchising the voter.

Commissioner Gale commented there should be clarity from the General Assembly on election laws and that the Supreme Court ruling states incorrect and undated ballots should not be counted. Commissioner Gale will not support this motion and requests a "roll call" vote.

There was no further Board comment. There was no public comment. Chair Lawrence brought the motion to a vote with Vice Chair Arkoosh and Chair Lawrence voting "aye" and Commissioner Gale "opposed". The motion was adopted.

**Inclusion of Absentee & Mail-In Ballots Where Voters Listed Their Birthdate in the Date Line in the Canvass – John Marlatt**

Chair Lawrence made a motion to authorize the Canvass Board to incorporate ballots where the voter listed their birthdate in the date line of the Voter's Declaration on the return envelope into the Computation of the November 8, 2022 General Election.

Vice Chair Arkoosh seconded the motion.

Chair Lawrence commented in support of the motion to enfranchise voters.

Commissioner Gale commented in opposition to this motion, and further explains the problems associated with mail in ballots, making this the County's responsibility to determine validity and not the voters, and will not support incorrectly or undated ballots to be counted. Commissioner Gale requests a "roll call" vote.

Vice Chair Arkoosh commented on enfranchising the voter who may have made a mistake but went through all the proper steps to get their ballot in on time.

There was no further Board comment. There was no public comment. Chair Lawrence brought the motion to a vote with Vice Chair Arkoosh and Chair Lawrence voting "aye" and Commissioner Gale "opposed".  The motion was adopted.

**Closing Board Comments**

Chair Lawrence thanked all election day staff.

**Adjournment**

Chair Lawrence made a motion to adjourn the November 4, 2022 meeting of the Montgomery County Board of Elections.

Vice Chair Arkoosh seconded the motion.

There was no Board comment.  There was no public comment. Chair Lawrence brought the motion to a vote and the meeting was adjourned.