IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

PENNSYLVANIA STATE                    :
CONFERENCE OF THE NAACP,               :
ET. AL.                                :          Case No. 1:22-CV-339-SPB
                                       :
          Plaintiffs,                  :
                                       :
          v.                           :
AL SCHMIDT, ET. AL.                    :
                                       :
          Defendants.                  :

---

**RESPONSE OF DEFENDANT, LANCASTER COUNTY BOARD OF ELECTIONS, IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The court should deny plaintiffs' motion for summary judgment and should grant summary judgment to defendant, Lancaster County Board of Elections ("LCBOE"), dismissing all claims against it with prejudice. As explained in LCBOE'S motion for summary judgment (ECF No. 267), each plaintiff lacks Article III standing to maintain any of their claims against LCBOE because no plaintiff has been injured by the conduct of LCBOE. Plaintiffs' motion changes nothing and it offers no evidence that plaintiffs maintain standing against LCBOE. Instead, they treat standing vis-à-vis LCBOE as an afterthought. But Article III standing is fundamental. Without evidence that plaintiffs have standing the Court should deny their motion for summary judgment.

Plaintiffs are asking the Court to hold LCBOE liable for its conduct in not counting undated and incorrectly dated ballots. That conduct resulted from two

orders of the Pennsylvania Supreme Court that required LCBOE not to count the ballots and was the same conduct that the other 66 county boards took. To hold LCBOE liable, plaintiffs must satisfy the standards of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiffs do not explain how LCBOE is liable under *Monell*. Under *Monell*, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was **the moving force** behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, (1997). Plaintiffs have not presented any undisputed evidence that LCBOE's **own** customs and policies were **the** moving force behind their alleged injuries. Accordingly, the Court should deny plaintiffs' motion for summary judgment.

I.   **PLAINTIFFS HAVE NOT SET FORTH UNDISPUTED MATERIAL FACTS INDICATING THEY HAVE STANDING TO SUE LCBOE.**

"Article III standing is essential to federal subject matter jurisdiction," *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016), and is "a threshold issue." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000). It is well settled that "to meet the irreducible constitutional minimum of Article III standing, a plaintiff invoking federal jurisdiction bears the burden of establishing three elements. *Hartig.*, 836 F.3d at 269. They are a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), as revised (May 24, 2016). Unlike at the pleading

stage, at this stage of the proceedings, plaintiffs must produce *evidence* that they have standing to pursue their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992) (To survive a motion for summary judgment for lack of standing, "the plaintiff can no longer rest on such mere allegations but must set forth by affidavit or other evidence specific facts.")

Plaintiffs have not presented any evidence that they have suffered an injury in fact caused by the conduct of LCBOE. Plaintiffs' concise statement of material facts and declarations irrefutably shows that none of the individual plaintiffs[1] live in Lancaster County, are registered to vote in Lancaster County, have voted in Lancaster County, and intend to vote in Lancaster County. Pls'. Concise Statement, ECF No. 283, ¶¶ 20-26. So, the individual plaintiffs have suffered no harm because of the conduct of LCBOE.

The associational plaintiffs' evidence as to standing against LCBOE is equally lacking. The associational plaintiffs cannot maintain an action on behalf of their members because have they have presented no evidence identifying "at least one identified member [who] ha[s] suffered or would suffer harm" because of the actions of the LCBOE. *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). They never identified any individual member suffering harm because of LCBOE conduct in their Rule 26 initial disclosures. They never identified any individual member suffering harm because of LCBOE's conduct in answers to discovery. And they do not

---

[1] Barry M. Seastead ("Seastead"), Marlene G. Gutierrez ("Gutierrez"), Aynne Margaret Pleban Polinski ("Polinski"), Joel Bencan ("Bencan"), and Laurence M. Smith ("Smith").

identify any individual member that suffered harm because of the conduct of LCBOE in support of their motion to dismiss.

Plaintiffs point to specific instances where LCBOE did not count a mailed ballot that had an incorrect or missing date in the November 2022 election. Yet the voters that cast those ballots are not parties to this litigation and plaintiffs have not identified any of those voters as members of their respective organizations. Plaintiffs cannot satisfy standing by pointing to some purported injury to a party not before the court.

The associational plaintiffs have also not presented any evidence that they diverted resources traceable to the actions of LCBOE.  Lead plaintiff PA NAACP presents no evidence it diverted any resources in Lancaster County. Rather it appears to have diverted resources to voters in Philadelphia, not Lancaster County. Pls. Concise Statement, ECF No. 283, ¶ 27(a).  Likewise, plaintiff LWV, indicates that its resources were directed to voters in Narberth and Lower Merion, which are located in Montgomery County. *Id.*, ¶ 28(e), (g). LWV does claim it attended meetings of the LCBOE but to advocate for notice and cure procedures. *Id.*, ¶ 28(f). But this litigation does not concern whether notice and cure procedures are required under the Civil Rights Act. Plaintiff POWER offers no evidence that its resources were diverted because of conduct of the LCBOE. In all events, its resources were diverted to focus on Philadelphia voters. *Id.*, ¶ 29(e). The associational plaintiffs, Common Cause, Make the Road, and B-PEP offer not a shred of evidence that any resources they diverted was because of the conduct of LCBOE. Still, plaintiffs present no evidence

that their diversion of resources was caused by LCBOE as opposed to the identical conduct of the other 66 county boards. In other words, plaintiffs have not shown that, but for LCBOE's conduct in not counting certain ballots, they would not have diverted resources. Moreover, the associational plaintiffs diverted their resources before a single ballot was counted or not counted by the LCBOE. So, any resources they diverted were not caused by LCBOE refusal to count undated or incorrectly dated ballots because that act came after the fact.

Plaintiffs relegate the threshold issue of standing to a single sentence in their brief. Pls'. Br., ECF No. 275, p. 24. Plaintiffs must show they suffered an injury caused by that conduct of the LCBOE. Here, plaintiffs have not presented any evidence they suffered harm because LCBOE did not count undated or incorrectly dated mailed ballots. In sum, none of the plaintiffs have presented evidence of particularized and concrete harms caused *by the conduct of the LCBOE*. Plaintiffs might have suffered an injury. Plaintiffs might have suffered an injury because of the conduct of one of the other defendants. But they offer no evidence that they suffered an injury because of the conduct of LCBOE. Accordingly, the Court should deny defendants' motion for summary judgment.

## II. PLAINTIFFS HAVE NOT ESTABLISHED MUNICIPAL LIABILITY AGAINST LCBOE UNDER *MONELL*.

Even if plaintiffs could establish standing against LCBOE, they still need to establish that LCBOE is liable under the Supreme Court's holding in *Monell*. Plaintiffs have not done that.

For purposes of determining liability under § 1983, counties' agencies, like LCBOE, are treated as municipal entities and the Court must address the scope of LCBOE's liability under *Monell*. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Under *Monell* and its progeny, LCBOE can only be "held liable for the violation of a constitutional right under 42 U.S.C. § 1983 [] when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." *Id*. Moreover, "under § 1983, local governments are responsible only for **their own illegal acts**." *Connick v. Thompson*, 563 U.S. 51, 60, (2011) (emphasis added and citations omitted) Once a plaintiff identifies the official policy or custom of the municipality, "[t]he plaintiff[s] must also demonstrate that, through its deliberate conduct, the municipality was **the moving force** behind the injury alleged." *Brown*, 520 U.S. at 404, (emphasis added). Plaintiffs barely explain how LCBOE is liable under *Monell*.

Plaintiffs vapid attempt at satisfying the strictures of *Monell* is relegated to a one sentence in their brief. They argue that there is "no genuine dispute that the defendant county boards, acting under color of state law, refused to count thousands of voters' ballots based on the envelope-date issue." Pls.' Br., ECF No. 275, p. 24 of 32. But to establish liability under § 1983 plaintiffs must do more than simply show or claim some person acted under "color of state law." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) ("[n]ot all state action rises to the level of a custom or policy.") Rather, the law is clear, plaintiffs must show that LCBOE refused to count ballots pursuant to **its own** official policies and customs. "In a § 1983 claim

6

against a local government unit, liability attaches **when it is the government unit's policy or custom itself** that violates the Constitution." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991) (emphasis added). Plaintiffs never identified any LCBOE policy, custom, or practice that caused their injuries. Clearly, it was not LCBOE's own policy and custom that caused harm to plaintiffs, rather it the orders of the Pennsylvania Supreme Court.

Still, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was **the moving force** behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis added). Plaintiffs have not presented and cannot present any evidence that the LCBOE's conduct was **the moving force** behind their alleged injuries. As plaintiffs concede, LCBOE's conduct in not counting undated or incorrectly dated ballots was no different than conduct of the other 66 counties. Each county did not count undated or incorrectly dated ballots and they did so because they were ordered by the Supreme Court of Pennsylvania not to count them. LCBOE's conduct could be a contributing force but surely is not **the** moving force behind plaintiffs' alleged injuries.

Clearly, LCBOE's conduct was not the moving force behind the alleged injuries to the individual plaintiffs, each of whom is not a Lancaster County voter and who did not vote in Lancaster County. LCBOE's conduct was also not the moving force behind the associational plaintiffs' alleged injuries because the associational plaintiffs. The associational plaintiffs present no evidence that they would have acted

any differently **but for** LCBOE's decision to comply with the Pennsylvania Supreme Court's orders. Simply put, LCBOE's conduct was also not **the** moving source behind the associational plaintiffs' injuries.

Finally, any questions concerning whether LCBOE's conduct was the moving force for purposes of establishing liability under *Monell* should be left to the jury. *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) ("[a]s long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury.") At best, plaintiffs' motion for summary judgment sets up a fact question on causation that the jury or finding of fact must determine at trial. Accordingly, the Court should deny plaintiffs' motion for summary judgment.

### III.   PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Assuming that somehow plaintiffs get over the hurdle of Article III standing and establishing liability under *Monell*, in all events, plaintiffs' claims fail as a matter of law. The materiality provision of 52 U.S.C. § 10101(a)(2)(B) is errors or omissions related to determining an individual's qualifications to vote. In particular, it is aimed at racially discriminatory practices used to stifle the ability of minorities to register to vote. It is not a rule of general applicability governing all election practices. This conclusion is supported by the legislative history of statute, the text of statute, and the precedent interpreting statute.

Section 10101(a)(2)(B) was passed as part of the Civil Rights Act of 1964. PL 88-352, July 2, 1964, 78 Stat. 241. "The measure was at the time the latest entry in

a spurt of federal enforcement of voting rights after a long slumber following syncopated efforts during Reconstruction." *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). It was enacted with an "aim at eliminating racially motivated practices which restrict exercise of the elective franchise." *Ballas v. Symm*, 351 F.Supp. 876, 888–89 (S.D. Tex. 1972), aff'd, 494 F.2d 1167 (5th Cir. 1974). Although initially passed as part of the Civil Rights Act of 1964, the provisions of section 52 U.S.C. § 10101(a)(2)(b) were incorporated into the Voting Rights Act of 1965, PL 89-110, August 6, 1965, 79 Stat. 437. The VRA likewise had a single aim of eliminating racial discrimination in voting. *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 534 (2013) ("The Voting Rights Act of 1965 employed extraordinary measures to address an extraordinary problem.") It is among a series of provisions intended to prevent race or color inhibiting the right to vote. 52 U.S.C. § 10101(a). Among those provisions are a prohibition on literacy tests, 52 U.S.C. § 10101(a)(2)(C), and penalties for voter intimidation, 52 U.S.C. § 10101(a)(3)(b).

The text of Section 10101 further supports its aim at eradicating racial discrimination in voting. Section 10101(a) states "race, color, or previous condition not to affect right to vote." 52 U.S.C. § 10101(a). Section 10101 guarantees the right to vote "without distinction of race, color, or previous condition of servitude." 52 U.S.C.A. § 10101(a)(1).

Its legislative history and text have led courts to conclude that the primary purpose Section 10101(a)(2)(B) is "to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would

increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). It was "enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements." *Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 839 (S.D. Ind. 2006), aff'd sub nom. *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008). In sum, Section 10101(a)(2)(b) was designed to eliminate errors and omissions which could be used as a pretext to discriminate against black voters and to deny them the ability to vote. And Congress never intended it to apply, as plaintiffs wish here, to a broad swath of state imposed voting regulations. Here, there is no evidence that LCBOE's motivation for not counting undated or incorrectly dated ballots was to engage in racial discrimination. Accordingly, the Court should deny summary judgment.

## CONCLUSION

LCBOE recognizes that the Court is being called upon to resolve an important dispute. But it is a dispute to which LCBOE should not be party. Plaintiffs have not demonstrated that they maintain standing to make LCBOE a proper party. And, even if they did, present no evidence that LCBOE can be liable on any of their claims to maintain it as a party. In all events, the Court can resolve the issues without LCBOE participation. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022) Accordingly, it respectfully requests that the Court deny plaintiffs' motion for summary judgment against it and grant summary judgment in its favor dismissing all claims against it.

Respectfully submitted,

Date: May 5, 2023

*/s/ Walter S. Zimolong*
WALTER S. ZIMOLONG III, ESQ.
wally@zimolonglaw.com
JAMES J. FITZPATRICK III, ESQ.
james@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
*Attorneys for Defendant*
*Lancaster County Board of*
*Elections*

11

## CERTIFICATE OF SERVICE

I hereby certify the foregoing has been filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Western District of Pennsylvania.  I further hereby certify that, in accordance with Fed. R. Civ. P. 5, service has been made upon counsel of record via ECF.

Respectfully submitted,

Date: May 5, 2023

*/s/ Walter S. Zimolong III*
Walter S. Zimolong III, Esq.
wally@zimolonglaw.com
James J. Fitzpatrick III, Esq.
james@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
*Attorneys for Defendant*
*Lancaster County Board of*
*Elections*

12