# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No.: 1:22-cv-00339<br>)<br>) |
| v. | ) Judge Susan P. Baxter<br>) |
| LEIGH M. CHAPMAN, *et al.*, | )<br>) |
| Defendants. | )<br>) |

**INTERVENOR-DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................2

    I.    MANDATORY APPLICATION OF THE DATE REQUIREMENT
        DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION .............2

    II.   MANDATORY APPLICATON OF THE DATE REQUIREMENT
        DOES NOT VIOLATE EQUAL PROTECTION .................................................11

CONCLUSION..................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022) ........................................................................1, 5, 9

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) ............................................................................. passim

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) ....................................................9

*Clingman v. Beaver*, 544 U.S. 581 (2005) ....................................................................................8

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) ...............................................................10

*Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181 (2008) ..........................................................9

*Epic Sys. Corp. v. Lewis*, 138 S. Ct 1612 (2018) .........................................................................8

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ..............................4, 7

*Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) .................10

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ......................................................10

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*,
    241 A.3d 1058 (Pa. 2020) .........................................................................................................9

*League of Women Voters of Ark. V. Thurston*, No. 5:20-cv-05174,
    2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) ......................................................................10

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ...................................................10

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ...........................................................12

*Obama for Am. v. Husted*, 888 F. Supp. 2d 897 (S.D. Ohio) .....................................................12

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022) ............................................................................ passim

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005) ......................11

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) ................................................................7

*Thrasher v. Ill. Republican Party*, 2013 WL 442832 (C.D. Ill. Feb. 5, 2013) ..........................11

*Vote.Org v. Callanen*, 39 F.4th 297 (5th Cir. 2022) ..............................................................4, 10

**Statutes**

25 Pa. C.S. § 3515..................................................................................................................12

52 U.S. C. § 10101............................................................................................................3, 5, 6

Fed. R. Civ. P. 56.......................................................................................................................1

**INTRODUCTION**

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Intervenor-Defendants therefore respectfully ask the Court to deny Plaintiffs' motion for summary judgment and to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections.

Plaintiffs' motion fails "as a matter of law," Fed. R. Civ. P. 56(a), to provide any basis for this Court to strike down the General Assembly's date requirement for absentee and mail-in ballots that the Pennsylvania Supreme Court upheld as mandatory just a few months ago, *see Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022). Indeed, Plaintiffs' memorandum in support of their motion largely recycles their meritless arguments from the motion to dismiss stage. But no amount of discovery can cure the legal flaws in Plaintiffs' meritless theory that the date requirement violates the federal materiality provision and the U.S. Constitution.

*First*, Plaintiffs' Count I rests on a counter-textual and nonsensical statutory reading. As Intervenor-Defendants have explained—and three U.S. Supreme Court Justices have agreed—the date requirement does not even *implicate*, let alone violate, the federal materiality provision. *See Ritter v. Migliori*, 142 S. Ct. 1824, 1824-25 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). In fact, Plaintiffs' contrary construction of the federal materiality provision would invalidate broad swaths of commonplace and commonsense voting rules nationwide, subjecting state election laws to federal superintendence that Congress did not intend and did not enact.

*Second*, Plaintiffs make only passing mention of their constitutional claim in Count II. That claim, moreover, asks the Court to misapply hornbook Equal Protection principles. It also rests

on an alleged statutory exception to the date requirement that does not exist—and that Plaintiffs hardly even attempt to prove.

As if the legal failings in Plaintiffs' claims were not enough, Plaintiffs also simply ignore record evidence that forecloses their claims—including evidence *they* proffered. Plaintiffs do not even mention that the date requirement was used to detect voter fraud in *Commonwealth v. Mihaliak*—or that the fraudster's handwritten date was the only evidence of fraud on the face of the ballot envelope in that case. *See* Responsive Statement of Facts ("RSOF") ¶ 128-32. And Plaintiffs' motion makes no mention of their own putative expert's analysis, presumably because he *agreed* that the date requirement helped to detect fraud in *Mihaliak*, adopted an overly expansive definition of "disenfranchisement" that would imperil all state voting rules, and conceded that the date requirement applies to overseas and military voters. *See id.* ¶ 131-32, 138-41, 143.

Plaintiffs' claims fail on the law and facts. The Court should deny Plaintiffs' motion for summary judgment.

## ARGUMENT

**I.  MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION**

As Intervenor-Defendants already have explained, Plaintiffs' claim that the date requirement violates the federal materiality provision fails as a matter of law. *See* ECF No. 271 at 4-17; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay). At the threshold, Plaintiffs lack a private right of action to enforce the materiality provision, and Count I fails for that reason alone. *See* ECF No. 271 at 4-5. But even if the Court reaches the merits, Count I still fails because the date requirement does not even implicate, let alone violate, the federal materiality provision. *See id.* at 5-17; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay). Indeed,

Count I fails at least three essential elements of the federal materiality provision because mandatory application of the date requirement does not affect a "determin[ation] whether such individual is qualified under state law to vote," 52 U.S.C. § 10101(a)(2)(B), "deny the right of any individual to vote," *id.*, or pertain to an "application, registration, or other act requisite to voting," *id.*; *see also* ECF No. 271 at 5-17; *Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay). Each of these failures independently requires summary judgment against Plaintiffs on Count I. *See* ECF No. 271 at 5-17.

Plaintiffs offer five arguments in an attempt to shoehorn the date requirement into the narrow sweep of the federal materiality provision. All fail.

*First*, Plaintiffs concede that "the voter-written date on the mail ballot envelope is not used in any way to determine an individual's qualification to vote." ECF No. 275 at 19. That concession *disproves* Plaintiffs' materiality claim and forecloses Count I as a matter of law. *See* ECF No. 271 at 8-11. By its express terms, the materiality provision applies only to paper-based errors or omissions that affect a "determin[ation] whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B); *see also* ECF No. 271 at 8-11. It therefore regulates requirements and practices related to qualifications and registration to vote, not rules "that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility."). In other words, to fall within the narrow scope of the materiality provision, "it is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications." *Ball v. Chapman*, 289 A.3d 1, 38 (Pa. 2023) (Opinion of Justice Brobson) (emphasis original).

3

Statutory context confirms this construction. The materiality provision is nested within and among other statutory sections that address voter qualifications. *See* ECF No. 271 at 9-10. Thus, like those other sections, the materiality provision "relates to determinations of *who* may vote—*i.e.*, voter qualifications," not what voters must *do* to complete and cast a valid ballot, *Ball*, 289 A.3d at 37 (Opinion of Justice Brobson) (emphasis original).

Even the legislative history Plaintiffs cite is in accord. That legislative history recounts that Congress enacted the materiality provision "in response to the practice of Black voters' *registrations* being rejected for 'minor misspelling errors or mistakes in age or length or residence,' or other 'trivial reasons' in filling out the requisite forms." ECF No. 275 at 15 (quoting H. Rep. No. 88-914 at 2491) (emphasis added); *see* ECF No. 271 at 9-11; *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). It therefore underscores that the materiality provision addresses only voter qualification and registration practices, not "the rules for casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay).

For all of these reasons, because "the voter-written date on the mail ballot envelope is not used in any way to determine an individual's qualification to vote," ECF No. 275 at 19, it does not even implicate, let alone violate, the federal materiality provision, *see* ECF No. 271 at 8-11. Count I fails as a matter of law for this reason alone.

*Second*, Plaintiffs argue that mandatory application of the date requirement results in "denial of the right to vote." ECF No. 275 at 18. Not so: mandatory rules governing the act of completing and casting a ballot do not deny anyone the right to vote. *See* ECF No. 271 at 5-8; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022) ("It cannot be that any

4

requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision). Thus, "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)). Rather, the right to vote has been "forfeit[ed]": "that individual's ballot is not counted because he or she did not follow the rules for casting a ballot." *Id.*

After all, the consequence of failing to comply with the date requirement is not disqualifying the voter, stripping the individual's right to vote, or removing the individual from the list of eligible voters. *See Ball*, 284 A.3d at 1189; *see also* ECF No. 271 at 5-9. Indeed, that individual *retains* the right to vote in compliance with the state-law rules for completing and casting a ballot and on equal terms with all other eligible voters in Pennsylvania. *See Ball*, 284 A.3d at 1189; *see also* ECF No. 271 at 5-9. Instead, the consequence is that election officials carry out the General Assembly's directive not to count the individual's ballot—which is exactly what occurs when a voter shows up to the polls after Election Day, fails to use a secrecy envelope for or to sign an absentee or mail-in ballot, attempts to vote for too many candidates for a single office, returns the ballot to the wrong location, or arrives at the wrong polling place. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); ECF No. 271 at 5-9.

Plaintiffs attempt to bolster their construction by invoking the statutory definition of "vote." *See* ECF No. 275 at 17-18 (citing 52 U.S.C. § 10101(a)(3)(A), (e)). But the materiality provision covers only denials of the "*right*" to vote, not application of neutral and mandatory rules

5

to the *act* of voting.  52 U.S.C. § 10101(a)(2)(B) (emphasis added); *see* ECF No. 271 at 6-7.  The materiality provision therefore does not guarantee that an invalid ballot will be counted where an individual fails to cast it in compliance with state law, as Plaintiffs contend.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see* ECF No. 271 at 5-9.  In other words, the question is not, as Plaintiffs argue, whether mandatory application of the date requirement results in a ballot not being "count[ed]."  ECF No. 275 at 18.  Rather, the question is whether such mandatory application deprives any individual of the *right* to have their ballot counted where they have complied with the state-law rules for completing and casting it.  *See* ECF No. 271 at 5-7; 52 U.S.C. § 10101(a)(2)(B).  Mandatory application of the state-law date requirement results in no such denial of the right to vote.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see* ECF No. 271 at 5-9.

*Third*, Plaintiffs argue that the materiality provision is a "broader prophylactic" that goes beyond the state-law qualification and registration practices targeted by Congress.  ECF No. 275 at 16.  In particular, Plaintiffs assert that the date requirement falls within the materiality provision's coverage of "other act[s] requisite to voting."  *Id.* at 19.  That assertion, however, fails as a matter of straightforward statutory construction.  The materiality provision lists "application, registration, and other act requisite to voting" as matters within its scope.  52 U.S.C. § 10101(a)(2)(B).  Because "application" and "registration" refer to acts to confirm a voter's qualifications, so too does "other act requisite to voting."  *See, e.g.*, *Ball*, 289 A.3d at 38 n.11 (Opinion of Justice Brobson) (the "understanding that the scope of the [materiality provision] is limited to records or papers used in determining a voter's qualifications is supported by the *ejusdem generis* canon of statutory construction"); ECF No. 271 at 11-12.  It would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-

in ballots and the date requirement. *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Ball*, 289 A.3d at 26 (Opinion of Justice Wecht) ("Logic and ordinary rules of statutory construction … dictate that an 'act requisite to voting' must be different from voting itself."). Voting is voting; it is not an act requisite to voting. *See* ECF No. 271 at 11-12.

This proper construction of the statutory list leaves plenty of work for the "other act requisite to voting" term to do. In particular, this term prevents "Jim Crow" states, ECF No. 275 at 16, from circumventing the materiality provision by disqualifying voters based on practices the state calls something other than "application" or "registration." The "other act requisite to voting" term therefore is part and parcel of Congress's effort "to counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African-Americans." *Fla. State Conf. of the NAACP*, 522 F.3d at 1173.

Plaintiffs' contrary construction is untenable. Indeed, under Plaintiffs' reading, "other act requisite to voting" would encompass not only "complet[ing] the envelope form" on an absentee or mail-in ballot but, in fact, *all* paper-based practices and rules related to voting. ECF No. 275 at 18-19. That reading, however, improperly treats the terms "application" and "registration" in the materiality provision "as surplusage." *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004). After all, if Congress meant to sweep all paper-based practices and rules into the "other act[s] requisite to voting" term, there would have been no reason for it to include "application" and "registration" in the statutory list. *See, e.g.*, *id.* But Congress did include "application" and "registration" in the list—and those terms delineate, rather than are subsumed by, the "other act requisite to voting" term that completes the list. *See, e.g.*, *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito,

7

J., dissenting from the denial of the application for stay); *Ball*, 289 A.3d at 26 (Opinion of Justice Wecht); *id.* at 38 n.11 (Opinion of Justice Brobson); *see also* ECF No. 271 at 11-12.

Moreover, the implications of Plaintiffs' proposed reading are breathtakingly broad—and, unsurprisingly, incorrect. *See* ECF No, 271 at 12-16. According to Plaintiffs' own putative expert—whom their brief nowhere mentions—"disenfranchise[ment]" and denial of the right to vote occur whenever "an eligible voter['s] … ballot [is] not counted," even where state law *requires* the ballot not to be counted. RSOF ¶ 138. Thus, Plaintiffs' reading of the materiality provision "would subject virtually every electoral regulation" related to voting records and papers nationwide to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). Indeed, under Plaintiffs' reading, "no election law that imposes informational requirements unrelated to determining voter qualification can survive a [§ 10101(a)(2)(B)] challenge." *Ball*, 289 A.3d at 39 (Opinion of Justice Brobson). For example, Plaintiffs' reading would imperil the signature requirement contained in the same statutory sentence as the date requirement, the secrecy-envelope requirement, the overvote prohibition, and even commonplace voter assistance declarations. *See* ECF No. 271 at 13-16. In fact, under Plaintiffs' reading, numerous state election rules in Pennsylvania and elsewhere have been invalid since Congress enacted the federal materiality provision nearly six decades ago. *See* ECF No. 271 at 15-16.

Merely to point out the implications of Plaintiffs' proposed reading of the materiality provision is to refute it. Congress did not hide the "elephant" of federal superintendence of all paper-based voting practices and rules in the "mousehole" of the federal materiality provision or the "other act requisite to voting" list item. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018).

*Fourth*, Plaintiffs suggest that the date requirement must not be material under state law because, in their view, it does not serve any state interest or "perform any … function." ECF No. 275 at 21. But, of course, the Pennsylvania Supreme Court's declaration that the date requirement is mandatory and material under state law is conclusive and binding on this Court. *See Ball*, 284 A.3d 1189. Moreover, Plaintiffs ignore that the date requirement performs important functions and serves "unquestionable purpose[s]." *Ball*, 289 A.3d at 10; *see also In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (Pa. 2020) (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); ECF No. 271 at 3-4. In fact, Plaintiffs' own putative expert admitted that the date requirement helped to detect voter fraud in the *Mihaliak* case. *See* RSOF ¶¶ 131-32, 140-41; *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2348 (2021) (noting the "legitimate interest" in "prevention of fraud"); *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 196 (2008) (Opinion of Stevens, J.) ("the propriety" of "preventing election fraud" is "perfectly clear"). Plaintiffs, however, mention neither the *Mihaliak* case nor their own putative expert. *See* ECF No. 275 at 21.

Nor does the fact that some county boards of elections followed different practices for implementing the date requirement in the November 2022 general election, *see* ECF No. 275 at 21-22, mean that the date requirement is immaterial under state law, *compare Ball*, 289 A.3d at 23 ("[C]ounty boards of elections retain authority to evaluate the ballots that they receive in future elections—including those that fall within the date ranges derived from statutes indicating when it is possible to send out mail-in and absentee ballots—for compliance with the Election Code."). If anything, that fact merely raises a question as to whether all county boards are in *compliance* with state law, not whether the date requirement is material under state law. Regardless, because Plaintiffs concede that "the voter-written date on the mail ballot envelope is not used in any way

9

to determine an individual's qualification to vote," ECF No. 275 at 19, the date requirement's materiality for other purposes is of no moment to the federal materiality provision, *see* ECF No. 271 at 8-11.

*Finally*, Plaintiffs cite a handful of cases that they contend support their reading of the materiality provision. One is the Third Circuit's now-vacated panel decision in *Migliori*. *See* ECF No. 275 at 15-20. Plaintiffs are wrong that "[n]othing has changed since *Migliori*," *id.* at 17: in fact, the Supreme Court vacated that decision, leaving it with no "precedential effect," *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979); *see also* ECF No. 271 at 16-17. The *Migliori* panel's incomplete and incorrect analysis is simply of no help to the Court. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay).

Plaintiffs' other three cases are district court decisions, two of which are unpublished and none of which involves a final decision on the merits. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) (temporary restraining order) (cited at ECF No. 275 at 16, 20-21); *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-05174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) (denying motion to dismiss) (cited at ECF No. 275 at 15, 16); *Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) (cited at ECF No. 275 at 16, 18). None of these cases meaningfully engaged the plain text of the materiality provision or its essential elements. All of Plaintiffs' cases predate—and contravene—more persuasive authority from three Justices of the United States Supreme Court, the unvacated panel opinion of the Fifth Circuit, and Justices Brobson and Mundy in *Ball*. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.Org*, 39 F.4th at 305 n.6; *Ball*, 289 A.3d at 37-39 (Opinion of Justice Brobson); *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1370-71 (S.D. Fla. 2004) (the materiality provision "was designed to eliminate practices that could encumber an

10

individual's ability to register to vote"); *Thrasher v. Ill. Republican Party*, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013) (the "actual harms the statute protects against" is "discrimination in the registration of voters," and "[c]ourts that have applied the statute have done so in the context of voter registration"); ECF No. 271 at 5-17.  The Court should deny Plaintiffs' motion for summary judgment.

## II. MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE EQUAL PROTECTION

As Intervenor-Defendants already have explained, Plaintiffs' claim that the date requirement violates the Fourteenth Amendment fails as a matter of law.  *See* ECF No. 271 at 17-25.  *First*, Pennsylvania law does not exempt military and overseas voters from the date requirement—as even Plaintiffs' own putative expert conceded.  *See id.* at 17-21.  *Second*, even if it did so, any such exemption would not violate Equal Protection because military and overseas voters are not "similarly situated" to domestic absentee and mail-in voters.  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *see also* ECF No. 271 at 21-24.  *Third*, in all events, even if Plaintiffs' Equal Protection claim were meritorious, it would at most justify relief against the three county boards of elections that (properly) declined to count domestic ballots that failed to comply with the date requirement but (improperly) counted such ballots from military and overseas voters.  RSOF ¶ 108.  Even then, the proper remedy would be to require those three county boards to enforce the date requirement as to military and overseas voters, not to grant the sweeping statewide injunction Plaintiffs seek.  *See* ECF No. 271 at 24-25.

Plaintiffs devote only two pages of their brief to a half-hearted defense of their Equal Protection claim in Count II.  *See* ECF No. 275 at 23-25.  Plaintiffs contend that "[s]tate law appears to treat domestic and overseas mail ballot voters differently."  ECF No. 275 at 24.  But a mere "appear[ance]" of differential treatment does not prove a constitutional violation—and state

11

law, in fact, does not treat domestic and overseas voters differently. *See* ECF No. 271 at 17-21. Moreover—as they did in their Amended Complaint, *see id.* at 18-20—Plaintiffs omit the operative "under this chapter" limitation from their quotation of the UMOVA mistake provision they invoke, 25 Pa. C.S. § 3515(a), *see* ECF No. 275 at 24. Plaintiffs do not even include an ellipsis where that limitation appears in the statutory text, pretending instead that it simply does not exist. *See id.*; *see also* 25 Pa. C.S. § 3515(a)(1).

Finally, Plaintiffs' lone case finding an Equal Protection violation in the differential treatment of domestic and overseas voters is also inapposite: as Plaintiffs recognize, that case involved "*in-person* early voting." ECF No. 275 at 24 (citing *Obama for Am. v. Husted*, 888 F. Supp. 2d 897, 905-06 (S.D. Ohio), *aff'd*, 697 F.3d 423 (6th Cir. 2012)) (emphasis added). As the Sixth Circuit recognized in that very case, military and overseas voters who vote *by mail* because they are *absent* from the country "in many respects … are *not* similarly situated to domestic voters" due to such absence. *Obama for Am. v. Husted*, 697 F.3d at 435 (emphasis added). Therefore, any (non-existent) exemption from Pennsylvania's date requirement for such voters would not violate Equal Protection in any event. *See* ECF No. 271 at 21-25.

## CONCLUSION

The Court should deny Plaintiffs' motion for summary judgment.

Dated:  May 5, 2023                                         Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
Joshua S. Ha
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
 COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*

13