IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AL SCHMIDT, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 1:22-cv-00339 <br><br> Judge Susan P. Baxter |

**INTERVENOR-DEFENDANTS' REPLY TO RESPONSE OF AL SCHMIDT TO INTERVENOR-DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS**

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania respectfully file these Replies to the Response of Al Schmidt to Intervenor-Defendants' Concise Statement of Material Facts, Dkt. No. 299. Intervenor-Defendants reproduce below only the Responses of Al Schmidt to which a reply is warranted and state as follows:

48. The date requirement has already been used to detect election fraud. *See* Ex. 11, Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022), at 100-116, 141-153.

**Response of Al Schmidt**: It is denied that Intervenor-Defendants' Exhibit 11 supports the allegations of this paragraph as stated.[1] In the hearing transcript in *Chapman* cited in this paragraph, Deputy Secretary for Elections and Commissions Jonathan Marks testified that the date on a ballot submission "hypothetically … might be relevant" in detecting fraud. Ex. A to Appendix of Acting Secretary Al Schmidt, Complete Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022) at p. 103. Deputy Secretary Marks did not testify that a declaration date had ever actually been instrumental in detecting election fraud. Additionally, as shown by the hearing transcript in *Chapman* cited in this paragraph, Lancaster County Commissioner Ray D'Agostino testified that the ballot at issue was first flagged as potentially fraudulent because, when it was scanned, "the SURE system popped up and said that the person was deceased," before any review of the date on the outer envelope of the ballot

---

[1] A complete copy of the hearing transcript in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022), is attached to the Appendix of Acting Secretary Schmidt as Exhibit A.

submission. *Id.* at p. 145. He further testified that the ballot would "not have counted regardless of the date," and thus the date had no bearing on Lancaster County's decision to reject the ballot. *Id.* at p. 148. By way of further response, Intervenor-Defendants' Exhibit 12, the Affidavit of Probable Cause in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022), and Exhibit A to Appendix of Acting Secretary Al Schmidt, Complete Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022) at pp. 145-148, show that the voter in whose name the ballot at issue was submitted had died—and was known to the county board of elections to have died—two weeks before the ballot was received by the county board. The handwritten declaration date was not the basis for the ballot's disqualification, and the ballot would likely have been the subject of a potential criminal investigation irrespective of the date, if any, printed on the declaration.

**Intervenor-Defendants' Reply**: **The Acting Secretary misses the point when he reiterates that the *Mihaliak* decedent's ballot would not have been counted due to the decedent's death. The election fraud in *Mihaliak* was not committed by the decedent but instead by a third party. *See* Dkt. No. 272 ¶¶ 48-55. The Acting Secretary does not dispute that the handwritten date of April 26, 2022—which was twelve days after the decedent had passed away—was the only evidence on the face of the ballot indicating that someone other than the decedent had completed the ballot. *See id.* ¶ 52. Plaintiffs' own putative expert agreed that the date supplied on the ballot declaration was the only piece of evidence of fraud on the face of the ballot, and that the date requirement helped to detect fraud in *Mihaliak*. *See id.* ¶¶ 54-55.**

52. In *Mihaliak*, the only evidence on the face of the ballot declaration indicating that someone other than the decedent had completed the ballot was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away. *See* Ex. 12 ¶ 2.

**Response of Al Schmidt**: It is denied that Intervenor-Defendants' Exhibit 12 supports the allegations of this paragraph as stated. It is admitted only that Intervenor-Defendants' Exhibit 12, the Affidavit of Probable Cause in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022), states that "Christa Miller stated she received a mail in ballot from Teresa J. Mihaliak signed and dated April 26, 2022. The ballot for the democrat [sic] primary was received on April 28, 2022, by her office. However, Crista Miller reported that Teresa J. Mihaliak was deceased on April 14, 2022. Christa Miller said this was confirmed by an obituary and records from the Department of Health. She said Teresa J. Mihaliak was removed from the voter rolls on April 25, 2022." By way of further response, Intervenor-Defendants' Exhibit 12, the Affidavit of Probable Cause in *Commonwealth v. Mihaliak*, No. CR- 126-22 (June 3, 2022), and Exhibit A to Appendix of Acting Secretary Al Schmidt, Complete Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022) at pp. 142-148, show that the voter in whose name the ballot at issue was submitted had died—and was known to the county board of elections to have died—two weeks before the ballot was received by the county board and also that the county board time stamps the face of the return envelopes when they are received. The handwritten declaration date was not the basis for the ballot's disqualification, and the ballot would likely have been the subject of a potential criminal investigation irrespective of the date, if any, printed on the declaration.

**Intervenor-Defendants' Reply**: The Acting Secretary misses the point when he states that the handwritten date "was not the basis for the ballot's disqualification" because the ballot was set aside due to the decedent's death. The election fraud in *Mihaliak* was not committed by the decedent but instead by a third party. *See* Dkt. No. 272 ¶¶ 48-55. The Acting Secretary does not dispute that the handwritten date of April 26, 2022—which was twelve days after the decedent had passed away—was the only evidence on the face of the ballot indicating that someone other than the decedent had completed the ballot. *See id.* ¶ 52. Plaintiffs' own putative expert agreed that the date supplied on the ballot declaration was the only piece of evidence of fraud on the face of the ballot, and that the date requirement helped to detect fraud in *Mihaliak*. *See id.* ¶¶ 54-55.

53.   The investigation into the election fraud committed in *Mihaliak* was predicated upon the date supplied on the ballot declaration. *See id.* ¶ 2.

**Response of Al Schmidt**: It is denied that Intervenor-Defendants' Exhibit 12 supports the allegations of this paragraph as stated. It is admitted only that Intervenor-Defendants' Exhibit 12, the Affidavit of Probable Cause in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022), states that "Christa Miller stated she received a mail in ballot from Teresa J. Mihaliak signed and dated April 26, 2022. The ballot for the democrat [sic] primary was received on April 28, 2022, by her office. However, Crista Miller reported that Teresa J. Mihaliak was deceased on April 14, 2022. Christa Miller said this was confirmed by an obituary and records from the Department of Health. She said Teresa J. Mihaliak was removed from the voter rolls on April 25, 2022." By way of further response, Exhibit 12, the Affidavit of Probable Cause in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022), and Exhibit A to Appendix of Acting Secretary Al Schmidt, Complete Tr. of Hearing in *Chapman v. Berks County Bd. of Elections*, No. 355 MD 2022 (Pa. Commw. July 28, 2022) at pp. 145-148, show that the voter in whose name the ballot at issue was submitted had died—and was known to the county board of elections to have died— two weeks before the ballot was received by the county board. The handwritten declaration date was not the basis for the ballot's disqualification, and the ballot would likely have been the subject of a potential criminal investigation irrespective of the date, if any, printed on the declaration.

**Intervenor-Defendants' Reply:** The Acting Secretary's response engages in hypotheticals, and suggests that "the ballot would *likely* have been the subject of a *potential* criminal investigation irrespective of the date, if any, printed on the declaration." (emphasis added). In fact, the ballot *was* the subject of an *actual* criminal investigation, and the affidavit of probable cause expressly notes that the ballot declaration was "signed and dated April 26, 2022"—twelve days after the voter had passed away. Dkt. No. 273-12 ¶ 2 (Ex. 12 to Appendix, *Mihaliak* Criminal Complaint). The Acting Secretary does not dispute that the handwritten date of April 26, 2022 was the only evidence on the face of the ballot indicating that someone other than the decedent had completed the ballot. *See* Dkt. No. 272 ¶ 52. Plaintiffs' own putative expert agreed that the date supplied on the ballot declaration was the only piece of evidence of fraud on the face of the ballot, and that the date requirement helped to detect fraud in *Mihaliak*. *See id.* ¶¶ 54-55.

138.   Moreover, in the 13 counties Mr. Greenburg examined, he found a disproportionate effect by looking only at voters whose absentee or mail-in ballots were not counted due to the date requirement. See Ex. 76 ¶ 32; Ex. 77 at 98:15-99:11.

3

**Response of Al Schmidt**: It is denied that Intervenor-Defendants' Exhibit 77 supports the allegations of this paragraph as stated. Mr. Greenburg did not testify that he "only" looked at "voters whose absentee or mail-in ballots were not counted due to the date requirement."

**Intervenor-Defendants' Reply: The Acting Secretary admits that the only data that Mr. Greenburg provides for the date requirement's alleged disproportionate effect on older voters is the number of set-aside ballots that belonged to voters age 65 or older in only the 13 counties (out of Pennsylvania's 67 counties) that Mr. Greenburg examined. Dkt. No. 273-76 ¶ 32 (Ex. 76 to Appendix, Greenburg Declaration).**

139. Mr. Greenburg calculated the "percentage of voters" from that pool who were over the age of 65 and who were under the age of 65. Ex. 77 at 98:18; see also Ex. 76 ¶ 32.

**Response**: It is denied that Intervenor-Defendants' Exhibit 77 supports the allegations of this paragraph as stated. Mr. Greenburg testified that he measured the disproportionate effect of the date requirement on older voters by reviewing "the number of ballots that were not counted because of the date requirement" and then calculating "the percentage of those ballots that were cast by senior citizens." Ex. 77 at 98:10-99:5.

**Intervenor-Defendants' Reply: The Acting Secretary's response confirms Intervenor-Defendants' allegations in Paragraph 139.**

143. Mr. Greenburg conceded that voters over age 65 may be less affected by the date requirement if they use absentee and mail-in voting at a higher rate—or make mistakes in completing the date field at a lower rate—than voters under age 65. See Ex. 77 at 101:18-105:19.

**Response**: It is denied that Intervenor-Defendants' Exhibit 77 supports the allegations of this paragraph as stated. The portions of Exhibit 77 cited in this paragraph refer to testimony given in response to hypothetical questions only.

**Intervenor-Defendants' Reply: The Acting Secretary's response only confirms Intervenor-Defendants' allegations in Paragraph 143. Mr. Greenburg did not know "the total number of mail ballots cast by age in 2022," did not "examine the rate at which senior citizens make mistakes on their ballots," and did not "examine the rate at which other groups or non-senior citizens make mistakes on their ballots." *See* Dkt. No. 273-77 at 101:18-21, 103:9-16 (Ex. 77 to Appendix, transcript of Greenburg deposition).**

4

| | |
|---|---|
| Dated:  May 10, 2023 | Respectfully submitted,<br><br>/s/ Kathleen A. Gallagher<br>Kathleen A. Gallagher<br>PA I.D. #37950<br>Russell D. Giancola<br>PA. I.D. #200058<br>GALLAGHER GIANCOLA LLC<br>436 Seventh Avenue, 31st Floor<br>Pittsburgh, PA 15219<br>Phone: (412) 717-1900<br>kag@glawfirm.com<br>rdg@glawfirm.com<br><br>John M. Gore (*pro hac vice*)<br>E. Stewart Crosland<br>Louis J. Capozzi III<br>Joshua S. Ha<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Phone: (202) 879-3939<br>jmgore@jonesday.com<br>scrosland@jonesday.com<br><br>Thomas W. King, III<br>Thomas E. Breth<br>DILLON, McCANDLESS, KING,<br> COULTER & GRAHAM, LLP<br>128 W. Cunningham St.<br>Butler, PA  16001<br>Phone: (724) 283.2200<br>tking@dmkcg.com<br>tbreth@dmkcg.com<br><br>*Counsel for Intervenor-Defendants* |