IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>              *Plaintiffs*,<br>   v.<br>AL SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth, *et al.*,<br><br>              *Defendants*. | Case No. 1:22-cv-00339-SPB |

**PLAINTIFFS' OMNIBUS REPLY IN FURTHER SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1
I.   PLAINTIFFS' CLAIMS ARE JUSTICIABLE ....................................................... 2
II.  DEFENDANTS VIOLATED THE MATERIALITY PROVISION ...................... 3
III. DEFENDANTS VIOLATED EQUAL PROTECTION ......................................... 5
CONCLUSION .................................................................................................................. 5

## INTRODUCTION

The county Defendants who disenfranchised voters last November based on an immaterial paperwork error have now conceded every last factual assertion in Plaintiffs' Statement of Material Facts (ECF No. 283 ("SMF")). It is undisputed that:

- Thousands of registered, eligible Pennsylvania voters had their ballots excluded in the November election solely because they forgot to write a date, or wrote an "incorrect" date, on a declaration form printed on the outer mail ballot envelope.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 36, 38, 39, 42 (ECF Nos. 302, 308); GOP 56(C)(1) Resp. ¶¶ 36, 38, 39, 42 (ECF No. 305).

- All those ballots were timely-received and date-stamped.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 11, 38, 39; GOP 56(C)(1) Resp. ¶¶ 11, 38, 39.

- No party has any fraud concerns regarding any of those ballots.  Lancaster & Berks 56(C)(1) Resps. ¶ 43; *see also* GOP 56(C)(1) Resp. ¶ 43.

- No party uses the handwritten date on the envelope declaration form to determine whether a voter is qualified to vote in the election.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 47–50; *see also* GOP 56(C)(1) Resp. ¶¶ 47–50.

- No party uses the handwritten date on the envelope form to determine whether a ballot was timely received.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 51, 52; *see also* GOP 56(C)(1) Resp. ¶¶ 51, 52.

- No party uses the handwritten envelope date to prevent counting untimely ballots; indeed, "backdating" an untimely mail ballot is *impossible*.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 55–56; *see also* GOP 56(C)(1) ¶¶ 55–56.

- No party uses the handwritten envelope date to indicate whether a voter completed their mail ballot at the proper time; if the mail ballot package was received by 8 p.m. on Election Day, it was *necessarily* completed at the proper time, regardless of the handwritten date. Lancaster & Berks 56(C)(1) Resps. ¶¶ 10, 11, 51–55; *see also* GOP 56(C)(1) Resp. ¶¶ 10, 11, 51–55.

- No party uses the handwritten envelope date to prevent the mail ballots of voters who die before Election Day from being counted; those ballots already must be set aside regardless of the handwritten date.  Lancaster & Berks 56(C)(1) Resps. ¶¶ 61–64; *see also* GOP 56(C)(1) Resp. ¶¶ 61–64.

- The "truth" of the date written on the envelope form is so meaningless that in November 2022, counties counted ballots where the handwritten date on the envelope form was obviously "wrong" (such as "09/31/22," a date that does not exist), and also rejected ballots where the handwritten date on the form was entirely accurate (like "October 8"). Lancaster & Berks 56(C)(1) Resps. ¶¶ 39, 65, 69, 71, 78–79, 86, 88, 89, 91–93; *see also* GOP 56(C)(1) Resp. ¶¶ 39, 65, 69, 71, 78–79, 86, 88, 89, 91–93.

Summary judgment should be granted for Plaintiffs. The Materiality Provision bars Defendants from refusing to count voters' votes based solely on an error or omission in filling in an utterly meaningless date on a piece of voting-related paperwork. 52 U.S.C. § 10101(a)(2)(B). Defendants' legal arguments are neither new nor meritorious and provide no basis to avoid summary judgment.

## I. PLAINTIFFS' CLAIMS ARE JUSTICIABLE

Lancaster County rehashes (ECF No. 294 at 2–5 ("Lancaster Br.")) standing arguments that Plaintiffs rebutted already. *See* Pls.' Omnibus Opp'n to Cross-Mots. at 3–7, ECF No. 313 ("Omnibus Opp."). The short of it remains that the organizational Plaintiffs have shown a diversion of resources due to the counties' actions, including and specifically with respect to Lancaster and Berks Counties. *Id.*

Lancaster also argues (Lancaster Br. 5–9) that the counties cannot be subject to Section 1983 liability because they were not the "moving force" behind the refusal to count ballots based on the envelope date issue. (Quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). That argument fails. First, the inapposite "moving force" cases involve parsing the actions of a municipal defendant from the actions of an errant employee. *E.g., id.* But they have little application where, as here, Plaintiffs challenge the actions of the county boards themselves in

refusing to count voters' votes. *Id.* ("Where a plaintiff claims that a particular municipal action *itself* violates federal law . . . resolving these issues of fault and causation is straightforward."); *see also OpenPittsburgh.Org v. Voye*, 563 F. Supp. 3d 399, 427 (W.D. Pa. 2021) (rejecting similar argument in elections-board context). Second, even if Plaintiffs needed to show more, counties like Lancaster and Berks were far from passive actors: They repeatedly litigated to be able to disenfranchise voters based on the envelope date, *e.g.*, *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998, at *1 (Pa. Commw. Ct. Aug. 19, 2022), and refused to notify voters of the envelope date issue or allow them to cure in November 2022, despite the entreaties of organizational Plaintiffs, SMF ¶¶ 28(f), 40. And third, even if Plaintiffs could not proceed under Section 1983, they can enforce the Materiality Provision directly via an implied private right of action, *see* Omnibus Opp. 11–13.

## II. DEFENDANTS VIOLATED THE MATERIALITY PROVISION

Defendants' merits arguments regarding the Materiality Provision all fail. Lancaster County suggests (Lancaster Br. 8–10) that the statute is limited to racial discrimination, but the text is otherwise, and the Third Circuit has expressly rejected the argument, *see Migliori v. Cohen*, 36 F.4th 153, 162 n.56 (3d Cir.), *vacated as moot*, 143 S. Ct. 297 (Mem.) (2022). The Materiality Provision nowhere mentions race or color, and Lancaster does not suggest this statutory language is ambiguous. Where "the meaning of the statute's terms is plain, [a court's] job is at an end." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020). Nor do the other provisions in subsection 10101 help the argument. The fact that Congress included a racial discrimination element in a neighboring subsection, 10101(a)(1), but omitted one in the Materiality

3

Provision, demonstrates that Congress did *not* want to limit the Materiality Provision on that basis. *E.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983).[1] Nor can Lancaster appeal to congressional purpose, which was to eradicate discrimination in voting by crafting a broader prophylactic rule against denying the right to vote for irrelevant paperwork errors. Omnibus Opp. 18–19.

Intervenors meanwhile repeat meritless arguments from their cross-motion that Plaintiffs already debunked. Omnibus Opp. 13–20; *see also* Pl.'s MTD Opp'n, ECF No. 228 at 10–21. For example, Intervenors argue (ECF No. 304 at 3 ("GOP Opp.")) that for the Materiality Provision to apply, "the paper or record must also be used 'in determining' the voter's qualifications." (citation omitted). But the statutory text contains no such limitation on which records or papers are covered. Rather, it applies when a voter is disenfranchised for an error or omission on "*any record or paper* relating to *any … act requisite to voting*." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Intervenors also repeat (GOP Opp. 8) their surmise that applying the Materiality Provision here would invalidate completely unrelated election rules (it would not, Omnibus Opp. 15–16) and again point (GOP Opp. 9) to a single episode of attempted fraud from the May 2022 primary, even though the official who discovered it admitted that the ballot there would never have been counted, irrespective of the handwritten envelope date, Omnibus Opp. 15 n.12 (citing APP_00888-892).

---

[1] The title of subsection 10101(a) is in accord. The reference to "race, color, or previous condition" relates to subsection (a)(1). The multi-part title also references "uniform standards," "errors or omissions from papers," and "literacy tests." "[E]rrors and omissions from papers" corresponds to the Materiality Provision.

4

Intervenors meanwhile miss the point (GOP Opp. 9–10) about counties' "different practices" in applying the handwritten date requirement. The fact that some counties excluded ballots where the voter-written date was literally correct, and some accepted ballots where the date was literally wrong, demonstrates that the actual content of the date *does not matter*. Refusing to count a voter's ballot solely because of a meaningless error or omission on the date line is arbitrary and unlawful.[2]

## III. DEFENDANTS VIOLATED EQUAL PROTECTION

Defendants contend that overseas voters are not similarly situated to in-state voters because they "may not be able to benefit from any opportunity a county board affords its voter to correct deficiencies made on the forms returned with their ballot." Schmidt Br., ECF No. 298 at 23–24; *see also* GOP Opp. 12. But at least 21 counties provided in-state voters with no notice that their ballot had been set aside and thus no opportunity to cure the defect. SMF ¶ 40. And even where there may have been notice, some domestic mail voters were still "unable to benefit" from any cure opportunities due to disabilities or out-of-state travel. *E.g.*, APP_01433, 01434.[3]

### CONCLUSION

Plaintiffs' motion for summary judgment should be granted.

---

[2] Berks County sputters in suggesting (ECF No. 309 at 2) that a person cannot be "held accountable for a false declaration . . . unless the voter's declaration is both signed and dated." In fact, criminal penalties for mail ballot fraud attach when one falsely "sign[s] [a] . . . declaration," regardless of the date. 25 P.S. § 3553. Berks also offers a misplaced analogy to 28 U.S.C. § 1746, the statute governing declarations in federal court. But the failure to date a declaration does *not* render it invalid where (as here) "the period when the document was signed" is otherwise apparent. *E.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002).

[3] Even in counties that did provide an opportunity to cure, the vast majority of voters were unable to do so. *See* APP_00534-535 (less than 25% cure in Philadelphia); APP_00116, 00118 (less than 4% in Bucks); APP_00629, 00631 (zero in Tioga).

Dated: May 10, 2023

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
Kate I. Steiker-Ginzberg (PA 332236)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

Elizabeth Femia
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3813
lisa.femia@hoganlovells.com

Respectfully submitted,

/s/ Ari J. Savitzky
Ari J. Savitzky
Megan C. Keenan
Luis Manuel Rico Román
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
lroman@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

*Counsel for the Pennsylvania State Conference of the NAACP, League of Women Voters of Pennsylvania, Philadelphians Organized to Witness, Empower and Rebuild, Common Cause Pennsylvania, Black Political Empowerment Project, Make the Road Pennsylvania, Barry M. Seastead, Marlene G. Gutierrez, Aynne Margaret Pleban Polinski, Joel Bencan, and Laurence M. Smith*

6

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2023, Plaintiffs served this reply brief on all parties in this matter.


Dated: May 10, 2023                                      Respectfully submitted,

                                                                         /s/ Ari J. Savitzky
                                                                         Ari J. Savitzky

                                                                         *Counsel for the Plaintiffs*