IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNYSLVANIA STATE CONFERENCE ) <br> OF THE NAACP, et al, ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AL SCHMIDT, ) <br> Acting Secretary of the Commonwealth, et al, ) <br> Defendants. ) | Civil Action No. 1:22-CV-339 <br><br> Re: Motion to Dismiss <br> ECF No. 193 |

## MEMORANDUM OPINION

Presently before this Court is a motion to dismiss the amended complaint filed by the Intervenor-Defendants, the Republican Committees. ECF No.193.

### I.  Relevant Procedural History

In 2019, the Commonwealth of Pennsylvania expanded mail-in voting. The new provisions have increased voter participation, but have been the subject of intense and repeated litigation in state and federal courts.

This action challenges the application of one of those state law provisions. The operative complaint is the amended complaint filed by six organizations[1] and five individual voters.[2] ECF

---

[1] These organizations include the Pennsylvania State Conference of the NAACP ("State Conference"); the League of Women Voters of Pennsylvania (the "League"); Philadelphians Organized to Witness, Empower and Rebuild ("POWER"); Common Cause Pennsylvania ("Common Cause"); Black Political Empowerment Project ("B-PEP"); and Make the Road Pennsylvania ("Make the Road PA").

[2] Barry Seastead of Warren County; Marlene Gutierrez and Aynne Margaret Pleban Polinski of York County; and Joel Bencan and Laurence Smith of Montgomery County.

1

No. 121. The organizational-Plaintiffs challenge the disqualification of undated and incorrectly dated mail-in ballots and allege that their members are at risk of disenfranchisement, while the individual-Plaintiffs allege that they were disenfranchised by Defendants' actions in the November 2022 midterm election. ECF No. 121, ¶ 5. Plaintiffs allege that the actions of Defendants infringe on their rights under both the Federal Materiality Provision of the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment. The relief Plaintiffs seek is primarily injunctive and declaratory.

The named Defendants are the Acting Secretary[3] of the Commonwealth of Pennsylvania, as well as each of the sixty-seven county Boards of Elections of the Commonwealth. The Republican Committees[4] have been allowed to intervene as of right under Federal Rule of Civil Procedure 24(a). ECF No. 167.

Presently before this Court is a motion to dismiss the amended complaint filed by Intervenor-Defendant Republican Committees. ECF No. 193. Plaintiffs, as well as some Defendants, have opposed the pending motion to dismiss. ECF No. 223 (Allegheny, Bucks, Chester, Montgomery, and Philadelphia County Boards of Elections); ECF No. 224 (Acting Secretary of State); ECF No. 226 (Delaware County Board of Elections joining with the five other county boards); ECF No. 228 (Plaintiffs). Additionally, pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States," the Civil Rights Division of the Department of Justice has filed a

---

[3] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Al Schmidt was automatically substituted for Leigh Chapman as the Defendant in this case.

[4] The Republican National Committee is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14); the National Republican Congressional Committee is the national congressional committee of the Republican Party; and the Republican Party of Pennsylvania is a major political party and is registered as a state committee under federal law.
2

Statement of Interest of the United States[5]. ECF No. 229. And finally, the Intervenor-Defendants have filed a Reply brief. ECF No. 231. This motion is fully briefed and is ripe for disposition by this Court.

Due to the nature of the claims and the prayer for prospective injunctive rleif, this case has been set on an expedited track. During the pendency of the motion to dismiss, the parties were ordered to engage in the discovery process and they have recently filed cross-motions for summary judgment. The arguments raised by the Intervenor-Defendants in the present motion to dismiss are raised more robustly in their motion for summary judgment. In this unusual procedural posture, we proceed.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Generally, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss brought under Rule 12(b)(6). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp., 235-236 (3d ed. 2004). See also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be

---

[5] The Department of Justice's Statement of Interest is limited to discussion of the Materiality Provision challenge.

dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making this determination, the court must accept as true all well-pleaded factual allegations in the complaint and view them in a light most favorable to the plaintiff. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

The Court of Appeals for the Third Circuit instructed that district courts are to engage in a three-step inquiry in order to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) *quoting Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

At the third step, the Court must consider the specific nature of the claims presented and determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). A complaint cannot be dismissed simply because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, n.8.  Instead, the appropriate inquiry is whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556.

With this standard of review in mind, the Court now turns to an examination of the factual allegations of the amended complaint and the pending motion to dismiss it.

### III. The Allegations of the Amended Complaint

The Commonwealth's mail-in voting provisions allow all eligible voters to vote by mail. ECF No. 121, ¶ 39. A voter seeking to vote by mail must complete an application and have their identity and qualifications verified. As part of the application process, voters provide all necessary information for County Boards of Elections to verify that they are qualified to vote in Pennsylvania – that they are at least 18 years old, have been a citizen of the United States for at least a month, have resided in the election district for at least 30 days, and are not incarcerated on a felony conviction. *Id.* at ¶ 40, *citing* 25 Pa. C.S. § 1301. After the application is submitted, the County Board of Elections confirms the applicant's qualifications and eligibility. *Id.* at ¶ 41.

The mail-in Ballot Package, which is then mailed to voters, contains a Ballot, a Secrecy Envelope marked only with the words "Official Election Ballot," and the pre-addressed outer Return Envelope on which a voter declaration form is printed. *Id.* at ¶ 41. State law provides that at "any time" after receiving the mail-in Ballot Package, the voter is to mark their Ballot, put it inside the Secrecy Envelope, and place the Secrecy Envelope into the outer Return Envelope. *Id.* at ¶ 42, *citing* 25 P.S. § § 3146.6(a), § 3150.16(a). The voter is instructed to " … fill out, **date** and sign the declaration printed" on the Return Envelope. *Id.* at ¶ 46, *citing* 25 P.S. § § 3146.6(a), 3150.16(a). Upon receipt of the mail ballot, County Boards stamp the outer Return Envelope with the date of receipt to confirm timeliness and log it into the Statewide Uniform Registry of Electors ("SURE") system. *Id.* at ¶ 42.

The envelope dating requirement on the outer Return Envelope (hereinafter referred to as the "Date Requirement") is the subject of this litigation, as well as much prior litigation. *Id.* The most recent litigation in state court commenced shortly before the November 2022 election. On October 16, 2022, with the 2022 election for mail-in ballots already underway, a group brought a

King's Bench petition in the Supreme Court of Pennsylvania seeking to invalidate mail ballots with no handwritten date on the Return Envelope or with an "incorrect" handwritten date on the Return Envelope. *Id.* at ¶ 60. On November 1, 2022, the Supreme Court of Pennsylvania issued an order directing that the mail-in ballots at issue should be segregated and not counted. The Court explained that it was deadlocked[6] as to whether "failing to count such ballots violated 52 U.S.C. § 10101(a)(2)(B)" (the federal Materiality Provision). *Id.* at ¶ 61; 121-9.[7] *See also Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022).

Following the Supreme Court's November 1st order, the Deputy Secretary of the Department of State advised county election officials to "refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes," and to "segregate and preserve any ballots contained in undated or incorrectly dated outer envelopes."[8] *Id.* at ¶ 62. Two days later, Acting Secretary Leigh Chapman issued new Guidance, instructing counties that "ballots which are administratively determined to be undated or incorrectly dated" should be coded as "CANC – NO SIGNATURE within the SURE system" and "segregated from other ballots." *Id.* at ¶ 63. On November 5, 2022, the Supreme Court of Pennsylvania issued a supplemental order stating that "incorrectly dated outer envelopes" include "(1) mail-in ballot outer envelopes with dates that

---

[6] At the time of its decision, the Pennsylvania Supreme Court had only six justices due to the recent death of Chief Justice Max Baer around October 1, 2022. *See* www.pacourts.us/news-and-statistics/news/news-detail/1115/pennsylvania-supreme-court-announces-passing-of-chief-justice-max-baer.

[7] The Court takes judicial notice that on February 8, 2023, the Supreme Court of Pennsylvania filed a written Opinion explaining its November 1, 2022 Order. *Ball v. Chapman*, 289 A.3d 1 (Pa. Feb. 8, 2023).

[8] The Secretary's November 1st Guidance reversed course from the September 26th Guidance which advised county boards "to include … any ballot-return envelope that is undated or dated with an incorrect date but has been timely received." *Id.* at ¶ 59 n.6.

6

fall outside the date range of September 19, 2022 through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022 through November 8, 2022." *Id.* at ¶ 64.

Midterm elections were held on November 8, 2022. Approximately 1.4 million mail ballots were requested [*id.* at ¶ 45] and 1,244,072 mail ballots were recorded by the Defendant County Boards of Elections [*id.* at ¶ 65]. Thousands of mail-in ballots, including those from the five individual-Plaintiffs here, were segregated and not counted based on missing or incorrect dates on their outer envelopes. *Id.* at ¶¶ 66-67. Barry Seastead of Warren County learned after Election Day that his mail-in ballot was rejected on the basis of an incorrect date and was not counted. *Id.* at ¶ 30. Marlene Gutierrez and Aynne Margaret Pleban Polinski of York County learned that their mail-in ballots were not counted because although they were received timely, they were undated. *Id.* at ¶¶ 32, 34. Joel Bencan and Laurence Smith of Montgomery County were notified that their ballots were incorrectly dated and would not be counted. *Id.* at ¶¶ 35-36. None of these individual-Plaintiffs were given the time or opportunity to cure the defects in their ballots. *Id.* at ¶¶ 30-37.

Plaintiffs claim that the rejection of these ballots in this manner violates the Materiality Provision of the Civil Rights Act (Count I). Plaintiffs also bring an equal protection challenge under the Fourteenth Amendment based on the differential treatment of domestic mail-in ballots and overseas and military ballots which are not subjected to the same mandatory application of the Date Requirement (Count II).

### IV. The Motion to Dismiss

The Republican Committees move to dismiss this action for failure to state a claim upon

which relief can be granted pursuant to Rule 12(b)(6). ECF No. 193. Rather than arguing that Plaintiffs have not pled sufficient factual allegations to support both legal claims, Intervenor-Defendants contend that the mandatory application of the Date Requirement is not implicated by and does not violate the Federal Materiality Provision. Additionally, Intervenor-Defendants argue that the application of the Date Requirement does not violate the Fourteenth Amendment because there is no differential treatment and even if there is, the Date Requirement passes constitutional muster. These arguments are more appropriately raised and analyzed in the procedural context of summary judgment.[9]

### A. The Materiality Provision Challenge

The right of every citizen to vote is a fundamental right. *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 383 (W.D. Pa. 2020) *citing Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). The right to vote "is a foundational right 'that helps to preserve all other rights.'" *Id. quoting Werme v. Merrill*, 84 F.3d 479, 483 (1st Cir. 1996). As the Supreme Court opined almost sixty years ago, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

In 1965, Congress enacted the Voting Rights Act "in an effort to achieve at long last what the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the denial of the right to vote based on race." *Brnovich v. Democratic Nat'l Comm.*, ___ U.S. ___, 141 S.Ct. 2321, 2330 (2021). The Materiality Provision, a portion of the Voting Rights Act, prohibits

---

[9] These arguments are raised more fully in the pending motion for summary judgment.

denial of the right to vote based on immaterial mistakes on voting-related paperwork. Put another way, federal law prohibits a state from erecting immaterial roadblocks to voting.[10]

*Enforceability*

Although only mentioned by the Intervenor-Defendants in passing[11], whether these private Plaintiffs have a right to enforce the Federal Materiality Provision must be addressed at the outset. The Materiality Provision expressly provides for enforcement by the Attorney General of the United States, but is silent as to enforcement by others. *See* 52 U.S.C. § 10101(c). If Plaintiffs do not have the right to enforce the Materiality Provision, this claim must be dismissed.

Like substantive federal law, "private rights of action ... must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). When assessing whether private plaintiffs may enforce a federal statute without an express cause of action, courts "must first determine whether Congress *intended to create a federal right*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Courts look to three factors when determining whether statutory text contains rights-creating language: "(1) the statutory provision must benefit the plaintiffs with a right unambiguously conferred by Congress; (2) the right cannot be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the States." *Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) *citing Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).

---

[10] Where "compliance with both state and federal law is impossible," federal law "must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015).

[11] *See* ECF No. 164, page 7 n.2.

The Court of Appeals for the Third Circuit addressed the precise question presented here, conducted an in-depth analysis, and concluded that Pennsylvania's registered voters had "a private right of action to enforce § 10101 under 42 U.S.C. § 1983." *Migliori v. Cohen*, 36 F.3d 153, 156 (3d Cir. May 27, 2022). The well-reasoned and thorough opinion recognized that § 10101 "specifically contemplates" a private plaintiff "bringing this type of claim in court." *Id.* at 160. Although the *Migliori* opinion has been vacated, this Court finds its reasoning persuasive, particularly on the question of whether a private plaintiff may raise a § 10101 challenge through 42 U.S.C. § 1983.[12] That the Supreme Court vacated the judgment of the Circuit based explicitly on mootness [*see Ritter v. Migliori*, ___ U.S. ___, 143 S.Ct. 297 (Oct. 11, 2022)] is of no consequence to the analysis of the private enforceability of the Materiality Provision undertaken in the Circuit's ruling.

*Stating a Claim*

The Materiality Provision prohibits state officials from denying any individual the right to vote "because of an error or omission on any record or paper" that relates to any "application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). In order to state a claim for violation of the statute, a plaintiff must allege: (1) denial of the right to vote (2) "because of an error or omission" (3) "on any record or paper relating to … an act requisite to voting" (4) that is "not material" in determining the

---

[12] *See also Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (Materiality Provision "may be enforced by a private right of action under § 1983."). *But see, Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) ("[T]he negative implication of Congress's provision for enforcement by the Attorney General is that the statute does not permit private rights of action.").

10

voter's qualification to vote. *Id.*

Plaintiffs allege that they were (1) denied the right to vote when their ballots were not counted (2) because of an incorrect date on or a failure to date (3) the outer Return Envelope required to cast a mail-in ballot and (4) that this date is not material to determining their qualifications to vote. In making a determination as to whether Plaintiffs have stated a claim, this Court must accept the veracity of the well-pleaded factual allegations and view them in the light most favorable to Plaintiffs. *U.S. Express*, 281 F.3d at 388. Here, Plaintiffs have met all the basic requirements in order to state a claim as they have factually supported each of the components of the claim.

In their motion to dismiss, the Intervenor-Defendants contend that the application of the Date Requirement does not implicate, let alone violate, the Materiality Provision. Intervenor-Defendants make several arguments in this regard. These arguments are based almost exclusively on a dissent from the denial of an application for stay at the U.S. Supreme Court. Indeed, the majority of the legal citation in their brief is to this dissenting opinion. Intervenor-Defendants take the dissenting opinion and extrapolate their reasoning therefrom. This Court is not swayed by such arguments at this stage in the proceedings because they find their genesis in an opinion that carries little, if any, precedential weight.[13] These arguments and the complete

---

[13] *See* Trevor N. McFadden and Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harvard Journal of Law & Public Policy 827, 882 (Summer 2021) ("In sum, we argue that decisions to deny a stay have no precedential value."). *See also* Kristen E. Parnigoni, *Shades of Scrutiny: Standards for Emergency Relief in the Shadow Docket Era*, 63 B.C. L. Rev. 2743, 2749 (Nov. 2022) ("Shadow docket decisions now comprise an unwieldy block of new jurisdiction, albeit with unclear precedential value, on high-stakes issues."); Bryan Garner, et al., *Law of Judicial Precedent* 219 (2016) ("[A] refusal to hear a case says nothing about the merits. It says only that, for any number of possible reasons, the Court didn't want to review the lower-court ruling: 'The variety of considerations that underlie denial of the writ counsels against according denials of certiorari any precedential value.") (internal citation omitted).

11

history of the case they arise out of will necessarily be discussed in the disposition of the cross-motions for summary judgment.

First, the Intervenor-Defendants contend that the Materiality Provision does not apply here because it only prohibits "denying the right of any individual to vote" and does not prohibit mandatory rules on the act of completing and casting a ballot. In other words, they posit that, the Materiality Provision does not apply because the Date Requirement is only a rule for casting a ballot and is not a ballot itself. This argument runs afoul of the plain language of the statutory text which broadly defines the word "vote" as "all action necessary to make a vote effective," including any "action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." *Id.* at § 10101(a)(3)(A), (e).[14] Moreover, this argument runs counter to the Pennsylvania Supreme Court's recent decision in *Ball v. Chapman*:

> [W]e recognize that, although the Court's rationale was expressed in serial opinions, an undeniable majority already has determined that the Election Code's command is unambiguous and mandatory, and that undated ballots would *not* be counted in the wake of *In re 2020 Canvass* [241 A.3d 1058, Nov. 23, 2020]. This result was apparent from the face of the opinions. Four Justices agreed that failure to comply with the date requirement would render a ballot invalid in any election after 2020. Pennsylvania's candidates, electors, and local officials therefore were on notice that ballots must be dated, and that failure to provide a date would result in disqualification. As a matter of statutory interpretation of our Election Code, we now reaffirm that conclusion.

---

[14] The Materiality Provision's full definition of "vote" "includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(e).

289 A.3d 1, 21-22 (Feb. 8, 2023). Because Pennsylvania law, as interpreted by the Pennsylvania Supreme Court[15], mandates compliance with the Date Requirement for a mail-in ballot to be counted, the Date Requirement is subject to the Materiality Provision in this regard.

Next, they argue that because the Date Requirement does not result in a qualification determination, it is outside the scope of the Materiality Provision. ECF No. 194, pages 10-11. Intervenor-Defendants' focus is too narrow. The Materiality Provision is implicated when a ballot is not counted because of an error on voting-related paperwork that is not material to determining qualifications of the voter. As the Department of Justice points out: "rules that govern whether a voter has cast a ballot that will be counted or the validity of a ballot fall squarely within 'acts requisite to voting' when voting is defined [in the Materiality Provision] as 'casting a ballot and having such ballot counted.'" ECF No. 229, page 12. The language defining "vote" in the text of the Materiality Provision is broad and far-reaching. *See footnote* 14. Certainly, Congress' expansive definition of the word "vote" includes dating a return envelope.

Finally, Intervenor-Defendants argue that the Date Requirement is not a "record or paper relating to any application, registration, or other act requisite to voting" within the meaning of the federal statute. They explain that because Pennsylvania law equates completing the declaration on the outer Return Envelope with casting a ballot, the Date Requirement cannot be requisite to the act of voting – instead, it is voting. This Court disagrees with the Intervenor-Defendants' interpretation in this regard. The ballot itself is the vote and the outer Return Envelope is requisite to, or essential to, completion of the act of voting.

At this stage of the proceedings, accepting the veracity of their factual allegations,

---

[15] A state's highest court is the final authority on the interpretation of a state statute. *See O'Brien v. Skinner*, 414 U.S. 524, 531 (1974) ("[I]t is not our function to construe a state statute contrary to the construction given it by the highest court of a State.").

Plaintiffs have sufficiently stated a plausible claim for relief.

### B. The Fourteenth Amendment Challenge

The Intervenor-Defendants also move for dismissal of the Equal Protection claim at Count II. The gist of Plaintiffs' claim is that military and overseas ballots are treated differently than mail-in and absentee ballots without any compelling or legitimate state interest. In support of their claim, Plaintiffs point to the state law which provides that a "voter's mistake or omission in the completion of a document" shall not invalidate a military or overseas ballot "as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote" and contrast it with the Secretary's November 1, 2022 Guidance directing that County Boards of Elections invalidate the ballots of voters who either did not date or incorrectly dated the outer Return Envelope. ECF No. 121, ¶ 86, *citing* 25 Pa. C.S. § 3515(a).

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." "The principle of equal protection is fundamental to our legal system because, at its core, it protects the People from arbitrary discrimination at the hands of the State." *Donald J. Trump for President, Inc.*, 502 F. Supp. 3d at 917–18. However, not all unequal treatment requires Court intervention: the Equal Protection Clause "does not forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Instead, it prevents governmental decisionmakers from treating similarly situated persons differently. *Id*. A classification resulting in "some inequality" will be upheld unless it is based on an inherently suspect characteristic or "jeopardizes the exercise of a fundamental right." *Id*.

It is axiomatic that voting is a fundamental right. Voting is one of the foundational building blocks of our democratic society. That the Constitution firmly protects this right is clear.

*Reynolds v. Sims*, 377 U.S. 533, 544 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as, in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear."). Citizens of the United States have a constitutionally protected right to vote and all citizens have a constitutionally protected right to have their votes counted. *Id.* (internal citations omitted). *See also Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("[W]e have often reiterated that voting is of the most fundamental significance under our constitutional structure."); *Tully v. Okeson*, 977 F.3d 608, 615 (7th Cir. Oct. 6, 2020) ("The Fourteenth Amendment's equal protection clause prohibits states from impermissibly interfering with individuals' fundamental rights such as the right to vote.").

Plaintiffs allege that the Defendants' interpretation of Pennsylvania law creates differential treatment in the counting of ballots. ECF No. 121, ¶ 86. Based on the November 1, 2022 Guidance from the Secretary of State, the County Boards of Elections invalidated the ballots of voters who either did not date or incorrectly dated the outer Return Envelope. Yet, state law provides that for overseas and military voters "a mistake or omission in the completion of a document" shall not invalidate that ballot so long as "the mistake or omission does not prevent determining whether a covered voter is eligible to vote." *Id. quoting* 25 Pa. C.S. § 3515(a).

Allegations of disparate treatment in counting ballots not cast in a voting booth is all that is necessary to state a claim of equal protection at this stage of the proceedings. Plaintiffs' allegations here are sufficient to survive a motion to dismiss.

An appropriate order follows.