IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>　　　　　　　*Plaintiffs*,<br>　v.<br><br>AL SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth, *et al.*,<br><br>　　　　　　　*Defendants*. | Case No. 1:22-cv-00339-SPB |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON JURISDICTION**

The Court has ordered "additional briefing focused on the issue of jurisdiction" because the Acting Secretary of the Commonwealth, one of the 70-plus Defendants in this case, "acquiesces to Plaintiffs' view of the application of the Date Requirement and advocates that summary judgment be granted" in Plaintiffs' favor. ECF No. 336.

This Court has jurisdiction. Plaintiffs have been injured by Defendants' enforcement of the Date Requirement—individual voter plaintiffs have been disenfranchised, and non-partisan organizational plaintiffs have been forced to divert scarce resources. And this Court can redress Plaintiffs' injuries by declaring that the Date Requirement violates federal law, enjoining the Date Requirement's enforcement, and requiring the votes of disenfranchised Pennsylvanians to be counted. Absent that relief, *all* the Defendants will remain bound by state court order to enforce the unlawful Date Requirement as a matter of Pennsylvania law and will continue to do just that.

Because the defendants will continue to enforce the challenged Date Requirement, it makes no difference that some defendants, like the Acting Secretary, have taken the legal position that Plaintiffs are correct in this federal law challenge. Plaintiffs' injuries stem from Defendants' *actions* in refusing to count voters' ballots purely due to a meaningless paperwork error, not their legal positions. It is the defendant's *actions*, not their legal positions, that matter for purposes of justiciability. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 756 (2013).

Nor is there any possible prudential concern regarding a lack of sufficient adversity here. A number of county boards of elections—the primary enforcers of the

1

Date Requirement—have actively defended the Date Requirement and the lawsuit, *e.g.*, ECF No. 267, 269; *see also* ECF No. 283, ¶¶ 57–60.  And GOP Intervenors have aggressively defended the Date Requirement as well, moving to dismiss the complaint, taking discovery, deposing Plaintiffs' expert, and seeking summary judgment.  *See* ECF No. 270.

Thousands of Pennsylvania voters were disenfranchised in the last election based on an undisputedly immaterial paperwork mistake, in violation of federal law.  But federal law is not self-enforcing; rather, federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  There is a live, justiciable controversy before this Court, which the Court should resolve by granting Plaintiffs' motion for summary judgment.

### A. This Court Has Subject Matter Jurisdiction

Plaintiffs' claims arise under the Constitution and laws of the United States—specifically, the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331.  The only other requirement for subject matter jurisdiction is to establish constitutional standing.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("'Article III standing ... enforces the Constitution's case-or-controversy requirement.'" (citation omitted)).

To establish Article III standing, a plaintiff must demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

2

redressed by the requested relief." *E.g., DaimlerChrysler*, 547 U.S. at 342 (citation omitted). So long as any one of the individual or organizational plaintiffs has standing, the Court has jurisdiction under Article III. *See, e.g., Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 826 n.1 (2002); *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 481 n.14 (3d Cir. 2016). Here, each and every one of the plaintiffs satisfies their burden. *See generally* ECF No. 313 at 3–7.

As to the individual voter plaintiffs, there is no dispute that they and thousands of other registered, eligible Pennsylvania voters had their ballots excluded in the November 2022 election solely because they forgot to write a date, or wrote an "incorrect" date, on a declaration form printed on the outer return envelope containing their mail ballots. *See* ECF Nos. 283, 302, 308, 305 (¶¶ 36, 38, 39, 42 in each document). The individual plaintiffs' ballots were excluded from the vote totals, a personal and concrete injury. That injury is traceable to both (a) the Secretary, who instructed each county board of elections to "segregate" and "not count" the individual plaintiffs' votes, ECF No. 283, ¶¶ 19–20, and certified the election results without counting the individual plaintiffs' votes in the vote totals, ECF No. 301 at 308; and (b) the individual voters' own County Boards of Elections, which set aside and refused to count their votes in the November 2022 election due to an incorrect or missing envelope date, ECF No. 283, ¶¶ 22–26. The Secretary and the County Boards of Elections took these actions in compliance with the Supreme Court of Pennsylvania's November 1, 2022 order in *Ball v. Chapman*, which directed that, as a matter of state

3

law, mail ballots with missing or incorrect handwritten dates on their return envelopes should be segregated and not counted.[1] ECF 283, ¶¶ 17, 18; ECF 281 at APP_1147–49. Plaintiffs' injury can be redressed by nominal damages, *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021), and by injunctive relief ordering the Defendants to count their improperly excluded mail ballots and reflect them in the public totals—*actions that, because they are bound to comply with* Ball, *none of the Defendants will take absent a federal court judgment against them.* ECF 283, ¶¶ 17–20; ECF 279 at APP_846, 930–32, 1006; ECF 281 at APP_1183–84.

The organizational Plaintiffs have also amply demonstrated standing. There is no dispute that they reassigned staff, members, and/or volunteers from their core, intended election-related efforts—engaging and turning out new voters, and educating prospective voters about the issues at stake—towards responding to Defendants' imposition of the envelope-dating requirement, including by making thousands of calls and texts to affected voters, attending board meetings to advocate for cure opportunities, and even stationing volunteers at the polls to warn voters about potential disenfranchisement. ECF No. 283, ¶¶ 27–32; *see, e.g.*, ECF 280 at APP_1068, 1084–88, 1108–09, 1114, 1126, 1133; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d

---

[1] However, the Supreme Court of Pennsylvania did not resolve the question of whether federal law prohibited disenfranchising voters on that basis, indicating that it was "evenly divided" on that federal question. *Id.*; *cf. Migliori v. Cohen*, 36 F.4th 153, 162–64 (3d Cir. 2022), *vacated as moot*, 143 S. Ct. 297 (Mem) (2022).) Absent an order declaring that federal law forbids disenfranchising voters on this immaterial basis, the defendants remain bound by the Supreme Court of Pennsylvania's interpretation of Pennsylvania state law.

247, 308–14 (3d Cir. 2014). There is likewise no dispute that at least some of the plaintiffs had already begun diverting resources towards addressing the envelope-dating requirement for the next upcoming election by the time summary judgment briefing was submitted in this case. ECF No. 283, ¶¶ 28(h), 30(f). Those ongoing injuries stem directly from Defendants' enforcement of the Date Requirement, and will be ameliorated by an order enjoining Defendants from enforcing it—*action that, again, Defendants will not take absent a judgment against them*.

So long as Defendants continue to enforce the Date Requirement, disenfranchise voters, and thereby cause the Plaintiffs' harms, Plaintiffs' federal law challenge to the Date Requirement is necessarily justiciable. Whether Defendants agree with Plaintiffs' legal arguments is irrelevant: A government defendant's mere "agreement with [the plaintiffs'] position" does not "deprive[] the District Court of jurisdiction to entertain and resolve" the case so long as the plaintiffs' injury remains "concrete, persisting, and unredressed." *Windsor,* 570 U.S. at 756. Thus, in *Windsor*, where the federal government disavowed the constitutionality of the federal Defense of Marriage Act (DOMA), but continued to defend against a challenge to the law, the district court was not deprived of jurisdiction. Rather, "[t]he Government's position—agreeing with Windsor's legal contention *but refusing to give it effect*—meant that there was a justiciable controversy between the parties." *Id.* (emphasis added).

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) is similarly on point. There, the plaintiff challenged the constitutionality of a statute that allowed one chamber of Congress to veto executive action staying his deportation. *Id.* at 939. Even though in litigation

5

the federal government agreed with his position, the plaintiff still had standing; the government's mere "agreement with [his] position" did "not alter the fact that the INS would have deported [him] absent the [court's] judgment." *Id*. at 939. Again, it is the government's *actions*, not its legal position, that matter. The question for purposes of justiciability is whether a decision granting relief will have "real meaning." *Id*. at 939–40 ("[I]f we rule for Chadha, he will not be deported; if we uphold [the challenged statute], the INS will … deport him."). So long as a plaintiff cannot obtain relief from the challenged governmental *action* without a court order, a plaintiff may not be "denied access to the courts because the [government defendant] agree[s] with the[ir] legal arguments." *Id*.

Here too, this Court's decision on the merits will have real meaning. If the Court rules for Plaintiffs, the individual plaintiffs' votes will be opened, counted, and reflected in the vote totals for the 2022 election; the organizational plaintiffs will no longer have to scramble in the days before an election to ensure that mail-ballot voters have their votes counted; and future voters will not have their votes set aside based on a meaningless paperwork error pursuant to the Date Requirement. If it rules for Defendants, then the Date Requirement will remain in force, then the individual voter plaintiffs' votes will remain uncounted in their envelopes, and thousands of Pennsylvanians will face disenfranchisement based on an inconsequential paperwork error, each and every election. *Windsor* and *Chadha* answer this Court's precise question, and confirm beyond any doubt that there is jurisdiction here.

## B. There Is Sufficient Adversity Here

Once plaintiffs establish standing, Article III's "case-or-controversy requirement" is satisfied. *Windsor*, 570 U.S. at 756. Any remaining concerns implicate not "the jurisdictional requirements of Article III," but "prudential limits on its exercise." *Id.* (explaining that "[t]he Court has kept these two strands separate). Such "prudential considerations demand that the Court insist upon 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends ….'" 570 U.S. at 760 (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1962)). Where sufficient adverseness is not present among the parties themselves, an intervenor or amicus may fill the role. Thus, in *Windsor*, any prudential concerns were satisfied because, although the federal government agreed with the plaintiffs' challenge to DOMA, a Bipartisan Legal Advisory Group of the House of Representatives ("BLAG") intervened in the litigation to defend DOMA's constitutionality. *See* 570 U.S. at 761 ("BLAG's sharp adversarial presentation of the issues satisfies the prudential concerns that otherwise might counsel against hearing an appeal from a decision with which the principal parties agree."). *See also Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020) (explaining that prudential concerns were satisfied because the Court had "entertain[ed] arguments made by an *amicus*" who took the opposing position, even though all the actual parties to the litigation agreed on the merits).

Here, there is more than sufficient adversity to satisfy any prudential concerns. For one, a number of County Boards of Elections that were named as Defendants are litigating the case and defending the Date Requirement on the

7

Y

merits. ECF Nos. 267, 268, 294, 302 (Lancaster); ECF Nos. 269, 309 (Berks); ECF No. 297 (Westmoreland). And if the vigorous participation of multiple named Defendants were somehow not enough, a group of Republican Party-affiliated Intervenors (whose intervention Plaintiffs did not oppose) have also been enthusiastically involved in this case since only three days after it was filed. *See* ECF No. 27. The GOP Intervenors filed multiple motions to dismiss (ECF Nos. 40, 41, 131, 193, 194), sought summary judgment and opposed Plaintiffs' motion for summary judgment (ECF Nos. 270, 271, 272, 273, 304, 305, 307, 318, 320, 321, 322), served discovery requests, deposed Plaintiffs' expert for more than two hours, and participated actively in court conferences, discovery negotiations, and every other aspect of these expedited proceedings (*see, e.g.*, ECF Nos. 203, 253)—effectively operating as the lead defendant in the case from the start, and presenting a view of federal law sharply distinct from Plaintiffs' own.

As the pending cross-motions before the Court attest, this Court has been presented with both sides of the federal law question before it, based on a full record developed through adversarial litigation. The Court should resolve the pending motions in Plaintiffs' favor and grant the relief they seek, to uphold federal law and to ensure that Pennsylvanians' votes are no longer set aside based on a meaningless paperwork error on the mail ballot return envelope.

## CONCLUSION

The Court should exercise its jurisdiction and grant Plaintiffs' motion for summary judgment.

Dated: August 22, 2023

Respectfully submitted,

/s/ Ari J. Savitzky

Stephen Loney (PA 202535)
Marian K. Schneider (PA 50337)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
sloney@aclupa.org
mschneider@aclupa.org

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org
rting@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

Ari J. Savitzky
Megan C. Keenan
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

*Counsel for the Pennsylvania State Conference of the NAACP, League of Women Voters of Pennsylvania, Philadelphians Organized to Witness, Empower and Rebuild, Common Cause Pennsylvania, Black Political Empowerment Project, Make the Road Pennsylvania, Barry M. Seastead, Marlene G. Gutierrez, Aynne Margaret Pleban Polinski, Joel Bencan, and Laurence M. Smith*

9