# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>AL SCHMIDT, *et al.*,<br><br>    Defendants. | Civil Action No.: 1:22-cv-00339<br><br>Judge Susan P. Baxter |

## **DECLARATION OF ANGELA ALLEMAN**

  Pursuant to 28 U.S.C. § 1746, I, Angela Alleman, declare as follows:

  1.  I am over the age of 18 and am otherwise competent to testify.

  2.  I have personal knowledge of the matters in this declaration.

  3.  I am currently the Executive Director of the Republican Party of Pennsylvania (the "RPP").

  4.  The RPP is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).

  5.  The RPP supports and seeks to uphold free and fair elections for all Pennsylvanians.

  6.  The RPP has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections consistently throughout the Commonwealth.

  7.  The RPP's members include all registered Republican voters, candidates, and officeholders in Pennsylvania.

  8.  The RPP's mission includes supporting Republican candidates for federal, state, and local office in Pennsylvania and preserving and promoting a free and fair electoral

1

environment in which Republican candidates can win election.

9. Accordingly, the RPP, on behalf of itself and its members, including its voters, nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

10. Additionally, the RPP devotes substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania.

11. RPP has statutory rights to appoint both poll watchers to observe casting, counting, and canvassing of ballots at the polling place, 25 P.S. § 2687(a), and an "authorized representative" to "remain in the room" at the county board of elections and observe the pre-canvass and canvass of "absentee ballots and mail-in ballots," *id.* §§ 3146.8(g)(1.1)-(2).

12. RPP has exercised these statutory rights in the past several election cycles and is doing so again for the 2024 elections.

13. In conjunction with its Election Day Operations ("EDO"), the RPP devotes substantial time and resources toward the recruitment and training of poll workers, poll watchers, and volunteers throughout the 67 counties of the Commonwealth to assist voters on election day, to observe the casting and counting of ballots at the polling place, and to observe the pre-canvass and canvass of absentee and mail-in ballots at the county board of elections.

14. As part of its EDO, the RPP also devotes substantial time and resources toward the recruitment and training of a "ground team" of lawyers throughout the Commonwealth who stand ready on Election Day to assist poll workers, poll watchers, and volunteers should questions arise as to elections laws or the voting process within the Commonwealth.

15. The RPP has devoted substantial time and resources in mobilizing and educating voters in Pennsylvania in the past many election cycles and will do so again in 2024.

16. Each of the RPP's EDO, training, and voter education programs relies upon, utilizes, and is built upon the clear language of the Election Code.

17. In particular, following the enactment of Act 77, which fundamentally changed the manner in which Pennsylvanians are permitted to vote, most notably by providing a new universal mail-in voting regime, RPP significantly updated and altered its EDO, training, and voter education programs.

18. Following the enactment of Act 77, RPP substantially increased the amount of its time and resources dedicated to educating voters, poll workers, poll watchers, volunteers, and its legal teams throughout Pennsylvania's 67 counties regarding the provisions of Act 77.

19. RPP's EDO, training, and voter education programs include training and information regarding the requirements for voters to cast lawful and valid ballots, and the governing rules delineating unlawful and invalid ballots and preventing election officials from pre-canvassing, canvassing, or counting such ballots.

20. I am aware that, in a case brought by the RPP and other parties, the Pennsylvania Supreme Court held that General Assembly's date requirement for absentee and mail-in ballots is mandatory and that non-compliant ballots may not be counted. *See Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 1, 2022) (per curiam).

21. I am aware that, before the Court entered its summary judgment order in this case, the law in Pennsylvania was that undated or incorrectly dated absentee and mail-in ballots would not be counted.

22. I am aware that the Court's summary judgment order declares that 12 county boards of elections—Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Washington, Warren, Westmoreland, and York—may not enforce the date

requirement and must count undated or incorrectly dated absentee and mail-in ballots.

23. I am also aware that the Court's summary judgment order does not changes the rules for the other 55 county boards of elections in Pennsylvania.

24. RPP's EDO, training, and voter education programs include training and information regarding the General Assembly's date requirement.

25. The change in the governing law around the date requirement that the Court's summary judgment order has purported to make harms the RPP by rendering its EDO, training, and voter education programs less effective, wasting the resources they have devoted to such programs, and requiring them to expend new resources to update those programs.

26. In particular, so long as the Court's summary judgment order is not stayed or reversed, the RPP will be required to alter its statewide EDO, training, and voter education programs to specify that the date requirement is valid and mandatory in 55 counties but not in the 12 counties covered by the order.

27. If the RPP alters its EDO, training, and voter education programs to reflect the Court's order, it will again have to alter those materials if the Court's order is stayed or reversed in the future.

28. Altering its statewide EDO, training, and voter education programs will require the RPP to divert resources from its intended mission of nominating, promoting, and assisting Republican candidates in Pennsylvania and of educating, mobilizing, assisting, and turning out voters in Pennsylvania.

29. The RPP also has a strong interest in preserving its victory in *Ball v. Chapman*, which upheld uniform, mandatory application of the General Assembly's date requirement across all Pennsylvania counties and, thus, contributes to free and fair elections on behalf of all

Pennsylvanians.

30. The Court's summary judgment order undermines this interest by declaring the date requirement non-mandatory in 12 Pennsylvania counties, creating disuniformity in application of the date requirement across Pennsylvania, and undermining free and fair elections on behalf of all Pennsylvanians.

31. Thus, if left uncorrected, the Court's summary judgment order threatens to create voter confusion, to reduce voter confidence in the integrity of Pennsylvania's elections, and to decrease voter turnout in Pennsylvania, including by members of the RPP.

32. The Court's summary judgment order also alters the competitive environment surrounding elections in Pennsylvania in which the RPP, its members, its voters, and its candidates exercise their constitutional rights to vote and to participate.

33. The Court's summary judgment order harms the electoral prospects of Republican candidates in Pennsylvania; makes it more difficult for the RPP, its members, its voters, and its candidates to win elections; and may change the outcome of elections in Pennsylvania.

34. Including in the official vote total ballots that did not comply with the date requirement has flipped the result in three elections in Pennsylvania since 2020. In each of those elections, the Republican candidate would have prevailed if the noncompliant ballots had not been included in the vote total. In other words, in each of those elections, including the noncompliant ballots in the vote total flipped the outcome and resulted in a Democratic candidate being declared the winner and a Republican candidate being declared the loser.

35. The first was the State Senate race involving Republican Nicole Ziccarelli in 2020. *See In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020).

36. The second was the Court of Common Pleas race involving Republican David Ritter in 2021. *See Migliori v. Cohen*, 36 F.4th 153, *cert. granted and judgment vacated*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022)

37. In the third, the Court's order has changed the apparent result of the November 2023 election for Towamencin Township Board of Supervisors (Montgomery County). The Republican candidate, Richard Marino, prevailed by 4 votes over his Democratic challenger, Kofi Osei, with all ballots counted under the rules in effect on election day, November 7, 2023. This Court's order issued two weeks later. Invoking that order, the Montgomery County Board of Elections counted six ballots that did not comply with the date requirement. Including those ballots in the vote total resulted in a tie between Mr. Marino and Mr. Osei. On November 30, 2023, the Montgomery County Board of Elections resolved that tie through a casting of lots by which Mr. Osei was declared the winner.

38. Any delay in, or denial of, Mr. Marino taking the office to which Towamencin Township voters elected him under the rules in effect on Election Day 2023 irreparably harms RPP's interest in electing Republican candidates, having Republican officeholders serve, and having officeholders implement Republican-support policies. Any such delay or denial also irreparably harms Mr. Marino, who has an interest in continuing his service in office as a Republican. And any such delay or denial irreparably harms the voters, including Republican voters, who voted for Mr. Marino and reelected him under the rules in effect on election day.

39. I declare under penalty of perjury that the foregoing is true and correct.

Date: 12/1/2023

Angela Alleman