IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 1:22-cv-00339 ) ) |
| v. | ) Judge Susan P. Baxter ) |
| AL SCHMIDT, *et al.*, | ) ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF INTERVENOR-DEFENDANTS'
<u>MOTION FOR A STAY PENDING APPEAL</u>**

This Court's ruling that Pennsylvania's longstanding and commonsense date requirement for absentee and mail-in ballots violates the federal materiality provision already has changed the apparent outcome of one Pennsylvania election—and it did so weeks after election day and weeks after voters had cast their ballots. This post-election changing of the rules and vote totals occurred in one of the 12 counties subject to this Court's order, but could *not* have occurred in any of Pennsylvania's 55 other counties. Indeed, those 55 county boards of elections all remain subject to the Pennsylvania Supreme Court's order and judgment that the date requirement is mandatory. *See Ball v. Chapman*, 289 A.3d 1 (Pa. Feb. 8, 2023).

This Court's conflicting order for 12 of Pennsylvania's 67 county boards of elections changes the rules of the game after an election; creates inconsistent election rules across the Commonwealth; threatens to unleash electoral chaos in the imminent 2024 election cycle during which millions of Pennsylvanians will vote for President, U.S. Senator, and other important elected officers; is causing irreparable harm to Intervenor-Defendants, their candidate, and their voters; and presents a reasonable likelihood of appellate reversal. The Court should enter a stay by December 8 pending orderly appellate proceedings in the Third Circuit and, if necessary, the U.S.

1

Supreme Court.  *See In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam); *Merrill v. Milligan*, 142 S. 879, 880 (2022) (Kavanaugh, J., concurring in grant of stay).

## BACKGROUND

### A. The Pennsylvania Supreme Court Upheld The Date Requirement In 2022

Pennsylvania has long required individuals voting by mail to date their ballot.  *See* Act of Mar. 9, 1945, P.L. 29, No. 17, sec. 10, § 1306, 1945 Pa. Laws 29, 37.  Most recently, in 2019 the General Assembly expanded mail-in voting to all voters, while also mandating that those voting by mail "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot. 25 P.S. §§ 3146.6(a), 3150.16(a); *see* Act of Oct. 31, 2019, P.L. 552, No. 77, 2019 Pa. Laws 552.

The 2019 continuation of Pennsylvania's historic signature and date requirement has been the subject of continued litigation.  After several challenges to the requirement in state court failed, individual voters filed a new lawsuit in federal court claiming that the date requirement violates the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B).  A Third Circuit panel agreed, but the U.S. Supreme Court vacated that decision.  *See Migliori v. Cohen*, 36 F.4th 153, *cert. granted and judgment vacated*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022).  When addressing a stay request on the emergency docket, three Justices opined that the Third Circuit's now-vacated holding was "very likely wrong."  *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting from denial of application for stay).

The Pennsylvania Supreme Court also declined to follow *Ritter*.  It affirmed that any absentee or mail-in ballot that fails to comply with the date requirement is invalid and ruled, by an equally divided vote, that the requirement does not violate the materiality provision.  *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022); *see Ball*, 289 A.3d 1; *Bonner v. Chapman*, 298 A.3d

2

153, 167-68 (Pa. Comm. Ct. 2023). It therefore uniformly required all county boards of elections not to count absentee or mail-in ballots that fail to comply with the date requirement. *See Ball*, 289 A.3d 1; *see also Bonner*, 298 A.3d at 167-68.

### B. Plaintiffs Filed This Suit Shortly Thereafter

Plaintiffs filed this lawsuit in November 2022, shortly after the Pennsylvania Supreme Court's ruling and the 2022 general election. *See* ECF No. 1. Plaintiffs named every Pennsylvania county and the Secretary of the Commonwealth as defendants. Plaintiffs claim that the date requirement violates the federal materiality provision and the Constitution. *See id.* ¶ 1.

After discovery, Plaintiffs and Intervenor-Defendants moved for summary judgment on all claims. *See* ECF Nos. 270 and 274. The Court largely sided with Plaintiffs, holding that mandatory application of the date requirement violates the materiality provision. *See* ECF No. 347 at 61-73. The Court did, however, find that Plaintiffs lacked standing to pursue their Equal Protection claim against all county boards of elections and their materiality claim against 55 county boards. *See id.* at 26 n.12, 34. The Court found standing to sue 12 other county boards, including the Montgomery County Board of Elections, on the materiality claim. *See id.* The Court entered a "declaratory judgment" on Plaintiffs' materiality claims against those 12 counties and the Secretary of the Commonwealth. *See* ECF No. 348 at 4. The Court also enjoined the Secretary "from directing all county boards of elections of the Commonwealth to segregate, reject, exclude, or in any way not count" ballots that fail to comply with the date requirement. *Id.* at 5. The Court entered judgment on November 29, 2023. *See* ECF No. 350.

### C. The Court's Order Flips An Apparent Election Result After Election Day

Richard Marino is the vice chairman of the Towamencin Township Board of Supervisors. *See* Marino Decl. ¶ 3 (Ex. 1). In the November 7, 2023 general election, he was the Republican

3

nominee for reelection to the Board of Supervisors. *See id.* ¶ 6. Under the rules in effect on election day—and under which Towamencin Township voters cast their ballots and voted—Mr. Marino prevailed, receiving 4 more votes than his challenger, Democrat Kofi Osei. *See id.* ¶ 7.

This Court's summary judgment order issued two weeks after election day and after voters cast their ballots. *See* ECF No. 347. It nonetheless changed the apparent outcome of the Towamencin Township election. *See* Marino Decl. ¶¶ 7-16. Invoking the Court's order, the Montgomery County Board of Elections counted 6 ballots that failed to comply with the date requirement. *See id.* ¶ 9. Including those noncompliant ballots in the vote total resulted in a tie between Mr. Marino and Mr. Osei. *See id.* ¶ 10. The Montgomery County Board of Elections convened a casting of lots yesterday, November 30, 2023, *see* 25 Pa. Stat. § 3168, through which it declared Mr. Osei the winner, *see id.* ¶¶ 11-12. Mr. Marino is exercising his statutory right to contest that outcome. *See id.* ¶ 13. Mr. Marino's current term of office ends on December 31, 2023. *See id.* ¶ 15. Absent a stay or change in the apparent outcome caused by this Court's order, Mr. Osei will be sworn into office on January 2, 2024. *See id.*

> **D. The Court's Order Applies Only To 12 County Boards Of Elections But Not The Other 55**

The outcome of the Towamencin Township election would not have changed in the 55 Pennsylvania counties that the Court dismissed from this case on standing grounds. It is axiomatic that the Court's order has no effect on non-parties such as those 55 county boards of elections. *See, e.g.*, Fed. R. Civ. P. 65(d)(2); *Chase Nat. Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934) (explaining that court orders can only bind defendants); *cf. Griffin v. HM Florida-ORL, LLC*, No. 23A366, 2023 WL 7928928, at * 1 (U.S. Nov. 16, 2023) (Kavanaugh, J., statement respecting denial of stay) ("No federal statute expressly grants district courts the power to enter injunctions prohibiting government enforcement against non parties . . . ."). Thus, the Pennsylvania Supreme

Court's order in *Ball* requiring county boards not to count absentee or mail-in ballots that fail to comply with the date requirement remains in effect and binding upon those 55 county boards. *See Ball*, 289 A.3d 1; *see also Bonner*, 298 A.3d at 167-68.

The Court's injunction "permanently enjoining the Secretary [of the Commonwealth] from directing county boards of elections" to enforce the date requirement, *see* ECF No. 348 at 5, does nothing to change the obligation of those 55 county boards. In Pennsylvania, county boards, not the Secretary, are responsible for tallying votes and applying the election laws. *See* 25 Pa. Stat. § 2642 (outlining county boards' extensive powers and duties over the administration of elections). Thus, it is the county boards, not the Secretary, that possess authority to determine the validity of ballots, to count ballots, and to certify election results. *See id.*

In other words, the Secretary lacks authority to implement the Election Code, to count ballots, or to bind county boards of elections. The Secretary "does not have control over the County Boards' administration of elections, as the General Assembly conferred such authority solely upon the County Boards." *Republican Nat'l Committee v. Schmidt*, No. 447 M.D. 2022 (Pa. Commw. Ct. Mar. 23, 2023) (slip op. at 19-20). The Secretary therefore cannot "direct" any county board of elections—including the 55 county boards dismissed from this suit—to do or refrain from doing anything, ECF No. 348 at 5, much less to depart from the Pennsylvania Supreme Court's order that the date requirement is mandatory.

## STANDARD OF REVIEW

In election cases, the equities alone frequently warrant a stay. As Justice Kavanaugh has explained, the "traditional test for a stay does not apply." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring in grant of stay). Rather, courts can stay injunctions based solely on the disruption

5

caused by election-rule changes while expressing "no opinion" on the merits. *Purcell*, 549 U.S. at 5.

Even under the traditional stay factors, Intervenor-Defendants are entitled to a stay if they can demonstrate (1) a "reasonable chance, or probability" of success on the merits and (2) a "likelihood" of irreparable harm absent a stay. *Citizens Bank*, 15 F.4th at 616. Because a stay is an equitable remedy, the Court should also consider "well-known principles of equity" and the public interest. *Reynolds*, 377 U.S. at 585; *see Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring in grant of stay).

## ARGUMENT

Intervenor-Defendants satisfy all the requirements for a stay. The public interest strongly favors staying an order that has retroactively changed the rules and apparent outcome of an election, has created inconsistent election rules across the Commonwealth, and threatens to undermine voter confidence in the integrity of the imminent 2024 elections. Indeed, only a stay can prevent the Court's order from unleashing uncertainty, an erosion of voter confidence, a torrent of litigation, and perhaps even electoral chaos in 2024. Moreover, the Court's order is imposing irreparable harm and will continue to do so in future elections until it is stayed or reversed. Finally, Intervenor-Defendants are likely to prevail on the merits of their appeal. The Court should enter a stay so that both Pennsylvania's elections and appellate review may proceed in an orderly manner.

**I.    THE PUBLIC INTEREST AND EQUITIES FAVOR A STAY.**

For at least four reasons, a stay is warranted to serve the public interest in ensuring free, fair, and trustworthy elections in Pennsylvania.

*First*, the Court's order already has altered the rules and the apparent outcome of the Towamencin Township Board of Supervisors election—and it did so *weeks after* election day and weeks after voters had cast their ballots. Judicial changes to election rules are not allowed even shortly *before* election day because such a change undermines "[c]onfidence in the integrity of our electoral processes." *Purcell*, 549 U.S. at 4. That rule applies "with much more force on the back end of elections." *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 925 (7th Cir. 2020). "Changing the rules in the middle of the game is bad enough," but changing the rules during the post-game tally risks "severely damag[ing] the electoral system on which our self-governance so heavily depends." *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 735 (2021) (Thomas, J., dissenting from denial of certiorari). Orders before election day are made behind the veil of ignorance; neither the court nor the public can know what effect, if any, the order will have on the outcome. That is not the case for orders "after election day," giving rise to suspicions that federal courts are picking winners and losers in partisan elections—particularly where, as here, such orders *do* flip the result of an election. *See id.* A stay permitting the 2023 election results, including in Towamencin Township, to be certified under the rules set by the General Assembly and in effect on Election Day 2023 avoids those harms.

*Second*, the Court's order has created disunifomity in the application of the General Assembly's duly enacted date requirement across the Commonwealth—and therefore mandates disparate treatment of voters based on the county in which they live. In particular, the Court's order declares that ballots that do not comply with the date requirement *must* be counted in 12 of Pennsylvania's 67 counties, but the Pennsylvania Supreme Court's order in *Ball* mandates that such noncompliant ballots *must not* be counted in the other 55 counties. *See supra* pp. 4-5. As a result, whether a noncompliant ballot will nonetheless be counted now turns on the county in which

it is cast, not the plain and uniform terms of the Election Code, creating a serious Equal Protection problem and running counter to the public interest in equitable and uniform election administration. *See, e.g.*, *Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."); *Bush v. Gore*, 531 U.S. 98, 105-07 (2000) (Equal Protection violated where "the standards for accepting or rejecting . . . ballots . . . vary from county to county" and "State accorded arbitrary and disparate treatment to voters in its different counties").

Indeed, the Court's order changed the apparent result of the Towamencin Township Board of Supervisors race in Montgomery County—but it could *not* have changed the result of any race in any of the 55 counties the Court dismissed from this case. *See supra* pp. 4-5. That fact only further endangers public confidence in Pennsylvania's elections and increases the public perception that courts are selectively declaring winners and losers in partisan elections. *See Republican Party of Pa.*, 141 S. Ct. at 735 (Thomas, J., dissenting from denial of certiorari).

*Third*, the Court issued its order on the eve of the 2024 election cycle in which millions of Pennsylvanians will cast their ballots for President, U.S. Senator, and other important elected offices, starting with the primary election on April 23. Pa. Stat. § 2753. That timing alone warrants entry of a stay. *See Purcell*, 549 U.S. at 4-5.

*Fourth*, it is easy to foresee how, absent a stay, the Court's order will result in uncertainty, an erosion of voter confidence, or even chaos in the 2024 election cycle. Pennsylvania elections have been hotly contested in recent years—and counting ballots that did not comply with the date requirement has changed the outcome in three races since 2020. Those include the 2020 State Senate race involving Nicole Ziccarelli, the 2021 Court of Common Pleas race involving David

8

Ritter at issue in *Migliori*, and Mr. Marino's Board of Supervisors race just this week. *See* Alleman Decl. ¶¶ 34-37 (Ex. 2).

At a minimum, it is foreseeable that the Court's ruling could change the result of at least one race in the 2024 election cycle. That outcome would be particularly damaging to the public interest if the race, such as a statewide race, involves voters from multiple counties, some of which are—and others of which are not—subject to the Court's order. In that scenario, the election result could be flipped by the combination of *counting* noncompliant ballots in a county subject to the Court's order but *not counting* identical noncompliant ballots in another county. Such an outcome would both raise Equal Protection problems, *see Reynolds*, 377 U.S. at 555; *Bush*, 531 U.S. at 105-07, and erode voter confidence in the election, *see Purcell*, 549 U.S. at 4-5.

Indeed, a regime that requires 12 counties—which are located in predominantly Democratic-leaning areas, such as Philadelphia and Pittsburgh—to count undated or incorrectly dated ballots but that requires the remaining 55 counties *not* to count such ballots invariably will undermine voter confidence in the integrity of Pennsylvania's elections, result in inequitable treatment of identical ballots based on county boundaries, decrease voter turnout and participation, and spawn even more litigation. The Court should not unleash this parade of harms on the Commonwealth, its citizens, its elections, or political campaigns. Instead, it should enter a stay pending appeal to allow the Third Circuit and, if necessary, the United States Supreme Court, the opportunity to review the Court's judgment before it alters Pennsylvania's election landscape in a vitally important election year.

## II. INTERVENOR-DEFENDANTS, PENNSYLVANIA, AND ALL PENNSYLVANIA VOTERS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

The Court should also grant a stay because multiple types of irreparable harm have occurred or will imminently occur if the Court denies a stay.

*First*, Intervenor-Defendants and their supported candidate, Mr. Marino, have suffered irreparable harm from the post-election change in the apparent result in the Towamencin Township election. *See Kupau v. Yamamoto*, 622 F.2d 449, 457 (9th Cir. 1980) (denying "the duly elected candidate … the opportunity to serve" constitutes "serious[]" "irreparable injury," even if he can recover "lost wages"). Indeed, any delay in Mr. Marino taking office—not to mention any permanent *denial* of office—after an election in which he prevailed under the rules in effect on election day irreparably harms him. *See id.*; Marino Decl. ¶ 16. It also irreparably harms Intervenor-Defendants, who have an interest in the election of their supported candidates and the implementation of their preferred policies. *See* Alleman Decl. ¶ 38. Absent intervention, this irreparable harm will begin occurring on January 1, 2024, the day after Mr. Marino's current term ends. *See* Marino Decl. ¶ 15.

*Second*, the voters who cast their ballots in Mr. Marino's favor, including Republican voters, face the irreparable harm of disenfranchisement. When assessing irreparable harm, this Court must "assum[e] the applicant's position on the merits is correct." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers). Here, the Court must assume a stay is necessary to ensure the winning candidate—Mr. Marino—takes office. Preventing the winning candidate from remaining on the Towamencin Township Board of Supervisors "seriously harm[s]" the voters who "elected him." *Kupau*, 622 F.2d at 457.

The harms to Intervenor-Defendants, Mr. Marino, and their voters are particularly acute here. After all, those harms flow from a post-election change in the rules of the game, *see supra* pp. 3-4, and reflect the disparate treatment created by the Court's order, *see supra* pp. 4-5. Indeed, had the Towamencin Township election taken place in the majority of Pennsylvania counties, Mr. Marino would have been declared the winner. It was only because this election took place in one

10

of the 12 counties subject to the Court's order that Mr. Marino was denied the victory that Towamencin Township voters awarded him in accordance with the rules in effect on election day. *See supra* pp. 4-5.

Moreover, Intervenor-Defendants, Mr. Marino, and their voters face irreparable harm in the Towamencin Township Board of Supervisors election even if Mr. Marino is rightfully declared the winner and permitted to take the office to which he was duly elected. That is because the Court's order forces election officials to include "otherwise invalid ballots . . . in the vote totals." *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020). "The counting of votes that are of questionable legality," like the six ballots that do not comply with the date requirement, "threaten[s] irreparable harm to [Marino]," his voters, Intervenor-Defendants, "and to [Towamencin Township], by casting a cloud upon . . . the legitimacy of [the] election." *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Mem.) (Scalia, J., concurring). A stay is necessary to avoid that harm.

*Third*, absent a stay, Intervenor-Defendants, their members, their candidates, and their voters face irreparable harm in future elections. For example, the Court's order will subject Intervenor-Defendants, their voters, their candidates, and their members to disparate treatment based upon the county in which they reside. *See supra* pp. 4-5; *Reynolds*, 377 U.S. at 555; *Bush*, 531 U.S. at 105-07. Moreover, the Court's order changes the competitive environment in which Intervenor-Defendants, their voters, their candidates, and their members exercise their constitutional rights to participate and vote in elections. *See* Alleman Decl. ¶¶ 32-33. And it could even change the outcome of an election to the detriment of Intervenor-Defendants, their voters, their candidates, and their members, as has occurred in three races since 2020. *See id.* ¶¶ 32-38.

11

At a minimum, Intervenor-Defendant Republican Party of Pennsylvania (RPP) will be required to modify its materials for Election Day Operations (EDO), its training materials for poll watchers, and its voter education materials to reflect the Court's order. *See id.* ¶¶ 9-28. Those modifications will include specifying the 12 counties where the Court's order is applicable and the 55 counties where it is not. *See id.* ¶ 26. Those modifications will require RPP to divert resources away from its intended mission of nominating, promoting, and assisting Republican in Pennsylvania and of educating, mobilizing, assisting, and turning out voters in Pennsylvania. *See id.* ¶ 28.

*Fourth*, a stay is needed to prevent irreparable harm to Pennsylvania and all its citizens. Invalidating a sovereign State's duly enacted law "clearly inflicts irreparable harm," *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018), and does irreparable "damage … to the authority of" the General Assembly, *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 30 (2020) (Gorsuch, J., concurring in denial of application to vacate stay). This federal judicial interference also confuses voters, confounds election administrators, disrupts the machinery of elections, deters voting, erodes confidence in election outcomes, and causes a host of other "unanticipated consequences." *Id.* at 31 (Kavanaugh, J., concurring in denial of application to vacate stay); *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of stay); *Purcell*, 549 U.S. at 4-5. These harms of potential confusion and erosion of public confidence are only exacerbated here, where the Court's order applies in only 12 Pennsylvania counties but not the other 55. The Court should not inflict this harm on the General Assembly or the people of the Commonwealth while an orderly appellate process is underway.

### III.   INTERVENOR-DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL.

Finally, for the reasons Intervenor-Defendants have explained in their summary judgment briefs, the date requirement does not even implicate, let alone violate, the federal materiality provision.  *See* ECF Nos. 271, 304, 318.  Three Justices of the Supreme Court already have agreed that the conclusion that the date requirement violates the materiality provision is "very likely wrong."  *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissenting from denial of application for stay).  So, too, has the Pennsylvania Supreme Court rejected a materiality-provision challenge to the date requirement.  *See Ball*, 284 A.3d at 1192.  And the Fifth Circuit has announced an interpretation of the materiality provision contrary to the interpretation this Court favors.  *See Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).  Intervenor-Defendants and Mr. Marino have more than a "reasonable chance" of success on the merits.  *Citizens Bank, N.A.*, 15 F.4th at 616.

### CONCLUSION

This Court should enter a stay pending appeal by December 8, 2023.

Dated:  December 1, 2023

Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
THE GALLAGHER FIRM, LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 308-5512
kag@gallagherlawllc.com

John M. Gore *
E. Stewart Crosland
Louis J. Capozzi III*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

Counsel for Intervenor-Defendants and Prospective Intervenor Richard Marino

* Admitted pro hac vice