# EXHIBIT B

No. 23-3166

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.,*

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*

REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,

*Appellants.*

———————————

**On Appeal from the United States District Court for the
Western District of Pennsylvania, Case No. 1:22-cv-00339**

———————————

**APPELLANTS' AND PROPOSED INTERVENOR'S
EMERGENCY MOTION FOR A STAY**

———————————

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

John M. Gore
 *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants*

# INTRODUCTION

For weeks after Election Day, the people of Towamencin Township, Pennsylvania, believed that Richard Marino had won reelection to the Board of Supervisors. When election officials counted all ballots under the rules in effect on Election Day, Marino won by four votes. Then came the District Court's order. Two weeks after Election Day, the District Court invoked the Civil Rights Act's Materiality Provision, 52 U.S.C. § 10101(a)(2)(B), to declare unlawful Pennsylvania's longstanding rule that voters must date their absentee or mail-in ballots. Relying on that order, the Montgomery County Board of Elections belatedly counted ballots that do not comply with the date requirement and certified Marino's opponent, Kofi Osei, the winner.

This happened only because Towamencin Township is located in one of the 12 counties subject to the District Court's order. It could not have happened in any of the 55 Pennsylvania counties the District Court dismissed: those county boards remain bound by the Pennsylvania Supreme Court's 2022 order, which upheld the date requirement and prohibited counting ballots that fail to comply with it. *See Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022).

The District Court's ruling conflicts not only with *Ball*, but also with the statement of three Justices that the conclusion that the date requirement violates the Materiality Provision is "very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissental). And it runs counter to the Fifth Circuit's construction of the Materiality Provision. *See Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).

The public interest overwhelmingly favors a stay of the District Court's order and judgment pending appeal. The District Court improperly changed the rules of Marino's election *after* the votes were tallied, undermining the election's legitimacy and risking "severe[] damage [to] the electoral system." *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 735 (2021) (Thomas, J., dissental). The order, moreover, threatens to unleash chaos in Pennsylvania's 2024 elections. In three recent years—2020, 2021, and (apparently) 2023—an election result was flipped when officials counted ballots that did not comply with the date requirement. It is easy to foresee that happening again in the hotly contested 2024 elections in which millions of Pennsylvanians will vote for President, U.S. Senator, and other important offices. And the order mandates disparate treatment of ballots

between the 12 counties subject to it and the 55 dismissed counties, promising confusion, an erosion of voter confidence, and even a potential violation of the Equal Protection Clause. *See Bush v. Gore*, 531 U.S. 98, 105-07 (2000) (violation where "the standards for accepting or rejecting … ballots … vary …  from county to county").

The order also threatens multiple types of irreparable harm.  Most obviously, Mr. Marino is barred from taking office, frustrating the will of Towamencin Township voters.  Appellants, their voters, and their candidates face irreparable harm to their right to participate in free and fair elections—and the Commonwealth is irreparably harmed by invalidation of the General Assembly's duly enacted law.

In election-law cases, federal courts frequently enter stays *regardless* of the merits to head off judicial changes to election rules close-in-time to an election.  *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral).  The Court should likewise do so here.  Even if the Court applies the traditional requirements for a stay, Appellants easily satisfy them.  Appellants are likely to prevail on the merits because the District Court's interpretation of the Materiality Provision is incorrect.  The

Court should enter a stay and clarify that the order does not impose any obligations on election officials in the 2023 election or future elections, pending review by this Court and the U.S. Supreme Court.

Time is of the essence. Osei is scheduled to be sworn into office on January 2, 2024. Expedited consideration is warranted to ensure that Marino is timely certified as the winner and that Appellants can seek further review in the U.S. Supreme Court if necessary. Appellants therefore respectfully request that the Court expedite briefing and issue a decision no later than December 15, 2023.

## BACKGROUND

A. *The Pennsylvania Supreme Court Upholds The Date Requirement In 2022.*

Pennsylvania has long required individuals voting by mail to date their ballot. *See* 1945 Pa. Laws 29, 37; 25 P.S. §§ 3146.6(a), 3150.16(a). This requirement has been the target of continual litigation in recent years. After several failed state-court challenges, individuals filed a federal lawsuit claiming that the requirement violates the Materiality Provision. This Court agreed, but the U.S. Supreme Court vacated that decision. *See Migliori v. Cohen*, 36 F.4th 153, *vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). When addressing a stay request on the

4

emergency docket, three Justices opined that this Court's now-vacated holding was "very likely wrong." *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissental).

The Pennsylvania Supreme Court has also declined to follow *Migliori*. In 2022, it affirmed that any absentee or mail-in ballot that fails to comply with the date requirement is invalid and ruled, by an equally divided vote, that the requirement does not violate the Materiality Provision. *Ball*, 284 A.3d at 1192; *see Ball v. Chapman*, 289 A.3d 1 (Pa. 2023); *Bonner v. Chapman*, 298 A.3d 153, 167-68 (Pa. Commw. Ct. 2023). It therefore prohibited all 67 county boards from counting such noncompliant ballots. *See Ball*, 289 A.3d 1.

B. *The District Court Invalidates The Date Requirement In 12 Counties.*

Plaintiffs filed this lawsuit shortly thereafter against all 67 Pennsylvania counties and the Secretary of the Commonwealth. ECF No. 1 ¶ 1. Appellants intervened as defendants. ECF No. 167.

On competing summary judgment motions, the District Court concluded that Plaintiffs had standing to bring their Materiality Provision claim against the Secretary and 12 county boards, but not against the remaining 55 county boards, which it dismissed. ADD.34.

On the merits, it held that the date requirement violates the Materiality Provision and entered a "declaratory judgment" against the 12 county boards and the Secretary.  ADD.61-73; ECF No. 348 at 4.

The "declaratory judgment" does not run against the 55 dismissed county boards.  Nor does the District Court's injunction against the Secretary, *see* ECF No. 348 at 5, change the obligations of any county board.  The Secretary "does not have control over the County Boards' administration of elections, as the General Assembly conferred such authority solely upon the County Boards." *RNC v. Schmidt*, No. 447 M.D. 2022 (Pa. Commw. Ct. Mar. 23, 2023) (slip op. at 19-20); *see also* 25 P.S. § 2642.  The 55 dismissed county boards therefore remain subject to the Pennsylvania Supreme Court's order to enforce the date requirement by not counting any noncompliant ballot.  *See Ball*, 289 A.3d 1.

C. *Election Officials Belatedly Flip The Apparent Result Of A 2023 Race.*

Marino is the vice chairman of the Towamencin Township Board of Supervisors who ran for reelection in the November 7, 2023 election. Marino Decl., ADD.78 ¶¶ 3, 6.  Under the rules in effect on Election Day—and under which Towamencin Township citizens voted—Marino prevailed by 4 votes. *Id.* ¶ 7.

The District Court's order issued two weeks later. The Montgomery County Board of Elections then invoked the order to flip the apparent result of Marino's race. *See* ADD.78-79 ¶¶ 8-16. It did so by counting 6 noncompliant ballots, declaring the race a tie, and, on November 30, declaring Osei the winner through a casting of lots. *See id.* ¶¶ 9-12. Absent a stay, Osei will be sworn into office on January 2, 2024. *See* ADD.79 ¶ 15.

D. *Voters File A Contest And Appellants Seek A Stay.*

Towamencin Township voters have filed a contest to the Montgomery County Board's certification of Osei as the winner. *See* Petition, *In Re: Contest of Nov. 7, 2023 Election of Towamencin Township Supervisor*, No. 2023-26306 (Ct. Comm. Pls. of Mont. Cty.) (ADD.86). The Montgomery County Board's sole basis for counting the noncompliant ballots is the District Court's order. *See* Montgomery County General Election Certification Postponed Due To Court Ruling (Nov. 22, 2023) (ADD.113-14).

A stay of the order, therefore, will eliminate the Montgomery County Board's only basis for certifying Osei as the winner. *See* ADD.93-96 ¶¶ 17-30. Accordingly, Appellants moved the District Court for a stay

and, given the imminent expiration of Marino's term, asked for an expedited ruling by December 8, 2023. ECF No. 353 at 1-2. On December 4, the District Court denied the request for expedition without explanation and set a December 11 response deadline, ECF No. 361, meaning it will not rule by December 8. It also provided no timeline for a ruling. *See id.* Marino needs immediate review by this Court to ensure he can seek Supreme Court review before his term expires and Osei takes office. *See* Fed. R. App. P. 8(a)(2)(A).

Appellants filed a notice of appeal on December 6, 2023.

## STANDARD OF REVIEW

In election-law cases, the "traditional test for a stay does not apply" and the public interest alone is often dispositive. *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurral). Courts can stay injunctions based solely on the disruption caused by election-rule changes while expressing "no opinion" on the merits. *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam).

Under the traditional stay factors, this Court weighs (1) Appellants' likelihood of success on the merits, (2) their irreparable harm absent a

stay, (3) whether a stay would substantially injure Plaintiffs, and (4) the public interest. *In re Citizens Bank*, 15 F.4th 607, 615 (3d Cir. 2021).

## ARGUMENT

This Court should grant a stay. The District Court's order has resulted in retroactively changing the rules and outcome of an election, has created inconsistent election rules across the Commonwealth, and threatens electoral chaos in 2024. It also will impose severe irreparable harms and is likely to be reversed.

## I.  THE PUBLIC INTEREST FAVORS A STAY.

For at least three reasons, the public interest demands a stay.

*First*, the District Court's order has resulted in changing the rules and apparent outcome of Marino's election—and did so *weeks after* balloting. Judicial changes to election rules are not allowed even shortly *before* Election Day because they undermine "[c]onfidence in the integrity of our electoral processes." *Purcell*, 549 U.S. at 4. That rule applies "with much more force on the back end of elections." *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 925 (7th Cir. 2020). Orders before Election Day are made behind the veil of ignorance; neither the court nor the public knows what effect, if any, they will have on the outcome. By contrast,

orders "after election day" create suspicions that federal courts are picking election winners—particularly where, as here, they *do* flip an apparent result. *Republican Party of Pa.*, 141 S. Ct. at 735 (Thomas, J., dissental). A stay reiterating that the date requirement governed the 2023 election results avoids that harm.

*Second*, the order has created disuniformity in the application of the date requirement across the Commonwealth. The District Court's order declares that noncompliant ballots *must* be counted in 12 counties, but the Pennsylvania Supreme Court's *Ball* judgment mandates that such ballots *must not* be counted in the other 55 counties. The order's disparate treatment of otherwise-identical ballots creates a serious Equal Protection problem and frustrates the public interest in uniform election administration. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."); *Bush*, 531 U.S. at 105-07.

*Third*, the order will result in uncertainty, an erosion of voter confidence, and potential chaos in 2024. Pennsylvania elections have been hotly contested in recent years—and counting undated ballots has

10

changed the outcome in three races since 2020. *See* Alleman Decl.,
ADD.84-85 ¶¶ 34-37.

The order could plausibly change the outcome of at least one race
in 2024. That outcome would be particularly damaging to the public
interest if the race, such as the Senate or Presidential race, involves
voters from multiple counties, some of which are—and others of which
are not—subject to the order. In that scenario, the election result could
be flipped by the combination of *counting* noncompliant ballots in a
county subject to the order but *not counting* identical ballots in another
county. Such an outcome would both raise Equal Protection concerns, *see
Reynolds*, 377 U.S. at 555; *Bush*, 531 U.S. at 105-07, and erode voter
confidence in the election, *see Purcell*, 549 U.S. at 4-5. The Court should
grant a stay and prevent this parade of harms from being unleashed on
the Commonwealth, its citizens, and its elections.

## II. A STAY AVOIDS SEVERE IRREPARABLE HARM.

Multiple irreparable harms will occur absent a stay.

*First*, denying Marino "the opportunity to serve" causes
"irreparable injury" to him and "serious[] harm" to the voters who
"elected him." *Kupau v. Yamamoto*, 622 F.2d 449, 457 (9th Cir. 1980).

Every day from January 1 onwards that Mr. Marino is denied office is a day of irreparable harm.

*Second*, Appellants, their voters, and their candidates face various irreparable harms in future elections. Those harms include being subjected to disparate treatment based on county geography, *see supra* at 10-11, changes to the competitive environment in which they exercise their constitutional rights to participate in elections, *see* ADD.84-85 ¶¶ 32-38, and the potential flipping of future election results to their detriment, *see id.* The harms also include the diversion of resources away from the Republican Party of Pennsylvania's mission of nominating, promoting, and assisting Republican candidates and voters and toward modifying its training and voter-education materials to reflect the order. *See id.* ¶¶ 9-28.

*Third*, the order inflicts irreparable harm on Pennsylvania and its citizens. Invalidating a sovereign state's law "clearly inflicts irreparable harm," *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018), and does irreparable "damage … to the authority of" the General Assembly, *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 30 (2020) (Gorsuch, J., concurral). This federal judicial interference also confuses voters, confounds election

administrators, deters voting, erodes confidence in election outcomes, and causes many other "unanticipated consequences." *Id.* at 31 (Kavanaugh, J., concurral).

*Finally,* Plaintiffs will not be "substantially injure[d]" by a stay. *Citizens Bank*, 15 F.4th at 615. Pennsylvania's date requirement has governed mail ballots since the 1940s. Plaintiffs waited until 2022 to challenge it, suggesting they will not be especially injured by temporarily maintaining the status quo. Indeed, Plaintiffs never asked for a preliminary injunction—even after the District Court endorsed their merits theory in June, ECF No. 329—suggesting their potential harms are not urgent. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."). The Court should grant a stay.

## III. APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS.

### A. *The Date Requirement Cannot Violate the Materiality Provision.*

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Yet according to the District Court, the Materiality Provision

prohibits states from adopting *any* mandatory paper-based election rule unless it is used to determine voter eligibility.  *See* ADD.66.

That makes no sense: "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the Materiality Provision. *Vote.Org*, 39 F.4th at 305 n.6.  Almost every state, including Pennsylvania, determines voter eligibility during a voter-registration process.  *See, e.g.*, U.S. Election Assistance Comm'n, *Voter FAQs*, https://www.eac.gov/voters/voter-faqs (last visited Dec. 2, 2023) (noting 49 states require voters "to be registered to vote to participate in an election" and that "[e]ligibility requirements" assessed during process "vary by state").  The Materiality Provision governs only qualification determinations during *that* process, not "the counting of ballots by individuals *already deemed qualified to vote*." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004); *see Vote.Org*, 39 F.4th at 305 n.6. Thus, the date requirement *cannot* violate the Materiality Provision because it is inapplicable to voter registration.

The Materiality Provision forbids state actors to:

deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any

14

application, registration, or other act requisite to voting, if
such error or omission is not material in determining whether
such individual is qualified under State law to vote in such
election.

52 U.S.C. § 10101(a)(2)(B).

In at least three ways, the Materiality Provision's plain text
confirms that the date requirement cannot violate it. *First*, it applies
only to a "record or paper" related to an "application, registration, or
other act requisite to voting." *Id.* The words "registration" and
"application" refer to documents used in "voter registration specifically."
*Vote.Org*, 39 F.4th at 305 n.6. The relevant legislative history shows
Congress used those words interchangeably to refer to voter registration.
H.R. Rep. 88-914 at 2445 (1963) (referring to "application to register");
*id.* at 2491 (referring to efforts to "defeat [African-American]
registration" by "rejecting [African-American] applications" to vote); *id.*
(faulting "registrars" for "rejecting [African-American] application[s]" in
registration process); *cf. In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir.
1989) (Easterbrook, J.) (endorsing such use of legislative history).

The date requirement is not applied during Pennsylvania's voter
registration process. It governs the casting of absentee and mail-in
ballots and, as the District Court explained, applies only to voters who

"ha[ve] previously been determined to be eligible and qualified to vote."
ADD.67.

Nor is dating a ballot an "other act requisite to voting" under the
Materiality Provision, because that catchall phrase likewise refers only
to voter registration. § 10101(a)(2)(B). "[W]here general words follow an
enumeration of specific items, [they] are read as applying only to other
items akin to those specifically enumerated." *Harrison v. PPG Indus.*,
446 U.S. 578, 588 (1980). Thus, the phrase "other act requisite to voting"
must be "controlled and defined by reference to the enumerated
categories," *Circuit City Stores v. Adams*, 532 U.S. 105, 115 (2001), of
"application" and "registration," *see Ball*, 289 A.3d at 38 n.11 (opinion of
Brobson, J.). Indeed, failure to apply the *ejusdem generis* canon would
render the words "registration" and "application" superfluous—an
outcome courts must "avoid[]." *Freeman v. Quicken Loans, Inc.*, 566 U.S.
624, 635 (2012).

Only that reading of the Materiality Provision harmonizes with
precedent and Congress's statutory aim: preventing states from
"defeat[ing] [African-American voter] registration." H.R. Rep. No. 88-
914, pt. 2, at 5. During the 1960s, southern states blocked African

16

Americans' voter registrations through the "practice of requiring unnecessary information for voter registration"—like listing the registrant's "exact number of months and days in his age." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). "Such trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting applicants." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). Simultaneously, "registrars" in southern states "overlook[ed] minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" African-Americans' applications "for the same or more trivial reasons." H.R. Rep. No. 88-914, pt. 2, at 5.

The Materiality Provision barred that practice by prohibiting the "[d]enial of the right to vote in any federal election because of immaterial omissions or errors in registration forms." Warren M. Christopher, *The Constitutionality of the Voting Rights Act of 1965,* 18 Stan. L. Rev. 1, 7 (1965); H.R. Rep. No. 88-914, pt. 2, at 5. That is why the Materiality Provision applies "only" in the context of "voter registration specifically." *Vote.Org*, 39 F.4th at 305 n.6. And that is why, until *very* recently, courts "have applied the [Materiality Provision]" only "in the context of voter

17

registration." *Thrasher v. Ill. Republican Party*, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013); *Friedman*, 345 F. Supp. at 1371.

*Second*, the Materiality Provision requires that the paper or record be used "in determining" the voter's qualifications. § 10101(a)(2)(B). When used with a "verbal noun[]"—here, "determining"—the word "in" is typically "equivalent in sense to a temporal clause introduced by *when, while, if*." *In*, prep., def. 21(b), *Oxford English Dictionary* (3d ed. 2021, rev. online Mar. 2023). The provision thus only applies to actions state officials take *when determining* a voter's eligibility. *See Ball*, 289 A.3d at 38 (opinion of Brobson, J.).

In Pennsylvania, as in virtually every state, the "determin[ation] whether [an] individual is qualified to vote" happens during the *voter-registration process*. *See* 25 P.S. § 1301(b). As a regulation of mail-in voting, the date requirement applies only after the Commonwealth has *already* found the voter qualified. *See* ADD.67. Asking whether rules *outside* the voter-registration process (like the date requirement) are material to making a qualification determination that must occur *during* the voter-registration process is like asking if a football player struck out

swinging.  The Materiality Provision's reference to voter "qualifi[cation]" proves that it applies only to the registration process.

The structure of § 10101 underscores this point.  The subparagraph immediately preceding the Materiality Provision uses a substantially identical phrase—"in determining whether any individual is qualified under State law or laws to vote in any election"—to introduce a prohibition on disparate treatment in voter-eligibility determinations during voter registration.  § 10101(a)(2)(A).  And the subparagraph following the Materiality Provision, banning literacy tests commonly used in southern states during voter registration, *e.g.*, *Lassiter v. Northampton Cty. Bd. of Elections*, 360 U.S. 45, 46 (1959), is likewise limited to "qualification" determinations, § 10101(a)(2)(C).  *See* H.R. Rep. No. 88-914, pt. 2, at 19 ("Section [10]101(a) is designed to insure nondiscriminatory practices in the registration of voters").  In contrast, when Congress wanted to prohibit intimidation in the *act* of voting, it sensibly set that topic apart in its own subsection, § 10101(b), rather than stuff it between provisions about voter registration and qualification.

Further, subsection (e) empowers courts to address systemic violations of "*any* right or privilege secured by subsection (a)," including

19

the Materiality Provision (emphasis added). Yet the only remedy it authorizes is a declaration that an individual "is qualified under State law to vote" but has been denied the opportunity "to register … or otherwise qualify to vote" or has been wrongly "found not qualified to vote." *Id.* If the Materiality Provision extended beyond voter-qualification determinations, this subsection would not enable courts to address the violation of "*any* right" secured by it. *Id.* (emphasis added).

*Third*, the Materiality Provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory ballot-casting rules like the date requirement. § 10101(a)(2)(B). The phrase "right ... to vote" had a well-established meaning in the mid-1960s. *E.g.*, *Baker v. Carr*, 369 U.S. 186, 247 (1962) (Douglas, J., concurring) (the "right to vote" was "protected by the judiciary long before that right received the explicit protection it is now accorded" in the civil-rights statutes). The Materiality Provision's "right … to vote" would not have been originally understood to protect voting by mail. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969). And it certainly does not prohibit application of neutral state-law voting rules to the act of voting. *Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973); *Wis. State Leg.*, 141 S. Ct. at 35

(Kavanaugh, J., concurral). ("[A] State's election [rule] does not disenfranchise voters who are capable of [following it] but fail to do so."). Instead, it forbids baselessly denying a voter's registration application—an action that actually disenfranchises the applicant. *See Reynolds*, 377 U.S. at 555.

The date requirement cannot "deny" the "right … to vote." Election officials enforcing the date requirement do not "disqualify potential voters," remove them from the voter-registration list, or prevent future voting. *Schwier*, 340 F.3d at 1294. Instead, they do not count noncompliant ballots "because [individuals] did not follow the rules for casting [them]." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental).

B. *The District Court's Reasoning Is Flawed.*

The District Court gave three reasons for rejecting Appellants' arguments. All are unpersuasive.

*First*, the District Court held that the *sole* legitimate purpose of *any* paper-based election regulation is "determining whether [an] individual is qualified to vote under Pennsylvania law." ADD.62. But *many* state-law voting rules laws have nothing to do with voter registration or assessing qualifications. *E.g.*, *Anderson v. Celebrezze*, 460 U.S. 780, 788

(1983) (distinguishing between state laws that "govern[] the registration and qualifications of voters" and "the voting process itself"). The Materiality Provision regulates only *qualification* determinations during the *voter-registration* process, but the date requirement applies only *outside* voter registration and only to voters previously found "eligible and qualified to vote." ADD.69. That the date requirement is not used to assess voter qualifications only illustrates the District Court's error, not a Materiality Provision violation.

Indeed, the date requirement serves other purposes, like "prevention of fraud" and facilitating the "counting of votes." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090-91 (2020) (opinion of Dougherty, J., joined by Saylor, C.J., and Mundy, J.) (discussing date requirement's purposes). In 2022, for instance, the date requirement helped prove a ballot was fraudulently cast after a citizen's death. *See* ECF No. 272, Statement of Facts ¶¶ 48-55.

The District Court's reading prohibits states from using paper-based requirements to further *any* interests besides assessing voter qualifications. This is true no matter how vital the state's interest or how

necessary the rule is to secure it.   *See* ADD.67 n.39 (rejecting as "irrelevant" evidence that date requirement was used to detect fraud). This approach would render the Materiality Provision startlingly unique in election law. *Cf. Crawford v. Marion Cnty Election Bd.*, 553 U.S. 181, 189-90 (2008) (instructing courts to consider range of state interests for right-to-vote claims); *Brnovich v. DNC,* 141 S. Ct. 2321, 2339-40 (2021) (same for claims under Section 2 of the Voting Rights Act).

The District Court's approach would jeopardize many longstanding election rules nationwide, as recent experience has shown.  From 1964 until *Migliori*, courts enjoined hardly any state-law rules under the Materiality Provision.  But in the ensuing year-and-a-half, courts around the country have adopted *Migliori*'s rationale to hold unlawful important state laws regulating mail voting.  *E.g.*, *La Unión del Pueblo Entero v. Abbott*, 2023 WL 8263348, at *14 (W.D. Tex. Nov. 29, 2023) (Texas requirement to list identification number on mail ballot); *In re Ga. Senate Bill 202*, 2023 WL 5334582, at *8 (N.D. Ga. Aug. 18, 2023) (Georgia requirement to list birthdate on ballot); *Vote.org v. Ga. State Election Bd.*, 2023 WL 2432011, at *1 (N.D. Ga. Mar. 9, 2023) (Georgia requirement to sign absentee ballot application).

This is only the beginning.  Under the District Court's logic, many other widespread, commonsense paper-based regulations are now federal civil-rights violations, because they further interests besides determining eligibility.  These include:

- Mail-ballot signature requirements, *e.g.* 25 P.S. §§ 3146.6(a), 3150.16(a); N.J. Stat. § 19:62-11(c); 15 Del. Code § 5514(a)(1);

- Prohibitions on voting for more candidates than there are offices, *e.g.*, P.S. § 3063(a); Ariz. Rev. Stat. § 16-611; 15 Del. Code § 4972(b)(6).

- Requirements to maintain pollbooks, *e.g.*, 25 P.S. § 3050; Va. Code § 24.2-611; Tex. Elec. Code § 63.003; and

- Voter assistance forms, *e.g.*, 25 P.S. § 3058; Ind. Code § 3-11.5-4-13.

*See Ball*, 289 A.3d at 38-39 (opinion of Brobson, J.).

Basic principles of federalism counsel against this extreme result. Courts must not read a statute "to significantly alter the balance between federal and state power" absent "exceedingly clear language." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).  And federal statutes should not be read to "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  But that is what follows from the District Court's reasoning.

It is also implausible that so many commonplace rules would stand unchallenged for generations if, in fact, the Materiality Provision outlawed them *all* nearly sixty years ago. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022) ("[J]ust as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."). Congress did not "hide [this] elephant[]" in the Materiality Provision's obscure "mousehole[]." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Moreover, the District Court's construction risks rendering the Materiality Provision unconstitutional. Congress enacted the Materiality Provision under its power "to enforce th[e] [Fifteenth] Amendment[.]" *United States v. Mississippi*, 380 U.S. 128, 138 (1965). That power is subject to important limits. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009). Among them, an enforcement statute must be justified by the "evidence in the record" assembled by the enacting Congress. *City of Boerne v. Flores*, 521 U.S. 507, 525 (1997). When enacting the Materiality Provision, Congress

marshalled evidence of racially discriminatory practices *in voter registration*. *See supra* at 16-17. The District Court's reinterpretation would decouple the provision's reach from Congress's findings—placing the statute in constitutional jeopardy. Constitutional avoidance therefore requires rejecting the District Court's interpretation. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

*Second*, the District Court justified its decoupling of the Materiality Provision from voter registration by relying on the statutory definition of "vote," which it claimed is "expansive." ECF No. 347 at 65. But the provision only protects against errors *during voter registration*. *Supra* at 19. In any event, "vote" is not the relevant statutory term. The Materiality Provision reaches only denials of the "*right* … to vote," not neutral and mandatory rules that govern the *act* of voting. *See Rosario*, 410 U.S. at 757; *supra* at 20.

*Third*, the District Court relied on thin and unpersuasive authority to support its ruling. Its primary authority was this Court's vacated opinion in *Migliori*, but vacatur "of necessity … deprive[d] [*Migliori*] of precedential effect." *L.A. Cty. v. Davis*, 440 U.S. 625, 634 n.6 (1979).

Nor is *Migliori* persuasive. This Court considered *Migliori* on an

"expedited" basis, 36 F.4th at 156, and underdeveloped briefing that one panel member faulted for overlooking important arguments, *see id.* at 165-66 (Matey, J., concurring in the judgment). Indeed, the *Migliori* briefing did not make most of Appellants' current arguments and barely developed the rest. Presented with new information, this Court should adopt the reasoning of three Justices of the Supreme Court, the Pennsylvania Supreme Court, and the Fifth Circuit. Reinstating *Migliori* would only exacerbate intrastate division and create a circuit split, necessitating Supreme Court review.

The only other on-point cases cited by the District Court were from out-of-circuit district courts. Those decisions—which prove that the reinvented Materiality Provision will sweep aside many paper-based election rules—reinforce the urgency of not following *Migliori*.

## CONCLUSION

This Court should stay the District Court's order pending appeal by December 15, 2023.

Dated: December 7, 2023  Respectfully submitted,

           */s/* John M. Gore

Kathleen A. Gallagher    John M. Gore
THE GALLAGHER FIRM, LLC   *Counsel of Record*
436 Seventh Ave., 31st Floor  E. Stewart Crosland
Pittsburgh, PA 15219    Louis J. Capozzi, III
(412) 717-1900      Ryan M. Proctor
kag@gallagherlawllc.com   JONES DAY
           51 Louisiana Ave. NW
Thomas W. King, III    Washington, DC 20001
Thomas E. Breth     (202) 879-3939
DILLON, MCCANDLESS, KING, jmgore@jonesday.com
COULTER & GRAHAM, LLP  scrosland@jonesday.com
128 W. Cunningham St.   lcapozzi@jonesday.com
Butler, PA 16001     rproctor@jonesday.com
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

## COMBINED CERTIFICATIONS

1.    Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2.    This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,200 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook Std), using Microsoft Word.

3.    Pursuant to Third Circuit L.A.R. 31.1(c), Microsoft Safety Scanner version 1.387.711.0 has been run on this electronic file and no virus was detected.

Dated: December 7, 2023          */s/* John M. Gore

                                    John M. Gore

                                    *Counsel for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2023, this motion was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

Dated: December 7, 2023          */s/* John M. Gore
John M. Gore
*Counsel for Intervenor-Defendants*

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

Decision Below .................................................................ADD.1

Declaration of Richard Marino ....................................ADD.78

Declaration of Angela Alleman ....................................ADD.80

Petition, *In Re: Contest of Nov. 7, 2023 Election of Towamencin Township Supervisor*, No. 2023-26306 (Ct. Comm. Pls. of Mont. Cty.)...........................................................ADD.86

i

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

PENNSYLVANIA STATE CONFERENCE    )
OF THE NAACP, LEAGUE OF WOMEN    )
VOTERS OF PENNSYLVANIA,    )
PHILADELPHIANS ORGANIZED TO    )
WITNESS, EMPOWER AND REBUILD,    )
COMMON CAUSE PENNSYLVANIA,    )
BLACK POLITICAL EMPOWERMENT    )
PROJECT, MAKE THE ROAD    )
PENNSYLVANIA, MARLENE G.    )
GUTIERREZ, BARRY M. SEASTEAD,    )
AYNNE MARGARET PLEBAN    )
POLINSKI, LAURENCE M. SMITH, JOEL    )
BENCAN,    )
   )
       Plaintiffs,    )
   )
     vs.    )
   )
AL SCHMIDT, IN HIS OFFICIAL    )
CAPACITY AS ACTING SECRETARY[1]    )
OF THE COMMONWEALTH, ADAMS    )
COUNTY BOARD OF ELECTIONS,    )
ALLEGHENY COUNTY BOARD OF    )
ELECTIONS, ARMSTRONG COUNTY    )
BOARD OF ELECTIONS, BEAVER    )
COUNTY BOARD OF ELECTIONS,    )
BEDFORD COUNTY BOARD OF    )
ELECTIONS, BERKS COUNTY BOARD    )
OF ELECTIONS, BRADFORD COUNTY    )
BOARD OF ELECTIONS, BLAIR    )
COUNTY BOARD OF ELECTIONS,    )
BUCKS COUNTY BOARD OF    )

CASE NO. 1:22-CV-00339

SUSAN PARADISE BAXTER
UNITED STATES DISTRICT JUDGE

MEMORANDUM OPINION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT

IN RE: ECF Nos. 267, 270, 271 and 274

---

[1] According to the Pennsylvania Department of State's website, Al Schmidt officially became the Secretary of the Commonwealth on June 29, 2023. *See* http://www.dos.pa.gov/about-us/Pages/Secretary-of-the-Commonwealth. The Court takes judicial notice of information that is publicly available on government websites. *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). *See also Kengerski v. County of Allegheny*, 2023 WL 348959, at *2 (W.D. Pa. Jan. 20, 2023) (information found on government websites is widely considered both self-authenticating and subject to judicial notice) (other citation omitted).

1

ELECTIONS, BUTLER COUNTY BOARD      )
OF ELECTIONS, CAMBRIA COUNTY        )
BOARD OF ELECTIONS, CAMERON         )
COUNTY BOARD OF ELECTIONS,          )
CARBON COUNTY BOARD OF              )
ELECTIONS, CENTRE COUNTY BOARD      )
OF ELECTIONS, CHESTER COUNTY        )
BOARD OF ELECTIONS, CLARION         )
COUNTY BOARD OF ELECTIONS,          )
CLEARFIELD COUNTY BOARD OF          )
ELECTIONS, CLINTON COUNTY           )
BOARD OF ELECTIONS, COLUMBIA        )
COUNTY BOARD OF ELECTIONS,          )
CRAWFORD COUNTY BOARD OF            )
ELECTIONS, CUMBERLAND COUNTY        )
BOARD OF ELECTIONS, DAUPHIN         )
COUNTY BOARD OF ELECTIONS,          )
DELAWARE COUNTY BOARD OF            )
ELECTIONS, ELK COUNTY BOARD OF      )
ELECTIONS, ERIE COUNTY BOARD OF     )
ELECTIONS, FAYETTE COUNTY           )
BOARD OF ELECTIONS, FOREST          )
COUNTY BOARD OF ELECTIONS,          )
FRANKLIN COUNTY BOARD OF            )
ELECTIONS, FULTON COUNTY BOARD      )
OF ELECTIONS, GREENE COUNTY         )
BOARD OF ELECTIONS, HUNTINGDON      )
COUNTY BOARD OF ELECTIONS,          )
INDIANA COUNTY BOARD OF             )
ELECTIONS, JEFFERSON COUNTY         )
BOARD OF ELECTIONS, JUNIATA         )
COUNTY BOARD OF ELECTIONS,          )
LACKAWANNA COUNTY BOARD OF          )
ELECTIONS, LANCASTER COUNTY         )
BOARD OF ELECTIONS, LAWRENCE        )
COUNTY BOARD OF ELECTIONS,          )
LEBANON COUNTY BOARD OF             )
ELECTIONS, LEHIGH COUNTY BOARD      )
OF ELECTIONS, LUZERNE COUNTY        )
BOARD OF ELECTIONS, LYCOMING        )
COUNTY BOARD OF ELECTIONS,          )
MCKEAN COUNTY BOARD OF              )
ELECTIONS, MERCER COUNTY BOARD      )
OF ELECTIONS, MIFFLIN COUNTY        )
BOARD OF ELECTIONS, MONROE          )
COUNTY BOARD OF ELECTIONS,          )
                                    )

2

ADD.2

MONTGOMERY COUNTY BOARD OF        )
ELECTIONS, MONTOUR COUNTY         )
BOARD OF ELECTIONS,               )
NORTHAMPTON COUNTY BOARD OF       )
ELECTIONS, NORTHUMBERLAND         )
COUNTY BOARD OF ELECTIONS,        )
PERRY COUNTY BOARD OF             )
ELECTIONS, PHILADELPHIA COUNTY    )
BOARD OF ELECTIONS, PIKE COUNTY   )
BOARD OF ELECTIONS, POTTER        )
COUNTY BOARD OF ELECTIONS,        )
SCHUYLKILL COUNTY BOARD OF        )
ELECTIONS, SNYDER COUNTY BOARD    )
OF ELECTIONS, SOMERSET COUNTY     )
BOARD OF ELECTIONS, SULLIVAN      )
COUNTY BOARD OF ELECTIONS,        )
SUSQUEHANNA COUNTY BOARD OF       )
ELECTIONS, TIOGA COUNTY BOARD     )
OF ELECTIONS, UNION COUNTY        )
BOARD OF ELECTIONS, VENANGO       )
COUNTY BOARD OF ELECTIONS,        )
WARREN COUNTY BOARD OF            )
ELECTIONS, WASHINGTON COUNTY      )
BOARD OF ELECTIONS, WAYNE         )
COUNTY BOARD OF ELECTIONS,        )
WESTMORELAND COUNTY BOARD OF      )
ELECTIONS, WYOMING COUNTY         )
BOARD OF ELECTIONS, YORK          )
COUNTY BOARD OF ELECTIONS,        )
           Defendants.        )
                               )

I.      Introduction

      The right to vote "is regarded as a fundamental political right because [it is] preservative

of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). This case implicates that right

through a legal challenge to the "vote by mail" practices currently in place in the Commonwealth

of Pennsylvania; specifically, whether mailed-in ballots, which either lack a date or include an

incorrect date on the outside envelope, may yet be counted.

ADD.3

The individual Plaintiffs in this case are voters from across the Commonwealth whose mail ballots were not counted due to their failure to properly date the voter declaration on the outer return envelope of their ballot. Numerous community organizations are also Plaintiffs. The Defendants are Al Schmidt ("Secretary Schmidt") in his official capacity as the Secretary of the Commonwealth of Pennsylvania, and each of the Commonwealth's sixty-seven county boards of election.[2] Plaintiffs and some of the Defendants have moved for summary judgment.

In one of the pending motions for summary judgment, two Defendants raise justiciability concerns, arguing that the Plaintiffs lack constitutional standing to pursue their claims. The question of Article III standing to sue is a threshold requirement in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Indeed, standing is necessary for subject matter jurisdiction. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). The Court will begin its discussion and analysis with that motion. Before doing so, a summary of the claims at issue is provided.

II.     Summation of the Complaint and the Parties

The Amended Complaint identifies five individual Plaintiffs: Barry Seastead ("Seastead") of Warren County; Marlene Gutierrez ("Gutierrez") and Aynne Margaret Pleban Polinski ("Polinski") of York County; and Joel Bencan ("Bencan") and Laurence Smith ("Smith") of Montgomery County.[3] *See* ECF No. 121. These individuals are registered

---

[2] Plaintiffs allege that each county board has jurisdiction over the conduct and management of primaries and general elections in their respective counties. ECF No. 121, ¶ 38.

[3] Pursuant to Rules 21 and 41(a)(2) of the Federal Rules of Civil Procedure, the remaining Plaintiffs moved to terminate Jean Terrizzi, Marjorie Boyle, and Deborah Diehl as plaintiffs in this action. *See* ECF No. 262. The Court granted the motion and those three individuals were removed from the docket as parties to this action. *See* ECF No. 263.

Pennsylvania voters who allege they were disenfranchised in the November 2022 election because their mail ballots were not counted. ECF No. 121, ¶ 5. The six organizational Plaintiffs are the Pennsylvania State Conference of the NAACP ("NAACP"); the League of Women Voters of Pennsylvania (the "League"); Philadelphians Organized to Witness, Empower and Rebuild ("POWER"); Common Cause Pennsylvania ("Common Cause"); Black Political Empowerment Project ("B-PEP"); and Make the Road Pennsylvania ("MTRP"). These organizations allege that their voter education and get-out-the-vote efforts were burdened by the hyper-technical rules that disenfranchise voters. *Id.* at ¶ 4.

Together, all Plaintiffs raise two legal claims: first, that Defendants violated the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) (Count I) and second, that the Defendants violated the Equal Protection Clause of the fourteenth amendment to the United States Constitution ("Equal Protection Clause") (Count II).[4] The body of the Amended Complaint generally does not differentiate between the two groups of Plaintiffs and the language used throughout the pleading references all Plaintiffs, but the contours of the individuals' claims and the organizations' claims differ significantly. At Count I, each of the individual Plaintiffs plead that they were disenfranchised by the unnecessary and superfluous date requirement to their mail ballot. Each of the organizational Plaintiffs challenge the application of the date requirement more generally because they have been forced to divert resources to reeducate voters who are at risk of disenfranchisement. At Count II, each individual Plaintiff pleads that Defendants' refusal to count the undated or misdated mail ballots of domestic voters while at the same time counting the undated or misdated ballots of overseas and military voters imposes arbitrary distinctions unsupported by any legitimate or compelling

---

[4] Plaintiffs seek relief on both claims via 42 U.S.C. § 1983.

ADD.5

government interest, thereby violating their right to equal protection under the law. The organizational Plaintiffs invoke the Equal Protection Clause as well, despite the fact they have no right to vote. *See* ECF No. 121, ¶¶ 2-5, 84-88.

With this background, the Court turns first to the motion for summary judgment filed by Defendant Lancaster County.

III.     Standing

Defendant Lancaster County Board of Elections ("Lancaster County" or "Lancaster County Board") has moved for summary judgment. ECF No. 267.  Defendant Berks County Board of Elections ("Berks County" or "Berks County Board") has joined in that motion as a co-movant.  *See* ECF No. 269.  Their motion argues that the Plaintiffs lack standing because no Plaintiff has demonstrated an injury that is directly traceable to their conduct. *See* ECF No. 276, p. 2 (emphasis added).[5]

---

[5] Lancaster County supports its motion with numerous exhibits (ECF Nos. 267-2 through 267-14) and has also submitted a Concise Statement of Material Facts in accordance with our Local Rules (ECF No. 268). In joining Lancaster County's motion, the Berks County Board did not proffer any exhibits of its own nor did it file a concise statement. Instead, Berks County stated that "[a]ll of the arguments asserted by Lancaster [County] apply equally to Berks [County]" and that Lancaster County's "supporting memorandum of law and concise statement of material facts" are incorporated by reference in its motion. *See* ECF No. 269, p. 1.  Such "me too" motions should contain a "statement of the relief sought and a statement that no brief is necessary and that no separate [concise statement] is necessary because the party joins in those submissions filed by other counsel." *Schmotzer v. Rutgers University-Camden*, 2018 WL 547540, at *1 (D.N.J. Jan. 24, 2018). The Berks County Board's motion contains such statements. *See* ECF No. 267, p. 1. However, when a party merely joins in a motion for summary judgment without presenting its own evidence, the party fails to establish the necessary factual foundation to support the motion. *See, e.g., People v. Roberts*, 70 V.I. 168, 176, 2019 VI SUPER 21, ¶ 14 (V.I. Super. 2019) (citations omitted). Thus, although the Court will construe the Berks County Board as properly moving for summary judgment, its reliance on the evidence presented solely by its co-movant to support its own motion for summary judgment may not provide the Court with sufficient "grist to evaluate" Berks County's motion. *See Egli v. Strimel*, 2016 WL 1292254, at *1 n.1 (E.D. Pa. Apr. 8, 2016).

All Plaintiffs oppose the motions for summary judgment by the Lancaster and Berks County Boards, arguing that they do have standing to pursue their claims. *See* ECF No. 313. The Plaintiffs have also filed a Responsive Concise Statement to the Lancaster County Board's Concise Statement. ECF No. 314.

Lancaster County asserts the Plaintiffs lack standing because none of their injuries were the result of any action taken by the Board. *See* ECF No. 267, p. 3. The Board points out that the individual Plaintiffs neither live in Lancaster County nor have ever had a ballot rejected by Lancaster County Board. *Id.* Lancaster County posits that the organizational Plaintiffs cannot bring claims on behalf of their membership because they have not identified any member who would suffer harm from the Lancaster County Board's actions. *Id.*, p. 4.

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "Federal courts are courts of limited jurisdiction, and where there is a question as to our authority to hear a dispute, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). *See also Gill v. Whitford*, 585 U.S. ___, 138 S.Ct. 1916, 1929 (2018) (cleaned up) ("A federal court is not a forum for generalized grievances…")).[6]

The party which invokes the jurisdiction of the federal court bears the burden of establishing it. *Spokeo Inc., v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016);

---

[6] This Opinion uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., Rush v. City of Phila.*, 78 F.4th 610, 649 (3d Cir. Aug. 30, 2023); *see also* Jack Metzler, Cleaning Up Quotations, 18 *Journal of Appellate Practice and Process* 143 (2017).

*Animal Sci. Prod., Inc., China Minmetals Corp*., 654 F.3d 462, 470 (3d Cir. 2011). This means that the Plaintiffs—as the parties invoking this Court's jurisdiction—must "clearly … allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to the defendant's conduct, and (3) that is likely to be redressed by favorable judicial intervention. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992). "The injury-in-fact requirement is 'very generous' to claimants." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162-63 (3d Cir. 2017) (citation omitted). Thus, a plaintiff "need only allege a 'specific, identifiable trifle of injury.'" *Online Merchants Guild v. Hassell*, 2021 WL2184762, at *4 (M.D. Pa. May 28, 2021) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig*., 846 F.3d 625, 633 (3d Cir. 2017) (citations omitted)).

But an injury alone does not establish standing. Each plaintiff must also demonstrate that the injury is "fairly traceable" to the defendant's challenged conduct. *See Lezark v. I.C. System, Inc*., 2023 WL 4571457, at *9 (W.D. Pa. July 18, 2023) (citing *Spokeo*, 578 U.S. at 338). "Traceability means that the injury was caused by the challenged action of the defendant as opposed to an independent action of a third party." *Id*. (quoting *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022)). This element of standing is often referred to as "causation." *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 (3d ed. 1998, Apr. 2022 update). However, this requirement is not equivalent to establishing proximate cause or "but-for" causation. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004) (holding that "Article III standing demands a 'causal relationship,' but neither the Supreme Court nor our Court has ever held that but-for causation is always needed."). The central inquiry is

8

whether there is a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560.

The weight of the Plaintiffs' burden of establishing standing changes at each successive stage of litigation. *Road-Con, Inc., v. City of Phila.*, 2022 WL 17669015, at *5 (E.D. Pa. Dec. 14, 2022) (citing *Lujan*, 504 U.S. at 561). In the face of a summary judgment motion, Plaintiffs must demonstrate standing with more than "mere allegations" and instead are required to "set forth by affidavit or other evidence specific facts, which … will be taken as true." *See Norman v. TransUnion, LLC*, 2023 WL 2903976, at *9 (E.D. Pa. Apr. 11, 2023) (citing *Lujan*, 504 U.S. at 561)). *See also Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. Aug. 29, 2023) (to establish standing at summary judgment stage, plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts establishing standing). A plaintiff must also show standing for each claim and for each form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

The Supreme Court has cautioned that "standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also Boyle v. Universal Health Servs., Inc.*, 36 F.4th 124, 131 (3d Cir. 2022). "Article III standing to sue each defendant … requires a showing that each defendant caused [the plaintiff's] injury and that an order of court against each defendant could redress the injury." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Lujan*, 504 U.S. at 560-61). Thus, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester*, 581 U.S. at 438.

ADD.9

A.       Standing of the Individual Plaintiffs against Lancaster and Berks Counties

1.       The "Materiality Provision" Claims

To determine whether the individual Plaintiffs have standing, the Court looks first to the legal claims they alleged in the Amended Complaint. *See, e.g., Boley*, 36 F.4th at 131.  Count I is a claim brought under the Materiality Provision of the Civil Rights Act ("Materiality Provision") challenging the mandatory application of Pennsylvania's requirement that mail ballots contain a hand-written date next to the voter's signature.  *See* ECF No. 121, ¶¶ 72-81.  More specifically, each individual Plaintiff claims that the refusal to count their vote because of a missing or incorrect date violated the Materiality Provision.  "[A] person's right to vote is 'individual and personal in nature.'"  *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 912 (M.D. Pa.), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 Fed. Appx. 377 (3d Cir. 2020).  The denial of this right, therefore, is usually "always sufficiently concrete and particularized to establish a cognizable injury."  *Id.* (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 349 (1960)).  Because a plaintiff's standing "must be evaluated separately as to each defendant," the standing of each individual Plaintiff will be discussed in turn.  *See Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) (citations omitted).

Each individual Plaintiff has filed a sworn declaration.  *See* ECF No. 121-2; 121-4; 121-6; 121-7; 121-8.  The Defendants do not contest the averments contained in any of the individual Plaintiffs' declarations.  Each of the individual Plaintiffs explains that they are long-time registered voters who utilized a mail-in ballot to exercise their right to vote in the November 2022 election.  Each completed their ballot and delivered it to their respective county board of elections.  And each mail ballot was not counted due to a dating error or omission on the voter declaration.  *Id.*  Thus, every individual Plaintiff has adequately established that their right to

10

ADD.10

vote was violated because their ballot was not counted. *See e.g., Disability Rts.,* 24 F.4th at 913. Put another way, because their ballots were not counted, they have each established an injury-in-fact. *Id. See also Vote.org v. Georgia State Election Bd.,* 2023 WL 2432011, at *5 (N.D. Ga. Mar. 9, 2023); *Trump for President,* 502 F. Supp.3d at 918 ("All citizens of the United States have a constitutionally protected right to vote. And all citizens have a constitutionally protected right to have their vote counted.") (citations omitted).

However, each of the individual Plaintiffs must yet establish that their injury was "fairly traceable" to the Defendants' actions to have standing. "For purposes of traceability, the relevant inquiry is whether the plaintiff's injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins,* 141 S. Ct. at 1779 (quoting *Lujan,* 504 U.S. at 560-61). Lancaster and Berks Counties contend that each of the individual Plaintiffs' injuries cannot be traced to any action it undertook. *See* ECF No. 267, p. 4. For example, Lancaster County argues that although the individual Plaintiffs "may have injuries caused by or connected to the action of other defendants," they have failed to show that their ballots were not counted as the result of any action taken by the Lancaster County Board. *Id.* The Court agrees.

The evidence of record reveals that the five individual Plaintiffs reside in just three counties: Seastead is a resident of Warren County, Polinski and Gutierrez are residents of York County, and Smith and Bencan are residents of Montgomery County. The individual Plaintiffs have not met their burden of pointing to evidence from which their injuries (the rejection of their ballots by election officials in Warren, York, and Montgomery counties) can be traced to any action by the Lancaster or Berks County Boards. The Court can only conclude that each of the

ADD.11

individual Plaintiffs has failed to meet their burden of establishing standing to challenge any action by the Lancaster or Berks County Boards.

In sum then, although each individual Plaintiff may have standing to challenge the actions of the county boards that failed to count their mail-in ballots, they do not have standing to bring a Civil Rights Act claim against Lancaster or Berks County.

2.      The Equal Protection Claims

At Count II, each of the individual Plaintiffs claims that the rejection of their ballots violated the Equal Protection Clause of the Fourteenth Amendment. *See* ECF No. 121, ¶¶ 84-88. Their claim is based on a state law which applies "a different rule to military and overseas voters who vote by mail" than it does to those who vote by mail from within the Commonwealth. *Id*. at ¶ 86. According to the individual Plaintiffs, the rejection of some ballots—but not others— because of a missing or incorrect date amounts to line-drawing that is inconsistent with the Equal Protection Clause of the Fourteenth Amendment. *Id*. at ¶ 85. *See also Pennsylvania State Conf. of NAACP v. Schmidt*, 2023 WL 3902954, at *7 (W.D. Pa. June 8, 2023).

A "person's right to vote is 'individual and personal in nature.'" *Gill*, 585 U.S. ___, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). So "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)). *See also Mohr v. Erie Cnty. Legislature*, 2023 WL 3075956, at *8 (W.D.N.Y. Apr. 24, 2023). Although each of the individual Plaintiffs may have an equal protection injury, they have not pleaded, let alone provided evidence of, any injury stemming from an equal protection violation that is directly

12

ADD.12

traceable to either Lancaster or Berks County. Therefore, the individual Plaintiffs lack standing to assert their equal protection claim against the Lancaster or Berks County Boards.

  B.  Standing of Organizational Plaintiffs against Lancaster and Berks Counties

  In addition to the individual voters, several organizations are Plaintiffs in this action. Federal courts permit organizations and associations to have standing based on the recognition that "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *International Union, United Auto. Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274, 290 (1986). Such entities may assert standing in two ways. First, organizations may have standing to bring claims which stem from injuries that were directly sustained by the organization. *See, e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 n.11 (1979); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Babbitt*). This is often referred to as "organizational standing" or "direct organizational standing." *See, e.g., Online Merchants, supra*. Absent injury to itself, an association may pursue claims solely as a representative of its members. *See, e.g., New York State Club Ass'n, Inc., v. City of New York*, 487 U.S.1 (1988); *Public Interest Research Group of N.J., Inc. v Magnesium Elektron, Inc*., 123 F.3d 111 (3d Cir. 1997). This is referred to as "associational standing." *See Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162-63 (3d Cir, 2007).[7] Contrary to the arguments advanced by the Lancaster County Board, the Plaintiff organizations do not claim they have standing based on injuries their

---

[7] The terms are often confused and commingled. *See, e.g., Online Merchants Guild*, 2021 WL 2184762, at *4 n.3 (noting that "organizational standing" is often called "direct standing," "personal standing," or "individual standing" whereas "associational standing" is sometimes referred to as "representative standing.").

ADD.13

members sustained; that is, they do not claim associational standing. *See* ECF No. 287, pp. 6-8. Instead, they assert direct organizational standing. *See* ECF No. 313, p. 11 n.3 ("For purposes of their motion for summary judgment, Plaintiff organizations do not rely on injuries to their members to establish standing.").[8]

An entity has direct organizational standing when it suffers injuries because of the defendant's allegedly unlawful conduct. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). This occurs, for example, when an organization must divert resources to counteract the allegedly unlawful conduct. *See id.* (finding injury-in-fact where the organization alleges that the unlawful conduct "perceptibly impaired" its ability to provide counseling and referral services by requiring it to "devote significant resources to identify and counteract the defendant's [unlawful conduct]"); *Fair Hous. Rts. Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 n.5 (3d Cir. 2016) (finding standing where the organization alleged that its mission had been frustrated "because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices"); *ERISA Indus. Comm. v. Asaro-Angelo*, 2023 WL 2808105, at *3 (D.N.J. Apr. 6, 2023) (citing *Fair Hous. Rts. Ctr.*)). On this point, the Court of Appeals has emphasized the importance of adequate evidence to support direct organizational injury. *See, e.g.*, *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998). "At the summary judgment stage, bare allegations of injury … are not enough to establish standing." *Id.* Accordingly, the summary judgment record must contain sufficient

---

[8] *See also* ECF No. 267-5, pages 18-19 (NAACP); ECF No. 267-6, page 18 (League); ECF No. 267-7, page 17 (POWER); ECF No. 267-8, page 16 (Common Cause); ECF No. 267-9, page 14 (B-PEP); and ECF No. 267-10, page 14 (MTRP).

evidence to support the organizational Plaintiffs' claim of Article III standing. *Id. See also ERISA Indus. Comm. v. Asaro-Angelo*, 2023 WL 2808105, at *3 (D.N.J. Apr. 6, 2023).

As previously noted, there are six organizational Plaintiffs in this case: The Pennsylvania Conference of the NAACP ("NAACP"); The League of Women Voters of Pennsylvania ("the League"); Philadelphians Organized to Witness, Empower, and Rebuild ("POWER"); Common Cause Pennsylvania ("Common Cause"); Black Political Empowerment ("B-PEP"); and Make the Road Pennsylvania ("MTRP").

### 1.    The NAACP State Conference

The NAACP is a "non-profit, non-partisan organization that works to improve the political, educational, social, and economic status of African-Americans and other racial and ethnic minorities, to eliminate racial prejudice, and to take lawful action to secure the elimination of racial discrimination among other objectives." ECF No. 121, ¶ 11.  Broadly, the NAACP alleges that the failure to count timely-submitted mail-in ballots premised solely on a missing or incorrect date "will disenfranchise potentially thousands of votes, directly affecting [the organization's] members and interfering with its ability to carry out its mission …." *Id.* ¶ 13.  As for an injury-in-fact, the NAACP asserts that the Defendants' "failure to count such ballots also has caused and will cause [the organization] to divert resources in this and future elections from its existing voter education and mobilization efforts" to "investigating and educating voters about any available cure processes or to advocate that new processes be developed to ensure that voters who are eligible and registered and who submitted their ballots on time are not disenfranchised by a trivial paperwork mistake." *Id.*  The NAACP supports this alleged injury with the declaration of Sandra Thompson, the NAACP's President.  *See* ECF No. 280, pp. 34-38.  No Defendant disputes or contradicts Thompson's declaration.  She declares that but for Defendants'

ADD.15

application of the rule regarding dated mail-in ballots, the organization's "voter contact and education efforts would have been directed to other, existing get-out-the-vote programs like monitoring the polls and engaging and educating new voters." *Id*., p. 36, ¶ 10.

Thompson provided specific examples of this diversion of resources. For example, because of the Defendants' actions, the NAACP was forced to spend "additional time and resources toward organizing and coordinating an Election Day command center in Philadelphia, with approximately 17 students from Howard University Law School," to attempt to contact voters who had submitted mail-in ballots with a missing or incorrect date. *Id*. at ¶ 11. The organization's Field Director and two other volunteers were deployed to contact affected voters, which diverted the director and volunteers from their intended mission, which was to conduct "election protection on Election Day in Philadelphia." *Id*., at ¶ 12. Further, Thompson declares that the NAACP had to divert resources away from its espoused mission in favor of a social media campaign in York and Reading, Pennsylvania, as well as in Pittsburgh and Philadelphia, to alert the public to the availability of procedures to "cure" any ballot in which the date was omitted or incorrect, thereby ensuring that the ballot would be counted. *Id*., at ¶¶ 13-14.

As to the Berks County Board, the NAACP's Reading, Pennsylvania branch (the county seat of Berks County) specifically posted on social media on November 4, 2022, that "[t]he Berks County Office of Election Services has been segregating these ballots throughout the current election cycle and will continue to do so per the ruling." ECF No. 280, p. 40.[9] The Reading, Pennsylvania branch also posted to social media sites that "Berks County election

---

[9] The NAACP has also submitted a press release from Berks County dated November 3, 2022, which states that the Elections Services Office had begun "segregating these ballots." ECF No. 280, p. 41.

ADD.16

officials want voters to know they can fix undated mail ballots." *Id*., pp. 42-43. Thus, the NAACP has provided sufficient uncontroverted evidence to support its assertion that Defendant Berks County Board's actions forced it to divert resources away from its mission and toward the re-education and re-connection with voters, including through a social media campaign, to inform them on how to properly cast and cure their ballots. Given this, the Court concludes that Plaintiff NAACP has sufficiently established an injury-in-fact.

But an injury-in-fact alone does not establish standing. The NAACP must also show that the injury is "fairly traceable" to the Defendants' conduct. *Spokeo*, 578 U.S. at 338. Lancaster County argues that the NAACP has failed to point to any evidence which demonstrates that its injury is directly traceable to any of Lancaster County's conduct or actions. *See* ECF No. 267, p. 9. Instead, the Lancaster County Board contends that the NAACP's diversion of resources was caused by the Pennsylvania Supreme Court's decision in *Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022).[10] To support its argument, Lancaster County points to the NAACP's answer to an interrogatory which asked the basis for its standing. In that interrogatory response, the organization stated:

> Following the Pennsylvania Supreme Court's November 1, 2022 decision in *Ball v. Chapman*, No. 102 MM 2022, the boards of elections in the counties where the [NAACP] operates implemented a rule requiring election officials to set aside—and not count—votes received in mail ballot envelopes missing a meaningless voter-written date or showing a date that the board of elections determined to be "incorrect."

---

[10] *Ball v. Chapman* is discussed in detail *infra*. For these purposes, in *Ball*, the Pennsylvania Supreme Court ordered that undated or misdated mail-in ballots in the November 2022 election be segregated and not counted.

ADD.17

ECF No. 267-5, p. 13.  Contrary to Lancaster County's argument, the NAACP claims that it was

a rule implemented by county elections officials that caused its injury. Where the rule originated

is irrelevant to their claim that the counties implemented the rule and this implementation is the

cause of the injury alleged.

On the other hand, the NAACP's generalized allegation against the counties is

insufficient to establish that the organization's injuries were traceable to an action of Lancaster

County, which they must be.  The NAACP has not pointed to any evidence which demonstrates

that Lancaster County's actions required it to divert resources.  Indeed, Thompson's declaration,

does not speak to any activity undertaken by Lancaster County.  Instead, Thompson only points

to actions taken by election officials in York County and Berks County.

We are left with the NAACP's injury that is traceable to Berks County. Now, the Court

must determine whether it can redress that injury.  This third and final prong of the constitutional

standing inquiry looks forward, asking whether the injury will be redressed by a favorable

decision from the Court.  *See Freeman v. Corzine*, 629 F.3d 146, 153-54 (3d Cir. 2010).

"'Redressability is not a demand for mathematical certainty,' but it does require a 'substantial

likelihood' that the injury in fact can be remedied by a judicial decision." *Id*. (quoting *Vt.*

*Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

The Amended Complaint asserts that injunctive and declaratory relief against Defendants

would redress Plaintiffs' injuries. *See* ECF No. 121, p. 37, ¶¶ 1-2. The NAACP asks that the

Court declare that the date requirement violates federal law and enjoin the county boards from

refusing to include the undated or misdated mail-in ballots from the 2022 election in the official

ADD.18

tally or record of that contest.[11]  *Id*., pp. 37-38.  Such orders would alleviate the need for the

NAACP to redirect its future efforts away from educating the public on the dating requirement

and back toward its other professed goals and mission.  These forms of declaratory and

injunctive relief are certainly at this Court's disposal and would, if directed at Berks County,

address the NAACP's injury there.  Therefore, the NAACP has established redressability.  *See,*

*e.g., OpenPittsburgh.org v. Voye*, 563 F. Supp. 3d 339, 419 (W.D. Pa. 2021) (holding that

injunctive relief is a form of relief at the Court's disposal which cuts against … the argument that

plaintiffs have failed to establish redressability).

  The Court concludes that while the NAACP has standing to assert its claim against the

Berks County Board, it does not have standing against the Lancaster County Board of Elections

because the NAACP has failed to trace its injury to any action of Lancaster County.

    2.  The League of Women Voters of Pennsylvania

  The League is a "nonpartisan statewide non-profit" organization "dedicated to helping

the people of Pennsylvania exercise their right to vote, as protected by law." ECF No. 121, ¶ 14.

The League has "2,500 members across Pennsylvania, including in Crawford, Elk, Erie, Forest,

McKean, Venango, and Warren Counties." *Id*. The League's mission includes "voter

registration, education, and get-out-the-vote drives." *Id*., ¶ 15. The League contends that as a

result of the Lancaster County Board's actions in refusing to count undated or misdated mail-in

ballots, it was forced to redirect and divert resources away from its mission and goals to

counteract the allegedly unlawful conduct. In support of its claims, the League submitted the

---

[11] Restated in the affirmative, the NAACP seeks an injunction ordering that the undated and misdated mail-in ballots be counted and included in the official tally of the 2022 election and that such ballots be counted in all future elections.

ADD.19

signed declaration of Meghan Pierce, the League's Executive Director. *See* ECF No. 280, pp. 51-75. Pierce declares that:

- o After November 1, 2022, the county boards of elections required elections officials to set aside—and not count—votes received in mail ballot envelopes missing a … voter-written date or showing a date that the board of elections determined to be "incorrect" *Id*., p. 52, ¶ 7.

- o This requirement caused the League to redirect its limited resources, including staff and volunteer time, to efforts to inform voters of this change and educate them as to how to avoid disenfranchisement. *Id*.

- o The League was forced to contact hundreds of voters and provide them with information to help them cure their ballot or vote provisionally to prevent disenfranchisement. *Id*., ¶ 8.

- o Three staff members and approximately thirty volunteers spent time contacting voters, including on the phone and through social media. *Id*.

- o As to the Lancaster County Board specifically, the failure to permit voters whose ballots would not be counted because of the date omission or other mistake forced the League to undertake a social media campaign and to attend board meetings and urge the Lancaster County Board to notify voters so they could cure their ballots, all of which diverted resources the League had dedicated to other programs, including "get-out-the-vote efforts." *Id*., *see also id*. at p. 54, ¶ 13(b).

- o As to the Berks County Board specifically, the League was forced to post to social media about the risk of disenfranchisement and the opportunity to voters to correct defective mail ballot return envelopes. ECF No. 267-6, p. 13; ECF No. 280, p. 55.

Pierce's uncontested declaration is sufficient evidence to establish the League's standing to bring its claim against the Lancaster and Berks County Boards. First, the League has demonstrated an injury-in-fact. It has had to expend and divert resources to address Lancaster County's refusal to count certain ballots and to inform voters on the ramifications of Lancaster County's conduct. *See, e.g., ERISA Indus. Comm. v. Asaro-Angelo*, 2023 WL 2034460, at *5 (D.N.J. Feb. 16, 2023). Second, Pierce's declaration sufficiently traces the injury to the Lancaster County's allegedly unlawful conduct. As a result of that conduct, the League spent time attending public meetings at which they offered statements urging the Lancaster County

20

ADD.20

Board of Elections to notify voters on how to cure their ballots, drafted and issued statements condemning Lancaster County's inaction, and published social media posts concerning Lancaster County's conduct. *See id.*, p. 54, ¶ 13(b). *See also id.*, p. 64 (Statement of League of Women Voters of Lancaster County). As concerns Berks County, the League was forced to divert resources from its other programs and projects to a new social media campaign to inform voters about Berks County's refusal to count certain undated and misdated ballots. The League has provided similar uncontested evidence concerning its diversion of resources in Allegheny, Lehigh, and Montgomery counties. ECF No. 267-6, ¶ 12-13. This demonstrates that the League's injuries are traceable to the actions of both Lancaster and Berks Counties.

That leaves the question of redressability; that is, whether the League's injury may be redressed by a favorable decision of this Court. The Amended Complaint asserts that injunctive and declaratory relief would redress the League's injuries. *See* ECF No. 121, p. 37, ¶¶ 1-2. As was the case with the NAACP, the Court can redress the League's injury with declaratory and injunctive relief. *See discussion, supra.* Thus, the League has standing to bring its claim against both Lancaster County and Berks County.

### 3. Philadelphians Organized to Witness, Empower and Rebuild

POWER is a nonprofit organization which has amongst its priorities "civic engagement and organizing communities so that the voices of all faiths, races, and income levels are counted and have a say in government." ECF No. 121, ¶ 17. Bishop Dwayne Royster has submitted a declaration which is uncontradicted. *See* ECF No. 280, pp. 76-79. Royster, the organization's executive director, states that his organization was forced to divert resources from its planned efforts to conduct phone and text banks to mitigate the effects of the Defendants' conduct in not counting the offending ballots. *Id.*, p. 77, ¶ 8. As noted above, this establishes an injury-in-fact.

ADD.21

The problem, however, is that nothing in Royster's declaration traces POWER's injury to an action of Lancaster County or Berks County.  Instead, Royster's declaration connects the organization's injury to actions taken in Philadelphia County.  For example, Royster notes that "[w]hen Philadelphia published a list of over 3,000 voters who were at risk of having their ballots thrown out over technical errors," POWER was forced to expend time and resources "to contact those voters," that is, voters in Philadelphia. *Id*.  Moreover, POWER's members and volunteers "made more than 1,200 manual calls and sent more than 2,900 texts to voters whose names appeared on Philadelphia's at-risk list."  *Id*.  The organization also "stationed volunteers at City Hall."  *Id*., ¶ 9.  Lacking is any connection to the actions of the Lancaster or Berks County Boards, which defeats POWER's standing on traceability as to these two moving counties.

4.      Common Cause Pennsylvania

Common Cause Pennsylvania is a non-profit political advocacy organization that "seeks to increase the level of voter registration and voter participation in Pennsylvania elections, especially in communities that are historically underserved and whose populations have a low propensity for voting."  ECF No. 121, ¶¶ 21-22.  Khalif Ali, the state organization's Executive Director, has filed a declaration in which he states that his organization also had to divert resources and expend additional time and effort to counteract the actions of Defendants instead of pursuing its mission of educating voters and increasing turnout and participation in the voting process.  *See* ECF No. 280, pp. 82-84.  He explains that Common Cause Pennsylvania has had to produce a "webinar public information series entitled 'Demystifying Democracy'" to resolve voter confusion created by the Defendants' actions. *Id*. at p. 84, ¶ 15.  He further states that Common Cause "responded to inquiries from voters both via the nonpartisan Election Protection

22

hotline and directly to [Common Cause] via email and telephone." *Id.* at p. 81-82, ¶ 8. The Defendants do not dispute Ali's declaration. Because this is evidence that Common Cause suffered an injury in fact, the inquiry turns to whether the injury is traceable to the Defendants.

The difficulty here is that to find traceability the Court would have to assume that these actions occurred in all sixty-seven counties. Because the declaration does not specify if this is true, and references "Defendants" generally [*see generally* ECF No. 267-8], Common Cause has failed to satisfy its burden of submitting evidence which indicates that the actions of the Lancaster County or Berks County, specifically, caused its injury.

### 5. Black Empowerment Project

B-PEP is a non-profit, non-partisan organization that works to "ensure that the Pittsburgh African-American community votes in every election." ECF No. 121, ¶ 24. Walt Hales, the Coordinator for Outreach to Citizens and Religious Organizations for B-PEP, has submitted a declaration. *See* ECF No. 280, pp. 94-100. B-PEP is a non-profit, non-partisan organization that works "to ensure that the Pittsburgh-area African American community votes in each and every single election." *Id.* at p. 94, ¶ 5. Hales further declares that the organization "has numerous supporters, of various ages and races, throughout the Pittsburgh Region, working with numerous community organizations to empower Black and brown communities." *Id.* B-PEP undertakes numerous actions during election cycles, including "voter registration drives, get-out-the-vote activities, education and outreach about the voting process," and its efforts are focused on "predominately Black neighborhoods in Allegheny County, with some efforts in Westmoreland and Washington Counties." *Id.* at ¶ 6. By way of injury, Hales states that the organization was forced to "redirect its limited resources, including staff and volunteer time, to efforts to inform voters of the change [in voting rules] and educate them as to how to avoid disenfranchisement."

ADD.23

*Id*. at ¶ 8. The organization also had to "expend time and money developing, printing, and distributing hundreds of flyers and other education materials to dozens of churches for the purpose of informing prospective voters of the envelope dating issues generated by the *Ball* decision." *Id*. This took resources from the organization's get-out-the-vote efforts, as well as other initiatives "including the Greater Pittsburgh Coalition Against Violence and Corporate Equity and Inclusion Roundtable initiatives." *Id*.

Hale's uncontested declaration states an injury-in-fact. However, his declaration traces the injury to actions taken only in Allegheny, Washington, and Westmoreland Counties; the injury is not traceable to the actions or inactions of either Lancaster or Berks County. First, he specifically limits B-PEP's mission and activities to the Pittsburgh region. *See id.*, p. 94, ¶ 5. Second, the organization's election-related activities focus predominately on the African American neighborhoods of Allegheny County with some efforts in Westmoreland and Washington counties. *Id*. at ¶ 6. Third, Hales acknowledges that the programs from which resources were diverted furthered its mission in Allegheny County, including the Greater Pittsburgh Coalition Against Violence. *Id*. at ¶ 8. Given this evidence, the Court must conclude that although B-PEP has sufficiently demonstrated an injury, that injury is not traceable to the Lancaster or Berks County Boards.

6.     Make the Road Pennsylvania

Plaintiff Make the Road Pennsylvania ("MTRP") has submitted the declaration of its Civic Engagement Director, Diana Robinson. *See* ECF No. 280, pp. 101-103. According to Robinson, MTRP is a "non-profit, mission-based organization … dedicated to building the power of the working-class in Latino and other communities … through organizing, policy innovation, and education services." *Id*. at p. 101, ¶ 5. The organization runs "active programs

ADD.24

to register voters in historically underserved communities of color, especially in Berks, Bucks, Lehigh, Northampton, and Philadelphia Counties." *Id*. at pp. 101-02, ¶ 7. Further, because many of MTRP's efforts are "focused on communities where many voters are not native English speakers," they had to direct additional time and resources to determine how, "if at all, they would inform non-English speakers of any problems with the dating of their mail ballot envelopes." *Id*. at p. 102, ¶ 9.

Although this diversion of resources is sufficient to establish an injury-in-fact, the injury is not traceable to Lancaster County. Robinson's declaration does not mention any action undertaken by Lancaster County election officials nor does she indicate that MTRP has any presence in or involvement with communities in that county, so it lacks constitutional standing to bring suit against it.

Robinson's declaration does state that in Berks County, it runs "active programs to register voters in" communities "of color." *Id*. at p. 101, ¶ 7. *See also* ECF No. 267-10, ¶ 10-11. Based on this, MTRP has demonstrated that its injury is traceable to the actions of Berks County officials. And, as noted above, the injury is redressable by an injunctive and/or declaratory order from this Court. *See discussion supra*. Accordingly, the Court concludes that although MTRP lacks standing to sue the Lancaster County Board, it has demonstrated sufficient standing to bring its claim against the Berks County Board of Elections.

The resolution of the standing arguments in these two motions for summary judgment does not end the standing analysis in this case. Even though no other Defendant raises standing concerns, the Court has an independent responsibility to ensure its jurisdiction; that is, whether any of the Plaintiffs have standing to sue all the other nonmoving Defendants. *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013) (citing *Henderson ex rel. Henderson*

25

ADD.25

*v. Shinseki*, 562 U.S. 428, 433 (2011) ("Federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.")).

C.    Individual Plaintiffs Against the Nonmoving County Board Defendants

The individual Plaintiffs have sued each of the sixty-seven county boards of elections in the Commonwealth of Pennsylvania.  As just discussed, only two of those county boards have moved for summary judgment based on lack of standing.  But the allegations of each individual Plaintiff—and the evidence each has proffered—do not support standing against most of the nonmoving county boards because each Plaintiff's injury is not particularized to any action of those Defendants. Each individual Plaintiff has only presented evidence supporting standing as to their own county of residence and even then, only as to their claims under the Civil Rights Act.[12]

Seastead states in his declaration that he is a Warren County voter who sought to vote in the November 2022 election in that county.  *See* ECF No. 121-2, *generally*.  He is 68 years old, has been registered in Warren County for decades, and votes regularly.  For the November 2022 election, Seastead properly requested a mail ballot, marked his ballot, and inserted it into the secrecy envelope and then into the outer return envelope on which he signed the voter declaration.  Seastead's ballot was not counted because of an "invalid" date.  Seastead believed he wrote the date on which he filled out the ballot and is unaware why the Board of Elections rejected the date he wrote as "incorrect."  Seastead was not notified of any opportunity to cure

---

[12] No individual Plaintiff has offered any evidence relative to traceability or redressability as to their equal protection claim. Accordingly, no individual Plaintiff has standing to pursue an equal protection claim against any county board.

ADD.26

any defect prior to Election Day. He had no opportunity to cure any defect regarding the date prior to Election Day and only learned after Election Day that his vote was not counted.

Aynne Pleban Polinski is a York County voter who sought to vote in the November 2022 election. Polinski is 71 years old and is a qualified voter who regularly votes in elections. In her declaration, Polinski states that she has been a registered voter in York County since 2016. *See* ECF No. 121-6, *generally*. For the November 2022 election, Polinski properly requested a mail ballot, marked her ballot, and inserted it into the secrecy envelope and then into the outer return envelope on which she signed the voter declaration. The York County Board of Elections did not count her ballot based on a missing date. She was not notified of any opportunity to cure any defect prior to Election Day and only learned after Election Day that her vote was not counted.

Marlene Gutierrez has submitted a signed declaration in which she declares that she is a York County voter who sought to vote in the November 2022 election. *See* ECF No. 121-4, *generally*. She is 64 years old and has been a registered voter in York County since September 2020. For the November 2022 election, Gutierrez properly requested a mail ballot, marked her ballot, and inserted it into the secrecy envelope and then into the outer return envelope on which she signed the voter declaration. She believed she had followed all the instructions but learned on Election Day that her ballot would not be counted and she did not have time to cure her ballot. The York County Board did not count Gutierrez's ballot because of a missing date.

Laurence Smith declares that he is a Montgomery County voter who sought to vote by mail in the November 2022 election. *See* ECF No. 121-8, *generally*. He is 78 years old and has been a registered voter for decades. He has voted regularly in Montgomery County since moving there in 1991. For the November 2022 election, Smith properly requested a mail ballot, marked his ballot, and inserted it into the secrecy envelope and then into the outer return

ADD.27

envelope on which he signed the voter declaration.  The Montgomery County Board of Elections did not count Smith's ballot based on a missing date on the voter declaration.  Smith believed he had followed all the necessary steps to complete the declaration and he was unaware of what the Montgomery County Board of Elections concluded was wrong with the date form.  Smith was not notified of any opportunity to cure any defect prior to Election Day.

Joel Bencan is also a Montgomery County voter who sought to vote by mail in the November 2022 election.  His declaration states that he is 71 years old, has been a registered voter for decades, and has participated regularly in elections since the Nixon Administration. *See* ECF No. 121-7, *generally*. Bencan properly requested a mail ballot, marked his ballot, and inserted it into the secrecy envelope and then into the outer return envelope on which he signed the voter declaration.  The Board of Elections did not count Bencan's ballot based on a missing date. Bencan believed he had followed all the necessary steps to complete the voter declaration, and he was unaware of why the Board rejected the date he wrote as "incorrect."  Bencan was not notified of any opportunity to cure any defect prior to Election Day.

"For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339.  Here, the five individual Plaintiffs contend only that the actions of Warren, York, and Montgomery counties have affected them in a personal way; that is, those counties did not count their mail-in ballots and/or failed to provide them with an opportunity to correct their offending ballots. In suing all the remaining counties, the individual Plaintiffs instead advance "undifferentiated, generalized grievance[s] about the conduct of government," which cannot give them standing.  *See Mason v. Adams County Recorder*, 901 F.3d 753, 757 (6th Cir. 2018) (citing *Lance v. Coffman*, 549 U.S. 437, 439-42 (2007)).  The Sixth Circuit's decision in *Mason* is instructive.  There, the plaintiff brought a Fair Housing Act claim

ADD.28

against every county recorder in the State of Ohio, challenging the "maintenance of records that contain racially restrictive covenants." *Id*. at 754-55. The Court of Appeals concluded that the plaintiff, who was a resident of Hamilton County, Ohio, did not have standing to sue all the county recorders in the state because his injury was not particularized. *Id*. at 757. The same holds true here. The individual Plaintiffs' claims against the remaining county boards will be dismissed for a lack of standing. Each individual Plaintiff only has standing against his or her own county board of elections.

      D.      Organizational Plaintiffs Against the Nonmoving County Board Defendants

The same is true for the allegations of the organizational Plaintiffs. As discussed above, the organizational Plaintiffs have standing relative to their claim against some of the county Defendants: NAACP and MTRP against the Berks County Board and the League against the Lancaster County Board.

Further review of the evidence of record reveals that some of the organizational Plaintiffs have standing against some of the other nonmoving county boards. As detailed above, each organizational Plaintiff has provided undisputed evidence of injury. But this evidence demonstrates that their injury is not traceable or redressable as to every county board. Reviewing all the evidence of record, the NAACP has established that its injury is traceable to the Allegheny, Philadelphia, and York County Boards. ECF No. 280, p. 34-50. Besides the Berks and Lancaster County Boards, the League has shown that its injury is traceable to the Allegheny, Lehigh, and Montgomery County Boards. ECF No. 267-6, p. 10-14; ECF No. 280, p. 51-103. POWER's injury is traceable to the Philadelphia County Board. ECF No. 267-7, p. 11-12; ECF No. 280, p. 76-79. B-PEP has shown injury traceable to the Allegheny, Westmoreland, and Washington County Boards. ECF No. 267-9, p. 10; ECF No. 280, p. 94-100. MTRP has

ADD.29

shown its injury is traceable to Bucks, Lehigh, Northampton, and Philadelphia County Boards in addition to Berks County Board.  ECF No. 267-10, p. 10-11; ECF No. 280, p. 10-103.  Common Cause has not established that its injury is traceable to any specific county board of elections, as it must. ECF No. 267-8, p. 9-12; ECF No. 280, p. 101-103.

The Court has already determined that such injuries are redressable through the ordering of declaratory and injunctive relief; but as to the remaining nonmoving county board Defendants, these organizations have failed to demonstrate a particularized injury.  *See, e.g., Sprint Commc'ns, L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (holding that each plaintiff must plead facts specific to his or her own injury); *Rogers v. Morrice*, 2013 WL 5674349, at *4 (D.N.J. Oct. 16, 2013) (conclusory statements and non-particularized allegations against individual defendants did not establish standing).  In other words, none of the organizational Plaintiffs demonstrates that they were harmed as an organization by any of the actions of the remaining county board Defendants.

Because the organizational Plaintiffs lack standing to bring their claims against the other county boards, those claims will be dismissed.

E.      The Individual Plaintiffs Against Defendant Schmidt

Defendant Schmidt is the Secretary of the Commonwealth Department of State.  He is sued in his official capacity. According to the Amended Complaint, it is his duty "[t]o receive from county boards of elections the returns of primary and elections, to canvass and compute the votes cast for candidates and upon [ballot] questions required by the provisions of this act, to proclaim the results of such primaries and elections, and to issue certificates of election."  ECF No. 121, page 19, ¶ 37.  As noted above, the individual Plaintiffs have demonstrated an injury-in-fact.  They have adequately demonstrated that their votes were denied because of a missing or

ADD.30

incorrect date and that they were not afforded, in some instances, an opportunity to cure their ballot. These are highly personal and concrete injuries. *See Donald J. Trump for President, Inc. v. Boockvar*, 502 F.Supp.3d 899, 912 (M.D. Pa*.), aff'd sub nom. Donald J Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 Fed. Appx. 377 (3d Cir. 2020).

The individual Plaintiffs still must establish that Secretary Schmidt caused their injuries. Here, the individual Plaintiffs point to a November 1, 2022, email from a Department of State official sent to all county boards of elections instructing them to "refrain from counting any absentee and mail-in ballots received for the November 8, 2022, general election that are contained in undated or incorrectly dated outer envelopes." ECF No. 121-9, p. 2. This email directed county election officials to "segregate and preserve any ballots contained in undated or incorrectly dated outer envelopes … Do not count the votes cast on ballots with undated or incorrectly dated ballots." *Id*. Two days later, the acting Secretary issued new guidelines which instructed counties that "ballots which are administratively determined to be undated or incorrectly dated" should be coded as "CANC-NO SIGNATURE within the SURE system."[13] ECF No. 121-10, p. 2.

These communications link Schmidt to the segregation and non-counting of the individual Plaintiffs' ballots and thereby trace the individual Plaintiffs' injuries to the Secretary's actions.[14] Furthermore, the individual Plaintiffs have sufficiently demonstrated that a favorable

---

[13] The SURE system is the Commonwealth's Statewide Uniform Registry of Electors, a uniform integrated computer system that, *inter alia*, tracks mail and absentee ballots from application through final tabulation. *See* ECF No. 279, p. 188-250 (Deposition transcript of Jonathan Marks, Pennsylvania Deputy Secretary for Elections and Commissions).

[14] This determination differs from an earlier decision reached by the Court in *Boockvar*, 502 F. Supp. 3d 899 (M.D. Pa. Nov. 21, 2020). There, the Court concluded that the individual Plaintiffs had failed to establish that the Secretary of the Commonwealth had caused their injury (denial of

ADD.31

decision from this Court would redress their injuries. They specifically request that the Secretary be enjoined from "refusing to include [their] ballots when reporting the 2022 election totals," thus ensuring that their votes are counted. *See* ECF No. 121, p. 38. This demonstrates that the individual Plaintiffs have standing to bring both their Materiality Provision and equal protection claims against Secretary Schmidt.

F.      The Organizational Plaintiffs Against Defendant Schmidt

All the organizational Plaintiffs have established an injury. The declarations of their various leaders assert that because of the Secretary's actions ordering the segregation and non-counting of ballots which contained a missing or incorrect date, their organizations had to divert already scarce resources away from their missions and toward the warning and re-education of voters who may have filled out their ballots incorrectly. And, as noted above, these organizations have likewise established causation given the email and the Secretary's issuance of a guideline instructing the counties to segregate and not count the offending ballots. Finally, this injury is redressable in that an order from this Court requiring the ballots to be counted would permit the organizational Plaintiffs to redirect their resources back to their stated goals and mission for future elections.

---

their ability to vote). The Court noted that the only connection the plaintiffs pointed to was an email, in which the Secretary encouraged county officials to adopt a "notice-and-cure policy." *Id*., at 913. This, the Court concluded, "does not suggest in any way that Secretary Bookvar encouraged counties to allow exactly these types of votes to be counted." *Id*. Thus, the email evidence failed to establish that the Secretary caused the plaintiff's injuries. *Id*. Here, the opposite is true. The November 1, 2022, email coupled with the Secretary's issuance of additional guidance to the counties two days later links the individual Plaintiffs' voting injuries to the Secretary's actions.

ADD.32

Accordingly, the Court concludes that the organizational Plaintiffs have standing to bring their Civil Rights Act claim against Secretary Schmidt.

G.     Summary of the Plaintiffs' Standing

The foregoing analysis of the standing of each Plaintiff against each Defendant may be best summarized graphically. To wit, the Court offers the following chart:

| Plaintiff | Standing to Pursue Materiality Provision Claims | Standing to Pursue Equal Protection Claims |
|---|---|---|
| Barry Seastead | Warren County; Secretary Schmidt | Secretary Schmidt |
| Aynne Marg Pleban Polinski | York County; Secretary Schmidt | Secretary Schmidt |
| Marlene Gutierrez | York County; Secretary Schmidt | Secretary Schmidt |
| Laurence Smith | Montgomery County; Secretary Schmidt | Secretary Schmidt |
| Joel Bencan | Montgomery County; Secretary Schmidt | Secretary Schmidt |
| NAACP | Allegheny, Berks, Philadelphia, and York Counties; Secretary Schmidt | n/a |
| League of Women Voters | Allegheny, Berks, Lancaster, Lehigh, Montgomery Counties; Secretary Schmidt | n/a |
| POWER | Philadelphia County; Secretary Schmidt | n/a |
| Common Cause | Secretary Schmidt | n/a |

ADD.33

| Plaintiff | Standing to Pursue Materiality Provision Claims | Standing to Pursue Equal Protection Claims |
|---|---|---|
| B-PEP | Allegheny, Westmoreland, Washington Counties; Secretary Schmidt | n/a |
| MTRP | Berks, Bucks, Lehigh, Northampton, Philadelphia Counties; Secretary Schmidt | n/a |

      So then, after the standing analysis, twelve county boards remain as active Defendants in this action based on a Plaintiff's identifiable and traceable injury in fact: Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Washington, Warren, Westmoreland, and York. Because no Plaintiff has established standing against Adams County, Armstrong County, Beaver County, Bedford County, Blair County, Bradford County, Butler County, Cambria County, Cameron County, Carbon County, Centre County, Chester County, Clarion County, Clearfield County, Clinton County, Columbia County, Crawford County, Cumberland County, Dauphin County, Delaware County, Elk County, Erie County, Fayette County, Forest County, Franklin County, Fulton County, Greene County, Huntingdon County, Indiana County, Jefferson County, Juniata County, Lackawanna County, Lawrence County, Lebanon County, Luzerne County, Lycoming County, McKean County, Mercer County, Mifflin County, Monroe County, Montour County, Northumberland County, Perry County, Pike County, Potter County, Schuylkill County, Snyder County, Somerset County, Sullivan County, Susquehanna County, Tioga County, Union County, Venango County, Wayne County, and Wyoming County, the claims brought against them will be dismissed for a lack of constitutional standing in a separate order.

IV.     Mootness and Ripeness

In addition to the standing inquiry, the Court's continuing obligation to ensure its jurisdiction includes an assessment of whether the Plaintiffs' claims are moot. *See Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pa*. 863 F.3d 245, 252 (3d Cir. 2017).  Lancaster and Berks County raise this issue in their motion for summary judgment.  *See* ECF No. 267, pp. 10-11.  Mootness is a doctrine which "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit," and which is "concerned with the court's ability to grant effective relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (citations omitted).  In other words, "a case is moot if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief."  *Id*., at 335 (quoting *Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690, 698-99 (3d Cir. 1996)).

Here, the individual Plaintiffs claim that the mandatory application of the date requirement for mailed-in ballots violates their statutory and constitutional rights and that, as a result, they were disenfranchised. They seek, among other forms of relief, an order from this Court declaring the dating requirement violative of the Materiality Provision and the Equal Protection Clause of the Fourteenth Amendment and further directing the Defendants to open their ballots, count, and record their votes.  *See* ECF No. 121, p. 38; ECF No. 275, p. 19.  The Plaintiffs further assert that the Defendants maintain "digital and paper records of the total number of votes received by each candidate in past elections … [and] are capable of updating records of the total number of votes received by each candidate in past elections if ordered to do so by a court."  ECF No. 283, ¶¶ 113-114.  No other party disputes this. *See* ECF No. 295

35

(Lancaster County), ¶¶ 113-114; ECF No. 300 (Secretary Schmidt), ¶¶ 113-114; ECF No. 305 (Republican National Committees), ¶ 113-114.

Plaintiffs' claims are not moot. The requirement to date the voter declaration on the outside envelope of a mail-in ballot in Pennsylvania remains in effect. In this case, the Court can order meaningful relief by (1) declaring that the mandatory application of the Date Requirement violates the Materiality Provision and the Equal Protection Clause and (2) directing the Defendants to count and record the Plaintiffs' votes from the 2022 election. *See, e.g., Natural Resources Defense Council v. U.S. E.P.A.*, 703 F.2d 700, 703 (3d Cir. 1983) (case was not moot because Court could order relief which would alter the status quo); *see also Org. for Black Struggle v. Ashcroft*, 2021 WL 1318011, at *3 (W.D. Mo. Mar. 9, 2021) (because state's regulation was still in effect, plaintiff's claim that it violated the materiality provision was not moot).

Related to the mootness doctrine is the doctrine of ripeness. Ripeness "seeks to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3d Cir. 2000) (cleaned up). That is, the doctrine "serves to determine whether a party has brought an action prematurely and counsels abstention until such time as the dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Env't, Inc., v. Blakely*, 376 F.3d 187, 196 (3d Cir. 2004) (citation omitted). "A plaintiff challenging a governmental enactment or policy satisfies the ripeness aspect of the case or controversy requirement by demonstrating that operation of the enactment or policy will cause him to sustain some immediate injury and that the judicial relief requested would address that injury." *Cities Servs. Co. v. Dep't of Energy*, 520 F. Supp. 1132, 1139 (D. Del. Aug. 28, 1981)

36

(citing *Duke Power Co. v. Carolina Environmental Study Grp*., 438 U.S. 59, 81 (1978)). In the constitutional sense, a case is ripe if "the requisite injury is in sharp enough focus and the adverseness of the parties concrete enough to permit a court to decide a real controversy and not a set of hypothetical possibilities." *Martin Tractor Co. v. Federal Election Commission*, 627 F.2d 375, 379 (D.C. Cir. 1980).

Where, as here, a plaintiff seeks declaratory relief, courts must employ a "somewhat refined test by examining: (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Koons v. Platkin*, 2023 WL 3478604, at *36 (D.N.J. May 16, 2023) (cleaned up). "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). Here, absent a declaratory judgment from this Court, the individual Plaintiffs will remain disenfranchised and their votes will remain uncounted. Their claim that the mandatory application of the Date Requirement violates the Materiality Provision and the Equal Protection Clause presents "a real and substantial threat of harm." *See NE Hub Partners, L.P. v. CNG Transmission Corp*., 239 F.3d 333, 342 n.9 (3d Cir. 2001).

The conclusiveness of the judgment examination asks whether "a declaratory judgment definitively would decide the parties' rights." *Id*. at 344 (citation omitted). This Court must consider whether "the legal status of the parties would be changed or clarified and [whether] further factual development … would facilitate decision, so as to avoid issuing advisory opinions, or the question presented is predominately legal." *Travelers Ins*., 72 F.3d at 1155. In this case, declaratory relief would affect the "legal status of the parties" by determining whether the Commonwealth must count and record their mail-in ballots retroactively and prospectively. A judgment from this Court would determine that issue. *See, e.g., Koons*, 2023 WL 3478604, at

ADD.37

*37. The Plaintiffs' challenge presents a "purely legal" question with little need for further factual development. Their claims focus on whether the Commonwealth's mandatory application of the Date Requirement violates federal law, unreasonably burdening their right to vote. Resolving their claim would conclusively determine whether the application of the requirement infringes on their rights.

Finally, the Court must consider whether the declaratory relief sought here "would be useful to the parties and others who would be affected." *Id*. A declaratory judgment here would be of utility to not only the Plaintiffs but to others. If successful, not only would the Plaintiffs have their votes counted and recorded, but declaratory relief would also be useful to all citizens of the Commonwealth by deciding whether the mandatory application of the Date Requirement for mail-in ballots violates federal law and is not required. Withholding declaratory judgment in this case would continue the confusion and uncertainty now extant in the Commonwealth's voting procedures. Finally, the Defendants' interests would be served by a decision in this matter by resolving the uncertainty: either they can enforce the Date Requirement or they cannot.

In sum then, the Plaintiffs' claims are neither moot nor unripe. The Court will now proceed to the merits of the Plaintiffs' claims and the cross-motions for summary judgment.[15]

---

[15] In addition to standing, Lancaster County also moved for summary judgment arguing that the Materiality Provision does not provide a private right of action. *See* ECF No. 267, p. 12-14. The private enforceability of the Materiality Provision was raised earlier in this case by other defendants in the context of a motion to dismiss. In declining to dismiss the Plaintiffs' Amended Complaint, this Court determined that the Plaintiffs had stated a plausible claim for relief, that is, that after accepting their factual allegations as true, it was plausible that the Plaintiffs, as private individuals, could enforce the Materiality Provision. *See* ECF No. 329, p. 9. *See also Migliori v. Cohen*, 36 F.3d 153, 156 (3d Cir. May 27, 2022) (*vacated on other ground*s, 143 S. Ct. 297 (Oct. 11, 2022)). This determination, however, is not law of the case because it was based on a motion to dismiss, not on the standards applicable to a motion for summary judgment. *See Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (noting law of the case doctrine is inapplicable "where the legally relevant factors differ between a motion to dismiss, which relies on plaintiff's

ADD.38

V.    The Cross Motions for Summary Judgment

The cross motions for summary judgment are as follows. The Plaintiffs have moved for summary judgment on both claims.  *See* ECF No. 274.[16]  Lancaster County Board of Elections filed a brief in opposition to the Plaintiffs' motion (ECF No. 294) and Westmoreland County Board of Elections filed a response joining in that opposition (ECF No. 297).[17]

Secretary Schmidt did not move for summary judgment.  Instead, the Secretary filed a brief stating his position to the Plaintiffs' motion.  *See* ECF No. 298.[18]  The Secretary does not oppose the Plaintiffs' motion for summary judgment as to Count I (relating to the Materiality Provision) but opposes their motion as to the Equal Protection claim.  *See* ECF No. 298, p. 2.

Certain political committees associated with the Republican Party as well as several individual voters sought leave to intervene "as defendants to defend the [Pennsylvania] General Assembly's duly enacted laws governing the elections in which the Individual Voters, and the Republican Committees, their candidates, their voters, and their supporters, exercise their right to

---

allegations in his complaint, and a motion for summary judgment which relies on the evidence in the record") (citations omitted).  This argument has also been raised on summary judgment by other Defendants.  Lancaster County's remaining basis for summary judgment will be discussed in conjunction with those other motions, *infra*.

[16] Plaintiffs submitted multiple appendices in support of their motion and filed a Concise Statement of Material Facts per the Local Rules of this Court.  ECF No. 277-282; ECF No. 283, *respectively*.

[17] In accordance with Local Rule 56(C)(1), the Lancaster County Board filed a Responsive Concise Statement (ECF No. 302), but Westmoreland County Board did not. Nor did Westmoreland County move for summary judgment.  Berks County Board of Elections filed a document entitled "Response in Opposition to Plaintiffs' motion for summary judgment and concise statement of material facts." ECF No. 308. In actuality, the filing is a Responsive Concise Statement and not an opposition brief.

[18]  The Secretary also filed a Responsive Concise Statement (ECF No. 300), and an appendix (ECF No. 301).

39

ADD.39

vote and their constitutional rights to participate in elections."  ECF No. 27, p. 1.  These proposed intervenors were the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania (collectively, "the RNC"). The Court previously denied the motion as to the individual voters but granted leave for the committees to intervene as defendants.  *See* ECF No. 167.

The RNC filed a motion for summary judgment in support of the mandatory application of the date requirement.  ECF No. 270.[19]  Briefs in opposition to the RNC's motion were filed by five County Boards of Elections jointly (Allegheny, Bucks, Chester, Montgomery, and Philadelphia County Boards) (*see* ECF No. 310).  The Plaintiffs then filed an omnibus opposition to Lancaster County, Berks County, and the RNC's motions for summary judgment.  ECF No. 313.  The RNC filed a reply brief.  *See* ECF No. 318.[20]

Several non-parties have also demonstrated an interest in this litigation.  The Lawyers Democracy Fund ("LDF") and Restoring Integrity & Trust In Elections, Inc. ("RITE") have both filed briefs *amicus curiae* in support of the RNC's position.  *See* ECF No. 328; ECF No. 333. Also, the Civil Rights Division of the United States Department of Justice has filed a Statement of Interest of the United States.[21]  ECF No. 229. The Department of Justice argues that the Commonwealth's date requirement violates the Materiality Provision.

---

[19] The RNC also filed an appendix (ECF No. 273) and a Concise Statement (ECF No. 272).

[20] Responsive Concise Statements were filed by the Secretary [ECF No. 299], Plaintiffs [ECF No. 315], and the five County Boards [ECF No. 311]. The five County Boards jointly filed an Appendix. ECF No. 312. Additionally, the five County Boards included additional material facts in their Responsive Concise Statement and the RNC filed a response to those [ECF No. 321].

[21] 28 U.S.C. § 517 authorizes the Attorney General of the United States "to attend to the interests of the United States in a suit pending in a court of the United States."

40

A.     The Standard of Decision

In resolving the competing motions for summary judgment, the following standards will guide the Court's decision.  Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party.  *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings with affidavits, depositions, answers to

41

ADD.41

interrogatories or other record evidence to demonstrate specific material facts that give rise to a
genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the
absence of a genuine fact issue on one or more essential claim elements. The Rule mandates
summary judgment if the plaintiff then fails to make a sufficient showing on each of those
elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete
failure of proof concerning an essential element of the nonmoving party's case necessarily
renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp*., 967
F.2d 846, 851 (3d Cir. 1992).

The foregoing standards are no differently applied when reviewing cross-motions for
summary judgment. *Lawrence v. City of Phila*., 527 F.3d 299, 310 (3d Cir. 2008). "'Cross-
motions are no more than a claim by each side that it alone is entitled to summary judgment, and
the making of such inherently contradictory claims does not constitute an agreement that if one is
rejected the other is necessarily justified or that the losing party waives judicial consideration and
determination whether genuine issues of material fact exist.'" *Id*. (quoting *Rains v. Cascade
Indus., Inc*., 402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions reveals no genuine
issue of material fact, then judgment may be granted in favor of the party entitled to judgment in
view of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir.
1998) (citation omitted).

The Local Rules of this Court require that a motion for summary judgment under Federal
Rule 56 be supported by "a separately filed concise statement setting forth the facts essential for
the Court to decide the motion, which the moving party contends are undisputed and material."
LCvR 56(B)(1). Local Rules such as ours have been found "essential to the Court's resolution of

42

a summary judgment motion due to its role in organizing evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (citations omitted). *See also Weimer v. County of Fayette*, 2022 WL 28119025, at *10 (W.D. Pa. July 19, 2022) ("The purpose of Local Rule 56(B)(1) is to aid the Court in deciding a motion for summary judgment by identifying material facts and supporting documentation to determine whether the fact is disputed.") (citation omitted) *reversed in part on other grounds*, 2023 WL 7221027 (3d Cir. Nov. 2, 2023).

The Plaintiffs filed a Concise Statement in support of their motion. *See* ECF No. 283. Moving Defendants Lancaster and Berks Counties and the RNC have also filed Concise Statements in support of their motions.[22]  As indicated in their Responsive Concise Statements, the moving Defendants, in large part, do not dispute the Plaintiffs' factual assertions. *See* ECF Nos. 295 (Lancaster County) and 305 (RNC).[23] The following factual background is recounted from the parties' Concise Statements and the exhibits attached thereto.  Disputes of fact will be

---

[22] The Local Rules mandate that a concise statement set forth facts essential for the Court to decide the motion for summary judgment and each statement must be supported by a citation to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record. *See* Local Rule of Civil Procedure 56(B)(1).  Courts within the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See*, *e.g.*, *Peay v. Sager*, 2022 WL 565391, at *1 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022), *aff'd*, 2022 WL 17819629 (3d Cir. Dec. 20, 2022); *First Guard Ins. Co. v. Bloom Servs., Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018). In large part, the RNC's Concise Statement advances legal conclusions rather than facts supported by evidence. *See, e.g.,* ECF No. 272, ¶¶ 36 ("… the current state of the law is that the General Assembly's date requirement is mandatory and that election officials may not count any noncompliant ballot in any election after the 2020 general election." (citation omitted)); 40, 47. The RNC's Concise Statement does not comply with the Local Rules. *See* ECF No. 272.

[23] Defendant Schmidt also filed a Responsive Concise Statement which does not appear to contradict the Plaintiffs' Concise Statement on any material fact. *See* ECF No. 300.

ADD.43

noted.  In the interest of clarity and brevity, the Court will primarily cite to the Plaintiffs'
Concise Statement where the moving Defendants' statements agree.

      B.     The Undisputed Facts

Although the Commonwealth has long made absentee ballots available for voters who
could not cast their ballot on Election Day, new mail-in voting provisions were enacted in 2019
by the General Assembly to make voting by mail an option for all registered voters.  *See* ECF
No. 283, ¶¶ 1-2.  Millions of Pennsylvanians availed themselves of this new option in the
November 2020 and November 2022 elections.  *Id*. at ¶ 3.

To vote by mail, voters apply to their county board of elections, providing their date of
birth, address, length of time as a resident of the voting district, and proof of identification (either
a Pennsylvania driver's license number or, if the voter does not have a Pennsylvania driver's
license, the last four digits of the voter's Social Security number).  *Id*. at ¶ 5.  The county boards
of elections then verify that they are qualified to vote in Pennsylvania.  In the Commonwealth, a
qualified voter is one who, on the day of the next election, has been a United States citizen for at
least one month, is at least 18 years old, has resided in the election district for at least 30 days,
and has not been confined in a penal institution for a conviction of a felony within the last five
years.  *Id*. at ¶ 4.  *See also* 25 Pa. C.S. § § 1301, 1327(b).  Once the voter's proof of
identification has been verified, the county boards compare the information in the application to
the information provided at the time of registration using the data from the Statewide Uniform
Registry of Electors ("SURE") system.  *Id*. at ¶ 6.  Each county maintains its own official voter
rolls within the Commonwealth's SURE system.  *See* ECF No. 279, pp. 207, 267.  Only after
verifying the voter's qualifications to vote do the county boards issue vote by mail ballot
packages to voters.  ECF No. 283, ¶ 7.  The county board's decision that an individual is

ADD.44

qualified to vote is conclusive unless the voter's eligibility is challenged prior to Election Day. *Id*. at ¶ 8. *See also* 25 P.S. § 3150.12b.

The county board then mails a ballot package to the voter. *Id*. at ¶ 9. The ballot package consists of the ballot itself, instructions, a "Secrecy Envelope," and a larger pre-addressed outer "Return Envelope" on which a voter declaration form is printed. *Id*. at ¶ 9. The Election Code provides that the inner Secrecy Envelope be marked with the words "Official Election Ballot" and nothing else. 25 P.S. § 3146.4. The larger outer Return Envelope is to contain "the form of declaration of the elector, and the name and address of the county board of election of the proper county." ECF No. 305, at ¶ 9 ("Said form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain among other things a statement of the electors' qualifications, together with a statement that such elector has not already voted in such primary or election."). [24] *Id*. The outer Return Envelope is printed with a unique barcode associated with the individual voter. That unique barcode is used to track the ballot through the SURE system. ECF No. 300, ¶ 6. During his deposition, Deputy Secretary of State Jonathan Marks clarified: "The counties do record returned ballots in the SURE system. … There is a barcode, a unique barcode on each envelope that's returned to the County that the County uses to scan. And that unique barcode is attached to that specific voter who requested the absentee or mail-in ballots. So, yes, the counties record those envelopes as returned in the SURE system." ECF No. 279, p. 223-244. Further, the Election Code requires the mail-in voter to "fill out, date and sign the declaration printed on" the outer Return Envelope. ECF No. 300, at ¶ 13. *See also*

---

[24] The Commonwealth provides the county boards with approved envelope templates, but the format and layout of the outer envelope may vary by county. ECF No. 279, p. 209 (Marks deposition).

ADD.45

25 P.S. § 3150.16(a). The voter declaration includes a line for the voter to sign and date the declaration.[25]  *Id.*  This is a reproduction of the back of the outer envelope:

> The voter declaration on the outer Return Envelope reads:
>
>> I hereby declare that I am qualified to vote in this election; that I have not already voted in this election, and I further declare that I marked my ballot in secret. I am qualified to vote the enclosed ballot. I understand I am no longer eligible to vote at my polling place after I return my voted ballot. However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the judge of elections at my polling place.

ECF No. 288, p. 210.

The voter is instructed to mark their ballot, put it inside the Secrecy Envelope, and place that into the outer Return Envelope.  The voter declaration on the Return Envelope is to be completed at "any time" between receiving the ballot package and 8:00 p.m. on Election Day.  *Id.* at ¶¶ 10, 54.  *See also* 25 P.S. § 3150.16(a).  After completing the ballot, the voter either mails the ballot to the county board of elections or personally delivers it to the board's office.  The county board of elections must receive the voter's completed ballot package by 8:00 p.m. on Election Day.  *Id.* at ¶ 11.  Upon receipt of the ballot package, the county boards stamp or otherwise mark the Return Envelope with the date of receipt to confirm its timeliness and log its receipt into the SURE system.  *Id.* at ¶ 12.[26]

---

[25] The exact phrasing under the date line varies by county – for example, some counties use "Today's date (required)/Fecha de hoy (obligatorio)," while others use "Today's date (MM/DD/YYYY) (required)." *Id.* at ¶ 46.

[26] Under the Election Code, county boards of elections have a statutory obligation to track the date that every mail ballot was received and make that information available for public inspection. 25 P.S. § § 3146.9(b)(5), 3150.17(b)(5).

ADD.46

The requirement of placing a date on the Return Envelope of a mail-in ballot has been the subject of repeated litigation in both state and federal courts. *Id*. at ¶ 14. In the run up to the 2022 election, the Secretary of the Commonwealth advised county election officials to count otherwise valid and timely-received mail ballots even where voters omitted a handwritten date, or wrote a plainly wrong date like a birthdate, on the voter declaration on the Return Envelope. *Id*. at ¶ 15. This guidance was reaffirmed on October 11, 2022. *Id*. at ¶ 16.

On October 16, 2022, a group of petitioners brought a King's Bench petition[27] in the Supreme Court of Pennsylvania seeking to invalidate mail ballots based on voter errors or omissions with respect to the date of the declaration on the outer Return Envelope. *Id*. at ¶ 17. On November 1, 2022, that Court issued a unanimous order, without opinion, directing that county boards "refrain from counting" mail ballots "contained in undated or incorrectly dated outer envelopes," because the justices were evenly divided[28] on the issue of whether failing to count the disputed ballots violates the federal Materiality Provision. *Id*. at ¶ 18. *See also Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022).

Later that same day, Deputy Secretary Marks sent an email to all county elections officials advising of the Supreme Court's order to "refrain from counting any absentee and mail-in ballots received for the November 8, 2022, General Election that are contained in undated or

---

[27] A King's Bench Petition is not an appeal from a lower court decision, but instead is an action initiated directly in the Supreme Court of Pennsylvania based on its "general superintendency over inferior tribunals even when no matter is pending before a lower court." *See Thomas v. Piccione*, 2013 WL 5566506, at *4 n.4 (W.D. Pa. Oct. 9, 2013) (quoting *Bd. of Revision v. City of Phila*., 4 A.3d 610, 620 (Pa. 2013)).

[28] At the time of the decision, the Pennsylvania Supreme Court had only six justices due to the recent death of Chief Justice Max Baer around October 1, 2022. *See* http://www.pacourts.us/news-and-statistics/news/news-detail/1115/pennsylvania-supreme-court-announces-passing-of-chief-justice-max-baer.

incorrectly dated outer envelopes," and to "**segregate** and **preserve** any ballots contained in undated or incorrectly dated outer envelopes … [officials] **must remember to do two things** as [they] pre-canvass and canvass absentee and mail-in ballots: <u>Segregate</u> AND <u>preserve</u> these undated and incorrectly dated ballots; and <u>Do not count</u> the votes cast on ballots with undated or incorrectly dated ballots." *Id*. at ¶ 19 (emphasis and underlining in original).

On November 3, 2022, Acting Secretary of the Commonwealth Leigh Chapman issued new guidance instructing county election officials that "ballots which are administratively determined to be undated or incorrectly dated" should be coded as "CANC – NO SIGNATURE within the SURE system" and should be "segregated from other ballots." *Id*. at ¶ 20. Then, on November 5, 2022, the Supreme Court of Pennsylvania issued a supplemental order defining "incorrectly dated outer envelopes" as "(1) mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022;[29] and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022." *Id*. at ¶ 21; ECF No.  281, p. 31-2.

The November 2022 General Election involved races for the United States Senate, United States House of Representatives, Pennsylvania Governor, and Pennsylvania House and Senate offices. *Id*. at ¶ 33. The county boards of elections reported receiving approximately 1.2 million mail and absentee ballots in the election. *Id*. at ¶ 35. Approximately 10,500 mailed ballots were segregated by county boards of elections based on missing or incorrect dates on the voter declaration on the outer Return Envelopes. *Id*. at ¶ ¶ 36, 38. County boards of elections

---

[29] These dates—September 19 through November 8, 2022—will be referred to herein as the "*Ball date range*."

acknowledge that they did not use the handwritten date on the voter declaration on the Return Envelope for any purpose related to determining a voter's age (*id*. at ¶ 46), citizenship (*id*. at ¶ 48), county or duration of residence (*id*. at ¶ 49), felony status (*id*. at ¶ 50), or timeliness of receipt (*id*. at ¶¶ 51-52). All the voters whose ballots were set aside in the November 2022 election solely because of a missing or incorrect date on the outer Return Envelope had previously been determined to be eligible and qualified to vote in the election by their county board of elections. *Id*. at ¶ 42.

C.     The Materiality Provision Claim

Plaintiffs argue that the mandatory application of the Date Requirement violates the Materiality Provision of the Civil Rights Act. *See, e.g.*, ECF No. 275. The RNC and Lancaster and Berks Counties disagree.[30] *See, e.g.*, ECF No. 271, pp. 11-12. No other county board offers argument on this point.

---

[30] Secretary Schmidt agrees with the Plaintiffs and argues in favor of the motion for summary judgment on the Materiality Provision claim. He states that in the 2022 general election, more than 10,000 eligible voters had their ballots cancelled for "failing to handwrite a date that serves no purpose in the administration of Pennsylvania's elections." ECF No. 298, p. 6. The Secretary argues that the mandatory application of the Date Requirement violates federal law and he asks that summary judgment be granted against him and in favor of Plaintiffs on that claim. *See id.* ("Because the undisputed facts establish that writing a date on the declaration submitted with an absentee or mail ballot serves no purpose in the administration of Pennsylvania's election, it is not "material" to determining an individual's eligibility."). Given the Secretary's position, a question is raised whether a controversy remains. This requires the Court to revisit subject matter jurisdiction. "[A] suit must be justiciable throughout its pendency." *NLRB v. Gov't of Virgin Islands*, 2021 WL 4990628, at *4 (D.V.I. Oct. 27, 2021) (citing *Brown v. Phila. Hous. Auth*., 350 F.3d 338, 346-47 (3d Cir. 2003)). Article III "affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). Arguably, Plaintiffs and the Secretary of the Commonwealth are no longer adverse litigants. But the Secretary's position alone is insufficient to destroy standing or to render this case moot. As discussed above, each of the Plaintiffs have constitutional standing against the Secretary. There is an injury to each Plaintiff that is traceable to the Secretary which is likely to be redressed by favorable judicial intervention. *See supra*, p. 30, *et seq*.; *Lujan*, 504 U.S. at 561. Despite the

49

ADD.49

The Civil Rights Act of 1964 forbids discrimination in many fundamental aspects of American life. The Supreme Court has referred to this Act as a "most comprehensive [] undertaking [designed] to prevent through peaceful and voluntary settlement discrimination in voting, as well as in places of accommodation and public facilities, federal secured programs and in employment." *Heart of Atlanta Motel, Inc., v. United States*, 379 U.S. 24, 246 (1964). The opening provision of the statute provides insight into Congress' intent:

> "All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding."

52 U.S.C. § 10101(a)(1).[31] The statute further prohibits state officials from denying any individual the right to vote "because of an error or omission on any record or paper" that relates

---

Secretary's legal position in this case, the county boards of elections remain bound by the state Supreme Court's holding directing that undated and misdated mail ballots be segregated and not counted. Because Plaintiffs' injuries can only be redressed by the declaratory judgment sought, an actual case or controversy still remains.

[31] Lancaster and Berks Counties also assert that the Materiality Provision only applies to racially motivated laws. *See* ECF No. 294, pp. 8-10. Despite the fact that the heading of 52 U.S.C. § 10101(a) references "[r]ace, color, or previous condition," it only does so in the subjunctive together with other topics: "Race, color or previous condition not to affect the right to vote; uniform standards for voting qualifications; errors or omissions from papers; literacy tests; agreements between Attorney General and State or local authorities; definitions." *See id.; see also Thurston*, 2023 WL 6446015, at *16; *Vote.org*, 2023 WL 7169095 at * 3 ("That Congress enacted the Materiality Provision to tackle racial discrimination does not, though, mean the provision applies only to racially discriminatory practice."). And further, § 10101(c) provides that "[w]henever any person has engaged or [is likely to engage in] any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), the Attorney General may institute … a civil action." However, "[i]n any proceeding instituted pursuant to subsection (c) in the event the court finds that any person has been deprived on account of race or color of any right or privilege secreted by subsection (a)," additional procedure is required to protect the voting rights of people of that particular race or color." 52 U.S.C. § 10101(e). That Congress specifically implicated a racial motivation in some sections of

ADD.50

to any "application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (formerly codified at 42 U.S.C. § 1971). Federal courts typically refer to this provision as the "Materiality Provision." *See, e.g., Vote.org v. Byrd*, 2023 WL 7169095, at *6 n.9 (N.D. Fla. Oct. 30, 2023); *League of Women Voters of Arkansas v. Thurston*, 2023 WL 6446015, at *16 (W.D. Ark. Sept. 29, 2023), *judgment entered*, 2023 WL 6445795 (W.D. Ark. Sept. 29, 2023); *In re Georgia Senate Bill 202*, 2023 WL 5334582, at *7 (N.D. Ga. Aug. 18, 2023). Here, the Plaintiffs contend that Pennsylvania's requirement that voters place a date on the outer envelope when returning their mail ballot for recording and counting violates the Materiality Provision.

### 1. Private Enforcement of the Materiality Provision

#### a. Private Right of Action

The initial question is whether the Plaintiffs, as private individuals and community organizations, can enforce the Materiality Provision through this lawsuit. The RNC and Lancaster and Berks Counties argue they cannot, contending that the Materiality Provision does not permit private individuals and organizations to bring enforcement actions. This argument was raised by the RNC in their motion to dismiss, albeit in a brief footnote. *See* ECF No. 194, P. 7 n2. At that time, the Court rejected that argument. *See* ECF No. 329, p. 9. In reraising the argument on summary judgment, the RNC points to a decision from the United States Court of Appeals for the Sixth Circuit in support of their position but presents no other argument. *See Ne.*

---

the statute but not in others is not indicative of their intention "to impose a racial motive qualifier uniformly across § 10101." *Thurston*, 2023 WL 6446015, at *16. Given this, the Court will not read one into § 10101(a)(2)(B). *Accord, id.* The Court rejects Lancaster and Berks Counties' argument in this regard.

ADD.51

*Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016).  They contend that because the Materiality Provision provides for enforcement by the United States Attorney General, Congress must not have intended to permit actions brought by private individuals.  *See* ECF No. 271, p. 11; *see also* 52 U.S.C. § 10101(c).  The Plaintiffs disagree, arguing that an implied right of action exists and that the rights provided for in the Materiality Provision are enforceable through 42 U.S.C. § 1983.  *See* ECF No. 313, pp. 14-17.

The statute itself does not expressly create a private right action.  It states only that "the Attorney General may institute … a civil action" if "any person has engaged in … any act or practice which would deprive any other person of right or privilege secured by" the Materiality Provision.  *See* 52 U.S.C. § 10101(c). Although there appears to be a circuit split on this question, this Court sides with the conclusion that the Materiality Provision includes an implied private right of action.  *Compare Schwier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003) *with Ne. Ohio Coal. for the Homeless*, 837 F.3d at 630.

When assessing whether private plaintiffs may enforce a federal statute without an express cause of action, courts "must first determine whether Congress intended to create a federal right."  *Gonzaga v. Doe*, 536 U.S. 273, 283 (2002).  *See also Health & Hospital Corp. of Marion Cty. v. Talevski*, 599 U.S. 166, 176 (2023) ("[W]e have crafted a test for determining whether a particular federal law actually secures rights for § 1983 purposes" and citing *Gonzaga*).  "[A]n implied right of action exists if 'a statute … manifests Congress' intent to create (1) a personal right, and (2) a private remedy."  *Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004).  Initially, the Court must "analyze the statute's text and structure to determine whether it contains 'rights -creating' language.  [The Court] may also look to the legislative history and other indicia of legislative

ADD.52

intent." *Bakos v. Am. Airlines, Inc.*, 748 Fed. Appx. 468, 473-74 (3d Cir. Aug. 30, 2018) (internal quotation marks and citations omitted). *See also Alexander v. Sandoval*, 532 U.S. 275, 286-89 (2001) (advising that whether a statute creates an implied private right of action depends on Congress' intent, which must be determined by first looking to the statutory text). "When 'rights or duty-creating language' is not explicitly included in a statute, a court will rarely imply congressional intent to create a private right of action." *Spencer Bank, S.LA. v. Seidman*, 309 Fed. Appx. 546, 549 (3d Cir. 2009) (quoting *Gonzaga*, 536 U.S. at 284 n.3 (2002)).

Courts look to three factors when determining whether statutory text contains rights-creating language: "(1) the statutory provision must benefit the plaintiffs with a right unambiguously conferred by Congress; (2) the right cannot be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the States." *Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)).

Here, the Materiality Provision expressly provides that "No person acting under color of state law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election. *See* 52 U.S.C. § 10101(a)(2)(B). This language "clearly imparts an individual entitlement with an unmistakable focus on the benefitted class;" namely, the right of voters to vote, unimpeded by unnecessary and/or immaterial requirements. *Grammar v. John J. Kane Reg'l Ctrs.*, 570 F.3d 520, 526 (3d Cir. 2009) (quoting *Sabree v. Richman*, 367 F.3d 180, 187 (3d Cir. 2004)). Moreover, the provision's language is "clearly analogous to the right-creating language cited by the Supreme Court in *Gonzaga* … the

ADD.53

subject of the sentence is the person acting under color of state law, but the focus of the text is nonetheless the protection of each individual's right to vote." *Schwier*, 304 F.3d at 1296.

Second, this right is not vague or amorphous such that it strains judicial competence. The provision protects a citizen's right to vote by forbidding a state actor from disqualifying a voter because of their failure to provide or error in providing some unnecessary information on a voting application or ballot. *See id.*, at 1297. And third, the language of the provision is mandatory as opposed to discretionary or precatory: "no person acting under color of state law *shall … deny* the right of any individual to vote …." 52 U.S.C. § 10101(a)(2)(B). This analysis leads to the conclusion that an implied right of action exists within the Materiality Provision of the Civil Rights Act. *Accord Schwier*, 304 F.3d at 1294 (holding longstanding private right of action to enforce voting rights survived amendment adding enforcement by the Attorney General); *League of Women Voters*, 2023 WL 6446015, at *16; *Vote.org v. Georgia State Election Bd.*, 2023 WL 2432011, at *6 (N.D. Ga. Mar. 9, 2023).

b. Enforcement through § 1983

Apart from an implied private right of action, the Plaintiffs may also enforce the Materiality Provision via an action brought under 42 U.S.C. § 1983. Where a statute is found to secure a federal right, that right "is presumptively enforceable through § 1983." *Gonzaga*, 536 U.S. at 283-84. This presumption is not easily overcome, and the Defendants have failed to do so here. *See Livadas v. Bradshaw*, 512 U.S. 107, 133 (1993). Their argument is that because the Materiality Provision only authorizes suits "by the Attorney General," Congress cannot have intended to permit such actions to be brought under § 1983. *See* ECF No. 271, p. 11. But the existence of a public remedy available to the Attorney General does not preclude a private action to enforce the statute under § 1983. *See Schwier*, 340 F.3d at 1295-97. *See also Allen v. State*

54

ADD.54

*Bd. of Educ.*, 393 U.S. 544, 556 (1969) (holding that the goals of the Civil Rights Act were more likely to be realized if private citizens were not "required to depend solely on litigation instituted at the discretion of the Attorney General").

When previously presented with this same issue, the Court of Appeals for the Third Circuit agreed and held that the Materiality Provision imparts a "personal right of action" through § 1983 because it "places all citizens qualified to vote at the center of its import and provides that they shall be entitled and allowed to vote."[32] *Migliori v. Cohen*, 36 F.4th 153, 159 (3d Cir. 2022) (quotation and citation omitted), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, ___ U.S. ___, 143 S. Ct. 297 (2022). There, the Court of Appeals ruled that the inclusion of a right of action for the United States, by way of the Attorney General, does not preclude a right of action for private plaintiffs through § 1983. The Court noted that the Attorney General's enforcement authority is not made exclusive nor does the Materiality Provision include an "express provision" limiting situations where private actions may be authorized. 36 F.4th at 160-161. So, this Court concludes that private plaintiffs may enforce the Materiality Provision through an action brought under § 1983.

### 2. The Court of Appeals' decision in *Migliori*.

The discussion above invokes the Court of Appeals' decision in *Migliori,* which was later vacated as moot by the Supreme Court. The RNC questions the value of that decision and argues that this Court cannot consider *Migliori* because it lacks precedential effect. *See* ECF No. 271, p. 22. The RNC contends that the Court of Appeals' decision is "untested" and "erased" because

---

[32] The Court of Appeals did not decide whether Congress intended to create the implied right of action discussed in Part 1(a) above. *See Migliori*, 36 F.4th at 159.

ADD.55

the Supreme Court vacated it on mootness grounds and thus it cannot be considered in any

way.[33]  *Id*.  Curiously, Lancaster and Berks Counties cite to the District Court's opinion in

*Migliori*, not the appellate decision, perhaps believing that because the Supreme Court vacated

the Court of Appeals' decision, only the District Court's decision remains good law.  *See, e.g.*,

ECF No. 267, pp. 12-14 (citing *Migliori v. Lehigh Cnty. Bd. of Elections*, 2022 WL 802159

(E.D. Pa. Mar. 16, 2022)).  For their part, the Plaintiffs contend that the Court of Appeals'

decision remains "persuasive authority" despite its vacatur.  ECF No. 311, p. 14, n.6 (citing

*Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993)).

     The Supreme Court's decision to vacate the Court of Appeals' decision in *Migliori* was

not unusual.  It is "established practice" for the Supreme Court to vacate and direct dismissal of a

civil case "which has become moot while on its way here or pending our decision on the merits."

*See* Wright and Miller, § 3533.10.3 Other Mootness on Appeal, 13C *Fed. Prac. & Proc. Juris*. §

3533.10.3 (3d ed.) (quoting *United States v. Munsingwear, Inc*., 340 U.S. 36, 39 (1950)).  *See*

*also Democratic Nat. Comm. v. Republican Nat. Comm.*, 673 F.3d 192, 219 n.27 (3d Cir. 2012)

(citing *Munsingwear*).  That is what happened in *Migliori*—the case became moot while the

petition for certiorari was pending. *See* Supreme Court Docket No. 22-30.  The Supreme Court

---

[33] The RNC's argument that the Court of Appeals' *Migliori* decision has been "erased" is
somewhat disingenuous in this technological age. *Migliori*, and the Court of Appeals' reasoning,
remains in the public domain, easily accessed through legal research sites or by a rudimentary
Internet search.  Indeed, courts have concluded that because a decision was "[publicly] available
through Westlaw and Lexis," it has use to "future litigants as persuasive authority."  *Nease v.
State Farm Mut. Auto. Ins*., 2014 WL 6626430, at *2 (E.D. Okla. Nov. 21, 2014) (citing *Summit
Fin. Resources LLP v. Kathy's General Store, Inc*., 2011 WL 3666607, at *2 (D. Kan. Aug. 27,
2011)).

ADD.56

ultimately granted the petition, vacated the Court of Appeals' judgment, and remanded with instructions to dismiss. *See id.*

*Migliori* involved a similar challenge to the application of the Date Requirement arising out of a 2021 judicial election in Lehigh County, Pennsylvania. There, two hundred fifty-seven (257) out of approximately twenty-two thousand (22,000) mail-in or absentee ballots were not counted by the Lehigh County Board of Elections because they lacked a handwritten date on the outer envelope. When the results were tabulated, the candidates for county Common Pleas Court judge were separated by a mere seventy-four (74) votes. Litigation in the state courts ensued. Following conclusion of that litigation, disenfranchised voters—including Migliori—sued the Lehigh County Board in federal court arguing that the county board's decision to not count the disputed ballots violated their rights under the Materiality Provision and the First and Fourteenth Amendments. Ritter and Cohen, the candidates for the contested judicial seat, intervened. Cross motions for summary judgment followed and the district court granted summary judgment in favor of Defendants on both claims reasoning that the disenfranchised voters lacked capacity to bring suit under the Materiality Provision and that the Date Requirement did not create an undue burden on the voters' constitutional rights. *See Migliori v. Lehigh County Bd. of Elections*, 2022 WL 802159 (E.D. Pa. Mar. 16, 2022).

On appeal, the Third Circuit held that the Lehigh County Board's application of the dating provisions to the qualified voters' ballots violated the Materiality Provision: "[B]ecause their omissions of the date on their outside envelopes is immaterial to determining their qualifications, [the Lehigh County Board] must count their ballots. Otherwise, [the Lehigh County Board] will violate the Materiality Provision by denying Voters their right to vote based

ADD.57

on an omission immaterial to determining their qualifications to vote." 36 F.4th at 164.  In its

remand, the Circuit directed the district court to order the undated ballots be counted.  *Id*.

Immediately thereafter, candidate David Ritter asked the United States Supreme Court to

stay the Circuit's order that the misdated ballots be counted.  Justice Samuel Alito granted the

stay, pending the further review of all the Justices.  *See Ritter v. Migliori*, 2022 WL 1743146

(May 31, 2022).  Several days later, the full Court denied a stay and vacated Justice Alito's prior

order.  *Ritter v. Migliori*, ___ U.S. ___, 142 S. Ct. 1824 (June 9, 2022).  After the denial of the

stay, the Lehigh County Board began to count the disputed ballots.  Candidate Zachary Cohen

won election by five votes, overcoming a seventy-one-vote lead initially held by his opponent,

Ritter.  Ritter did not seek a recount nor challenge the election certification but instead conceded

the election.  *See* Rudy Miller, "5 Vote Lead will hold up Lehigh County Judges races as

opponent concedes," Lehigh Valley Live.com (June 21, 2022),

http://www.Lehighvalleylive.com/news/2022/06/5-vote-lead-will-hold-up-lehigh-county-judges-race-as-opponent-concedes.  After this concession, the Supreme Court granted certiorari, vacated

the Court of Appeals decision, and remanded with instructions to dismiss the case as moot.  *See*

*Ritter v. Migliori*, ___ U.S.___, 143 S. Ct. 297 (Oct. 11, 2022). The Third Circuit did so by Order

dated November 16, 2022.  *See Migliori v. Cohen*, 53 F.4th 285 (3d Cir. Nov. 16, 2022).

Courts typically consider decisions which were vacated as moot by the Supreme Court to

lack precedential value.  *See id*. (citing *Bennett v. West Texas State Univ.*, 799 F.2d 155, 159 n.3

(5th Cir. 1986))  But some courts have viewed decisions rendered before a case is mooted to

have as much precedential value as any other opinion in a "living case, even though [the

decision] may not be protected as 'stare decisis' in the sense that it is binding in later cases."  *See*

ADD.58

*id.* (citing *Martinez v. Winner*, 800 F.3d 230, 231 (10th Cir. 1986)).  Likewise, here, the Court of Appeals' decision, although vacated, may yet be persuasive and/or instructive.

At the time it decided *Migliori*, the Court of Appeals had before it a live case and controversy.  The case was fully briefed (including submission from several *amici curiae*) and oral argument was heard.  *See* Court of Appeals Docket Number 22-1499, ECF Nos. 16, 32, 49, 51, 55, 59, and 78 (oral argument heard on May 18, 2022).  The opinion was then circulated to the active judges of the Court of Appeals for their review, although the case was not taken up *en banc*.  *See* Court of Appeals Internal Operating Procedure 5.5.4; *see also Transguard Ins. Co. of Am., Inc., v. Hinchey*, 464 F. Supp.2d 425, 435 n.6 (M.D. Pa. 2006).  The Third Circuit's decision was thus "forged and tested in the same crucible as all opinions."  Wright and Miller, § 3533.10.3 Other Mootness on Appeal, 13C *Fed. Prac. & Proc. Juris.* § 3533.10.3 (3d ed.).  Although the opinion itself may now lack precedential value, *see, e.g., Kania v. Archdiocese of Phila.*, 14 F.Supp.2d 730, 736 (E.D. Pa. 1998), the validity of the Court of Appeals' reasoning was unaffected by the cases' subsequent mootness.  *See, e.g., Garcia v. Spun Steak Co*., 13 F.3d 296, 301 (9th Cir. 1993) (Reinhardt, J., *dissenting*).  This Court considers the reasoning and analysis set out in *Migliori* to be persuasive, if not precedential.  *See, e.g., United States v. Barnes*, 2021 WL 6051561, at *15, n.21 (W.D. Pa. Dec. 20, 2021); *Keitt v. Finley*, 2021 WL 5826196, at *3 (M.D. Pa. Dec. 8, 2021).  *See also Drinker v. Colonial Sch. Dist*. 78 F.3d 859, 864 n.12 (3d Cir. 1996) (finding an unpublished, non-precedential opinion persuasive as "a paradigm of the legal analysis" to be followed in a factually similar case).

Despite negating the import and impact of the Court of Appeal's decision in *Migliori,* the RNC gives substantial weight to Supreme Court Justice Samuel Alito's memorandum dissenting from the denial of an application for a stay while a petition for writ of certiorari was pending in

59

ADD.59

the Supreme Court.[34]  *See* ECF No. 271, 304, *passim*. But as was the case with the Court of

Appeals decision, the Justice's dissent from the denial of a stay also lacks precedential authority.

*See* 18 MOORE'S FEDERAL PRACTICE § 134.05[2] (3d ed. 2011).  *See also* Trevor N.

McFadden and Vetan Kapoor, The Precedential Effects of the Supreme Court's Emergency

Stays, 44 *Harvard Journal of Law & Public Policy* 827, 882 (Summer 2021) ("…decisions to

deny a stay have no precedential value."); Bryan Garner, et al., *Law of Judicial Precedent* 219

(2016) ("[A] refusal to hear a case says nothing about the merits.  It says only that, for any

number of possible reasons, the Court did not want to review the lower court ruling: The variety

of considerations that underlie denial of the writ counsels against according denials of certiorari

any precedential value.") (internal citation omitted).

　　　　Nonetheless, as with the *Migliori* decision, Justice Alito's dissenting memorandum does

have some persuasive value.  That value, however, is not as weighty as the Court of Appeals

decision in *Migliori* because the Justice's memorandum was issued preliminarily before briefing

and/or argument were concluded and is not a decision by the entire Supreme Court.

Furthermore, although his dissent is a signal of his initial take on the issues presented, he was not

bound by his preliminary view of the case, which was based solely on an application for a stay;

in other words, he may have changed his position upon further briefing or argument.[35]  So then,

Justice Alito's dissenting statement from the denial of a stay differs from the Court of Appeals

decision, which was briefed, argued, and reviewed by the active members of that Court before its

---

[34] Justice Thomas and Justice Gorsuch joined Justice Alito's memorandum opinion.  Presumably, Justice Alito's views reflect theirs as well.  The remaining members of the Supreme Court did not explain their reasons for denying a stay.

[35] Justice Alito acknowledged as much himself: "As is almost always the case when we decide whether to grant emergency relief, I do not rule out the possibility that further briefing and argument might convince me that my current view is unfounded."  *Ritter*, 142 S.Ct. at 1824.

ADD.60

publication.  This Court will, therefore, accord limited persuasive value to the Justice's

dissenting memorandum.

>    3. Plaintiffs' motion for summary judgment: the Materiality Provision claim

With the important preliminary concerns out of the way, the Court now turns to the actual

merits of the competing motions for summary judgment.  As noted previously, the Civil Rights

Act's Materiality Provision provides that

> [n]o person acting under color of law shall ... deny the right of any
> individual to vote in any election because of an error or omission
> on any record or paper relating to any application, registration, or
> other act requisite to voting, if such error or omission is not
> material in determining whether such individual is qualified under
> State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).  "[T]he word 'vote' includes all action necessary to make a vote

effective."  *Id.* §§ 10101(a)(2)(3)(A); 10101(e).  Here, the term "vote" encompasses the

completion of a Pennsylvania mail-in ballot.

The Plaintiffs assert that thousands of Pennsylvania voters were disenfranchised by a

paperwork mistake that is immaterial to the voters' qualifications, the timeliness of their ballot,

or the validity of their votes.  *See* ECF No. 313, *generally*.  The RNC argues that the Materiality

Provision is inapplicable here and alternatively, that Plaintiffs' claim is based on a counter-

textual reading of the statute. *See* ECF No.  271, 304, *generally*. [36]

---

[36] Other arguments have been raised by the parties, which to this Court, require less thorough
consideration, and divert attention from the main issue of whether the mandatory application of
the Date Requirement violates the Materiality Provision. They are dispensed with here
summarily. The Lancaster and Berks County Boards argue that the Plaintiffs have failed to
establish *Monell* liability.  In *Monell*, the Supreme Court held that a municipal entity can be held
liable for the constitutional violations of its employees under 42 U.S.C. § 1983.  *See Monell v.
Dep't of Soc. Servs. of City of New York*, 436 U.S. 656 (1978).  Implicit in any *Monell* claim is
the existence of an underlying constitutional violation.  *Onyiah v. City of Phila.*, 2023 WL

ADD.61

The question before the Court is whether Pennsylvania's Date Requirement is material to the act of voting. If the error is not material to voting, the requirement of placing a date on the Return Envelope violates the Materiality Provision. *Id.*

a. The Third Circuit's *Migliori* Framework

When presented with the same issue after the Lancaster County Board of Elections refused to count undated mail ballots in the November 2021 election, the Third Circuit summarized the question and the analysis before it: "To answer this query, we must ask whether the [Pennsylvania Date Requirement] is material in determining whether such individual is qualified to vote under Pennsylvania law. [...] [T]he requirement is material if it goes to determining age, citizenship, residency, or current imprisonment for a felony." *Migliori*, 36 F.4th at 162-63. In other words, according to the Circuit, the Date Requirement is immaterial, and therefore violative of federal law, if it does not go to determining age, citizenship, residency, or current imprisonment for a felony.

The evidence shows, and the parties either agree (Plaintiffs, RNC, Secretary Schmidt, the Lancaster County Board and the Berks County Board) or admit (all non-responding county boards)[37], that the county boards of elections did not use the handwritten date on the Return

---

2467863, at *8 (E.D. Pa. Mar. 10, 2023) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Defendants' argument does not apply to the Civil Rights Act claim because *Monell* is limited to constitutional violations and does not apply to violations of federal statutes such as the Civil Rights Act. Berks County makes one argument in addition to those made by Lancaster County: the Date Requirement on the outer envelope holds voters accountable to their declaration that they "have not already voted in this election." ECF No. 309. But, it is the signature which holds the voter accountable, not the date. Whether the voter declaration is signed is a separate matter from whether the declaration is dated correctly, or at all.

[37] Most of the Defendants to this action have not opposed the motions for summary judgment, either by opposition brief or by responsive concise statement. If facts in a properly supported concise statement are not properly opposed, those facts are deemed admitted. *See* Fed.R.Civ.P.

ADD.62

Envelope for any purpose related to determining a voter's age, citizenship, county or duration of residence, or felony status. ECF No. 283 (Plaintiffs), 300 (Secretary), 302 (Lancaster County), 305 (RNC), and 308 (Berks County), at ¶¶ 47-50. Furthermore, the evidence reflects, and these parties agree or admit, that all of the voters whose ballots were set aside in the November 2022 election solely because of a missing or incorrect date on the voter declaration on the outer Return Envelope had previously been determined to be eligible and qualified to vote in the election by their county board of elections before they were sent their mail-in ballot. *Id.* at ¶ 42.

Following *Migliori's* guidance that a requirement is material if it goes to determining age, citizenship, residency, or current imprisonment for a felony, and given the evidence and the parties' agreement that the handwritten date was not used to determine any of those, the Date Requirement is therefore immaterial. Federal law prohibits a state from erecting immaterial roadblocks, such as this, to voting. 52 U.S.C. § 10101(a)(2)(B).

b. Justice Alito's *Ritter* framework

Justice Alito's dissenting memorandum in *Ritter* provides another way to analyze the question at hand. Paraphrasing the statute, he noted five distinct elements to be considered, the satisfaction of which would likely amount to a violation of the Materiality Provision: "(1) the proscribed conduct must be engaged in by a person who is 'acting under color of law'; (2) it must have the effect of 'deny[ing]' an individual 'the right to vote'; (3) this denial must be

---

56(e) ("If a party fails … to properly address another party's assertion of fact as required by Rule 56(c), the court may: … grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); Local Rule 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.").

ADD.63

attributable to 'an error or omission on [a] record or paper'; (4) the 'record' or 'paper' must be 'related to [an] application, registration, or other act requisite to voting'; and (5) the error or omission must not be 'material in determining whether such individual is qualified under State law to vote in such election." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from denial of a stay). For completeness, an analysis under this framework is undertaken as well.

It is not disputed that the Defendants were acting under color of state law when they failed to count the Plaintiffs' ballots. Nor does any party dispute that the error and/or omission here involved a record or paper, *i.e.,* the mail-in ballot, or that a ballot is a record related to an act requisite to voting.[38] This leaves two points of inquiry relevant in this case: does the dating requirement have the effect of denying the Plaintiffs the right to vote, and is that requirement material to the act of voting in the Commonwealth?

### (i) Does the mandatory application of the Date Requirement deny the Plaintiffs their right to vote?

The Materiality Provision prohibits "deny[ing] the right of any individual to vote." 52 U.S.C. § 10101(a)(2)(B). The Defendants argue the application of the Date Requirement does not impinge on the right to vote of any Pennsylvanian because it effects only the "act of voting," not the "right to vote." *See* ECF No. 271, p. 12. According to the Defendants, the Materiality Provision only prohibits immaterial requirements affecting the qualification and registration of a voter; not whether the State puts up any additional requirements when they cast their vote. *Id.*

---

[38] In their brief in support of their cross-motion for summary judgment, the RNC argues that although a mail-in ballot is a "record or paper," completing the declaration printed on the paper ballot is not a record or paper relating to any application, registration, or other act requisite to voting. *See* ECF No. 271, p. 18. But, to cast a mail-in ballot, the voter must write a date on the envelope near the pre-printed verification. This is necessary to complete the act of voting and, thus, implicates the statute. *See* 52 U.S.C. § 10101(a)(2)(B).

ADD.64

So then under this reasoning, a state requirement that prospective voters write the first stanza of the national anthem on their **application** to register to vote would violate the Materiality Provision, but a regulation requiring voters to write that stanza at the **polling place** (or when filling out their mail-in ballot) in order to have their ballot counted would not. This turns the language of the statute on its head.

A distinction between registering or qualifying to vote versus actually voting cannot stand given the text of the statute because the Materiality Provision takes a more expansive view. Pointedly, the Civil Rights Act defines "voting" not only as qualifying or registering to vote but also as "all action necessary to make voting effective including but not limited to … casting a ballot and having such ballot counted and included in the appropriate totals of votes cast." 52 U.S.C. § 10101(a)(3)(A), § 101010(c). According to the text of the statute, declining or refusing to count a qualified citizen's vote based on an immaterial reason is a denial of their right to vote. *See, e.g., Ford v. Tenn. Senate*, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006), *appeal dismissed as moot sub. nom. Ford v. Wilder*, 469 F.3d 500 (6th Cir. 2006). The Court does not disagree with Justice Alito's observation that even after qualifying and registering, a voter "may not be able to cast a vote for any number of reasons." *Ritter*, 124 S. Ct. at 1825. The Defendants call attention to Justice Alito's reasons why a voter may not be able to cast their ballot: they showed up at the polls after Election Day, they failed to sign or use the secrecy envelope on an absentee ballot, they attempted to vote for three candidates for a single office, they sent their mail-in ballot to the wrong address, or went to an incorrect polling location on Election Day. *See* ECF No. 271, p. 13 (citing *Ritter*, 124 S. Ct. at 1825). Although the Court expresses no opinion on Justice Alito's examples here, they are not supportive of the argument that the Date Requirement is immaterial.

65

ADD.65

This is because immaterial rules exist that would prohibit a voter from casting their ballot despite Defendants' refusal to acknowledge this in their argument. If, for example, the voter was required to wear a red t-shirt at the polling place on Election Day and was not permitted to cast a ballot because a green shirt was worn instead (or was permitted to do so, but the ballot was later not counted because the wrong color shirt was worn), that would be an immaterial voting rule which would be barred by the statute. Similarly, the same would be true of a rule which required a mail ballot to include the placement of an "I Voted" sticker on the return envelope for the vote to be counted, for example. This Court counts the Date Requirement to be one of those immaterial rules.

Defendants are concerned as well that "other rules" related to casting a ballot will be put at risk should the Materiality Provision's reach not be limited merely to voter registration and qualification concerns. *See* ECF No. 271, pp. 12-13. That misapprehends the provision's purpose. The Materiality Provision prohibits rules or regulations which add immaterial requirements to the **act of voting**. This must include the actual casting of a vote. The act of voting entails more than qualifying to receive a ballot. The purpose would be lost if after qualifying to vote, a voter's ballot would not be counted by reason of obstacles that the statute was enacted to prohibit in the first place.

And here, there is no dispute that the individual Plaintiffs' votes were not counted. The record demonstrates this immaterial error or omission of a date resulted in rejection of ballots and disenfranchised the Plaintiffs, as well as others across Pennsylvania in the November 2022 election. Indeed, the record evidence reveals that over 7600 mail ballots in the twelve counties were not counted for this reason. *See* ECF No. 277, p. 41 (Allegheny – 1009 ballots), p. 93 (Berks – 782 ballots), p. 131 (Bucks – 357 ballots); ECF No. 278, p. 44 (Lancaster – 232

ballots), p. 56 (Lehigh – 390 ballots), p. 137 (Montgomery – 445 ballots), p. 151 (Northampton – 280 ballots), p. 185 (Philadelphia – 2617 ballots), p. 301 (Warren – 18 ballots), p. 322 (Washington – 66 ballots), p. 361 (Westmoreland – 95 ballots), and p. 434 (York – 1354 ballots).

*(ii) The Materiality of the Date Requirement*

There are many reasons to date a document.  The date a person signed a contract, for example, may indicate that agreement's effective date.  *See, e.g., In re TK Holdings, Inc.*, 2020 WL 3397839, at *5 (Bankr. D. Del. June 18, 2020) (holding that the effective date of a contract is typically the date the parties signed the agreement).  And, of course, the date a document is signed may be relevant in fixing an event in time or history when considering whether a claim is barred by a statute of limitations or whether a habeas petition has been timely filed.  *See, e.g., Bray v. Clarke,* 2019 WL 7504860, at *2 n.1 (E.D. Va. Nov. 19, 2019). Dates may also be wholly irrelevant, as in this case. The requirement at issue here is irrelevant in determining when the voter signed their declaration.  In fact, there is no indication on the ballot that the voter's declaration and the date must be the same day.  The ballot only states that the voter place "today's date" on the envelope.  *See* Figure 1, *supra*. No further explanation or instruction is provided.  The requirement of "today's date" is untethered from any other requirement on the ballot.  A voter could fill out a ballot on October 19th, then sign the voter declaration on October 20th, date the declaration on October 30th ("today's date") and mail the ballot on November 2nd.[39]

---

[39] The RNC claims that the Date Requirement has been useful in detecting fraud in at least one criminal case. The RNC points to the case of *Commonwealth v. Mihaliak* in which a daughter completed and returned the mail ballot of her deceased mother in the 2022 primary. ECF No. 271, p. 9. The RNC misses the mark in two important ways. First, record evidence contradicts the RNC's statement as the county board's own Rule 30(b)(6) designee testified that the fraudulent ballot was first detected by way of the SURE system and Department of Health records, rather than by using the date on the return envelope. ECF No.  315, p. 48-55. Second,

The important date for casting the ballot is the date the ballot is received. Here, the date on the outside envelope was not used by any of the county boards to determine when a voter's mail ballot was received in the November 2022 election. ECF No. 283, at ¶¶ 51-52. Instead, the counties time-stamped ballots when they were returned. *Id*. The lack of a date next to the voter declaration on the return envelope was not material to the determination of when the ballot was received. The counties' use of the Commonwealth's SURE system also renders the Date Requirement irrelevant in determining when the ballot was received. The outer return envelope of each mail ballot has a unique barcode associated with the individual voter. The Election Code mandates that county boards track the date that every mail ballot is received by the board (*see* 25 P.S. § § 3146.9(b)(5), 3150.17(b)(5)) and a voter-specific barcode is used to do that. When the ballot is received, the county boards of elections stamp or otherwise mark the return envelope with the date of receipt to confirm its timeliness and then log it into the SURE system. *Id*. at ¶ 12. Irrespective of any date written on the outer Return Envelope's voter declaration, if a county board received and date-stamped a 2022 general election mail ballot before 8:00 p.m. on Election Day, the ballot was deemed timely received under the Commonwealth's Election Code. On the other hand, if the county board received a mail ballot after 8:00 p.m. on Election Day, the ballot was not timely and was not counted, despite the date placed on the Return Envelope. *Id*. at ¶ ¶ 10, 54, 56. *See also* 25 P.S. § § 3146.6(c), 3150.16(c). Whether a mail ballot is timely, and therefore counted, is not determined by the date indicated by the voter on the outer return envelope, but instead by the time stamp and the SURE system scan indicating the date of its receipt by the county board.

---

and more importantly, any factual dispute regarding the initial detection of a fraudulent ballot in the *Mihaliak* forgery prosecution is irrelevant to whether the mandatory application of the Date Requirement to reject ballots violates the Plaintiffs' statutory rights.

ADD.68

Nor does the requirement of dating the outer return envelope have anything to do with determining a voter's qualifications to vote. A qualified voter in Pennsylvania must be of a particular age, must reside in the voting district where they cast their ballot for a certain duration, and must not have been incarcerated based on a felony conviction within the last five years. *See* ECF No. 283, ¶ 4 (citing 25 Pa. C.S. §§ 1301, 1327(b)). To receive a ballot, those wishing to vote by mail must additionally provide proof of identification (such as a Pennsylvania driver's license number). The undisputed evidence shows that the twelve remaining county boards of elections did not use the handwritten date on the return envelope for any purpose related to determining a voter's age, citizenship, county or duration of residence, or felony status, and each of the twelve county boards has acknowledged as much. *See* ECF Nos. 277, p. 34 (Allegheny County), p. 87 (Berks County), p. 128 (Bucks County); 279, pp. 81-83 (Lancaster County); 278 p. 52 (Lehigh County), 131 (Montgomery County), p. 144 (Northampton County), pp. 178-179 (Philadelphia County), p. 297 (Warren County), p. 309 (Washington County), p. 353 (Westmoreland County), p. 381 (York).[40] Furthermore, it is not disputed by any party that all voters whose ballots were set aside in the November 2022 election solely because of a missing or incorrect date on the voter declaration on the Return Envelope had previously been determined to be eligible and qualified to vote in the election by their county board of elections. *Id*. at ¶ 42. It follows that because the date on the Return Envelope was not used to determine any of those qualifications, it is immaterial.

---

[40] The Washington County Board has limited its admission to the 2022 Election. The Westmoreland County Board limited its admission to the 2021 and 2022 Elections, but Greg McCloskey, its deponent, did not limit his deposition testimony to those to elections.

Further, the record is replete with evidence that the county boards' application of the *Ball* order in the November 2022 general election created inconsistencies across the Commonwealth in the way "correctly dated" and "incorrectly dated" ballots were rejected or counted by different counties. This further supports the Court's conclusion that the Date Requirement is not material. Concerning the election at issue here, the Supreme Court of Pennsylvania set a specific date range (September 19th through November 8th) in which a ballot would be considered correctly dated.[41] *See* ECF No. 281, p. 31-32 (*Ball v. Chapman* supplemental order). This date range did not account for differences in ballot readiness across the counties. Counties begin sending ballots to voters on different dates. In the November 2022 election, Elk County first sent ballot packages to voters on September 16, 2022, but the Elk County Board's strict compliance with the *Ball* order would have made a returned Elk County ballot dated September 17, 2022 "incorrect."

Variations of these scenarios played out in counties across the Commonwealth. The record reveals that some counties precisely followed the *Ball* date range even where the date on the return envelope was an impossibility because it predated the county's mailing of ballot packages to voters. For example, Berks County counted ballots if the (incorrect) date on the Return Envelope was September 20, 2022, even though the county did not begin sending ballot packages to voters until seventeen days later on October 7, 2022. *Id*. at ¶ 92. Lancaster County counted ballots if the (incorrect) date on the Return Envelope was September 20, 2022, even though it did not begin sending ballot packages to voters until September 26, 2022. *Id*. at ¶ 93.[42]

---

[41] The Supreme Court's November 1, 2022 order directed that undated and incorrectly dated ballots not be counted. 284 A.3d 1189. And, four days later, the Supreme Court issued its supplemental order defining "incorrectly dated" using the date range. *See* ECF No. 281, p.31-2.
[42] Other counties indicated that they would not strictly comply with the Supreme Court's *Ball* date range: Westmoreland County did not begin sending mail ballot packages to voters until September 30, 2022. Thus, it would not have counted mail ballots that were dated within the

ADD.70

Simple voter error and partial omissions related to the date declaration also resulted in rejection of mail ballots that were timely received according to their entry into the SURE system. At least 605 **timely-received** ballots were set aside because the declaration date included an incorrect month that showed the voter signed their declaration prior to September, and another 427 **timely-received** ballots were set aside because the date included an incorrect month showing the voter signed their ballot after November 8, 2022. *Id*. at ¶¶ 74-75. These ballots were timely received based on their entry into the SURE system, yet because of an obvious error by the voter in relation to the date, these ballots were not counted. This shows the irrelevance of any date written by the voter on the outer envelope.

Moreover, at least 530 **timely-received** ballots were set aside because the handwritten date included a year prior to 2022. *Id*. at ¶ 66. Such a date is a factual impossibility given that the mail ballot package would have been mailed to the voter in 2022. *Id*. at ¶ 65. Of those 530 rejected mail ballots, at least 474 ballots had a month and day within the *Ball* date range, but included a past year and at least 50 ballots had the voter's year of birth instead of the day the voter signed the declaration. *Id*. at ¶¶ 67-68. Conversely, and contrary to the *Ball* order, the Montgomery County Board decided to count ballots if they determined the voter had written their date of birth on the voter declaration. *Id*. at ¶ 69. And at least 228 **timely-received** ballots were set aside due to a date that included a future year, but a month and day within the *Ball* date range. *Id*. at ¶ 70.

---

*Ball* date range if the handwritten date on the Return Envelope was between September 19 and September 29, 2022. *Id*. at ¶ 90.

ADD.71

Likewise, across the Commonwealth other **timely-received** ballots were set aside because the voter declaration date omitted the year[43] (*id.* at ¶ 71); omitted the month (*id.* at ¶ 76); omitted the day[44] (*id.* at ¶ 80); included a day that does not exist[45] (*id.* at ¶ 77); put the date elsewhere on the envelope (*id.* at ¶ 83); or included a cross-out to correct an erroneous date (*id.* at ¶ 97). Additional inconsistencies arose out of county boards' differing utilization of standard dating conventions. Eighteen county boards of elections determined that the date written on the voter declaration was within the "correct" date range based strictly on the American dating convention of writing the month, day, and year (MM/DD/YYYY) in that order. These county boards set aside ballots if the voter used a European dating convention of day, month, year (DD/MM/YYY). *Id.* at ¶ 86. At the same time, at least thirty-one other counties tried to account for both the American and European dating conventions in determining whether the Return Envelope was dated correctly. *Id.* at ¶ 87. Ballots were set aside for having incorrect dates which, if construed using the European[46] dating convention, would have been within the *Ball* date range. *Id.* at ¶ 88.

---

[43] Again, contrary to the *Ball* order, at least three county boards of elections – Blair, Fayette, and Montgomery – decided to count ballots with partial dates if the "information in the date line was sufficient to determine that the ballot was returned within the appropriate date range." *Id.* at ¶ 72.

[44] Conversely, Bucks and Fayette counties counted mail ballots "dated October 2022 with no day listed," because the board was "able to ascertain what day the ballot was mailed and what day it was received," and the "entire month of October is included in the date range" set forth in the *Ball* order. *Id.* at ¶ 81.

[45] However, Luzerne County did just the opposite by counting a ballot dated 09/31/2022, despite September only having 30 days. *Id.* at ¶ 78.

[46] The parties use the terms European dating convention and International dating convention interchangeably. However, the terms reflect different dating conventions and should not be confused for each other. European dating convention is day, month, year (DD/MM/YYYY). International dating convention, defined by ISO 8601, is year, month, day (YYYY/MM/DD). *See* http://www.iso.org/iso-8601-date-and-time-format.html. Despite the parties' conflation of

ADD.72

For all of the foregoing reasons, the application of the Date Requirement violates the federal Materiality Provision. Accordingly, the ballots of the individual Plaintiffs should be counted because their statutory rights have been violated.

### D.    The Equal Protection Claim[47]

The individual Plaintiffs raise an equal protection claim against Secretary Schmidt. They allege that the Commonwealth applies the envelope Date Requirement to domestic mail voters but not to overseas and military voters.  *See, e.g.*, ECF No. 121, p. 36-7.  For those ballots, any mistake or omission in the completion of the ballot does not invalidate the ballots "as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote." ECF No. 121, at ¶ 86; 25 Pa. C.S. § 3515(a).  Disenfranchising qualified domestic voters while simultaneously counting the ballots of non-domestic voters for the same error or omission on the voter declaration serves no legitimate or compelling governmental interest. *Id.* at ¶ 87.  Of the remaining Defendant counties, none refused to count a military-overseas ballot due to a missing or incorrect date on the voter declaration. The Court notes the following, based on Plaintiffs' responses to the RNC's concise statement:

---

the terms, the parties' meaning remains clear to this Court because the parties use examples after every mention of dating convention. No party is referring to the International dating convention in their briefing materials. This Court will use the term European dating convention to describe a date that is written as day, month, year (DD/MM/YYYY).

[47] The Plaintiffs' equal protection challenge is not extensively briefed by the parties. Indeed, several filers do not address this claim, instead limiting their briefing to the merits of the Materiality Provision challenge.  *See* ECF No. 229 (DOJ); ECF No. 328 (LDF); ECF No. 333 (RITE); ECF No. 294 (Lancaster County); ECF No. 297 (Westmoreland County); ECF No. 309 (Berks County).

| County | Number of Military/Overseas Ballots Received | Number of Military/Overseas Ballots Counted |
|---|---|---|
| Allegheny | 151 | 151 (none were undated) ECF No. 315, ¶ 58 |
| Berks | 146 | Does not state the number of military/overseas ballots not counted. *Id.*, ¶ 61 |
| Bucks | 466 | 466 (11 military/overseas ballots were undated or missing dates but were counted anyway). *Id.*, ¶ 64 |
| Lancaster | 188 | 188 (none were undated) |
| Lehigh | 101 | 101 (did not review military/overseas ballots for date requirement) *Id.*, ¶ 93 |
| Montgomery | 914 | 914 (none were undated) *Id.*, ¶ 100 |
| Northampton | 91 | Does not state the number of military/overseas ballots not counted. *Id.*, ¶ 102 |
| Philadelphia | 1014 | 1014 (13 of which were undated but counted anyway) *Id.*, ¶ 105 |
| Warren | 8 | 8 (none were undated) *Id.*, ¶ 115 |
| Washington | 51 | 51 (none were "required to be set aside") *Id.*, ¶ 116 |
| Westmoreland | 109 | 109 (none were undated) *Id.*, ¶ 118 |
| York | 185 | Does not say how many of these were counted; only that it set aside 1354 undated ballots out of 37,296 total mail ballots received *Id.*, ¶ 120 |

Despite this evidence, however, a decision on the Plaintiffs' equal protection claim would amount to unnecessary constitutional adjudication. *See, e.g., New Jersey Payphone Ass'n, Inc. v. Town of W. New York*, 299 F.3d 235, 239 n.2 (3d Cir. 2002). "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on question of constitutionality … unless such adjudication is unavoidable."

ADD.74

*Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see also Hagans v. Lavine*, 415 U.S. 528, 547 (1974) ("[A] federal court should not decide federal constitutional questions where a dispositive non-constitutional ground is available.").  Federal courts "have been instructed as a matter of established federal jurisdiction, that a court faced with both constitutional and non-constitutional claims must address the non-constitutional claims first, if doing so will enable the court to avoid a constitutional confrontation." *Erie Telecommunications, Inc. v. City of Erie, Pa.,* 853 F.2d 1084, 1092 (3d Cir. 1988). *See also Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625, 631–32 (7th Cir. ) *certified question answered,* 217 N.E.3d 517 (Ind. 2023) (cleaned up) ("When we are faced with *both* statutory *and* constitutional questions, we must prioritize resolving the statutory issues if doing so would prevent us from engaging in unnecessary constitutional analysis."); *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 430 (3d Cir. 2020) ("[W]e must avoid deciding a constitutional question if the case may be disposed of on some other basis.") (cleaned up); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 496 (3d Cir. 1980) ("[W]e are constrained to avoid passing upon a constitutional question if the case might be disposed of on statutory grounds and we should not reach to decide a constitutional issue, however intriguing.") (cleaned up).  This is prudential principle of judicial restraint.  *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding*, 2020 WL 2949742, at *13 (D. Del. Mar. 25, 2020) (citing *Hagans*, 415 U.S. at 547), *report and recommendation adopted in part sub nom. In re Storag Etzel GmbH*, 2020 WL 2915781 (D. Del. June 3, 2020). *See also In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig*., 924 F.3d 662, 680 (3d Cir. 2019) ("Although the constitutional issue is an interesting one, we again decline to define the parameters of the First Amendment right in a case where the common law right affords sufficient protection.").

ADD.75

Here, the Court has concluded that the Commonwealth's mandatory application of its Date Requirement violates the Materiality Provision of the Civil Rights Act. Since the Court is confident that the Plaintiffs' motion for summary judgment should be granted on that basis, there is no need to reach their constitutional claim. *See Jean v. Nelson*, 472 U.S. 846, 854 (1985) (fundamental rules of judicial restraint require that federal courts "must consider non-constitutional grounds for decision" before "reaching any constitutional questions") (citation omitted). In light of this, the Plaintiffs' equal protection claim will be dismissed.

E.      Conclusion

For all of the reasons stated above, the Court concludes that the Commonwealth's mandatory application of the Date Requirement is immaterial, violating the Materiality Provision of the Civil Rights Act.[48] The Plaintiffs have demonstrated the absence of a genuine dispute as to any material fact and they are entitled to judgment as a matter of law on that claim. For the reasons stated above, their motion for summary judgment based on a claimed equal protection violation, however, will be dismissed.

F.      RNC's motion for summary judgment: the Materiality Provision Claim

"When confronted with cross-motions for summary judgment ... 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Hussein v. UPMC Mercy Hospital*, 2011 WL 13751, at *2 (W.D. Pa. Jan. 4, 2011) (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 Fed. Appx. 266, 270 (3d Cir. 2006)). "If review of [the]

---

[48] Where "compliance with both state and federal law is impossible," federal law "must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). *See also United States v. Rice*, 2023 WL 4086278. At *2 (W.D. Pa. Jun. 20, 2023) ("The Supreme Court of the United States has explained: 'The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law will prevail.' *Gonzales* [*v. Raich*], 545 U.S. 1, 29 (2005).").

ADD.76

cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor

of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing *Iberia*

*Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)). *See also Bancorp Bank v. Eckell,*

*Sparks, Levy, Auerbach, Monte, Rainer & Sloane, P.C.*, 2016 WL 9776074, at *2 n.1 (E.D. Pa.

Oct. 5, 2016)).

      The RNC argues it is entitled to summary judgment because 1) the Plaintiffs have no

private right of action; 2) Pennsylvania's Date Requirement does not violate federal law; 3)

specifically, the Date Requirement does not violate the Materiality Provision; and 4) the Date

Requirement does not violate the Equal Protection Clause. *See* ECF No 271, *generally*. As

noted above, the Court has rejected these arguments, excepting the equal protection claim. All of

these arguments have been addressed fully in this opinion.

VIII.   Conclusion

      In summary then, fifty-five counties will be dismissed because Plaintiffs have failed to

establish standing against them. Lancaster and Berks Counties' motion for summary judgment

will be denied since at least one Plaintiff has standing against each county and denied in all other

aspects. The Plaintiffs' motion for summary judgment will be granted on the claim that the

dating requirement violates the Materiality Provision of the Civil Rights Act. Plaintiffs' equal

protection claim will be dismissed.

      The RNC's motion for summary judgment will be denied on the Materiality Provision,

and their claim that the Materiality Provision does not violate equal protection will be dismissed.

      An appropriate order and judgment will be filed separately.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) | Civil Action No.: 1:22-cv-00339 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Susan P. Baxter |
| AL SCHMIDT, *et al.*, | ) ) | |
| Defendants. | ) | |

## DECLARATION OF RICHARD MARINO

Pursuant to 28 U.S.C. § 1746, I, Richard Marino, declare as follows:

1.  I am over the age of 18 and am otherwise competent to testify.

2.  I have personal knowledge of the matters in this declaration.

3.  I am currently the Vice Chairman of the Towamencin Township Board of Supervisors ("Board of Supervisors").

4.  I have been an active member of the Board of Supervisors since 2018 and of the Towamencin Municipal Authority since 2016.

5.  I am a member of the Republican Party of Pennsylvania.

6.  I was the Republican nominee for reelection to the Board of Supervisors in the November 7, 2023 general election.

7.  After all ballots were counted under the rules in effect on election day, I led my Democratic challenger, Kofi Osei, in the vote total by 4 votes.

8.  This Court issued its order two weeks after election day and two weeks after voters had cast their ballots.

9.  Invoking this Court's order, on Monday, November 27, the Montgomery County

1

ADD.78

Board of Elections counted in my race 6 ballots that did not comply with the date requirement.

10.    Including those ballots in the vote total resulted in a tie between Mr. Osei and me.

11.    The Montgomery County Board of Elections convened a casting of lots to choose a winner on November 30, 2023.

12.    The Montgomery County Board of Elections declared Mr. Osei the winner by lot.

13.    In other words, this Court's order issued two weeks after Election Day 2023 changed the apparent outcome of my race.

14.    I intend to exercise my rights to contest that outcome under Pennsylvania law.

15.    My current term of office ends on December 31, 2023. Absent a stay or a change in the apparent outcome caused by the Court's order, Mr. Osei will be sworn into office on January 2, 2024.

16.    Any delay in, or denial of, my taking the office to which Towamencin Township voters elected me under the rules in effect on election day irreparably harms me. Any such delay or denial denies me of the opportunity to serve in office, to participate in official business of the Board of Supervisors, and to advocate, vote for, and implement the policies the voters elected me to support. Any such delay or denial also deprives me of the compensation that I am entitled to receive as a member of the Board of Supervisors. *See* Towamencin Code art. I, § 2-1.

17.    I declare under penalty of perjury that the foregoing is true and correct.

Date: _12-1-2023_          _____
                          Richard Marino

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:22-cv-00339 |
| v. | ) ) | Judge Susan P. Baxter |
| AL SCHMIDT, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF ANGELA ALLEMAN

Pursuant to 28 U.S.C. § 1746, I, Angela Alleman, declare as follows:

1.  I am over the age of 18 and am otherwise competent to testify.

2.  I have personal knowledge of the matters in this declaration.

3.  I am currently the Executive Director of the Republican Party of Pennsylvania (the "RPP").

4.  The RPP is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).

5.  The RPP supports and seeks to uphold free and fair elections for all Pennsylvanians.

6.  The RPP has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections consistently throughout the Commonwealth.

7.  The RPP's members include all registered Republican voters, candidates, and officeholders in Pennsylvania.

8.  The RPP's mission includes supporting Republican candidates for federal, state, and local office in Pennsylvania and preserving and promoting a free and fair electoral

1

ADD.80

environment in which Republican candidates can win election.

9.      Accordingly, the RPP, on behalf of itself and its members, including its voters, nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

10.     Additionally, the RPP devotes substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania.

11.     RPP has statutory rights to appoint both poll watchers to observe casting, counting, and canvassing of ballots at the polling place, 25 P.S. § 2687(a), and an "authorized representative" to "remain in the room" at the county board of elections and observe the pre-canvass and canvass of "absentee ballots and mail-in ballots," *id.* §§ 3146.8(g)(1.1)-(2).

12.     RPP has exercised these statutory rights in the past several election cycles and is doing so again for the 2024 elections.

13.     In conjunction with its Election Day Operations ("EDO"), the RPP devotes substantial time and resources toward the recruitment and training of poll workers, poll watchers, and volunteers throughout the 67 counties of the Commonwealth to assist voters on election day, to observe the casting and counting of ballots at the polling place, and to observe the pre-canvass and canvass of absentee and mail-in ballots at the county board of elections.

14.     As part of its EDO, the RPP also devotes substantial time and resources toward the recruitment and training of a "ground team" of lawyers throughout the Commonwealth who stand ready on Election Day to assist poll workers, poll watchers, and volunteers should questions arise as to elections laws or the voting process within the Commonwealth.

15.     The RPP has devoted substantial time and resources in mobilizing and educating voters in Pennsylvania in the past many election cycles and will do so again in 2024.

2

16.     Each of the RPP's EDO, training, and voter education programs relies upon, utilizes, and is built upon the clear language of the Election Code.

17.     In particular, following the enactment of Act 77, which fundamentally changed the manner in which Pennsylvanians are permitted to vote, most notably by providing a new universal mail-in voting regime, RPP significantly updated and altered its EDO, training, and voter education programs.

18.     Following the enactment of Act 77, RPP substantially increased the amount of its time and resources dedicated to educating voters, poll workers, poll watchers, volunteers, and its legal teams throughout Pennsylvania's 67 counties regarding the provisions of Act 77.

19.     RPP's EDO, training, and voter education programs include training and information regarding the requirements for voters to cast lawful and valid ballots, and the governing rules delineating unlawful and invalid ballots and preventing election officials from pre-canvassing, canvassing, or counting such ballots.

20.     I am aware that, in a case brought by the RPP and other parties, the Pennsylvania Supreme Court held that General Assembly's date requirement for absentee and mail-in ballots is mandatory and that non-compliant ballots may not be counted.  *See Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 1, 2022) (per curiam).

21.     I am aware that, before the Court entered its summary judgment order in this case, the law in Pennsylvania was that undated or incorrectly dated absentee and mail-in ballots would not be counted.

22.     I am aware that the Court's summary judgment order declares that 12 county boards of elections—Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Washington, Warren, Westmoreland, and York—may not enforce the date

3

requirement and must count undated or incorrectly dated absentee and mail-in ballots.

23.     I am also aware that the Court's summary judgment order does not changes the rules for the other 55 county boards of elections in Pennsylvania.

24.     RPP's EDO, training, and voter education programs include training and information regarding the General Assembly's date requirement.

25.     The change in the governing law around the date requirement that the Court's summary judgment order has purported to make harms the RPP by rendering its EDO, training, and voter education programs less effective, wasting the resources they have devoted to such programs, and requiring them to expend new resources to update those programs.

26.     In particular, so long as the Court's summary judgment order is not stayed or reversed, the RPP will be required to alter its statewide EDO, training, and voter education programs to specify that the date requirement is valid and mandatory in 55 counties but not in the 12 counties covered by the order.

27.     If the RPP alters its EDO, training, and voter education programs to reflect the Court's order, it will again have to alter those materials if the Court's order is stayed or reversed in the future.

28.     Altering its statewide EDO, training, and voter education programs will require the RPP to divert resources from its intended mission of nominating, promoting, and assisting Republican candidates in Pennsylvania and of educating, mobilizing, assisting, and turning out voters in Pennsylvania.

29.     The RPP also has a strong interest in preserving its victory in *Ball v. Chapman*, which upheld uniform, mandatory application of the General Assembly's date requirement across all Pennsylvania counties and, thus, contributes to free and fair elections on behalf of all

ADD.83

Pennsylvanians.

30. The Court's summary judgment order undermines this interest by declaring the date requirement non-mandatory in 12 Pennsylvania counties, creating disuniformity in application of the date requirement across Pennsylvania, and undermining free and fair elections on behalf of all Pennsylvanians.

31. Thus, if left uncorrected, the Court's summary judgment order threatens to create voter confusion, to reduce voter confidence in the integrity of Pennsylvania's elections, and to decrease voter turnout in Pennsylvania, including by members of the RPP.

32. The Court's summary judgment order also alters the competitive environment surrounding elections in Pennsylvania in which the RPP, its members, its voters, and its candidates exercise their constitutional rights to vote and to participate.

33. The Court's summary judgment order harms the electoral prospects of Republican candidates in Pennsylvania; makes it more difficult for the RPP, its members, its voters, and its candidates to win elections; and may change the outcome of elections in Pennsylvania.

34. Including in the official vote total ballots that did not comply with the date requirement has flipped the result in three elections in Pennsylvania since 2020. In each of those elections, the Republican candidate would have prevailed if the noncompliant ballots had not been included in the vote total. In other words, in each of those elections, including the noncompliant ballots in the vote total flipped the outcome and resulted in a Democratic candidate being declared the winner and a Republican candidate being declared the loser.

35. The first was the State Senate race involving Republican Nicole Ziccarelli in 2020. *See In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020).

ADD.84

36. The second was the Court of Common Pleas race involving Republican David Ritter in 2021. *See Migliori v. Cohen*, 36 F.4th 153, *cert. granted and judgment vacated*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022)

37. In the third, the Court's order has changed the apparent result of the November 2023 election for Towamencin Township Board of Supervisors (Montgomery County). The Republican candidate, Richard Marino, prevailed by 4 votes over his Democratic challenger, Kofi Osei, with all ballots counted under the rules in effect on election day, November 7, 2023. This Court's order issued two weeks later. Invoking that order, the Montgomery County Board of Elections counted six ballots that did not comply with the date requirement. Including those ballots in the vote total resulted in a tie between Mr. Marino and Mr. Osei. On November 30, 2023, the Montgomery County Board of Elections resolved that tie through a casting of lots by which Mr. Osei was declared the winner.

38. Any delay in, or denial of, Mr. Marino taking the office to which Towamencin Township voters elected him under the rules in effect on Election Day 2023 irreparably harms RPP's interest in electing Republican candidates, having Republican officeholders serve, and having officeholders implement Republican-support policies. Any such delay or denial also irreparably harms Mr. Marino, who has an interest in continuing his service in office as a Republican. And any such delay or denial irreparably harms the voters, including Republican voters, who voted for Mr. Marino and reelected him under the rules in effect on election day.

39. I declare under penalty of perjury that the foregoing is true and correct.

Date:_____12/1/2023_____ _____

Angela Alleman

6

ADD.85

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Montgomery _____ **County**

| | |
|---|---|
| **For Prothonotary Use Only:** | *TIME STAMP* |
| Docket No: 2023-26306 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☐ Complaint
- ☐ Writ of Summons
- ☒ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: In re: Contest of November 7, 2023 Election | Lead Defendant's Name: |
|---|---|

**Are money damages requested?** ☐ Yes, ☒ No | Dollar Amount Requested: (check one) ☐ within arbitration limits ☐ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Britain R. Henry, Esq.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other _____

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other _____

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other: Election Law Matter

*Updated 1/1/2011*

**ADD.86**



GOLDSTEIN LAW PARTNERS, LLC                          *Attorneys for Petitioners*
Britain R. Henry, Esq.
Attorney I.D # 314279
Jonathan S. Goldstein, Esq.
Attorney I.D # 201627
11 Church Road
Hatfield, PA 19440
(610) 949-0444

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR** | : : : : | **NO.: 2023-26306** **ELECTION LAW MATTER** |
| **Petition of Shannon L. Main, Michael E. Main, Cynthia M. Manero, Kris A. Kazmar, Janella J. Santiago, Scott E. Pickford, Beth Pickford, Richard Mullen, Richard D. Costlow, Joseph F. Meehan, Michael Secoda, Kelly L. Secoda, George H. Frisch, Nancy J. Becker, Leo F. Horcher III, Alyson Horcher, Holly A. Bechtel, Margrit D. Marino, David Allen Brady, Kathryn J. Marger, Bruce C. Marger, Bruce R. Marger III, Thomas A. Nuss, Karen L. Nuss, Delyne D. Rogiani, Earl G. Godshall, Marilyn Godshall, Kristin R. Warner, Kevin M. Rossi, Nicole M. Rossi, et. al.** | : : : : : : : : : : : : : : : | Montgomery Co Prothonotary DEC 4 '23 AM 9:20 |

### PETITION FOR ELECTION CONTEST
### *Or in the alternative,* PETITION FOR ELECTION CONTEST *NUNC PRO TUNC*

Pursuant to Article XVII of the Pennsylvania Election Code, 25 P.S. § 3291, § 3431, and §

3456 *et. seq.*, the seventy-three (73) Petitioners identified herein, by and through their attorneys,

Goldstein Law Partners, LLC respectfully submit this Petition for Election Contest for

Towamencin Township Supervisor and, in support thereof, aver as follows:

      1.    The Petitioners are as follows:

          a.  Petitioner, Shannon L. Main, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1740 Old Morris Rd.,

ADD.87

Harleysville, Pa 19438, who cast a vote at the November 7, 2023 General Election.

b. Petitioner, Michael E. Main, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1740 Old Morris Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

c. Petitioner, Cynthia M. Manero, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1866 Rampart Lane, Landale, PA 19446, who cast a vote at the November 7, 2023 General Election.

d. Petitioner, Kris A. Kazmar, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2315 Old Forty Foot Road, Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

e. Petitioner, Janella J. Santiago, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2315 Old Forty Foot Road, Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

f. Petitioner, Scott E. Pickford, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2305 Old Forty Foot Road, Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

g. Petitioner, Beth Pickford, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2305 Old Forty Foot Road, Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

h. Petitioner, Richard Mullen, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 8 Farm Way, Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

i. Petitioner, Richard D. Costlow, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2080 Parkview Drive, Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

j. Petitioner, Joseph F. Meehan, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2117 Kriebel Rd., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

k.  Petitioner, Michael Secoda, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2075 Parkview Drive, Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

l.  Petitioner, Kelly L. Secoda, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2075 Parkview Drive, Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

m.  Petitioner, George H. Frisch, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 305 Monroe Dr., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

n.  Petitioner, Nancy J. Becker, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1798 Meadow Glen Dr., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

o.  Petitioner, Leo F. Horcher III, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2079 Parkview Drive, Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

p.  Petitioner, Alyson Horcher, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2079 Parkview Drive, Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

q.  Petitioner, Holly A. Bechtel, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2130 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

r.  Petitioner, Margrit D. Marino, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1175 Boyd Ave., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

s.  Petitioner, David Allen Brady, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1950 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

t.  Petitioner, Kathryn J. Marger, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1005 Thorndale Dr., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

u.  Petitioner, Bruce C. Marger, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1005 Thorndale Dr., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

v.  Petitioner, Bruce R. Marger III, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1860 Old Morris Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

w.  Petitioner, Thomas A. Nuss, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1925 Kulp. Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

x.  Petitioner, Karen L. Nuss, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1925 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

y.  Petitioner, Delyne D. Rogiani, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1950 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

z.  Petitioner, Earl G. Godshall, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2145 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

aa. Petitioner, Marilyn Godshall, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 2145 Kulp Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

bb. Petitioner, Kristin R. Warner, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1780 Old Morris Rd., Harleysville, PA 19438, who cast a vote at the November 7, 2023 General Election.

cc. Petitioner, Kevin M. Rossi, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1223 Anders Rd., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

dd. Petitioner, Nicole M. Rossi, is a registered elector of Towamencin Township, Montgomery County, Pennsylvania, residing at 1223 Anders Rd., Lansdale, PA 19446, who cast a vote at the November 7, 2023 General Election.

ee. For judicial economy, Petitioners incorporate herein by reference the full list of seventy-three (73) Petitioners attached hereto as Exhibit "A."

2.  A petition raising an election contest for a township supervisor contest must be made and filed within twenty days after the date of the election, must contain the names of 20

petitioners, and must be verified by the affidavits of at least five of the petitioners. 25 P.S. §§ 3456-58.

3.    Petitioners acknowledge this Petition is filed more than 20 days after the election in question. However, as set forth in detail herein, the candidate petitioners voted for received the highest number of votes under the rules in effect on Election Day and, thus, the Montgomery County Board of Elections ("the Board") was required to certify him as the winner. Petitioners therefore had nothing to contest and no basis to seek judicial relief within 20 days of the election. That changed 23 days after the election—after the Election Code's deadline for the Board to certify the result—when the Board purported to declare another candidate the winner under a different set of rules, in contravention of the Election Code and the plain and binding directive of the Pennsylvania Supreme Court.

4.    Petitioners therefore contend that in light of the unique facts of the matter and the Board's illegal actions, the Petition is timely filed or, in the alternative, should be permitted *nunc pro tunc*.[1]

5.    A petition contesting the results of an election shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal. 25 P.S. § 3456.

6.    Contested elections of a township supervisor "shall be tried and determined upon petition of twenty registered electors, as hereinafter provided by the court of common pleas of the county in which such contested election was held." 25 P.S. § 3431.

---

[1] *See In re Twenty-Sixth Election Dist., Second Ward, Borough of Lehighton*, 41 A.2d 657 (Pa. 1945) (The error of the election board caused the results of the election to be incorrectly reported and, thus, the only way to correct the error was to allow an appeal *nunc pro tunc*.); "We have held that fraud or the wrongful or negligent act of a court official may be a proper reason for holding that a statutory appeal period does not run and that the wrong may be corrected by means of a petition filed *nunc pro tunc*." *In re Canvass of Absentee Ballots of November 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004).

7.    Because the contested township supervisor election was held in Montgomery County, this Court has jurisdiction over this election contest. *Id.*

8.    On November 7, 2023, a General Election was held, *inter alia*, for Towamencin Township Supervisor (the "Election").

9.    The candidates for Towamencin Township Supervisor in the November 7, 2023 General Election were Richard Marino ("Marino") and Kofi Osei ("Osei").

10.    Under the rules in effect on Election Day—and under which Towamencin Township voters cast their ballots and voted—Marino prevailed, receiving 4 more votes than Osei. *See* Screenshot of Montogomery County Unofficial Results attached hereto as Exhibit "B."

11.    Pursuant to 25 Pa. Stat. § 3154(f), the Montgomery County Board of Elections ("Board") was required to submit the unofficial results to the Secretary of the Commonwealth no later than 5 p.m. on November 14, 2023.

12.    Upon information and belief, the Board complied with § 3154(f) and submitted the unofficial results to the Secretary of the Commonwealth declaring Marino the winner of the Election.

13.    Upon information and belief, the Board completed the canvassing of all ballots and final computation of ballots on November 15, 2023.

14.    Five days after the completion of the computation of votes, and there having been no petition for a recount or recanvass filed, the county board **shall**[2] certify the returns so computed

---

[2] *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, Appeal of Pierce*, 843 A.2d 1223, 1231 (Pa. 2004) ("The word 'shall' carries an imperative or mandatory meaning."); *see also In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1084 (Pa. 2020) (Wecht, J., concurring in part and dissenting in part) ("shall means *shall*" (emphasis in original)).

and issue certificates of election to the successful candidates. *See* 25 Pa. Stat. § 3154(f) (emphasis added).[3]

15.     Upon information and belief, no petitions for recount or recanvass were filed in the Election and therefore, on November 21, 2023, the Board was statutorily required to certify Marino as the winner of the Election. *Id.*

16.     Notwithstanding the aforementioned timing requirements, the Board disregarded its statutory duty and inexplicably scheduled its certification vote for November 22, 2023, a day after it was required to do so.

17.     In clear and direct violation of the Election Code's certification requirements, on November 22, 2023 the Board, relying upon the November 21, 2023 Order in *NAACP v. Schmidt*, 1:22-CV-339 (W.D. Pa.)[4], issued a statement postponing the certification so as to now canvass six (6) mail-in and absentee ballots it had previously rightly determined, per the laws of the Commonwealth, to be defective and void for lack of date or incorrectly dated. A true and accurate copy of the Board's November 22, 2023 press statement is attached hereto as Exhibit "D."

18.     "The Election Code commands absentee and mail-in electors to date the declaration that appears upon ballot return envelopes, and failure to comply with that command renders a ballot invalid as a matter of Pennsylvania law." *Ball v. Chapman*, 289 A.3d 1, 28 (Pa. 2023); *See also In re Canvass of Absentee & Mail-in Ballots of November 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) (Statutory requirement that absentee or mail-in ballot voter date and sign the voter declaration was not a minor irregularity which could be overlooked and thus, in

---

[3] "At the expiration of five (5) days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act,...the county board **shall** certify the returns so computed in said county in the manner required by this act... The county board **shall** thereupon, in the case of elections, issue certificates of election to the successful candidates..." 25 P.S. § 3154(f) (emphasis added)

[4] A true and accurate copy of the November 21, 2023 Order is attached hereto as Exhibit "C."

future elections, the omission of either item would be sufficient, without more, to invalidate the ballot in question. (Per concurring opinion of Wecht, J.))

19.     On November 27, 2023, the Board conducted an untimely, improper, post mandatory statutory certification canvassing of the defective mail-in and absentee ballots, whereupon the Board declared the Election a tie. *See Petition to Open Ballot Box of Oneida Dist. in E. Union Twp.*, 103 A.2d 652 (Pa. 1954) (County Board of Elections acted without authority when it changed the vote in an election district for the office of township supervisor after its official duty in respect thereof had become final without an appeal therefrom to the Court of Common Pleas.)[5]

20.     On November 30, 2023, pursuant to 25 P.S. § 3168, Marino and Osei drew lots, which resulted Osei being declared the "winner" of the Election, even though Marino had won the Election several days before.

21.     Under the laws of the Commonwealth at the time of the Election, Marino was the rightful and legitimate winner of the Election, fifteen days after the Election and two days beyond the certification deadline, the Board determined it would improperly reverse its prior adjudication and retroactively revive uncured[6] and invalid ballots, a relief not specifically set forth in the November 21, 2023 Order, and as a result, Marino was forced to draw lots and ultimately was

---

[5] "Unfortunately for the Election Board's contention in such regard, its power to open the ballot box of the Onieda district had expired before it ordered the recount on the petition of Calovine. More than five days had elapsed since the admitted completion of the computation of the votes and no petition for a recount or a recanvass of the vote in the Oneida district for the office of township supervisor had been filed. See Section 1404(f) of the Election Code, 25 P.S. § 3154(f)." *Id*. at 460.

[6] Upon information and belief, prior to the Election, and in clear recognition of the ballot's fatal defects, the Board notifies all voters with a defective mail-in or absentee ballot that their ballots are defective and will not be counted. However, if they cast a provisional ballot at their polling place on Election Day, their vote can be cured. Petitioners would posit that the Board's actions provided the voters of the defective ballots two opportunities to cast a ballot and when the voters failed, the Board corrected it for them.

illegally declared by the Board to have lost the Election, notwithstanding the fact that he won the Election several days earlier.

22.     This series of events demonstrates a complete contravention of the Election Code, the laws of the Commonwealth and the laws of the United States.

23.     As explained, the Pennsylvania Supreme Court in *Ball* held that the General Assembly's duly enacted date requirement is mandatory under Pennsylvania law. By an equally divided vote, the Pennsylvania Supreme Court upheld the date requirement against a challenge brought under the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B). *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022); *see Ball*, 289 A.3d 1; *Bonner v. Chapman*, 298 A.3d 153, 167-68 (Pa. Comm. Ct. 2023).

24.     In conflict with the ruling of the Pennsylvania Supreme Court, the federal district court in its November 21, 2023 Order concluded that the date requirement is preempted by the federal materiality provision. The federal district court arrived at this conclusion even though, in a prior case, three Justices of the U.S. Supreme Court stated that a view of the Pennsylvania date requirement as immaterial "is very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting from denial of application for stay).

25.     The plaintiffs in *PA NAACP* sought relief regarding the 2022 General Election and never sought relief regarding the 2023 General Election or the Election at issue here. The federal district court's November 21, 2023 Order therefore did not grant relief regarding the Election.

26.     Accordingly, the Board was bound to comply with the Election Code and the Pennsylvania Supreme Court's directive in *Ball*, not a federal district court's order related to a different election. The Board therefore acted contrary to law when it counted the six (6) noncompliant ballots and improperly declared Osei the winner.

27.     Moreover, the United States Supreme Court has repeatedly stated that federal courts ordinarily should not enjoin a state's election laws in the period close to an election.[7]

28.     "That principle—known as the *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Merrill v. Milligan*, 142 S.Ct. 879, 880–81 (2022) (emphasis in the original)

29.     "Changing the rules in the middle of the game is bad enough," but changing the rules during the post-game tally risks "severely damag[ing] the electoral system on which our self-governance so heavily depends." *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 735 (2021) (Thomas, J., dissenting from denial of certiorari).

30.     In the case at hand, the Board improperly and illegally changed the outcome of Election by both 1) canvassing voided ballots, without authority and in direct defiance of the laws of the Commonwealth, based on the inapplicable post-election November 21, 2023 Order from a federal district court and 2) by failing to timely certify the correct unofficial results after completing computation as they were statutorily required to do. *See Ball v. Chapman*, 289 A.3d 1 (Pa. 2023); 25 Pa. Stat. § 3154(f).

31.     Attached hereto are the affidavits of sixteen (16) of the Petitioners stating that they believe the facts herein are true, that according to the best of their knowledge and belief that the

---

[7] *See Merrill v. People First of Ala.*, 141 S.Ct. 25, (2020); *Andino v. Middleton*, 141 S.Ct. 9 (2020); *Merrill v. People First of Ala.*, 141 S.Ct. 190, (2020); *Clarno v. People Not Politicians*, 141 S.Ct. 206, (2020); *Little v. Reclaim Idaho*, 140 S.Ct. 2616 (2020); *Republican National Committee v. Democratic National Committee*, 140 S.Ct. 1205 (2020) (*per curiam*); *Democratic National Committee v. Wisconsin State Legislature*, 141 S.Ct. 28 (2020).

election result reported by the Board was illegal, and the return thereof not correct, and that this petition is made in good faith. True and correct copies of the affidavits are attached hereto as Exhibit "E."

32.     Accordingly, Petitioners have probable cause to bring this action and have presented a *prima facie* case that an election contest is warranted.

33.     As required by 25 P.S. § 3459, Petitioners are prepared to file a bond, in an amount set by the Court, within five (5) days of the filing of this Petition, should it be determined that the Petitioners shall be adjudged liable to pay said costs.

34.     Petitioners are concerned electors and therefore respectfully request that the bond be set for a nominal dollar amount.

WHEREFORE, Petitioners respectfully request that this Honorable Court compel the Montgomery County Board of Elections to comply with the Election Code and laws of the Commonwealth of Pennsylvania and certify Richard Marino as the winner of November 7, 2023, General Election for Towamencin Township.

Respectfully submitted,

GOLDSTEIN LAW PARTNERS, LLC

Date: **12/1/2023**

Britain R. Henry, Esq.
Jonathan S. Goldstein, Esq.
*Attorneys for Petitioners*

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | ELECTION LAW MATTER |

## <u>ORDER</u>

AND NOW, this _____ day of December, 2023, upon review of the Petition for Election

Contest filed in the above-captioned matter and the exhibits attached thereto, and under the power

granted to this Court by 25 P.S. §§ 3431and 3464, the Montgomery County Board of Elections is

hereby directed that certification of the election results for Towamencin Township Supervisor shall

be STAYED pending further Order of this Court.


BY THE COURT:


_____
                                    J.

ADD.98

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | **ELECTION LAW MATTER** |

## ORDER

AND NOW, this _____ day of December, 2023, upon review of the Petition for Election Contest filed in the above-captioned matter and the exhibits attached thereto, Petitioners shall, on or before December _____, 2023, post a bond in the amount of $_____, signed by at least five of the said petitioners, conditioned for the payment of all costs which may accrue in said contested election proceeding.

BY THE COURT:

_____
                                                                J.

ADD.99

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

IN RE: CONTEST OF NOVEMBER    :
7, 2023 ELECTION OF TOWAMENCIN   :   NO.:
TOWNSHIP SUPERVISOR          :   ELECTION LAW MATTER

### ORDER

AND NOW, this _____ day of December, 2023, upon review of the Petition for Election Contest filed in the above-captioned matter and the exhibits attached thereto, a hearing is scheduled for the _____ day of December, 2023, at _____ a.m./p.m. in Courtroom ____. It is hereby ordered that:

1) A rule is issued upon respondent to show cause why Petitioners are not entitled to the relief requested;

2) The respondent shall answer the Petition at the time fixed for hearing; and

3) Notice of the entry of this order shall be provided to all parties by the Petitioners.

BY THE COURT:

_____
                                     J.

**ADD.100**

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Signature of Attorney

12/1/2023
Date

BRITAIN R. HENRY
ID. NO. 314279
TEL: 610-949-0444
bhenry@goldsteinlp.com



# EXHIBIT "A"

2023-26306-0000   12/4/2023 8:53 AM # 14195315
Rcpt#2023-6-01903  Fee:$289.50  Petition
Exhibit A (Public)
MontCo Prothonotary

| | | |
|---|---|---|
| Shannon L. | Main | 1740 Old Morris Rd Harleysville Pa 19438 |
| Michael E. | Main | 1740 Old Morris Rd Harleysville Pa 19438 |
| Cynthia M. | Manero | 1866 Rampart Lane Lansdale Pa 19446 |
| Kris A. | Kazmar | 2315 Old Forty Foot Road, Harleysville, PA 19438 |
| Janella J. | Santiago | 2315 Old Forty Foot Road, Harleysville, PA 19438 |
| Scott E. | Pickford | 2305 Old Forty Foot Road, Harleysville, PA 19438 |
| Beth | Pickford | 2305 Old Forty Foot Road, Harleysville, PA 19438 |
| Richard | Mullen | 8 Farm Way, Harleysville, PA 19438 |
| Richard D. | Costlow | 2080 Parkview Drive Lansdale PA 19446 |
| Joseph F. | Meehan | 2117 Kriebel Rd Lansdale Pa 19446 |
| Michael | Secoda | 2075 Parkview Drive Lansdale PA 19446 |
| Kelly L. | Secoda | 2075 Parkview Drive Lansdale PA 19446 |
| George H. | Frisch | 305 Monroe Dr, Harleysville PA 19438 |
| Nancy J. | Becker | 1798 Meadow Glen Dr., Lansdale Pa 19446 |
| Leo F. | Horcher III | 2079 Parkview Drive Lansdale PA 19446 |
| Alyson | Horcher | 2079 Parkview Drive Lansdale PA 19446 |
| Holly A. | Bechtel | 2130 Kulp Rd Harleysville PA 19438 |
| Margrit D. | Marino | 1175 Boyd Ave Lansdale Pa 19446 |
| David Allen | Brady | 1950 Kulp Rd Harleysville Pa 19438 |
| Kathryn J. | Marger | 1005 Thorndale Dr Lansdale Pa 19446 |
| Bruce C. | Marger | 1005 Thorndale Dr. Lansdale Pa 19446 |
| Bruce R. | Marger III | 1860 Old Morris Rd Harleysville Pa 19438 |
| Thomas A. | Nuss | 1925 Kulp Rd., Harleysville Pa 19438 |
| Karen L. | Nuss | 1925 Kulp Rd., Harleysville Pa 19438 |
| Delyne D. | Rogiani | 1950 Kulp Rd., Harleysville Pa 19438 |
| Earl G. | Godshall | 2145 Kulp Rd., Harleysville Pa 19438 |
| Marilyn | Godshall | 2145 Kulp Rd., Harleysville Pa 19438 |
| Kristin R. | Warner | 1780 Old Morris Rd., Harleysville Pa 19438 |
| Kevin M. | Rossi | 1223 Anders Rd., Lansdale, PA 19446 |
| Nicole M. | Rossi | 1223 Anders Rd., Lansdale, PA 194446 |
| Donald P. | Reimer | 1140 Nash Ave.. Lansdale, PA  19446 |
| Diana M. | Reimer | 1140 Nash Ave.. Lansdale, PA  19446 |
| William X. | Farmer | 1975 Kulp Rd, Harleysville PA 19438 |
| Peter N. | Hanson | 1995 Springer Rd, Harleysville PA 19438 |
| Aimee N. | Hanson | 1995 Springer Rd, Harleysville PA 19438 |
| Michael G. | Lewis | 109 Madison Way, Lansdale Pa 19446 |
| Richard Todd | Fisher | 422 Militia Drive, Lansdale Pa 19446 |
| Robert C. | Lebrocq | 2045 Eagle Way, Hatfield Pa 19440 |
| Elizabeth A. | Meehan | 2117 Kriebel Rd., Harleysville Pa 19446 |
| William J. | Dauphinee | 2070 Spring Valley Rd., Lansdale Pa 19446 |
| Karen M. | Dauphinee | 2070 Spring Valley Rd., Lansdale Pa 19446 |
| Peter | Andolino | 2325 Old Forty Foot Road, Harleysville, PA 19438 |
| Michelle | Andolino | 2325 Old Forty Foot Road, Harleysville, PA 19438 |
| Gina | Bernitt | 27 Saratoga Lane, Harleysville, PA 19438 |
| Charles J. | Bernitt | 27 Saratoga Lane, Harleysville, PA 19438 |
| Jill L. | Mullen | 8 Farm Way, Harleysville, PA 19438 |
| Cody R. | Mullen | 8 Farm Way, Harleysville, PA 19438 |

ADD.103

EXHIBIT "B"

2023-26306-0000   12/4/2023 8:53 AM  # 14195316
Rcpt#2023-6-01903  Fee:$289.50  Petition
Exhibit B (Public)
MontCo Prothonotary



# Towamencin Township Supervisor (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

| | | Election Day | Mail-in | Provisional | Total | |
|---|---|---|---|---|---|---|
| Times Cast | | 4,451 | 1,848 | 28 | 6,327 / 13,193 | 47.96% |
| **Candidate** | **Party** | **Election Day** | **Mail-in** | **Provisional** | **Total** | |
| Kofi Osei | DEM | 1,781 | 1,234 | 15 | 3,030 | |
| Richard Marino | REP | 2,493 | 533 | 8 | 3,034 | |
| Write-in | | 8 | 5 | 0 | 13 | |
| Total Votes | | 4,282 | 1,772 | 23 | 6,077 | |
| | | **Election Day** | **Mail-in** | **Provisional** | **Total** | |



# EXHIBIT "C"



2023-26306-0000  12/4/2023 8:53 AM  # 14195317
Rcpt#2023-6-01903  Fee:$289.50  Petition
Exhibit C (Public)
MontCo Prothonotary



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

PENNSYLVANIA STATE CONFERENCE )
OF THE NAACP, LEAGUE OF WOMEN )
VOTERS OF PENNSYLVANIA, )      **CASE NO. 1:22-CV-00339**
PHILADELPHIANS ORGANIZED TO )
WITNESS, EMPOWER AND REBUILD, )      **HON. SUSAN PARADISE BAXTER**
COMMON CAUSE PENNSYLVANIA, )      **UNITED STATES DISTRICT JUDGE**
BLACK POLITICAL EMPOWERMENT )
PROJECT, MAKE THE ROAD )
PENNSYLVANIA, MARLENE G. )
GUTIERREZ, BARRY M. SEASTEAD, )
AYNNE MARGARET PLEBAN )
POLINSKI, LAURENCE M. SMITH, JOEL )
BENCAN, )
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　)
　　vs. )
　　　　　　　　　　　　　　　　　　)
AL SCHMIDT, IN HIS OFFICIAL )
CAPACITY AS ACTING SECRETARY OF )
THE COMMONWEALTH, ADAMS )
COUNTY BOARD OF ELECTIONS, )
ALLEGHENY COUNTY BOARD OF )
ELECTIONS, ARMSTRONG COUNTY )
BOARD OF ELECTIONS, BEAVER )
COUNTY BOARD OF ELECTIONS, )
BEDFORD COUNTY BOARD OF )
ELECTIONS, BERKS COUNTY BOARD )
OF ELECTIONS, BRADFORD COUNTY )
BOARD OF ELECTIONS, BLAIR )
COUNTY BOARD OF ELECTIONS, )
BUCKS COUNTY BOARD OF )
ELECTIONS, BUTLER COUNTY BOARD )
OF ELECTIONS, CAMBRIA COUNTY )
BOARD OF ELECTIONS, CAMERON )
COUNTY BOARD OF ELECTIONS, )
CARBON COUNTY BOARD OF )
ELECTIONS, CENTRE COUNTY BOARD )
OF ELECTIONS, CHESTER COUNTY )
BOARD OF ELECTIONS, CLARION )
COUNTY BOARD OF ELECTIONS, )

1

**ADD.107**

CLEARFIELD COUNTY BOARD OF )
ELECTIONS, CLINTON COUNTY )
BOARD OF ELECTIONS, COLUMBIA )
COUNTY BOARD OF ELECTIONS, )
CRAWFORD COUNTY BOARD OF )
ELECTIONS, CUMBERLAND COUNTY )
BOARD OF ELECTIONS, DAUPHIN )
COUNTY BOARD OF ELECTIONS, )
DELAWARE COUNTY BOARD OF )
ELECTIONS, ELK COUNTY BOARD OF )
ELECTIONS, ERIE COUNTY BOARD OF )
ELECTIONS, FAYETTE COUNTY )
BOARD OF ELECTIONS, FOREST )
COUNTY BOARD OF ELECTIONS, )
FRANKLIN COUNTY BOARD OF )
ELECTIONS, FULTON COUNTY BOARD )
OF ELECTIONS, GREENE COUNTY )
BOARD OF ELECTIONS, HUNTINGDON )
COUNTY BOARD OF ELECTIONS, )
INDIANA COUNTY BOARD OF )
ELECTIONS, JEFFERSON COUNTY )
BOARD OF ELECTIONS, JUNIATA )
COUNTY BOARD OF ELECTIONS, )
LACKAWANNA COUNTY BOARD OF )
ELECTIONS, LANCASTER COUNTY )
BOARD OF ELECTIONS, LAWRENCE )
COUNTY BOARD OF ELECTIONS, )
LEBANON COUNTY BOARD OF )
ELECTIONS, LEHIGH COUNTY BOARD )
OF ELECTIONS, LUZERNE COUNTY )
BOARD OF ELECTIONS, LYCOMING )
COUNTY BOARD OF ELECTIONS, )
MCKEAN COUNTY BOARD OF )
ELECTIONS, MERCER COUNTY BOARD )
OF ELECTIONS, MIFFLIN COUNTY )
BOARD OF ELECTIONS, MONROE )
COUNTY BOARD OF ELECTIONS, )
MONTGOMERY COUNTY BOARD OF )
ELECTIONS, MONTOUR COUNTY )
BOARD OF ELECTIONS, )
NORTHAMPTON COUNTY BOARD OF )
ELECTIONS, NORTHUMBERLAND )
COUNTY BOARD OF ELECTIONS, )
PERRY COUNTY BOARD OF )
ELECTIONS, PHILADELPHIA COUNTY )
BOARD OF ELECTIONS, PIKE COUNTY )
)

2

**ADD.108**

BOARD OF ELECTIONS, POTTER )
COUNTY BOARD OF ELECTIONS, )
SCHUYLKILL COUNTY BOARD OF )
ELECTIONS, SNYDER COUNTY BOARD )
OF ELECTIONS, SOMERSET COUNTY )
BOARD OF ELECTIONS, SULLIVAN )
COUNTY BOARD OF ELECTIONS, )
SUSQUEHANNA COUNTY BOARD OF )
ELECTIONS, TIOGA COUNTY BOARD )
OF ELECTIONS, UNION COUNTY )
BOARD OF ELECTIONS, VENANGO )
COUNTY BOARD OF ELECTIONS, )
WARREN COUNTY BOARD OF )
ELECTIONS, WASHINGTON COUNTY )
BOARD OF ELECTIONS, WAYNE )
COUNTY BOARD OF ELECTIONS, )
WESTMORELAND COUNTY BOARD OF )
ELECTIONS, WYOMING COUNTY )
BOARD OF ELECTIONS, YORK )
COUNTY BOARD OF ELECTIONS, )

       Defendants. )

## ORDER

AND NOW, this 21st day of November 2023;

IT IS HEREBY ORDERED that the following fifty-five county boards of elections be dismissed from this action as no Plaintiff has established standing against them: Adams County, Armstrong County, Beaver County, Bedford County, Blair County, Bradford County, Butler County, Cambria County, Cameron County, Carbon County, Centre County, Chester County, Clarion County, Clearfield County, Clinton County, Columbia County, Crawford County, Cumberland County, Dauphin County, Delaware County, Elk County, Erie County, Fayette County, Forest County, Franklin County, Fulton County, Greene County, Huntingdon County, Indiana County, Jefferson County, Juniata County, Lackawanna County, Lawrence County, Lebanon County, Luzerne County, Lycoming County, McKean County, Mercer County, Mifflin

3

**ADD.109**

County, Monroe County, Montour County, Northumberland County, Perry County, Pike County,

Potter County, Schuylkill County, Snyder County, Somerset County, Sullivan County,

Susquehanna County, Tioga County, Union County, Venango County, Wayne County, and

Wyoming County. The Clerk of Court shall terminate these Defendants as parties to this action.

And it is further

ORDERED that the motion for summary judgment filed by Plaintiffs [ECF No. 274] is

granted in part and denied in part. The motion is granted insofar as:

- Defendant Warren County Board of Elections is hereby directed to open the November 2022 mail ballot envelope with the barcode associated with Barry Seastead, canvass the ballot contained therein, and amend the official vote counts to include his ballot;

- Defendant York County Board of Elections is hereby directed to open the November 2022 mail ballot envelopes with the barcodes associated with Aynne Margaret Pleban Polinski and Marlene Gutierrez, canvass the ballots contained therein, and amend the official vote counts to include their ballots; and

- Defendant Montgomery County Board of Elections is hereby directed to open the November 2022 mail ballot envelopes with the barcodes associated with Laurence Smith and Joel Bencan, canvass the ballots contained therein, and amend the official vote counts to include their ballots.

And it is further

ORDERED that a declaratory judgment is entered in favor of Plaintiffs declaring that

both (1) the rejection of timely submitted mail ballots based solely on the failure of a voter to

write a date at all next to the voter's signature on the return envelope; and (2) the rejection of

timely submitted mail ballots based solely on a determination that the date written by a voter on

the return envelope was "incorrect" violates the Materiality Provision of the Civil Rights Act of

1964, 52 U.S.C. § 10101(a)(2)(B). And it is further

4

**ADD.110**

ORDERED that the Secretary is permanently enjoined from directing all county boards of elections of the Commonwealth to segregate, reject, exclude, or in any way not count timely received mail ballots based on a voter's error or omission in relation to the date on the voter declaration on the mail ballot return envelope. And it is further

ORDERED that Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment is dismissed. And it is further

ORDERED that the motion for summary judgment filed by Defendant Lancaster County Board of Elections [ECF No. 267] is granted in part and denied in part. The motion is partially granted in regard to standing: the only Plaintiff who has standing against the Lancaster County Board is the League of Women Voters. All other claims by Plaintiffs against this Defendant are dismissed. The motion is denied in all other respects. And it is further

ORDERED that the motion for summary judgment filed by Defendant Berks County Board of Elections [ECF No. 269] is granted in part and denied in part. The motion is partially granted in regard to standing: the only Plaintiffs who have standing against the Berks County Board are NAACP and League of Women Voters. All other claims by Plaintiffs against this Defendant are dismissed. The motion is denied in all other respects. And it is further

ORDERED that the motion for summary judgment filed by Intervenor Defendants RNC [ECF No. 270] is denied.

The Clerk is directed to mark this case closed.

SUSAN PARADISE BAXTER
United States District Judge

5

ADD.111

EXHIBIT "D"

2023-26306-0000   12/4/2023 8:53 AM  # 14195398
Rcpt#2023-6-01903  Fee:$289.50  Petition
Exhibit D (Public)
MontCo Prothonotary



**2023 Press Releases**

Posted on: November 22, 2023

# MONTGOMERY COUNTY GENERAL ELECTION CERTIFICATION POSTPONED DUE TO COURT RULING

NORRISTOWN, PA—The Montgomery County Board of Elections is postponing the certification of the 2023 General Election due to yesterday's ruling of the United States District Court for the Western District of Pennsylvania.

The election certification, which was scheduled to happen on Wednesday, November 22, 2023, will be postponed to allow for the canvass and tabulation of undated and improperly dated mail-in ballots. The canvass and tabulation will begin on Monday, November 27 at 10 a.m. at the Montgomery County Voters Services Warehouse, located at 1006 W Washington St, Norristown, PA 19401. Canvassers will open up to 349 ballots that have missing or incorrectly dated envelopes, tabulate them, and include them in the official results for the election.

The court's ruling declared that not counting ballots with a missing or incorrect date violates federal law. "The provision protects a citizen's right to vote by forbidding a state actor from disqualifying a voter because of their failure to provide or error in providing some unnecessary information on a voting

## Tools

RSS

Notify Me

View Archived

## Categories

- All Categories
- Commerce
- Recorder of Deeds
- Health Department
- Parks, Trails, and Historic Sites
- Voters
- Sheriff
- DA - 2015 News Releases
- DA - 2016 News Releases
- Domestic Relations
- Planning
- DA - 2017 News Releases
- DA - 2018 News Releases
- 2019 Press Releases
- DA - 2019 News Releases
- HHS News
- 2020 Press Releases
- DA - 2020 News Releases
- DA - 2021 News Releases
- 2021 Press Releases

Select Language    ∨

Google **Translate**

**ADD.113**

application or ballot," Judge Susan Baxter wrote in her opinion. The court's order states that the missing or incorrect date is unnecessary information and thus should not affect a voter's eligibility to have their votes counted.

"In Montgomery County, we have consistently taken the position that the Election Code should be interpreted broadly in favor of voters' rights. All eligible voters should have their ballots counted," said **Kenneth E. Lawrence Jr., Chair of the Montgomery County Board of Elections**. "We will take the additional time needed to ensure that these ballots are included in the official results of the 2023 General Election."

After all eligible ballots have been counted, in accordance with the election code, the results will be posted for the five-day waiting period. The County will then certify the 2023 General Election.

The unofficial results of the 2023 General Election are available on the County's election results dashboard.

For more information about Montgomery County Voters Services, visit www.montgomerycountypa.gov/voters.

Media Contact:
megan.alt@montgomerycountyPA.gov

###

- 2022 Press Releases
- DA - 2022 News Releases
- Website News
- 2023 Press Releases
- DA - 2023 News Releases

⇐ **Previous**
MONTGOMERY COUNTY ISSUES CODE BLUE COLD WEATHER DECLARATION FOR NOVEMBER 24 - 25, 2023

**Next** ⇒
MONTGOMERY COUNTY ISSUES CODE BLUE COLD WEATHER DECLARATION FOR NOVEMBER 20 - 21, 2023

## Other News in 2023 Press Releases

Google **Translate**

**ADD.114**

# EXHIBIT "E"


2023-26306-0000   12/4/2023 8:53 AM # 14195399
Rcpt#2023-6-01903  Fee:$289.50  Petition
Exhibit E (Public)
MontCo Prothonotary



IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA

| IN RE: CONTEST OF NOVEMBER | : | |
|---|---|---|
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | ELECTION LAW MATTER |

## AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

| COMMONWEALTH OF PENNSYLVANIA | ) | |
|---|---|---|
| | ) | ss |
| COUNTY OF MONTGOMERY | ) | |

I, **Shannon Main**, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _____

Print: __Shannon Main__

Sworn to and subscribed before me on this

___ day of _____, 2023.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
TERESA MARIE HENNING - Notary Public
Montgomery County
My Commission Expires September 2, 2026
Commission Number 1424488

**ADD.116**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA        )
                                                                        )        ss
COUNTY OF MONTGOMERY                      )

I, _Michael Main_ , being duly sworn, deposes and says:

1.        I am a Petitioner in the above-captioned matter.

2.        I am a registered elector of Towamencin Township.

3.        I voted in the General Election on November 7, 2023.

4.        I believe the facts stated in the Petition for Election Contest are true and, to the best

of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.        The Petition for Election Conest is made in good faith.

6.        I understand that the statements herein are made subject to the penalties of 18 Pa.

C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _____

Print: _Michael Main_____

Sworn to and subscribed before me on this

_2_ day of _December_, 2023.

_____
Notary Public

```
Commonwealth of Pennsylvania - Notary Seal
TERESA MARIE HENNING - Notary Public
Montgomery County
My Commission Expires September 2, 2026
Commission Number 1424488
```

ADD.117

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: **ELECTION LAW MATTER** |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
                                  )    ss
COUNTY OF MONTGOMERY )

I, _Cynthia M. Manero_, being duly sworn, deposes and says:

1.    I am a Petitioner in the above-captioned matter.

2.    I am a registered elector of Towamencin Township.

3.    I voted in the General Election on November 7, 2023.

4.    I believe the facts stated in the Petition for Election Contest are true and, to the best

of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.    The Petition for Election Conest is made in good faith.

6.    I understand that the statements herein are made subject to the penalties of 18 Pa.

C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _Cynthia M Manero_

Print: _Cynthia M Manero_

Sworn to and subscribed before me on this

_1st_ day of _December_, 2023.

_Jeanette I Braun_
Notary Public

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Jeanette I Braun Notary Public
Montgomery County
My Commission Expires 7/21/2027
Commission #1263800

**ADD.118**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | **ELECTION LAW MATTER** |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
) ss
COUNTY OF MONTGOMERY )

I, ___KRIS A. KAZMAR___ being duly sworn, deposes and says:

1.   I am a Petitioner in the above-captioned matter.

2.   I am a registered elector of Towamencin Township.

3.   I voted in the General Election on November 7, 2023.

4.   I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.   The Petition for Election Conest is made in good faith.

6.   I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _____

Print: ___KRIS A. KAZMAR___

Sworn to and subscribed before me on this

__2__ day of ___December___, 2023.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
ERIC BALIBAN - Notary Public
Montgomery County
My Commission Expires July 15, 2027
Commission Number 1291955

**ADD.119**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

IN RE: CONTEST OF NOVEMBER     :
7, 2023 ELECTION OF TOWAMENCIN     :    NO.:
TOWNSHIP SUPERVISOR             :    ELECTION LAW MATTER

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA     )
                                       )    ss
COUNTY OF MONTGOMERY               )

        I, _JANELLA J. SANTIAGO_ , being duly sworn, deposes and says:

1.     I am a Petitioner in the above-captioned matter.

2.     I am a registered elector of Towamencin Township.

3.     I voted in the General Election on November 7, 2023.

4.     I believe the facts stated in the Petition for Election Contest are true and, to the best

of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.     The Petition for Election Conest is made in good faith.

6.     I understand that the statements herein are made subject to the penalties of 18 Pa.

C.S. § 4904 relating to unsworn falsification to authorities.

                               Signature: _[signature]_

                               Print: _JANELLA J. SANTIAGO_

Sworn to and subscribed before me on this

_2_ day of _December_ , 2023.

_[signature]_

Notary Public

Commonwealth of Pennsylvania - Notary Seal
ERIC BALIBAN - Notary Public
Montgomery County
My Commission Expires July 15, 2027
Commission Number 1291955

ADD.120

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
                                     ) ss

COUNTY OF MONTGOMERY )

I, _Scott Edward Pickford_, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa.

C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _Scott Edward Pickford_

Print: _Scott Edward Pickford_

Sworn to and subscribed before me on this

_1st_ day of _DECEMBER_, 2023.

_Erika Resendiz_
Notary Public

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Erika Rasendiz Notary Public
Montgomery County
My Commission Expires 04/19/2026
Commission # 1324616

ADD.121

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: ELECTION LAW MATTER |

## AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
                                 ) ss

COUNTY OF MONTGOMERY )

I, Beth Pickford, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: Beth Pickford

Print: Beth Pickford

Sworn to and subscribed before me on this

2 day of December, 2023.

_____
Notary Public

Commonwealth of Pennsylvania · Notary Seal
Fady E. Tawfiles, Notary Public
Chester County
My commission expires June 20, 2025
Commission number 1253550
Member, Pennsylvania Association of Notaries

**ADD.122**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
### PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | **NO.:** |
| TOWNSHIP SUPERVISOR | : | **ELECTION LAW MATTER** |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) ss |
| COUNTY OF MONTGOMERY | ) |

I, _R_Muller_, being duly sworn, deposes and says:

1.  I am a Petitioner in the above-captioned matter.

2.  I am a registered elector of Towamencin Township.

3.  I voted in the General Election on November 7, 2023.

4.  I believe the facts stated in the Petition for Election Contest are true and, to the best

of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.  The Petition for Election Conest is made in good faith.

6.  I understand that the statements herein are made subject to the penalties of 18 Pa.

C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _R_Muller_

Print: _Richard Mullen_

Sworn to and subscribed before me on this

_2_ day of _December_, 2023.

_Samantha Maile_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
SAMANTHA L MAILE - Notary Public
Montgomery County
My Commission Expires November 16, 2025
Commission Number 1410974

**ADD.123**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
)  ss
COUNTY OF MONTGOMERY )

I, *Richard Costlow*, being duly sworn, deposes and says:

1.  I am a Petitioner in the above-captioned matter.

2.  I am a registered elector of Towamencin Township.

3.  I voted in the General Election on November 7, 2023.

4.  I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.  The Petition for Election Conest is made in good faith.

6.  I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: *Robert Costlow*

Print: *Richard Costlow*

Sworn to and subscribed before me on this

___ day of *December*, 2023.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
TERESA MARIE HENNING - Notary Public
Montgomery County
My Commission Expires September 2, 2026
Commission Number 1424488

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) ss |
| COUNTY OF MONTGOMERY | ) |

I, _Joseph F. Meehan_, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _Joseph F Mal_

Print: _Joseph F. Meehan_

Sworn to and subscribed before me on this

_2_ day of _December_, 2023.

_[signature]_

Notary Public

Commonwealth of Pennsylvania - Notary Seal
NATALIIA MELNYK - Notary Public
Montgomery County
My Commission Expires May 19, 2027
Commission Number 1435122

**ADD.125**

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
)  ss
COUNTY OF MONTGOMERY )

I, _Michael Secoda_ being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _____

Print: _Michael Secoda_

Sworn to and subscribed before me on this

_2_ day of _December_, 2023.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
SAMANTHA L MAILE - Notary Public
Montgomery County
My Commission Expires November 16, 2025
Commission Number 1410974

**ADD.126**

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER | : | |
| 7, 2023 ELECTION OF TOWAMENCIN | : | NO.: |
| TOWNSHIP SUPERVISOR | : | ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
)  ss
COUNTY OF MONTGOMERY )

I, _Kelly Secoda_, being duly sworn, deposes and says:

1.     I am a Petitioner in the above-captioned matter.

2.     I am a registered elector of Towamencin Township.

3.     I voted in the General Election on November 7, 2023.

4.     I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.     The Petition for Election Conest is made in good faith.

6.     I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _Kelly Secoda_
Print: _Kelly Secoda_

Sworn to and subscribed before me on this

_2_ day of _December_, 2023.

_Sammie Maile_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
SAMANTHA L MAILE - Notary Public
Montgomery County
My Commission Expires November 16, 2025
Commission Number 1410974

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

IN RE: CONTEST OF NOVEMBER :
7, 2023 ELECTION OF TOWAMENCIN : NO.:
TOWNSHIP SUPERVISOR : ELECTION LAW MATTER
:

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
)  ss
COUNTY OF MONTGOMERY )

I, _GEORGE FRISCH_, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _George H. Frisch_

Print: _GEORGE FRISCH_

Sworn to and subscribed before me on this

_1_ day of _DECEMBER_, 2023.

_[signature]_

Notary Public

Commonwealth of Pennsylvania - Notary Seal
TERESA MARIE HENNING - Notary Public
Montgomery County
My Commission Expires September 2, 2026
Commission Number 1424488

**ADD.128**

IN THE COURT OF COMMON PLEAS OF MONTGOMERY
COUNTY PENNSYLVANIA

IN RE: CONTEST OF NOVEMBER :
7, 2023 ELECTION OF TOWAMENCIN : NO.:
TOWNSHIP SUPERVISOR : ELECTION LAW MATTER

## AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

COMMONWEALTH OF PENNSYLVANIA )
                                     ) ss

COUNTY OF MONTGOMERY )

        I, _Nancy J. Becker_____, being duly sworn, deposes and says:

        1. I am a Petitioner in the above-captioned matter.

        2. I am a registered elector of Towamencin Township.

        3. I voted in the General Election on November 7, 2023.

        4. I believe the facts stated in the Petition for Election Contest are true and, to the best of

my knowledge and belief, the election was illegal and the return thereof was not correct. 5. The

Petition for Election Conest is made in good faith.

        6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S.

§ 4904 relating to unsworn falsification to authorities.

                             Signature: _Nancy J. Becker_____

                            . Print: _Nancy J. Becker_____

Sworn to and subscribed before me on this

2nd day of _December_____, 2023.

_____
Notary Public

```
Commonwealth of Pennsylvania - Notary Seal
KEVIN M LOWRIE - Notary Public
Montgomery County
My Commission Expires Jan 7, 2024
Commission Number 1098235
```

ADD.129

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CONTEST OF NOVEMBER 7, 2023 ELECTION OF TOWAMENCIN TOWNSHIP SUPERVISOR | : : : | NO.: ELECTION LAW MATTER |

### AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | ss |
| COUNTY OF MONTGOMERY | ) | |

I, __Alyson Horcher__, being duly sworn, deposes and says:

1.  I am a Petitioner in the above-captioned matter.

2.  I am a registered elector of Towamencin Township.

3.  I voted in the General Election on November 7, 2023.

4.  I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5.  The Petition for Election Conest is made in good faith.

6.  I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _Alyson Horcher_

Print: _12/2/23 Alyson Horcher_

Sworn to and subscribed before me on this

_2nd_ day of _December_, 2023.

_Amita Patel_

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Amita Patel, Notary Public
Montgomery County
My commission expires September 4, 2024
Commission number 1375737
Member, Pennsylvania Association of Notaries

**ADD.130**

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## PENNSYLVANIA

IN RE: CONTEST OF NOVEMBER  :
7, 2023 ELECTION OF TOWAMENCIN  :   NO.:
TOWNSHIP SUPERVISOR  :   **ELECTION LAW MATTER**

## <u>AFFIDAVIT IN SUPPORT OF PETITION FOR ELECTION CONTEST</u>

COMMONWEALTH OF PENNSYLVANIA  )
                                )  ss
COUNTY OF MONTGOMERY  )

I, _Leo Horcher_, being duly sworn, deposes and says:

1. I am a Petitioner in the above-captioned matter.

2. I am a registered elector of Towamencin Township.

3. I voted in the General Election on November 7, 2023.

4. I believe the facts stated in the Petition for Election Contest are true and, to the best of my knowledge and belief, the election was illegal and the return thereof was not correct.

5. The Petition for Election Conest is made in good faith.

6. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signature: _____
Print: _12/2/23 Leo Horcher_

Sworn to and subscribed before me on this

2nd day of _December_, 2023.

_Amita Patel_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Amita Patel, Notary Public
Montgomery County
My commission expires September 4, 2024
Commission number 1375737
Member, Pennsylvania Association of Notaries

**ADD.131**