**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA STATE
CONFERENCE OF THE NAACP, *et al.*,

                     *Plaintiffs,*

     v.

AL SCHMIDT, in his official capacity as
Secretary of the Commonwealth, *et al.*,

                    *Defendants*

and

REPUBLICAN NATIONAL
COMMITTEE, *et al.*,

                *Intervenor-Defendants*

Case No. 1:22-cv-00339-SPB

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ........................................................................................ 2

BACKGROUND .......................................................................................... 3

    A.   Mail Ballot Voting in Pennsylvania ............................................. 3

    B.   The Envelope-Date Requirement ................................................ 6

    C.   Mass Disenfranchisement in Pennsylvania ............................... 7

    D.   This Action ................................................................................. 10

ARGUMENT ............................................................................................. 12

  I.    PLAINTIFFS HAVE STANDING ................................................. 12

    A.   The Individual Plaintiffs .......................................................... 13

    B.   The Organizational Plaintiffs .................................................. 14

  II.    SUMMARY JUDGMENT SHOULD BE GRANTED. ................................. 18

    A.   The Equal Protection Claim ..................................................... 19

    B.   The *Anderson-Burdick* Claim ................................................... 21

  III.    THE COURT SHOULD ENJOIN THE DATE REQUIREMENT. .............. 25

CONCLUSION .......................................................................................... 26

CERTIFICATE OF SERVICE ...................................................................

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ........................................................................ 3, 22

*Baker v. Carr,*
  369 U.S. 186 (1962) ............................................................................. 13

*Berckeley Investment Group Ltd. v. Colkitt,*
  455 F.3d 195 (3d Cir. 2006) ................................................................ 18

*Blunt v. Lower Merion School District,*
  767 F.3d 247 (3d Cir. 2014) ......................................................... 14, 15

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ............................................................................. 22

*Campbell v. Louisiana,*
  523 U.S. 392 (1998) ...................................................................... 17, 18

*Caplin & Drysdale, Chartered v. United States,*
  491 U.S. 617 (1989) ............................................................................. 17

*Constitution Party of Pennsylvania v. Cortes,*
  877 F.3d 480 (3d Cir. 2017) .............................................................. 3, 22

*Council of Alternative Political Parties v. Hooks,*
  121 F.3d 876 (3d Cir. 1997) ................................................................ 26

*Crawford v. Marion County Election Board,*
  553 U.S. 181 (2008) ............................................................................. 24

*Daunt v. Benson,*
  956 F.3d 396 (6th Cir. 2020) .............................................................. 22

*Democratic Executive Committee of Florida v. Lee,*
  915 F.3d 1312 (11th Cir. 2019) .......................................................... 23

*Department of Commerce v. N.Y.,*
  139 S. Ct. 2551 (2019) ......................................................................... 13

*Disability Rights Pennsylvania v. Pennsylvania Department of Human Services,*
  No. 19-CV-737, 2020 WL 1491186 (M.D. Pa. Mar. 27, 2020) .............. 15

*DNC. v. RNC,*
    No. CV 81-03876, 2016 WL 6584915 (D.N.J. Nov. 5, 2016) ................................. 26

*Dunn v. Blumstein,*
    405 U.S. 330 (1972) ................................................................................... 19

*Eakin v. Adams County Board of Elections,*
    676 F. Supp. 3d 449 (W.D. Pa. 2023) ........................................................ 22

*Firearms Policy Coalition v. Harris,*
    192 F. Supp. 3d 1120 (E.D. Cal. 2016) ...................................................... 26

*Frank v. Walker,*
    819 F.3d 384 (7th Cir. 2016) .................................................................... 24

*Harper v. Virginia State Board of Elections,*
    383 U.S. 663 (1966) ................................................................................... 19

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................................... 14

*Indiana State Conference of NAACP v. Lawson,*
    326 F. Supp. 3d 646 (S.D. Ind. 2018) ........................................................ 26

*League of Women Voters of North Carolina v. North Carolina,*
    769 F.3d 224 (4th Cir. 2014) .................................................................... 26

*League of Women Voters of United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ...................................................................... 26

*Maryland Shall Issue, Inc. v. Hogan,*
    971 F.3d 199 (4th Cir. 2020) .................................................................... 17

*Mazo v. New Jersey Secretary of State,*
    54 F.4th 124 (3d Cir. 2022) ...................................................................... 24

*Migliori v. Cohen,*
    36 F.4th 153 (3d Cir. 2022) ........................................................................ 6

*Neale v. Volvo Cars of North America, LLC,*
    794 F.3d 353 (3d Cir. 2015) ...................................................................... 12

*Northeast Ohio Coalition for the Homeless v. Husted,*
    837 F.3d 612 (6th Cir. 2016) ............................................................... 24, 25

*Obama for America v. Husted,*
    888 F. Supp. 2d 897 (S.D. Ohio 2012) ..................................................... 3, 19

*Obama for America v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ....................................................... 3, 21, 26

*Obama for America v. Husted*,
    No. 12-CV-636, 2014 WL 2611316 (S.D. Ohio June 11, 2014)............................ 21

*Ohio State Conference of NAACP v. Husted*,
    768 F.3d 524 (6th Cir. 2014) ....................................................... 24, 25

*Online Merchants Guild v. Hassell*,
    No. 21-CV-369, 2021 WL 2184762 (M.D. Pa. May 28, 2021) ............................. 15

*Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*,
    280 F.3d 278 (3d Cir. 2002)....................................................... 16, 17

*Pennsylvania State Conference of NAACP Branches v. Secretary
Commonwealth of Pennsylvania*,
    97 F.4th 120 (3d Cir. 2024) ....................................................... 2, 12, 25

*Price v. New York State Board of Elections*,
    540 F.3d 101 (2d Cir. 2008)............................................................... 22

*Public Integrity Alliance, Inc. v. City of Tucson*,
    836 F.3d 1019 (9th Cir. 2016) ........................................................... 24

*Reynolds v. Sims*,
    377 U.S. 533 (1964) .................................................................... 19

*Ritter v. Migliori*,
    143 S. Ct. 297 (Mem) (2022)............................................................... 6

*Shields v. Zuccarini*,
    254 F.3d 476 (3d Cir. 2001)............................................................... 26

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ........................................................... 25

*United States v. Berks County*,
    277 F. Supp. 2d 570 (E.D. Pa. 2003) .................................................... 26

*United States v. Williams*,
    124 F.3d 411 (3d Cir. 1997).............................................................. 19

*Vote.Org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023)........................................................... 16, 18

iv

**Statutes**

25 P.S. § 2602(z.5)(3) ..................................................................................... 3

25 P.S. § 3146.2 ............................................................................................. 3

25 P.S. § 3146.2b ........................................................................................... 3

25 P.S. § 3146.6(a) .................................................................................. 3, 5, 19

25 P.S. § 3146.6(b) ......................................................................................... 3

25 P.S. § 3146.6(c) ...................................................................................... 3, 4

25 P.S. § 3146.8(g)(4) ..................................................................................... 3

25 P.S. § 3150.12 ............................................................................................ 3

25 P.S. § 3150.12b .......................................................................................... 3

25 P.S. § 3150.16(a) ................................................................................. 3, 5, 19

25 P.S. § 3150.16(b) ........................................................................................ 3

25 P.S. § 3150.16(c) ..................................................................................... 3, 4

25 Pa C.S. § 3511 ............................................................................................ 4

25 Pa. C.S. § 3501 .......................................................................................... 4

25 Pa. C.S. § 3503(c)(4) .............................................................................. 4, 19

25 Pa. C.S. § 3506(a) ...................................................................................... 4

25 Pa. C.S. § 3508 .......................................................................................... 4

25 Pa. C.S. § 3509 .......................................................................................... 4

25 Pa. C.S. § 3515(a) .................................................................................. 5, 19

25 Pa. C.S. § 3553 ......................................................................................... 24

52 U.S.C. § 10101(a)(2)(B) ............................................................................ 10

52 U.S.C. § 20301 ........................................................................................... 4

Act of Oct 31, 2019, P.L. 552, No. 77, § 8 ....................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 17

**INTRODUCTION**

In 2022, thousands of Pennsylvanians were arbitrarily denied the right to vote based on a meaningless paperwork error. All were registered voters whose mail ballot applications had been approved. All timely filled out their mail ballots and signed the declaration form printed on the outer mail ballot return envelope. Their ballots were all timely received by 8 p.m. on Election Day. Their only mistake was that they failed to write a date on the form, or they wrote a date that election officials deemed incorrect, often because of some trivial typo or formatting mistake. Over ten thousand votes were set aside on this basis. And with the November 2024 elections approaching, this mass disenfranchisement is poised to happen again.

This Court has already concluded that the handwritten date on the declaration form is "wholly irrelevant." Nov. 21 MSJ Op., ECF No. 347 at 67. And the Third Circuit, while reversing the Court's prior decision as a matter of statutory interpretation, agreed that the handwritten date "is immaterial" to a voter's qualifications and "serves little apparent purpose." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 125, 129 (3d Cir. 2024). Disenfranchising voters based on a paperwork mistake that serves no election-related function whatsoever is not only wrong; it is unconstitutional, in at least two ways.

*First*, it violates the Equal Protection Clause by treating some mail ballot voters differently than others. Domestic mail ballot voters in Pennsylvania are subjected to scrupulous enforcement of the arbitrary envelope-date rule, under which a minor slip of the pen leads to disenfranchisement. But overseas mail ballot voters' paperwork is not so scrutinized, and the record demonstrates that overseas mail

ballot voters who omitted the handwritten date from the form had their votes opened and counted.   States may not treat voters unequally without "substantial justification," and none exists here.  *Obama for Am. v. Husted*, 888 F. Supp. 2d 897, 905–06 (S.D. Ohio 2012) ("*Husted I*"), *aff'd*, 697 F.3d 423 (6th Cir. 2012) ("*Husted II*").

*Second*, it violates the First and Fourteenth Amendments.  States may not burden the constitutional right to vote unless legitimate state interests of sufficient weight justify the burdens imposed.  *See Const. Party of Pa. v. Cortes*, 877 F.3d 480, 484 (3d Cir. 2017) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).  The rigid enforcement of the date requirement imposes a burden, subjecting thousands of voters to disenfranchisement for minor mistakes and typos.  And yet there is no justification for this burden because the handwritten date is totally irrelevant.[1]

This Court should grant summary judgment, declare the challenged mass disenfranchisement unlawful, and issue an injunction to prevent irreparable harm, including with respect to the upcoming 2024 election.

## BACKGROUND[2]

### A. Mail Ballot Voting in Pennsylvania

Pennsylvania allows all registered, eligible voters to vote by mail.  SMF ¶ 2; *see also* Act of Oct 31, 2019, P.L. 552, No. 77, § 8.  A voter seeking to vote by mail

---

[1] Plaintiffs include their proposed *Anderson-Burdick* claim for consideration to the extent that their pending motion for leave to amend (ECF No. 388) is granted.

[2] The below facts are drawn from Plaintiffs' L.R. 56(B)(1) Statement of Material Facts ("SMF") filed in conjunction with the instant motion.  To avoid duplication of filings, Plaintiffs incorporate and rely on the Appendix ("APP_") filed on April 21, 2023 in connection with their prior summary judgment motion (ECF Nos. 277–282 & 288).

must complete an application and provide their name, address, and proof of identity to their county board of elections. SMF ¶ 5; 25 P.S. §§ 3146.2, 3150.12; *see also* 25 P.S. § 2602(z.5)(3). County boards of elections then confirm applicants' qualifications by verifying their proof of identity and comparing the information provided with a voter's registration record. SMF ¶¶ 4–7; 25 P.S. §§ 3146.2b, 3150.12b, 3146.8(g)(4). A county board's determinations are conclusive by law, absent a successful challenge brought before Election Day. SMF ¶ 8; 25 P.S. §§ 3146.2b, 3150.12b, 3146.8(g)(4).

After a board verifies the voter's identity and eligibility, it sends them a package that contains a ballot, a "secrecy envelope," and a pre-addressed outer return envelope, on which a "voter declaration form" is printed. SMF ¶¶ 7–9; 25 P.S. §§ 3146.6(a), 3150.16(a).[3] Counties track who has returned a mail ballot. 25 P.S. §§ 3146.6(b)(1), (3), 3150.16(b)(1), (3).

At "any time after receiving" their mail-ballot package, the voter must mark their ballot, put it inside the secrecy envelope, and place the secrecy envelope in the Return Envelope. SMF ¶ 10; 25 P.S. §§ 3146.6(a), 3150.16(a). They must then "fill out, date and sign the declaration printed on [the return] envelope." 25 P.S. §§ 3146.6(a), 3150.16(a). SMF ¶ 13. The voter must then deliver the ballot, in the requisite envelopes, to their county elections board. *Id.*

To be timely, the county board of elections must receive a ballot by 8 p.m. on Election Day. SMF ¶ 11; 25 P.S. §§ 3146.6(c), 3150.16(c). Upon receipt, the boards

---

[3] In 2022, some counties sent the mail-ballot package out as early as mid-September, but more than half began sending them to voters in October. SMF ¶ 34.

stamp or otherwise mark the envelope with the date of receipt to confirm its timeliness and enter this information in the Statewide Uniform Registry of Electors ("SURE") system.  SMF ¶ 12.  The timeliness of the voter's ballot is determined by when it was received and stamped, not by any handwritten date.  SMF ¶¶ 11, 12 (citing 25 P.S. §§ 3146.6(c), 3150.16(c)); *see also* SMF ¶¶ 53, 54.

An analogous statutory scheme applies to Pennsylvanians who vote by mail from abroad.  *See* 25 Pa. C.S. § 3501 *et seq.*  Such overseas voters may apply for a mail ballot using the same application as domestic voters, or else by a generic, federally-created application form.[4]  *See* 25 Pa. C.S. § 3506(a).  Their mail ballots are sent out at least 45 days before the election.  25 Pa. C.S. § 3508.  To be timely, the ballot must be submitted for mailing before midnight on the day before Election Day and received by the voter's county board of elections by 5 p.m. seven days after Election Day.  25 Pa. C.S. §§ 3509, 3511.  As with domestic mail ballot voters, overseas mail ballot voters must complete a form whereby they make "specific representations" about their eligibility to vote, as well as the timeliness of their ballot.  25 Pa. C.S. § 3503(c)(4).  This form includes a line for the date next to a voter's signature.  *See* SMF ¶¶ 13, 101; *see also, e.g.*, APP_01291 (Bucks military ballot envelope).  Notably, and unlike the statutory scheme for domestic mail ballot voters, the overseas mail ballot statute also provides that "[a] voter's mistake or omission in the completion of

---

[4] The federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. § 20301 *et seq.* ensures that states must provide mail ballot options for Americans abroad.  The Pennsylvania statutory provisions here are broadly consistent with and operate in tandem with UOCAVA.

a document under this chapter" does not "invalidate a document submitted under this chapter" "as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote."  25 Pa. C.S. § 3515(a).

Pennsylvania voters have embraced mail-ballot voting.  In the 2022 general election, over 1.2 million Pennsylvanians voted by mail.  SMF ¶¶ 3, 35.

### B. The Envelope-Date Requirement

This case involves the requirement that a domestic mail ballot voter "shall … date" the voter declaration form on the mail ballot return envelope.  25 P.S. §§ 3146.6(a), 3150.16(a).  SMF ¶ 13.  The enforceability of this requirement has been the subject of repeated litigation.  SMF ¶¶ 14–21.  Among other cases, it was successfully challenged on federal statutory grounds in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), but that decision was vacated as moot after the ballots at issue were opened and counted.  *Ritter v. Migliori*, 143 S. Ct. 297 (Mem) (2022).

On October 16, 2022, less than a week after the *Migliori* vacatur, and with voting in the 2022 general election underway, a group of party-affiliated petitioners brought a petition in the Supreme Court of Pennsylvania, seeking to invalidate mail ballots with no handwritten date or an "incorrect" handwritten date on the Return Envelope.  SMF ¶ 17.  On November 1, 2022, the court issued an order (the "*Ball* order") directing in relevant part that such mail ballots should be segregated and not counted.  SMF ¶ 18; APP_01147–48.  On November 5, the court issued a supplemental order defining the acceptable "correct" date range for mail ballots for purposes of the 2022 election, apparently selecting September 19 as the start of the range based on the earliest date on which some county election boards began sending mail ballot

materials to voters.  SMF ¶ 21, APP_01150.

The *Ball* rule, mandating strict compliance with the requirement to handwrite a correct date on the voter declaration form on the outer mail ballot envelope in order to have a mail ballot opened and counted, remains in effect today.

### C. Mass Disenfranchisement in Pennsylvania

In the 2022 general election, the county boards of elections refused to count thousands of timely-received mail ballots cast by registered domestic mail ballot voters based on missing or purportedly incorrect handwritten dates on the envelope declaration form.  SMF ¶¶ 33, 36–39.  In all, the county boards set aside at least 10,506 voters' ballots on this basis.  SMF ¶ 36.  The affected voters are Democrats, Republicans, and Independents alike.  SMF ¶ 44.  They hail from across the Commonwealth.  SMF ¶ 36.  Their ages range from 18 to at least 101 years old.  SMF ¶ 45.  Five affected voters are the individual Plaintiffs in this case.  SMF ¶ 22–26.

It is undisputed that every single one of the voters whose votes were set aside for envelope-dating issues was eligible and registered to vote and their county boards of elections confirmed their identities and their eligibility.  SMF ¶ 42; *see also* SMF ¶¶ 4–6.  They all filled out their ballots at the proper time, which by law is "any time" after receiving the mail ballot package.  SMF ¶¶ 10, 37–39, 53.  They all timely returned their ballots by 8 p.m. on Election Day.  SMF ¶¶ 37–39, 54.

It is also undisputed that the handwritten date is not used in or related to determining or ascertaining a voter's qualifications.  The county boards of elections did not use the handwritten date for any purpose related to determining or confirming the mail ballot voter's age, citizenship, county or duration of residence, or

7

incarceration status.  SMF ¶¶ 47–50.  Nor did they use the handwritten date to establish whether they received the ballot by 8 p.m. on November 8, 2022.  SMF ¶¶ 51–52.  A voter whose mail ballot was timely received by their county board of elections could *only* have signed the voter declaration form in the time period between the date that their county board of elections sent mail ballot packages to voters (*i.e.*, in September or October 2022) and the deadline by which their ballots must have been received (8 p.m. on November 8, 2022).  SMF ¶¶ 53–55.  It is literally impossible for an affected voter to have signed the form at any other time.  SMF ¶¶ 53–55, 73.

None of the county boards of elections identified any fraud concerns with respect to ballots that were set aside due to a missing or "incorrect" envelope date.  SMF ¶ 43.  Nor was there any evidence that the date on the voter declaration form is used to prevent the counting of fraudulently voted ballots.  Two counties pointed to an incident from the 2022 primary, in which one individual apparently forged her deceased mother's signature on a mail ballot envelope form, *e.g.*, SMF ¶ 60, but an official from the county where the incident occurred admitted that the deceased voter had already been removed from the voter rolls before her ballot had even been received, and her vote would never have been counted regardless of the handwritten date, APP_00890–891.  Indeed, it is undisputed that, when a voter dies before Election Day, their vote is set aside and not counted regardless of any handwritten date on the declaration form.  SMF ¶¶ 61–64.

The record demonstrates that, despite its evident lack of purpose, the envelope date requirement was stringently and sometimes arbitrarily enforced.  Voters were

required to write a complete date, on the right place on the envelope, using the month-day-year format as opposed to another format, and avoiding any unintentional slips of the pen, misprints or mistakes, like writing their birthdate.  In particular:

- Many counties refused to count ballots where the envelope date was correct but missing one term, such as "10 - - 2022," or "Oct. 25," SMF ¶¶ 71, 76, 80.  In all, at least 103 voters were disenfranchised on this basis.  SMF ¶¶ 71, 76, 80.

- Counties set aside at least 12 ballots where the voter wrote a "correct" date but wrote it in the wrong place on the envelope.  SMF ¶ 83.

- At least 18 counties refused to count ballots that appeared to use the international format (*i.e.*, day/month/year).  SMF ¶¶ 86–88.  Some counties purported to count ballots with international-format envelope dates but admitted that they did so only inconsistently.  SMF ¶ 87; *see* APP_00929a–929b, 929m–929n.  Others conceded they did not accept ballots where the envelope date was in the international format. SMF ¶ 86.  Overall, at least 34 ballots were set aside even though the envelope date was correct under the international date format.  SMF ¶ 88.

- Counties refused to count hundreds of ballots (at least 1,734 in all) with obviously unintentional slips of the pen (such as a voter writing "2021," or "2033," or "2202" instead of "2022," or writing "10/111/2022" instead of "10/11/2022").  SMF ¶¶ 67, 70, 74, 75, 77.

- Most counties refused to count mail ballots where the voter mistakenly wrote their birthdate on the envelope.  SMF ¶¶ 68–69.  Overall, at least 50 ballots were set aside because the voter mistakenly wrote their birthdate.  SMF ¶ 68.

- In their efforts to scrupulously enforce the envelope date requirement, counties also mistakenly set aside at least 47 ballots with envelope dates that were plainly within the range of the *Ball* order and were otherwise complete and in the proper place.  SMF ¶ 97.[5]

---

[5] While some counties sought to notify voters whose ballots were set aside and make cures available, thousands of affected voters did not have the opportunity to cure in 2022.  *See* SMF ¶ 40 (at least 21 counties provided voters with no notice); SMF ¶ 41 (at least 20 more provided voters with no notice beyond uploading information into the SURE system); SMF ¶ 115–116 (at least 35 did not allow voters to cure).  Consistent with that, four of voter Plaintiffs had no opportunity to cure, and a fifth received notice on Election Day when it was in practice too late to attempt any cure.

The record also shows that the burden from this rigid enforcement of the requirement to handwrite a date on the declaration form fell hardest on older voters. More than half of those whose ballots were not counted were age 65 or older. APP_01188 (Greenburg Decl. ¶ 11); SMF ¶ 45.[6]

The record also shows that, unlike with the voter declaration forms completed by domestic mail ballot voters, errors with respect to the handwritten date on the declaration forms that accompany overseas mail ballot voters' mail ballots did not necessarily lead to disenfranchisement. At least one county (Lehigh) did not review the handwritten dates on overseas mail ballot voters' declaration forms. SMF ¶ 109. And at least three counties, including Philadelphia and Bucks Counties, did review the overseas ballots, found erroneous or omitted dates on the declaration forms, and (consistent with state law) opened and counted the ballots anyway. SMF ¶ 108. Many other counties indicated that they did not believe they received any overseas ballots with missing or incorrect handwritten dates. SMF ¶ 110.

### D. This Action

In the days preceding the November 2022 election, Plaintiffs—individual voters and nonpartisan organizations dedicated to promoting democracy and civic engagement—filed this lawsuit against the Secretary of the Commonwealth and all

---

SMF ¶¶ 23–26; *e.g.,* APP_01049 (Smith Decl. ¶ 14), APP_01058 (Polinski Decl. ¶ 41); App_1063 (Seastead Decl. ¶ 11); APP_01053 (Bencan Decl. ¶ 13).

[6] An expert report submitted in the parallel *Eakin* litigation further confirms the point. *See* Expert Declaration of Daniel Hopkins, *Eakin v. Adams County Board of Elections*, No. 22 Civ. 340, ECF No. 285–69, at ¶¶ 20, 42, 56.

67 county boards of elections, asserting claims under the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and the Equal Protection Clause. Various partisan actors intervened to defend the disenfranchisement of voters.

For relief, the individual voters sought a declaration and nominal damages, as well as to have their ballots opened, counted, and reflected on the counties' online and paper records of the total votes in the November 2022 election. *See* Am. Compl., ECF No. 121 at 37–38. The Defendants maintain records of the vote tallies for past elections and are able to update them if ordered to do so. SMF ¶¶ 112–114.

The Organizational Plaintiffs—who in 2022 scrambled to prevent voters who had already cast their mail ballots from being disenfranchised, diverting resources from their work engaging new voters—sought a declaration and an order enjoining the disenfranchisement of voters in future elections based on this immaterial paperwork error. *See* Am. Compl., ECF No. 121 at 37–38; *see* SMF ¶ 27–32.

Plaintiffs and Defendants cross-moved for summary judgment, and the Court granted Plaintiffs' motion based on their statutory claim, concluding based on the undisputed facts that the voter-written date on the envelope declaration form was "wholly irrelevant." Nov. 21 MSJ Op., ECF No. 347 at 67; *see id.* at 64–73. The Court declined to rule on the Equal Protection claim. *Id.* at 73–76. The Court also dismissed 55 of the 67 county Defendants on standing grounds after concluding that none of the plaintiffs had been injured by those counties' discarding of mail ballots. *Id.* at 15–34.

Certain Defendants appealed, and the Third Circuit reversed on the statutory claim. The court of appeals acknowledged that the "date on the declaration plays no

role in determining a ballot's timeliness," which is "instead established both by a receipt stamp placed on the envelope by the county board and separately through scanning of the unique barcode on the envelope." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 127. It agreed that the requirement to handwrite the date on the envelope form "serves little apparent purpose" and indeed "bears no relation—it is immaterial—to whether a voter is qualified under Pennsylvania law to vote." *Id.* at 125, 131. However, it concluded that the statute did not apply as a matter of law to the envelope declaration form. *Id.* The court of appeals remanded "for further proceedings on the equal protection claim." COA Mandate, ECF No. 384 at 3.

Plaintiffs subsequently sought to amend their complaint to add an additional constitutional cause of action under the First and Fourteenth Amendments for consideration alongside the Equal Protection claim. *See* Pls. Motion for Leave to Amend, ECF No. 387. That motion remains pending.

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING

Plaintiffs satisfy the three requirements of constitutional standing: an "injury-in-fact," a "causal connection between the injury and the conduct complained of," and a "likelihood that the injury will be redressed by a favorable decision." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (cleaned up) (citation omitted). This Court previously held that at least one Plaintiff had standing as against the Secretary and at least twelve counties. *See* Nov. 21 MSJ Op., ECF No. 347 at 34. That has not changed: Plaintiffs have standing as against at least those thirteen

defendants on their remaining claims.[7]

## A. The Individual Plaintiffs

The five Individual Plaintiffs undoubtedly have standing to challenge the denial of their own right to vote. *E.g.*, *Baker v. Carr*, 369 U.S. 186, 206–207 (1962).

As for an injury-in-fact, their ballots were not counted and included in the totals for the 2022 election by the county boards of elections in Montgomery, Warren, and York Counties due to an incorrect or missing envelope date. SMF ¶¶ 22–26; Nov. 21 MSJ Op., ECF No. 347 at 30–31. Defendants' rejection of their ballots—based on a requirement that serves no purpose—resulted in their votes not being opened, counted, and included in the totals for the election, violating their rights in a concrete and personalized fashion. *Baker*, 369 U.S. at 208.

Those injuries are traceable to the county boards that refused to count their ballots and to the Secretary, who instructed counties to "refrain from counting" their votes and enter their ballots as "cancelled" in the SURE system. Nov. 21 MSJ Op., ECF No. 347 at 31; SMF ¶¶ 19–20; *see also Dep't of Com. v. N.Y.*, 139 S. Ct. 2551, 2566 (2019) (traceability met based on "the predictable effect of Government action").

---

[7] Beyond the twelve non-dismissed counties, the evidence in the record indicates that the actions of the other counties who refused to count voters' ballots also contributed to the Organizational Plaintiffs' injury. In particular, certain Organizational Plaintiffs conduct voter assistance and education work on a statewide basis, including running a voter assistance hotline that is available to voters whose mail ballots are or may have been rejected, and conducting educational campaigns around the envelope-date issue. *See* SMF ¶¶ 27 (PA NAACP), 28 (LWVPA); 30 (Common Cause PA); APP_01112-01113, APP_01087-01089, APP_01066-01067. Relief as against all counties would fully redress this injury and prevent its occurrence in future elections. Accordingly, the Court can reconsider or revisit its standing decision as to the dismissed counties with respect to the pending claims.

Moreover, "the individual Plaintiffs have sufficiently demonstrated that a favorable decision from this Court would redress their injuries." *See* Nov. 21 MSJ Op., ECF No. 347 at 31–32. A declaration that strict enforcement of the envelope-date requirement is unconstitutional and an order requiring the Secretary and the county boards to count their ballots would result in their votes being counted and included in the totals for the 2022 election. SMF ¶¶ 112–114.

## B. The Organizational Plaintiffs

In its prior ruling, the Court indicated that at least one Organizational Plaintiff has Article III standing as against the Secretary and at least eleven county boards.[8] *See* Nov. 21 MSJ Op., ECF No. 347 at 19, 22–25, 29–30, 32–33. The same plaintiffs have standing to pursue constitutional claims against at least the same county boards.

First, the Organizational Plaintiffs have each "provided undisputed evidence of injury" from the unlawful enforcement of the envelope-date requirement. Nov. 21 MSJ Op., ECF No. 347, at 29. An organization suffers a cognizable injury when a defendant "perceptibly impair[s]" its ability to provide its primary services or carry out its mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 308–14 (3d Cir. 2014). Such harm occurs when the organization "redirect[s] its efforts and divert[s] its resources to address the" defendants' conduct, when the organization otherwise "would have spent its time, money, and resources furthering its primary aims." *Online Merchs. Guild v.*

---

[8] The eleven counties are Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Washington, Westmoreland, and York.

*Hassell*, No. 21-CV-369, 2021 WL 2184762, at *4 (M.D. Pa. May 28, 2021); *see also Blunt*, 767 F.3d at 313; *Disability Rts. Pa. v. Pa. Dep't of Hum. Servs.*, No. 19-CV-737, 2020 WL 1491186, at *5–6 (M.D. Pa. Mar. 27, 2020).

That is the case here.  The Organizational Plaintiffs reassigned staff, members, and/or volunteers from their core, intended election-related efforts (engaging and turning out new voters, and educating prospective voters about the issues at stake) towards responding to the mass disenfranchisement of voters for a technical error on the envelope declaration form, including by making thousands of calls and texts to affected voters, attending board meetings to advocate for cure opportunities, and even stationing volunteers at the polls to warn voters about potential disenfranchisement. SMF. ¶¶ 27–32; *see, e.g.*, APP_01068, 1084–1088, 1108–09, 1114, 1126, 1133.  They will need to do so in future elections absent relief from this Court.  SMF ¶¶ 27–32.

Second, the Organizational Plaintiffs' injuries are traceable to the Secretary and county election officials, who caused the disenfranchisement of voters and thereby forced this diversion of resources.  *See* Nov. 21 MSJ Op., ECF No. 347 at 19, 22–25, 29–30, 32–33.  For instance, in Berks County, the PA NAACP had to conduct a social media campaign, among other efforts, in response to the county's strict enforcement of the date requirement.  SMF ¶ 27; APP_01068–1074.  As another example, the LWVPA expended staff time and resources in Lancaster County to contact the county board, attend board meetings, advocate for a notice-and-cure policy, and educate voters in the county.  SMF ¶ 28; APP_01084–1085, 1095, 1097.

Such efforts would otherwise have been spent on other voter-engagement and election-protection activities. *E.g.*, SMF ¶ 28(h); APP_01067–1068, 1087.

Finally, these injuries are redressable by a declaration and an injunction against the use of the irrelevant date on the envelope declaration form to mass-disenfranchise voters, which "would permit the organizational Plaintiffs to redirect their resources back to their stated goals and mission for future elections." Nov. 21 MSJ Op., ECF No. 347 at 18–19, 32; *see* SMF ¶¶ 27(f), 28(h), 29(e), 30(f), 31(g), 32(e).

Nor is there any prudential bar to the Organizational Plaintiffs enforcing the constitutional rights of individual voters. To the extent third-party standing principles might be applicable here, the relevant inquiry balances three factors: "1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a 'close relationship'; and 3) the third party must face some obstacles that prevent it from pursuing its own claims." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288–89 (3d Cir. 2002). These principles apply in the voting context and allow organizations to assert the rights of voters. *See generally id.* at 288 n.10 (collecting Supreme Court and other appellate cases); *see Vote.Org v. Callanen*, 89 F.4th 459, 468, 472 (5th Cir. 2023). They are met here.

*First*, the independent injury requirement is met as described already, by dint of the Organizational Plaintiffs' diversion of resources.

*Second*, the "close relationship" requirement is met because the Organizational Plaintiffs share interests with the voters who they serve, and can operate "fully, or very nearly, as effective a proponent" of disenfranchised voters' rights as the voters

themselves. *Pa. Psychiatric Soc.*, 280 F.3d at 288–89. The Organizational Plaintiffs are non-partisan, pro-democracy organizations whose core missions include educating, registering, turning out, and advocating on behalf of voters. SMF ¶¶ 27 (PA NAACP), 28 (LWVPA), 29 (POWER), 30 (Common Cause PA), 31 (B-PEP), 32 (Make the Road PA). During 2022 and other election cycles, they undertook extensive efforts to mobilize and educate voters and to protect voters' right to vote and have their vote counted. *Id.* Those efforts specifically included work to mitigate harm from disenfranchisement due to the enforcement of the envelope-date requirement. *Id.*

*Third*, individual disenfranchised voters "face obstacles to pursuing litigation themselves." *See Pa. Psychiatric Soc.*, 280 F.3d at 290. The issue is not whether voters face some "absolute bar from suit," but rather whether as a practical matter there is "some hindrance to the third party's ability to protect his or her own interests." *Id* (citation omitted). Indeed, third-party standing may be available even where there is "no hindrance" to litigation. *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215 (4th Cir. 2020) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989)). Here, voters in many counties received no notice that their ballots were set aside. SMF ¶¶ 40–41. Even in counties that provided notice, voters may not have seen it, or may not have seen it in time to take legal action. And for most of those who had notice, litigating for nominal damages is financially infeasible. *See Campbell v. Louisiana*, 523 U.S. 392, 398, 400 (1998) (third-party standing warranted when "the economic burdens of litigation and the small financial reward available" create "economic disincentives" for affected individuals to sue).

The Fifth Circuit's recent *Vote.Org* decision is on point. There, the court held that a nonprofit organization engaged in voter registration had third-party prudential standing to assert claims based on the constitutional and statutory rights of effected voters. *See Vote.Org*, 89 F.4th at 468, 472. There, as here, the nonprofit plaintiff challenged a voting-related restriction based on a resource-diversion injury, and it raised claims under the Materiality Provision of the Civil Rights Act and the First and Fourteenth Amendments. *See id.* at 468–69, 490. The Fifth Circuit held that the organization's voter-engagement efforts and its status as a "voting rights organization" gave it a "concrete" interest in the case "sufficient to confer third-party standing," and that the organization was capable of ensuring that the issues would be "sharply presented," making "prudential concerns … less salient." *Id.* at 472; *see also Campbell*, 523 U.S. at 400. So too here. Because all of the relevant considerations lie in favor of the Organizational Plaintiffs, prudential standing considerations are no bar to their assertion of the constitutional claims in this action.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED.

Summary judgment "shall" be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). On the undisputed facts, Plaintiffs are entitled to judgment on their Equal Protection claim and, to the extent that the pending motion for leave is granted, their *Anderson-Burdick* claim as well.

### A. The Equal Protection Claim

Pennsylvania law creates two classes of mail-ballot voters and treats them differently with respect to the envelope-date rule: Overseas mail ballot voters do not face disenfranchisement for mistakes in writing the date on the required declaration accompanying their mail ballot, while domestic mail-ballot voters do. Such discrimination is unlawful.

The Equal Protection Clause requires that similarly situated voters be subject to the same basic rules. *E.g.*, *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). It "guarantees the opportunity for equal participation by all voters" in the electoral process. *Reynolds v. Sims*, 377 U.S. 533, 565–66 (1964). It applies with no less force to the mail voting process, for "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966). Voters accordingly "cannot be restricted or treated in different ways without substantial justification from the state." *Husted I*, 888 F. Supp. 2d at 905–06. Indeed, where the right to vote is at stake, unequal treatment of similarly situated voters is subject to exacting review. *E.g.*, *United States v. Williams*, 124 F.3d 411, 422 (3d Cir. 1997). Here, the challenged discrimination would fail constitutional review regardless of the level of scrutiny, because domestic and overseas voters are treated differently in a manner that is arbitrary and unjustified by any state interest.

Domestic mail ballot voters in Pennsylvania must meticulously write the date correctly on their return envelope, or they will be disenfranchised. SMF ¶ 37. In 2022, over 10,000 voters' ballots were not counted solely due to a missing or

supposedly "incorrect" handwritten date on the return envelope form. SMF ¶ 36. All those voters were otherwise eligible and qualified, SMF ¶ 42, but were disenfranchised due to strict enforcement of the envelope-date requirement, consistent with the Pennsylvania Supreme Court's strict interpretation of the "shall … date" language at issue in *Ball*. 25 P.S. §§ 3146.6(a), 3150.16(a); *see, e.g.*, SMF ¶ 18; APP_01147–1148.

Overseas mail ballot voters are treated differently. They were also required, under the statutory scheme governing voting-by-mail for overseas voters, to fill out a declaration form with a signature and date line. 25 Pa. C.S. § 3503(c)(4); SMF ¶ 98–99, 101. But when it comes to paperwork mistakes, they are subject to a different rule: For overseas voters, a "voter's mistake or omission in the completion of a document" shall not invalidate their ballot "as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote." 25 Pa. C.S. § 3515(a)). Consistent with the facial discrimination imposed by the statute, the undisputed record reflects that in 2022, even though the overseas mail ballot voter declaration form called for a date along with voters' signatures, many counties either did not check the date on the form at all, SMF ¶ 108, or checked the voter declarations and identified errors but counted the ballot anyway, SMF ¶ 109, or otherwise did not set aside any timely-received military ballots due to a missing or incorrect date, SMF ¶ 110; *see also* Nov. 21 MSJ Op., ECF No. 347 at 74. Three of the 12 counties remaining in the case (Lehigh, Philadelphia, and Bucks) admit to treating the overseas mail ballots differently, and the others simply did not receive any with missing or "incorrect" handwritten dates in the first place.

This case is indistinguishable from (and if anything, easier than) the Sixth Circuit's *Husted* case, which invalidated an Ohio law that set different early voting periods for in-state versus overseas voters. 697 F.3d at 435. There, as here, there is "no relevant distinction between the two groups" of voters for purposes of the handwritten date on declaration form that they complete with their mail ballot package. *Id.* For both, the handwritten date is not used for any purpose, and there is no conceivable basis for distinguishing between domestic and overseas voters with respect to the date requirement.[9] As such, "there is no reason to provide [domestic] voters with fewer opportunities to vote than [overseas] voters." *Id.* In *Husted*, the district court on remand found the challenged rule disadvantaging domestic voters was "unconstitutional to the extent it treats [overseas] voters more favorably than non-[overseas] voters" and granted summary judgment for the plaintiffs. *Obama for Am. v. Huste*d, No. 12-CV-636, 2014 WL 2611316, at *4 (S.D. Ohio June 11, 2014). This Court should do the same.

### B. The *Anderson-Burdick* Claim

Discarding voters' mail ballots based on the failure to correctly handwrite a meaningless date also unconstitutionally burdens the fundamental right to vote without any substantial justification. In assessing constitutional right-to-vote claims, courts apply the *Anderson-Burdick* sliding-scale balancing test, considering "the character and magnitude of the asserted injury" and weighing those against the

---

[9] If anything, the handwritten date might be *more* relevant for *overseas* voters, whose ballots may be received after Election Day if they were sent before Election Day—and yet scrupulous adherence to the form-dating requirement is excused for those voters. But in both cases, the handwritten date is irrelevant and is not used for any purpose.

"precise interests put forward by the State as justifications for the burden imposed by its rule." *Cortes*, 877 F.3d at 484 (quoting *Anderson*, 460 U.S. at 789); *see also Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

### i. The challenged requirement burdens the right to vote

Any "more-than-minimal" burden on the right to vote is subject to the *Anderson-Burdick* requirement that those burdens be justified by a sufficient state interest. *Daunt v. Benson*, 956 F.3d 396, 406–07 (6th Cir. 2020) (quoted in *Eakin v. Adams Cnty. Bd. of Elections*, 676 F. Supp. 3d 449, 459 (W.D. Pa. 2023)); *accord Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109–10 (2d Cir. 2008) ("at least some" burden on voters which is "not trivial" is required).

Here, the burden imposed on voters is substantial, especially given the consequence of noncompliance, and certainly more than trivial. Enforcing the date requirement burdens voters because it requires them, on pain of disenfranchisement, to read and understand the instruction related to the handwritten date; correctly input the month, date, and year without any typos or slips of the pen; and, at least in some instances, to precisely adhere to the traditional (rather than international) month-day-year format, to refrain from omitting any terms (such as the specific day or year), and to otherwise comply with their county's formatting preferences. *See* SMF ¶¶ 38–39; 65–68; 70–71; 73–77, 80; 83–88; *see, e.g.* APP_01412 (ballot set aside for using international date format); APP_01438 (ballot set aside for noting month and year but not date). The burden is increased because voters often lack any opportunity to fix any mistake, no matter how trivial, either as a practical matter (because they did not find out about the mistake in time) or for about half of the

counties in 2022, as a matter of express county policy. *See* SMF ¶ 23–26, 40–41, 115–116. The cost of making any mistake in this process is *total disenfranchisement*, even where the voter's meaning and intention is obvious. *See, e.g., Democratic Exec. Comm. of Fla. v. Lee,* 915 F.3d 1312, 1318–1322 (11th Cir. 2019) ("serious" burden where signature match policy disenfranchised voters with little chance to cure).

The record puts the absurd and arbitrary technical perfection required of voters into stark relief. County officials admitted that it was literally impossible for a voter to have signed the voter declaration form in any year other than 2022. *E.g.*, SMF ¶ 65. And, in examining envelopes that had been set aside, county officials were often easily able to recognize a voter's mistake. For example, one voter wrote "10/23/2033" on their mail ballot envelope, leading to their disenfranchisement for mistakenly writing "33" instead of "22." APP_01432. The ballot was date-stamped by their county board of elections on October 25, 2022. APP_01432. Asked whether he had "any doubt that this voter was trying to write 10/23/*2022*" on the form, the county's chief election official said, "I agree." APP_00929n–0929o. The record is replete with similar examples of envelopes that were clearly signed, dated and submitted within the "correct" window and date-stamped a few days later, only to be set aside due to a slip of the pen. *E.g.*, SMF ¶¶ 67, 70, 74, 75, 77.

To be sure, writing a date is not an insurmountable hurdle. But the magnitude of the voters disenfranchised—over 10,000, roughly .8% of all mail ballot voters in 2022, *see* SMF ¶ 3—indicates that the burden imposed here is meaningful and certainly requires *some* justification to withstand constitutional scrutiny. *Cf. Frank*

*v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016) (constitutional violation can exist even if a "single" voter is harmed). The record also shows those burdens fall especially heavily on older voters. *See Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 n.2 (9th Cir. 2016) (en banc) ("more severe" "impact on subgroups" relevant).

The Sixth Circuit's decision in *Northeast Ohio Coalition for the Homeless v. Husted* is directly on point. There, the court of appeals held unconstitutional a requirement that boards of elections "reject the ballots of absentee ... voters who fail to accurately complete birthdate and address fields," which had resulted in the rejection of approximately 1,800 absentee ballots across two elections. 837 F.3d 612, 631–34 (6th Cir. 2016). The burden from requiring such "technical precision" in completing a required form in that case is uncannily similar to this one: Voters were "disenfranchised based only on a technicality" like "transposing the location of the month and year numerals of a birthdate, writing the current date by mistake, and inverting digits in an address." *Id.* at 632. Here, though, over 10,000 voters were disenfranchised in one election, indicating an even more serious burden on voters.

### ii. No state interest justifies the burden

Even a "minimal" burden on the right to vote "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *See Ohio State Conf. of NAACP v. Husted*, 768 F.3d 524, 538 (6th Cir. 2014), *vacated on other grounds*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014) (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality op.)); *accord Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 153 (3d Cir. 2022). Here, Defendants must point to legitimate state interests that go beyond "mere[] speculative concern[s]" and justify

24

*this* restriction on voting rights. *Soltysik v. Padilla*, 910 F.3d 438, 448–49 (9th Cir. 2018). Such interests must be "specific," not "abstract," and Defendants must "explain why the particular restriction imposed … actually addresses[] the interest put forth." *Ohio State Conf. of NAACP,* 768 F.3d at 545.

Nothing in the record comes close to justifying the disenfranchisement of thousands of voters based on the failure to "correctly" handwrite a useless date on a form. The handwritten date is not used for any purpose related to determining or confirming a voter's eligibility or qualifications. SMF ¶ 47–50. It "plays no role in determining a ballot's timeliness." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 127; *see* SMF ¶¶ 12, 51. And the handwritten date also is not used to prevent the counting of fraudulent votes or the votes of deceased persons. SMF ¶¶ 43, 61–64; *see also* Nov. 21 MSJ Op., ECF No. 347 at 67 n.39; *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 633 (speculative anti-fraud interest "does not offset the burden of technical perfection"); *see also* 25 Pa. C.S. § 3553 (penalties for mail ballot fraud apply for falsely "sign[ing]" an application or declaration, regardless of the handwritten date). As in *Northeast Ohio Coalition*, there is simply no governmental interest indicated by the record that could justify "the heavy-handed requirement of ballot rejection on a technicality" for many thousands of voters. 837 F.3d at 633.

## III.    THE COURT SHOULD ENJOIN THE DATE REQUIREMENT.

After granting this motion, the Court should immediately issue a declaration that discarding ballots for failure to write a "correct" date on the declaration form is unlawful, and a permanent injunction against discarding voters' ballots on that basis.

Plaintiffs will have "shown actual success on the merits" and have also satisfied the remaining injunction factors. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

An injunction will prevent irreparable harm to the voter Plaintiffs and to thousands who will be disenfranchised in the upcoming 2024 elections. When voting rights "are threatened or impaired, irreparable injury is presumed." *Husted II*, 697 F.3d at 436; *Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury"); *DNC. v. RNC*, No. CV 81-03876, 2016 WL 6584915, at \*17 (D.N.J. Nov. 5, 2016); *United States v. Berks Cnty.,* 277 F. Supp. 2d 570, 578 (E.D. Pa. 2003). It will also prevent diversion of resources from pro-democracy groups' civic engagement efforts in the crucial period leading up to the election. *See Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 663–64 (S.D. Ind. 2018), *aff'd sub nom. Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019); *League of Women Voters of N.C.*, 769 F.3d at 247 ("[O]nce the election occurs, there can be no do-over and no redress.").

And an injunction will serve the public interest. "By definition, 'the public interest … favors permitting as many qualified voters to vote as possible.'" *League of Women Voters of N.C.*, 769 F.3d at 247–48 (quoting *Husted II*, 697 F.3d at 437); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (same). But "[t]he public has no interest in enforcing unconstitutional laws." *E.g.*, *Firearms Pol'y Coal. v. Harris*, 192 F. Supp. 3d 1120, 1129 (E.D. Cal. 2016) (citation omitted).

## CONCLUSION

The motion should be granted and a permanent injunction should issue.

Dated: May 29, 2024

Stephen Loney (PA 202535)
Marian K. Schneider (PA 50337)
Kate I. Steiker-Ginzberg (PA 332236)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
sloney@aclupa.org
mschneider@aclupa.org
ksteiker-ginzberg@aclupa.org

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

Respectfully submitted,

/s/ Ari J. Savitzky
Ari J. Savitzky
Megan C. Keenan
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN    CIVIL    LIBERTIES    UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

*Counsel for the Pennsylvania State
Conference of the NAACP, League of
Women    Voters    of    Pennsylvania,
Philadelphians Organized to Witness,
Empower and Rebuild, Common Cause
Pennsylvania,    Black    Political
Empowerment Project, Make the Road
Pennsylvania,    Barry    M.    Seastead,
Marlene G. Gutierrez, Aynne Margaret
Pleban Polinski, Joel Bencan, and
Laurence M. Smith*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment to be served via the Court's electronic filing system upon all counsel of record.

Dated: May 29, 2024

/s/ Ari Savitzky