**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENNSYLVANIA STATE CONFERENCE | ) | |
| OF THE NAACP, *et al.*, | ) | |
| | ) | Civil Action No.: 1:22-cv-00339 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Susan P. Baxter |
| | ) | |
| AL SCHMIDT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS'**
**<u>SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD............................................................................................................ 3

ARGUMENT ......................................................................................................................... 3

     I.     PLAINTIFFS LACK STANDING TO BRING THEIR RIGHT-TO-VOTE
          CLAIMS AGAINST THE SECRETARY............................................................ 3

     II.    THE CONSTITUTION'S RIGHT TO VOTE DOES NOT ENCOMPASS
          A RIGHT TO VOTE BY MAIL WHERE A STATE ALLOWS IN-
          PERSON VOTING............................................................................................... 7

     III.   "USUAL BURDENS OF VOTING" LIKE THE DATE REQUIREMENT
          CANNOT VIOLATE THE RIGHT TO VOTE.................................................. 10

     IV.   EVEN IF THE COURT APPLIES SCRUTINY UNDER THE
          *ANDERSON-BURDICK* TEST, THE DATE REQUIREMENT EASILY
          PASSES MUSTER. ............................................................................................ 15

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. S.C. State Conf. of NAACP*,
    144 S. Ct. 1221 (2024) ................................................................................................12

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ..................................................................................................12

*Baker v. Carr*,
    369 U.S. 186 (1962) ....................................................................................................2

*Ball v. Chapman*,
    284 A.3d 1189 (Pa. 2022) (per curiam) ..................................................................5, 7

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) ....................................................................................................5

*Brnovich v. DNC*,
    594 U.S. 647 (2021) ........................................................................................ *passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ..................................................................................................15

*Bush v. Gore*,
    531 U.S. 98 (2000) ......................................................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................................3

*Chapman v. Berks Cnty. Bd. of Elections*,
    No. 355 M.D. 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022) ..........5, 6

*Clingman v. Beaver*,
    544 U.S. 581 (2005) ..................................................................................................13

*Commonwealth v. Mihaliak*,
    No. CR-126-22 (June 3, 2022) ..................................................................................20

*Council of Alt. Pol. Parties v. Hooks*,
    179 F.3d 64 (3d Cir. 1999) ........................................................................................12

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)..................................................................................*passim*

*Davis v. G N Mortg. Corp.*,
244 F. Supp. 2d 950 (N.D. Ill. 2003) ...................................................................19

*DNC v. Wis. State Legislature*,
141 S. Ct. 28 (2020)...........................................................................................10

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)...........................................................................................20

*FDA v. All. for Hippocratic Medic.*,
602 U.S.___, 144 S. Ct. 1540 (2024)....................................................................4

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982).............................................................................................4

*In re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*,
241 A.3d 1058 (Pa. 2020)..............................................................................18, 20

*In Re: Nov. 3, 2020 Gen. Election*,
240 A.3d 591 (Pa. 2020) ...................................................................................20

*Kerns v. Kane*,
69 A.2d 388 (Pa. 1949) .......................................................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................4, 6

*Mays v. LaRose*,
951 F.3d 775 (6th Cir. 2020) ..........................................................................3, 15

*Mazo v. N.J. Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) .................................................................3, 15, 17, 18

*McDonald v. Bd. of Election Comm'rs*,
394 U.S. 802 (1969).............................................................................*passim*

*Memphis A. Philip Randolph Inst. v. Hargett*,
2 F.4th 548 (6th Cir. 2021) ................................................................................12

*Migliori v. Cohen*,
36 F.4th 153 (2022)............................................................................................18

*Minn. Voters All. v. Mansky*,
    585 U.S. 1 (2018) ......................................................................................................19

*Ne. Ohio Coal. for the Homeless v. Husted*,
    837 F.3d 612 (6th Cir. 2016) ...................................................................................15

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*,
    97 F.4th 120 (3d Cir. 2024) ............................................................................. *passim*

*Pa. State Conf. of NAACP v. Schmidt*,
    No. 1:22-CV-339, 2023 WL 8091601 (W.D. Pa. Nov. 21, 2023) ...........................18

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ...................................................................................15

*Ritter v. Migliori*,
    142 S. Ct. 1824 (2022) ........................................................................................1, 10

*Ritter v. Migliori*,
    143 S. Ct. 297 (2022) ...............................................................................................18

*Rucho v. Common Cause*,
    588 U.S. 684 (2019) ................................................................................................12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...............................................................................................4, 6

*State v. Williams*,
    565 N.E.2d 563 (Ohio 1991) ...................................................................................19

*Storer v. Brown*,
    415 U.S. 724 (1974) ................................................................................................12

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) .............................................................................7, 8, 9

*Thatcher's Drug Store v. Consol. Supermarkets*,
    636 A.2d 156 (Pa. 1994) ..........................................................................................19

*Thomas A. Armbruster, Inc. v. Barron*,
    491 A.2d 882 (Pa. Super. Ct. 1985) .........................................................................19

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) .....................................................................................12, 15, 18

*Vote.Org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023) ........................................................................19, 20

*Winston v. Moore*,
    91 A. 520 (Pa. 1914) ...............................................................................................7

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. art. I, § 4, cl. 1 ...........................................................................................11

Pa. Const. art. VII, § 6 ..............................................................................................6, 7

25 P.S. § 2642 ............................................................................................................4, 5

73 P.S. § 201-7 .............................................................................................................16

73 P.S. § 2186 ...............................................................................................................16

23 Pa. C.S. § 5331 ........................................................................................................16

42 Pa. C.S. § 6206 ........................................................................................................16

42 Pa. C.S. § 8316.2 .....................................................................................................16

57 Pa. C.S. § 316 ..........................................................................................................16

25 Pa. Cons. Stat. § 3050 .............................................................................................14

25 Pa. Cons. Stat. § 3146.6 .....................................................................................14, 16

25 Pa. Cons. Stat. § 3150.16 ...................................................................................14, 16

Minn. Stat. § 203B.07 ..................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .......................................................................................................3, 5

U.S. Election Assistance Commission, *Election Administration and Voting Survey
    2022 Comprehensive Report: A Report from the U.S. Election Assistance
    Commission to the 118th Congress*............................................................................17

Carter Walker, *Redesigned Envelope Leads to Fewer Rejected Mail Ballots, But a
    New Type of Error Sticks Out*, Spotlight Pa (May 31, 2024) ...................................17

## INTRODUCTION

The Third Circuit has rejected Plaintiffs' principal claim in this case: that Pennsylvania's date requirement for absentee and mail-in ballots violates the federal Materiality Provision. *See Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120 (3d Cir. 2024). Among other things, the Third Circuit held that mandatory application of the date requirement does not deny any individual's "right to vote" because the date requirement is a ballot-casting rule that regulates how an individual exercises that right. *Id.* at 135 (citing *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissental)). As the Third Circuit explained, "a voter who fails to abide by state rules prescribing how to make a vote effective is not 'denied the right to vote'" or disenfranchised "when his ballot is not counted." *Id.* at 133. "[T]he failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right." *Id.* at 135 (quoting *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissental)).

This holding that the date requirement does not infringe the "right to vote" logically forecloses Plaintiffs' freshly added constitutional "right-to-vote" claim.[1] To be sure, the Third Circuit was discussing the statutory "right to vote" in the Materiality Provision. But Plaintiffs here and the dissenting judge argued that the "right to vote" in the Materiality Provision is *broader* than the constitutional right to vote. *See id.* at 138-39 (Schwartz, J., dissenting); CA3 ECF No. 151 at 41-42. Moreover, there is no authority suggesting the right to vote protected by the Constitution is broader than the statutory right to vote recognized by Congress in the civil rights laws. *See Brnovich v. DNC*, 594 U.S. 647, 669-70 (2021), (consulting "standard practice" at the time "when § 2 [of the Voting Rights Act] was amended" to determine what "furnish[es] an equal 'opportunity' to vote in the sense meant by § 2"); *Baker v. Carr*, 369 U.S. 186, 247 (1962) (Douglas, J.,

---

[1] Intervenor-Defendants have already explained why summary judgment is warranted against Plaintiffs' other back-up claim under the Equal Protection Clause. *See* ECF No. 398.

concurring) (the "right to vote" was "protected by the judiciary long before that right received []
explicit protection" in civil-rights statutes). *A fortiori*, the Third Circuit's conclusion that the date
requirement does not violate the statutory right to vote means that it does not violate the
constitutional right to vote either.

But if this Court somehow deems the question open, Plaintiffs' right-to-vote claim suffers
from at least four fatal defects that warrant summary judgment dismissing it. *First*, Plaintiffs lack
standing to pursue their right-to-vote claim against the Secretary. After all, their alleged injury is
not caused by, or redressable through an order against, the Secretary because the Secretary has no
authority to require the counting of undated or incorrectly dated absentee or mail-in ballots.

*Second*, the Constitution's right to vote does not guarantee a right to mail voting, so it does
not limit a State's nondiscriminatory ballot-casting rules for mail voting where the State provides
other methods to vote. *See McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969).
Pennsylvania allows all voters to vote in person without complying with the date requirement—
so its date requirement for mail voting does not even implicate, let alone violate, anyone's
constitutional right to vote. *See id.* To the contrary, if anything, Pennsylvania has generously
*accommodated*, not violated, the right to vote through its voluntary provision of the convenience
of mail voting.

*Third*, because the date requirement imposes, at most, only a "usual burden[]" on voting,
it is immune from federal constitutional scrutiny under the *Anderson/Burdick* framework.
*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (opinion of Stevens, J.); *see also
id.* at 204-09 (Scalia, J., concurring in judgment); *accord Brnovich*, 594 U.S. at 669.

*Fourth,* even if the Court concludes that such *de minimis* burdens are subject to judicial
scrutiny under the Supreme Court's *Anderson-Burdick* framework, the date requirement easily

passes muster.  The date requirement imposes no more than the usual burdens of voting and is amply justified by several compelling state interests: facilitating election administration, promoting solemnity in voting, and detecting fraud.  Therefore, the date requirement is subject only to "rational basis review," *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020), which is of course "quite deferential," *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 153 (3d Cir. 2022) (cleaned up), and which it passes with flying colors.  The Court should grant summary judgment, uphold the General Assembly's duly enacted, longstanding, and constitutional date requirement, and bring this case to an end.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also warranted against any plaintiff who pursues a legally deficient theory of liability.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).

## ARGUMENT

**I.    PLAINTIFFS LACK STANDING TO BRING THEIR RIGHT-TO-VOTE CLAIMS AGAINST THE SECRETARY.**

Plaintiffs right-to-vote claims fail at the threshold because they lack standing to pursue those claims against the Secretary.  This dooms their claims because the Court already recognized that the Secretary is the only remaining defendant for Plaintiffs' other constitutional claims.  *See* Dkt. No. 347 at 33-34.  Just as Plaintiffs lack standing to pursue their Equal Protection claims

against the Secretary, *see* ECF No. 398 at 2-5, they lack standing to pursue their right-to-vote

claims against the Secretary as well.[2]

To establish standing, individual Plaintiffs must show (1) they have suffered an "injury in

fact" (2) that is "fairly traceable" to the defendant's conduct and (3) that is likely to be redressed

by favorable judicial intervention. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned

up); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs cannot establish either causation or redressability against the Secretary. *See*

*Lujan*, 504 U.S. at 561; *Spokeo*, 578 U.S. at 338. Under Pennsylvania law, county boards of

elections, not the Secretary, wield sole authority and responsibility for administering elections and

enforcing the Commonwealth's election laws. *See* 25 P.S. § 2642 (outlining county boards'

extensive powers and duties over the administration of elections). That includes the authority to

determine the validity of ballots and to count ballots. *See id.* The Secretary, by contrast, "does

not have control over the County Boards' administration of elections, as the General Assembly

conferred such authority solely upon the County Boards." *Republican Nat'l Comm. v. Schmidt*,

No. 447 M.D. 2022 (Pa. Commw. Ct. Mar. 23, 2023) (slip op. at 19-20) (attached as Exhibit A).

Indeed, the Secretary repeatedly has admitted that he lacks such authority and control. *See*

---

[2] The organizational Plaintiffs also lack standing as to all claims. As this Court previously noted, the organizational Plaintiffs assert only organizational injuries—not associational standing. ECF No. 347 at 13-14. The Court previously held that the organizational Plaintiffs established organizational standing by proving they diverted resources in response to the date requirement. *Id.* at 15-26. But the U.S. Supreme Court has since held that standing does not "exist[] when an organization diverts its resources in response to a defendant's actions." *FDA v. All. for Hippocratic Medic.*, 602 U.S.__, 144 S. Ct. 1540, 1564 (2024). And, the Supreme Court explained, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), "was an unusual case" that cannot be "extend[ed] . . . beyond its context." *Id.* Instead, organizational plaintiffs must plead (and prove) that the defendants' actions "directly affected and interfered with [the plaintiffs'] core business activities." *Id.* This injury is similar "to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* The organizational Plaintiffs' alleged injuries here, however, do not even attempt to satisfy that standard. Summary judgment is therefore warranted against them.

*Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998, at *10 (Pa. Commw. Ct. Aug. 19, 2022) (acknowledgment by Secretary that he "does not have the authority to direct the Boards to comply with [a court order]"); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 183 (2022) ("Within wide constitutional bounds, States are free to structure themselves as they wish").  That is why the Pennsylvania Supreme Court in *Ball* directed its order not to count ballots that fail to comply with the date requirement *to the county boards*—not the Secretary.  *See Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022) (per curiam) ("The Pennsylvania county boards of elections are hereby ORDERED to refrain from counting . . .").  It is also why the Pennsylvania Commonwealth Court held that the Secretary was not an indispensable party in a lawsuit challenging the legality of a particular election practice; as the court recognized, it could grant relief to the plaintiffs only with an order that bound county boards of elections.  *Republican Nat'l Comm.*, Exhibit A at 20.

Individual Plaintiffs seek an order requiring the counting of absentee and mail-in ballots that do not comply with the date requirement.  *See* ECF No. 413 at 35-36. But any order against the Secretary *cannot* grant them that relief.  *See, e.g.*, 25 P.S. § 2642; *Republican Nat'l Comm.*, Exhibit A at 20; *Chapman*, 2022 WL 4100998, at *10.  Individual Plaintiffs therefore lack standing to pursue their Equal Protection claim, and the claim fails "as a matter of law," warranting dismissal on summary judgment.  Fed. R. Civ. P. 56(a).

Even an order enjoining the Secretary from "[r]efusing to include [Plaintiffs'] ballots when reporting the 2022 election totals" (or any other election totals), ECF No. 413 at 35, would not redress individual Plaintiffs' alleged injury.  After all, it is not the Secretary's *refusal to include* ballots in a report, but the county board's decision *not to count* such ballots, that causes individual Plaintiffs' alleged injury.  Moreover, such an order would not compel any county board of elections

(or even the Secretary, for that matter) to *include* noncompliant ballots in the vote totals they transmit to the Secretary.  The Secretary, in turn, lacks authority to compel any county board of elections to comply with such an order.  *See Chapman*, 2022 WL 4100998, at *10.  Thus, even if such an order issued, an individual with standing would still have to pursue a judicial order requiring the relevant county board of elections to count the noncompliant ballot.  *See, e.g.*, *id.*  This Court, however, has held that no Plaintiff has standing to pursue Equal Protection claims against a county board, *see* Dkt. No. 347 at 23-24, and the same result is surely warranted for the right-to-vote claims.  Therefore, summary judgment against Plaintiffs is required here.  *See Lujan*, 504 U.S. at 561; *Spokeo*, 578 U.S. at 338.

Furthermore, the Secretary's prior non-binding guidance that county boards of elections "refrain from counting any absentee and mail-in ballots received for the November 8, 2022, general election that are contained in undated or incorrectly dated outer envelopes," Dkt. No. 347 at 31, does not affect, much less alter, this result.  After all, a judicial order directing the Secretary to rescind that guidance would have no effect on county boards of elections, which are not bound by the guidance or such an order and cannot be compelled to obey an order against the Secretary.  *See, e.g.*, *Republican Nat'l Comm.*, Exhibit A at 19-20; *Chapman*, 2022 WL 4100998, at *10.  An order against directing county boards to count the ballots, moreover, cannot be accomplished in this case because this Court already held Plaintiffs lack standing to pursue their constitutional claims against any county boards.  *See* Dkt. No. 347 at 23-24.

Even if this Court somehow ordered the few counties remaining in the case to refrain from counting noncompliant ballots, that would only create another fatal obstacle for Plaintiffs.  After all, any judicial order would need to achieve a consistent intra-county rule across the Commonwealth.  *See* Pa. Const. art. VII, § 6 ("All laws regulating the holding of elections by the

citizens, or for the registration of electors, shall be uniform throughout the State."); *Kerns v. Kane*, 69 A.2d 388, 393 (Pa. 1949) ("To be uniform in the constitutional sense, such a law must treat all persons in the same circumstances alike."); *Winston v. Moore*, 91 A. 520, 524 (Pa. 1914); *Bush v. Gore*, 531 U.S. 98, 106-07 (2000) ("varying standards to determine what [is] a legal vote" from "county to county" violate Equal Protection). Ordering a handful of counties to count undated ballots would leave the remaining counties bound by the Pennsylvania Supreme Court's holding that the date requirement is valid and mandatory. *See Ball*, 284 A.3d at 1192. Therefore, a judicial order to the county boards remaining in this case would result in a single state law being applied in a disparate manner across the Commonwealth—in clear violation of the Pennsylvania Constitution and the Equal Protection Clause. *See* Pa. Const. art. VII, § 6; *Kerns*, 69 A.2d at 393; *Winston*, 91 A. at 524; *Bush*, 531 U.S. at 106-07. Rather than embark down that path, the Court should grant summary judgment.

## II.    THE CONSTITUTION'S RIGHT TO VOTE DOES NOT ENCOMPASS A RIGHT TO VOTE BY MAIL WHERE A STATE ALLOWS IN-PERSON VOTING.

Plaintiffs' right-to-vote claim also fails because they assert a constitutional right to vote by mail—a right which the Supreme Court has held does not exist, as the Fifth Circuit recently reiterated. *See* Order Granting Stay Pending Appeal, *United States v. Paxton*, No. 23-50885, ECF No. 80-1 (5th Cir. Dec. 15, 2023) ("*Paxton* Stay Order"), at 5. Because there is no constitutional right to vote by mail, States that offer in-person voting do not "deny anyone the right to vote" when they enact laws regulating mail voting because such laws "only affect the ability of some individuals to vote by mail" while leaving intact the option to vote in person. *Id.* In States with in-person voting, "voting by mail is a privilege that can be limited without infringing the right to vote." *Id.*; *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 403-05 (5th Cir. 2020) (citing *McDonald*, 394 U.S. at 807-11).

Indeed, the Supreme Court's decision in *McDonald v. Board of Election Commissioners* dooms Plaintiffs' claim.  In *McDonald*, pretrial detainees claimed Illinois was violating their right to vote by prohibiting them from voting by mail.  *See* 394 U.S. at 803-06.  The Supreme Court unanimously rejected that argument, holding that "absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny . . . the exercise of the franchise." *Id.* at 807-08.  After all, the Court observed, there is no constitutional "right to receive absentee ballots." *Id.* at 807.  Thus, in order to establish a right-to-vote claim, the Court held, a litigant must show he is "absolutely prohibited from exercising the franchise" through *any* method. *Id.* at 809.  The *McDonald* litigants could not meet that burden because Illinois made in-person voting available, and the plaintiffs had failed to prove Illinois would "in fact" bar them from voting in person. *Id.* at 808 & n.6.

The Supreme Court's conclusion that States which offer in-person voting do not deny the right to vote when they *decline to offer* mail voting, *see id.* at 807-08, necessarily means that States with in-person voting do not deny the right to vote when they *offer* and regulate mail voting, *Tex. Democratic Party*, 961 F.3d at 403-05; *Paxton* Stay Order 5.  Indeed, laws regulating mail voting *accommodate* the right to vote by facilitating a "privilege" for voters to complete and cast ballots without voting in person. *Paxton* Stay Order at 5; *Tex. Democratic Party*, 961 F.3d at 403-05.

The Supreme Court's decision in *Crawford* reaffirms that States do not violate the constitutional right to vote when they regulate one method of voting—even if the regulation severely burdens some voters' use of that method—but provide another method of voting exempt from that regulation.  553 U.S. at 201 (opinion of Stevens, J.).  The *Crawford* plaintiffs argued that elderly voters were severely burdened by the photo-identification requirement for in-person voting. *Id.*  One of Indiana's counterarguments was that "the elderly and disabled are adequately

accommodated through their option to cast absentee ballots, and so any burdens on them are irrelevant." *Id.* at 212 n.4 (Souter, J., dissenting).  Unlike the dissent, the *Crawford* majority accepted Indiana's argument, concluding that one reason the requirement did not violate elderly voters' constitutional right to vote was that "the elderly in Indiana are able to vote absentee without presenting photo identification." *Id.* at 201 (opinion of Stevens, J.)*.  Crawford* thus reiterates that, even if a voting rule imposes a severe burden on the use of one method of voting, a constitutional right-to-vote claim is defeated if the State provides another method of voting exempt from that rule. *See id.*; *accord id.* at 209 (Scalia, J., concurring in judgment) ("That the State accommodates some voters by permitting . . . the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative . . . .").  Indeed, even one of the *Crawford* dissenters suggested that the opportunity to vote by mail would defeat a right-to-vote challenge to an in-person voting rule. *Id.* at 239-40 (Breyer, J., dissenting).  After all, in a situation where multiple voting options exist, voters are not "absolutely prohibited" from voting even if one option is burdensome. *McDonald*, 394 U.S. at 809; *Crawford*, 553 U.S. at 201.

So too here.  Pennsylvanians unable or unwilling to write a date on their mail-ballot carrier envelopes can vote in person without having to comply with the date requirement.  In other words, Pennsylvania "permits [voters] to vote in person; that is the exact opposite of 'absolutely prohibiting' them from doing so." *Tex. Democratic Party*, 961 F.3d at 404 (quoting *McDonald*, 394 U.S. at 808 n.7).  Accordingly, Pennsylvania's provision and regulation of mail voting, including through the date requirement, does not violate any individual's constitutional right to vote. *See id.*; *Crawford*, 553 U.S. at 201; *McDonald*, 394 U.S. at 807-08.  Instead, in Pennsylvania, as elsewhere, mail voting is a voluntary *accommodation* of the right to vote, which traditionally was exercised in person—so neither a State's voluntary "indulgence" in establishing mail voting

nor its rules facilitating and regulating mail voting can *violate* the right to vote.  *Crawford*, 553 U.S. at 209 (Scalia, J., concurring in judgment); *see McDonald*, 394 U.S. at 807-08; *cf. Pa. State Conf. of NAACP Branches*, 97 F.4th at 135 (date requirement does not deny the "right to vote").

Plaintiffs' right-to-vote claim, therefore, is foreclosed by *McDonald* and *Crawford*, and the Court should grant summary judgment dismissing it.

## III.   "USUAL BURDENS OF VOTING" LIKE THE DATE REQUIREMENT CANNOT VIOLATE THE RIGHT TO VOTE.

Even if *McDonald* did not control, Plaintiffs' claim still fails because Plaintiffs object only to the "usual burdens of voting"—which are not subject to judicial scrutiny under the Constitution's right-to-vote guarantee and, thus, do not trigger any judicial balancing analysis under the *Anderson/Burdick* framework.  *Crawford*, 553 U.S. at 198 (opinion of Stevens, J.); *accord Brnovich*, 594 U.S. at 669.

Voting inherently requires voters to take steps that they may view as inconvenient.  *See, e.g.*, *id.*  Traditionally, in order to vote, individuals have had to drive to a polling place, provide information to a voting official, wait in line, and fill out the ballot.  *Id.* at 670.  Such ordinary inconveniences—and state election rules imposing such burdens—have never been understood to implicate, let alone violate, any right to vote.  *Id.* at 669 (holding that "[m]ere inconvenience" cannot establish a violation of the Voting Rights Act).  After all, "[e]ven the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."  *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental).  That is true of mail voting as well, where States must adopt rules, including deadlines and paperwork requirements, to make mail voting possible.  *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurral) ("[A] State's election [rule] does not disenfranchise

voters who are capable of [following it] but fail to do so."); *accord Pa. State Conf. of NAACP*, 97 F.4th at 135.

State laws imposing these "usual burdens of voting" have never been subject to judicial scrutiny under the Constitution's right-to-vote guarantee—and no binding authority has *ever* invalidated such a law under the *Anderson/Burdick* balancing framework. *Crawford*, 553 U.S. at 198 (opinion of Stevens, J.); *id.* at 204-09 (Scalia, J., concurring); *accord Brnovich*, 594 U.S. at 669; *Pa. State Conf. of NAACP*, 97 F.4th at 135.

Moreover, the Third Circuit's holding that the date requirement cannot violate the Materiality Provision's statutory "right to vote" underscores that rules imposing the usual burdens of voting cannot violate the constitutional right to vote. *Id.* at 133. As the Third Circuit explained, "a voter who fails to abide by state rules prescribing how to make a vote effective is not 'denied the right to vote' when his ballot is not counted." *Id.* Indeed, "[i]f state law provides that ballots completed in different colored inks, or secrecy envelopes containing improper markings, or envelopes missing a date, must be discounted, that is a legislative choice that federal courts might review if there is unequal application, but they have no power to review under" a theory that the right to vote has been denied. *Id.* The Third Circuit reached this conclusion that neutral, nondiscriminatory ballot-casting rules do not violate the "right to vote" without conducting any balancing of the burdens imposed, and state interests served, by those rules. *See id.*

The reasons federal courts cannot wield the statutory or constitutional "right to vote" to second-guess state election rules that impose only the usual burdens of voting are fundamental. The Constitution expressly delegates to the States the power to regulate the "Times, Places, and Manner" of federal elections. U.S. Const. art. I, § 4, cl. 1. Using that power, "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-

and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *accord Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 70 (3d Cir. 1999) ("[S]tates have broad power to enact election codes that comprehensively regulate the electoral process."). Indeed, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Federal courts therefore must *defer* to—not deploy the open-ended *Anderson/Burdick* balancing test to assess—state voting laws like the date requirement that impose the usual burdens of voting incident to the State's necessary and "substantial regulation of elections." *Id.* The "sort of detailed judicial supervision of the election process" that subjecting such rules to the *Anderson/Burdick* framework would entail "would flout the Constitution's express commitment of th[at] task to the States," which must "weigh the costs and benefits of possible changes to their election codes." *Crawford*, 553 U.S. at 208 (Scalia, J., concurring in judgment). That approach would also enmesh federal courts in a host of sensitive political disputes, forcing them to make judgments that frequently appear "political, not legal." *Rucho v. Common Cause*, 588 U.S. 684, 707 (2019); *see Alexander v. S.C. State Conf. of NAACP*, 144 S. Ct. 1221, 1236 (2024) ("[W]e must be wary of plaintiffs who seek to transform [the] federal courts into weapons of political warfare that will deliver victories that eluded them in the political arena." (cleaned up)); *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 561-62 (6th Cir. 2021) (Readler, J., concurring) (highlighting risks of overly broad application of *Anderson-Burdick* test).

As applied to ordinary election regulations that impose only the usual burdens of voting, such an approach cannot be right. Unsurprisingly, the Supreme Court and Third Circuit have

already made that point clear.  *See Clingman v. Beaver*, 544 U.S. 581, 593 (2005) (instructing courts to avoid standard of review in right-to-vote cases that would "compel federal courts to rewrite state electoral codes"); *PA State Conf. of NAACP*, 97 F.4th at 133-35.

Plaintiffs may offer two arguments to support their position that nondiscriminatory ballot-casting rules that impose nothing more than the usual burdens of voting can nonetheless violate the right to vote.  Both fail.  *First*, Plaintiffs may argue that the Third Circuit's opinion is inapposite because the constitutional right to vote is *broader* than the statutory right to vote in the Materiality Provision.  But that argument would invert and contradict their prior position that the "right to vote" in the Materiality Provision is broader than the constitutional right to vote.  *See* CA3 ECF No. 151 at 41-43.  It also makes no sense.  The Supreme Court has never suggested that the constitutional "right to vote" is broader than that in the civil rights statutes.  To the contrary, in *Brnovich*, the Court drew from constitutional-right-to-vote precedents to reject arguments that the "right to vote" in the Voting Rights Act should be interpreted more broadly.  *See Brnovich*, 594 U.S. at 669 (extending "usual burdens of voting" rule from *Crawford*).  That helps explain why the Third Circuit found it "implausible that federal law bars a State from enforcing vote-casting rules that it has deemed necessary to administer its elections."  *Pa. State Conf. of NAACP*, 97 F.4th at 135.

*Second*, Plaintiffs may point to the *Crawford* plurality's statement that "[h]owever slight [a] burden may appear . . . it must be justified by relevant and legitimate state interests."  553 U.S. at 191 (opinion of Stevens, J.).  But the plurality's analysis makes clear that it was referring to burdens beyond the "usual burdens of voting."  *Id.* at 198.  After all, the Court concluded that Indiana's voter identification requirement was not a "substantial burden on the right to vote," meaning it triggered minimal scrutiny, and did not "represent a significant increase over the usual

burdens of voting." *Id.* That the plurality applied only minimal scrutiny to a law that imposed a marginal "increase over the usual burdens of voting," indicates that a law imposing *only* the usual burdens of voting is subject to *no* judicial scrutiny. *Id.*

At an absolute maximum, the *Crawford* plurality opinion demonstrates that any judicial scrutiny of laws that impose the usual burdens of voting is so deferential as to effectively foreclose *Anderson/Burdick* challenges. *See id.*; *see also id.* at 209 (Scalia, J., concurring). That explains why Plaintiffs have not cited even a single binding *Anderson/Burdick* case striking down a law that imposed only the usual burdens of voting.

Here as well, Plaintiffs' right-to-vote challenge to the date requirement fails because writing a date on a piece of paper is the quintessential example of the "usual burdens of voting." *Crawford*, 553 U.S. at 198 (opinion of Stevens, J.); *id.* at 204-09 (Scalia, J., concurring). Every State requires voters to write pieces of information on voting papers—both for in-person and mail voting. *See, e.g.*, 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a) (signature requirement); 25 Pa. Cons. Stat. § 3050 (requirement to maintain in-person voting poll books); *Electronic Poll Books*, National Conference of State Legislatures (Oct. 25, 2019), ncsl.org/elections-and-campaigns/electronic-poll-books; *How States Verify Voted Absentee/Mail Ballots*, National Conference of State Legislatures (Jan. 22, 2024), ncsl.org/elections-and-campaigns/table-14-how-states-verify-voted-absentee-mail-ballots. Anyone who has voted in-person or by mail knows this. This is true even for States with the most generous voting regimes. *See, e.g.*, Minn. Stat. § 203B.07, subdiv. 2.

Because the date requirement imposes nothing more than the usual burdens of voting, it does not violate the right to vote. For this reason as well, the Court should grant summary judgment dismissing Plaintiffs' constitutional right-to-vote claim.

## IV.   EVEN IF THE COURT APPLIES SCRUTINY UNDER THE *ANDERSON-BURDICK* TEST, THE DATE REQUIREMENT EASILY PASSES MUSTER.

Finally, even if the Court accepts Plaintiffs' invitation to engage in balancing under the *Anderson-Burdick* test, the date requirement easily passes muster. That framework requires courts to weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the State's interests in and justifications for the law. *Crawford*, 553 U.S. at 189-91 (opinion of Stevens, J.). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens … trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358 (cleaned up); *accord Mazo*, 54 F.4th at 153.

In determining a law's burden, courts can only consider the burden that the date requirement places on "voters as a whole"—not specific subgroups. *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235-36 (5th Cir. 2020); *see Crawford*, 553 U.S. at 198 (opinion of Stevens, J.); *id.* at 205-08 (Scalia, J., concurring in judgment); *Burdick v. Takushi*, 504 U.S. 428, 436-37 (1992); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 631 (6th Cir. 2016). Claims of disparate impact must, instead, be brought under the Equal Protection Clause. *See Crawford*, 553 U.S. at 207-08 (Scalia, J., concurring in judgment).

### A.   The Date Requirement Imposes, At Most, Only Minor Burdens Warranting Rational-Basis Review.

Even if the Court rejects the showing that the date requirement imposes only the usual burdens of voting, *see supra* Part III, the date requirement is, at most, a minor burden subject to "rational basis review," *Mays*, 951 F.3d at 784; *see also Mazo*, 54 F.4th at 153.

Writing a date on a piece of paper is not burdensome. Signing and dating documents has been a regular and ordinary part of life for a long time. The forms provided in Pennsylvania

statutes which provide spaces for both a signature and a date are too numerous to list here.[3]  And as discussed above, every State requires individuals to write pieces of information on voting papers before casting a ballot.  *See supra* at 13-14.  Moreover, Plaintiffs do not contest the legality of Pennsylvania's signature requirement for absentee and mail-in ballots—*which appears in the same statutory phrase as the date requirement.  See* 25 P.S. §§ 3146.6(a), 3150.16(a).  If it is not a significant burden to sign the mail-ballot envelope, it cannot be a significant burden to require voters to write a date *on the same declaration*.

Precedent reinforces the date requirement's *de minimis* burden.  Writing a date on a document is far less onerous than "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering . . . required documents, and posing for a photograph" upheld as minimal and constitutional in *Crawford*.  553 U.S. at 198 (opinion of Stevens, J.).  It is also substantially less burdensome than "[h]aving to identify one's own polling place and then travel there to vote," which "does not exceed the usual burdens of voting." *Brnovich*, 594 U.S. at 678 (internal quotation marks omitted).

Against this, Plaintiffs can only offer evidence of the number of people who have *failed to comply* with the date requirement.  ECF No. 413 ¶ 2.  But that does not establish "a substantial burden on the right to vote, or even [indicate] a significant increase over the usual burdens of voting," *Crawford*, 553 U.S. at 198 (opinion of Stevens, J.).  According to Plaintiffs, the individuals who submitted those ballots complied with all other requirements for absentee or mail-in ballots, including the secrecy-envelope requirement and the signature requirement.  Yet

---

[3] To name a few, see 57 Pa. C.S. § 316 (short form certificates of notarial acts); 23 Pa. C.S. § 5331 (parenting plan); 73 P.S. § 201-7(j.1)(iii)(3)(ii) (emergency work authorization form); 42 Pa. C.S. § 8316.2(b) (childhood sexual abuse settlement form); 73 P.S. § 2186(c) (cancellation form for certain contracts); 42 Pa. C.S. § 6206 (unsworn declaration).

Plaintiffs cannot explain how compliance with the date requirement can be unconstitutionally burdensome for voters who have complied with the secrecy-envelope requirement and the signature requirement, which is part of the same voting rule as the date requirement, particularly when Pennsylvania allows all voters to vote in person without complying with the date requirement.

In any event, in the 2022 elections Plaintiffs focus on, only 0.85% of 1,258,336 mail ballots returned were not counted due to the date requirement. *See* U.S. Election Assistance Commission, *Election Administration and Voting Survey 2022 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 118th Congress* at 34, https://www.eac.gov/sites/default/files/2023-06/2022_EAVS_Report_508c.pdf. A requirement that over 99% of mail voters complied with cannot be unconstitutionally burdensome. *Cf. Brnovich*, 594 U.S. at 680 (refusing to consider burdens imposed by rule where "98% or more [] voters" successfully complied). Moreover, the rejection rate due to the date requirement dropped significantly *further* in the 2024 primary elections—to about 0.4%. *See* Carter Walker, *Redesigned Envelope Leads to Fewer Rejected Mail Ballots, But a New Type of Error Sticks Out*, Spotlight Pa (May 31, 2024), https://perma.cc/UL5U-3LGC. And considering Plaintiffs' claims that they are diverting substantial funds to educate voters about how to date ballots, *see, e.g.*, ECF No. 413 ¶ 23, the error rate should only continue to drop.

Plaintiffs therefore cannot prove, and have not proven, that the date requirement imposes a meaningful burden in any case—let alone that the date requirement "lacks a plainly legitimate sweep" in order to maintain their facial challenge. *Mazo*, 54 F.4th at 152 (cleaned up).

**B.      The Date Requirement Easily Satisfies Rational-Basis Review.**

Because Pennsylvania's date requirement imposes, at most, only modest burdens on voters, the Court must uphold it because it is supported by the "State's important regulatory interests." *Timmons*, 520 U.S. at 358-59 (cleaned up).  The Court's review of the State's interests is "quite deferential" and courts cannot "require elaborate, empirical [justification] of the weightiness of . . . asserted justifications."  *Mazo*, 54 F.4th at 153 (cleaned up).

As a majority of the Pennsylvania Supreme Court has already held, the date requirement serves several weighty interests and an "unquestionable purpose."  *In re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (Pa. 2020) (opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (opinion of Justice Wecht) (noting that "colorable arguments … suggest [the date requirement's] importance").  *First*, the date requirement "provides proof of when [an] 'elector actually executed [a] ballot in full.'" *Id.* at 1090 (opinion of Dougherty, J.).  Such information facilitates the "orderly administration" of elections and is undoubtedly a legitimate state interest.  *Crawford*, 553 U.S. at 196 (opinion of Stevens, J.).  Admittedly, Pennsylvania election officials are required to timestamp a ballot upon receiving it, and they rely on that date when entering information into Pennsylvania's Statewide Uniform Registry of Electors ("SURE") system.  *See Pa. State Conf. of NAACP v. Schmidt*, 2023 WL 8091601, at *21 (W.D. Pa. Nov. 21, 2023), *rev'd*, 97 F.4th 120.  And there is every reason to think that *ordinarily* happens.  *See id.*  But the handwritten date serves as a useful backstop, and it would become quite important if a county failed to timestamp a ballot upon receiving it or if Pennsylvania's SURE system malfunctioned—a possibility Judge Matey has highlighted.  *See Migliori v. Cohen*, 36 F.4th 153, 165 (2022) (Matey, J., concurring in judgment), *vacated Ritter v.*

*Migliori*, 143 S. Ct. 297 (2022), *and majority holding disavowed*, *Pa. State Conf. of NAACP*, 97 F.4th at 128.

*Second*, the date requirement serves the State's interest in solemnity—*i.e.*, in ensuring that voters "contemplate their choices" and "reach considered decisions about their government and laws." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 15 (2018).  Signature-and-date requirements serve a "cautionary function" by "impressing the parties with the significance of their acts and their resultant obligations."  *Davis v. G N Mortg. Corp.*, 244 F. Supp. 2d 950, 956 (N.D. Ill. 2003).  Such formalities "guard[] against ill-considered action," *Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 883-84 (Pa. Super. Ct. 1985), and the absence of formalities "prevent[s] … parties from exercising the caution demanded by a situation in which each ha[s] significant rights at stake," *Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156, 161 (Pa. 1994).  Traditional signing and dating requirements aid persons "to appreciate the seriousness of their actions," *id.*, and for that reason are required in a range of instruments, including "wills" and "transfer[s] of real property," *State v. Williams*, 565 N.E.2d 563, 565 (Ohio 1991).

Pennsylvania can surely require its citizens to exercise the same caution when engaging in the solemn civic exercise of voting.  "Casting a vote is a weighty civic act, akin to a jury's return of a verdict, or a representative's vote on a piece of legislation." *Minn. Voters All.*, 585 U.S. at 15.  If States can require the formalities of signing and dating for wills and property transactions, they most certainly can do the same for voting.

The Fifth Circuit recently recognized this point when it upheld Texas's wet signature requirement for voter registration forms.  *Vote.Org v. Callanen*, 89 F.4th 459, 467 (5th Cir. 2023).  The law at issue made voter registration more inconvenient because it required an applicant to submit a voter registration form with a wet signature rather than a digital one.  *Id.* at 467-68.  The

Fifth Circuit upheld the challenged law, relying in part on the fact that an "original signature to a voter registration form carries 'solemn weight.'" *Id.* at 489.

*Third*, the date requirement advances the State's interests in "deterring and detecting voter fraud" and "protecting the integrity and reliability of the electoral process." *Crawford*, 553 U.S. at 191 (opinion of Stevens, J.); *see also Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *In re Canvass*, 241 A.3d at 1091 (opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy). Of course, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich*, 594 U.S. at 686. And here, the date requirement's advancement of the interest in preventing fraud is actual, not hypothetical: in 2022, the date requirement was used to detect voter fraud committed by a deceased individual's daughter in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022). *See* ECF No. 305, SOF ¶¶ 45-50. In fact, because current Pennsylvania Supreme Court precedent precludes county boards of elections from comparing the signature on the ballot envelope with one in the official record, *see In Re: Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 595 (Pa. 2020), the *only* evidence of third-party fraud on the face of the fraudulent ballot in *Mihaliak* was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away, *see* ECF No. 305, SOF ¶¶ 45-50. That evidence was used to secure a guilty plea from the fraudster, who was sentenced to probation and barred from voting for four years. *See Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lancaster Cnty. Jan. 20, 2022). The date requirement clearly serves—at the very least—the interest of detecting election fraud.

## CONCLUSION

The Court should grant summary judgment dismissing Plaintiffs' Equal Protection claim.

Dated:  July 3, 2024

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
PA I.D. #37950
THE GALLAGHER FIRM, LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 308-5512
kag@gallagherlawllc.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*