UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA STATE CONFERENCE OF
THE NAACP, *et al.*,

          Plaintiffs,

      v.

AL SCHMIDT, *in his official capacity as Acting Secretary of the Commonwealth*, *et al.*,

          Defendants.

No. 1:22-cv-339

Judge Susan Paradise Baxter

**BRIEF OF AL SCHMIDT IN RESPONSE TO PLAINTIFFS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Argument.....................................................................................................................1

   I.     The Date Requirement is a Vestige of a Different Era.................................2

   II.    Declaration Dates Have No Election Function .............................................6

   III.   Requiring Officials to Review Declaration Dates Impedes
         Effective Election Administration...............................................................14

Conclusion ...............................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................................... 1

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) .................................................. 1, 9, 10, 11

*Bonner v. Chapman*, 298 A.3d 153 (Pa. Cmwlth. 2023) ......................................... 12

*Burdick v. Takushi*, 504 U.S. 428 (1992) ..................................................................... 1

*Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Cmwlth. Aug. 19, 2022) .............................................. 8, 9, 10

*Chelsea Collaborative, Inc. v. Sec'y of Commonwealth*, 100 N.E.3d 326 (Mass. 2018) ................................................................................................. 6

*In re Canvass of Absentee and Mail-in Ballot*, 241 A.3d 1058 (Pa. 2020) ........................................................................................................ 1, 9, 10, 11

*In re Nov. 3 Gen. Election*, 240 A.3d 591, 610 (Pa. 2020) ....................................... 5

*Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022) ................................................... 8, 12

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ............................... 15

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120 (3d Cir. 2024) ................................................................................ 7

*Pa. State Conference of NAACP v. Schmidt*, No. 22-339, 2023 WL 8091601 (W.D. Pa. Nov. 21, 2023) .................................................. 7, 10, 12, 15

**Constitutions**

Pa. Const. art. VII, § 4 .................................................................................................. 6

**Statutes**

25 P.S. § 2811 ............................................................................................................. 10

25 P.S. § 3050 ............................................................................................................. 11

25 P.S. § 3146.4 ............................................................................................................13

25 P.S. § 3146.6 ..................................................................................................... 6, 11

25 P.S. § 3150.14 ..........................................................................................................13

25 P.S. § 3150.16 ............................................................................................... 6, 11, 13

25 P.S. § 3159 ...............................................................................................................14

25 P.S. § 3553 ......................................................................................................... 6, 13

25 P.S. §§ 3146.1-3146.7 .............................................................................................13

25 P.S. §§ 3150.11-3150.16 .........................................................................................13

25 Pa.C.S. § 1301 .........................................................................................................10

Act of Aug. 1, 1941, P.L. 672, No. 273 ..........................................................................3

Act of Aug. 13, 1963, P.L. 707, No. 379 ........................................................................4

Act of Dec. 11, 1968, P.L. 1183, No. 375 ...................................................................4, 5

Act of June 3, 1937, P.L. 1333, No. 320 .....................................................................2, 3

Act of Mar. 9, 1945, P.L. 29, No. 17 ...........................................................................3, 4

**ARGUMENT**

Under Pennsylvania's Election Code, anyone who votes by mail is instructed to date a declaration that must be returned with a mail ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). During the canvassing of mail ballots, counties shall include in the returns sent to the Secretary any mail ballot for which the declaration is "sufficient" (and that meets other criteria not relevant here). *Id.* 3146.8(g)(3)-(4). The Supreme Court of Pennsylvania has held that Pennsylvania's Election Code requires that mail ballots returned without a correctly dated declaration be rejected. *See Ball v. Chapman*, 289 A.3d 1 (Pa. 2023); *see also In re Canvass of Absentee and Mail-in Ballot*, 241 A.3d 1058 (Pa. 2020).

In Count III of their amended complaint, plaintiffs allege that rejecting timely mail ballots from qualified voters who failed to correctly write a meaningless date on the declaration returned with a mail ballot violates the First and Fourteenth Amendments to the U.S. Constitution. Am. Compl. ¶¶ 89-92 (ECF No. 413). Under the U.S. Supreme Court's decisions in *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the analytical framework for evaluating such a claim requires weighing the burden a voting rule places on the right to vote against the election interests it serves.

Secretary of the Commonwealth Al Schmidt files this brief to aid the Court's performance of this balancing by explaining why rejecting timely mail ballots from

1

qualified voters who failed to correctly write a meaningless date does not advance any state election interest and why it, in fact, undermines sound election administration.[1]

## I. The Date Requirement is a Vestige of a Different Era

The instruction that voters write a date on the declaration returned with a mail ballot is a remnant of bygone voting rules. The history of Pennsylvania's Election Code demonstrates what function the "shall…date" instruction was meant to serve and also demonstrates that the handwritten date ceased to serve its intended, or any, function in 1968.[2]

When the Election Code was first enacted in 1937, most voters could vote only in person. Some active military members—referred to as "detached" electors— were permitted to vote absentee. Act of June 3, 1937, P.L. 1333, No. 320, §§ 1327-1330 (attached as Exhibit 1). Those voters had to *complete* their ballot "on or before the day of the election." *Id.* § 1329. Their absentee ballots, however, could be counted even if they arrived after Election Day. *Id.* § 1317.

Absentee ballots were returned in an envelope printed with "the affidavit of the [voter], together with the jurat of the officer in whose presence the ballot is

---

[1] With respect to Count II of plaintiffs' amended complaint, the Secretary incorporates by reference his brief filed on May 5, 2023 (ECF No. 298).

[2] The provisions governing mail voting in Pennsylvania are described on pages 2-6 of the Secretary's prior summary judgment brief (ECF No. 298).

marked and before whom the affidavit is made." *Id.* § 1328. Voters had to "subscribe and swear to the affidavit" and the jurat had to "be subscribed by the [witnessing] officer," but neither the affidavit nor jurat had to be dated. *Id.* § 1329. During canvassing, county boards were required to "compare the signature of such absent voter with his signature upon any register or other record in their possession." *Id.* § 1330. If a county board was "satisfied that the signatures correspond and that the affidavit and jurat are sufficient," it was supposed to process the ballot. *Id.*

Because there was no instruction to date either the affidavit or jurat, the boards' determination of whether the affidavit and jurat were "sufficient" did not include any assessment of whether either was dated.

The General Assembly amended the Code in 1941. The amended Code directed county boards to "set aside" during canvassing any ballot with a return envelope that "bear[s] a postmark later than the date of the particular Election Day involved." Act of Aug. 1, 1941, P.L. 672, No. 273, sec. 4, § 1307 (attached as Exhibit 2). After setting aside those untimely ballots, county boards were to review whether the "affidavit and jurat are sufficient." *Id.* The separate section that instructed absentee voters how to complete their absentee ballot and the included declaration remained unchanged. *Id.* sec. 4, § 1306.

In 1945, the General Assembly added to the Code language stating that voters' jurat "shall be … dated." Act of Mar. 9, 1945, P.L. 29, No. 17, sec. 10, § 1306

3

(attached as Exhibit 3). Consistent with the new dating language, counties were specifically directed to "set aside" all ballots in which the "jurat bears a date later than the date of the election." *Id.*, sec. 10, § 1307. The written date, then, replaced the postmark as the necessary evidence a ballot was timely completed. After setting aside ballots based on the jurat date, counties were to review the remaining ballots to determine whether "the affidavit and jurat are sufficient." *Id.*

As part of 1963 amendments permitting certain categories of civilians to vote absentee, the requirement of a separate affidavit and jurat was replaced with the single declaration that is still in use today. Act of Aug. 13, 1963, P.L. 707, No. 379, sec. 22, § 1304 (attached as Exhibit 4). Reflecting this consolidation, the previous instruction to date the jurat became an instruction to date the declaration: "The elector shall … fill out, date and sign the declaration printed on [the outer ballot-return] envelope." *Id.*, sec. 22, § 1306. The Code's canvassing section was amended to instruct counties to set aside ballots returned with declarations bearing a date after the election. *Id.*, sec. 24, § 1308(c). After setting aside ballots based on the declaration date, counties were to review whether the "declaration is sufficient." *Id.*, sec. 24, § 1308(e).

In 1968, the General Assembly aligned, for the first time, the respective deadlines for absentee voters to complete their ballot, and for county boards to receive those ballots. Act of Dec. 11, 1968, P.L. 1183, No. 375, sec. 8, § 1308(a)

4

(attached as Exhibit 5).³ After creating a simultaneous deadline for both acts (and eliminating the possibility that a ballot could be timely received but not timely completed), the General Assembly ***removed*** the requirement that counties set aside ballots based on the date appearing on the ballot-return declaration. *Id.*, sec. 8, § 1308(c). In all other ways, the Code was materially unchanged. *Id.*, sec. 8, § 1306.

When the General Assembly passed Act 77 of 2019, giving all registered, qualified voters the option to vote by mail, it adopted wholesale the pre-existing text and procedures for absentee voting, which had been materially unchanged since 1968. The General Assembly likewise simply incorporated no-excuse mail-in ballots into the existing canvassing procedures for absentee ballots. *Id.*, sec. 7, § 1308.

As this history shows, the declaration date is among the "vestiges remaining in the Election Code" of prior voting rules. *In re Nov. 3 Gen. Election*, 240 A.3d 591, 610 n.24 (Pa. 2020). It was meant to confirm that a ballot was timely completed during a period in history when the deadline for completing a ballot was earlier than the deadline for the county board to receive it. Therefore, while rejecting absentee ballots based on a declaration date once served a purpose, it is now the case that a rule "once considered constitutionally permissible [has] come to significantly interfere with the fundamental right to vote in light of conditions existing in

---

³ The single deadline used to be 5 p.m. on the Friday before Election Day but in 2019 was changed to 8 p.m. of Election Day.

contemporary society." *Chelsea Collaborative, Inc. v. Sec'y of Commonwealth*, 100 N.E.3d 326, 334 (Mass. 2018).

## II. Declaration Dates Have No Election Function

Historically and currently, the Election Code has provided detailed rules for Pennsylvania's qualified, registered electors who vote by mail. These rules typically have a reasonable connection to advancing the orderly and secure administration of Pennsylvania's elections. For example, the declaration that mail voters must sign and return with their ballot is an attestation, under penalty of perjury, that they are qualified to vote the ballot being returned. 25 P.S. §§ 3146.6(a), 3150.16(a); *see also id.* § 3553. Voters also must place their mail ballot in a secrecy envelope, a requirement that can reasonably be understood to further the constitutional interest in secret ballots. 25 P.S. §§ 3146.6(a), 3150.16(a); *see also* Pa. Const. art. VII, § 4. Return deadlines for mail ballots allow election officials to timely perform their duties so that winning candidates can assume office without delay.

Unlike the above-mentioned rules, handwriting a date on the return-envelope's declaration does not have a legal or administrative purpose under Pennsylvania Election Code, and so rejecting ballots for mistakes with respect to that date serves no state interest. The record in this case has conclusively demonstrated as much.

As this Court's prior opinion thoroughly described, the undisputed record in this case has established that the declaration date is "wholly irrelevant." *Pa. State Conf. of NAACP v. Schmidt* ("*NAACP I*"), No. 22-339, 2023 WL 8091601, at *31 (W.D. Pa. Nov. 21, 2023). Although the Third Circuit disagreed with this Court's reading of 52 U.S.C. § 10101(a)(2)(B), that court also understood that "[t]he date requirement, it turns out, serves little apparent purpose." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 125 (3d Cir. 2024).

Indeed, the undisputed facts prove that counties do not rely on the declaration date to track whether a ballot was returned on time. *NAACP I*", No. 22-339, 2023 WL 8091601, at *20-21, *32. Rather, counties independently track whether ballots were received on time though measures such as scanning the ballot envelope into the Statewide Uniform Registry of Electors (SURE) system or time stamping. *Id.* at *20-21, *32. And counties do not mingle timely and untimely ballots. Likewise, the undisputed facts show, and the parties previously agreed, "that the county boards of elections did not use the handwritten date on the Return Envelope for any purpose related to determining a voter's age, citizenship, county or duration of residence, or felony status." *Id.* at *29. Instead, the date a voter signs the declaration "is untethered from any other requirement on the ballot" because the only significant date under the Election Code is the date the ballot is *received*. *Id.* at *31-32.

7

Pennsylvania courts also have readily concluded that the declaration date serves no function. Most notably, in an action that the Secretary brought during the 2022 primary against three counties that refused to include ballots with declaration-date errors in the returns sent to the Secretary, the Department of State's Deputy Secretary of Elections as well as a county commissioner from each of the three counties testified about declaration dates. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998, at *5-6 (Pa. Cmwlth. Aug. 19, 2022). After hearing that testimony, the Commonwealth Court's President Judge concluded that the date is not used to determine a voter's qualifications, determine whether they already voted, or preserve confidentiality. *Id.* at *19, *20. There also was no dispute that the date was not needed to establish if a mail ballot was returned by the statutory deadline. *Id.* at *18. Nor did the Election Code suggest any purpose for writing a date or how the date is used. *Id.* at *18. As a result, the President Judge correctly concluded that "the parties have not identified a specific purpose served by dating the declaration on the return envelope, and the Court cannot discern any." *Id.* at *20; *see also id.* at *18 ("[T]here is **no factual or legal basis** for concluding that the dating provision serves [any identified] interest." (emphasis in original)).

In fact, before the Supreme Court's decision in *Ball* required otherwise, ballots would be counted no matter what date a voter wrote. *Migliori v. Cohen*, 36 F.4th 153, 163-64 (3d Cir. 2022) *vacated as moot by Ritter v. Migliori*, 143 S.Ct.

8

297 (2022); *Berks*, No. 355 MD 2022, 2022 WL 4100998, at *18. That it did not matter what date a voter wrote further confirms that the date itself serves no purpose.

Despite what the record in this case indisputably establishes, the RNC repeats several theories Justice Dougherty offered in his opinion dissenting from the Pennsylvania Supreme Court's 2020 *In Re Canvass* decision, as if they were actual purposes the date serves. RNC Br. at 18 (citing *In re Canvass*, 241 A.3d at 1090-91 (Dougherty, J., dissenting)).

Yet in litigation since *In re Canvass*—a decision issued without the benefit of time or a record—five of the six Justices of the Pennsylvania Supreme Court expressly recognized that there is no connection between the handwritten date on the return envelope and determining a voter's qualifications. *Ball*, 289 A.3d at 24 & n.139 (Wecht, J., announcing judgment, joined by Todd, C.J., and Donahue, J.); *see also id.* at 39 (Brobson, J., dissenting, joined by Mundy, J.) (observing that the declaration date would not "have any bearing on determining voter qualification at all."). Also since *In re Canvass*, the Department has repeatedly explained that none of Justice Dougherty's hypothesized purposes is consistent with the Election Code or the way elections are administered in Pennsylvania.[4]

---

[4] Notably, in a portion of the Supreme Court's *Ball* decision joined by Justice Dougherty, that Court recognized that the Department has rebutted each of Justice Dougherty's theories. *Ball*, 289 A.3d at 16 n.77.

It is wrong that "[t]he date … ensures the elector completed the ballot within the proper time frame." *In re Canvass*, 241 A.3d at 1091 (Dougherty, J., dissenting). Ballots and ballot return envelopes are unique to each election; a voter has access to complete a mail ballot only in the several weeks before Election Day. Moreover, because the deadlines to complete and return a ballot are the same, if a ballot is timely received by a county board, it necessarily was timely completed by the voter. And the date written by the voter does not assist county boards in determining whether the board received the ballot before that deadline. Rather, county boards keep timely and untimely ballots separate and independently track timeliness by stamping mail ballot envelopes based on when the county board in fact received them and by logging them in SURE. *NAACP I*, No. 22-339, 2023 WL 8091601, at *20-21, *32; *see also Ball*, 289 A.3d at 16 n.77; *In re Canvass*, 241 A.3d at 1077; *Berks*, No. 355 MD 2022, 2022 WL 4100998, at *6, *19.

Nor does the date "establish[] a point in time against which to measure the elector's eligibility to cast the ballot." *In re Canvass*, 241 A.3d at 1090 (Dougherty, J., dissenting). Election Day—not the day the voter dated the return envelope—is the date against which a voter's qualifications are measured. *See* 25 P.S. § 2811; 25 Pa.C.S. § 1301; *see also Ball*, 289 A.3d at 16 n.77.

Next, because the handwritten date does not identify any meaningful point in time, it also does not prevent fraud. *Contra In re Canvass*, 241 A.3d at 1091

10

(Dougherty, J., dissenting). Any notion that the date "prevents the counting of potentially fraudulent back-dated votes," *id.*, has the issue backwards. There is no point in "fraudulently back-dat[ing]" a ballot envelope if the date is not used to determine whether the ballot was timely received and carries no weight. It is only where the handwritten date affects whether the ballot will be counted that a motivation to alter it could possibly exist.

Further, a declaration date does not help election officials determine if an elector intended to vote by mail ballot "in lieu of appearing in person at a polling place." *Contra In re Canvass*, 241 A.3d at 1091 (Dougherty, J., dissenting). Anyone who has requested a mail ballot cannot vote at a polling place on Election Day unless they bring their mail ballot to the polls and surrender it. 25 P.S. §§ 3146.6 (b)(3), 3150.16(b)(3). Someone who arrives at their polling place on Election Day having requested a mail ballot but without that ballot in hand, can vote only provisionally. 25 P.S. §§ 3146.6(b)(1)-(2), 3150.16(b)(1)-(2). And if the voter both successfully returns a mail ballot and casts a provisional ballot at the polling place, only the absentee or mail-in ballot will count. 25 P.S. § 3050(a.4)(5)(ii)(F); *see also Ball*, 289 A.3d at 16 n.77.

Moreover, as it has done before, the RNC cites a criminal affidavit as supposed evidence of the date's anti-fraud function, RNC Br. at 20, but omits all relevant facts, which reveal the fallacy of its reliance on that complaint.

11

In 2022, a Lancaster County woman returned her deceased mother's ballot and dated the return-envelope declaration 12 days after her mother's death. DOS Response to RNC's SOF ¶¶ 49, 52 (ECF No. 299); Ex. 12 to RNC SOF (ECF No. 273-12). The affidavit of probable cause states that the ballot was immediately flagged not because of the date, but because (following proper procedures) the deceased mother had been removed from the voting rolls three days before the ballot arrived at the county's office. Ex. 12 to RNC SOF (ECF No. 273-12). Indeed, a Lancaster County Commissioner testified that the date had no bearing on the county's decision to reject the ballot. DOS Response to RNC's SOF ¶ 48 (ECF No. 299).[5]

The RNC also borrows Judge Matey's speculation that the date might be a backstop if counties do not time stamp or scan ballots into SURE, *Migliori*, 36 F.4th at 165 (Matey, J., concurring). Judge Matey, however, was working without the benefit of a fully-developed record like the one available here. The undisputed evidence shows that no county uses used declaration dates as Judge Matey imagined. *See NAACP I*, No. 22-339, 2023 WL 8091601, *31-33. Moreover, Judge Matey's

---

[5] And even assuming the date had any non-electoral utility in this circumstance (and none has ever been presented), ruling for Plaintiffs here would not undermine it. The instruction that voters date the declaration would remain in the Election Code even if there is an order that ballots may not be rejected for omitting the date. *See Bonner v. Chapman*, 298 A.3d 153, 168 (Pa. Cmwlth. 2023).

12

speculation contained multiple faulty notions: (1) that timely and untimely ballots are ever co-mingled such that there would ever be a need to consult the date; (2) that there is any way to verify that the date written is accurate; and (3) that the date written, even if accurate, would indicate when a ballot was received.

Next, the RNC tries to ascribe a solemnity to the dating requirement that the General Assembly itself has not embraced. RNC Br. at 19. The declaration a voter is instructed to sign is an attestation of their eligibility to vote in that election. 25 P.S. §§ 3146.4, 3150.14. ***By signing the declaration alone***, an elector subjects himself to criminal charges if he knows the statement is false. *Id.* § 3553. The date is not mentioned.

The RNC's imagined purposes are not only wrong legally and factually, but also are not the actual reason the date instruction exists. *Supra* at 2-6. Dates stopped serving that—or any—function once the completion and receipt deadline were aligned in 1968. *Id.* Notably, after aligning the two deadlines, the General Assembly removed the prior instruction to set aside mail ballots bearing dates after the deadline to complete the ballot. *Id.* When the General Assembly passed Act 77 in 2019 to create no-excuse mail-in voting, it adopted wholesale the existing procedures for absentee ballots—including the dating remnant. *Compare* 25 P.S. §§ 3146.1-3146.7 (absentee ballots) *with id.* §§ 3150.11-3150.16 (no-excuse mail in ballots).

## III. Requiring Officials to Review Declaration Dates Impedes Effective Election Administration

Not only does rejecting mail ballots returned without a correct declaration date fail to advance any election interest, requiring that those ballots be rejected risks impairing free, honest, and fair elections in at least three discrete ways.

First, election officials have significant and demanding responsibilities between Election Day and the deadline to certify an election's returns to the Secretary, which is just 20 days after an election. 25 P.S. § 2642(k). The Secretary has his own certification obligations that follow those of the counties. 25 P.S. § 3159. If officials must reject mail ballots because of declaration date errors, they must engage in the laborious process of reviewing voters' handwritten dates and determining if they are correct.[6] Forcing already burdened election officials to engage in this time-intensive but gratuitous work occupies resources that can, and should, be spent performing tasks that actually further the free, honest, and fair administration of an election.

Second, as discovery in this case has shown, requiring counties to review and reject mail ballots based on declaration dates leads to inconsistent and varying

---

[6] Setting aside obvious errors, such as dates in the future or dates that do not exist, there is no way to ever confirm a date is "correct." There is no independent means of verifying the accuracy of a handwritten date. *See Ball*, 289 A.3d at 23 ("How county boards are to verify that the date an elector provides is, in truth, the day upon which he or she completed the declaration is a question that falls beyond our purview.").

14

practices within and across counties, specifically as to what qualifies as a sufficient date. *NAACP I*, No. 22-339, 2023 WL 8091601, at *32-33. There is no benefit to those inconsistencies. Requiring election officials to reject ballots based on declaration dates results in excluding indisputably qualified individuals from the electoral process notwithstanding that they timely returned their ballot, as happened in the 2022 general election. *Id.* at 33. These variations and acts of disenfranchisement undermine voter confidence, confidence that "is essential to the functioning of our participatory democracy." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 387 (Pa. 2020) (Wecht, J., concurring).

Third, ascribing importance to the date requirement introduces risks that would not otherwise exist. If counties need not review the handwritten date, there is no incentive for anyone to manipulate it. But requiring that voters write a correct date for their declaration to be "sufficient" makes the date a piece of information that potentially can be manipulated such that a timely completed, properly returned ballot is not counted. While the Secretary is not aware of any evidence that such manipulation has occurred, no similar risk exists if counties simply count timely-received ballots cast by registered voters regardless of whether the voter wrote the correct date on the ballot envelope.

15

## CONCLUSION

For the reasons set forth above, there is no state interest in rejecting timely mail ballots from eligible voters who merely neglected to correctly date their return-envelope declaration.

| | |
|---|---|
| July 18, 2024 | Respectfully submitted, |
| | |
| Robert A. Wiygul (Bar. No. 310760)<br>Hangley Aronchick Segal Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103-6933 | /s/ *Jacob B. Boyer*<br>Jacob B. Boyer (Bar. No. 324396)<br>Deputy General Counsel<br>333 Market Street, 17th Floor<br>Harrisburg, PA 17101<br>(717) 460-6786<br>jacobboyer@pa.gov<br><br>*Counsel for Secretary Al Schmidt* |